

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Jennifer Mendoza
jmendoza@lerachlaw.com

March 31, 2006

*Via United States Mail*

Clerk of the Court
United States District Court
District of Delaware
Wilmington Division
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, Delaware 19801

FILED

APR - 4 2006

Re:    *Cintas v. Gray*
No. 1:06-cv-00162-JJF

Dear Clerk:

Pursuant to Rule 5.12(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, enclosed for filing are two copies each of the following:

1.    The *Veliz* Plaintiffs' Motion to Transfer and Consolidate Actions Pursuant to 28 U.S.C. §1407;

2.    Brief of the *Veliz* Plaintiffs in Support of Motion to Transfer and Consolidate Actions Pursuant to 28 U.S.C. §1407;

3.    Declaration of Michael Rubin in Support of the *Veliz* Plaintiffs' Motion to Transfer and Consolidate Actions Pursuant to 28 U.S.C. §1407;

4.    Reasons Why Oral Argument Should Not Be Heard; and

5.    Petitioners' Emergency Application to Expedite Schedule for Resolution of Transfer Under 28 U.S.C. §1704

These documents were filed with the JPMDL on or about March 30, 2006. All parties have been served as indicated on the certificate of service.

Thank you for your assistance in this matter.

Very truly yours,

Jennifer Mendoza
Paralegal

JM:tdv
Enclosures

655 West Broadway, Suite 1900 · San Diego, California 92101-3301 · 619.231.1058 · Fax 619.231.7423 · www.lerachlaw.com

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In re CINTAS CORPORATION        )    MDL No. _____
ARBITRATION LITIGATION          )
                                )

**THE *VELIZ* PLAINTIFFS' MOTION TO TRANSFER AND CONSOLIDATE ACTIONS
PURSUANT TO 28 U.S.C. §1407**

The 2,400 individual plaintiffs in *Veliz v. Cintas Corp.*, No. 03-1180 SBA (N.D. Cal.) (the "*Veliz* plaintiffs"), approximately 1,900 of whom are named as defendants in one of at least 70 separate federal court actions filed by Cintas Corporation ("Cintas") earlier this month, respectfully move, under 28 U.S.C. §1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation to transfer to the United States District Court for the Northern District of California ***all*** pending and yet-to-be-filed federal cases between Cintas and the 2,400 opt-in plaintiffs for consolidated or coordinated pretrial proceedings. Each of these cases involves the identical parties (Cintas and its current and former employees who assert claims for unpaid overtime and ERISA violations) and identical issues (the proper construction of Cintas' employment arbitration agreement and the authority of the American Arbitration Association ("AAA") to arbitrate the employees' overtime claims in the arbitration proceedings presently pending before AAA Arbitrator Bruce Meyerson).

The pending actions are listed in the accompanying Schedule of Involved Actions, attached hereto as Exhibit 7.[1] These actions assert identical questions of fact and law; and consolidation or coordination of these actions will necessarily promote efficiency and convenience of the parties, the witnesses and the courts. The requirements for transfer and consolidation or coordination are fully satisfied.

In support of this motion, the *Veliz* plaintiffs submit the accompanying brief and state as follows:

1.    The moving *Veliz* plaintiffs are the 2,400 current and former Cintas employees who either originally filed *Veliz v. Cintas Corp.*, No. 03-1180 SBA (N.D. Cal.) (the "*Veliz* Action"), or

---

[1]    If the *Veliz* plaintiffs become aware of additional actions brought against them by Cintas, we will inform the Panel.

who lawfully joined that action by filing individual Consents to Sue under Section 16(b) of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), pursuant to court-approved notice.

2.      The *Veliz* plaintiffs allege that defendant Cintas violated the FLSA by failing to pay

overtime premiums to plaintiffs, who are current and former route delivery drivers employed by

Cintas, often known as "Service Sales Representatives." The *Veliz* plaintiffs have also alleged class

action claims under various states' overtime laws on behalf of several subclasses, and a class action

claim under ERISA on behalf of all similarly situated current and former employees. A true and

correct copy of the operative Second Amended Class and Collective Action Complaint in *Veliz* is

attached to the accompanying Declaration of Michael Rubin in Support of the *Veliz* Plaintiffs'

Motion to Transfer and Consolidate Actions Pursuant to 28 U.S.C. §1407 ("Rubin Decl.") as

Exhibit 8.

3.      U.S. District Court Judge Saundra Brown Armstrong certified *Veliz* as a collective

action under the FLSA in November 2003, and gave potential plaintiffs until January 19, 2005 to opt

in to the litigation. A true and correct copy of the FLSA Notice that informed potential plaintiffs of

their right to participate in the *Veliz* action is attached to the Rubin Decl. as Exhibit 9. A total of

2,400 plaintiffs filed timely Consents to Sue.

4.      On August 8, 2003, Cintas moved to compel arbitration of the FLSA and state

overtime claims of the original 65 *Veliz* plaintiffs under Section 4 of the Federal Arbitration Act

("FAA"), 9 U.S.C. §4, pursuant to standardized employment agreements signed by most of those

plaintiffs that included a mandatory predispute arbitration clause. Cintas did not move to compel

arbitration of any *Veliz* plaintiffs' ERISA claims, which are outside the scope of Cintas' arbitration

agreements.

5.      On April 5, 2004, Judge Armstrong ordered 55 of the original 65 *Veliz* plaintiffs to

arbitrate their overtime claims, after severing various unconscionable provisions from Cintas'

arbitration agreements.   Rubin Decl., Ex. 10.   On May 4, 2005, after plaintiffs moved for

reconsideration, Judge Armstrong held that the arbitration of those 55 plaintiffs' overtime claims

must take place within the Northern District of California, as required by the venue provision of

FAA §4.  Rubin Decl., Ex. 11.

6.       On May 4, 2004, the 55 original *Veliz* plaintiffs who had been compelled to arbitrate

under Judge Armstrong's April 5, 2004 Order filed a Demand for Class/Collective Arbitration before

the AAA, under its Supplementary Rules for Class Arbitration.  In their arbitration demand, the *Veliz*

plaintiffs stated that they were proceeding on their own behalf and on behalf of all other plaintiffs

who had filed or would file Consents to Sue in the federal *Veliz* Action whose claims are deemed

arbitrable by the *Veliz* Court.  The demand in the *Veliz* Arbitration, AAA Case No. 11 160 01323 04,

is attached to the Rubin Decl. as Exhibit 12.  Cintas has fully participated in that arbitration and in

the summer of 2004, the *Veliz* plaintiffs and Cintas jointly selected the Hon. Bruce Meyerson, a

retired judge of the Arizona Court of Appeals, as the single arbitrator.

7.       In July 2004 and September 2005, the *Veliz* Arbitration claimants filed two

supplements to their demand for arbitration, submitting the names of additional *Veliz* opt-in plaintiffs

whose overtime claims were arbitrable under the *Veliz* Court's rulings.

8.       On March 29, 2006, the claimants in the AAA Arbitration submitted to Arbitrator

Meyerson a final list of the names of all *Veliz* plaintiffs whose overtime claims had been deemed

arbitrable by Judge Armstrong.

9.       On June 7, 2005, Cintas, having previously moved to compel arbitration under FAA

§4 against the first group of opt-in plaintiffs, filed a motion to stay litigation under FAA §3 against

the subsequent groups of opt-in plaintiffs whom Cintas asserted were required to arbitrate their

FLSA claims.  On February 14, 2006, Judge Armstrong granted Cintas' stay motion in part and

denied it in part, retaining jurisdiction over some opt-in plaintiffs and staying the litigation of other opt-in plaintiffs' overtime claims. Rubin Decl., Ex. 13.

10.  Under the AAA's Supplementary Rules for Class Arbitration, which all parties agree are applicable to the AAA proceedings before Arbitrator Meyerson, the first stage of the arbitration is a partial final award regarding "clause construction," which any party may move to confirm or vacate. Rule 3 of the AAA's Supplementary Rules provides as follows:

> ***Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award.*** Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.
>
> In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

(Emphasis added.)

11.  On February 9, 2006, the *Veliz* Arbitration claimants initiated the clause construction phase of the arbitration on their own behalf and on behalf of all similarly situated current and former Cintas employees by filing a motion and a brief setting forth the reasons why the Cintas arbitration agreements permit the arbitration to proceed on a class and collective basis. A true and correct copy of claimants' clause construction brief is attached to the Rubin Decl. as Exhibit 14.

12.  In their clause construction brief, the *Veliz* Arbitration claimants demonstrated why all opt-in plaintiffs in the *Veliz* Action with arbitrable overtime claims are lawfully and contractually entitled to participate in the *Veliz* Arbitration.

13.    On March 1, 2006, counsel for the parties participated in a teleconference with Arbitrator Meyerson to discuss an appropriate briefing and hearing schedule with respect to claimants' clause construction motion. Cintas asked to have until April 7, 2006 to file its opposition to the *Veliz* Arbitration claimants' clause construction brief and to submit any other motion Cintas might file. Arbitrator Meyerson granted Cintas' request and set a hearing date of May 9, 2006 on the clause construction issue.

14.    On or about March 10, 2006 – more than a month after claimants filed their clause construction motion – Cintas filed at least 70 separate Petitions to Compel Arbitration in district courts around the United States (the "Arbitration Actions"). These actions seek to compel arbitration, under FAA §4, of the FLSA and state-law overtime claims asserted in the *Veliz* Action by the individual opt-in plaintiffs in *Veliz* whose overtime claims in that case were stayed by Judge Armstrong under FAA §3, and whose arbitrations are already underway before Arbitrator Meyerson. All of the Arbitration Actions of which the *Veliz* plaintiffs are aware are listed on the Schedule of Involved Actions attached hereto as Exhibit 7. An exemplar of these petitions, filed by Cintas in *Cintas Corp. v. Griffin*, No. 4:06-cv-0091 (S.D. Iowa), is attached to the Rubin Decl. as Exhibit 4.

15.    Cintas' principal argument, presented in identical language in each of the 70 Arbitration Actions, is that the arbitration agreement language that Judge Armstrong previously construed, and that is presently under consideration by Arbitrator Meyerson at the clause construction phase of the pending AAA arbitration, requires the *Veliz* plaintiffs to arbitrate their claims in separate arbitrations around the country, notwithstanding that they have already submitted their claims to Arbitrator Meyerson.

16.    On or about March 23, 2006 Cintas began to serve the complaints in the Arbitration Actions, by personal service and by mail, on each of the over 1,800 defendants in those actions – each of whom is also a *Veliz* plaintiff in the case before Judge Armstrong.

17.     Each of the Arbitration Actions is essentially identical. Each rests on the identical legal argument and the identical construction of the Cintas arbitration agreements, and each further rests upon findings and rulings previously made by Judge Armstrong in *Veliz*. The only difference among the 70 Arbitration Actions is that each one names different *Veliz* plaintiffs as Arbitration Act defendants (depending on those plaintiffs' last place of employment with Cintas). Because issues in Cintas' petitions are related, and because the workers' defense to Cintas' Arbitration Actions will be identical as well and will likely resolve the petitions on dispositive pre-trial motions, consolidation of those actions is essential. There is a substantial risk of inconsistent rulings regarding the construction and interpretation of Cintas' arbitration agreements if the Arbitration Actions are permitted to proceed in 70 separate district courts, and are not coordinated or consolidated with the *Veliz* action. There is also a substantial risk of inconsistent rulings on the issues the Arbitration Action defendants are likely to raise in opposition on motions to dismiss, strike, abate, or stay those Actions.

18.     The *Veliz* Action and the Arbitration Actions are closely intertwined. Every party in the Arbitration Actions is also a party in the *Veliz* Action. Over the past three years, the *Veliz* Court has examined and analyzed the Cintas arbitration agreements at issue in the Arbitration Actions in extraordinary depth, and has issued several rulings concerning those agreements. *See, e.g.*, Rubin Decl., Exs. 10, 11, 13. All parties will be relying on these rulings in the Arbitration Actions.

19.     Because Cintas did not seek to compel arbitration of any of the *Veliz* plaintiffs' ERISA claims, the ERISA claims of each of the Arbitration Action defendants remain pending before Judge Armstrong in *Veliz*. The outcome of those claims depends on the merits of the plaintiffs' FLSA and state-law overtime claims, and cannot be decided by the *Veliz* Court until the adjudication of the overtime claims in the *Veliz* Court and in the *Veliz* Arbitration is completed, and until after any petition to confirm or vacate the award in the *Veliz* Arbitration is adjudicated. Those

- 6 -

ERISA claims will never be before the 70 federal courts in which Cintas recently filed the Arbitration Actions. All defendants in the Arbitration Actions have at least some federal claims remaining in the Northern District of California *Veliz* Action.

20.     If the Arbitration Actions are not consolidated or coordinated with the *Veliz* Action, the burden on the *Veliz* Court in adjudicating the ERISA claims of all the *Veliz* plaintiffs will be dramatically increased. If Cintas were to prevail in unconsolidated Arbitration Actions, the *Veliz* Court would have to wait for the outcomes of potentially dozens of separate arbitrations addressing the merits of the *Veliz* plaintiffs' overtime claims, including petitions to confirm or vacate arbitration awards, which might be inconsistent and inevitably would not conclude simultaneously. Such delays would be grossly inefficient and highly prejudicial to all of the *Veliz* plaintiffs, including not only the approximately 1,850 who are required to arbitrate, but also the 483 opt-in plaintiffs who were permitted to remain in federal court, but who may be unable to adjudicate their ERISA claims until the arbitrations of all similarly situated Cintas employees have been resolved as well.

21.     For these reasons, transfer for consolidation or coordination of the Arbitration Actions and the *Veliz* Action is necessary to avoid imposing an enormous financial and logistical burden on the court system and on the parties litigating those actions; to prevent inconsistent rulings on the interpretation of Cintas' arbitration agreements; to promote the convenience of the parties and witnesses; and to promote the just and efficient resolution of all of the cases.

22.     The U.S. District Court for the Northern District of California is the most appropriate transferee court for these actions because the *Veliz* Action has been ongoing there for three years; the *Veliz* Court has substantial familiarity with the arbitration agreements at issue in the Arbitration Actions, having decided three motions concerning the applicability and interpretation of Cintas' arbitration agreements; and the defendants in the Arbitration Actions, each of whom is also a

plaintiff in the *Veliz* Action, chose to participate in litigation proceeding in the Northern District of California, regardless of where he or she lives in the United States.

WHEREFORE, for the foregoing reasons and as set forth more fully in the accompanying brief, the *Veliz* plaintiffs respectfully move the Judicial Panel on Multidistrict Litigation to order the transfer for consolidation of all the Arbitration Actions and the *Veliz* Action to the District Court for the Northern District of California, assigning these matters to the Honorable Saundra Brown Armstrong, with her consent, or to another district court with the experience to manage the complex litigation involved here.

DATED: March 30, 2006                    Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
THEODORE J. PINTAR
STEVEN W. PEPICH
JAMES A. CAPUTO
LAWRENCE A. ABEL
HELEN I. ZELDES

_____
          STEVEN W. PEPICH

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ALBERT H. MEYERHOFF
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210
Telephone: 310/859-3100
310/278-2148 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
NANCY M. JUDA
1100 Connecticut Avenue, N.W., Suite 730
Washington, DC  20036
Telephone:  202/822-6762
202/828-8528 (fax)

ALTSHULER, BERZON, NUSSBAUM,
  RUBIN & DEMAIN
MICHAEL RUBIN
SCOTT A. KRONLAND
EILEEN B. GOLDSMITH
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone: 415/421-7151
415/362-8064 (fax)

TRABER & VOORHEES
THERESA M. TRABER
VANESSA H. EISEMANN
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Telephone: 626/585-9611
626/577-7079 (fax)

Attorneys for Petitioners

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.     That on March 30, 2006, declarant served THE *VELIZ* PLAINTIFFS' MOTION TO TRANSFER AND CONSOLIDATE ACTIONS PURSUANT TO 28 U.S.C. §1407 by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.     Pursuant to Rule 5.12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, copies will be filed in each district court in which an action is pending that will be affected by this motion.

4.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of March, 2006, at San Diego, California.

_____
CINDI J. LAMBERT

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 1 of 5

Counsel for Defendants

Theodore J. Pintar
Steven W. Pepich
James A. Caputo
Lawrence A. Abel
Helen I. Zeldes
**Lerach Coughlin Stoia Geller Rudman &**
    **Robbins LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel: 619/231-1058
Fax: 619/231-7423

Nancy M. Juda
**Lerach Coughlin Stoia Geller Rudman &**
    **Robbins LLP**
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC  20036
Tel:  202/822-6762
Fax: 202/828-8528

Theresa M. Traber
Vanessa H. Eisemann
**Traber & Voorhees**
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Tel:  626/585-9611
Fax: 626/577-7079

Albert H. Meyerhoff
**Lerach Coughlin Stoia Geller Rudman &**
    **Robbins LLP**
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Tel:  310/859-3100
Fax: 310/278-2148

Michael Rubin
Scott A. Kronland
Eileen B. Goldsmith
**Altshuler, Berzon, Nussbaum,**
    **Rubin & Demain**
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
Fax: 415/362-8064

Counsel for Plaintiff Cintas Corporation

T. Joshua Archer
**Balch & Bingham LLP**
3535 Piedmont Road
14 Piedmont Center, Suite 1100
Atlanta, GA  30305
Tel: 404/261-6020

Brentley Tyler Cobb
Douglas Brian Kauffman
M. Jefferson Starling, III
**Balch & Bingham**
1710 6th Avenue North
PO Box 306
Birmingham, AL 35201-0306
Tel: 205/251-8100
Fax: 205/266-8798

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 2 of 5

James H. Elliott
**Barnwell Whaley Patterson and Helms**
885 Island Park Drive
Charleston, SC 29492-0197
Tel: 843/577-7700
Fax: 843/577-7708

Daniel W Glavin
Randall J Nye
rnye@bkslegal.com
**Beckman Kelly & Smith**
5920 Hohman Avenue
Hammond, IN 46320-2423
Tel: 219/933-6200
Fax: 219/933-6201

Dmitry Shifrin
Steven Russell Smith
William J. Wortel
**Bryan Cave LLP**
161 North Clark Street
Suite 4300
Chicago, IL 60601
Tel: 312/602-5060
Fax: 312/602-5050

Elaine D. Koch
James D. Lawrence
**Bryan Cave LLP**
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2100
Tel: 816/374-3200 x3235
Fax: 816-374-3300

Charles B. Jellinek
**Bryan Cave LLP**
211 N. Broadway
Suite 3600
St. Louis, MO 63102-2750
Tel: 314/259-2000
Fax: 314/259-2020

Kevin Richard Tully
Howard Carter Marshall
Terry Christovich Gay
**Christovich & Kearney, LLP**
Pan American Life Center
601 Poydras St., Suite 2300
New Orleans, LA 70130-6078
Tel: 504/561-5700
Fax: 504/561-5743

Todd D. Kilpatrick
**Coughlin, Gerhart Law Firm**
P.O. Box 2039
20 Hawley Street
Binghamton, NY 13902-2039
Tel: 607/723-9511
Fax: 607/723-1530

Thomas D. Goldberg
**Day, Berry & Howard**
One Canterbury Green
Stamford, CT  06901-2047
Tel: 203/977-7383
Fax: 203/977-7301

C. Timothy Hopkins
Steven K. Brown
**Hopkins Roden Crockett Hansen & Hoopes**
P.O. Box 51219
Idaho Falls, ID  83405-1219
Tel: 208/523-4445
Fax: 203/523-4474

Beth L Steffan
Timothy D Kelly
**Kelly & Berens, PA**
80 S 8th St Ste 3720
Minneapolis, MN 55402
Tel: 612/349-6171
Fax: 612/349-6416

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 3 of 5

Stephen E Kravit
Sarah J Friday
John F Hovel
**Kravit Hovel Krawczyk & Leverson SC**
825 N Jefferson St - 5th Fl
Milwaukee, WI 53202
Tel: 414/271-7100
Fax: 414/271-8135

Thomas Finarelli
Wayne A. Graver
**Lavin, O'Neil, Ricci, Cedrone & DiSipio**
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
Tel: 215/627-0303
Fax: 215/627-2551

Hugh Peterson, III
**McNatt, Greene & Peterson**
P.O. Drawer 1168
Vidalia, GA  30475-1168
Tel: 912/537-9343
Fax: 912/537-2658

Jay Eaton
**Nyemaster Goode Voigts West Hansell &
    O'Brien, PC**
700 Walnut
Suite 1600
Des Moines, IA 50309
Tel: 515/283-3100
Fax: 515/283-3108

Damon J. Georgelas
Erik A. Christiansen
**Parsons Behle & Latimer**
201 S. Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, UT 84145-0898
Tel: 801/532-1234
Fax: 801/536-6111

Matthew M. Enenbach
Robert M. Slovek
**Kutak, Rock Law Firm**
1650 Farnam Street
Omaha, NE 68102-2186
Tel: 402/346-6000
Fax: 402/346-1148

Wayne John Positan
**Lum, Danzis, Drasco & Positan, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068-1049
Tel: 973/403-9000
Fax: 973/403-9021

Jason A. Cincilla
**Morris, Nichols, Arsht & Tunnell**
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
Tel: 302/658-9200
Fax: 302/658-3989

Norman H. Kirshman
Robert L Rosenthal
**Parsons Behle & Latimer**
411 E. Bonneville
Suite 300
Las Vegas, NV 89101
Tel: 702/384-3877
Fax: 702/599-6023

Douglas M. Todd
Thomas G. Wolfe
**Phillips McFall McCaffrey McVay & Murrah,
PC**
One Leadership Square
211 N. Robinson
Twelfth Floor
Oklahoma City, OK 73102
Tel: 405/235-4100
Fax: 405/235-4133

Cintas MDL (MDL No. ____)
Service List – 3/30/2006
Page 4 of 5

Robert M Howie
Skylar A Sherwood
**Riddell Williams PS**
1001 Fourth Avenue
Suite 4500
Seattle, WA 98154
Tel: 206/624-3600
Fax: 206/389-1708

Amanda T. Gamblin
David W. Axelrod
**Schwabe, Williamson & Wyatt PC**
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Or 97204
Tel: 503/796-2903
Fax: 503/796-2900

Pierre H. Bergeron
**Squire, Sanders & Dempsey**
312 Walnut Street
Suite 3500
Cincinnati, OH 45202-4036
Tel: 513/361-1289
Fax: 513/361-1201

Steven Bradley Harris
Mark S Armstrong
**Squire Sanders & Dempsey**
600 Travis
6250 Chase Tower
Houston, TX 77002
Tel: 713/546-5850
Fax: 713/546-5830

Jeffrey E. Storch
**Squire Sanders & Dempsey LLP**
350 Park Avenue
New York, NY 10022-6022
Tel: 212/872-9800
Fax: 212/872-9815

Paul W. Chaiken
Phillip D. Buckley
**Rudman & Winchell**
84 Harlow Street
P.O. Box 1401
Bangor, ME 04401
Tel: 207/947-4501
Fax: 207/941-9715

James K. Dorsett, III
Michael R. Gordon
**Smith Anderson Blount Dorsett Mitchell & Jernigan**
P.O. Box 2611
Raleigh, NC 27602-2611
Tel: 919/821-1220
Fax: 919/821-6800

James Dean Thomas
Philip Oliss
Stacy D. Ballin
**Squire Sanders & Dempsey LLP**
4900 Key Tower
127 Public Sq.
Cleveland, OH 44114
Tel: 216/479-8500
Fax: 216/479-8780

Carlotta Justine Roos
**Squire, Sanders & Dempsey LLP**
Wachovia Financial Center
200 S. Biscayne Blvd., Suite 4000
Miami, FL 33131-2398
Tel: 305/577-7000
Fax: 305/577-7001

Joseph A. Meckes
Mark C. Dosker
Michael W. Kelly
Sara Kathryn Regan
Rodney R. Patula
**Squire Sanders & Dempsey**
1 Martime Plaza, Suite 300
San Francisco, CA 94111-3492
Tel: 415/954-0200
Fax: 415/393-9887

Cintas MDL (MDL No. \_\_\_\_)
Service List – 3/30/2006
Page 5 of 5

John Anson Burlingame
**Squire Sanders and Dempsey LLP**
1201 Pennsylvania Ave NW Ste 500
PO Box 407
Washington, DC 20004-0407
Tel: 202/626-6600
Fax: 202/626-6780

Dudley Collier Graham, Jr.
Jeremy L. Birdsall
**Wise, Carter, Child & Caraway**
P. O. Box 651
Jackson, MS 39205-0651
Tel: 601/968-5500
Fax: 601/968-5593

Thomas W. Lyons, III
**Strauss, Factor, Laing & Lyons**
222 Richmond Street
Suite 208
Providence, RI 02903-2914
Tel: 401/456-0700
Fax: 401/421-4730

S:\CasesSD\Cintas\NonPldgs\3.30.06 MDL Service List.doc

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re CINTAS CORPORATION | ) | MDL No. _____ |
| ARBITRATION LITIGATION | ) | |
| | ) | |

**BRIEF OF THE *VELIZ* PLAINTIFFS IN SUPPORT OF MOTION TO TRANSFER AND
CONSOLIDATE ACTIONS PURSUANT TO 28 U.S.C. §1407**

## I.    INTRODUCTION

This MDL Petition is submitted by 2,400 individual plaintiffs who filed or subsequently joined a class and collective action in the U.S. District Court for the Northern District of California against their employer, Cintas Corporation ("Cintas"), alleging failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA") and various state laws, overtime and further alleging violations of ERISA. *Paul Veliz, et al. v. Cintas Corporation*, No. 03-1180 SBA (the "*Veliz* Action"). Many of those plaintiffs (the "*Veliz* Plaintiffs") have now been individually served with Petitions to Compel Arbitration, filed by Cintas in at least 70 separate federal courts on or about March 10, 2006. The Petition filings come *after* Judge Saundra Brown Armstrong, the assigned judge in the *Veliz* Action, issued her rulings concerning the enforceability of the parties' arbitration agreements, and *after* arbitration had been initiated before the American Arbitration Association ("AAA"), an arbitrator jointly selected with Cintas, and a "clause construction" motion had been filed with the arbitrator. The "clause construction" motion specifically addresses whether the parties' arbitration agreements permit all arbitrating plaintiffs to pursue their class and collective overtime claims against Cintas in a *single* arbitration proceeding governed by the AAA's Supplementary Rules on Class Arbitration.

Plaintiffs, through this Petition, seek consolidation of all 70 lawsuits, which raise identical issues and concern identical parties, and the transfer of those lawsuits to Judge Armstrong in the Northern District of California, who is fully familiar with the arbitration issues and who is already handling all *Veliz* Plaintiffs' ERISA claims, and some of their overtime claims.

Under 28 U.S.C. §1407, the Judicial Panel on Multidistrict Litigation may consolidate or coordinate multiple civil actions pending in different district courts when the actions involve one or more common questions of fact, and when such transfer will conserve judicial and party resources, promote the convenience of parties and witnesses, and promote the just and efficient conduct of the

actions. These standards are amply satisfied here, where one party, Cintas, has recently filed identical actions in 70 district courts around the country to compel approximately 1,850 of its current and former employees, who are all *Veliz* Plaintiffs, to arbitrate their FLSA and state-law overtime claims against the company – the very *same* claims that those *same* individuals have already asserted in the Northern District of California litigation against Cintas that has been pending for the past three years, and the *same* claims that those 1,850 *Veliz* Plaintiffs have already submitted to arbitration.

Not only does Cintas assert identical allegations in each of the arbitration actions, but the *Veliz* Plaintiffs intend to assert identical defenses in each of those actions and file identical motions to dismiss, strike, stay or abate those 70 actions. To prepare 70 sets of pleadings in those 70 proceedings and retain 70 sets of local counsel, rather than presenting those arguments once in one consolidated proceeding, the *Veliz* Plaintiffs will be forced to incur enormous, unnecessary and wasteful expense, and run the risk of inconsistent adjudication of identical issues. If this litigation expands exponentially, as Cintas seemingly intends, the risk of inconsistent rulings will be magnified and the efficient management of the *Veliz* action will be destroyed.

There is no sensible reason to burden the parties and 70 district courts with identical proceedings that not only are legally baseless, but also are completely intertwined with and controlled by the Northern District of California in the *Veliz* Action. Thus, the *Veliz* Plaintiffs respectfully ask the Panel to consolidate Cintas' newly-filed cases, and any similar actions yet to be filed, with each other and with the *Veliz* Action. The *Veliz* Plaintiffs further ask the Panel to assign the consolidated MDL action to the Hon. Saundra Brown Armstrong, the district judge in the *Veliz* action who has been presiding over the litigation between Cintas and all of the *Veliz* Plaintiffs since March 13, 2003.

## II.    BACKGROUND

Plaintiffs in the *Veliz* Action are the 2,400 individuals who filed Consents to Sue under Section 16(b) of the FLSA, 29 U.S.C. §216(b), and thereby joined the *Veliz* Action as individual party plaintiffs. The *Veliz* Plaintiffs allege, on a "collective action" basis, that Cintas violated the FLSA by failing to pay them overtime. The *Veliz* Plaintiffs also allege, on a "class action" basis, that Cintas violated applicable states' overtime laws and further allege, again on a class basis, that Cintas violated their rights under ERISA.

On August 8, 2003, Cintas moved before Judge Armstrong to compel arbitration of the FLSA and state overtime claims of the original 65 *Veliz* Plaintiffs, under employment agreements that included a mandatory predispute arbitration clause. Cintas did not seek to compel any plaintiff to arbitrate his or her ERISA claims, but agreed that plaintiffs' ERISA claims should remain before Judge Armstrong because those claims were beyond the scope of Cintas' arbitration agreements.

On April 5, 2004, the *Veliz* court ordered 55 of the original 65 *Veliz* Plaintiffs to arbitrate their overtime claims. On May 4, 2005, ruling on plaintiffs' motion for reconsideration, the *Veliz* court held that, under the venue provision of §4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, the arbitration of those 55 plaintiffs' overtime claims must take place within the Northern District of California.

On May 4, 2004, the original 55 *Veliz* Plaintiffs who were compelled to arbitrate under the *Veliz* court's April 5, 2004 Order initiated a class/collective arbitration of their overtime claims before the American Arbitration Association ("AAA"), under its Supplementary Rules for Class Arbitration. *See* Arbitration Demand, AAA Case No. 11 160 01323 04. Attached as Exhibit 12 to the Declaration of Michael Rubin in Support of the *Veliz* Plaintiffs' Motion to Transfer and Consolidate Actions Pursuant to 28 U.S.C. §1407 ("Rubin Decl."). In their arbitration demand, plaintiffs stated that they were proceeding on their own behalf and on behalf of all similarly situated

Cintas employees who were, or would be, required to arbitrate those claims pursuant to Judge Armstrong's analysis of the Cintas arbitration agreements. In the summer of 2004, plaintiffs and Cintas jointly selected the Hon. Bruce Meyerson, a retired judge of the Arizona Court of Appeals, as the arbitrator.

In July 2004 and September 2005, the *Veliz* Arbitration claimants filed two supplements to their demand for arbitration, identifying the names of additional opt-in plaintiffs whom the parties agreed, under the *Veliz* court's rulings, were required to arbitrate those claims. On March 29, 2006, after Judge Armstrong on February 14, 2006 stayed litigation against the subsequent groups of opt-in plaintiffs whom Cintas asserted were required to arbitrate their FLSA claims, the claimants in the AAA arbitration submitted to Arbitrator Meyerson a final list of the names of all *Veliz* Plaintiffs whose overtime claims Judge Armstrong had deemed arbitrable.

Under the AAA's Supplementary Rules for Class Arbitration, which apply to the AAA proceedings before Arbitrator Meyerson, the first stage of the arbitration is "clause construction." At that stage, the arbitrator must determine, "as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Supplementary Rules for Class Arbitration, Rule 3. The rules authorize any party to move a court to confirm or vacate this partial final award.[1]

On February 9, 2006, the *Veliz* Arbitration claimants initiated the clause construction phase of the arbitration, on their own behalf and on behalf of all similarly situated current and former

---

[1]     The AAA Supplementary Rules for Class Arbitration provide for the arbitration to proceed in three phases: (1) clause construction; (2) class certification; and (3) adjudication of the merits. After the first and second phases, any party may seek to confirm or vacate the arbitrator's partial final award. After arbitration is completed on the merits, any party could, of course, petition a court to confirm or vacate the final arbitration award.

Cintas employees, by filing a motion and a brief setting forth the reasons why the Cintas arbitration agreements permit the arbitration to proceed in one forum on a class and collective basis. In their clause construction brief, the *Veliz* Arbitration claimants demonstrated why all *Veliz* Plaintiffs with arbitrable overtime claims are lawfully and contractually entitled to participate in the *Veliz* Arbitration. *See* Rubin Decl., Ex. 14.

On March 1, 2006 counsel for the parties participated in a teleconference with Arbitrator Meyerson to discuss an appropriate briefing and hearing schedule with respect to claimants' February 9, 2006 clause construction motion. Cintas asked to have until April 7, 2006, to file its opposition to the *Veliz* Arbitration claimants' clause construction brief and to submit any other motion Cintas might file. Arbitrator Meyerson granted Cintas' request and set a hearing date of May 9, 2006 on the clause construction issue.

On or about March 10, 2006 – more than a month *after* claimants filed their clause construction motion – Cintas filed at least 70 separate Petitions to Compel Arbitration in district courts around the United States (the "Arbitration Actions"). These actions seek to compel arbitration, under FAA §4, of the individual *Veliz* Plaintiffs' FLSA and state-law overtime claims even though arbitration of their claims is *already underway* before Arbitrator Meyerson.

Each of the 70 Arbitration Actions is essentially identical. Cintas' principal argument, presented in identical language in each petition, is that the arbitration agreement language that Judge Armstrong previously construed, and that is presently under Arbitrator Meyerson's consideration through the clause construction phase of the pending AAA arbitration, requires the *Veliz* Plaintiffs to arbitrate their claims in separate arbitrations around the country, notwithstanding they have already submitted their claims to Arbitrator Meyerson. Each of the Arbitration Actions rests on the identical legal argument and the identical construction of the Cintas arbitration agreements, and each further rests upon findings and rulings previously made by Judge Armstrong in *Veliz*. The only difference

between the 70 Arbitration Actions is that each one names different *Veliz* Plaintiffs as Arbitration Action defendants, depending on those plaintiffs' last place of employment with Cintas.

Because Cintas did not seek to compel arbitration of any of the *Veliz* Plaintiffs' ERISA claims, the ERISA claims of each of the Arbitration Action defendants remain pending before Judge Armstrong in *Veliz*. The outcome of those claims depends on the merits of the plaintiffs' FLSA and state-law overtime claims, and cannot be decided by the *Veliz* court until the adjudication of the overtime claims in the *Veliz* action and in the *Veliz* Arbitration is completed, and until after any petition to confirm or vacate the award in the *Veliz* Arbitration is adjudicated.[2]

On or about March 23, 2006, Cintas began to serve the complaints in the Arbitration Actions, by personal service and by mail, apparently on each of the nearly 1,850 defendants in those actions. Cintas has refused to provide the *Veliz* Plaintiffs' counsel with courtesy copies of the papers it filed in the Arbitration Actions, or to identify either the district courts in which those actions were filed or the individuals named as defendants.

## III.    ARGUMENT

### A.    The Actions Involve Identical Parties.

The fact that the parties in all 71 district court actions are identical, in that each of the individual defendants in Cintas' most recent lawsuits is also a plaintiff in the 2003 *Veliz* Action and Cintas is the defendant in *Veliz*, strongly favors consolidating these actions. *See, e.g., In re Ownership of Longoria Bank Deposits Litig.*, 431 F. Supp. 913, 916 (J.P.M.L. 1977).

---

[2]    The *Veliz* court also retains jurisdiction over the overtime claims of 483 *Veliz* Plaintiffs who are not required to arbitrate at all.

B.    **The Actions Involve Common Questions of Fact and Law and are Closely Intertwined.**

Consolidation or coordination of these actions is also particularly appropriate because the actions involve common issues of fact and law. *See, e.g., In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1979) ("when two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events, common questions are presumed").

The Arbitration Actions involve identical allegations by Cintas against the defendants, who are plaintiffs in the *Veliz* Action and claimants in the *Veliz* Arbitration. In each of the Arbitration Actions, Cintas makes the same allegation that the employees are violating their arbitration agreements with Cintas by arbitrating collectively before Arbitrator Meyerson in San Francisco; and Cintas seeks in each action to require those employees to arbitrate their FLSA and state-law overtime claims – the claims those same persons assert against Cintas in the *Veliz* Action and *Veliz* Arbitration – in the judicial district in which each Arbitration Action has been filed. Thus, each of the 70 Arbitration Actions will require a district court to construe the identical contract language in the Cintas arbitration clauses to determine whether the defendants before that court are refusing to arbitrate within the meaning of FAA §4. Coordination or consolidation of these actions is thus necessary to prevent inconsistent interpretations of these standardized contracts. *See, e.g., In re PrimeVision Health, Inc., Contract Litig.*, 206 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002); *In re Shell Oil Prods. Co. Dealer Franchise Litig.*, 206 F. Supp. 2d 1373, 1374 (J.P.M.L. 2002).

In addition to construing the Cintas arbitration agreements, the district courts where the Arbitration Actions have been filed will also be required to address identical factual and legal arguments asserted in defense of Cintas' allegations. If compelled to litigate the Arbitration Actions in dozens of district courts around the country, the Arbitration Action defendants will move to dismiss, strike, stay, or abate those actions in favor of the ongoing *Veliz* Arbitration, and may bring

other pretrial motions as appropriate.  Those motions will present identical questions of fact and law

regarding, *inter alia*, the proper interpretation of FAA §4 as applied to the history of the Arbitration

Actions, the proceedings in the *Veliz* Action, and the ongoing *Veliz* Arbitration.  None of these

questions of fact or law turns on any Arbitration Action defendant's individual circumstances, but

rather will be decided based on the language in Cintas' standardized arbitration agreements and the

history of the *Veliz* proceedings and the pending AAA arbitration.  Thus, consolidating or

coordinating the Arbitration Actions with the *Veliz* Action would prevent inconsistent rulings on

these issues.  *See, e.g., In re Mut. Fund Sales Antitrust Litig.*, 361 F. Supp. 638, 640 (J.P.M.L. 1973)

(existence of common threshold legal questions favors consolidation of actions).  Indeed, it would be

an astonishing and unprecedented waste of judicial and party resources to force dozens of district

courts to adjudicate these identical issues.

Finally, the Arbitration Actions are closely intertwined with the *Veliz* Action.  The *Veliz*

court has already analyzed the very arbitration agreements that are at issue in the Arbitration Actions

and has issued several orders regarding those agreements.  Indeed, Cintas seeks to rely on many of

the *Veliz* court's rulings regarding those agreements in the Arbitration Actions, apparently for res

judicata, collateral estoppel, or law of the case purposes against the Arbitration Defendants/*Veliz*

Plaintiffs.[3]

### C.     Consolidation or Coordination of the Actions will Promote the Conservation of the Parties' and the Judicial System's Resources and Just Resolution of the Actions.

All of the Arbitration Actions should also be consolidated with the *Veliz* Action to prevent

this nationwide, highly complicated litigation from fragmenting into dozens of incredibly expensive,

---

[3]     The fact that the *Veliz* Action involves additional legal and factual issues concerning the merits of plaintiffs' overtime and ERISA claims is no obstacle to consolidating that action with the Arbitration Actions.  *See In re Data General Corp. Antitrust Litig.*, 470 F. Supp. 855, 858-59 (J.P.M.L. 1979) (consolidating several antitrust actions with trade secrets action).

duplicative proceedings with potentially conflicting results – in a word, chaos. Without this Panel's intervention, the 70 Arbitration Actions would proceed on separate tracks, all of which would involve decisions on identical matters – which are not likely to be resolved consistently in so many courts – and all of which would eventually return to the *Veliz* court's doorstep, at different times.

To litigate the Arbitration Actions, the *Veliz* Plaintiffs will have to retain dozens of local counsel and incur substantial costs in filing identical papers in dozens of district courts. The court system similarly will incur substantial expense in adjudicating these identical actions.

Meanwhile, because each of the Arbitration Actions will move forward on separate tracks unless they are coordinated or consolidated, the timing and efficient management of the *Veliz* action will be thrown into utter turmoil. The *Veliz* court has retained jurisdiction over all of the opt-in plaintiffs' ERISA claims, and therefore over all of the Arbitration Action defendants' ERISA claims. Based on the *Veliz* court's orders, and the parties' agreements in light of those orders, approximately 1,850 of the *Veliz* opt-in plaintiffs must arbitrate their FLSA and state-law overtime claims against Cintas. Upon completion of that arbitration (or arbitrations), all parties will return to the *Veliz* court for the adjudication of the ERISA claims.

In *Veliz*, the parties will undoubtedly return to the court for petitions to confirm or vacate the interim and final awards in the *Veliz* Arbitration. The *Veliz* Plaintiffs who must arbitrate their overtime claims – which group includes all of the Arbitration Action defendants – have already submitted those claims to Arbitrator Meyerson. Under the AAA's Supplementary Rules for Class Arbitration, parties may move the court twice to confirm or vacate interim awards, first after the arbitrator determines whether the arbitration clauses at issue permit class or collective arbitration, and again after the arbitrator determines whether to certify a class. Any party could also move to confirm or vacate Arbitrator Meyerson's final award on the merits. Thus, if Arbitrator Meyerson

permits the *Veliz* Plaintiffs' claims to proceed collectively in arbitration, the *Veliz* court may hear as many as three petitions to confirm or vacate his awards, before it reaches the ERISA claims.

If the Arbitration Actions are not consolidated or coordinated with *Veliz*, each of the 70 or more district courts might each eventually hear as many as three petitions to confirm or vacate interim and final arbitration awards on the *Veliz* Plaintiffs' overtime claims – all based on the same arbitration agreements and a single, nationwide misclassification policy by Cintas – as the Arbitration Action defendants proceed with their claims in separate arbitrations all over the country. It is highly unlikely that all of these separate proceedings would conclude at the same time or reach the same results. In the *Veliz* Action, Judge Armstrong would have to wait for all of these other proceedings to run their course before adjudicating the ERISA claims of the Arbitration Action defendants, which remain before her.

In short, if the actions are not consolidated or coordinated, the costs to the parties and the court system of litigating 70 different actions would be extraordinary, a factor that weighs heavily in favor of transfer and consolidation and/or coordination of the actions under §1407. *See In re Diet Drugs Prods. Liability Litig.*, 990 F. Supp. 834, 836 (J.P.M.L. 1998) (emphasizing economies of scale and conservation of resources in approving transfer petition potentially involving scores of cases). The exponential multiplication of proceedings would heighten the risk of inconsistent rulings on common issues. Perhaps most significantly, the timing and efficient management of this litigation would be destroyed. Therefore, the interests of justice would best be served by consolidating and/or coordinating all 70 cases.

### D.    The Transfer of All Actions Would Promote the Convenience of Parties and Witnesses

The goals of convenience of parties and witnesses are best served by consolidating these actions. The defendants in the Arbitration Actions are all opt-in plaintiffs in the *Veliz* Action. As opt-in plaintiffs in an FLSA action under 29 U.S.C. §216(b), each of these individuals chose to

participate in the *Veliz* Action venued in the Northern District of California. Those individuals joined the *Veliz* Action in response to a court-ordered and court-approved *Hoffman-LaRoche* notice, which informed them of their right to participate in the Northern District of California action, as well as their right to litigate their FLSA claims independently of that action, for example, in their home district court, if they so chose. The court ordered notice also informed the *Veliz* Plaintiffs that the Court would later determine whether their non-ERISA overtime claims would proceed in arbitration rather than in litigation. By affirmatively joining the *Veliz* Action in reliance on those disclosures, the defendants in the Arbitration Actions demonstrated their preference to litigate in a single, collective litigation or arbitration venued in the Northern District of California, rather than in separate actions.

Nor would Cintas be inconvenienced by litigating in a consolidated action. Cintas has been litigating the *Veliz* Action in the Northern District of California, and will continue to litigate that case there regardless of whether the Arbitration Actions proceed separately or are transferred pursuant to §1407. Moreover, according to the PACER docket reports for the Arbitration Actions, Cintas' San Francisco lawyers in the *Veliz* Action from Squire, Sanders, and Dempsey, are also named as Cintas' counsel of record in nearly all of those cases. *See* Schedule of Involved Actions, Rubin Decl., Ex. 7. In short, Cintas' litigation strategy is being steered by its San Francisco lawyers in *Veliz*, and it would be no inconvenience to them to transfer the Arbitration Actions, especially if they were transferred to the Northern District of California.[4]

---

[4]    There is no question that the convenience of Cintas' witnesses is worthy of consideration. According to PACER, and the one petition Cintas has provided to the *Veliz* Plaintiffs, Cintas is supporting the Arbitration Actions not with testimony of local witnesses in each of the 71 forums, but solely with the declarations of an employee at its Cincinnati headquarters who maintains Cintas employees' arbitration agreements, and its lead counsel in the *Veliz* Action, who is based in San Francisco. Moreover, the Panel recognizes that parties and witnesses rarely attend pretrial

### E.    The Northern District of California is the Most Appropriate Transferee Forum.

Because of the advanced stage of the *Veliz* Action and the *Veliz* court's extraordinary familiarity with the Cintas arbitration agreements at issue both in that action and in each of the Arbitration Actions, all of the cases should be transferred to the *Veliz* court. Judge Armstrong's familiarity with the issues raised by the cases to be transferred and the advanced stage of the proceedings before her are important considerations in selecting the appropriate transferee court. *See, e.g., Shell Oil*, 206 F. Supp. 2d at 1374 (transferee court's familiarity with issues); *Air West*, 384 F. Supp. at 611 (same); *In re Cisco Sys. Sec. & Deriv. Litig.*, 268 F. Supp. 2d 1378, 1379 (J.P.M.L. 2003) (transferee court handled one of the actions for two years); *In re Progressive Corp., Ins. Underwriting & Rating Practices Litig.*, 259 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) (same).

The *Veliz* Action has been pending before Judge Armstrong for three years, since March 2003. Over the past three years, Judge Armstrong has invested substantial time and resources in examining the Cintas arbitration agreements at issue in the Arbitration Actions. Cintas originally moved to compel arbitration of the FLSA and state-law claims of all the plaintiffs who had by then joined the *Veliz* Action, based on those very agreements, in August 2003. In addition to ruling on the original motion to compel arbitration, Judge Armstrong has had several additional opportunities to examine the Cintas agreements. Plaintiffs moved for reconsideration of the Court's order granting Cintas' original motion to compel arbitration, requiring Judge Armstrong to further analyze the arbitration agreements. After the opt-in period had closed, the parties could not agree whether the overtime claims of certain groups of plaintiffs were arbitrable under the reasoning of the Court's

---

conferences or hearings. *In re Hawaiian Hotels Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936-37 (J.P.M.L. 1977).

prior orders. The parties filed cross-motions in June 2005 regarding those arbitrability disputes, and the *Veliz* court ruled that the claims at issue were arbitrable.

In contrast to the *Veliz* court's extensive familiarity with the Cintas arbitration agreements, the 70 district courts in which the Arbitration Actions were just filed have no such familiarity. Those actions were filed on or about March 10, 2006. To the *Veliz* Plaintiffs' knowledge, Cintas only began to serve those actions on the individual defendants on or about March 23, 2006. The Arbitration Actions' publicly available dockets do not reflect any substantial activity in those cases. *See* Schedule of Involved Actions, Rubin Decl., Ex. 7. Thus, none of those 70 courts has any particular familiarity with the Cintas arbitration agreements, nor has any of those courts made a substantial investment of time or resources in any of the Arbitration Actions, unlike the *Veliz* court.

Finally, the Northern District of California is the center of gravity of this litigation. As explained above, the Northern District of California is the preferred district of all of the Arbitration Action defendants, each of whom affirmatively joined the *Veliz* Action. Also, because the *Veliz* Court retains jurisdiction over each of those individuals' ERISA claims, each Arbitration Action defendant will eventually return to that Court for adjudication of his or her ERISA claims, regardless of where his or her overtime claims are arbitrated. Cintas, as the defendant in the *Veliz* Action, is already litigating in the Northern District of California, and will continue to do so for the pendency of that action, both with respect to the FLSA claims of those opt-in plaintiffs who remain before the *Veliz* court, and with respect to the ERISA claims of each of the Arbitration Action defendants.

Because the *Veliz* court has already invested extraordinary time and resources in the *Veliz* Action, including in the analysis of the very arbitration agreements at issue in all of the Arbitration Actions; the district courts in which the Arbitration Actions were filed have not taken any action in those cases; and all parties to all of the Arbitration Actions will eventually return to the *Veliz* court

for the adjudication of the ERISA claims, the Northern District of California, where the *Veliz* Action

is venued, and the *Veliz* court in particular, is the most appropriate transferee court for this litigation.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs in the *Veliz* Action respectfully ask the Judicial Panel on

Multidistrict Litigation to consolidate or coordinate all of the Arbitration Actions with the *Veliz*

Action, and to transfer all cases to the District Court for the Northern District of California, Hon.

Saundra Brown Armstrong, or to another district court with the experience to manage the complex

litigation presented here.

DATED:  March 30, 2006

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
THEODORE J. PINTAR
STEVEN W. PEPICH
JAMES A. CAPUTO
LAWRENCE A. ABEL
HELEN I. ZELDES


          STEVEN W. PEPICH

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
ALBERT H. MEYERHOFF
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone:  310/859-3100
310/278-2148 (fax)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
NANCY M. JUDA
1100 Connecticut Avenue, N.W., Suite 730
Washington, DC  20036
Telephone:  202/822-6762
202/828-8528 (fax)

ALTSHULER, BERZON, NUSSBAUM,
    RUBIN & DEMAIN
MICHAEL RUBIN
SCOTT A. KRONLAND
EILEEN B. GOLDSMITH
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
415/362-8064 (fax)

TRABER & VOORHEES
THERESA M. TRABER
VANESSA H. EISEMANN
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Telephone:  626/585-9611
626/577-7079 (fax)

Attorneys for Plaintiff

DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.      That on March 30, 2006, declarant served the BRIEF OF THE *VELIZ* PLAINTIFFS IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE ACTIONS PURSUANT TO 28 U.S.C. §1407 by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.      Pursuant to Rule 5.12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, copies will be filed in each district court in which an action is pending that will be affected by this motion.

4.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of March, 2006, at San Diego, California.

_____
CINDI J. LAMBERT

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 1 of 1

Counsel for Defendants

Theodore J. Pintar
Steven W. Pepich
James A. Caputo
Lawrence A. Abel
Helen I. Zeldes
**Lerach Coughlin Stoia Geller Rudman &**
**Robbins LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel: 619/231-1058
Fax: 619/231-7423

Nancy M. Juda
**Lerach Coughlin Stoia Geller Rudman &**
**Robbins LLP**
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC  20036
Tel:  202/822-6762
Fax: 202/828-8528

Theresa M. Traber
Vanessa H. Eisemann
Jocelyn S. Sperling
**Traber & Voorhees**
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Tel:  626/585-9611
Fax: 626/577-7079

Albert H. Meyerhoff
**Lerach Coughlin Stoia Geller Rudman &**
**Robbins LLP**
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Tel:  310/859-3100
Fax: 310/278-2148

Michael Rubin
Scott A. Kronland
Eileen Goldsmith
**Altshuler, Berzon, Nussbaum,**
**Rubin & Demain**
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
415/362-8064 (fax)

Counsel for Plaintiff Cintas Corporation

T. Joshua Archer
**Balch & Bingham LLP**
3535 Piedmont Road
14 Piedmont Center, Suite 1100
Atlanta, GA  30305
Tel: 404/261-6020

Brentley Tyler Cobb
Douglas Brian Kauffman
M. Jefferson Starling, III
**Balch & Bingham**
1710 6th Avenue North
PO Box 306
Birmingham, AL 35201-0306
205-251-8100
Fax: 266-8798

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 2 of 2

James H. Elliott
**Barnwell Whaley Patterson and Helms**
885 Island Park Drive
Charleston, SC 29492-0197
Tel: 843/577-7700
Fax: 843/577-7708

Dmitry Shifrin
Steven Russell Smith
William J. Wortel
**Bryan Cave LLP**
161 North Clark Street
Suite 4300
Chicago, IL 60601
312-602-5060

Charles B. Jellinek
**Bryan Cave LLP**
211 N. Broadway
Suite 3600
St. Louis, MO 63102-2750
314-259-2000
Fax: 314-259-2020

Todd D. Kilpatrick
**Coughlin, Gerhart Law Firm**
P.O. Box 2039
20 Hawley Street
Binghamton, NY 13902-2039
607-723-9511
Fax: 607-723-1530

Rodney R. Patula
**Graham & James**
One Maritime Plaza, 3rd Floor
San Francisco, CA 94111
Tel: 415/954-0200

Daniel W Glavin
Randall J Nye
rnye@bkslegal.com
**Beckman Kelly & Smith**
5920 Hohman Avenue
Hammond, IN 46320-2423
Tel: 219/933-6200
Fax: 219/933-6201

Elaine D. Koch
James D. Lawrence
**Bryan Cave LLP**
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2100
816-374-3200 x3235
Fax: 816-374-3300

Kevin Richard Tully
Howard Carter Marshall
Terry Christovich Gay
**Christovich & Kearney, LLP**
Pan American Life Center
601 Poydras St.
Suite 2300
New Orleans, LA 70130-6078
(504) 561-5700

Thomas D. Goldberg
**Day, Berry & Howard**
One Canterbury Green
Stamford, CT 06901-2047
Tel: 203/977-7383
Fax: 203/977-7301

C. Timothy Hopkins
Steven K. Brown
**Hopkins Roden Crockett Hansen & Hoopes**
P.O. Box 51219
Idaho Falls, ID 83405-1219
Tel: 208/523-4445
Fax: 203/523-4474

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 3 of 3

Beth L Steffan
Timothy D Kelly
**Kelly & Berens, PA**
80 S 8th St Ste 3720
Minneapolis, MN 55402
612-349-6171
Fax: 612-349-6416

Matthew M. Enenbach
Robert M. Slovek
**Kutak, Rock Law Firm**
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-6000
Fax: (402) 346-1148

Wayne John Positan
**Lum, Danzis, Drasco & Positan, LLC**
103 EISENHOWER PARKWAY
ROSELAND, NJ 07068-1049
(973) 403-9000

Jason A. Cincilla
**Morris, Nichols, Arsht & Tunnell**
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
Tel: 302/658-9200

Norman H. Kirshman
Robert L Rosenthal
**Parsons Behle & Latimer**
411 E. Bonneville
Suite 300
Las Vegas, NV 89101
702-384-3877
Fax: 702-599-6023

Douglas M. Todd
Thomas G. Wolfe
**Phillips McFall McCaffrey McVay & Murrah, PC**
One Leadership Square
211 N. Robinson
Twelfth Floor
Oklahoma City, OK 73102
(405) 235-4100

Stephen E Kravit
Sarah J Friday
John F Hovel
**Kravit Hovel Krawczyk & Leverson SC**
825 N Jefferson St - 5th Fl
Milwaukee, WI 53202
414-271-7100
Fax: 414-271-8135

Thomas Finarelli
Wayne A. Graver
**Lavin, O'Neil, Ricci, Cedrone & DiSipio**
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
Tel: 215/627-0303
Fax: 215/627-2551

Hugh Peterson, III
**McNatt, Greene & Peterson**
P.O. Drawer 1168
Vidalia, GA  30475-1168
Tel: 912/537-9343
Fax: 912/537-2658

Jay Eaton
**Nyemaster Goode Voigts West Hansell & O'Brien, PC**
700 Walnut
Suite 1600
Des Moines, IA 50309
515 283 3100
Fax: 283 8045

Damon J. Georgelas
Erik A. Christiansen
**Parsons Behle & Latimer**
201 S MAIN ST STE 1800
PO BOX 45898
SALT LAKE CITY, UT 84145-0898
(801)532-1234

Robert M Howie
Skylar A Sherwood
**Riddell Williams PS**
1001 Fourth Avenue
Suite 4500
Seattle, WA 98154
206-624-3600
Fax: 12063891708

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 4 of 4

Paul W. Chaiken
Phillip D. Buckley
**Rudman & Winchell**
84 Harlow Street
P.O. Box 1401
Bangor, ME 04401
(207) 947-4501

James K. Dorsett, III
Michael R. Gordon
**Smith Anderson Blount Dorsett Mitchell & Jernigan**
P.O. Box 2611
Raleigh, NC 27602-2611
919-821-1220
Fax: 821-6800

James Dean Thomas
Philip Oliss
Stacy D. Ballin
**Squire Sanders & Dempsey LLP**
4900 Key Tower
127 Public Sq.
Cleveland, OH 44114
(216) 479-8500

Carlotta Justine Roos
**Squire, Sanders & Dempsey LLP**
Wachovia Financial Center
200 S. Biscayne Blvd., Suite 4000
Miami, FL 33131-2398
Tel: 305/577-7000

Joseph A. Meckes
Mark C. Dosker
Michael W. Kelly
Sara Kathryn Regan
**Squire Sanders & Dempsey**
1 Martime Plaza, Suite 300
San Francisco, CA 94111-3492
Tel: 415/954-0200
Fax: 415/393-9887

Amanda T. Gamblin
David W. Axelrod
**Schwabe, Williamson & Wyatt PC**
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Or 97204
(503) 796-2903
Fax: (503) 796-2900

Pierre H. Bergeron
**Squire, Sanders & Dempsey**
312 Walnut Street
Suite 3500
Cincinnati, OH 45202-4036
513-361-1289

Steven Bradley Harris
Mark S Armstrong
**Squire Sanders & Dempsey**
600 Travis
6250 Chase Tower
Houston, TX 77002
713/546-5850
Fax: 17135465830

Jeffrey E. Storch
**Squire Sanders & Dempsey LLP**
350 Park Avenue
New York, NY 10022-6022
212-872-9800
Fax: 212-872-9815

John Anson Burlingame
**Squire Sanders and Dempsey LLP**
1201 Pennsylvania Ave NW Ste 500
PO Box 407
Washington, DC 20004-0407
Tel: 202/626-6600
Fax: 202/626-6780

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 5 of 5

Thomas W. Lyons, III
**Strauss, Factor, Laing & Lyons**
222 Richmond Street
Suite 208
Providence, RI 02903-2914
456-0700
Fax: 421-4730

Dudley Collier Graham, Jr.
Jeremy L. Birdsall
**Wise, Carter, Child & Caraway**
P. O. Box 651
Jackson, MS 39205-0651
(601) 968-5500

C:\Documents and Settings\change\Local Settings\TEMP\3.30.06 MDL Service List.doc

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re CINTAS CORPORATION ARBITRATION LITIGATION | ) ) ) | MDL No. _____ |

**DECLARATION OF MICHAEL RUBIN IN SUPPORT OF THE *VELIZ*
PLAINTIFFS' MOTION TO TRANSFER AND CONSOLIDATE
ACTIONS PURSUANT TO 28 U.S.C. §1407**

I, MICHAEL RUBIN, declare as follows:

1.     I am a member of the State Bar of California and the bars of numerous United States District Courts including the District Court for the Northern District of California. I am a partner in the San Francisco law firm of Altshuler, Berzon, Nussbaum, Rubin & Demain, which is co-counsel for the plaintiffs in *Paul Veliz et al. v. Cintas Corporation*, Case No. 03-1180 SBA (the "*Veliz* Action"), which is pending before the Hon. Saundra Brown Armstrong.

2.     Lead counsel of record for defendant Cintas Corporation in the *Veliz* Action is Mark Dosker of Squire, Sanders & Dempsey, which is also based in San Francisco, California.

3.     On March 22, 2006, Cintas' lead counsel, Mark Dosker, sent us a draft case management conference statement in *Veliz* that stated that Cintas had begun to file petitions to compel arbitration against our *Veliz* plaintiff clients in various district courts ("the Arbitration Actions"). Cintas did not disclose the number of petitions filed, the names of the individuals named as defendants in those petitions, the number of such individuals, the district courts in which the petitions were filed, or even when those petitions were filed. Rather, Cintas simply stated:

> Cintas respectfully provides the Court with the following update about the Stay Motion Plaintiffs, as that phrase is used in the Court's Order filed February 14, 2006 [Docket No. 516]. Cintas has exercised its rights under Section 4 of the Federal Arbitration Act (9 U.S.C. §4), by commencing Petition proceedings against the individuals who are also known as the Stay Motion Plaintiffs. Each such Petition has been filed under Section 4 of the Federal Arbitration Act (9 U.S.C. §4) in the United States District Court for the District encompassing the place where each such person last worked for Cintas.

Ex. 1 at 8.

4.     This was the first time Cintas disclosed to the *Veliz* plaintiffs' counsel that Cintas had filed the Arbitration Actions, even though according to the district court's docket in this case, it had filed those actions on or about March 10, 2006, and even though the *Veliz* plaintiffs' counsel represent the Arbitration Action defendants on the very overtime claims that are the subject of the Arbitration Actions.

5.      On March 24, 2006, the *Veliz* plaintiffs' counsel first became aware that Cintas had begun to attempt to serve the Arbitration Action defendants (*i.e.*, our *Veliz* plaintiff clients) by mail and, in some instances, by personal service. I promptly contacted Mr. Dosker by email, and asked him to please immediately send to me courtesy copies of the petitions to compel arbitration that his client had filed against the *Veliz* plaintiffs. Ex. 2. Mr. Dosker did not provide copies of the petitions, but instead responded that evening that Cintas had already given us notice of the Arbitration Actions, by the draft case management conference statement on March 22. Ex. 3.

6.      On March 27, Mr. Dosker emailed to me a copy of one petition to compel arbitration and supporting papers, in *Cintas Corporation v. Donald Allen Griffin et al.*, Case No. 4:06-cv-0091 (S.D. Iowa), filed March 10, 2006. That petition indicates that Mr. Dosker is counsel for Cintas in that action. Ex. 4.

7.      I promptly replied to Mr. Dosker's March 27 e-mail, asking for courtesy copies of all of the petitions Cintas had filed against the *Veliz* plaintiffs, to enable us to determine which *Veliz* plaintiffs had been sued, in which courts, and when. Ex. 5. Mr. Dosker's March 27 e-mail in response, in which he refused to provide us with courtesy copies of any more of the petitions (or of the other information we requested), is attached hereto as Ex. 6.

8.      Because Cintas has refused to provide the *Veliz* plaintiffs' counsel with courtesy copies of the petitions it has filed in the Arbitration Actions, the *Veliz* plaintiffs have had to obtain information from the district courts' docket available through the PACER internet document retrieval and filing system. According to PACER, Cintas has filed at least 70 Arbitration Actions in District Courts around the country. There may be others of which the *Veliz* plaintiffs are not yet aware.

9.      Although my co-counsel and I have heard from many *Veliz* plaintiffs from around the country in the last few days, asking for advice on how to respond to Cintas' summonses, we do not

- 2 -

at present know how many of the 2,400 *Veliz* plaintiffs have been sued, how many have been served, or in what manner they have been served.

10.    The following are true and correct copies of the matters described:

| | |
|---|---|
| Exhibit 1: | Draft Joint Case Management Conference Statement, dated March 22, 2006; |
| Exhibit 2: | E-mail from Michael Rubin to Mark Dosker, dated March 24, 2006; |
| Exhibit 3: | E-mail from Mark Dosker to Michael Rubin, dated March 24, 2006; |
| Exhibit 4: | Exemplar of Petition filed by Cintas in *Cintas Corp. v. Donald Allen Griffin, et al.*, No. 4:06-cv-0091 (S.D. Iowa); |
| Exhibit 5: | E-mail from Michael Rubin to Mark Dosker, dated March 27, 2006; |
| Exhibit 6: | E-mail from Mark Dosker to Michael Rubin, dated March 27, 2006; |
| Exhibit 7: | Schedule of Involved Actions; |
| Exhibit 8: | [Proposed] Second Amended Class and Collective Action Complaint filed February 28, 2006, in *Veliz v. Cintas Corp.*, No. C-03-1180 (SBA), (N.D. Cal.); |
| Exhibit 9: | FLSA Notices of Collective Action in *Veliz v. Cintas Corp.*, No. C-03-1180 (SBA); |
| Exhibit 10: | April 5, 2004 Order of the Court in *Veliz v. Cintas Corp.*, No. C-03-1180 (SBA); |
| Exhibit 11: | May 4, 2005 Order of the Court in *Veliz v. Cintas Corp.*, No. C-03-1180 (SBA); |
| Exhibit 12: | Demand for Classwide Arbitration Under AAA Employment Arbitration Rules and Supplementary Rules for Class Arbitration re *Veliz v. Cintas Corp*, dated May 4, 2004 (without exhibits); |
| Exhibit 13: | February 14, 2006 Order of the Court; and |
| Exhibit 14: | Claimants' Clause Construction Opening Brief in *Veliz v. Cintas Corp.* before the American Arbitration Association, dated February 8, 2006. |

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct and that this declaration is executed this 30th day of March 2006 in San Francisco, California.

MICHAEL RUBIN

- 3 -

# EXHIBIT 1

1  LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  Theodore J. Pintar (CA Bar #131372)
   Steven W. Pepich (CA Bar #116086)
3  James A. Caputo (CA Bar #120485)
   655 West Broadway, Suite 1900
4  San Diego, CA  92101
   Telephone:  +1.619.231.1058
5  Facsimile:   +1.619.231.7423

6  Attorneys for Plaintiffs
   PAUL VELIZ, et al.
7
   [Additional Plaintiffs' Counsel Appear on Signature
8  Page]

9  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Mark C. Dosker (CA Bar # 114789)
10 Michael W. Kelly (CA Bar #214038)
   Joseph A. Meckes (CA Bar #190279)
11 Angela N. O'Rourke (CA Bar #211912)
   One Maritime Plaza, Third Floor
12 San Francisco, CA  94111-3492
   Telephone:  +1.415.954.0200
13 Facsimile:   +1.415.393.9887

14 Attorneys for Defendants
   CINTAS CORPORATION and
15 PLAN ADMINISTRATOR FOR THE
   CINTAS PARTNERS' PLAN
16

17             UNITED STATES DISTRICT COURT

18           NORTHERN DISTRICT OF CALIFORNIA

19                    (OAKLAND DIVISION)

20

21 PAUL VELIZ, et al., On behalf of          Case No.  03-01180 (SBA)
   Themselves and All Others Similarly       CLASS ACTION
22 Situated,,                                 E-FILING

23                    Plaintiff,
                                              JOINT CASE MANAGEMENT
24        vs.                                 STATEMENT  [AND PROPOSED ORDER]

25 CINTAS CORPORATION, an Ohio               Date:      April 5, 2006
   corporation; PLAN ADMINISTRATOR           Time:      3:30 p.m.
26 for the Cintas Partners' Plan; and DOES 1- Judge:     The Honorable
   25, inclusive,,                                       Saundra B. Armstrong
27
                      Defendant.
28

SQUIRE, SANDERS &    JOINT CASE MANAGEMENT STATEMENT [AND
DEMPSEY L.L.P.       PROPOSED ORDER] CASE NO. 03-01180 (SBA)
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

D R A F T

1        Pursuant to the Court's Standing Order concerning the filing of Joint Case Management

2    Statements and the direction contained therein that in "preparing the Case Management

3    Statement, the parties shall use the format enclosed herewith," the parties submit the following

4    Joint Case Management Statement using the format contained in the Court's Standing Order.

5

6    **1.    JURISDICTION AND RELATED ISSUES**

7        **A.    Plaintiffs' Statement**

8        The Court has jurisdiction over this matter under 28 U.S.C. §1331, because plaintiffs'

9    claims arise under federal statutes, specifically, the Fair Labor Standards Act ("FLSA"), 29

10   U.S.C. section 201, et seq., and the Employee Retirement Income Security Act ("ERISA"), 29

11   U.S.C. §§1001, et seq.  In addition, sections 216(b) of the FLSA and §502 of ERISA (29 U.S.C.

12   §1132) also confer jurisdiction over this action.  The Court has supplemental jurisdiction over

13   Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).  Plaintiffs filed their Second Amended

14   Complaint on February 28, 2006.

15       **B.    Defendants' Statement**

16       Cintas Corporation notes that while Defendants do not contest that this Court has subject

17   matter jurisdiction over this action as pled, and personal jurisdiction over Defendants,

18   proceedings as to certain opt-in plaintiffs have been stayed by the Court.  Defendants timely filed

19   their Answer to the Second Amended Complaint on March 17, 2006.

20

21   **2.    SUBSTANCE / DESCRIPTION OF THE ACTION**

22       **A.    Plaintiffs' Statement**

23       Plaintiffs allege, among other things, that Cintas violated the FLSA, 29 U.S.C. §201, et

24   seq., by denying plaintiffs and other similarly situated route drivers overtime compensation for

25   hours they worked in excess of forty (40) hours per week from at least March 19, 2000 to the

26   present.  In addition to FLSA claims, plaintiffs allege that Cintas and the Plan Administrator of

27   the Cintas Partners Plan violated the ERISA, 29 U.S.C. §1001, et seq., by failing to record and

28   maintain accurate records of all hours worked by route drivers and by failing to credit service as

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)    - 2 -

1    required under ERISA.

2        With respect to their claims under ERISA, plaintiffs contend that, since they are entitled to

3    payment for their overtime hours, these hours are properly considered "hours of service," within

4    the meaning of federal law.  Accordingly, plaintiffs contend that defendants Cintas and the Plan

5    violated ERISA by failing to credit as "hours of service" under the Plan any overtime hours

6    worked by plaintiffs and similarly-situated route drivers and by failing to maintain records of

7    overtime hours for purposes of determining eligibility, vesting and benefits under the Plan. As

8    relief, plaintiffs seek declaratory relief and an injunction requiring defendants to credit all

9    members of the prospective class with hours of service for all of the past and future work

10   performed by those class members and to maintain proper records of all such work.

11       Plaintiffs also allege that Cintas' failure to pay overtime, to maintain proper time records,

12   and/or to provide paid rest breaks violates the respective wage and hour laws of the states of

13   California,  Illinois, Indiana, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, New

14   Jersey, New Mexico, New York, Ohio, Pennsylvania, Washington and West Virginia. Plaintiffs

15   who have worked in California also allege that Cintas' failure to pay overtime, to pay wages when

16   due, to maintain proper records and to credit services as required under state and federal law,

17   constitute unlawful business practices in violation of California's Unfair Competition Act, Bus. &

18   Prof. Code §17200, et seq.  Plaintiffs bring their ERISA and state law claims on behalf of

19   themselves and similarly situated current and former Cintas route drivers.

20

21       **B.    Defendants' Statement**

22       Cintas Corporation owns various subsidiaries (collectively "Cintas") engaged in providing

23   a range of business supply services nationwide including the manufacture, rental and sale of

24   uniforms and other apparel as well as supplying other business products and services ranging

25   from first aid supplies to industrial mats.  Cintas employs individual sales persons called Service

26   Sales Representatives ("SSRs") who are responsible for developing and maintaining customer

27   relationships, generating direct sales as well as providing sales and service related to rental

28   agreements for customers on specifically assigned routes.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)          - 3 -

As more fully stated in its Answer to the Second Amended Complaint, Cintas will show that Plaintiffs' claims fail because – among other reasons -- each of the Plaintiffs is subject to one or more of the exemptions to the overtime requirements of the Fair Labor Standards Act ("FLSA") and applicable state laws.

3.    **IDENTIFICATION OF FACTUAL AND LEGAL ISSUES IN DISPUTE**

A.    **Plaintiffs' Statement**

Plaintiffs contend that they are entitled to the protection of federal and state overtime laws, in that they do not fall within any exemption to those laws, and that they regularly worked many hours of overtime without receiving the premium pay required under federal and state law. Plaintiffs contend that they are entitled to obtain declaratory and injunctive relief barring Cintas' unlawful overtime practices, as well as an award of damages, including liquidated and exemplary damages and waiting time penalties and other statutory penalties.

Based on the foregoing, Plaintiffs submit the following issues appear to be genuinely in dispute:

i.    Whether Cintas route drivers are owed unpaid overtime for hours they have work or whether Cintas properly classified its route drivers as exempt from applicable overtime requirements;

ii.    The extent of unpaid overtime owed to plaintiffs and the subclasses they seek to represent;

iii.    Whether the Cintas Partners Plan violated ERISA by failing to record and maintain accurate records of all hours worked by route drivers and by failing to credit service as required under ERISA;

iv.    Whether plaintiffs are entitled to injunctive relief as a remedy for Cintas and the Partners Plan alleged wrongful conduct; and

v.    Whether any of the claims which plaintiffs seek to put at issue are subject to arbitration in whole or part.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)                - 4 -

**B. Defendants' Statement**

Cintas' investigation into this matter is ongoing. Cintas states that Plaintiffs and others they have defined under the term "SSRs" are not similarly situated as there are substantial differences based on numerous factors arising from individuals' division, location, route assignments and other variables. These factors will be controlling to the individualized application of one or more exemptions from the alleged application of federal and state overtime law. Accordingly, proceeding as a collective action and/or class action is inappropriate.

If after further proceedings the Court might otherwise allow this case to proceed as a collective action and/or class action as to some or all of the claims, then Cintas notes that the vast majority of the members of any putative state law subclass (at least as phrased in the Second Amended Complaint) are subject to enforceable arbitration agreements and therefore cannot have claims litigated for them by others. Cintas further notes, as to any plaintiffs who are allowed to proceed in litigation (either among the 483 litigating plaintiffs who are presently parties to this case or among absent putative subclass members), that Cintas has the right to prove its defenses which are individual in application as to each such person.

**4.    NARROWING OF ISSUES**

At this juncture, the parties are unaware of any key substantive issues that can be narrowed by agreement.

**5.    MOTIONS**

**A. Plaintiffs' Statement**

Plaintiffs intend to file a motion for class certification of various subclasses of route drivers under Rule 23(b). Plaintiffs' proposed subclasses consist of route drivers in each of the following states: California, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New Mexico, New York, Ohio, Pennsylvania, Washington and West Virginia; one further proposed subclass consists of all route drivers nationwide for the purpose of litigating the ERISA claims. Plaintiffs propose that they would file their motion for class

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)        - 5 -



1  certification approximately six (6) months from now.

2  **B. Defendants' Statement**

3  If this action is not dismissed earlier, Defendants anticipate filing motions for summary

4  judgment prior to any trial on this matter.

5

6  **6.    RELIEF**

7  Plaintiffs seek the following forms of relief (while at this stage of the litigation plaintiff

8  submit that it is premature to attempt to assess the amount of damages, since discovery regarding

9  the composition of the proposed subclasses has not yet begun and Plaintiffs contend that the

10  amount of damages will likely be a matter of statistical sampling and expert testimony):

11  A.    Unpaid overtime compensation and appropriate penalties as required under the

12  FLSA and the applicable states' laws;

13  B.    Declaratory and injunctive relief with respect to Cintas' class-wide practice of not

14  properly classifying route drivers as non-exempt employees who are entitled to be paid for all

15  hour worked so as to receive proper overtime compensation; and

16  C.    Declaratory and injunctive relief with respect to violations of §209(a) of ERISA,

17  requiring defendants to remedy any breaches of fiduciary duty by crediting all class members

18  with hours of service for all of their past, present and future uncompensated work through proper

19  allocation and/or further contributions to the Plan.

20

21  **7.    DISCOVERY AND DISCLOSURES**

22  **A.    Discovery**

23  Discovery is under way by both Plaintiffs and Defendants.

24  Plaintiffs anticipate conducting further written discovery, further corporate representative

25  depositions under Rule 30(b)(6) and depositions of various individuals.  Plaintiffs do not believe

26  that alternative methods for obtaining the necessary information are necessarily appropriate in

27  this case, as much of the relevant information is in the possession of Cintas.

28  Defendants anticipate conducting further written discovery and anticipate conducting

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)          - 6 -

1  depositions of the individual Plaintiffs (especially those not dismissed following written

2  discovery responses) and of any experts Plaintiffs may intend to use.

3

4          **B.**      **Disclosures Pursuant to Rule 26(a)(1)**

5         Cintas has previously made Initial Disclosures and Supplemental Initial Disclosures.  Now

6  that the pleadings have closed, effective March 17, 2006, Cintas anticipates making its Second

7  Supplemental Initial Disclosures by the end of April 2006.

8

9  **8.**      **ALTERNATIVE MEANS OF DISPOSITION**

10         Plaintiffs would agree to have this case assigned to a United States Magistrate Judge for

11  jury trial.

12         Defendants do not agree that this case would be appropriate for referral to a United States

13  Magistrate Judge for trial.

14

15  **9.**      **PRETRIAL CONFERENCE AND TRIAL SETTING**

16         The parties propose the dates shown on the Proposed Order attached hereto.

17

18  **10.**     **RELATED CASES**

19         Not applicable.

20

21  **11.**     **CUT-OFF DATES**

22         The parties propose the dates shown on the Proposed Order attached hereto.

23

24  **12.**     **SETTLEMENT**

25         The parties are agreed in concept as to the ADR option --  mediation before a United

26  States Magistrate Judge, but do not believe that such a mediation will be fruitful until after further

27  discovery has been completed.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)     - 7 -

1    **13.    OTHER MATTERS**

2    Cintas respectfully provides the Court with the following update about the Stay Motion

3    Plaintiffs, as that phrase is used in the Court's Order filed February 14, 2006 [Docket No. 516].

4    Cintas has exercised its rights under Section 4 of the Federal Arbitration Act (9 U.S.C.

5    commencing Petition proceedings against the individuals who are also known as the Stay Motion

6    Plaintiffs.  Each such Petition has been filed under Section 4 of the Federal Arbitration Act (9

7    U.S.C. §4) in the United States District Court for the District encompassing the place where each

8    such person last worked for Cintas. This is as Cintas stated previously at least twice on the record

9    of this action that it was expressly reserving its right to do, including in papers filed with this

10   Court on December 14, 2004 and September 6, 2005, although of course Cintas has continued to

11   have that right regardless whether or not it reserved that right.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)        - 8 -

1   Dated: March 24, 2006

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP


By:_____
     James A. Caputo

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  +1.619.231.1058
Facsimile:   +1.619.231.7423



LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
ALBERT H. MEYERHOFF
355 South Grand Avenue, Suite 4170
Los Angeles, CA  90071
Telephone:  213/617-9007
Facsimile:   213/617-9185

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
NANCY M. JUDA
1100 Connecticut Avenue, N.W. Suite 730
Washington, DC  20036
Telephone:  202/822-6762
Facsimile:   202/828-8528

ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
MICHAEL RUBIN
EILEEN GOLDSMITH
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
Facsimile:   415/362-8064

TRABER & VOORHEES
THERESA M. TRABER
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Telephone:  626/585-9611
Facsimile:   626/577-7079

Attorneys for Plaintiffs
PAUL VELIZ, et al.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)

- 9 -

1

2   Dated: March 24, 2006

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS & DEMPSEY L.L.P.


By:_____
        Mark C. Dosker

One Maritime Plaza, Third Floor
San Francisco, CA  94111-3482
Telephone:  415/954-0200
Facsimile:  415/393-9887

Attorneys for Defendants
CINTAS CORPORATION and
PLAN ADMINISTRATOR FOR THE
CINTAS PARTNERS' PLAN

D R A F T

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)        - 10 -

*Exhibit A – Proposed Order*



## ORDER

### THE FOLLOWING SCHEDULE IS SO ORDERED:

| EVENT | DATE |
|---|---|
| Deadline for Hearing Pre-Trial Motions | September 18, 2007 |
| Meet and Confer Deadline – to prepare joint final pretrial conference statement and proposed order and coordinated submission of trial exhibits and other materials | October 12, 2007 |
| Final Pretrial Conference Deadline – hearing on any unresolved objections to proposed testimony or exhibits | November 1, 2007 |
| Fact Discovery Cut-Off | June 29, 2007 |
| Designate Expert Witnesses | April 11, 2007 |
| Designate Rebuttal Expert Witnesses | May 31, 2007 |
| Expert Discovery Cut-Off | July 31, 2007 |
| Trial Begins | December 3, 2007 |

Dated: April __, 2006

_____
THE HONORABLE SAUNDRA BROWN ARMSTRONG
UNITED STATES DISTRICT JUDGE

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

JOINT CASE MANAGEMENT STATEMENT [AND
PROPOSED ORDER] CASE NO. 03-01180 (SBA)          - 11 -

EXHIBIT  2

| From: | "Michael Rubin" <mrubin@altshulerberzon.com> |
|-------|---|
| To: | <MDosker@SSD.com> |
| Date: | 3/24/2006 3:43:42 PM |
| Subject: | Courtesy Copies of Petitions to Compel Arbitration |

Dear Mark:

Earlier today we were informed that your office is serving as many as 1,900 of the individual opt-in plaintiffs with copies of Cintas' Petitions to Compel Arbitration.  We are concerned about these direct communications with the opt-in plaintiffs and are presently investigating their propriety.  At this time, we do not know the extent of your communications or contacts. As a first step in our investigation, we request that you hand-deliver to our office a copy of all communications that you or your client have authorized to be sent to the opt-in plaintiffs.  I am sure you can appreciate the urgency of this request, and consequently we further
request that these copies be transmitted immediately.

Sincerely,

Michael Rubin

---

    This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

CC:          <MKelly@ssd.com>, <spepich@lerachlaw.com>, <jimc@lerachlaw.com>, "Eileen Goldsmith" <egoldsmith@altshulerberzon.com>, "Theresa Traber" <tmt@tvlegal.com>

**EXHIBIT  3**

| From: | "Dosker, Mark C." <MDosker@SSD.com> |
| To: | "Michael Rubin" <mrubin@altshulerberzon.com> |
| Date: | 3/24/2006 10:29:53 PM |
| Subject: | RE: Courtesy Copies of Petitions to Compel Arbitration |

Dear Michael:

I have just received your e-mail below.  As you (or at least Jim Caputo of your team) knew, I had to leave the office at 3:00 p.m. this afternoon on other matters.  You sent your e-mail to me after that.

We told Jim Caputo of your team on Wednesday afternoon March 22nd, in our draft Joint Case Management Statement in Veliz et al v. Cintas,  that Cintas has filed Petition cases in other District Courts under Section 4 of the Federal Arbitration Act -- as is more fully set forth in part 13 of that statement.  We did that before commencing service of process on the Respondents in those Petition cases.

There are no "communications" (your word below) occurring with any opt-in plaintiff in the case of Veliz et al v. Cintas.  All that is occurring is service of the summons and the Petition and the accompanying court papers, on the Respondents in each of the Petition cases - which are separate cases in separate courts -- either by personal service by a third party process server or (in the vast majority of instances) by using the standard form established by law for accomplishing service by providing the opportunity for waiver of service by Notice and Acknowledgement of Receipt.  This is as authorized by law.  Indeed, in pertinent part it is as affirmatively required by law. There is nothing for you to be "investigating" (your word below).

As a courtesy to you, however, when I am back in the office on Monday I will send you a copy of the text of the Petition and of the accompanying court papers which we and our local co-counsel have filed in the Petition cases.

Very truly yours,

Mark

Mark C. Dosker

# EXHIBIT  4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| CINTAS CORPORATION, a Washington Corporation, | ) ) ) | CASE NO. 4:06-cv-00091 |
| Petitioner, | ) ) | |
| vs. | ) ) ) | **PETITION FOR ORDER DIRECTING ARBITRATION TO PROCEED IN THE** |
| DONALD ALLEN GRIFFIN, VILERA MILLS, JOHN A. SCHNEITER, and MICHAEL STANCIL, | ) ) ) ) | **MANNER PROVIDED FOR IN WRITTEN AGREEMENT FOR ARBITRATION, IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT, PURSUANT TO 9** |
| Respondents. | ) ) | **U.S.C. § 4** |

1.    Petitioner Cintas Corporation (hereinafter "Cintas") hereby petitions this Court for an Order pursuant to Section 4 of the Federal Arbitration Act (9 U.S.C. §4) directing each of the individuals listed on Exhibit 1 to this Petition (hereinafter "Respondents") to proceed in this judicial district with arbitration of his or her alleged disputes with Cintas in accordance with the terms of the individual written employment agreement between him or her and Cintas.

**JURISDICTION AND VENUE**

2.    This Court has subject matter jurisdiction over this proceeding under Section 4 of the Federal Arbitration Act (9 U.S.C. §4) and under 28 U.S.C. §1331 in that each of the Respondents has asserted claims against Cintas under the Fair Labor Standards Act (29 U.S.C. §§201 et seq.) ("FLSA"), which claims each Respondent has refused and continues to refuse to arbitrate in accordance with the terms of his or her written agreement with Cintas.

3.    Venue in this judicial district is appropriate under 28 U.S.C. section 1391.(a) because a substantial part of the events or omissions giving rise to each of the Respondents' underlying claim against Cintas occurred in this judicial district and because a substantial part of the events or omissions giving rise to Cintas' claim which is the subject of this Petition occurred

in this judicial district. Each of the Respondents is or claims to be a current or former employee of Cintas who was last employed by Cintas in this judicial district. Each Respondent's respective employment agreement requires arbitration of disputes between him or her and Cintas to take place in a county within this judicial district.

## BACKGROUND

4.      On March 19, 2003, certain individuals who are not parties to this Petition filed a lawsuit against Cintas in the United States District Court for the Northern District of California alleging claims for relief under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 et seq., the Employee Retirement Income Safety Act ("ERISA") 29 U.S.C. §§1001 et seq., certain state wage and hour laws, and the California Unfair Competition Law (California Business & Professions Code § 17200 et seq.) styled as <u>Veliz et al v. Cintas Corporation etc.</u>, Case No, C-03-01180 (SBA)(N.D. Cal.)(hereinafter "the Northern California Action"). The gravamen of plaintiffs' claims in the Northern California Action was that they were improperly characterized as "exempt" employees and were not paid overtime compensation.

5.      Certain of the plaintiffs in the Northern California Action purported to act as representatives of a putative "opt-in" collective action under Section 16(b) of the Fair Labor Standards Act (29 U.S.C. §216(b)), as representatives of a putative nationwide Rule 23 class action under ERISA, and as representatives of certain putative state sub-classes under Rule 23.

6.      Each of the Respondents to this Petition subsequently filed with the Court in the Northern California Action "Consents to Sue" and purported to opt-in to the Northern California Action and assert claims for "unpaid overtime premiums under the federal Fair Labor Standards Act ('FLSA') 29 U.S.C. §216(b)" and also purported to designate Altshuler, Berzon, Nussbaum, Rubin & Demain, Traber & Voorhees, and Lerach, Coughlin, Stoia & Robbins, LLP, to represent him or her in the Northern California Action.

7.      Each Respondent to this Petition is party to an individual employment agreement with Cintas that provides for binding arbitration of all disputes with Cintas, including statutory

2

claims such as the FLSA claims asserted by Respondents in the Northern California Action.  A copy of each Respondent's employment agreement is submitted herewith, alphabetically by Respondent's surname, as an Exhibit to the Declaration of Jenice Clendening submitted herewith.

8.    Each Respondent's employment agreement requires that such arbitration between him or her and Cintas be "conducted in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes and [that it be] held in the county and state where [the Respondent] currently works for [Cintas] or most recently worked for [Cintas]."

9.    On June 3, 2005, Cintas moved to stay further proceedings by Respondents in the Northern California Action pursuant to Section 3 of the Federal Arbitration Act (9 U.S.C. §3). Section 3 provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

10.    Plaintiffs in the Northern California Action (including the Respondents hereto) did not deny that they were required to arbitrate their FLSA claims against Cintas.  Instead, through their counsel, plaintiffs in the Northern California Action (including Respondents hereto) filed a cross-motion requesting that the Court deem Cintas' motion to stay under Section 3 of the Federal Arbitration Act be, in effect, a petition to compel under Section 4 of the Federal Arbitration Act.

11.    In so moving, Respondents were seeking preemptively to nullify each of their express place-of-arbitration terms by arguing that, under Section 4 of the Federal Arbitration Act, a district court is limited in its power to compel arbitration only in the district where the petition is filed.  Previously, in motion proceedings that did not apply to Respondents on this

point, the District Court in the Northern California Action had ruled that Section 4 of the Federal

Arbitration Act dictates that the arbitral hearing and any other arbitral proceedings be held in the

judicial district where the motion under Section 4 of the Federal Arbitration Act is filed, even if

the motion under Section 4 of the Federal Arbitration Act is filed by a defendant in an action

filed by plaintiffs who are subject to place-of-arbitration provisions that would ordinarily require

arbitration elsewhere.  In so ruling, however, the Northern California District Court expressly

limited the scope of its ruling to the 56 plaintiffs who had been the subject of Cintas' Motion to

Compel in the Northern California Action, which does not include any of the Respondents

hereto.

      12.    In this context, as to the Respondents hereto, Cintas expressly chose not to move

or petition the Northern California District Court to compel arbitration under Section 4 of the

Federal Arbitration Act, but instead expressly moved in that Court only for a stay of litigation

under Section 3 of the Federal Arbitration Act.   Cintas expressly reserved -- including in but not

limited to submissions on the record in the Northern California Action on December 14, 2004

and September 6, 2005 -- its right to petition in this District Court under Section 4 of the Federal

Arbitration Act, although Cintas continued to have that right regardless whether or not it

reserved that right.

      13.    Prior to the hearing on the relevant motions, the Northern California District

Court ordered the parties to complete a meet and confer process and submit a joint stipulation

identifying: (a) which plaintiffs in the Northern District Action may litigate their claims before

the Northern California District Court, (b) which plaintiffs are required to arbitrate their claims,

and (c) which plaintiffs the parties are unable to agree fall in either of the two categories.  The

order further directed that the joint stipulation specifically reference plaintiffs by name, by

applicable Employment Agreement (the enforceability of which the Northern California District

Court had previously ruled upon or was called on to rule upon in the then-pending motions) and

any other identifying information the parties believed would be helpful.  Exhibit 1 to Request for

Judicial Notice submitted herewith [Docket No. 500 in Northern California Action].

14.    The parties submitted their joint stipulation on September 29, 2005. Exhibit 2 to Request for Judicial Notice submitted herewith [Docket No. 501 in Northern California Action].

15.    Thereafter, on the record of a hearing on the motions then-pending before the Northern California District Court, Respondents hereto stated unequivocally through their counsel in the Northern California Action -- Michael Rubin of Altshuler, Berzon, Nussbaum, Rubin & Demain -- that they do not intend to arbitrate in accordance with the terms of their enforceable agreements with Cintas in that they will not observe the place-of-arbitration terms in their agreements but will instead seek to proceed in a single arbitration in San Francisco.  Exhibit 3 to Request for Judicial Notice submitted herewith at 87:15-18 [Docket No. 512 in Northern California Action]; Declaration of Mark C. Dosker submitted herewith.

16.    By Order filed on February 14, 2006, the Northern California District Court granted Cintas' motion to stay under Section 3 of the Federal Arbitration Act and rejected all of the arguments by the opt-in plaintiffs (including Respondents hereto) that the Court should allow Respondents hereto to proceed in arbitration in Northern California.  On the record of the hearings on those motions, the Northern California District Court stated that the arguments by the opt-in plaintiffs in the Northern California Action (including Respondents hereto) were without any basis in fact or law and that the opt-in plaintiffs (including Respondents hereto) had no statutory or case authorities or even factual support for their motion, and that plaintiffs' counsel had no answer -- as to why the opt-in plaintiffs (Respondents herein) were disregarding what each of the opt-in plaintiffs (Respondents herein) had agreed to in his or her enforceable arbitration agreement -- other than the strategic desire of their counsel to have all such persons in one location. Exhibit 3 to Request for Judicial Notice submitted herewith, at 14:15-19, 16:15-17, 97:9-17; and Exhibit 4 to Request for Judicial Notice submitted herewith, at 4:3-14, 7:5-10 and 25:2-28:4 [Docket No. 518 in Northern California Action].

17.    A copy of the Court's Order filed on February 14, 2006 is submitted herewith as Exhibit 5 to Request for Judicial Notice submitted herewith.  [Docket No. 516 in Northern California Action].  The Court's Order adopts the reasons the Court stated on the record at the hearings on those motions.  Id., at 1:25-27. Repeatedly at those hearings, the Court stated that the arbitration agreements are enforceable.  See, e.g., Exhibit 3 to Request for Judicial Notice submitted herewith, at 5:4-6:2, 8:22-9:18, 10:18 and 12:19; and Exhibit 4 to Request for Judicial Notice submitted herewith, at 6:23.

18.    Despite the Northern California District Court's Order that litigation be stayed until each of the Respondents herein have arbitrated in accordance with the terms of his or her individual employment agreements, however, each of the Respondents has failed or neglected or refused, and continues to fail or neglect or refuse, to arbitrate in accordance with the terms of his or her agreement and continues to fail or neglect or refuse to comply with his or her agreement. Indeed, counsel for plaintiffs in the Northern California Action (including Respondents herein) stated on the record in the Northern California Action that they would seek to have the claims heard in arbitration in Northern California. Exhibit 3 to Request for Judicial Notice submitted herewith at 87:15-18; Declaration of Mark C. Dosker submitted herewith.

19.    Meanwhile, earlier in the Northern California Action, the Northern California District Court has already held as a matter of federal law that Respondents have no substantive right to proceed collectively or as a class in arbitration.  Exhibit 6 to Request for Judicial Notice submitted herewith at pp. 4-7 [Docket No. 426 in Northern California Action].

20.    In a teleconference on March 1, 2006, Respondents hereto again stated unequivocally through their counsel in the Northern California Action -- Michael Rubin of Altshuler, Berzon, Nussbaum, Rubin & Demain -- that they do not intend to arbitrate in accordance with the terms of their enforceable agreements with Cintas in that they will not observe the place-of-arbitration terms in their agreements but will instead seek to proceed in a single arbitration in San Francisco. Declaration of Mark C. Dosker submitted herewith.

21.    To date, none of the Respondents herein has initiated arbitration against Cintas in the county where he or she currently works for Cintas or last worked for Cintas.

22.    Cintas is entitled under Section 4 of the Federal Arbitration Act to an Order directing each of the Respondents to proceed in this judicial district with arbitration of his or her alleged disputes, as more fully set forth in this Petition.

## PETITION

23.    Cintas incorporates by reference the allegations in paragraphs 1 through 22 of this Petition as though set forth fully herein.

24.    Section 4 of the Federal Arbitration Act (9 U.S.C. §4) provides in pertinent part that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

25.    Cintas has established in the Northern California Action that each of the Respondents is a party to a written agreement to arbitrate and that their claims arising under the Fair Labor Standards Act are subject to arbitration. Having litigated these issues in the Northern California Action, each Respondent is bound by that court's decision. Moreover, each Respondent has admitted these points.

26.    The District Court in the Northern California Action has entered its Order staying further proceedings by each of the Respondents until each of the Respondents has arbitrated in

accordance with the terms of his or her agreement, as required by Section 3 of the Federal Arbitration Act.

27.     Respondents hereto have stated on the record in the Northern California Action, and again by teleconference on March 1, 2006, through their counsel in that action -- Michael Rubin of Altshuler, Berzon, Nussbaum, Rubin & Demain -- that they refuse to arbitrate in accordance with the terms of their agreements with Cintas in that they will not observe the place-of-arbitration terms in their agreements but will instead seek to proceed in a single arbitration in San Francisco.

28.     Cintas is aggrieved by each of the Respondents' failure or neglect or refusal to arbitrate in accordance with the terms of his or her written agreement for arbitration.

29.     Because "the making of the arbitration agreement" has already been conclusively established through litigation as between Cintas and each Respondent hereto, in the Northern California Action, and moreover having been admitted by the Respondents, it is already established and is not in issue in this Petition proceeding.

30.     Because Respondents hereto have stated on the record through their counsel in the Northern California Action that they will not observe the place-of-arbitration provisions in their agreements, and because each of the Respondents have otherwise failed and neglected and refused to comply with his or her enforceable arbitration agreement as written, each of Respondents' "failure, neglect or refusal" to comply with his or her arbitration agreement is already established and is not in issue in this Petition proceeding.

31.     For the foregoing reasons, Cintas is entitled to an Order under Section 4 of the Federal Arbitration Act directing that each of the Respondents proceed in this judicial district with arbitration in the manner provided for in his or her employment agreement with Cintas, and directing that such arbitration be held within the county and state where each Respondent currently works for Cintas or last worked for Cintas and, in no event, be held anywhere outside this judicial district.

## PRAYER

WHEREFORE, Cintas prays for the following relief:

1.    For an Order under Section 4 of the Federal Arbitration Act directing that each of the Respondents proceed with arbitration in this judicial district in the manner provided for in his or her employment agreement with Cintas, and that each such arbitration be held within the county where each such Respondent currently works for Cintas or last worked for Cintas and, in no event, be held anywhere outside this judicial district;

2.    For costs of action incurred herein, including reasonable attorneys' fees to the extent allowed by law;

3.    Such other and further legal and equitable relief as Cintas may request.

Respectfully submitted,

/s/ Jay Eaton
Thomas M. Cunningham
Attorneys for Petitioner, Cintas Corporation

Nyemaster, Goode, West, Hansell & O'Brien, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309
Phone: (515) 283-3158
Fax: (515) 283-8045
Email address: je@nyemater.com
Email address: tmcunningham@nyemaster.com
Direct Contact Email: amd@nyemaster.com

Mark C. Dosker
Michael W. Kelly
Joseph A. Meckes
Squire, Sanders & Dempsey L.L.P.
One Maritime Plaza, Third Floor
San Francisco, CA  94111-3492
Telephone: (415) 954-0200
Fax: (415) 393-9887

9

EXHIBIT  5

**From:**       "Michael Rubin" <mrubin@altshulerberzon.com>
**To:**         "Dosker, Mark C." <MDosker@SSD.com>
**Date:**       3/27/2006 9:52:30 AM
**Subject:**    RE: Courtesy Copies of Petitions to Compel Arbitration

Dear Mark:

Please provide us immediately with copies of each of the documents that you have filed and served on our clients, including each of the Petitions to Compel Arbitration and supporting declarations. The information you provided by email this morning does not identify how many petitions you filed, when you filed them, which courts you filed in, or which of the Veliz plaintiffs you sued.

Thank you for your prompt attention to this matter.

Sincerely,

Michael Rubin

_____

# EXHIBIT  6

| From: | "Dosker, Mark C." <MDosker@SSD.com> |
|---|---|
| To: | "Michael Rubin" <mrubin@altshulerberzon.com> |
| Date: | 3/27/2006 3:55:10 PM |
| Subject: | Cintas Petition cases |

Dear Michael:

By my e-mail to you early this morning, I have already given you courtesy copies not only of the text of the Petitions, but also the text of the supporting papers -- the text of the supporting Declarations and the text of the supporting Request for Judicial Notice. And as I noted, you already have (and have long had) the exhibits to those items. And previously, on March 22nd, we told you the scope of the Petition cases which Cintas has filed. Please see part 13 of the Joint Case Management Statement we sent to Jim Caputo of your team in draft on March 22nd, and which was e-filed on March 24th.

The first sentence of your e-mail below refers to your "clients". In the "Consent to Sue" forms in the action entitled Veliz et al v. Cintas etc, Case No. C-03-01180 SBA (N.D. Cal.)(hereinafter "the Veliz action"), the persons who filed those completed forms with the Court designated your firm, the Lerach firm, and the Traber firm as their counsel only in the Veliz action. We are not aware of any such individual engaging your firm (or the Lerach firm or the Traber firm) as his or her counsel in any other action such as the Petition cases about which you are asking.

If your firm (and/or the Lerach firm and/or the Traber firm) has been engaged by any of the Respondents in any or all of the Petition case(s) to represent them in such Petition case(s), then:

      (a)    please let us know which Respondents have actually engaged your firm(s) in the Petition cases in the way required by California Business and Professions Code Sections 6147 and 6148 (i.e., not those persons who have only filed a Consent to Sue form designating your firms as counsel in the Veliz action); and

      (b)    please have a partner in the relevant firm (e.g., you as to your firm or Steve Pepich as to the Lerach firm or Theresa Traber as to the Traber firm) confirm to us in writing such Respondent(s)' agreement that personal service on the receptionist at that firm will constitute personal service of the summons, Petition, supporting papers, and related papers (e.g., courts' initial scheduling orders etc.) on such Respondent(s) in such Petition case(s).

Upon receipt of the necessary confirmations and agreements under (a) and (b) above, we will gladly serve such Respondent(s) by delivering full copies of such Petition case papers to the firm -- instead of proceeding as the law regarding service of process in each of those Petition cases otherwise requires.

Very truly yours,

Mark

Mark C. Dosker

# EXHIBIT  7

SCHEDULE OF INVOLVED ACTIONS

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on MultiDistrict

Litigation, the moving *Veliz* plaintiffs hereby submit the following schedule of actions that are the

subject of their motion to transfer and consolidate actions pursuant to 28 U.S.C. §1407:

| 1. | *Cintas Corporation v. Randall M. Cornelius, Cody A. Hammons, Lamont Johnson, Robert Joiner, Ben Moye, Jr., Barney Parson, III, Robe Simmons, Clayton Robert Smith, Antwan Terrell* | United States District Court, Alabama Middle District, Montgomery Division, Case No. 2:06-cv-00227-DRB Assigned: Hon. Delores R. Boyd Filed: 3/10/06 |
|---|---|---|
| 2. | *Cintas Corporation v. Darren Mitchell Anderson, Jason Scott Bigelow, Jonathan Burt, Jeffrey A. Butler, Lucas Hunter Cagle, Veronica Chambers, Shawn L. Dahl, Roger Daniel, Timothy A. Dixon, Thomas Fancher, Glenn Mark Franks, Melinda Garrett-Webb, Michael Keith Gay, Wayne Green, Eric Heinrich, Stephen Hughes, Thomas Roy Jones, Brady Lawson, Robert Glenn Magee, David Merchant, Joseph Nicholson, III, Darrin Patton, Mark D. Roberts, Andrew Robertson, Larry Keith Robinson, Ray Ross, Arthur Franklin Seamons, Wayne Matthew Shores, Terrence Y. Smith, Sr., Todd Daniel Southerland, Kevin Staggs, Rodney Sturkie, George Sylvester, I, Cary Tucker, Peter Tyrka* | United States District Court, Northern District of Alabama, Southern Division, Case No. 2:06-cv-00492-VEH Assigned: Hon. Virginia Emerson Hopkins Filed: 3/10/06 |
| 3. | *Cintas Corporation v. Ramon J. Baudier, Jr., Billy Ray Dixon, Jr., Gerald N. Jones and Ronda Rowell (Schliep)* | United States District Court, Southern District of Alabama, Mobile Division Case No. 1:06-cv-00148-KD-M Assigned: Hon. Kristi K. DuBose Filed: 3/10/06 |
| 4. | *Cinas Corporation v. Robert J. Abel, Justin Barnard, Daryl Bowman, Esequiel Bustamante, Tina A. Cavagnaro, Daniel Clouse, Robert Colihan, Michael Conner, Roderick Covert, Shane A. Cox, Benjamin Dodge, Frank Christopher Dominguez, Robert Glover, Stuart S. Goodman, Jason Warren Green, David Held, Justin Ivins,* | United States District Court, District of Arizona, Phoenix Division Case No. 2:06-cv-00693-EHC Assigned: Hon. Earl H. Carroll Filed: 3/10/06 |

1

| | | |
|---|---|---|
| | *David E. Jones, Richie King, III, Matthew Kunda, Larry L. Line, James Joseph Linkey, Daniel Maldonado, Richard Maser, Charles E. Mason, Jr., Cynthia Maves, Michael Eric McCoy, Michael Moreno, Joseph Scott Otero, Eugene R. Pain, Jarrod Peace, Jose Anibal Perdomo, Douglas Pettit, Todd Pilgrim, Kyle Richard Randall, Manuel Sandoval, Matt Schaper, Rebecca Shepherd, Jonathan Sigl, Richard Snell, Bryan Stokes, George Thomas, III, Robert Thompson, Brena Vesey, Jessy Whitener, and John W. Young, Jr.* | |
| 5. | *Cintas Corporation v. Robert Carlos Alegria, Sean Allen, Randy Anderson, Robert Andrews, Heriberto Arroyo, Sijifredo Arroyo, Hector Avila, Michael Bartz, Joseph Beck, John Bereza, Brooke A. Bissin, Ralph Bracamontes, Chris Brooks, Stephen Brooks, Jorge Cabrera, Christopher Camden, Gustovo G. Campos, Javier Carrillo, Matthew S. Carter, Craig Robert Cavanaugh, Marcos Cervantes, David Chapman, James Connelly, Erinn Cooper, Jeffrey Louis Cottini, John Maurice Craig, Carlos R. Cruz, Michael D. Dakos, Mark Dalsass, Raymond L. Dangerfield, Jeffrey C. Davis, Timothy Dawson, Patrick Day, Craig Debano, Christopher Donahue, Mark E. Dool, Jason Escovar, Sam Esparza, Jr., Paul Esparza, Hector Ferrer, Alan Fillingame, James Flagg, Henry Franklin, Nathan Freeman, Michael Fridley, Tomas Galicia, Ruben Gamez, Anthony Garcia, Tracy Ramon Garcia, Jesse Gastelum, Wyman Gentry, Dalero Gienapp, Karlo Godoy, Jeffrey Gomez, Yovani Gonzalez, Stephen Henderson, Victor Hugo Hernandez, Tim Hubbard, Reuben John Hussmann, Neal Indorf, Beau James, Ronald Jamieson, Albert Johnlouis, Deon Johnson, Thomas Kinto, Randall Kolby, Brian Lanning, Michael Laster, Enrique Lizarraga, Adan Lopez, David Lopez, Gilbert Lopez, Gilbert Luna, Kevin Mackelburg, Marcus Marks, Charles Maye, Cesar Medina, Alexander Eduardo* | United States District Court, Central District of California, Western Division<br>Case No.: 2:06-cv-01750-CAS-PLA<br>Assigned: Hon. Christina A. Snyder<br>Filed: 3/10/06 |

| | | |
|---|---|---|
| | *Miguel, Cameron Elias Milloy, Alberto Miranda, Jr., Jorge Molero, Eddie Montez, Tony Montez, Ronald Calvin Moore, II, Greg Mowry, Stephen Navarro, Enrico Negrete, Rusty N. Nichols, Danny Nunez, Richard D. Ortega, Raymond Parra, Raymond Petty, Omar Polo, Jr., Jeronimo Ramirez, Atanacio Reveles, Ernesto Rivera, Jr., Gabriel Rivera, Richard Rodarte, Jose Luis Rodriguez, Raymond A. Rojas, IV, Pedro J. Roman, Joe Romero, Larry Roy, Gregory Russell, Roy Saavedra, Horacio Salazar, Jesus R. Sanchez, Max Sandoval, Daniel Santos, Renee Laura Schlamp, John W. Seitz, Jerry Sexton, Donald R. Silva, David Silvas, Juan Solorio, William Steiner, Clarence Stewart, Tom Sturgis, Wes Sudol, Daniel T. Sweet, Donald E. Taylor, Jeffrey K. Tepe, Scott Truman, Aaron R. Uballez, Hector Ulloa, William Ed Vanderpool, Juan Vasquez, Gary Venable, Kevin Venable, Bernard Villapudua, Cade T. Wenner, Michael West, Brian White, Matthew White, Phillip Joel White, James Williams, Brandon Wilmoth, Ronald Winans, Sr, John Winberry, Mark William Woodson, Gene Wookey and Edwin Zavala.* | |
| 6. | *Cintas Corporation v. Ronald Arvizu, Sean Bachman, Gary Badgerow, Conrad Bierach, Noe Blanco, Tony Crivello, John H. Dervin, Robert Doss, Michael Anthony Fuentes, Edmundo Garcia, Jerry Garcia, Daniel Golden, Angel Infante, Jason Kirby, Timothy Link, Traco Matthews, Thomas J. McArdle, William A. Meeker, Salvador Orosco, Steven Owen, Daniel Pena, Jr., Lisa Roston, Shade Staples, Gregory Steven Uber, Ronald Woody and Richard Young, Respondents.* | United States District Court, Eastern District of California, Sacramento Division<br>Case No.: 2:06-cv-00611-DFL-GGH<br>Assigned: Chief Judge David F. Levi<br>Filed: 3/22/06 |
| 7. | *Cintas Corporation v. Daniel E. Ainsworth, Augustin Avalos, Guillermo Avalos, Noah Bostwick, Jonathan Brown, Carlos Javier Contreras, Javier Contreras, Ricardo Contreras, Gustavo Cortes, John Craig, Russell Doll, Mark Edwards, Douglas Brian Emberland, Richard Estrada, Eduardo Flores, Ricardo Fonseca, Anthony Goemaat,* | United States District Court, Southern District of California, San Diego Division<br>Case No.: 06-cv-632<br>Assigned: Hon. John A. Houston<br>Filed: 3/22/06<br><br>_ |

|  | *Jesus P. Gonzales, Robert Hewett, Alvaro Hurtado, Jeremy Jaslove, Silverio Ted Kaeg, Mario T. Lapp, Juan Sanchez Lopez, Leon Mahnken, Christopher R. Mason, Jeffrey Masoner, Noritaka Kevin McAffee, Sean P. McNemar, Adrian Mendoza, Edward Edward (Al) Morford, Christopher Newcomb, Felipe Parkins, Hector Joseph Perreira, Allen Santos, Anthony Schneider, Joshua Scott, John Stone, Theodore Thomas, Steve Vandervort, Ronald Wilson, Jr., Ryan Glenn Wingo and Jay Christopher Wolfe* |  |
|---|---|---|
| 8. | *Cintas Corporation v. John D. Bickham, Kevin Bower, Stuart Browning, Brian Buen, Marc Colavito, Michael Cottrell, Marc Dennis, Robert Emmerling, Jerome Franks, Russell Greer, Vernon Grigsby,Jr., Peiter Hoekman, Jack Osman, Ken Reinwald, Michale Sanderson, Joe C. Sipres, David Wilson and Bradley Zall* | United States District Court, District of Colorado, Denver Division<br>Case No. 1:06-cv-00427-LTB<br>Assigned: Chief Judge Lewis T. Babcock<br>Filed: 3/10/06 |
| 9. | *Cintas Corporation v. Eugene Christensen, Steven M. Coe, Pasquale D'Amato, Michael Delauro, Aliexer Erazo, David Frink, Russ Gallo, Benjamin Hotchkiss, Derrick Humbles, Edward Owens, Michael A. Siena, Glenn Smith and Barbara Cowles* | United States District Court, District of Connecticut, New Haven Division<br>Case No. 3:06-cv-00360-AWT<br>Assigned: Hon. Alvin W. Thompson<br>Filed: 3/10/06 |
| 10. | *Cintas Corporation v. Charles Leroy Gray, David W. Reed and Neal Capuchino* | United States District Court, District of Delaware, Wilmington Division<br>Case No: 1:06-cv-00162-JJF<br>Assigned: Hon. Joseph J. Farnan, Jr.<br>Filed: 3/10/06 |
| 11. | *Cintas Corporation v. Alice Allen, Gary Allspach, Rick Arango, William J. Bitz, Thomas Flynn Blake, Chad M. Blenden, Kenneth Bobola, Daniel Booth, Terry Carter, Chris Citrano, Merle Conway, Jason M. Coombs, Charles Corelli, Matthew Cothran, Kevin Coulon, Ernest Dossin, John Eggebeen, Randall Evans, Nicholas Fisher, Ricky Floyd, David M. Frierson, James Gilmore, Luke D. Graham, Joseph Lee Griner, Eric Hall, Scott Hart, Randal Kevin Hawkins, Donald Keith Hilyer, H. David Hoefle, Timothy Horne, Nick Hutson, Paul R. Jones, Willie A. King, Eric McFadden, Jeffrey Moch, Lisa Nucci, Jeffrey D. Parsons,* | United States District Court, Middle District of Florida, Tampa Division<br>Case No.: 8:06-cv-00400-EAK-MSS<br>Assigned: Hon. Elizabeth A. Kovachevich<br>Filed: 3/10/06 |

4

| | | |
|---|---|---|
| | *Todd Pascual, James Alan Price, Michael Prosser, Natalie Puzzo, Steven Quinn, Roy S. Raulerson, David Richie, Michael Rorick, Chris Savage, Elton Sheppard, Mario Simmons, Benjamin N. Smith, Bruce P. Smith, Todd Swenson, Larry Thornhill, II, Ruddy Vasquez, Jeff Vassau, Michael Waldorf, Jeffrey R. Waldschmidt, Fred K. Weinert, Shannon Lee Williams and Rufus L. Willis* | |
| 12. | *Cintas Corporation v. Joseph Frazier, William Fugua, Ryan Hawkins, John Corey Jones, Ron Looney, Jr., Leonard N. Norris, Bobby L. Prince and Tommy Stearns* | United States District Court, Northern District of Florida, Pensacola Division Case No.: 3:06-cv-00103-MCR-MD Assigned: Hon. M. Casey Rodgers Filed: 3/10/06 |
| 13. | *Cintas Corporation v. David J. Abrahamsen, Chad Alfred, Robert W. Bean, Warren Bersch, Michael Bivins, Michael Brantley, Humberto Chirino, Michael D. Clark, Robert A. Cothran, Jose Dardon, Michael E. DeSantis, Albert Diaz, Bryan Diebler, Karl Faul, Shane Faul, Carlton Manual Ferreira, Frank Flintom, Mauricio Fraginals, Ricky Garrett, Michael Gemmati, Phillip J. Gemmati, Raul Jose Gonce, Mike Hart, Walter Hauk, Edward Hoaglund, Marvin Jackson, Marcus Angel Jewell, David Kraft, Sergio Labastille, Donald Ledsworth, Roberto Lopez, Thomas Lupo, Edwin Melendez, Lance A. Miller, Rodolfo Morazan, Ramon Moreno, Eloy Pedro Muniz, Fabian Ospina, Michael Angel Pagan, Anthony Pianelli, Richard Ramos, Carlos Rivera, Alberto L. Rivero, Daniel Rosell, Jesus Romero, Rene Rubens, Larry San Juan, Anthony Sanabria, Mario B. Saulog, Michael Scholl, Alvaro Solorzano, Steven T. Swett, Jr., Fabian Vazquez, Gerardo Vergara, Tuan Phi Vo, Arthur Xaros and Moises Zeda* | United States District Court, Southern District of Florida, Ft. Lauderdale Division Case No.: 06-CV-60310 Assigned: Hon. William J. Zloch Filed: 3/10/06 |
| 14. | *Cintas Corporation v. Matthew J. DeFelix, Robert C. Ford and Daniel Scott Turner* | United States District Court, Middle District of Georgia, Albany Division Case No.: 1:06-cv-00038-WLS Assigned: Hon. W. Louis Sands Filed: 3/10/06 |

| 15. | *Cintas Corporation v. Jeffrey Aybar, Mark (Marshall) Beckham, Larry Daniel Bridges, Stephen W. Carter, Ricky Carthon, Gerald Clark, Jr., Marcus Dillard, Sean Ellis, William D. Finnie, Paul J. Gardner, II, David Lewis Gentry, Mark Lee Hardin, Kim Harris, Greg Herzog, Dana Hoffman, Martin F. Johnson, David Kohl, Christopher Alan Lackey, Greg Lassiter, Charles (Andy) Lickliter, Shannon Lovett, Jeffrey Heath Maddox, Craig E. McAshan, Sr., Richard McGee, Jr., Harvey Miller, Jose R. Monzon, Alfred Perry, Xavier Perry, Tracy Reid, Ronald Richardson, Steven Sandoval, Jay Daniel Shonk, Dexter Still, Christopher Tow, Demond Watson, Barry C. Williams, Charles Anthony Williams, Edward Williams, Joel Williams, Randy L. Windom and Robert Wood* | United States District Court, Northern District of Georgia, Atlanta Division<br>Case No.: 1:06-cv-00569-MHS<br>Assigned: Hon. Marvin H. Shoob<br>Filed: 3/10/06 |
| 16. | *Cintas Corporation v. Joe L. Banks, Paul Berry, Tory Bradley, Bryan Carelock, Lonnie Coppock, II, Ashley Driggers, Matthew H. Dunham, Samuel Edenfield, Jerry Ernsperger, Raymond Fulce, Jr., Lamont Garrison, Tilmon C. Greene, III, Eddie Lee Parker, Jr., Daniel Lee Parks, II, Casey Patterson, Brent Pedigo, Michael Jerome Samuels, Almond Smiley, Barry St. John, Valtorian Evander Washington and Charles Lee Whitfield* | United States District Court, Southern District of Georgia, Augusta Division<br>Case No.: 1:06-cv-00035-DHB<br>Assigned: Hon. Dudley H. Bowen<br>Filed: 3/10/06 |
| 17. | *Cintas Corporation v. David DeBilzan, Michael Etzler, Michael Hilliard, Ryan Scott Holbrook and John Horn* | United States District Court, District of Idaho, Boise Division<br>Case No.: 1:06-cv-00104-LMB<br>Assigned: Hon. Larry M. Boyle<br>Filed: 3/10/06 |
| 18. | *Cintas Corporation v. James Allen Burress, Debra Drought and Jeffrey Groves* | United States District Court, Central District of Illinois, Peoria Division<br>Case No.: 1:06-cv-01068-JBM-JAG<br>Assigned: Hon. Joe Billy McDade<br>Filed: 3/10/06 |
| 19. | *Cintas Corporation v. Vince Agozzino, Ryan Ammon, Rick Arms, Joseph Brien, Daniel Charatin, Dennis L. Churches, Oscar R. Delgado, John Delort, Lynn M. Drendel, Wanda Forbes, Shawn Fragassi, Phillip R. Galloway, Jr., Brent Gilliland, Delondon* | United States District Court, Northern District of Illinois, Chicago Division<br>Case No.: 1:06-cv-01343<br>Assigned: Hon. James B. Zagel<br>Filed: 3/10/06 |

| | | |
|---|---|---|
| | *Hawthorne, Leonard Houha, James Johnson, Renee Larque, Frank Lemanski, David Lodewyck, Bob Lovatt, Jeffrey Todd MacLagan, Donald J. Mandonado, Jr., Victor Mayweather, Eric McDermott, Tim McNeela, James Musselwhite, James Narbone, Raymond Padron, Brad L. Paske, Timothy Perry, Thomas A. Quarrie, James Richards, Mark Rivera, Richard Roberts, Paul Robinson, Genaro Santiago, Jr., James F. Schomburg, Ruben Serrano, Jr., Timothy Sheridan, Jaime Solano, Lavonzelle Stokes, Chris Straka, Kurt H. Taylor, Eric Woolwine, Stefan Youngbrandt, Oscar Zermeno* | |
| 20. | *Cintas Corporation v. James Atkins, Joshua Baker, Harold D. Bauer, Jr., Greg M. Buuck, Peter James Cala, Dan Damron, II, Travis Dunlap, Derek French, Robert L. Geer, Jason Holland, Rex O. Jackson, Erik Stephen Jedrysek, Thomas S. Johnson, Shannon Lantrip, Ernest Long, Carl McCarthy, Kenneth McDermott, Brian McKee, Carlos T. Mendoza, Bryan Michael Mueller, Lowell R. Nicolai, Michael W. Peek, Richard Popp, Lazaro A. Rouco, Jr., Richard Sheipline, Phillip A. Smith, Jarred D. Stuckey and Harold Trefi* | United States District Court, Northern District of Indiana, Hammond Division<br>Case No.: 2:06-cv-00085-RL-APR<br>Assigned: Hon. Rudy Lozano<br>Filed: 3/10/06 |
| 21. | *Cintas Corporation v. Ryan Albright, Robert D. Anderson, David W. Bippus, Michael C. Bray, Mark Bristow, Kevin Carter, Brent Chapman, French Collins, Jason Davis, Daniel Deely, James Downey, Ryan Daniel Eagle, John James Eastman, III, Samuel Fabrizio, Greg Farris, Joshua Frazer, Kevin W. Gambill, Chad Gartin, John Geile, Michael Griffin, Richard E. Gunckle, David M. Haloski, John A. Haynes, Brian Keith Hess, Joshua Hewitt, Willie Holmes, John M. Hughes, Gregory D. Hulse, Jack James, Paul Jones, Shane M. Jones, Donald Kandal, Jason Knaoo, Bret Michael Kormelink, Darrell R. Literal, Jr., James Patrick Lutz, Frederick Lamont Martin, Michael Anthony McCraw, Todd McGhee, Jeffery Miller, Kaile Moran, Kelly Leo O'Nan, Brad Pinkston, Jeff Prewett, Jeff Springston,* | United States District Court, Southern District of Indiana, Indianapolis Division<br>Case No.: 1:06-cv-00401-JDT-WTL<br>Assigned: Hon. William T. Lawrence<br>Filed: 3/10/06 |

| | | |
|---|---|---|
| | *Michael Stark, Max Sumpter, III, Marc A. Toone, Jacob Wallace, Jason Wallace and Ryan Zigler* | |
| 22. | *Cintas Corporation v. Donald Allen Griffin, Vilera Mills, John A. Schneiter, Michael Stancil,* | United States District Court, Southern District of Iowa, Central Division<br>Case No.: 4:06-cv-00091-REL-RAW<br>Assigned: Hon. Ronald E. Longstaff<br>Filed: 3/10/06 |
| 23. | *Cintas Corporation v. Matthew L. Blackman, Vince McClain Burghart, Michael Cumley, Edward Evans, Mark Anthony Feagin, Terry G. Hoffman, Tracy Howell, Douglas Johnson, Craig Jones, J. Adam Quiroz, Gerald A. Richards, JohnTheisman, Christopher W. Thomas, Todd Voss, Frederick D. Whitcomb, James Wildeman, JoAnn M. Wolf* | United States District Court, District of Kansas, Kansas City Division<br>Case No.: 2:06-cv-02091-JWL-JPO<br>Assigned: Hon. John W. Lungstrum<br>Filed: 3/10/06 |
| 24. | *Cintas Corporation v. Danny L. Brown, Gregory S. Bryant, Marty D. Conley, William W. Hehr, II, Joseph R. Kerlavage, Jr., Todd Alan Lovins, Jeffrey S. Martin, David L. McDaniel, Randy Miller, Tracy Nichols, Victor Nichols, David B. Rose, Ralph Slone, Jr., Jeff Stephens, David Tackett, John Rile Tussey and Charles B. Yates* | United States District Court, Eastern District of Kentucky, Covington Division<br>Case No.: 2:06-cv-00052-WOB<br>Assigned: Hon. William O. Bertelsman<br>Filed: 3/10/06 |
| 25. | *Cintas Corporation v. Jason Agostini, Michael P. Boyle, James Cobble, Robert Dahmke, Jason Folz, Clyde Hayes, Fred Kremer, Edward Lanci, Eileen M. McGinley, Mark Misback, Lawrence Moss, Michael A. Ross, Keith Wakefield and Jeff Walston* | United States District Court, Western District of Kentucky, Louisville Division<br>Case No.: 3:06-cv-00131-JBC<br>Assigned: Hon. Jennifer B. Coffman<br>Filed: 3/10/06 |
| 26. | *Cintas Corporation v. Jack Addison, Matthew Augustin, Jay Blessing, Gregory Brown, Jr., Erroll A. DeBose, Jacob J. Foto, Frank Giamalva, Jr., Joseph Lanclos, Theodore J. Lavergne, IV, Daniel Livingston, Ted Manale, III, Salvador Prescia, Brett Ramirez, Dennis M. Richard, Gregory M. Salazar, Vincent Santalucito, Ray Slocum, Daniel Smith, Jack Darren Thomas, John Tully, Jr. and Joseph White, Jr.* | United States District Court, Eastern District of Louisiana, New Orleans Division<br>Case No.: 2:06-cv-01247-LMA-ALC<br>Assigned: Hon. Lance M. Africk<br>Filed: 3/10/06 |
| 27. | *Cintas Corporation v. Gustave Fontenot, Jr., Robert C. Galloway, Steven Green, John Alex Gremillion, Terrance P. Guthrie, Eugene Johnson, Tyrick D. Nelson, Benny Parker, Jason Price, Darren Rauch, John* | United States District Court, Middle District of Louisiana, Baton Rouge Division<br>Case No.: 3:06-cv-00188-FJP-SCR<br>Assigned: Hon. Frank J. Polozola<br>Filed: 3/10/06 |

|     | *Davin Siekkinen, Richard Smith and Aaron Paul Witty* | |
|-----|---------------------------------------------|-------------------------------|
| 28. | *Cintas Corporation v. Ivan Edward Avery, Alfonso Bolden, Tony Britt, James Andrew Cope, Jr., Terry C. Evans, Herman Hutto, Joel Jeansonne, Donald Lewis, Andrew Maloch, Jason K. Massey, Kenny P. McCain, Barry Preston McCain, Chester McDaniel, Glen H. Pierce, Barney Prejean, Bobby Joe Scott, Jr., David Starnes, John Michael Sutter, Mark Dolton Wood and Gary Yarbrough* | United States District Court, Western District of Louisiana, Lafayette Division<br>Case No.: 6:06-cv-00391-TLM-MEM<br>Assigned: Hon. Tucker L. Melancon<br>Filed: 3/10/06 |
| 29. | *Cintas Corporation v. Randall Bowles, Derrick DiPaolo, Michael Drummond, Steven Howe, Albert Jordan, Michael Rumpf and Paul Williams* | United States District Court, District of Maine, Portland Division<br>Case No.: 2:06-cv-00055-GZS<br>Assigned: Hon. George Z. Singal<br>Filed: 3/10/06 |
| 30. | *Cintas Corporation v. Mitchell Aron Beard, Melvin Pearson, Walter Smith, T. Gregory Sothern, Defendants v. Joe Andrews, Nicholas Ackerman, Joseph W. Adolph, Harold W. Arvin, William Christopher Bell, Robert Brinlee, Antoine Alonzo Brooks, Gregory Brunson, Dustin Lee Butler, James W. Conigland, Daniel Cooper, III, Jeffrey M. Coulson, Jeff Crismond, Donna J. Culley, Dahbu Dahbu, George Downey, Mark Daniel Dwarte, William Elliott, James Fleek, Norman Fogg, Jr., Michael E. Foreman, Timothy France-Kelly, Pamela Goines, DeCarlo Harrison, Alan Hays, Bruce Hines, James Jackson, Patricia James, David Darryl Jones, Ronald Dee Lewis, Lori Lewman, Antonio D. Mathis, Duane Matthews, Jason Padgett, Donald Ray Plush, II, Dominique Douglas Postell, Randall A. Reid, Patrick Dontae Robinson, Michael E. Russell, Christopher Scott Ryan, John Sessoms, Elliott F. Simmons, Jr., Garnet Simms, Jermaine Simon, Michael Thoma, Anthony White and William A. Wilson, Respondents.* | United States District Court, District of Maryland, Greenbelt Division<br>Case No.: 8:06-cv-00641-PJM<br>Assigned: Hon. Peter J. Messitte<br>Filed: 3/10/06 |

| 31. | *Cintas Corporation v. Philip Daniel Blaisdell, John S. Bova, Jr., James Brown, Jr., Eric Carney, Sr., Scott Chalmers, Jason Cleaves, Sr., R. Patrick Durkin, Scott Fortune, Steven Fournier, Tylor John Gibson, Todd Gordon, Kevin Kilby, Brian David Lanigan, Sean McComiskie, Christino S. Montanez, Jr, Daniel Otis, Jeffrey Phillips, William Rolfe, David Santos, Brenda Shaw, James Spinale and Eric Stellato* | United States District Court, District of Massachusetts, Boston Division<br>Case No.: 1:06-cv-10442-WGY<br>Assigned: Hon. William G. Young<br>Filed: 3/10/06 |
|---|---|---|
| 32. | *Cintas Corporation v. Brandon Alioto, Daniel S. Baldwin, David Baldwin, Patricia Bedard, William Bertrand, Craig Bobeck, Daniel J. Bonacorsi, Kathleen Booker, Scott Borawski, Kevin Boynton, Brian Buddie, Bruce Cameron, Jason Cash, Michael Caudill, Chad Chappell, Dennis Cole, Kevin Comaty, Shirlene Cooper, Aaron Coy, Nathaniel T. Crawford, Timothy Crumley, Frank DelSorbo, Troy L. DeRosia, John Dyer, Patrick Feeney, Rickey Fields, James Follen, Craig Fuerst, Josh Gilmore, Thomas Gubala, Thomas Hager, II, Ghassan Hassan, Toni Henderson, Matthew Leonard Jamison, Todd Jenks, Courtney Johnson, Michael Jones, Randy Judd, Glen Kennedy, Jason Koltys, Christopher Krause, Christopher Kull, John Kunz, David LaFond, Bill LaPrell, Eric Laurain, Michelle Livernois, Sean P. Love, Joseph Lowell, Bonnie MacPetrie, Joseph Marcoux, Martin Martensen, Jose Martinez, Joseph Mason, Kirk Lee Monroe, Craig E. Morris, Dale Morris, Lori Ann Morrison, Joseph Murphy, II, Christopher Neboyskey, Michael J. Novak, Michael B. O'Keefe, Daniel Orgeek, Terry Pieper, Juan Powers, Michael Prieur, Rolondo D. Redmon, Roy T. Reno, Anthony Rieck, Jason Rizzo, Gary Rucinski, Jr., James Savas, Timothy Schaffer, Garry Schwartz, Troy P. Sheck, Robert Lee Shufford, Jr., Glen Arthur Sizemore, David Skuratovich, Barbara Smith, Richard Sword, Wayne Thompson, Scott Tomaszewski, Greg VanCoppenolle, Victor Vulaj, Andrew Wallace, Douglas Wetoszke, Candice* | United States District Court, Eastern District of Michigan, Detroit Division<br>Case No.: 2:06-cv-11043-NGE-RSW<br>Assigned: Hon. Nancy G. Edmunds<br>Filed: 3/10/06 |

| | | |
|---|---|---|
| | *Williams, Richard Witkoske, Timothy Wolner and Ruth Ann Zarbaugh, Respondents.* | |
| 33. | *Cintas Corporation v. Travis M. Ault, Larry D. Chesser, David Cook, Jeff Edney, Dylan M. Frashier, Ronnie Gaines, Shawn Garrett, Brandon Genther, Dan Hanson, Sheree Hanson, Steven Harper, Ben Horn, Brian Jones, Eric R. Kincaid, Patrick Kreutz, Christopher Leeder, Robert Lee Leinberger, Joseph Camara Medeiros, IV, Patrick Moriarty, Stacie L. Munday, Jonathen Porta, Terry Porta, David Rabine, Scott Sheets, Perry Shepard, Darrin Smith, Derek Streng, Joe Thompson, Mark Thompson, Keith Truax, Trent Van Overloop, Christopher John Vanderkuyl, Jerry Wright, Andre Williams, Jeffrey Dean Wilton and Mark Richard Wragg* | United States District Court, Western District of Michigan, Grand Rapids Division<br>Case No.: 1:06-cv-00180-RAE<br>Assigned: Hon. Richard Alan Enslen<br>Filed: 3/10/06 |
| 34. | *Cintas Corporation v. John Callahan, Bruce Cotter, Douglas DeMulling, Jasmin Dimac, Larry A. Drenckhahn, Scott Feehan, Daniel Hill, Peter James Huber, James Hulet, Dale Allen Kassen, Brian Koste, Jason Lyle Koste, Michael Linn, John Lishman, Lee Muellner, Leman Nutall, Jamie Olson, Robert Potteiger, James Quigley, Kevin Rettke, Anthony Romie, Timothy D. Salo, Thomas Theis, Steven Tilseth, Todd Vetsch, Thomas Wasylik, Jay R. Whiteoak, Jeffrey Craig Wobbrock and Michael Zacharias* | United States District Court, District of Minnesota<br>Case No.: 0:06-cv-01012-DSD-JJG<br>Assigned: Senior Judge David S. Doty<br>Filed: 3/10/06 |
| 35. | *Gregory Cole Bigbee, Janice M. Bishop, Willie Cousins, Jackie Nelson Day, Robert Flanagan, Michael Gaul, John Michael Harris, Brad Duane Hill, Thomas Long, Jr., Rogers McClellan, Jeffrey Wayne McFall, Jr., Thomas Provance, Russell Edward Purdy, James Earl Smith, Patrick Smith, Christopher Tatum, Tony Demario Tillison, Keith Verucchi and Johnnie Lee Vick* | United States District Court, Southern District of Mississippi, Jackson Division<br>Case No.: 3:06-cv-00137-TSL-JCS<br>Assigned: Hon. Tom S. Lee<br>Filed: 3/10/06 |
| 36. | *Cintas Corporation v. Relton Barnes, Christopher Baumer, Tyrone Charles Benedict, Michelle Brown, Cory Brown-Donald, Scott Patrick Caldwell, David Dravland, Kendall Eldrige, Joshua Hartwell, Daryl Holland, Alex Humphrey, Kenneth Jaseckas, Jason Kern, John C. Lange, Roger* | United States District Court, Eastern District of Missouri, St. Louis Division<br>Case No.: 4:06-cv-00450-JCH<br>Assigned: Hon. Jean C. Hamilton<br>Filed: 3/10/06 |

| | | |
|---|---|---|
| | *Lewis, Dave McCune, Walter Mitchell, Brian Edward Montgomery, Brian M. Pavia, Michael J. Pellerito, John C. Pickett, Christopher Porter, Kurt Rapplean, Kevin M. Sayles, Edwin Schepers, Doug Schroeder, Robert D. Schubert, John Schweiss, James Thomas, Jr., Troy Tusing, Matthew Weiss* | |
| 37. | *Cintas Corporation v. Randall Adams, Kevin Beal, Jason Boman, Dean Calvin, Boyd Carr, Charlie Carter, Leon Allen Cooper, Clarence Duell, Mark Gage, Thomas David Garity, Bryan Grant, Kelly Chad Hedgpeth, Brandon K. Hein, Thomas Horton, Michael David Jackson, Sean M. Johanson, Gregory Longstaff, Troy A. Miller, Robert Darrell Porter, Ron Richardson, Michael Ricketts, Jared W. Shook, Michael R. Smith, Aaron Starkey, Randall Stephens, John Logan Taunton, Matthew Underwood, Richard Allen White, Jr., Steve Wickman and Damon Williams* | United States District Court, Western District of Missouri, Kansas City Division<br>Case No.: 4:06-cv-00208-SOW<br>Assigned: Hon. Scott O. Wright<br>Filed: 3/10/06 |
| 38. | *Cintas Corporation v. Jeffrey Anderson, Nick Jinings and Jeffrey Lee Williams* | United States District Court, District Court of Nebraska, Omaha Division<br>Case No.: 8:06-cv-00262-LSC-FG3<br>Assigned: Hon. Laurie Smith Camp<br>Filed: 3/10/06 |
| 39. | *Cintas Corporation v. Anthony Dean Hamby, Chris Sylvia, Daniel Rodriguez, David George Gugino, Gery D. Poquette, Harvey Herrington, Jonathon James Bow, Kevin Nordstrom, Orlando Colunga, Richard Hosack, Richard Meyers, Ryan Moravitz, Scott Fielding, Shiloh Stutz* | United States District Court, District of Nevada, Las Vegas Division<br>Case No.: 2:06-cv-00300-BES-PAL<br>Assigned: Hon. Brian E. Sandoval<br>Filed: 3/10/06 |
| 40. | *Cintas Corporation v. Joseph Allen, Joseph D. Biase, Kevin Borrmann, Mary E. Brown-Phillips, Stuart Bruno, Michael Burke, Gerardo Carrera, Kenneth Caruso, Shon D. Clark, Keith Colca, Germain Crosby, Thomas Devlin, Michael James Dillon, Kevin Edward Ducey, Douglas Edwards, Reginald D. Fairley, James Finch, Ruslan Firer, Alfred Fisher, Kevin Gedinsky, Vincent Gomez, Antonios Gritsipis, Darren M. Hermes, Sergeo Jackson, Darrin Johnson, Kwan Johnson, Lashawn Jones, William Kelly, Michael Kinkead, Gordon Scott* | United States District Court, District of New Jersey, Newark Division<br>Case No.: 2:06-cv-01164-JCL-MF<br>Assigned: Hon. John C. Lifland<br>Filed: 3/10/06 |

| | | |
|---|---|---|
| | *Kulessa, David Lagreca, Erik Leben, Jeffrey Ludwig, Peter Manfre, Jonathan Mercado, Fred Migdol, Jerry Moon, Mark N. Nelson, Richard Okolovitch, Glen Pacyna, John Pagani, Harry Palma, Theodore Pick, Jr., Hopeton Richards, Ramon Rivera, John Sebastiano, Andrew Sheehy, Carll Smith, Allen Soroka, Thomas Tarantola, Respondents.* | |
| 41. | *Cintas Corporation v. Bostick, et al.* | United States District Court, District of New Mexico<br>Case No.: 06-cv-00185<br>Assigned: Chief Magistrate Lorenzo F. Garcia<br>Filed: 3/10/06 |
| 42. | *Cintas Corporation v. Troy Amott, Warren Bickmeyer, George Bodenmiller, Humbert Diazgranados, Michael Donegan, Donald Gordineer, Joseph Maldari, Joseph Marino, Julio Nieves, Jr., Brian O'Neill, Harry Parrish, Vincent Plotino, Robert Sullivan, Willie Walker, Fernando Zapata, Hector Zayas, Jr.* | United States District Court, Eastern District of New York, Brooklyn Division<br>Case No.: 1:06-cv-01105-ENV-KAM<br>Assigned: Hon. Eric N. Vitaliano<br>Filed: 3/10/06 |
| 43. | *Cintas Corporation v. Hugh J. Kingsley, John Manion, Richard Panebianco, Blase Parus and Ronald Joseph Wilson* | United States District Court, Northern District of New York, Syracuse Division<br>Case No.: 5:06-cv-00311-NAM-GHL<br>Assigned: Chief Judge Norman A. Mordue<br>Filed: 3/10/06 |
| 44. | *Cintas Corporation v. Louis Alves, Kenneth J. Bachmann, Wayne C. Bailey, Dustin Davison, John F. Doherty, Jr., John Dolan, John E. Ford, Charles Hennon, Eugene Kelleher, Kevin M. Lahey, Adam Litvack, Anthony Lubrano, Miguel Martinez, Michael Mauro, Robert Mejia, Michael Murphy, Ross Napoli, Richard Rivera, Ronald Salerno, Carl Santos, Robert Savino, Vito Spulveda, Carl D. Stroup, Joseph Tapia, Luis Taveras, Cesar Ymaya and Michael Zytkowicz* | United States District Court, Southern District of New York, Foley Square Division<br>Case No.: 1:06-cv-01933-VM<br>Assigned: Hon. Victor Marrero<br>Filed: 3/10/06 |
| 45. | *Cintas Corporation v. Robert F. Bowles, Jr., Christopher Brown, Robert Burcke, William W. Clayton, Matthew Conti, Jamie Czamara, Dana Danelle, James Dempsey, Allan Ecija, J. Michael Favret, Ronald French, Ronald Gardner, Jr., Richard Goslau, Troy D. Grucza, David Hamilton, Rodney* | United States District Court, Western District of New York, Rochester Division<br>Case No.: 6:06-cv-06147-CJS<br>Assigned: Hon. Charles J. Siragusa<br>Filed: 3/13/06 |

13

|     | *Hohenstein, Ronald Howe, Thomas Kirwan, Robert W. Klimm, Edward Konieczny, Kurt Lancaster, William Liktor, Joseph MacMillan, Stephen E. Miner, Christopher Todd Olson, Andrew Oscypala, Scott Parker, Marc Russo, Richard Sloane, Kieth Stoklosa, Michael Stoklosa, Stephen Tantillo, Bernard Therrien, Kenneth Urbanczk,, John E. Uschold, Ralph VanAuken, Stephen Vernille, Anthony S. Walker* | |
| --- | --- | --- |
| 46. | *Cintas Corporation v. Matthew Anderson, Donnie Bass, Brandon Eugene Bullard, Chad Jason Cady, Glenn E. Gray* | United States District Court, Eastern District of North Carolina, Western Division Case No.: 5:06-cv-00113-D Assigned: Hon. James C. Dever, III Filed: 3/10/06 |
| 47. | *Cintas Corporation v. Gus Aranegui, Stephen Gaskins, Ralph Guys, Jr., Sean Warren Lawrence, Jack McLean Minor, Christopher Werner Schaal, Paul Douglas Smith,* | United States District Court, North Carolina Middle District, Durham Division Case No.: 1:06-cv-00225-UA-WWD Assigned: Hon. Unassigned Filed: 3/10/06 |
| 48. | *Cintas Corporation v. Jonathan Allred, Michael Lee Allshouse, Christopher J. Ames, Silas Ray "Bo&qu Bolen Jr., Thomas Scott Branscome, James Ryan Crawford, Chad Crews, Jean Lande Dixon, Roy Dixon, III, Kenneth Farthing, Rick Ferrell, Jon Curtis Fincham, Sarah Hanson, Caderis Heath, Sidney Howell, Jeff C. Johnson, Mark H. Johnson, Todd Johnson, Thomas Jap Ledbetter, Sr., Joe K. Martin, Steven McCabe, Aaron R. McCoins, Kevin Neil Monteith, Carl T. Morell, Jr., Chris Oblinger, Cecil Purcell, Scott Robinette, Antonio Robinson, James Daniel Rudd, Steven Sheets, Brian James Shelton, Michael Smith, Christopher Strader, James Theriault, Thomas Webb, Stephen Weisbecker, Robert Williams and William Yowell* | United States District Court, Western District of North Carolina, Charlotte Division Case No.: 3:06-cv-00114 Assigned: Hon. David Keesler Filed: 3/10/06 |
| 49. | *Cintas Corporation v. Bradley Agler, Sam Barbarotta, Daniel Lee Bender, Brian Bobo, Kevin Boslaugh, Donald Burke, Timothy Cingel, Brian Clark, Gary Combs, Rene Cruz, James Drahos, Anthony Edwards, Kelby Garland, Kevin Harper, Cheryl Harris, Dwight Harris, Chad Hermiller, James Herron, Chad Householder, Scott* | United States District Court, Northern District of Ohio, Toledo Division Case No.: 3:06-cv-07083-JGC Assigned: Hon. James G. Carr Filed: 3/10/06 |

| | | |
|---|---|---|
| | *Howe, Craig Hurst, Clifford Jones, Ken Kadilak, Brian Karr, Joseph Kintler, Joel L. Kirksey, Jody Lisiakowski, Jason Lombardo, Wendell McEldowney, Anson McQuigg, Edward Metheny, II, David Andrew Mitchell, Andrew Podsiadlo, James A. Reeder, Edward J. Rolko, Kent L. Schultz, Zachary P. Schumacher, Jason Seech, Richard (Cres) Shirey, Steven Sledz, Terry Smeltzer, Trevor Sumption, Eric D. Teague, Ernest L. Thomas, Clint West, David Wheaton and Robert Yontz* | |
| 50. | *Cintas Corporation v. Donald Adkins, Brian Baker, Jason Barrett, Joseph E. Berlage, David J. Bush, Jason Albert Byram, Dan Dawson, Carl DiSalvo, Steve Ehrman, Gregory Ernst, Grant Galik, Bruce Hammer, Tammy Hammerberg, Brian Scott Hanthorn, Eric Johnson, Joshua Jones, Jeffrey Lambert, Ken Maglosky, Ryan Edward Mangus, Scott R. Mastin, John Meyer, Brian Moore, Michael Mullins, Greg S. Offenberger, Matthew Reither, Steve Rose, Adam Seymour, Jonathan Smith, Greg Snyder, Garett Starr, Ralph E. Talbert, Jr., Jason Travis, Derrel Twitty, Sharmane Quontrel Washington, Christopher Williams* | United States District Court, Southern District of Ohio, Cincinnati Division<br>Case No.: 1:06-cv-00126-HJW<br>Assigned: Hon. Herman J. Weber<br>Filed: 3/10/06 |
| 51. | *Cintas Corporation v. Robert Hall, Bobby Joel Price, II, Lendon Wood* | United States District Court, Eastern District of Oklahoma, Muskogee Division<br>Case No.: 6:06-cv-00097-RAW<br>Assigned: Hon. Ronald A. White<br>Filed: 3/10/06 |
| 52. | *Cintas Corporation v. Brent Berna, Charles Eric Magee, Chris Ohler, Rodney Puckett* | United States District Court, Northern District of Oklahoma, Tulsa Division<br>Case No.: 4:06-cv-00148-TCK-FHM<br>Assigned: Hon. Terence Kern<br>Filed: 3/10/06 |
| 53. | *Cintas Corporation v. Raymond Mac Harris, Jr., Steve Landry, Jr., Michael McAlister, Gary Brandon Moore, Phillip Partain, Carolton Lamar Smith and Kenneth S. Storie* | United States District Court, Western District of Oklahoma, Oklahoma City Division<br>Case No.: 5:06-cv-00247<br>Assigned: Hon. Joe Heaton<br>Filed: 3/10/06 |

| 54. | *Cintas Corporation v. Dennis Bassett, Colin Cockreham, Thomas L. Dailey, Jaymes Gable, Eric S. Goveia, Charles Terry Hickey, Barrett Hildreth, Colby L. Jackson, Robert James Longoria, Jonathan Pelley, Aaron Remsburg, Randy Shaw, Michael Shepherd, David Slay and Tracy Stoppel, Respondents.* | United States District Court, District of Oregon, Eugene Division<br>Case No.: 6:06-cv-00335-AA<br>Assigned: Hon. Ann L. Aiken<br>Filed: 3/10/06 |
|---|---|---|
| 55. | *Cintas Corporation v. Kenneth W. Baptist, Stephen C. Benecke, Jessica Lynn Blackburn, Dean Brandt, Christopher C. Buttner, Richard Castens, Davide Checchia, William Chew, Michael S. Cintron, Samuel Cruz, Philp Dauria, Kevin Dickson, Robert Ericson, Jaime A. Faux, Scott Freeman, Brian Gilbert, Joe Gilchrist, Jeffrey Goida, Ivan Gonzalez, Joseph James, Thomas M. Laskowski, Jr., Leonard Lipscomb, III, Matt Loranger, Charles Martell, Jr., Douglas Martin, John Maule, Edward McCue, Jr., James Mertens, John Michelfelder, Zenard W. Mikulski, Brian Munn, Matthew Murphy, Stephen O'Connell, Mark Olli, Jr., Chris Orsini, Andres Ortiz, Alonzo K. Overman, William F. Pottichen, Jr., David Primerano, Michael Quinn, Thomas Raymond, Brian Riley, Victor Santana, Glenn Schwartz, David Scialanca, Jesse Paul Sciscio, Jason Secora, James Ervin Staggs, Miguel Stillfield, Charles Vallette, Raiford F. Wiggins* | United States District Court, Eastern District of Pennsylvania, Philadelphia Division<br>Case No.: 2:06-cv-01053-MK<br>Assigned: Hon. Marvin Katz<br>Filed: 3/10/06 |
| 56. | *Cintas Corporation v. Brian Ash, James Brewster, Shirley Dodson, Joel East, Daniel Erickson, Paul Lewis Fellin, Michael B. Geissinger, John Gill, Les Greene, Jon Gula, Renee Hall, William D. Henning, II, Kuba, Mark Lauer, Angelo Mariscano, Andrew O. Mecum, John Mullin, Robert Novatnak, Michael Osman, Robert Reedy, Jr., Daniel Shortencarrier, Thomas Sossong, John Stefani and Jared Stefanick* | United States District Court, Middle District of Pennsylvania, Scranton Division<br>Case No.: 3:06-cv-00517-JMM<br>Assigned: Hon. James M. Munley<br>Filed: 3/10/06 |
| 57. | *Cintas Corporation v. Christopher Derenzo, Andrew W. Eperthener, James Folsom, Thomas Klutch, Linda Leazier, Josh Miller, Ross Nicotero, III, Timothy Nye, Jason Phillips, Carl Potechko, Michael S. Smith, Nicholas Tokish, Leonard R. Torris, III and* | United States District Court, Western District of Pennsylvania, Pittsburgh Division<br>Case No.: 2:06-cv-00324-GLL-RCM<br>Assigned: Hon. Gary L. Lancaster<br>Filed: 3/10/06 |

| | Dave Vickless | |
|---|---|---|
| 58. | *Cintas Corporation v. Joseph E. Edwards, Ronald Labrecque, Michael Medeiros, Daniel V. Sheehan and Steven Wiehl* | United States District Court, District of Rhode Island, Providence Division<br>Case No.: 1:06-cv-00112-S-LDA<br>Assigned: Hon. William E. Smith<br>Filed: 3/10/06 |
| 59. | *Cintas Corporation v. Thomas Eugene Alert, Zebulan Anderson (other Zeb), Gregg Barnes, James Kurt Blackmon, Thomas Allan Bridges, Stephen Brock, Dana Casselman, Jon-Mikal Cottun, Luis R. Earl, Julia Fourman, Brian Gardner, Jeff Greene, Stephen Henderson, James Grady Herndon, Jr., Randall S. Hipp, Lavatus Holcombe, Timothy James Kelley, Adrian Kostiuk, Raymond Dale McKinney, David Linton McRoy, Michael Shane Moser, Darrell Moss, Theodore Perzak, Charles Reese, Jr., Robert Eric Sherfield, Donald Wayne Steele, John P. Tomkinson, Jimmy Ray Tooley, Andre L. Warner, Robert Reed Wilson, Michael Lane Wood and Terry Wright* | United States District Court, District of South Carolina, Columbia Division<br>Case No.: 3:06-cv-00762-MBS<br>Assigned: Hon. Margaret B. Seymour<br>Filed: 3/10/06 |
| 60. | *Cintas Corporation v. Stephen Barlow, Clinton Caton, Anton Landry (Tony), Stephen McClendon, Steven Rambo and Tommy Thompson* | United States District Court, Eastern District of Texas, Beaumont Division<br>Case No.: 1:06-cv-00137-MAC<br>Assigned: Hon. Marcia A. Crone<br>Filed: 3/10/06 |
| 61. | *Cintas Corporation v. Bryan Armstrong, Donald Ray Barfield, Casey Baughman, Hank Bentley, Bobby Brite, Dezmon Brook, Jennifer L. H. Browning (Jenny), Christopher Burke, Don Castleberry, Broderick Chambers, Sr., Michael nmi Cox, Virgil Lee Croft, III, Robert Samuel Davis, Keith C. Dawson, Chris C. Dees, David Delaneo, Tommy Dodson, Jermaine Dorris, James David French, Jeremaine Frierson, Lossan Garcia, Sammy Gates, Joshua Gentry, Carrie Giammusso, Albert Gonzales, Charles R. Gonzales, Scott Patrick Gregor, Jonathan A. Gregory, Matt Grim, Rickey L. Gullett, Jeremiah Hayes, Daniel Helton, Ricardo Jimenez, Kevin Lee, Kelvin T. Lewis, Russell Lewis, Ron Liles, Isaac Casper Madrid, Chad J. Martel, Tim McGuire, Duane McKinney, Randell Moss, Jennifer* | United States District Court, Northern District of Texas, Dallas Division<br>Case No.: 3:06-cv-00432<br>Assigned: Hon. Jane J. Boyle<br>Filed: 3/10/06<br><br><br>– |

17

| | | |
|---|---|---|
| | *Nichols (Burns), Chris Ortega, Robert Petty, James Kevin Reid, Andrew Lee Resta, Dominic Rocha, Timothy Ross, William Henry Rousseau, Rodger L. Rowan, Roderick Savage, Heather L. Simpson, William Slade, Michael W. Smith, Scott Allen Smith, Vincent Smith, Randy Spivey, Fred Stamper, John Story, Gerry Thomas, Julian Torrez, Vassandral Trimble, Jeremy Edward Whalen, Kelan L. Williams and Kenneth E. Woodfin* | |
| 62. | *Cintas Corporation v. Judd Allen, Bernard L. Blanchard, Jackie Ray Bonds, Jr., Brandon Brinning, Leonel Briseno, Leonel Cantu, III, Jesse Cavazos, Bobby Collins, Michael Cornett, Juventino Cortes, Jr., Sonny Cortez, Jimmy Dickerson, Joseph Len Durbin, Phillip Durbin, Adan Garcia, Jr., Jason C. Hamilton, Jorge Hernandez, Dustin L. Hill, Steven Hill, Jr., Joseph Wiley Hoskins, III (aka Tray Hoskins), Stephen Richard Hughes, Brandon Ingram, Thelenious James King, James Craig Langdon, Bradley J. McKee, Rogelio Moreno, Allen Louis Morris, Juan Munoz, III, Jeffrey T. Poke, Kance Prohoroff, Joe Michael Reyes, Von D. Robinson, Mario M. Rodela, Brian Tompkins, Ignacio Villegas, Richard Rodriguez, Frank Thomas Walker, Amanda Saucedo, Edwin Ward, Dan Sheperd, John Wells, Harold Simpson, Jason L. Wilson, Sam Smith, III, Tony Summers, Edward E. Tisdel, Robert N. Wilson, Erik Wolf, Jaime Vega and Louis Ybarra* | United States District Court, Southern District of Texas, Houston Division<br>Case No.: 4:06-cv-00824<br>Assigned: Hon. Vanessa D. Gilmore<br>Filed: 3/10/06 |
| 63. | *Cintas Corporation v. Issac Anaya, John Anaya, Michael H. Campion, Pablo Esparza, Roger Flores, Richard Hellen, Jordan Hennigan, Efrain Herrera, Carvell Holloman, Jadarthia Johnson, Alan F. Kougl, James J. Kropp, Sean M. Laissle, Brandi (Newberry) Madison, Gilbert Marrufo, Robert McLaughlin, Michael Lee McNamara, Sr., Mark Moore, Joe Murphy, David Myers, Clint Navarijo, Barry Paradis, Gerald Polk, Eluterio Rodriguez, III and James Richard Wheeler* | United States District Court, Western District of Texas, San Antonio Division<br>Case No.: 06-CV-216<br>Assigned: Hon. Orlando L. Garcia<br>Filed: 3/10/06 |

| 64. | *Cintas Corporation v. Wade Bell, Jason Bunderson, Robert Crook, Jeffery Ellsworth, Russell Hale, Kami Hendry, Glenn Hoffmann, Daniel Hurtado, William Keith Isaacs, Mike McBeth, Derek Johnson Memmott, Neil Overton, Jon Rasmussen, Russell Rasmussen, Sam Robins, Ryan M. Robinson, Jesse L. Steel, Sandy Tenney, Ulualo Vaitu'u, Jr. and Steve Westover* | United States District Court, District of Utah, Central Division<br>Case No.: 2:06-mc-00205-PGC<br>Assigned: Hon. Paul G. Cassell<br>Filed: 3/10/06 |
|---|---|---|
| 65. | *Cintas Corporation v. John O. Ansink, Jr., Stephen Paul Artley, Everett G. Beard, Christopher Blaha, Ricko Lonnell Boyd, Crezone Burton, Jeffrey Colby, Edwin Upeano Collazo, Laurence Hart, David K. Jefferson, John D. Johnson, Carl Louis Ladd, Jr., Richard Earl Martin, Jr., Lawrence F. Mitchell, William Brian Moots, Tony F. Mullins, Richard Oliver, Richard A. Schlabach, Aaron Shaw, Jobette T. Upshaw, Monte Washington, Bradley Steven Watkins and Larry James Williams* | United States District Court, Eastern District of Virginia, Alexandria Division<br>Case No.: 1:06-cv-00267-JCC-TCB<br>Assigned: Hon. James C. Cacheris<br>Filed: 3/10/06 |
| 66. | *Cintas Corporation v. Nelson Carter, Jr.* | United States District Court, Western District of Virginia, Harrisonburg Division<br>Case No.: 5:06-cv-00023-SGW<br>Assigned: Hon. Samuel G. Wilson<br>Filed: 3/10/06 |
| 67. | *Cintas Corporation v. Scott Burgess, Doug Choate, Matthew Denise, Rick Fries, William Gagne, Timothy W. Jennings, Greg Jones, Don Kincaid, Zachary I. Kozelisky, Rodger Lounsbury, Steven McNiven, Andrew Ogden and Matthew Wick* | United States District Court, Eastern District of Washington, Spokane Division<br>Case No.: 2:06-cv-03023-FVS<br>Assigned: Hon. Fred Van Sickle<br>Filed: 3/10/06 |
| 68. | *Cintas Corporation v. Michael Anderson (aka Chad), Jeff Barr, Aaron Baxter, Josh Benson, Bob Braaten, Chris Cameron, Ray Anthony Carr, Jason Daniels, H. Berk Foster, Kimberly Gurnee, Matthew C. Helbert, Dayton Holloway, William Kloes, Phillip Long, Edward Miller, Jr., Robert Moore, Joseph Michael Oertel, Charles Penn, Juan Pomales, Glen Rasmussen, John Rizzo, Jr., Jason Tiegen, Adam Vance and Lonnie White* | United States District Court, Western District of Washington, Seattle Division<br>Case No.: 2:06-cv-00332-TSZ<br>Assigned: Hon. Thomas S. Zilly<br>Filed: 3/10/06 |

| 69. | *Cintas Corporation v. Nathan J. Andree, David Bohn, Thomas N. Dollhopf, Alvin Dompke, Sean Eaton, Randolph Fast, Joseph Heaney, Robert Klement, Joshua Krueger, Geoffry Lippold, Leonardas Mekionis, Donald M. Pirkey, Anthony Richards, Charles Ruta, Sarah R. Zygarlicke* | United States District Court, Eastern District of Wisconsin, Milwaukee Division<br>Case No.: 2:06-cv-00303-LA<br>Assigned: Hon. Lynn Adelman<br>Filed: 3/10/06 |
| --- | --- | --- |
| 70. | *Cintas Corporation v. Chris Brown, Everett W. Cassens, Wesley Crawford, Robert J. Degroot and David Herr* | United States District Court, Western District of Wisconsin, Madison Division<br>Case No.: 06-C-0133-C<br>Assigned: Hon. Barbara B. Crabb<br>Filed: 3/10/06 |

S:\CasesSD\Cintas\NonPldgs\SCHEDULE OF INVOLVED ACTIONS.doc

**EXHIBIT  8**

1  | LERACH COUGHLIN STOIA GELLER
   |   RUDMAN & ROBBINS LLP
2  | THEODORE J. PINTAR (131372)
   | STEVEN W. PEPICH (116086)
3  | JAMES A. CAPUTO (120485)
   | LAWRENCE A. ABEL (129596)
4  | HELEN I. ZELDES (220051)
   | 655 West Broadway, Suite 1900
5  | San Diego, CA 92101
   | Telephone: 619/231-1058
6  | 619/231-7423 (fax)
   | TedP@lerachlaw.com
7  | SteveP@lerachlaw.com
   | JimC@lerachlaw.com
8  | HelenZ@lerachlaw.com
   |     – and –
9  | ALBERT H. MEYERHOFF (54134)
   | 9601 Wilshire Blvd., Suite 510
10 | Los Angeles, CA 90210
   | Telephone: 310/859-3100
11 | 310/278-2148 (fax)
   | AlM@lerachlaw.com
12 |     – and –
   | NANCY M. JUDA
13 | 1100 Connecticut Avenue, N.W.
   | Suite 730
14 | Washington, DC 20036
   | Telephone: 202/822-6762
15 | 202/828-8528 (fax)
   | NancyJ@lerachlaw.com
16 |
   | Attorneys for Plaintiffs
17 |
   | [Additional counsel appear on signature page.]
18 |
19 |              UNITED STATES DISTRICT COURT
20 |             NORTHERN DISTRICT OF CALIFORNIA
   |                    OAKLAND DIVISION
21 |
   | PAUL VELIZ, et al., On Behalf of Themselves )   No. C-03-1180-SBA
   | and All Others Similarly Situated,          )
22 |                                             )
   |                                             )   CLASS ACTION
   |                        Plaintiffs,          )   _____
23 |                                             )
   |          vs.                                )   SECOND AMENDED COMPLAINT FOR
24 |                                             )   INJUNCTIVE RELIEF AND DAMAGES (1)
   |                                             )   CLASS ACTION FOR VIOLATION OF THE
   | CINTAS CORPORATION, an Ohio                 )   FAIR LABOR STANDARDS ACT, THE
25 | corporation, et al,                         )   EMPLOYEE RETIREMENT INCOME
   |                                             )   SECURITY ACT, CALIFORNIA LABOR
   |                        Defendants.          )   CODE, ILLINOIS MINIMUM WAGE LAW,
26 | _____   )   INDIANA MINIMUM WAGE LAW,
   |                                             )   KENTUCKY MINIMUM WAGE LAW,
27 | [Caption continued on following page.]      )   MARYLAND WAGE AND HOUR LAW,
   |                                             )   MASSACHUSETTS MINIMUM FAIR
28 |                                             )   WAGES, MINNESOTA FAIR LABOR

1   ) STANDARDS ACT, MISSOURI WAGE
    ) AND HOUR LAW, NEW JERSEY
2   ) MINIMUM WAGE AND HOUR LAW, NEW
    ) MEXICO MINIMUM WAGE ACT, NEW
3   ) YORK MINIMUM WAGE ACT, OHIO
    ) MINIMUM FAIR WAGE STANDARDS
4   ) ACT, PENNSYLVANIA MINIMUM WAGE
    ) ACT, WASHINGTON MINIMUM WAGE
5   ) ACT, AND WEST VIRGINIA MINIMUM
    ) WAGE AND MAXIMUM HOURS ACT;
6   ) AND (2) REPRESENTATIVE CLAIM AND
    ) CLASS ACTION FOR UNFAIR AND
7   ) UNLAWFUL BUSINESS PRACTICES IN
    ) VIOLATION OF CALIFORNIA BUSINESS
8   ) & PROFESSIONS CODE §§17200, *et seq.*
    )
9   ) DEMAND FOR JURY TRIAL

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    On behalf of themselves, all others similarly situated, and the general public, plaintiffs allege

2    as follows:

3                                    **GENERAL ALLEGATIONS**

4        1.    Plaintiffs are customer service representatives who have worked long unpaid

5    overtime hours for Defendant Cintas Corporation ("Cintas"), delivering products to Cintas customers

6    in California and different parts of the United States.  Cintas has deliberately chosen to misclassify

7    Plaintiffs as "exempt" employees for the purpose of federal and state overtime law, in order to reap

8    windfall profits of millions of dollars per year that Cintas would owe if Cintas properly paid

9    Plaintiffs for all overtime hours at the legally-mandated overtime rates.

10

11       2.    Plaintiffs Paul Veliz, James White, Tom Jaramillo, Mark Fragola, Mark Chainuck,

12   Jeff Jay, Tade L. Wasmer, Aaron M. Zadnik, John Cruz, Douglas Johnson, Joe Ashcraft, Bryan

13   Cruse, Bobby C. Hodge, Noel Lloyd, Kelly Smith, Earl G. Woods Jr., Dennis Fedor, Daniel

14   Peterson, Wayne Edwards, Wilfredo Huertas Jr., Amber Kelly, Derek Samuels, Samuel Williams,

15   Julian Nazareth, Daniel Alvis, Rebecca Brown, Craig Kane, Keith Boehm, James Wulff, Joel

16   Rogers, Drew Fuehring, John Liss, Bruce Brandt, Michael Clayton, Chris McArdle and Mark

17

18   Sperota (collectively "Plaintiffs") bring this action against Defendant Cintas and Defendant Plan

19   Administrator of Cintas Partners' Plan ("the Plan").  Plaintiffs fall into two broad groups:  Those

20   who can litigate their Fair Labor Standards Act claims and State Law overtime claims in Court

21   ("Litigating Plaintiffs") and those plaintiffs who the court has ruled must arbitrate their wage and

22   hour claims because they signed a valid arbitration agreement with Cintas ("Arbitrating Plaintiffs").

23   All plaintiffs can pursue their claims under the Employment Retirement Security Act of 1974

24   (ERISA) in Court, because ERISA claims are not subject to arbitration under Cintas' arbitration

25   agreements.  The Litigating plaintiffs are Joe Ashcraft, Noel Lloyd, Kelly Smith, Dennis Fedor,

26   Daniel Peterson, Wayne Edwards, Wilfredo Huertas, Jr., Derek Samuels, Daniel Alvis, Mark

27   Sperota, Rebecca Brown, Craig Kane, Keith Boehm, James Wulff, Joel Rogers, Drew Fuehring,

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                              - 1 -

1   John Liss, Bruce Brandt, Michael Clayton, and Chris McArdle. The Arbitrating plaintiffs are Paul

2   Veliz, James White, Tom Jaramillo, Mark Fragola, Mark Chainuck, Jeff Jay, Tade L. Wasmer,

3   Aaron M. Zadnik, John Cruz, Bobby C. Hodge, Earl G. Woods Jr., Douglas Johnson, Bryan Cruse,

4   Amber Kelly, Samuel Williams, and Julian Nazareth.[1]

5
        3.      Plaintiffs bring these claims individually and as a collective action under the Fair
6
7   Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and individually and as a class action under Fed.

8   R. Civ. P. 23(b)(3) and applicable state labor laws, on behalf of current and former Cintas employees

9   who worked as Service Sales Representatives, Commission Route Salespersons, Commission Route

10  Sales Representatives, Route Drivers and other persons performing a service and/or delivery

11  function on a non-hourly basis (hereinafter "Service Sales Representatives" or "Class Members"),
12
    none of which positions are exempt from the overtime provisions of the FLSA or the respective
13
14  wage and hour laws of the states in which Plaintiffs are or have been employed. Class Members

15  have worked for Cintas in facilities throughout the United States.

16      4.      Plaintiffs allege on behalf of themselves and all similarly-situated Service Sales

17  Representatives that Cintas unlawfully classified Plaintiffs as exempt from overtime payments under

18  federal and state laws and/or failed and refused to pay overtime premiums to Plaintiffs and members
19
    of the Plaintiff Class for all overtime worked, notwithstanding that Plaintiffs and members of the
20
21  Plaintiff Class are not and have not been exempt and are and have been entitled to overtime pay for

22  overtime worked, and further allege that Cintas failed to record and maintain time records as

23  required by law. Plaintiffs also allege that Defendants violated the Employment Retirement Security

24  Act of 1974 ("ERISA"), 29 U.S.C. §§1001, et seq., by failing to record and maintain accurate

25  _____

26  [1]    While the Court has ruled that the Arbitrating Plaintiffs must arbitrate their federal and state
    law overtime claims, and therefore, these plaintiffs will seek to pursue those wage and hour claims in
27  arbitration, the Arbitrating Plaintiffs are not waiving their right to appeal the issue of whether their
    federal and state law overtime claims can and should be litigated in federal court.
28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                          - 2 -

1    records and by failing to credit service as required under ERISA.  In addition, the Plaintiffs who

2    have worked in California allege that Defendants' unlawful failure to pay overtime, to pay wages

3    when due, to maintain proper records and to credit services as required under state and federal law,

4    constitute unlawful business practices in violation of California's Unfair Competition Act, Business

5    & Professions Code §§17200, et seq.

6

7         5.      Defendants' practices violate the Employee Retirement Income Security Act of 1974

8    ("ERISA"), 29 U.S.C. §§1001, et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201, et

9    seq., California Business & Professions Code §§17200, et seq., and the respective wage and hour

10   laws of the States of California, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Minnesota,

11   Missouri, New Jersey, New Mexico, New York, Ohio, Pennsylvania, Washington and West

12   Virginia.  The collective action claims are for overtime compensation, liquidated damages and/or

13   interest, and attorneys' fees and costs, under the FLSA, 29 U.S.C. §§207 and 216(b).  Through their

14   class-wide claims, Plaintiffs seek injunctive and declaratory relief, compensation and credit for all

15   uncompensated work required, suffered, or permitted by Cintas, liquidated and/or other damages as

16   permitted by applicable law, restitution and disgorgement of all benefits Defendants obtained from

17   their unlawful business practices, interest and attorneys' fees and costs.

18

19        6.      Although the Court has ordered many Plaintiffs from various states to arbitrate their

20   overtime claims, Plaintiffs continue to assert all state-law claims from the First Amended Complaint

21   in order to preserve their rights on appeal.  In states where plaintiffs received leave of court to

22   continue litigating their overtime claims, remaining litigating plaintiffs are seeking to serve as class

23   representatives in those situations where certain of the originally proposed class representatives for

24   those state law subclasses were ordered to arbitrate their overtime claims.

25        7.      For state law causes of action set forth in the proposed Second Amended Complaint

26   and where there are no opt-in collective action plaintiffs from those states who received leave of

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                          - 3 -

1   court to continue litigating their overtime claims, these state law claims will be pursued in

2   arbitration, but by omitting those state law claims from this Second Amended Complaint, plaintiffs

3   are not waiving their right to appeal the issue of whether these state law claims can and should be

4   litigated in this Court.

5                              **JURISDICTION AND VENUE**

6        8.      The Court has original subject matter jurisdiction over this action pursuant to 28

7   U.S.C. §1331 because Plaintiffs' claims arise under federal statutes, specifically, the FLSA, 29

8   U.S.C. §§201, *et seq.*, and ERISA, 29 U.S.C. §§1001, *et seq.* Section 216(b) of the FLSA, 29 U.S.C.

9   §216(b), and Section 502 of ERISA, 29 U.S.C. §1132 also confer jurisdiction over this action. The

10  Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

11       9.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(b)

12  and Local Rule 3-2 because Defendants are licensed to do business and are doing business in

13  California, with facilities in San Francisco, Oakland, South San Francisco, Santa Rosa, San Leandro,

14  Antioch, Emeryville and elsewhere in the Northern District of California, and because a substantial

15  portion of the acts, events and omissions giving rise to this action occurred in the District.

16

17                            **INTRADISTRICT ASSIGNMENT**

18       10.     Assignment to the San Francisco/Oakland Division is proper because a substantial

19  portion of the acts, events, and omissions giving rise to this action occurred in San Francisco,

20  Oakland, South San Francisco, Santa Rosa, San Leandro, Antioch, and Emeryville, all of which are

21  within the San Francisco/Oakland Division of this District.

22                                      **PARTIES**

23  **Plaintiffs**

24       11.     Plaintiff Paul Veliz ("Veliz") is a resident of Los Angeles County, California. Veliz

25  worked for Defendants as a Service Sales Representative in the Pico Rivera facility in Los Angeles

26  County from approximately December 1998 through February 2003. As a Service Sales

27  SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

28  C-03-1180-SBA                                                              - 4 -

1  Representative, Plaintiff Veliz regularly worked in excess of forty (40) hours per week and eight (8)

2  hours per day, but failed to receive all overtime compensation to which he was entitled for hours

3  worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times,

4  Plaintiff Veliz has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7)

5  of ERISA, 29 U.S.C. §1102(7).

6

7          12.     Plaintiff James White ("White") is a resident of Riverside County, California.  White

8  worked for Defendants as a Service Sales Representative in the Ontario facility in San Bernardino

9  County from approximately April 2003 through November 2003.  As a Service Sales Representative,

10  Plaintiff White regularly worked in excess of forty (40) hours per week and eight (8) hours per day,

11  but failed to receive all overtime compensation to which he was entitled for hours worked in excess

12  of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff White has

13  been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29

14  U.S.C. §1102(7).

15

16          13.     Plaintiff Chris McArdle ("McArdle") is a resident of California.  McArdle worked for

17  Defendants as a Service Sales Representative in California during the Relevant Period.  As a Service

18  Sales Representative, Plaintiff McArdle regularly worked in excess of forty (40) hours per week and

19  eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for

20  hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant

21  times, Plaintiff McArdle has been a participant in the Cintas Partners' Plan within the meaning of

22  Section 3(7) of ERISA, 29 U.S.C. §1102(7).

23

24          14.     Plaintiff Tom Jaramillo ("Jaramillo") is a resident of Jefferson County, Colorado.

25  Jaramillo worked for Defendants as a Service Sales Representative in the Commerce City Denver

26  facility in Denver County from approximately February 1999 through February 2001.  As a Service

27  Sales Representative, Plaintiff Jaramillo regularly worked in excess of forty (40) hours per week and

28

1   eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for

2   hours worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant

3   times, Plaintiff Jaramillo has been a participant in the Cintas Partners' Plan within the meaning of

4   Section 3(7) of ERISA, 29 U.S.C. §1102(7).

5

6        15.   Plaintiff Mark Fragola ("Fragola") is a resident of New Haven County, Connecticut.

7   Fragola worked for Defendants as a Service Sales Representative in the Branford facility in New

8   Haven County from approximately December 1999 through June 2002. As a Service Sales

9   Representative, Plaintiff Fragola regularly worked in excess of forty (40) hours per week and eight

10   (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours

11   worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times,

12   Plaintiff Fragola has been a participant in the Cintas Partners' Plan within the meaning of Section

13   3(7) of ERISA, 29 U.S.C. §1102(7).

14

15        16.   Plaintiff Mark Chainuck ("Chainuck") is a resident of Will County, Illinois.

16   Chainuck worked for Defendants as a Service Sales Representative in the Romeoville facility in Will

17   County from approximately May 2001 through December 2001. As a Service Sales Representative,

18   Plaintiff Chainuck regularly worked in excess of forty (40) hours per week and eight (8) hours per

19   day, but failed to receive all overtime compensation to which he was entitled for hours worked in

20   excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times, Plaintiff

21   Chainuck has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of

22   ERISA, 29 U.S.C. §1102(7).

23

24        17.   Plaintiff Jeff Jay ("Jay") is a resident of Cook County, Illinois. Jay worked for

25   Defendants as a Service Sales Representative in the Schaumburg facility in Cook County from

26   approximately March 1999 through September 2002. As a Service Sales Representative, Plaintiff

27   Jay regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                     - 6 -

1    receive all overtime compensation to which he was entitled for hours worked in excess of forty (40)

2    hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Jay has been a

3    participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C.

4    §1102(7).

5        18.    Plaintiff Tade L. Wasmer ("Wasmer") is a resident of Lake County, Indiana.  Wasmer

6

7    worked for Defendants as a Service Sales Representative in the Romeoville facility in Will County

8    from approximately December 1998 through February 2002.  As a Service Sales Representative,

9    Plaintiff Wasmer regularly worked in excess of forty (40) hours per week and eight (8) hours per

10   day, but failed to receive all overtime compensation to which he was entitled for hours worked in

11   excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff

12

13   Wasmer has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of

14   ERISA, 29 U.S.C. §1102(7).

15       19.    Plaintiff Aaron M. Zadnik ("Zadnik") is a resident of DuPage County, Illinois.

16   Zadnik worked for Defendants as a Service Sales Representative in the Romeoville facility in Will

17   County from approximately July 2001 through February 2002.  As a Service Sales Representative,

18   Plaintiff Zadnik regularly worked in excess of forty (40) hours per week and eight (8) hours per day,

19

20   but failed to receive all overtime compensation to which he was entitled for hours worked in excess

21   of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Zadnik

22   has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29

23   U.S.C. §1102(7).

24       20.    Plaintiff John Cruz ("Cruz") is a resident of Marion County, Indiana.  Cruz has

25   worked for Defendants as a Service Sales Representative in the Indianapolis facility in Marion

26   County since approximately November 1997.  As a Service Sales Representative, Plaintiff Cruz

27   regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                                    - 7 -

1  receive all overtime compensation to which he was entitled for hours worked in excess of forty (40)

2  hours per week and/or eight (8) hours per day. At all relevant times, Plaintiff Cruz has been a

3  participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C.

4  §1102(7).

5       21.    Plaintiff John Liss ("Liss") is a resident of Illinois. Liss worked for Defendants as a

6  Service Sales Representative in Illinois during the Relevant Period. As a Service Sales

7  Representative, Plaintiff Liss regularly worked in excess of forty (40) hours per week and eight (8)

8  hours per day, but failed to receive all overtime compensation to which he was entitled for hours

9  worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times,

10 Plaintiff Liss has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7)

11 of ERISA, 29 U.S.C. §1102(7).

12      22.    Plaintiff Bruce Brandt ("Brandt") is a resident of Indiana. Brandt worked for

13 Defendants as a Service Sales Representative in Indiana during the Relevant Period. As a Service

14 Sales Representative, Plaintiff Brandt regularly worked in excess of forty (40) hours per week and

15 eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for

16 hours worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant

17 times, Plaintiff Brandt has been a participant in the Cintas Partners' Plan within the meaning of

18 Section 3(7) of ERISA, 29 U.S.C. §1102(7).

19      23.    Plaintiff Douglas Johnson ("Johnson") is a resident of El Paso County, Colorado.

20 Johnson worked for Defendants as a Service Sales Representative in the Dodge City facility in Ford

21 County, Kansas from approximately July 2000 through July 2003. As a Service Sales

22 Representative, Plaintiff Johnson regularly worked in excess of forty-six (46) hours per week and

23 eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for

24 hours worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                              - 8 -

1   times, Plaintiff Johnson has been a participant in the Cintas Partners' Plan within the meaning of

2   Section 3(7) of ERISA, 29 U.S.C> §1102(7).

3       24.     Plaintiff Joe Ashcraft ("Ashcraft") is a resident of Washington County, Kentucky.

4   Ashcraft worked for Defendants as a Service Sales Representative in the Lexington facility in

5   Fayette County from approximately September 1986 through November 2001. As a Service Sales

6   Representative, Plaintiff Ashcraft regularly worked in excess of forty (40) hours per week and eight

7   (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours

8   worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times,

9   Plaintiff Ashcraft has been a participant in the Cintas Partners' Plan within the meaning of Section

10  3(7) of ERISA, 29 U.S.C. §1102(7).

11      25.     Plaintiff Craig Kane ("Kane") is a resident of Maine. Kane worked for Defendants as

12  a Service Sales Representative in Maine during the Relevant Period.  As a Service Sales

13  Representative, Plaintiff Kane regularly worked in excess of forty (40) hours per week and eight (8)

14  hours per day, but failed to receive all overtime compensation to which he was entitled for hours

15  worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times,

16  Plaintiff Kane has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7)

17  of ERISA, 29 U.S.C. §1102(7).

18      26.     Plaintiff Rebecca Brown ("Brown") is a resident of Maryland.  Brown worked for

19  Defendants as a Service Sales Representative in Maryland during the Relevant Period. As a Service

20  Sales Representative, Plaintiff Brown regularly worked in excess of forty (40) hours per week and

21  eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for

22  hours worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant

23  times, Plaintiff Brown has been a participant in the Cintas Partners' Plan within the meaning of

24  Section 3(7) of ERISA, 29 U.S.C. §1102(7).

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                     - 9 -

27.    Plaintiff Bobby C. Hodge ("Hodge") is a resident of Genesee County, Michigan. Hodge worked for Defendants as a Service Sales Representative in the Flint facility in Genesee County from approximately August 2000 through November 2002.    As a Service Sales Representative, Plaintiff Hodge regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Hodge has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

28.    Plaintiff Noel Lloyd ("Lloyd") is a resident of Tuscola County, Michigan.  Lloyd worked for Defendants as a Service Sales Representative in the Flint facility in Genesee County from approximately April 1999 through November 2001.  As a Service Sales Representative, Plaintiff Lloyd regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Lloyd has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

29.    Plaintiff Kelly Smith ("Smith") is a resident of Genesee County, Michigan.  Smith worked for Defendants as a Service Sales Representative in the Flint facility in Genesee County from approximately April 1999 through November 2001.  As a Service Sales Representative, Plaintiff Smith regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Smith has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                                                    - 10 -

30.    Plaintiff Earl G. Woods Jr. ("Woods") is a resident of Genesee County, Michigan. Woods worked for Defendants as a Service Sales Representative in the Flint facility in Genesee County from approximately December 1999 through November 2001.  As a Service Sales Representative, Plaintiff Woods regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Woods has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

31.    Plaintiff Dennis Fedor ("Fedor") is a resident of Washington County, Minnesota. Fedor worked for Defendants as a Service Sales Representative in the Maple Grove facility in Hennepin County from approximately June 1997 through March 2002.  As a Service Sales Representative, Plaintiff Fedor regularly worked in excess of forty-eight (48) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Fedor has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

32.    Plaintiff Daniel Peterson ("Peterson") is a resident of Anoka County, Minnesota. Peterson worked for Defendants as a Service Sales Representative in the Minneapolis facility in Hennepin County from approximately April 1999 through March 2002.  As a Service Sales Representative, Plaintiff Peterson regularly worked in excess of forty-eight (48) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Peterson has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

1    33.    Plaintiff Bryan Cruse ("Cruse") is a resident of Greene County, Missouri. Cruse

2    worked for Defendants as a Service Sales Representative in the Springfield facility in Greene County

3    from approximately May 2001 through approximately April 2003. As a Service Sales

4    Representative, Plaintiff Cruse regularly worked in excess of forty (40) hours per week and eight (8)

5    hours per day, but failed to receive all overtime compensation to which he was entitled for hours

6    worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times,

7    Plaintiff Cruse has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7)

8    of ERISA, 29 U.S.C. §1102(7).

9    34.    Plaintiff Drew Fuehring ("Fuehring") is a resident of Missouri. Fuehring worked for

10   Defendants as a Service Sales Representative in Missouri during the Relevant Period. As a Service

11   Sales Representative, Plaintiff Fuehring regularly worked in excess of forty (40) hours per week and

12   eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for

13   hours worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant

14   times, Plaintiff Fuehring has been a participant in the Cintas Partners' Plan within the meaning of

15   Section 3(7) of ERISA, 29 U.S.C. §1102(7).

16   35.    Plaintiff Wayne Edwards ("Edwards") is a resident of Essex County, New Jersey.

17   Edwards worked for Defendants as a Service Sales Representative in the Piscataway facility in

18   Middlesex County from approximately April 1999 through March 2001. As a Service Sales

19   Representative, Plaintiff Edwards regularly worked in excess of forty (40) hours per week and eight

20   (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours

21   worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times,

22   Plaintiff Edwards has been a participant in the Cintas Partners' Plan within the meaning of Section

23   3(7) of ERISA, 29 U.S.C. §1102(7).

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                    - 12 -

1    36.    Plaintiff Wilfredo Huertas Jr. ("Huertas") is a resident of Bergan County, New Jersey.

2    Huertas worked for Defendants as a Service Sales Representative in the Piscataway facility in

3    Middlesex County from approximately September 1998 through September 2000.  As a Service

4    Sales Representative, Plaintiff Huertas regularly worked in excess of forty (40) hours per week and

5    eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for

6    hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant

7    times, Plaintiff Huertas has been a participant in the Cintas Partners' Plan within the meaning of

8    Section 3(7) of ERISA, 29 U.S.C. §1102(7).

9

10    37.    Plaintiff Amber Kelly ("Kelly") is a resident of Monmouth County, New Jersey.

11    Kelly worked for Defendants as a Service Sales Representative in the Piscataway facility in

12    Middlesex County from approximately April 15, 2002 through November 1, 2002.  As a Service

13    Sales Representative, Plaintiff Kelly regularly worked in excess of forty (40) hours per week and

14    eight (8) hours per day, but failed to receive all overtime compensation to which she was entitled for

15    hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant

16    times, Plaintiff Kelly has been a participant in the Cintas Partners' Plan within the meaning of

17    Section 3(7) of ERISA, 29 U.S.C. §1102(7).

18

19    38.    Plaintiff Derek Samuels ("Samuels") is a resident of Essex County, New Jersey.

20    Samuels worked for Defendants as a Service Sales Representative in the Piscataway facility in

21    Middlesex County from approximately June 1998 through February 2002.  As a Service Sales

22    Representative, Plaintiff Samuels regularly worked in excess of forty (40) hours per week and eight

23    (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours

24    worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times,

25    Plaintiff Samuels has been a participant in the Cintas Partners' Plan within the meaning of Section

26    3(7) of ERISA, 29 U.S.C. §1102(7).

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                                  - 13 -

39.    Plaintiff Samuel Williams ("Williams") is a resident of Essex County, New Jersey. Williams worked for Defendants as a Service Sales Representative in the Piscataway facility in Middlesex County from approximately June 1998 through December 2001.  As a Service Sales Representative, Plaintiff Williams regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Williams has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

40.    Plaintiff Joel Rogers ("Rogers") is a resident of New Mexico.  Rogers worked for Defendants as a Service Sales Representative in New Mexico during the Relevant Period.  As a Service Sales Representative, Plaintiff Rogers regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Rogers has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

41.    Plaintiff Julian Nazareth ("Nazareth") is a resident of Queens County, New York. Nazareth has worked for Defendants as a Service Sales Representative in the College Point, Queens facility in New York County since approximately December 2002.  As a Service Sales Representative, Plaintiff Nazareth regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day.  At all relevant times, Plaintiff Nazareth has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

42. Plaintiff Mark Sperota ("Sperota") is a resident of New York. Sperota worked for Defendants as a Service Sales Representative in New York during the Relevant Period. As a Service Sales Representative, Plaintiff Sperota regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times, Plaintiff Sperota has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

43. Plaintiff James Wulff ("Wulff") is a resident of Ohio. Wulff worked for Defendants as a Service Sales Representative in Ohio during the Relevant Period. As a Service Sales Representative, Plaintiff Wulff regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times, Plaintiff Wulff has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

44. Plaintiff Keith Boehm ("Boehm") is a resident of Pennsylvania. Boehm worked for Defendants as a Service Sales Representative in Pennsylvania during the Relevant Period. As a Service Sales Representative, Plaintiff Boehm regularly worked in excess of forty (40) hours per week and eight (8) hours per day, but failed to receive all overtime compensation to which he was entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times, Plaintiff Boehm has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

45. Plaintiff Michael Clayton ("Clayton") is a resident of Washington. Clayton worked for Defendants as a Service Sales Representative in Washington during the Relevant Period. As a Service Sales Representative, Plaintiff Clayton regularly worked in excess of forty (40) hours per

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                        - 15 -

1   week and eight (8) hours per day, but failed to receive all overtime compensation to which he was

2   entitled for hours worked in excess of forty (40) hours per week and/or eight (8) hours per day. At

3   all relevant times, Plaintiff Clayton has been a participant in the Cintas Partners' Plan within the

4   meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

5

6        46.   Plaintiff Daniel Alvis ("Alvis") is a resident of Kanawha County, West Virginia.

7   Alvis worked for Defendants as a Service Sales Representative in the Nitro facility in Kanawha

8   County from approximately August 2001 through December 2003. As a Service Sales

9   Representative, Plaintiff Alvis regularly worked in excess of forty (40) hours per week and eight (8)

10   hours per day, but failed to receive all overtime compensation to which he was entitled for hours

11   worked in excess of forty (40) hours per week and/or eight (8) hours per day. At all relevant times,

12   Plaintiff Alvis has been a participant in the Cintas Partners' Plan within the meaning of Section 3(7)

13   of ERISA, 29 U.S.C. §1102(7).

14

15        47.   Each of the named Plaintiffs by the filing of this Complaint consents to sue with

16   respect to each such Plaintiff's FLSA claim for relief against Cintas, pursuant to 29 U.S.C. §216(b),

17   and hereby seeks relief under that provision. Thousands of similarly situated Service Sales

18   Representatives have joined this action by filing written FLSA Consents to Sue.

19   **Defendants**

20        48.   Defendant Cintas Corporation is an Ohio corporation which, at all relevant times, has

21   done business and continues to do business in the Northern District of California and has committed

22   and continues to commit the unlawful acts alleged in this Complaint in San Francisco County and

23   elsewhere.

24

25        49.   The Cintas Partners' Plan is an employee pension benefit plan within the meaning of

26   Section 3(2) of ERISA, 29 U.S.C. §1002(2), and is an employee benefit plan within the meaning of

27   Section 3(3) of ERISA, 29 U.S.C. §1002(3).

28

50. At all relevant times, defendant Cintas Corporation has been the plan sponsor of the Cintas Partners' Plan within the meaning of Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(A). Notwithstanding that the governing instrument of the Cintas Partners' Plan designates a Plan Administrator as the named fiduciary, as described below, with power to administer, interpret, construe and apply the terms of the plans, at all relevant times Cintas Corporation, through employees other than members of the Plan Administrator, has exercised actual responsibility, authority and/or control with respect to these functions and others. In particular, employees of Cintas Corporation, other than members of the Plan Administrator, have exercised actual authority and control over the following under the Cintas Partners' Plan: determination of employees' hours of service under the terms of the plan; determination of employees' status as participants under the terms of the plan; determination of plan participants' vesting status under the terms of the plan; determination of employees' accrued benefits under the terms of the plan; determination of employees' eligibility for benefits under the terms of the plan; deciding to use Cintas payroll records to determine hours of service under the terms of the plan; record-keeping with regard to hours of service; reviewing hours of service under the plan; preparing agendas for and chairing meetings of the committees that constitute the Plan Administrator of the plan; selecting and obtaining advice from attorneys regarding legal issues arising in the administration of the plan; selecting auditors to carry out ERISA-mandated plan audits; and/or establishing and carrying out document retention policies for the plan. In addition, on information and belief, the Plan Administrator of the Cintas Partners' Plan granted authority to Cintas Corporation to act on its behalf in approving allocations and/or distributions under the terms of the plan, which approvals include determinations as to employees' participation, vesting, and benefit accrual under the terms of the plan. By reason of these facts, and possibly others, at all relevant times defendant Cintas Corporation has exercised actual responsibility, authority, and/or control with regard to the management and/or administration

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                                      - 17 -

1    of the Cintas Partners' Plan and/or has had discretionary authority or responsibility in the

2    administration of that plan. Cintas Corporation's actual exercise of responsibility, authority, and/or

3    control and/or its having discretionary authority or responsibility has included, but not been limited

4    to, with regard to the crediting of hours of service under those plans and the determination of the

5    amount of contributions to be made on behalf of each participant.

6

7    51.    On information and belief, pursuant to the governing instrument of the Cintas

8    Partners' Plan, defendant Plan Administrator of the Cintas Partners' Plan was appointed by the

9    Board of Directors of Cintas Corporation and at all relevant times has been and continues to be the

10   administrator of the Cintas Partners' Plan within the meaning of Section 3(16)(A) of ERISA, 29

11   U.S.C. §1002(16)(A), the named fiduciary of that plan within the meaning of Section 402(a)(1) of

12   ERISA, 29 U.S.C. §1102(a)(1), and a fiduciary of that plan within the meaning of Section 3(21) of

13   ERISA, 29 U.S.C. §1002(21).

14

15   52.    Plaintiffs are ignorant of the true names and capacities of defendants sued in this

16   Complaint as DOES 1 through 25, inclusive, and therefore sue these defendants by such fictitious

17   names and capacities. Plaintiffs will amend this complaint to allege their true names and capacities

18   when learned. Plaintiffs allege that each of the defendants named as DOES was in some manner

19   responsible for the acts and omissions alleged in this Complaint. Plaintiffs will ask leave of this

20   Court to amend the complaint to allege such responsibility when same shall have been ascertained.

21   Plaintiffs are further informed and believe and on that basis allege that at all times relevant, some or

22   all of the fictitiously-named defendants were agents or employees who have acted within the course

23

24   and scope of that agency or employment and/or co-conspirators of one or more of the named

25   defendants. Plaintiffs are further informed and believe, and on that basis allege, that some or all of

26   the fictitiously-named defendants aided and assisted the named defendants in committing the

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                              - 18 -

1    wrongful acts alleged in this Complaint, and that Plaintiffs' damages were legally caused by each

2    such defendant.

### CLASS ACTION ALLEGATIONS

**The Plaintiff Class (ERISA Claims):**

5        53.     Plaintiffs bring the First Claim for Relief for violations of ERISA as a nationwide

class action pursuant to Fed. R. Civ. P. 23(a) and (b)(1) and/or (b)(2) as representatives of a

proposed Plaintiff Class of employees of Cintas throughout the United States who were or are

employed as Cintas Service Sales Representatives, including as Service Sales Representatives,

Commission Route Salespersons, Commission Route Sales Representatives, and/or Route Drivers, at

any time within the applicable statute of limitations period.  All Plaintiffs are members of the Class

on whose behalf all claims alleging violations of ERISA are brought.  These ERISA claims do not

include any claims for relief arising out of any periods of employment in any position other than as a

Service Sales Representative.

16       54.     The Plaintiff Class is so numerous that joinder of all members is impracticable.

Plaintiffs are informed and believe, and on that basis allege, that during the Class period, in excess of

nine thousand (9,000) persons have been employed by Defendant Cintas as Service Sales

Representatives.  Although the exact number and identities of Class and Subclass members are

unknown to Plaintiffs at this time, this information is readily ascertainable from Cintas through

discovery of its payroll and personnel records.

22       55.     Questions of law and fact common to the Plaintiff Class as a whole include, but

are not limited to, the following:

25           (a)     Whether Defendants have failed and/or continue to fail to maintain accurate

records of actual time worked by the Plaintiffs and prospective Class members;

27           (b)     Whether Defendants have failed and/or continue to fail to record or report all

actual time worked by the Plaintiffs and prospective Class members;

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                                      - 19 -

   (c)  Whether Defendants have failed and/or continue to fail to provide accurate wage statements itemizing all actual time worked and wages earned by the Plaintiffs and prospective Class members;

   (d)  Whether Defendants have violated and continue to violate Section 209(a)(1) of ERISA, 29 U.S.C. §1059(a)(1), as alleged herein;

   (e)  Whether the Cintas Partners Plan has credited Plaintiffs and prospective Class members with all hours for which they were paid or entitled to be paid, as required by ERISA;

   (f)  Whether the Pension Plan has credited Plaintiffs and prospective Class Members with all hours for which they were paid or entitled to be paid, as required by ERISA; and

   (g)  Whether Defendants have violated ERISA by their failure to credit Plaintiffs and prospective Class members with all hours for which they were paid or entitled to be paid.

**Nationwide FLSA Collective Plaintiffs (FLSA Claims)**:

  56.  Litigating Plaintiffs bring the Second Claim for Relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), on behalf of all persons who were, are, or will be employed by defendant Cintas nationwide as Service Sales Representatives throughout the United States, including Service Sales Representatives, Commission Route Salespersons, Commission Route Sales Representatives, and/or Route Drivers, at any time within the applicable statute of limitations period, who have not been compensated at one and one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week. These FLSA claims do not include any claims for unpaid overtime arising out of any periods of employment (1) in any position other than as a Service Sales Representative, and/or (2) that were the subject of a release of claims in *Vaca v. Cintas Corporation*, Case No. BC250459, and/or *Barajas v. Cintas Sales Corporation*, Case No. BC261276, filed in the Superior Court of California for the County of Los Angeles.

1    57.    Questions of law and fact common to the Class as a whole include, but are not limited

2    to, the following:

3        (a)    Whether Cintas unlawfully failed and continues to fail to pay overtime

4    compensation in violation of the FLSA, 29 U.S.C. §§201, *et seq.*;

5

6        (b)    Whether Nationwide FLSA Collective Plaintiffs and/or the representative

7    Plaintiffs are non-exempt from the entitlement to overtime compensation for overtime hours worked

8    under the overtime pay requirements of FLSA;

9        (c)    Whether Cintas's policy and practice of classifying as exempt from overtime

10   entitlement under the FLSA and whether Cintas's policy and practice of failing to pay overtime to

11   Service Sales Representative violates applicable provisions of the FLSA;

12       (d)    Whether Cintas's failure to pay overtime to its non-exempt Nationwide FLSA

13   Collective Plaintiffs was willful within the meaning of the FLSA;

14

15       (e)    Whether Cintas failed and continues to fail to maintain accurate records of

16   actual time worked by the Nationwide FLSA Collective Plaintiffs and prospective Nationwide FLSA

17   Collective Plaintiffs;

18       (f)    Whether Cintas failed and continues to fail to record or report all actual time

19   worked by the Nationwide FLSA Collective Plaintiffs and prospective Nationwide FLSA Collective

20   Plaintiffs; and

21

22       (g)    Whether Cintas failed and continues to fail to provide accurate wage

23   statements itemizing all actual time worked and wages earned by the Nationwide FLSA Collective

24   Plaintiffs and prospective Nationwide FLSA Collective Plaintiffs.

25   58.    The Third Claim for Relief for violations of the FLSA may be brought and

26   maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. § 216(b),

27   for all claims asserted by the Representative Plaintiffs of the Nationwide FLSA Collective Plaintiffs

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                              - 21 -

1 (FLSA claims), because the claims of the Plaintiffs are similar to the claims of the members of the

2 prospective Nationwide FLSA Collective Plaintiffs.

3        59.    Litigating Plaintiffs and Nationwide FLSA Collective Plaintiffs are similarly situated,

4 have substantially similar job requirements and pay provisions, and are subject to Defendant Cintas's

5

6 common practice, policy or plan of refusing to pay overtime in violation of the FLSA and unlawfully

7 characterizing Nationwide FLSA Collective Plaintiffs and members of the FLSA Class as exempt

8 employees.

9 **California Subclass (California Labor Code and Wage Order Claims):**

10        60.    Plaintiff Chris McArdle brings the Fourth Claim for Relief for violation of California

11 Labor Code §1194 and California Industrial Welfare Commission Occupational Wage Orders Nos. 4

12 and/or 7 (Title 8 Cal. Code of Reg. §11040) and the Fifth Claim for Relief for violation of the

13 California Business & Professions Code, §§17200, *et seq.*, as a class action pursuant to Fed. R. Civ.

14

15 P. 23(a), (b)(2), and (b)(3), on behalf of all Service Sales Representatives, including Commission

16 Route Salespersons, Commission Route Sales Representatives, and/or Route Drivers employed by

17 Cintas in the State of California, during the applicable limitations period, whom Cintas refused to

18 compensate for all overtime work performed in excess of eight (8) hours per day and/or forty (40)

19 hours per work week. Plaintiff McArdle also asserts class-wide claims under Labor Code §§203,

20 226.7, and 558, alleging that Cintas failed to pay wages when due, failed to provide paid rest periods

21

22 as required, and willfully violated all aspects of California wage law. Plaintiff McArdle is a member

23 of the California Subclass on whose behalf all claims alleging violations of the California Labor

24 Code, the applicable Wage Orders, and the California Business & Professions Code are brought.

25 The claims of the California Subclass do not include any claims for unpaid overtime arising out of

26 any periods of employment (1) in any position other than as a Service Sales Representative, and/or

27 (2) that were the subject of a release of claims in *Vaca v. Cintas Corporation*, Case No. BC250459,

28

1    and/or *Barajas v. Cintas Sales Corporation*, Case No. BC261276, filed in the Superior Court of

2    California for the County of Los Angeles.

3        61.    The California subclass is so numerous that joinder of all members is impracticable.

4    Plaintiffs are informed and believe, and on that basis allege, that currently at least three hundred

5
     (300) persons are employed by Defendant Cintas as Service Sales Representatives in California, and
6
7    that given turnover, the class is more numerous than that.

8        62.    Common questions of law and fact exist as to members of the California Subclass that

9    predominate over any questions affecting only individual members and include, but are not limited

10   to, the following:

11          (a)    Whether Defendants unlawfully failed to pay overtime compensation in
12
     violation of the California Labor Code and applicable Wage Orders;
13
14          (b)    Whether Plaintiff McArdle and the California Subclass of Service Sales

15   Representatives are non-exempt from the entitlement to overtime compensation for overtime hours

16   worked under the overtime pay requirements of California law;

17          (c)    Whether Cintas's policy and practice of classifying as exempt from overtime

18   entitlement under California law and Cintas's policy and practice of failing to pay overtime to

19
     Service Sales Representatives violates applicable provisions of California law, including applicable
20
21   Labor Code sections, applicable Wage Orders, and applicable state regulations;

22          (d)    Whether Cintas has failed to pay wages when due within the meaning of

23   California Labor Code §203;

24          (e)    Whether Cintas failed to provide paid rest periods as required under California

25   Labor Code §226.7;

26          (f)    Whether Cintas's conduct as alleged in this action was willful within the
27
     meaning of California Labor Code §558;
28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                            - 23 -

1         (g)     The proper measure of damages sustained by members of the California

2 Subclass;

3         (h)     Whether Cintas's practices as alleged herein constitute unfair business

4 practices under California Business & Professions Code, §§17200, *et seq*.; and

5

6         (i)     Whether California Subclass Plaintiffs are entitled to restitution, disgorgement

7 of profits, or other equitable relief to remedy Cintas's unfair business practices.

8 **Colorado Subclass (Colorado Wage Act):**

9        63.     The Court has ruled that plaintiff Tom Jaramillo must arbitrate his claims for relief

10 under Colorado state law. Therefore, plaintiff Jaramillo will seek to pursue these state law class

11 action claims in arbitration. However, plaintiff Jaramillo is not waiving his right to appeal the issue

12 whether these Colorado state law claims can and should be litigated in this federal court, and he and

13 other plaintiffs are not abandoning the Colorado state law class claims by omitting Colorado state

14 law class allegations from the complaint. Colorado state law class claims continue to be at issue in

15 the pending arbitration in the Northern District, as well as in this federal court to the extent that the

16 Court's ruling regarding the need to arbitrate these state law claims may be reversed on appeal.

17 **Connecticut Subclass (Connecticut Wage and Hour Act):**

18        64.     The Court has ruled that plaintiff Mark Fragola must arbitrate his claims for relief

19 under Connecticut state law. Therefore, plaintiff Fragola will seek to pursue these state law class

20 action claims in arbitration. However, plaintiff Fragola is not waiving his right to appeal the issue of

21 whether Connecticut state law claims can and should be litigated in this federal court, and he and

22 other plaintiffs are not abandoning these Connecticut state law class claims by omitting Connecticut

23 state law class allegations from the complaint. Connecticut state law class claims continue to be at

24 issue in the pending arbitration in the Northern District, as well as in this federal court to the extent

25 that the Court's ruling regarding the need to arbitrate these state law claims may be reversed on

26 appeal.

27

28

1   **Illinois Subclass (Illinois Wage Collection and Payment Act):**

2        65.    Plaintiff John Liss brings the Eighth Claim for Relief for violation of Illinois'

3   Minimum Wage Law as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf

4   of all Service Sales Representatives, including Commission Route Salespersons, Commission Route

5   Sales Representatives, and/or Route Drivers employed by Cintas in the state of Illinois, during the

6

7   applicable limitations period, whom Cintas refused to compensate for overtime work performed in

8   excess of forty (40) hours per work week. Plaintiff Liss also asserts class-wide claims under Illinois'

9   Minimum Wage Law, alleging that Cintas failed to provide paid rest periods as required. Plaintiff

10   Liss is a member of the Illinois Subclass on whose behalf all claims alleging violations of the Illinois

11   Minimum Wage Law are brought. The claims of the Illinois Subclass do not include any claims for

12

13   unpaid overtime arising out of any periods of employment in any position other than as Service Sales

14   Representatives.

15        66.    The Illinois subclass is so numerous that joinder of all members is impracticable.

16   Plaintiffs are informed and believe, and on that basis allege, that during the class period at least one

17   hundred and forty (140) persons have been employed by Defendant Cintas as Service Sales

18   Representatives in Illinois, and that given turnover, the class is more numerous than that.

19        67.    Common questions of law and fact exist as to members of the Illinois Subclass that

20   predominate over any questions affecting only individual members and include, but are not limited

21   to, the following:

22

23        (a)    Whether Defendants unlawfully failed to pay overtime compensation in

24   violation of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §§105/1, *et seq.*;

25        (b)    Whether Plaintiff Liss and whether the Illinois Subclass of Service Sales

26   Representatives are non-exempt from the entitlement to overtime compensation for overtime hours

27   worked under the overtime pay requirements of Illinois law;

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                  - 25 -

(c)      Whether Cintas's policy and practice of classifying as exempt from overtime entitlement under Illinois law and Cintas's policy and practice of failing to pay overtime to Service Sales Representatives violates applicable provisions of Illinois law, including applicable state statutes, regulations, and rules;

(d)      Whether Cintas failed to provide paid rest periods as required under Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §§140/2 and 140/3; and

(e)      The proper measure of damages sustained by members of the Illinois Subclass.

**Indiana Subclass (Minimum Wage Law of 1965):**

68.      Plaintiff Bruce Brandt brings the Ninth Claim for Relief for violation of the Indiana Minimum Wage Law of 1965 as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of all Service Sales Representatives, including Commission Route Salespersons, Commission Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of Indiana, during the applicable limitations period, whom Cintas refused to compensate for overtime work performed in excess of forty (40) hours per work week.  Plaintiff Brandt also asserts class-wide claims under the Indiana Minimum Wage Law of 1965, Ind. Stat. §§22-2-4-4, 22-2-5-1, alleging that Cintas failed to pay wages when due.  Plaintiff Brandt is a member of the Indiana Subclass on whose behalf all claims alleging violations of the Indiana Minimum Wage Law of 1965 are brought.  The claims of the Indiana Subclass do not include any claims for unpaid overtime arising out of any periods of employment in any position other than as Service Sales Representative.

69.      The Indiana Subclass is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that during the Class period at least two hundred and fifty (250) persons have been employed by Defendant Cintas as Service Sales Representatives in Indiana, and that given turnover, the class is more numerous than that.

1   70.   Common questions of law and fact exist as to members of the Indiana Subclass that

2   predominate over any questions affecting only individual members and include, but are not limited

3   to, the following:

4
    (a)   Whether Defendants unlawfully failed to pay overtime compensation in
5
6   violation of the Indiana Minimum Wage Law of 1965, Ind. Stat. §§22-2-2-4, *et seq.*;

7   (b)   Whether Plaintiff Brandt and the Indiana Subclass of Service Sales

8   Representatives are non-exempt from the entitlement to overtime compensation for overtime hours

9   worked under the overtime pay requirements of Indiana law;

10   (c)   Whether Cintas's policy and practice of classifying as exempt from overtime

11   entitlement under Indiana law and Cintas's policy and practice of failing to pay overtime to Service

12   Sales Representatives violates applicable provisions of Indiana law, including applicable state

13   statutes, regulations, and rules;

14

15   (d)   Whether Cintas has failed to pay wages when due within the meaning of the

16   Indiana Minimum Wage Law of 1965, Ind. Stat. §§22-2-4-4 and 22-2-5-1; and

17   (e)   The proper measure of damages sustained by members of the Colorado

18   Subclass.

19   **Kentucky Subclass (Kentucky Minimum Wage Law):**

20   71.   Plaintiff Joe Ashcraft brings the Tenth Claim for Relief for violation of Kentucky's

21   Minimum Wage Law as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf

22   of all Service Sales Representatives, including Commission Route Salespersons, Commission Route

23   Sales Representatives, and/or Route Drivers employed by Cintas in the state of Kentucky, during the

24   applicable limitations period, whom Cintas refused to compensate for overtime work performed in

25   excess of forty (40) hours per work week. Plaintiff Ashcraft also asserts class-wide claims under

26   Ky. Rev. Stat. §337.055 alleging that Cintas failed to pay wages when due. Plaintiff also asserts

27

28   SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1   class-wide claims under Ky. Rev. Stat. §337.365, alleging that Cintas failed to provide paid rest

2   periods as required. Plaintiff Ashcraft is a member of the Kentucky Subclass on whose behalf all

3   claims alleging violations of the Kentucky Minimum Wage Law are brought. The claims of the

4   Kentucky Subclass do not include any claims for unpaid overtime arising out of any periods of

5

6   employment in any position other than as Service Sales Representative.

7       72.    The Kentucky Subclass is so numerous that joinder of all members is impracticable.

8   Plaintiffs are informed and believe, and on that basis allege, that during the Class period at least one

9   hundred and fifty (150) persons have been employed by Defendant Cintas as Service Sales

10   Representatives in Kentucky, and that given turnover, the class is more numerous than that.

11       73.    Common questions of law and fact exist as to members of the Kentucky Subclass that

12   predominate over any questions affecting only individual members and include, but are not limited

13

14   to, the following:

15       (a)    Whether Defendants unlawfully failed to pay overtime compensation in

16   violation of the Kentucky Minimum Wage Law, Ky. Rev. Stat. §§337.010, *et seq.*; 803 Ky. Admin.

17   Regs. 1:005, *et seq.*;

18       (b)    Whether Plaintiff Ashcraft and the Kentucky Subclass of Service Sales

19   Representatives are non-exempt from the entitlement to overtime compensation for overtime hours

20   worked under the overtime pay requirements of Kentucky law;

21

22       (c)    Whether Cintas's policy and practice of classifying as exempt from overtime

23   entitlement under Kentucky law and Cintas's policy and practice of failing to pay overtime to

24   Service Sales Representatives violates applicable provisions of Kentucky law, including applicable

25   state statutes, regulations, and rules;

26       (d)    Whether Cintas has failed to pay wages when due within the meaning of Ky.

27   Rev. Stat. §337.055;

28

1         (e)     Whether Cintas failed to provide paid rest periods as required under Ky. Rev.

2  Stat. §337.365; and

3         (f)     The proper measure of damages sustained by members of the Kentucky

4  Subclass.

5

6  **Maryland Subclass (Maryland Wage and Hour Law):**

7       74.    Plaintiff Rebecca Brown brings the Eleventh Claim for Relief for violation of

8  Maryland's Wage and Hour Law as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3)

9  on behalf of all Service Sales Representatives, including Commission Route Salespersons,

10  Commission Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of

11  Maryland, during the applicable limitations period, whom Cintas refused to compensate for overtime

12  work performed in excess of forty (40) hours per work week. Plaintiff Brown also asserts class-wide

13  claims under Maryland Wage Payment and Collection Law, §§3-501, *et seq.*, alleging that Cintas

14  failed to pay wages when due. Plaintiff Brown is a member of the Maryland Subclass on whose

15  behalf all claims alleging violations of the Maryland Wage and Hour Law are brought. The claims

16

17  of the Maryland Subclass do not include any claims for unpaid overtime arising out of any periods of

18  employment in any position other than as Service Sales Representative.

19       75.    The Maryland Subclass is so numerous that joinder of all members is impracticable.

20  Plaintiffs are informed and believe, and on that basis allege, that during the Class period at least two

21  hundred and fifty (250) persons have been employed by Defendant Cintas as Service Sales

22

23  Representatives in Maryland, and that given turnover, the class is more numerous than that.

24       76.    Common questions of law and fact exist as to members of the Maryland Subclass that

25  predominate over any questions affecting only individual members and include, but are not limited

26  to, the following:

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                         - 29 -

1        (a)     Whether Defendants unlawfully failed to pay overtime compensation in

2  violation of the Maryland Wage and Hour Law, Md. Lab. & Emp. Code §§3-401, *et seq.*;

3        (b)     Whether Plaintiff Brown and the Maryland Subclass of Service Sales

4
Representatives are non-exempt from the entitlement to overtime compensation for overtime hours
5
worked under the overtime pay requirements of Maryland law;
6
7        (c)     Whether Cintas's policy and practice of classifying as exempt from overtime

8  entitlement under Maryland law and Cintas's policy and practice of failing to pay overtime to

9  Service Sales Representatives violates applicable provisions of Maryland law, including applicable

10  state statutes, regulations, and rules;

11        (d)     Whether Cintas has failed to pay wages when due within the meaning of the
12
Maryland Wage Payment and Collection Law, Md. Lab. & Emp. Code §3-505; and
13
14        (e)     The proper measure of damages sustained by members of the Maryland

15  Subclass.

16  **Massachusetts Subclass (Massachusetts Minimum Fair Wages Law):**

17        77.     Plaintiff Craig Kane brings the Twelfth Claim for Relief for violation of

18  Massachusetts' Minimum Fair Wages Law as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2),

19  and (b)(3) on behalf of all Service Sales Representatives, including Commission Route Salespersons,

20  Commission Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of
21
Massachusetts, during the applicable limitations period, whom Cintas refused to compensate for
22
23  overtime work performed in excess of forty (40) hours per work week. Plaintiff Kane also asserts

24  class-wide claims under the Massachusetts Payment of Wages Law, ch. 149, §§148, *et seq.*, alleging

25  that Cintas failed to pay wages when due. Plaintiff Kane is a member of the Massachusetts Subclass

26  on whose behalf all claims alleging violations of the Massachusetts Minimum Fair Wages Law are

27

28

1   brought. The claims of the Massachusetts Subclass do not include any claims for unpaid overtime

2   arising out of any periods of employment in any position other than as Service Sales Representative.

3       78.    The Massachusetts Subclass is so numerous that joinder of all members is

4   impracticable. Plaintiffs are informed and believe, and on that basis allege, that during the Class

5   period at least one hundred and seventy (170) persons have been employed by Defendant Cintas as

6

7   Service Sales Representatives in Massachusetts, and that given turnover, the class is more numerous

8   than that.

9       79.    Common questions of law and fact exist as to members of the Massachusetts Subclass

10  that predominate over any questions affecting only individual members and include, but are not

11  limited to, the following:

12

13      (a)    Whether Defendants unlawfully failed to pay overtime compensation in

14  violation of the Massachusetts Minimum Fair Wages Law, Mass. Gen. Laws, ch. 151, §§1, *et seq.*;

15      (b)    Whether Plaintiff Kane and the Massachusetts Subclass of Service Sales

16  Representatives are non-exempt from the entitlement to overtime compensation for overtime hours

17  worked under the overtime pay requirements of Massachusetts law;

18      (c)    Whether Cintas's policy and practice of classifying as exempt from overtime

19  entitlement under Massachusetts law and Cintas's policy and practice of failing to pay overtime to

20

21  Service Sales Representatives violates applicable provisions of Massachusetts law, including

22  applicable state statutes, regulations, and rules;

23      (d)    Whether Cintas has failed to pay wages when due within the meaning of the

24  Massachusetts Payment of Wages Law, Mass. Gen. Laws ch. 149, §148; and

25      (e)    The proper measure of damages sustained by members of the Massachusetts

26  Subclass.

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                    - 31 -

1  **Michigan Subclass (Michigan Minimum Wage Law):**

2       80.    The Claim for Relief for violation of Michigan law has been dismissed pursuant to

3  Court Order. Plaintiffs thus delete the class-action allegations but preserve their appeal rights.

4  **Minnesota Subclass (Minnesota Wages and Hour Law):**

5       81.    Plaintiffs Dennis Fedor and Daniel Peterson bring the Fourteenth Claim for Relief for

6  violation of Minnesota's Wages and Hour Law as a class action pursuant to Fed. R. Civ. P. 23(a),

7  (b)(2), and (b)(3) on behalf of all Service Sales Representatives, including Commission Route

8  Salespersons, Commission Route Sales Representatives, and/or Route Drivers employed by Cintas

9
10  in the state of Minnesota, during the applicable limitations period, whom Cintas refused to

11  compensate for overtime work performed in excess of forty-eight (48) hours per work week.

12  Plaintiffs Fedor and Peterson also assert class-wide claims under Minn. Stat. §181.13(a), alleging

13  that Cintas failed to pay wages when due. Plaintiffs also assert class-wide claims under Minn. Stat.

14  §177.253(1), alleging that Cintas failed to provide paid rest periods as required. Plaintiffs Fedor and

15  Peterson are members of the Minnesota Subclass on whose behalf all claims alleging violations of

16
17  the Minnesota Wages and Hour Law are brought. The claims of the Minnesota Subclass do not

18  include any claims for unpaid overtime arising out of any periods of employment in any position

19  other than as Service Sales Representative.

20       82.    The Minnesota Subclass is so numerous that joinder of all members is impracticable.

21  Plaintiff is informed and believes, and on that basis alleges, that during the Class period at least one

22  hundred and forty (140) persons have been employed by Defendant Cintas as Service Sales

23  Representatives in Minnesota, and that given turnover, the class is more numerous than that.

24
25       83.    Common questions of law and fact exist as to members of the Minnesota Subclass

26  that predominate over any questions affecting only individual members and include, but are not

27  limited to, the following:

28

1         (a)     Whether Defendants unlawfully failed to pay overtime compensation in

2 violation of the Minnesota Fair Labor Standards Act, Minn. Stat. §§177.21, *et seq.*;

3         (b)     Whether Plaintiffs Fedor and Peterson and the Minnesota Subclass of Service

4 Sales Representatives are non-exempt from the entitlement to overtime compensation for overtime

5 hours worked under the overtime pay requirements of Minnesota law;

6

7         (c)     Whether Cintas's policy and practice of classifying as exempt from overtime

8 entitlement under Minnesota law and Cintas's policy and practice of failing to pay overtime to

9 Service Sales Representatives violates applicable provisions of Minnesota law, including applicable

10 state statutes, regulations, and rules;

11         (d)     Whether Cintas has failed to pay wages when due within the meaning of

12 Minn. Stat. §181.13(a);

13

14         (e)     Whether Cintas failed to provide paid rest periods as required under Minn.

15 Stat. §177.253(1); and

16         (f)     The proper measure of damages sustained by members of the Minnesota

17 Subclass.

18 **Missouri Subclass (Missouri Wage and Hour Law, Mo. Rev. Stat. §§290.500, et seq.):**

19      84.     Plaintiff Drew Fuehring brings the Fifteenth Claim for Relief for violation of

20 Missouri's Wages and Hour Law as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3)

21 on behalf of all Service Sales Representatives, including Commission Route Salespersons,

22 Commission Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of

23 Missouri, during the applicable limitations period, whom Cintas refused to compensate for overtime

24 work performed in excess of forty (40) hours per work week. Plaintiff Fuehring also asserts class-

25 wide claims under Missouri Wage and Hour Law, Mo. Rev. Stat. §§290.500, *et seq.*, alleging that

26 Cintas failed to pay wages when due. Plaintiff Fuehring is a member of the Missouri Subclass on

27

28

1    whose behalf all claims alleging violations of the Missouri Wage and Hour Law are brought. The

2    claims of the Missouri Subclass do not include any claims for unpaid overtime arising out of any

3    periods of employment in any position other than as Service Sales Representative.

4
         85.    The Missouri Subclass is so numerous that joinder of all members is impracticable.
5
     Plaintiffs are informed and believe, and on that basis allege, that during the Class period at least
6
7    ninety (90) persons have been employed by Defendant Cintas as Service Sales Representatives in

8    Missouri, and that given turnover, the class is more numerous than that.

9        86.    Common questions of law and fact exist as to members of the Missouri Subclass that

10   predominate over any questions affecting only individual members and include, but are not limited

11   to, the following:

12
         (a)    Whether Defendants unlawfully failed to pay overtime compensation in
13
14   violation of the Missouri Wage and Hour Law, Mo. Rev. Stat. §§290.502, *et seq.*;

15       (b)    Whether Plaintiff Fuehring and the Missouri Subclass of Service Sales

16   Representatives are exempt from the entitlement to overtime compensation for overtime hours

17   worked under the overtime pay requirements of Missouri law;

18
         (c)    Whether Cintas's policy and practice of classifying as exempt from overtime
19
     entitlement under Missouri law, and Cintas's policy and practice of failing to pay overtime to
20
21   Service Sales Representatives, violates applicable provisions of Missouri law, including applicable

22   state statutes, regulations, and rules;

23       (d)    Whether Cintas has failed to pay wages when due within the meaning of

24   Missouri Wage and Hour Law, Mo. Rev. Stat. §290.527; and

25       (e)    The proper measure of damages sustained by members of the Missouri

26   Subclass.

27

28
     SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
     C-03-1180-SBA                                                          - 34 -

1   **New Jersey Subclass (New Jersey Wage and Hour Law):**

2       87.     Plaintiffs Wayne Edwards, Wilfredo Huertas, Jr. and Derek Samuels bring the

3   Sixteenth Claim for Relief for violation of New Jersey's Wages and Hour Law as a class action

4   pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of all Service Sales Representatives,

5   including Commission Route Salespersons, Commission Route Sales Representatives, and/or Route

6   Drivers employed by Cintas in the state of New Jersey, during the applicable limitations period,

7   whom Cintas refused to compensate for overtime work performed in excess of forty (40) hours per

8   work week. Plaintiffs Edwards, Huertas and Samuels also assert class-wide claims under New

9   Jersey Code of Criminal Justice, Employer Offenses, N.J. Stat. §2C:40A-2, alleging that Cintas

10  failed to pay wages when due. Plaintiffs Edwards and Samuels are members of the New Jersey

11  Subclass on whose behalf all claims alleging violations of the New Jersey Wage and Hour Law are

12  brought. The claims of the New Jersey Subclass do not include any claims for unpaid overtime

13  arising out of any periods of employment in any position other than as Service Sales Representative.

14      88.     The New Jersey Subclass is so numerous that joinder of all members is impracticable.

15  Plaintiffs are informed and believe, and on that basis allege, that during the Class period at least

16  seventy-five (75) persons have been employed by Defendant Cintas as Service Sales Representatives

17  in New Jersey, and that given turnover, the class is more numerous than that.

18      89.     Common questions of law and fact exist as to members of the New Jersey Subclass

19  that predominate over any questions affecting only individual members and include, but are not

20  limited to, the following:

21          (a)     Whether Defendants unlawfully failed to pay overtime compensation in

22  violation of the New Jersey Wage and Hour Law, N.J. Stat. §§34:11-56a, *et seq.*;

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                        - 35 -

(b)     Whether Plaintiffs Edwards, Huertas and Samuels and the New Jersey Subclass of Service Sales Representatives are exempt from the entitlement to overtime compensation for overtime hours worked under the overtime pay requirements of New Jersey law;

(c)     Whether Cintas's policy and practice of classifying as exempt from overtime entitlement under New Jersey law and Cintas's policy and practice of failing to pay overtime to Service Sales Representatives violates applicable provisions of New Jersey law, including applicable state statutes, regulations, and rules;

(d)     Whether Cintas has failed to pay wages when due within the meaning of New Jersey Code of Criminal Justice, Employer Offenses, N.J. Stat. §2C:40A-2; and

(e)     The proper measure of damages sustained by members of the New Jersey Subclass.

**New Mexico Subclass (New Mexico Minimum Wage Act):**

90.     Plaintiff Joel Rogers brings the Seventeenth Claim for Relief for violation of the New Mexico Minimum Wage Act as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of all Service Sales Representatives, including Commission Route Salespersons, Commission Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of New Mexico, during the applicable limitations period, whom Cintas refused to compensate for overtime work performed in excess of forty (40) hours per work week. Plaintiff Rogers also asserts class-wide claims under N.M. Stat. §50-4-1, *et seq.*, alleging that Cintas failed to pay wages when due. Plaintiff Rogers is a member of the New Mexico Subclass on whose behalf all claims alleging violations of the New Mexico Minimum Wage Act are brought. The claims of the New Mexico Subclass do not include any claims for unpaid overtime arising out of any periods of employment in any position other than as Service Sales Representative.

1    91.    The New Mexico Subclass is so numerous that joinder of all members is

2  impracticable. Plaintiffs are informed and believe, and on that basis allege, that during the Class

3  period dozens of persons have been employed by Defendant Cintas as Service Sales Representatives

4  in New Mexico, and that given turnover, the class is more numerous than that.

5

6    92.    Common questions of law and fact exist as to members of the New Mexico Subclass

7  that predominate over any questions affecting only individual members and include, but are not

8  limited to, the following:

9    (a)    Whether Defendants unlawfully failed to pay overtime compensation in

10  violation of the New Mexico Minimum Wage Act, N.M. Stat. §§50-4-19, *et seq.*;

11    (b)    Whether Plaintiff Rogers and the New Mexico Subclass of Service Sales

12  Representatives are exempt from the entitlement to overtime compensation for overtime hours

13  worked under the overtime pay requirements of New Mexico law;

14

15    (c)    Whether Cintas's policy and practice of classifying as exempt from overtime

16  entitlement under New Mexico law and Cintas's policy and practice of failing to pay overtime to

17  Service Sales Representatives violates applicable provisions of New Mexico law, including

18  applicable state statutes, regulations, and rules;

19    (d)    Whether Cintas has failed to pay wages when due within the meaning of N.M.

20  Stat. §50-4-1, *et seq.*; and

21

22    (e)    The proper measure of damages sustained by members of the New Mexico

23  Subclass.

24  **New York Subclass (New York Minimum Wage Act):**

25    93.    Plaintiff Mark Sperota brings the Eighteenth Claim for Relief for violation of the New

26  York Minimum Wage Act as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on

27  behalf of all Service Sales Representatives, including Commission Route Salespersons, Commission

28

1  Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of New York,

2  during the applicable limitations period, whom Cintas refused to compensate for overtime work

3  performed in excess of forty (40) hours per work week.  Plaintiff Sperota also asserts class-wide

4  claims under New York Minimum Wage Act, N.Y. Lab. Law §191, alleging that Cintas failed to pay

5  wages when due.  Plaintiff Sperota is a member of the New York Subclass on whose behalf all

6  claims alleging violations of the New York Minimum Wage Act are brought.  The claims of the New

7  York Subclass do not include any claims for unpaid overtime arising out of any periods of

8  employment in any position other than as Service Sales Representative.

9  

10      94.    The New York Subclass is so numerous that joinder of all members is impracticable.

11  Plaintiffs are informed and believe, and on that basis allege, that during the Class period at least one

12  hundred and fifteen (115) persons have been employed by Defendant Cintas as Service Sales

13  Representatives in New York, and that given turnover, the class is more numerous than that.

14      95.    Common questions of law and fact exist as to members of the New York Subclass

15  

16  that predominate over any questions affecting only individual members and include, but are not

17  limited to, the following:

18      (a)    Whether Defendants unlawfully failed to pay overtime compensation in

19  violation of the New York Minimum Wage Act, N.Y. Lab. Law §§160, *et seq.* and N.Y. Lab. Law

20  §§652, *et seq.*;

21  

22      (b)    Whether Plaintiff Sperota and the New York Subclass of Service Sales

23  Representatives are exempt from the entitlement to overtime compensation for overtime hours

24  worked under the overtime pay requirements of New York law;

25      (c)    Whether Cintas's policy and practice of classifying as exempt from overtime

26  entitlement under New York law and Cintas's policy and practice of failing to pay overtime to

27  

28  

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                                      - 38 -

1   Service Sales Representatives violates applicable provisions of New York law, including applicable

2   state statutes, regulations, and rules;

3               (d)     Whether Cintas has failed to pay wages when due within the meaning of the

4   New York Minimum Wage Act, N.Y. Lab. Law §191; and

5

6               (e)     The proper measure of damages sustained by members of the New York

7   Subclass.

8   **Ohio Subclass (Ohio Minimum Fair Wage Standards Act):**

9               96.     Plaintiff James Wulff brings the Nineteenth Claim for Relief for violation of the Ohio

10  Minimum Fair Wage Standards Act as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and

11  (b)(3) on behalf of all Service Sales Representatives, including Commission Route Salespersons,

12  Commission Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of

13
    Ohio, during the applicable limitations period, whom Cintas refused to compensate for overtime
14
    work performed in excess of forty (40) hours per work week.  Plaintiff Wulff is a member of the
15
16  Ohio Subclass on whose behalf all claims alleging violations of the Ohio Minimum Fair Wage

17  Standards Act are brought.  The claims of the Ohio Subclass do not include any claims for unpaid

18  overtime arising out of any periods of employment in any position other than as Service Sales

19  Representative.

20          97.     The Ohio Subclass is so numerous that joinder of all members is impracticable.
21
    Plaintiffs are informed and believe, and on that basis allege, that during the Class period at least six
22
23  hundred (600) persons have been employed by Defendant Cintas as Service Sales Representatives in

24  Ohio, and that given turnover, the class is more numerous than that.

25          98.     Common questions of law and fact exist as to members of the Ohio Subclass that

26  predominate over any questions affecting only individual members and include, but are not limited

27  to, the following:

28
    SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
    C-03-1180-SBA                                                          - 39 -

1        (a)     Whether Defendants unlawfully failed to pay overtime compensation in

2 violation of the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §§4111.01, *et seq.*;

3        (b)     Whether Plaintiff Wulff and the Ohio Subclass of Service Sales

4 Representatives are exempt from the entitlement to overtime compensation for overtime hours

5 worked under the overtime pay requirements of Ohio law;

6

7        (c)     Whether Cintas's policy and practice of classifying as exempt from overtime

8 entitlement under Ohio law and Cintas's policy and practice of failing to pay overtime to Service

9 Sales Representatives violates applicable provisions of Ohio law, including applicable state statutes,

10 regulations, and rules; and

11       (d)     The proper measure of damages sustained by members of the Ohio Subclass.

12 **Pennsylvania Subclass (Pennsylvania Minimum Wage Act):**

13     99.    Plaintiff Keith Boehm brings the Twentieth Claim for Relief for violation of the

14 Pennsylvania Minimum Wage Act as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and

15 (b)(3) on behalf of all Service Sales Representatives, including Commission Route Salespersons,

16 Commission Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of

17 Pennsylvania, during the applicable limitations period, whom Cintas refused to compensate for

18 overtime work performed in excess of forty (40) hours per work week. Plaintiff Boehm also asserts

19 class-wide claims under the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stats. §§260.1,

20 *et seq.*, alleging that Cintas failed to pay wages when due. Plaintiff Boehm is a member of the

21 Pennsylvania Subclass on whose behalf all claims alleging violations of the Pennsylvania Minimum

22 Wage Act are brought. The claims of the Pennsylvania Subclass do not include any claims for

23 unpaid overtime arising out of any periods of employment in any position other than as Service Sales

24 Representative.

25

26

27

28

1    100.    The Pennsylvania Subclass is so numerous that joinder of all members is

2   impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class

3   period at least three hundred (300) persons have been employed by Defendant Cintas as Service

4
    Sales Representatives in Pennsylvania, and that given turnover, the class is more numerous than that.
5
6        101.    Common questions of law and fact exist as to members of the Pennsylvania Subclass

7   that predominate over any questions affecting only individual members and include, but are not

8   limited to, the following:

9        (a)    Whether Defendants unlawfully failed to pay overtime compensation in

10  violation of the Pennsylvania Minimum Wage Act, 43 Pa. Stats. §§333.101, *et seq.* and 34 Pa. Code

11  §§231.1, *et seq.*;

12
         (b)    Whether Plaintiff Boehm and the Pennsylvania Subclass of Service Sales
13
    Representatives are exempt from the entitlement to overtime compensation for overtime hours
14
15  worked under the overtime pay requirements of Pennsylvania law;

16       (c)    Whether Cintas's policy and practice of classifying as exempt from overtime

17  entitlement under Pennsylvania law and Cintas's policy and practice of failing to pay overtime to

18  Service Sales Representatives violates applicable provisions of Pennsylvania law, including

19  applicable state statutes, regulations, and rules;

20
         (d)    Whether Cintas has failed to pay wages when due within the meaning of the
21
22  Pennsylvania Wage Payment and Collection Law, 43 Pa. Stats. §§260.1, *et seq.*; and

23       (e)    The proper measure of damages sustained by members of the Pennsylvania

24  Subclass.

25  **Washington Subclass (Washington Minimum Wage Act):**

26       102.    Plaintiff Michael Clayton brings the Twenty-First Claim for Relief for violation of the

27  Washington Minimum Wage Act as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and

28

1    (b)(3) on behalf of all Service Sales Representatives, including Commission Route Salespersons,

2    Commission Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of

3    Washington during the applicable limitations period, whom Cintas refused to compensate for

4    overtime work performed in excess of forty (40) hours per work week. Plaintiff also asserts class-

5

6    wide claims under Wash. Rev. Code §§49.48.010 *et seq.*, alleging that Cintas failed to pay wages

7    when due. Plaintiff Clayton also asserts class-wide claims under Wash. Admin. Code §296-126-092,

8    alleging that Cintas failed to provide paid rest periods as required. Plaintiff Clayton is a member of

9    the Washington Subclass on whose behalf all claims alleging violations of the Washington

10    Minimum Wage Act are brought. The claims of the Washington Subclass do not include any claims

11    for unpaid overtime arising out of any periods of employment in any position other than as Service

12

13    Sales Representative.

14        103.  The Washington Subclass is so numerous that joinder of all members is

15    impracticable. Plaintiffs are informed and believe, and on that basis allege, that during the Class

16    period at least one hundred and forty (140) persons have been employed by Defendant Cintas as

17    Service Sales Representatives in Washington, and that given turnover, the class is more numerous

18    than that.

19        104.  Common questions of law and fact exist as to members of the Washington Subclass

20

21    that predominate over any questions affecting only individual members and include, but are not

22    limited to, the following:

23        (a)  Whether Defendants unlawfully failed to pay overtime compensation in

24    violation of the Washington Minimum Wage Act, Wash. Rev. Code §§49.46.005, *et seq.*; Wash.

25    Rev. Code §§49.48.010, *et seq.*; Wash. Rev. Code §§49.52.010, *et seq.*; Wash. Admin. Code § 296-

26    126-001, *et seq.*;

27

28

(b)    Whether Plaintiff Clayton and the Washington Subclass of Service Sales Representatives are exempt from the entitlement to overtime compensation for overtime hours worked under the overtime pay requirements of Washington law;

(c)    Whether Cintas's policy and practice of classifying as exempt from overtime entitlement under Washington law and Cintas's policy and practice of failing to pay overtime to Service Sales Representatives violates applicable provisions of Washington law, including applicable state statutes, regulations, and rules;

(d)    Whether Cintas has failed to pay wages when due within the meaning of Wash. Rev. Code §§49.48.010, *et seq.*;

(e)    Whether Cintas failed to provide paid rest periods as required under Wash. Admin. Code §296-126-092(4); and

(f)    The proper measure of damages sustained by members of the Washington Subclass.

**West Virginia Subclass (West Virginia Minimum Wage and Maximum Hours Act):**

105.    Plaintiff Daniel Alvis brings the Twenty-Second Claim for Relief for violation of the West Virginia Minimum Wage and Maximum Hours Act as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of all Service Sales Representatives, including Commission Route Salespersons, Commission Route Sales Representatives, and/or Route Drivers employed by Cintas in the state of West Virginia during the applicable limitations period, whom Cintas refused to compensate for overtime work performed in excess of forty (40) hours per work week. Plaintiff Alvis also asserts class-wide claims under the West Virginia Wage Payment and Collection Law, W. Va. Code §21-5-4(b), alleging that Cintas failed to pay wages when due. Plaintiff Alvis is a member of the West Virginia Subclass on whose behalf all claims alleging violations of the West Virginia Minimum Wage and Maximum Hours Act are brought. The claims of the West Virginia Subclass do

Case 4:03-cv-01180-SBA    Document 519    Filed 02/28/2006    Page 46 of 98

1  not include any claims for unpaid overtime arising out of any periods of employment in any position

2  other than as Service Sales Representative.

3       106.    The West Virginia Subclass is so numerous that joinder of all members is

4  impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class

5  period at least sixty-five (65) persons have been employed by Defendant Cintas as Service Sales

6

7  Representatives in West Virginia, and that given turnover, the class is more numerous than that.

8       107.    Common questions of law and fact exist as to members of the West Virginia

9  Subclass that predominate over any questions affecting only individual members and include, but are

10  not limited to, the following:

11       (a)    Whether Defendants unlawfully failed to pay overtime compensation in

12  violation of the West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §§21-5C-1,

13

14  *et seq.*;

15       (b)    Whether Plaintiff Alvis and the West Virginia Subclass of Service Sales

16  Representatives are exempt from the entitlement to overtime compensation for overtime hours

17  worked under the overtime pay requirements of West Virginia law;

18       (c)    Whether Cintas's policy and practice of classifying as exempt from overtime

19  entitlement under West Virginia law and Cintas's policy and practice of failing to pay overtime to

20

21  Service Sales Representatives violates applicable provisions of West Virginia law, including

22  applicable state statutes, regulations, and rules;

23       (d)    Whether Cintas has failed to pay wages when due within the meaning of the

24  West Virginia Wage Payment and Collection Law, W. Va. Code §§21-5-1, *et seq.*; and

25       (e)    The proper measure of damages sustained by members of the West Virginia

26  Subclass.

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                          - 44 -

1                     **ADDITIONAL CLASS ACTION ALLEGATIONS**

2       108.    Plaintiffs will fairly and adequately represent and protect the interests of the members

3 of the Class and each state law Subclass. Plaintiffs have retained counsel who are competent and

4 experienced in complex class actions, ERISA, FLSA, and state labor and employment litigation.

5       109.    Class certification of the First Claim for Relief for violation of ERISA is appropriate

6

7 pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class

8 or Subclass members would create a risk of inconsistent or varying adjudications which would

9 establish incompatible standards of conduct for Defendants, and/or because adjudications with

10 respect to individual Class or Subclass members would as a practical matter be dispositive of the

11 interests of non-party Class or Subclass members.

12       110.    In addition, Class certification of the First Claim for Relief for violations of ERISA

13

14 and for the Fourth, Fifth, Eighth through Twelfth and Fourteenth through Twenty-Second Claims is

15 appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant Cintas has acted or refused to act

16 on grounds generally applicable to the Class and Subclasses, making appropriate declaratory and

17 injunctive relief with respect to Plaintiffs and the Class and Subclasses as a whole. The members of

18 the Class and each of the Subclasses are entitled to injunctive relief to end Cintas's common and

19 uniform practices of failing to keep accurate time records and failing to compensate its employees

20 for all work performed for the benefit of Cintas, and to require the fiduciaries of the Cintas Partners'

21 Plan to credit all service which should be credited.

22

23       111.    Class certification of the Fourth, Fifth, Eighth through Twelfth and Fourteenth

24 through Twenty-Second Claims is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions

25 of law and fact common to the California, Illinois, Indiana, Kentucky, Maryland, Massachusetts,

26 Minnesota, Missouri, New Jersey, New Mexico, New York, Ohio, Pennsylvania, Washington and

27 West Virginia Subclasses predominate over any questions affecting only individual members of the

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                   - 45 -

1  Subclasses, and because a class action is superior to other available methods for the fair and efficient

2  adjudication of this litigation. Cintas's common and uniform policies and practices unlawfully treat

3  members of each Subclass as exempt from overtime pay requirements. The damages suffered by

4  individual Subclass members are small compared to the expense and burden of individual

5  prosecution of this litigation. In addition, Class certification is superior because it will eliminate the

6  need for unduly duplicative litigation, which might result in inconsistent judgments about Cintas's

7  practices.

8

9      112.    Plaintiffs know of no difficulty that would be encountered in the management of this

10  litigation, which would preclude its maintenance as a class action.

11     113.    The names and addresses of the Plaintiff Class Members are available from

12  Defendant Cintas. To the extent required by law, notice will be provided to the Plaintiff Class via

13  First Class Mail and/or by the use of techniques and a form of notice similar to those customarily

14  used in class actions.

15

16                          **FIRST CLAIM FOR RELIEF**

17                   **[Against Defendants Cintas and Does 1-10]**

18          **(Section 502(a)(3) of ERISA, Based on Failure to Maintain Records)**

19     114.    Plaintiffs Paul Veliz, James White, Tom Jaramillo, Mark Fragola, Mark Chainuck,

20  Jeff Jay, Tade L. Wasmer, Aaron M. Zadnik, John Cruz, Douglas Johnson, Joe Ashcraft, Bryan

21  Cruse, Bobby C. Hodge, Noel Lloyd, Kelly Smith, Earl G. Woods Jr., Dennis Fedor, Daniel

22  Peterson, Wayne Edwards, Wilfredo Huertas Jr., Amber Kelly, Derek Samuels, Samuel Williams,

23  Julian Nazareth, Daniel Alvis, Rebecca Brown, Craig Kane, Keith Boehm, James Wulff, Joel

24  Rogers, Drew Fuehring, John Liss, Bruce Brandt, Michael Clayton, Chris McArdle and Mark

25  Sperota on behalf of themselves and all prospective members of the Class, reallege and incorporate

26  by reference ¶¶1-113 as if they were set forth again herein.

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                              - 46 -

1    115.    Section 209(a)(1) of ERISA, 29 U.S.C. §1059(a)(1), requires an employer which

2    sponsors an employee benefit plan to maintain records with respect to each of its employees

3    sufficient to determine the benefits due or which may become due to such employees pursuant to

4    that plan.

5

6    116.    Sections 202, 203, and 204 of ERISA, 29 U.S.C. §§1052, 1053, and 1054, set forth

7    minimum standards with regard to participation, vesting, and accrual of benefits in employee

8    pension benefit plans. Each of these provisions of ERISA requires that the plans take into account

9    "hours of service," as that term is defined in regulations promulgated by the U.S. Secretary of Labor.

10   In 29 C.F.R. §2530.200b-2, the Secretary of Labor has defined an hour of service as, *inter alia*,

11   "each hour for which an employee is paid, or entitled to payment, for the performance of duties for

12   the employer. . . ."

13

14   117.    Pursuant to the terms of the Cintas Partners' Plan, Plaintiffs' rights to attain

15   participant status in that plan, vest non-forfeitable rights in their accrued benefits under the plan,

16   share in contributions to the plan and/or other aspects of Plaintiffs' rights under the plan depend, in

17   part, on Plaintiffs' hours of service. Plaintiffs allege on information and belief that the plan

18   document for the Cintas Partners' Plan defines an "hour of service" to include all hours for which an

19   employee is paid, or entitled to payment, for the performance of duties for the employer.

20

21   118.    By Cintas' failure to record and/or report all of the hours worked by its Service Sales

22   Representatives, including the Plaintiffs and members of the prospective Class, Cintas has failed to

23   maintain records with respect to each of its employees sufficient to determine the participation,

24   vesting, and benefit accrual rights of its plan participants, in violation of Section 209(a)(1) of

25   ERISA.

26

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                                      - 47 -

1    119.    To remedy this violation of ERISA by Cintas, Plaintiffs on behalf of themselves and

2    members of the prospective Class seek injunctive relief and such other equitable relief as the Court

3    deems just and proper, as provided by Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

4    120.    Plaintiffs on behalf of themselves and members of the prospective Class, seek

·5    recovery of their attorneys' fees, expenses, and costs of action to be paid by Cintas, as provided by

6    Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

7

8                          **SECOND CLAIM FOR RELIEF**

9              **[Against Defendants Cintas, Plan Administrator and Does 1-10]**

10      **(Pursuant to Section 502(a)(3) of ERISA to Remedy Failures to Credit Service)**

11    121.    The Second Claim for Relief has been dismissed pursuant to Court Order.  Plaintiffs

12    thus delete the allegations but preserve their appeal rights.

13                          **THIRD CLAIM FOR RELIEF**

14                  **[Against Defendants Cintas and Does 11-25]**

15      **(FLSA Claims, 29 U.S.C. §§201, *et seq.*, Brought by All Litigating Plaintiffs**
         **on Behalf of Themselves and All Members of the Nationwide**
16                   **FLSA Collective Plaintiffs)**

17    122.    Litigating Plaintiffs Joe Ashcraft, Noel Lloyd, Kelly Smith, Dennis Fedor, Daniel

18    Peterson, Wayne Edwards, Wilfredo Huertas, Jr., Derek Samuels, Daniel Alvis, Rebecca Brown,

19    Craig Kane, Keith Boehm, James Wulff, Joel Rogers, Drew Fuehring, John Liss, Bruce Brandt,

20    Michael Clayton, Chris McArdle and Mark Sperota, on behalf of themselves and all Nationwide

21    FLSA Collective Plaintiffs, reallege and incorporate by reference ¶¶1-121 as if they were set forth

22    again herein.

23    123.    At all relevant times, Cintas has been, and continues to be, an "employer" engaged in

24    interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of

25    the FLSA, 29 U.S.C. §203.  At all relevant times, Cintas has employed, and continues to employ,

26

27

28

"employee[s]," including the Plaintiffs and each of the collective Nationwide FLSA Collective Plaintiffs. At all relevant times, Cintas has had gross operating revenues in excess of $500,000.

124.     Defendant Cintas operates, and at all times during the liability period, has operated a uniform supply company which designs, manufactures and delivers employee uniforms and related products to its industrial customers on a regular basis.

125.     Each of the Litigating Plaintiffs identified in ¶2 consents to sue in this action pursuant to section 16(b) of the FLSA, 29 U.S.C. §216(b). Additional Plaintiffs have signed consent forms and joined as Plaintiffs on this claim.

126.     The FLSA requires each covered employer, such as Defendant Cintas, to compensate each of its non-exempt employees at a rate of not less than one and one-half the regular rate of pay for work performed in excess of forty (40) hours in a work week.

127.     Defendant has employed and continues to employ numerous Service Sales Representatives, including Plaintiffs, to deliver clean uniforms, mats, and other products to industrial customers on a daily basis and otherwise to service existing customers of Cintas. The primary function of Service Sales Representatives is to service customer contracts, which are obtained, negotiated, renewed and modified by Cintas's separate sales force, by supervising or performing the loading of clean employee uniforms and other items to be delivered, making regular deliveries of clean uniforms, collecting, counting and returning dirty uniforms, processing customer requests for uniform repairs, sizing changes on uniforms, addressing customer concerns, and otherwise servicing contracts of existing customers.

128.     Litigating Plaintiffs and Nationwide FLSA Collective Plaintiffs are not exempt from the right to receive overtime pay under the FLSA and are not exempt from the requirement that Cintas pay them overtime compensation under the FLSA. The Nationwide FLSA Collective Plaintiffs are entitled to be paid overtime compensation for all overtime hours worked.

1    129.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay

2  overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours

3  per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

4
   overtime hours actually worked, and/or the failure to calculate and pay overtime premiums
5
   according to law.
6

7    130.    As a result of Cintas's failure to compensate its Service Sales Representatives,

8  including the Plaintiffs and Nationwide FLSA Collective Plaintiffs, at a rate not less than one and

9  one-half times the regular rate of pay for work performed in excess of 40 hours in a work week,

10  Cintas has violated, and continues to violate, the FLSA, including 29 U.S.C. §§207(a)(1) and 215(a).

11    131.    As a result of Cintas's failure to record, report, credit, and/or compensate its Service
12
   Sales Representatives, including the Plaintiffs and Nationwide FLSA Collective Plaintiffs, Cintas
13
   has failed to make, keep, and preserve records with respect to each of its employees sufficient to
14
15  determine the wages, hours, and other conditions and practices of employment in violation of the

16  FLSA, including 29 U.S.C. §§211(c) and 215(a).

17    132.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

18  within the meaning of 29 U.S.C. §255(a).

19    133.    Plaintiffs, on behalf of themselves and Nationwide FLSA Collective Plaintiffs, seek
20
   damages in the amount of their respective unpaid overtime compensation, plus liquidated damages,
21
   as provided by the FLSA, 29 U.S.C. §216(b), and such other legal and equitable relief as the Court
22
23  deems just and proper.

24    134.    Plaintiffs, on behalf of themselves and Nationwide FLSA Collective Plaintiffs, seek

25  recovery of their attorneys' fees and costs of action to be paid by Cintas, as provided by the FLSA,

26  29 U.S.C. §216(b).

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                        - 50 -

**FOURTH CLAIM FOR RELIEF**

**[Against Defendants Cintas and Does 11-25]**

**(Cal. Labor Code §203, 1194; Cal. Wage Orders Nos. 4  and/or 7,
Brought by Plaintiff Chris McArdle on Behalf of Himself
and All Members of the California Subclass)**

135.    Plaintiff Chris McArdle ("California Class Representative") , on behalf of himself and all members of the California Subclass, reallege and incorporate by reference ¶¶1-134 as if they were set forth again herein.

136.    Under California Labor Code §510 and Industrial Wage Commission wage order No.4, Defendants were and are obligated to compensate California Class Representative and all members of the California Subclass at an overtime premium for all hours worked in excess of eight (8) hours in one day and/or in excess of forty (40) hours in a work week.  Overtime compensation must be paid at a rate not less than one and one-half times the regular rate of pay.

137.    Sections 201 and 202 of the Labor Code require Defendants to pay its employees all wages due within 72 hours of termination of employment.  Section 203 of the Labor Code provides that if an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced. The penalty cannot exceed 30 days of wages.

138.    Under California Labor Code §226.7, an employer is required to provide paid rest periods to its employees.

139.    California Class Representative and all members of the California Subclass were regularly required to work in excess of forty (40) hours per week and/or eight (8) hours in one work day, but were not paid for all such overtime work as required by California law.  Nor were the California Class Representative and all similarly situated Service Sales Representatives provided paid rest periods as was required under California law.

140.    By failing to pay all overtime compensation due, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums according to law, by failing to pay all wages when due, and by failing to provide paid rest periods to the California Class Representative and all members of the California Subclass, Defendants willfully, knowingly and/or recklessly violated California wage and hour laws, which require overtime compensation and paid rest periods be provided to non-exempt employees such as Service Sales Representatives.

141.    As a result of Defendants' policy and practice of withholding overtime compensation, failing to pay all wages owed when due, and failing to provide paid rest periods, the California Class Representative and all members of the California Subclass have been damaged in that they have not received wages due to them pursuant to California wage and hour laws, in violation of Labor Code §203.

142.    Defendants have made it difficult to account with precision for the unpaid overtime worked by their Service Sales Representatives during the liability period, because they did not make, keep, and preserve the recorded hours worked by such employees as required for non-exempt employees by California Labor Code § 1174(d) and applicable wage orders.

143.    Defendants' failure to retain records of hours worked by Service Sales Representatives was willful and deliberate, and designed to serve its policy of unlawfully denying overtime compensation to persons employed as Service Sales Representatives.

144.    As a result of the unlawful acts of Defendants, the California Class Representative and all members of the California Subclass have been deprived and continue to be deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts pursuant to California Labor Code §1194, attorneys' fees, costs, statutory penalties, and other compensation.

**FIFTH CLAIM FOR RELIEF**

**[Against Defendants Cintas and Does 11-25]**

**(Cal. Bus. & Prof. Code §§17200-17208, Brought by Plaintiff
Chris McArdle on Behalf of Himself and All Members of the California Subclass)**

145.     Plaintiff Chris McArdle incorporates ¶¶1-144 as though fully set forth herein.

146.     The California Representative, on behalf of himself, the California Subclass and the general public, bring this claim pursuant to Cal. Business & Professions Code §§17200, *et seq.* The conduct of all defendants as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to plaintiffs, the general public, and the California Subclass. Plaintiff McArdle seeks to enforce important rights affecting the public interest within the meaning of Cal. Code of Civil Procedure §1021.5.

147.     The prompt payment of overtime pay and other legally required wages and benefits is a fundamental public policy of the State of California. Cal. Labor Code §90.5(a) articulates the public policies of this State to enforce minimum labor standards vigorously, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding employers and their employees from competitors who lower their costs by failing to comply with minimum labor standards.

148.     Through their failures to pay legally-required overtime wages, to provide itemized statements of hours worked with payments of wages, to pay wages when due, to provide paid break time, and other conduct alleged herein, Cintas has violated numerous specific provisions of state and federal law and have engaged in unlawful and unfair business practices in violation of Cal. Business & Professions Code §§17200, et seq., depriving the plaintiff McArdle, all persons similarly situated, and all interested persons of rights, benefits, and privileges guaranteed to all employees under law.

149.     Injunctive relief pursuant to Cal. Business and Professions Code §17203 is necessary to prevent Cintas from continuing to engage in unfair business practices as alleged in this Complaint.

1   Defendants, and each of them, and/or persons acting in concert with them, have done, are now doing,

2   and will continue to do or cause to be done, the illegal acts alleged in this Complaint, unless

3   restrained and enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of

4   actions will result. Plaintiff McArdle has no plain, speedy, or adequate remedy at law, for reasons

5   which include but are not limited to the following: (a) it is difficult to measure the amount of

6   monetary damages that would compensate Plaintiff for defendants' wrongful acts; and (b) in any

7   event, pecuniary compensation alone would not afford adequate and complete relief. The continuing

8   

9   violation of law, by defendants, will cause great and irreparable damage to Plaintiff and others

10  similarly situated unless defendants are immediately restrained from committing further illegal acts.

11          150.    Cal. Business and Professions Code §17203 provides that the Court may restore to an

12  aggrieved party any money or property acquired by means of unlawful and unfair business practices.

13  Plaintiff seeks restitution of all unpaid wages owing to the members of the class, according to proof,

14  

15  as well as all other available equitable relief.

16                          **SIXTH CLAIM FOR RELIEF**

17                     **[Against Defendants Cintas and Does 11-25]**

18          **(Colorado Wage Act Claims, Colo. Rev. Stat. §§8-4-100, *et seq*., and Colorado
            Minimum Wage Order Number 22, Colo. Code of Regs. §§1103-1, *et seq*.**

19          **Brought by Plaintiff Tom Jaramillo on behalf of Himself and**

20          **All Members of the Colorado Subclass)**

21          151.    The Court has ruled that plaintiff Tom Jaramillo must arbitrate his claims for relief

22  under Colorado state law, and therefore, plaintiff Jaramillo will seek to pursue these state law class

23  action claims in arbitration. However, he and other plaintiffs are not waiving their right to appeal the

24  issue of whether these Colorado state law claims can and should be litigated in this federal court.

25  Plaintiff Jaramillo and other similarly situated plaintiffs are not abandoning the Colorado state law

26  

27  claims by omitting them from this Complaint, and Colorado state law claims continue to be at issue

28

1  in the pending arbitration in the Northern District, as well as in this federal court to the extent that

2  the Court's ruling regarding the need to arbitrate these state law claims may be reversed on appeal.

3  ### SEVENTH CLAIM FOR RELIEF

4  **[Against Defendants Cintas and Does 11-25]**

5  **(Connecticut Wage and Hour Act Claims, Conn. Gen. Stat. §§31-71b, *et seq*.**

6  **Brought by Plaintiff Mark Fragola on Behalf of Himself and All Members**
   **of the Connecticut Subclass)**

7

8  152.    The Court has ruled that plaintiff Mark Fragola must arbitrate his claims for relief

9  under Connecticut state law, and therefore, plaintiff Fragola will seek to pursue these state law class

10 action claims in arbitration.  However, he and other plaintiffs are not waiving their right to appeal the

11 issue of whether these Connecticut state law claims can and should be litigated in this federal court.

12 Plaintiff Fragola and other similarly situated plaintiffs are not abandoning the Connecticut state law

13 claims by omitting them from this Complaint, and Connecticut state law claims continue to be at

14 issue in the pending arbitration in the Northern District, as well as in this federal court to the extent

15 that the Court's ruling regarding the need to arbitrate these state law claims may be reversed on

16

17 appeal.

18 ### EIGHTH CLAIM FOR RELIEF

19 **[Against Defendants Cintas and Does 11-25]**

20 **(Illinois Minimum Wage Law Claims, 820 Ill. Comp. Stat. §§105/1, *et seq*.,**
   **Brought by Plaintiff John Liss on Behalf of Himself and All**

21 **Members of the Illinois Subclass)**

22 153.    Plaintiff John Liss ("the Illinois Class Representative"), on behalf of himself and all

23 prospective members of the Illinois Subclass, reallege and incorporate by reference ¶¶1-152 as if

24 they were set forth again herein.

25

26 154.    The Illinois Class Representative brings this action on behalf of the Illinois subclass

27 because Illinois law provides the Illinois subclass with certain benefits and protections not accorded

28 under federal law, including the ability to seek injunctive relief, the absence of a "good faith"

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                    - 55 -

1   affirmative defense to liability, an unqualified three year statute of limitations, the ability to recover

2   withheld overtime wages despite not filing a consent to join the FLSA action, and the ability to seek

3   punitive damages.

4
5          155.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

6   meaning of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §105/3. At all relevant times,

7   Cintas has employed, and continues to employ, employees, including the Illinois Class

8   Representative and each of the members of the prospective Illinois Subclass, within the meaning of

9   the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §§105/1, et seq.

10         156.    The Illinois Minimum Wage Law requires an employer, such as Cintas, to pay

11  overtime compensation to all non-exempt employees. The Illinois Class Representative and

12  members of the Illinois subclass are not exempt from overtime pay requirements under Illinois law

13
14  and, thus, are entitled to be paid overtime compensation for all overtime hours worked.

15         157.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay

16  overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours

17  per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

18  overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

19  according to law.

20
21         158.    By failing to pay all overtime compensation due, whether through the failure to

22  provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

23  the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

24  when due, and by failing to provide paid rest periods to the Illinois Class Representative and all

25  members of the Illinois Subclass, Defendants willfully, knowingly and/or recklessly violated Illinois

26  wage and hour laws, which require overtime compensation be provided to non-exempt employees

27  such as Service Sales Representatives.

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                                          - 56 -

159.    As a result of Cintas's failure to pay wages earned and due, and its decision to withhold wages earned and due its non-exempt Service Sales Representatives who were, are or will be employed by Cintas in the State of Illinois and/or who were or will be separated from their respective employment with Cintas, including the Illinois Class Representative and all members of the prospective Illinois Subclass, for work performed at the regular hourly wage rate or at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, Cintas has violated, and continues to violate, the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §105/4a.

160.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-exempt Service Sales Representative employed by Cintas in the State of Illinois, including the Illinois Class Representatives and members of the prospective Illinois Subclass, their respective wage and hour records showing all wages earned and due for all work performed, Cintas has failed to make, keep, preserve, and furnish such records in violation of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §105/8.

161.    The Illinois Class Representative, on behalf of himself and all members of the prospective Illinois Subclass, seek damages in the amount of the respective unpaid wages earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, punitive damages in the amount of 2 percent of the amount of any such underpayments for each month following the underpayment as provided by the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §105/12, and such other legal and equitable relief as the Court deems just and proper.

162.    The Illinois Class Representative, on behalf of himself and all members of the prospective Illinois Subclass, seek recovery of attorneys' fees and costs of action to be paid by Cintas, as provided by the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §105/12.

### NINTH CLAIM FOR RELIEF

### [Against Defendants Cintas and Does 11-25]

### (Indiana Minimum Wage Law of 1965 Claims, Ind. Stat. §§22-2-2-1, *et seq.*, Brought by Plaintiff Bruce Brandt on Behalf of Himself and All Members of the Indiana Subclass)

163.    Plaintiff Bruce Brandt ("the Indiana Class Representative"), on behalf of himself and all members of the Indiana Subclass, realleges and incorporates by reference ¶¶1-162 as if they were set forth again herein.

164.    Plaintiff Brandt brings this action on behalf of the Indiana Subclass because Indiana law provides the Indiana Subclass with certain benefits and protections not accorded under federal law, including the absence of a "good faith" defense to liability, the ability to recover withheld overtime wages despite not filing a consent to join the FLSA action, and an unqualified three-year statute of limitations.

165.    At all relevant times, Cintas has been, and continues to be, an "employer" within the meaning of Ind. Stat. §§22-2-2-1, *et seq.* At all relevant times, Cintas has employed, and continues to employ, employees, including the Indiana Class Representative and all members of the Indiana Subclass, within the meaning of Ind. Stat. §§22-2-2-1, *et seq.*

166.    The Indiana Minimum Wage Law of 1965 requires an employer, such as Defendant Cintas, to pay overtime compensation to all non-exempt employees. Neither the Indiana Class Representative nor the members of the Indiana Subclass are exempt from overtime pay requirements under Indiana law and, thus, are entitled to be paid overtime compensation for all overtime hours worked.

167.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

1    overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

2    according to law.

3         168.    Under the Indiana Minimum Wage Law of 1965, Ind. Stat. §§ 22-2-4-4, 22-2-5-1 and

4    22-2-5-2, Cintas is obligated to pay all wages owed when due.  By failing to pay all overtime as

5    alleged herein, Cintas has violated the rights of the Indiana Class Representative and the members of

6    the Indiana Subclass to full and timely payment under the law.

7

8         169.    By failing to pay all overtime compensation due, whether through the failure to

9    provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

10   the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

11   when due, and by failing to provide paid rest periods to the Indiana Class Representative and all

12   members of the Indiana Subclass, Defendants willfully, knowingly and/or recklessly violated Indiana

13   wage and hour laws, which require overtime compensation be provided to non-exempt employees

14   such as Service Sales Representatives.

15

16        170.    As a result of Cintas's failure to pay wages earned and due, and its decision to

17   withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will

18   be employed by Cintas in the State of Indiana and/or who were or will be separated from their

19   respective employment with Cintas, including Plaintiff Brandt and members of the prospective

20   Indiana Subclass, for work performed at the regular hourly wage rate or at a rate not less than one

21   and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work

22   week, Cintas has violated, and continues to violate, Ind. Stat. §§22-2-4-4, 22-2-5-1, 22-2-5-2 and 22-

23   2-2-4.

24

25        171.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

26   exempt Service Sales Representatives employed by Cintas in the State of Indiana, including the

27   Indiana Class Representative and all members of the Indiana Subclass, their respective wage and

28

1  hour records showing all wages earned and due for all work performed, Cintas has failed to make,

2  keep, preserve, and furnish such records in violation of Ind. Stat. §§22-2-2-8 and 22-2-2-11.

3      172.    The Indiana Class Representative, on behalf of himself and all members of the

4  prospective Indiana Subclass, seeks damages in the amount of the respective unpaid wages earned

5  and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular

6  rate of pay for work performed in excess of forty (40) hours in a work week, as provided by Ind.

7  Stat. §22-2-4, and such other legal and equitable relief from Cintas's unlawful and willful conduct as

8  the Court deems just and proper.

9

10     173.    The Indiana Class Representative, on behalf of himself and all members of the

11  prospective Indiana Subclass, seeks recovery of attorneys' fees and costs of action to be paid by

12  Cintas, as provided by Ind. Stat. §22-2-2-9.

13

14                      **TENTH CLAIM FOR RELIEF**

15                    **[Against Defendants Cintas and Does 11-25]**

16  **(Kentucky Minimum Wage Law, Ky. Rev. Stat. §§337.010, *et seq.*; 803 Ky. Admin. Regs.
   1:005, *et seq.*, Brought by Plaintiff Joe Ashcraft on Behalf of Himself and All Members of
   the Kentucky Subclass)**

17

18     174.    Plaintiff Joe Ashcraft ("Kentucky Class Representative"), on behalf of himself and all

19  members of the Kentucky Subclass, realleges and incorporates by reference ¶¶1-173 as if they were

20  set forth again herein.

21     175.    Plaintiff Joe Ashcraft brings this action on behalf of the Kentucky Subclass because

22  Kentucky law provides the Kentucky Subclass with certain benefits and protections not accorded

23  under federal law, including the ability to recover withheld overtime wages despite not filing a

24  consent to join the FLSA action, and an unqualified five-year statute of limitations.

25

26     176.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

27  meaning of Ky. Rev. Stat. §§337.010, *et seq.* and 803 Ky. Admin. Regs. 1:005, *et seq.* At all

28  relevant times, Cintas has employed, and continues to employ, employees, including the Kentucky

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                    - 60 -

1  Class Representative and all members of the Kentucky Subclass, within the meaning of Ky. Rev.

2  Stat. §§337.010, *et seq.* and 803 Ky. Admin. Regs. 1:005, *et seq.*

3      177.    The Kentucky Minimum Wage Law requires an employer, such as Defendant Cintas,

4  to pay overtime compensation to all non-exempt employees.    Neither the Kentucky Class

5

6  Representative nor the members of the Kentucky Subclass are exempt from overtime pay

7  requirements under Kentucky law and, thus, are entitled to be paid overtime compensation for all

8  overtime hours worked.

9      178.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay

10  overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours

11  per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

12  overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

13  according to law.

14

15      179.    Under the Kentucky Minimum Wage Law, Ky. Rev. Stat. §337.055, Cintas is

16  obligated to pay to employees who quit, resign or are discharged all wages owed no later than the

17  next regular payday or fourteen (14) days after the date of dismissal or voluntary leaving, whichever

18  is later. By failing to pay all overtime as alleged herein, Cintas has violated the rights of the

19  Kentucky Class Representative and the members of the Kentucky Subclass to full and timely

20  payment under the law.

21

22      180.    Under Ky. Rev. Stat. §337.365, employers are required to provide rest breaks to

23  employees.

24      181.    By failing to pay all overtime compensation due, whether through the failure to

25  provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

26  the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

27  when due, and by failing to provide paid rest periods to the Kentucky Class Representative and all

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                      - 61 -

1  members of the Kentucky Subclass, Defendants willfully, knowingly and/or recklessly violated

2  Kentucky wage and hour laws, which require overtime compensation be provided to non-exempt

3  employees such as Service Sales Representatives.

4
       182.    As a result of Cintas's failure to pay wages earned and due, and its decision to
5
   withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will
6
7  be employed by Cintas in the State of Kentucky and/or who were or will be separated from their

8  respective employment with Cintas, including Plaintiff Joe Ashcraft and members of the prospective

9  Kentucky Subclass, for work performed at the regular hourly wage rate or at a rate not less than one

10 and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work

11 week, Cintas has violated, and continues to violate, Ky. Rev. Stat. §337.285(1) and 803 Ky. Admin.

12 Regs. 1:060(1), (5).
13
       183.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-
14
15 exempt Service Sales Representatives employed by Cintas in the State of Kentucky, including the

16 Kentucky Class Representative and all members of the Kentucky Subclass, their respective wage and

17 hour records showing all wages earned and due for all work performed, Cintas has failed to make,

18 keep, preserve, and furnish such records in violation of Ky. Rev. Stat. §337.320(1) and 803 Ky.

19 Admin. Regs. 1:066(2).
20
       184.    The Kentucky Class Representative, on behalf of himself and all members of the
21
22 prospective Kentucky Subclass, seeks damages in the amount of the respective unpaid wages earned

23 and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular

24 rate of pay for work performed in excess of forty (40) hours in a work week, and an equal additional

25 amount as liquidated damages, as provided by Ky. Rev. Stat. §337.385(1), and such other legal and

26 equitable relief from Cintas's unlawful and willful conduct as the Court deems just and proper.
27
28
SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                              - 62 -

1    185.    The Kentucky Class Representative, on behalf of himself and all members of the

2    prospective Kentucky Subclass, seeks recovery of attorneys' fees and costs of action to be paid by

3    Cintas, as provided by Ky. Rev. Stat. §337.385(1).

### ELEVENTH CLAIM FOR RELIEF

### [Against Defendants Cintas and Does 11-25]

**(Maryland Wage and Hour Law, Md. Lab. & Emp. Code §§3-401, _et seq._; Maryland Wage Payment and Collection Law, §§3-501, _et seq._; Brought by Plaintiff Rebecca Brown on Behalf of Herself and All Members of the Maryland Subclass)**

9    186.    Plaintiff Rebecca Brown ("Maryland Class Representative"), on behalf of herself and

10   all members of the Maryland Subclass, reallege and incorporate by reference ¶¶1-185 as if they were

11   set forth again herein.

12   187.    Plaintiff Brown brings this action on behalf of the Maryland Subclass because

13   Maryland law provides the Maryland Subclass with certain benefits and protections not accorded

14   under federal law, including the ability to recover withheld overtime wages despite not filing a

15   consent to join the FLSA action and an unqualified three-year statute of limitations.

16

17   188.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

18   meaning of Md. Lab. & Emp. Code §§3-401, _et seq._ and §§3-501, _et seq._  At all relevant times,

19   Cintas has employed, and continues to employ, employees, including the Maryland Class

20   Representative and all members of the Maryland Subclass, within the meaning of Md. Lab. & Emp.

21   Code §§3-401, _et seq._ and §§3-501, _et seq._

22   189.    The Maryland Wage and Hour Law requires an employer, such as Defendant Cintas,

23   to pay overtime compensation to all non-exempt employees.    Neither the Maryland Class

24   Representative nor the members of the Maryland Subclass are exempt from overtime pay

25   requirements under Maryland law and, thus, are entitled to be paid overtime compensation for all

26   overtime hours worked.

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                          - 63 -

190.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours per week, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums according to law.

191.    Under the Maryland Wage Payment and Collection Law, Md. Lab. & Emp. Code §3-505, Cintas is obligated to pay to employees who quit, resign or are discharged all wages owed no later than the next regular payday. Section 3-507.1 provides that if an employer fails to pay an employee all wages within two (2) weeks after the wages of employee become due, and if there is no bona fide dispute about whether the wages are owed, the employer must pay a penalty not to exceed three (3) times the wage and the employee is entitled to attorneys' fees and costs.

192.    By failing to pay all overtime compensation due, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums according to law, by failing to pay all wages when due, and by failing to provide paid rest periods to the Maryland Class Representatives and all members of the Maryland Subclass, Defendants willfully, knowingly and/or recklessly violated Maryland wage and hour laws, which require overtime compensation be provided to non-exempt employees such as Service Sales Representatives.

193.    As a result of Cintas's failure to pay wages earned and due, and its decision to withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will be employed by Cintas in the State of Maryland and/or who were or will be separated from their respective employment with Cintas, including Plaintiff Brown and members of the prospective Maryland Subclass, for work performed at the regular hourly wage rate or at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work

1  week, Cintas has violated, and continues to violate, Md. Lab. & Emp. Code §§3-415(a) and 3-

2  420(a).

3      194.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

4  exempt Service Sales Representatives employed by Cintas in the State of Maryland, including the

5  Maryland Class Representative and all members of the Maryland Subclass, their respective wage and

6  hour records showing all wages earned and due for all work performed, Cintas has failed to make,

7

8  keep, preserve, and furnish such records in violation of Md. Lab. & Emp. Code §3-424.

9      195.    The Maryland Class Representative, on behalf of herself and all members of the

10  prospective Maryland Subclass, seek damages in the amount of the respective unpaid wages earned

11  and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular

12  rate of pay for work performed in excess of forty (40) hours in a work week, as provided by Md.

13  Lab. & Emp. Code §3-427(a), and such other legal and equitable relief from Cintas's unlawful and

14

15  willful conduct as the Court deems just and proper.

16      196.    The Maryland Class Representative, on behalf of herself and all members of the

17  prospective Maryland Subclass, seek recovery of attorneys' fees and costs of action to be paid by

18  Cintas, as provided by Md. Lab. & Emp. Code §3-427(d).

19                    **TWELFTH CLAIM FOR RELIEF**

20                  **[Against Defendants Cintas and Does 11-25]**

21  **(Massachusetts Minimum Fair Wages Law, Mass. Gen. Laws, ch. 151, §§1, *et seq.*;**
   **Massachusetts Payment of Wages Law, ch. 149, §§148, *et seq.*, Brought by Plaintiff Craig**
22  **Kane on Behalf of Himself and All Members of the Massachusetts Subclass)**

23      197.    Plaintiff Craig Kane ("Massachusetts Class Representative"), on behalf of himself

24  and all members of the Massachusetts Subclass, realleges and incorporates by reference ¶¶1-196 as

25

26  if they were set forth again herein.

27      198.    Plaintiff Kane brings this action on behalf of the Massachusetts Subclass because

28  Massachusetts law provides the Massachusetts Subclass with certain benefits and protections not

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                              - 65 -

1   accorded under federal law, including the ability to recover withheld overtime wages despite not

2   filing a consent to join the FLSA action.

3       199.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

4   meaning of Mass. Gen. Laws ch. 151, §§1, *et seq*. and ch. 149, §§148, *et seq*. At all relevant times,

5   Cintas has employed, and continues to employ, employees, including the Massachusetts Class

6   Representative and all members of the Massachusetts Subclass, within the meaning of Mass. Gen.

7   Laws ch. 151, §§1, *et seq*. and ch. 149, §§148, *et seq*.

8

9       200.    The Massachusetts Minimum Fair Wages Law requires an employer, such as

10  Defendant Cintas, to pay overtime compensation to all non-exempt employees. Neither the

11  Massachusetts Class Representative nor the members of the Massachusetts Subclass are exempt

12  from overtime pay requirements under Massachusetts law and, thus, are entitled to be paid overtime

13
    compensation for all overtime hours worked.
14

15      201.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay

16  overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours

17  per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

18  overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

19  according to law.

20
        202.    Under Massachusetts Payment of Wages Law, Mass. Gen. Laws ch. 149, §148,
21
22  Cintas is obligated to pay to employees who are discharged all wages owed on the day of discharge.

23  By failing to pay all overtime as alleged herein, Cintas has violated the rights of the Massachusetts

24  Class Representative and the members of the Massachusetts Subclass to full and timely payment

25  under the law.

26      203.    By failing to pay all overtime compensation due, whether through the failure to

27  provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

28
    SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
    C-03-1180-SBA                                                              - 66 -

1   the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

2   when due, and by failing to provide paid rest periods to the Massachusetts Class Representative and

3   all members of the Massachusetts Subclass, Defendants willfully, knowingly and/or recklessly

4   violated Massachusetts wage and hour laws, which require overtime compensation be provided to

5   non-exempt employees such as Service Sales Representatives.

6

7           204.    As a result of Cintas's failure to pay wages earned and due, and its decision to

8   withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will

9   be employed by Cintas in the State of Massachusetts and/or who were or will be separated from their

10  respective employment with Cintas, including Plaintiff Kane and members of the prospective

11  Massachusetts Subclass, for work performed at the regular hourly wage rate or at a rate not less than

12  one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a

13  work week, Cintas has violated, and continues to violate, Mass. Gen. Laws ch. 151, §1A.

14

15          205.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

16  exempt Service Sales Representatives employed by Cintas in the State of Massachusetts, including

17  the Massachusetts Class Representative and all members of the Massachusetts Subclass, their

18  respective wage and hour records showing all wages earned and due for all work performed, Cintas

19  has failed to make, keep, preserve, and furnish such records in violation of Mass. Gen. Laws ch. 151,

20  §15 and ch. 149, §148.

21

22          206.    The Massachusetts Class Representative, on behalf of himself and all members of the

23  prospective Massachusetts Subclass, seeks damages in the amount of the respective unpaid wages

24  earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the

25  regular rate of pay for work performed in excess of forty (40) hours in a work week, and seeks a total

26  of three times this full amount, as provided by Mass. Gen. Laws ch. 151, §1B, and such other legal

27  and equitable relief from Cintas's unlawful and willful conduct as the Court deems just and proper.

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                          - 67 -

1    207.    The Massachusetts Class Representative, on behalf of himself and all members of the

2    prospective Massachusetts Subclass, seeks recovery of attorneys' fees and costs of action to be paid

3    by Cintas, as provided by Mass. Gen. Laws ch. 151, §1B.

### THIRTEENTH CLAIM FOR RELIEF

#### [Against Defendants Cintas and Does 11-25]

**(Michigan Minimum Wage Law Claims, Mich. Comp. Laws, §§408.381, *et seq.*, Brought by Plaintiffs Bobby C. Hodge, Noel Lloyd, Kelly Smith, and Earl G. Woods Jr. on Behalf of Themselves and All Members of the Michigan Subclass)**

9    208.    The Claim for Relief for violation of Michigan law has been dismissed pursuant to

10    Court Order. Plaintiffs thus delete the allegations but preserve their appeal rights.

### FOURTEENTH CLAIM FOR RELIEF

#### [Against Defendants Cintas and Does 11-25]

**(Minnesota Fair Labor Standards Act, Minn. Stat. §§177.21, *et seq.*; §§181.01, *et seq.*, Brought by Plaintiffs Dennis Fedor and Daniel Peterson on Behalf of Themselves and All Members of the Minnesota Subclass)**

15    209.    Plaintiffs Dennis Fedor and Daniel Peterson ("Minnesota Class Representatives"), on

16    behalf of themselves and all members of the Minnesota Subclass, reallege and incorporate by

17    reference ¶¶1-208 as if they were set forth again herein.

18    210.    Plaintiffs Dennis Fedor and Daniel Peterson bring this action on behalf of the

19    Minnesota Subclass because Minnesota law provides the Minnesota Subclass with certain benefits

20

21    and protections not accorded under federal law, including the ability to recover withheld overtime

22    wages despite not filing a consent to join the FLSA action.

23    211.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

24    meaning of Minn. Stat. §§177.21, *et seq.* and §§181.01, *et seq.* At all relevant times, Cintas has

25    employed, and continues to employ, employees, including the Minnesota Class Representatives and

26    all members of the Minnesota Subclass, within the meaning of Minn. Stat. §§177.21, et seq. and

27    §§181.01, *et seq.*

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                              - 68 -

1    212.    The Minnesota Fair Labor Standards Act requires an employer, such as Defendant

2    Cintas, to pay overtime compensation to all non-exempt employees. Neither the Minnesota Class

3    Representatives nor the members of the Minnesota Subclass are exempt from overtime pay

4    requirements under Minnesota law and, thus, are entitled to be paid overtime compensation for all

5    overtime hours worked.

6

7    213.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay

8    overtime pay to its Service Sales Representatives for their hours worked in excess of forty-eight (48)

9    hours per week, whether through the failure to provide any overtime pay, the denial of premium pay

10   for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

11   according to law.

12    214.    Under Minnesota's payment of wages law, Minn. Stat. §181.13(a), Cintas is obligated

13   to pay to employees who are discharged all wages owed upon demand. Section 181.13 provides that

14   if an employer fails to provide wages within twenty-four (24) hours after an employee's demand, the

15

16   employer must pay a penalty not to exceed 15 days of wages. Under Minn. Stat. §181.14(1)(a),

17   Cintas is obligated to pay to employees who quit or resign all wages owed no later than the next

18   regular payday unless the payday is less than five (5) days following the final day of employment, in

19   which case full payment may be delayed until the second regularly scheduled payday but shall not

20   exceed twenty (20) calendar days after the final day of employment. Section 181.14(2) provides that

21

22   wages are immediately payable upon demand, and that if an employer fails to provide wages within

23   twenty-four (24) hours after an employee's demand, the employer must pay a penalty not to exceed

24   15 days of wages.

25    215.    Under Minn. Stat. §177.253(1), employers are required to provide rest breaks to

26   employees.

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                          - 69 -

216.    By failing to pay all overtime compensation due, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums according to law, by failing to pay all wages when due, and by failing to provide paid rest periods to the Minnesota Class Representatives and all members of the Minnesota Subclass, Defendants willfully, knowingly and/or recklessly violated Minnesota wage and hour laws, which require overtime compensation be provided to non-exempt employees such as Service Sales Representatives.

217.    As a result of Cintas' failure to pay wages earned and due, and its decision to withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will be employed by Cintas in the State of Minnesota and/or who were or will be separated from their respective employment with Cintas, including Plaintiffs Dennis Fedor and Daniel Peterson and members of the prospective Minnesota Subclass, for work performed at the regular hourly wage rate or at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty-eight (48) hours in a work week, Cintas has violated, and continues to violate, Minn. Stat. §177.25(1).

218.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-exempt Service Sales Representatives employed by Cintas in the State of Minnesota, including the Minnesota Class Representatives and all members of the Minnesota Subclass, their respective wage and hour records showing all wages earned and due for all work performed, Cintas has failed to make, keep, preserve, and furnish such records in violation of Minn. Stat. §177.30.

219.    The Minnesota Class Representatives, on behalf of themselves and all members of the prospective Minnesota Subclass, seek damages in the amount of the respective unpaid wages earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty-eight (48) hours in a work week, and an equal

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                    - 70 -

1  additional amount as liquidated damages, as provided by Minn. Stat. §177.27(8) and §181.171(1),

2  and such other legal and equitable relief from Cintas's unlawful and willful conduct as the Court

3  deems just and proper.

4       220.    The Minnesota Class Representatives, on behalf of themselves and all members of the

5  prospective Minnesota Subclass, seek recovery of attorneys' fees and costs of action to be paid by

6

7  Cintas, as provided by Minn. Stat. §177.27(10) and §181.171(3).

8                          **FIFTEENTH CLAIM FOR RELIEF**

9                      **[Against Defendants Cintas and Does 11-25]**

10     **(Missouri Wage and Hour Law Claims, Mo. Rev. §§290.500, *et seq.*, Brought
        by Plaintiff Drew Fuehring on Behalf of Himself and All Members of the
11                           Missouri Subclass)**

12      221.    Plaintiff Drew Fuehring ("the Missouri Class Representative") on behalf of himself

13  and all members of the Missouri Subclass, realleges and incorporates by reference ¶¶1-220 as if they

14  were set forth again herein.

15      222.    Plaintiff Fuehring brings this action on behalf of the Missouri Subclass because

16
    Missouri law provides the Missouri Subclass with certain benefits and protections not accorded
17
    under federal law, including the absence of a "good faith" affirmative defense to liability, the ability
18
19  to recover withheld overtime wages despite not filing a consent to join the FLSA action, and the lack

20  of any exemption similar to the FLSA's Motor Carrier Act exemption.

21      223.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

22  meaning of Mo. Rev. §§290.500, *et seq.* At all relevant times, Cintas has employed, and continues

23  to employ, employees, including the Missouri Class Representative and all members of the Missouri

24  Subclass, within the meaning of Mo. Rev. Stat. §§290.500, *et seq.*

25
26      224.    The Missouri Wage and Hour laws require an employer, such as Defendant Cintas, to

27  pay overtime compensation to all non-exempt employees. Neither the Missouri Class Representative

28

1  nor the members of the Missouri Subclass are exempt from overtime pay requirements under

2  Missouri law and, thus, are entitled to be paid overtime compensation for all overtime hours worked.

3  225.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay

4
5  overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours

6  per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

7  overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

8  according to law.

9  226.    Under Missouri Wage and Hour Law, Mo. Rev. Stat. §290.527, Cintas is obligated to

10  pay all wages owed when due.  By failing to pay all overtime as alleged herein, Cintas has violated

11  the rights of the Missouri Class Representative and the members of the Missouri Subclass to full and

12
13  timely payment under the law.

14  227.    By failing to pay all overtime compensation due, whether through the failure to

15  provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

16  the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

17  when due, and by failing to provide paid rest periods to the Missouri Class Representative and all

18  members of the Missouri Subclass, Defendants willfully, knowingly and/or recklessly violated

19
20  Missouri wage and hour laws, which require overtime compensation be provided to non-exempt

21  employees such as Service Sales Representatives.

22  228.    As a result of Cintas's failure to pay wages earned and due, and its decision to

23  withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will

24  be employed by Cintas in the State of Missouri and/or who were or will be separated from their

25  respective employment with Cintas, including Plaintiff Fuehring and members of the prospective

26  Missouri Subclass, for work performed at the regular hourly wage rate or at a rate not less than one

27
28

1    and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work

2    week, Cintas has violated, and continues to violate, Mo. Rev. Stat. §§290.500, et seq.

3        229.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

4    exempt Service Sales Representatives employed by Cintas in the State of Missouri, including the

5    Missouri Class Representative and all members of the Missouri Subclass, their respective wage and

6    hour records showing all wages earned and due for all work performed, Cintas has failed to make,

7    keep, preserve, and furnish such records in violation of Mo. Rev. Stat. §290.520.

8

9        230.    The Missouri Class Representative, on behalf of himself and all members of the

10   prospective Missouri Subclass, seeks damages in the amount of the respective unpaid wages earned

11   and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular

12   rate of pay for work performed in excess of forty (40) hours in a work week, as provided by Mo.

13   Rev. Stat. §§290.527 and 290.505, and such other legal and equitable relief from Cintas's unlawful

14   and willful conduct as the Court deems just and proper.

15

16       231.    The Missouri Class Representative, on behalf of himself and all members of the

17   prospective Missouri Subclass, seeks recovery of attorneys' fees and costs of action to be paid by

18   Cintas, as provided by Mo. Rev. Stat. §290.527.

19

20                          **SIXTEENTH CLAIM FOR RELIEF**

21                        **[Against Defendants Cintas and Does 11-25]**

22   **(New Jersey Wage and Hour Law Claims, N.J. Stat. §§34:11-56a, *et seq.*, and
     §§2C:40A-2, Brought by Plaintiffs Wayne Edwards, Wilfredo Huertas, Jr.
23   and Derek Samuels on Behalf of Themselves and All Members of the New
                          Jersey Subclass)**

24       232.    Plaintiffs Wayne Edwards, Wilfredo Huertas, Jr. and Derek Samuels ("the New

25   Jersey Class Representatives") on behalf of themselves and all members of the New Jersey Subclass,

26   reallege and incorporate by reference ¶¶1-231 as if they were set forth again herein.

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                        - 73 -

233. Plaintiffs Edwards, Huertas and Samuels bring this action on behalf of the New Jersey Subclass because New Jersey law provides the New Jersey Subclass with certain benefits and protections not accorded under federal law, including an unqualified two year statute of limitations, the ability to recover withheld overtime wages despite not filing a consent to join the FLSA action, and the lack of any exemption similar to the FLSA's Motor Carrier Act exemption.

234. At all relevant times, Cintas has been, and continues to be, an "employer" within the meaning of N.J. Stat. §§34:11-56a, et seq. At all relevant times, Cintas has employed, and continues to employ, employees, including the New Jersey Class Representatives and all members of the New Jersey Subclass, within the meaning of N.J. Stat. §§34:11-56a, et seq.

235. The New Jersey Wage and Hour laws require an employer, such as Defendant Cintas, to pay overtime compensation to all non-exempt employees. Neither the New Jersey Class Representatives nor the members of the New Jersey Subclass are exempt from overtime pay requirements under New Jersey law and, thus, are entitled to be paid overtime compensation for all overtime hours worked.

236. At all relevant times, Cintas had a policy and practice of failing and refusing to pay overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours per week, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums according to law.

237. Under New Jersey Code of Criminal Justice, Employer Offenses, N.J. Stat. §2C:40A-2, Cintas is obligated to pay all wages owed when due. By failing to pay all overtime as alleged herein, Cintas has violated the rights of the New Jersey Class Representatives and the members of the New Jersey Subclass to full and timely payment under the law.

238.    By failing to pay all overtime compensation due, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums according to law, by failing to pay all wages when due, and by failing to provide paid rest periods to the New Jersey Class Representatives and all members of the New Jersey Subclass, Defendants willfully, knowingly and/or recklessly violated New Jersey wage and hour laws, which require overtime compensation be provided to non-exempt employees such as Service Sales Representatives.

239.    As a result of Cintas's failure to pay wages earned and due, and its decision to withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will be employed by Cintas in the State of New Jersey and/or who were or will be separated from their respective employment with Cintas, including Plaintiffs Edwards, Huertas and Samuels and all members of the prospective New Jersey Subclass, for work performed at the regular hourly wage rate or at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, Cintas has violated, and continues to violate, N.J. Stat. §§34:11-56a, *et seq.*, and §2C:40A-2.

240.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-exempt Service Sales Representatives employed by Cintas in the State of New Jersey, including the New Jersey Class Representatives and all members of the New Jersey Subclass, their respective wage and hour records showing all wages earned and due for all work performed, Cintas has failed to make, keep, preserve, and furnish such records in violation of N.J. Stat. §34:11-56a20.

241.    The New Jersey Class Representatives, on behalf of themselves and all members of the prospective New Jersey Subclass, seek damages in the amount of the respective unpaid wages earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, as provided by

1  N.J. Stat. §34:11-56a25, and such other legal and equitable relief from Cintas's unlawful and willful

2  conduct as the Court deems just and proper.

3      242.    The New Jersey Class Representatives, on behalf of themselves and all members of

4  the prospective New Jersey Subclass, seek recovery of attorneys' fees and costs of action to be paid

5  by Cintas, as provided by N.J. Stat. §34:11-56a25.

6

7                         **SEVENTEENTH CLAIM FOR RELIEF**

8                         **[Against Defendants Cintas and Does 11-25]**

9      **(New Mexico Minimum Wage Act, N.M. Stat. §§50-4-19, *et seq.*; N.M. Stat.**
       **§§50-4-1, *et seq.*, Brought by Plaintiff Joel Rogers on Behalf of Himself and**
10                    **All Members of the New Mexico Subclass)**

11     243.    Plaintiff Joel Rogers ("New Mexico Class Representative"), on behalf of himself and

12 all members of the New Mexico Subclass, realleges and incorporates by reference ¶¶1-242 as if they

13 were set forth again herein.

14     244.    Plaintiff Rogers brings this action on behalf of the New Mexico Subclass because

15 New Mexico law provides the New Mexico Subclass with certain benefits and protections not

16 accorded under federal law, including the ability to recover withheld overtime wages despite not

17 filing a consent to join the FLSA action and the lack of any exemption similar to the FLSA's Motor

18 Carrier Act exemption.

19

20     245.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

21 meaning of N.M. Stat. §§50-4-1, *et seq.* and 50-4-19, *et seq.* At all relevant times, Cintas has

22 employed, and continues to employ, employees, including the New Mexico Class Representative and

23 all members of the New Mexico Subclass, within the meaning of N.M. Stat. §§50-4-1, *et seq* and 50-

24 4-19, *et seq.*

25

26     246.    The New Mexico Minimum Wage Act requires an employer, such as Defendant

27 Cintas, to pay overtime compensation to all non-exempt employees. Neither the New Mexico Class

28 Representative nor the members of the New Mexico Subclass are exempt from overtime pay

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                         - 76 -

1    requirements under New Mexico law and, thus, are entitled to be paid overtime compensation for all

2    overtime hours worked.

3        247.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay

4    overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours

5    per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

6

7    overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

8    according to law.

9        248.    Under N.M. Stat. §50-4-4(A), (B), Cintas is obligated to pay to employees who are

10   discharged all wages owed, upon demand immediately, and the employer must pay the wages within

11   five (5) days of discharge; in all other cases, the wages must be paid within ten (10) days of

12

13   discharge. Section 50-4-4(C) provides that if an employer fails to pay an employee all wages within

14   five (5) days of discharge and if the employee makes a demand within a reasonable time for the

15   wages or other compensation, the employer must pay a penalty not to exceed 60 days of wages and

16   compensation. Under N.M. Stat. §50-4-5, Cintas is obligated to pay to employees who quit or resign

17   all wages and compensation owed no later than the next regular payday.

18       249.    By failing to pay all overtime compensation due, whether through the failure to

19   provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

20   the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

21

22   when due, and by failing to provide paid rest periods to the New Mexico Class Representative and

23   all members of the New Mexico Subclass, Defendants willfully, knowingly and/or recklessly

24   violated New Mexico wage and hour laws, which require overtime compensation be provided to

25   non-exempt employees such as Service Sales Representatives.

26       250.    As a result of Cintas's failure to pay wages earned and due, and its decision to

27   withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will

28
SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                - 77 -

1  be employed by Cintas in the State of New Mexico and/or who were or will be separated from their

2  respective employment with Cintas, including Plaintiff Rogers and members of the prospective New

3  Mexico Subclass, for work performed at the regular hourly wage rate or at a rate not less than one

4  and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work

5

6  week, Cintas has violated, and continues to violate, N.M. Stat. §50-4-22(C).

7      251.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

8  exempt Service Sales Representatives employed by Cintas in the State of New Mexico, including the

9  New Mexico Class Representative and all members of the New Mexico Subclass, their respective

10  wage and hour records showing all wages earned and due for all work performed, Cintas has failed

11  to make, keep, preserve, and furnish such records in violation of N.M. Stat. §50-4-9(A) and §50-4-

12  16.

13

14      252.    The New Mexico Class Representative, on behalf of himself and all members of the

15  prospective New Mexico Subclass, seeks damages in the amount of the respective unpaid wages

16  earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the

17  regular rate of pay for work performed in excess of forty (40) hours in a work week, and an

18  additional equal amount as liquidated damages, as provided by N.M. Stat. §50-4-26(B)(1), and such

19  other legal and equitable relief from Cintas's unlawful and willful conduct as the Court deems just

20  and proper.

21

22      253.    The New Mexico Class Representative, on behalf of himself and all members of the

23  prospective New Mexico Subclass, seeks recovery of attorneys' fees and costs of action to be paid by

24  Cintas, as provided by N.M. Stat. §50-4-26(B).

25

26

27

28

### EIGHTEENTH CLAIM FOR RELIEF

**[Against Defendants Cintas and Does 11-25]**

**(New York Minimum Wage Act Claims, N.Y. Lab. Law §§160, *et seq.*, and §§652, *et seq.*, Brought by Plaintiff Mark Sperota on Behalf of Himself and All Members of the New York Subclass)**

254.    Plaintiff Mark Sperota ("the New York Class Representative") on behalf of himself and all members of the New York Subclass, realleges and incorporates by reference ¶¶1-253 as if they were set forth again herein.

255.    Plaintiff Mark Sperota brings this action on behalf of the New York Subclass because New York law provides the New York Subclass with certain benefits and protections not accorded under federal law, including the ability to recover withheld overtime wages despite not filing a consent to join the FLSA action, and an unqualified six-year statute of limitations.

256.    At all relevant times, Cintas has been, and continues to be, an "employer" within the meaning of N.Y. Labor Law §§160, *et seq.*, and §§652, *et seq.* At all relevant times, Cintas has employed, and continues to employ, employees, including the New York Class Representative and all members of the New York Subclass, within the meaning of N.Y. Lab. Law §§160, *et seq.*, and §§652, *et seq.*

257.    The New York Wage and Hour laws require an employer, such as Defendant Cintas, to pay overtime compensation to all non-exempt employees. Neither the New York Class Representative nor the members of the New York Subclass are exempt from overtime pay requirements under New York law and, thus, are entitled to be paid overtime compensation for all overtime hours worked.

258.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

1    overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

2    according to law.

3        259.    Under New York Wage and Hour Laws, N.Y. Lab. Law §191, Cintas is obligated to

4    pay all wages owed when due. By failing to pay all overtime as alleged herein, Cintas has violated

5    the rights of the New York Class Representative and the members of the New York Subclass to full

6
     and timely payment under the law.
7

8        260.    By failing to pay all overtime compensation due, whether through the failure to

9    provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

10   the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

11   when due, and by failing to provide paid rest periods to the New York Class Representative and all

12
     members of the New York Subclass, Defendants willfully, knowingly and/or recklessly violated
13

14   New York wage and hour laws, which require overtime compensation be provided to non-exempt

15   employees such as Service Sales Representatives.

16       261.    As a result of Cintas's failure to pay wages earned and due, and its decision to

17   withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will

18   be employed by Cintas in the State of New York and/or who were or will be separated from their

19
     respective employment with Cintas, including Plaintiff Sperota and members of the prospective New
20

21   York Subclass, for work performed at the regular hourly wage rate or at a rate not less than one and

22   one-half times the regular rate of pay for work performed in excess of eight (8) hours in a day,

23   Cintas has violated, and continues to violate, N.Y. Lab. Law §§160, and 191.

24       262.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

25   exempt Service Sales Representatives employed by Cintas in the State of New York, including the

26   New York Class Representative and all members of the New York Subclass, their respective wage

27

28

1  and hour records showing all wages earned and due for all work performed, Cintas has failed to

2  make, keep, preserve, and furnish such records in violation of N.Y. Lab. Law §195.

3       263.    The New York Class Representative, on behalf of himself and all members of the

4  prospective New York Subclass, seeks damages in the amount of the respective unpaid wages earned

5  and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular

6  rate of pay for work performed in excess of eight (8) hours in a day, as provided by N.Y. Lab. Law

7  §§160, 191, 663, and such other legal and equitable relief from Cintas's unlawful and willful

8  conduct as the Court deems just and proper.

9

10      264.    The New York Class Representative, on behalf of himself and all members of the

11  prospective New York Subclass, seeks recovery of attorneys' fees and costs of action to be paid by

12  Cintas, as provided by N.Y. Lab. Law §663.

13

### NINETEENTH CLAIM FOR RELIEF

14

#### [Against Defendants Cintas and Does 11-25]

15

**(Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §§4111.01, *et***
16  ***seq.*, Brought by Plaintiff James Wulff on Behalf of Himself and All**
**Members of the Ohio Subclass)**

17

18      265.    Plaintiff James Wulff ("Ohio Class Representative"), on behalf of himself and all

19  members of the Ohio Subclass, reallege and incorporate by reference ¶¶1-264 as if they were set

20  forth again herein.

21      266.    Plaintiff Wulff brings this action on behalf of the Ohio Subclass because Ohio law

22  provides the Ohio Subclass with certain benefits and protections not accorded under federal law,

23  including the ability to recover withheld overtime wages despite not filing a consent to join the

24  FLSA action.

25

26      267.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

27  meaning of Ohio Rev. Code §§4111.01, *et seq.* At all relevant times, Cintas has employed, and

28

1 | continues to employ, employees, including the Ohio Class Representative and all members of the

2 | Ohio Subclass, within the meaning of Ohio Rev. Code §§4111.01, *et seq.*

3 | 268. The Ohio Minimum Fair Wage Standards Act requires an employer, such as

4 | Defendant Cintas, to pay overtime compensation to all non-exempt employees. Neither the Ohio

5 | Class Representative nor the members of the Ohio Subclass are exempt from overtime pay

6 | requirements under Ohio law and, thus, are entitled to be paid overtime compensation for all

7 | overtime hours worked.

8 |

9 | 269. At all relevant times, Cintas had a policy and practice of failing and refusing to pay

10 | overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours

11 | per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

12 | overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

13 | according to law.

14 |

15 | 270. By failing to pay all overtime compensation due, whether through the failure to

16 | provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

17 | the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

18 | when due, and by failing to provide paid rest periods to the Ohio Class Representative and all

19 | members of the Ohio Subclass, Defendants willfully, knowingly and/or recklessly violated Ohio

20 | wage and hour laws, which require overtime compensation be provided to non-exempt employees

21 | such as Service Sales Representatives.

22 |

23 | 271. As a result of Cintas's failure to pay wages earned and due, and its decision to

24 | withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will

25 | be employed by Cintas in the State of Ohio and/or who were or will be separated from their

26 | respective employment with Cintas, including Plaintiff Wulff and members of the prospective Ohio

27 | Subclass, for work performed at the regular hourly wage rate or at a rate not less than one and one-

28 |

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                    - 82 -

1   half times the regular rate of pay for work performed in excess of forty (40) hours in a work week,

2   Cintas has violated, and continues to violate, Ohio Rev. Code §4111.03(A).

3       272.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

4   exempt Service Sales Representatives employed by Cintas in the State of Ohio, including the Ohio

5   Class Representative and all members of the Ohio Subclass, their respective wage and hour records

6   showing all wages earned and due for all work performed, Cintas has failed to make, keep, preserve,

7   and furnish such records in violation of Ohio Rev. Code §4111.08.

8

9       273.    The Ohio Class Representative, on behalf of himself and all members of the

10  prospective Ohio Subclass, seek damages in the amount of the respective unpaid wages earned and

11  due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular rate

12  of pay for work performed in excess of forty (40) hours in a work week, as provided by Ohio Rev.

13  Code §4111.10(a), and such other legal and equitable relief from Cintas's unlawful and willful

14  conduct as the Court deems just and proper.

15

16      274.    The Ohio Class Representative, on behalf of himself and all members of the

17  prospective Ohio Subclass, seek recovery of attorneys' fees and costs of action to be paid by Cintas,

18  as provided by Ohio Rev. Code §4111.10(a).

19                      **TWENTIETH CLAIM FOR RELIEF**

20                      **[Against Defendants Cintas and Does 11-25]**

21          **Pennsylvania Minimum Wage Act, 43 Pa. Stats. §§333.101, *et seq*., 34 Pa.
            Admin. Code §§231.1, *et seq*.; Pennsylvania Wage Payment and Collection**

22          **Law, 43 Pa. Stats. §§260.1, *et seq*., Brought by Plaintiff Keith Boehm, on
            Behalf of Himself and All Members of the Pennsylvania Subclass)**

23

24      275.    Plaintiff Keith Boehm ("Pennsylvania Class Representative"), on behalf of himself

25  and all members of the Pennsylvania Subclass, realleges and incorporates by reference ¶¶1-274 as if

26  they were set forth again herein.

27

28

1    276.    Plaintiff Keith Boehm brings this action on behalf of the Pennsylvania Subclass

2   because Pennsylvania law provides the Pennsylvania Subclass with certain benefits and protections

3   not accorded under federal law, including the ability to recover withheld overtime wages despite not

4   filing a consent to join the FLSA action and an unqualified three-year statute of limitations.

5
     277.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

6   meaning of 43 Pa. Stats. §§333.101, *et seq.*, 34 Pa. Admin. Code, §§231.1 *et seq.*, and 43 Pa. Stats.

7   §§260.1, *et seq.* At all relevant times, Cintas has employed, and continues to employ, employees,

8   including the Pennsylvania Class Representative and all members of the Pennsylvania Subclass,

9   within the meaning of 43 Pa. Stats. §§333.101, *et seq.*, 34 Pa. Admin. Code, §§231.1 *et seq.*, and 43

10  Pa. Stats. §§260.1, *et seq.*

11
12   278.    The Pennsylvania Minimum Wage Act require an employer, such as Defendant

13  Cintas, to pay overtime compensation to all non-exempt employees. Neither the Pennsylvania Class

14  Representative nor the members of the Pennsylvania Subclass are exempt from overtime pay

15  requirements under Pennsylvania law and, thus, are entitled to be paid overtime compensation for all

16
17  overtime hours worked.

18   279.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay

19  overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours

20  per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

21  overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

22  according to law.

23
24   280.    Under the Pennsylvania Wage Payment and Collection Act, 43 Pa. Stats. §260.5(a),

25  Cintas is obligated to pay to employees who quit, resign or are discharged all wages owed no later

26  than the next regular payday. Section 260.10 provides that if there is no good faith withholding of

27
28

1  wages, the employee shall be entitled to liquidated damages of either 25 percent of the total amount

2  of wages due or $500, whichever is greater.

3      281.    By failing to pay all overtime compensation due, whether through the failure to

4  provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

5

6  the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

7  when due, and by failing to provide paid rest periods to the Pennsylvania Class Representative and

8  all members of the Pennsylvania Subclass, Defendants willfully, knowingly and/or recklessly

9  violated Pennsylvania wage and hour laws, which require overtime compensation be provided to

10  non-exempt employees such as Service Sales Representatives.

11      282.    As a result of Cintas's failure to pay wages earned and due, and its decision to

12  withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will

13  be employed by Cintas in the State of Pennsylvania and/or who were or will be separated from their

14  respective employment with Cintas, including Plaintiff Boehm and members of the prospective

15  respective employment with Cintas, including Plaintiff Boehm and members of the prospective

16  Pennsylvania Subclass, for work performed at the regular hourly wage rate or at a rate not less than

17  one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a

18  work week, Cintas has violated, and continues to violate, 43 Pa. Stat. §333.104(c) and 34 Pa. Admin.

19  Code §231.41.

20

21      283.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

22  exempt Service Sales Representatives employed by Cintas in the State of Pennsylvania, including

23  the Pennsylvania Class Representative and all members of the Pennsylvania Subclass, their

24  respective wage and hour records showing all wages earned and due for all work performed, Cintas

25  has failed to make, keep, preserve, and furnish such records in violation of 43 Pa. Stats. §333.108

26  and 34 Pa. Admin. Code §231.31.

27

28

284.     The Pennsylvania Class Representative, on behalf of himself and all members of the prospective Pennsylvania Subclass, seeks damages in the amount of the respective unpaid wages earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, as provided by 43 Pa. Stats. §260.9a(b) and 43 Pa. Stats. §333.113, and such other legal and equitable relief from Cintas's unlawful and willful conduct as the Court deems just and proper.

285.     The Pennsylvania Class Representative, on behalf of himself and all members of the prospective Pennsylvania Subclass, seeks recovery of attorneys' fees and costs of action to be paid by Cintas, as provided by 43 Pa. Stats. §260.9a(f) and 43 Pa. Stats. §333.113.

### TWENTY-FIRST CLAIM FOR RELIEF

#### [Against Defendants Cintas and Does 11-25]

**(Washington Minimum Wage Act, Wash. Rev. Code §§49.46.005, *et seq*.; Wash. Rev. Code §§49.48.010, *et seq*.; Wash. Rev. Code §§49.52.010, *et seq*.; Wash. Admin. Code § 296-126-001, *et seq*., Brought by Plaintiff Michael Clayton on Behalf of Himself and All Members of the Washington Subclass)**

286.     Plaintiff Michael Clayton ("Washington Class Representative"), on behalf of himself and all members of the Washington Subclass, realleges and incorporates by reference ¶¶1-285 as if they were set forth again herein.

287.     Plaintiff Clayton brings this action on behalf of the Washington Subclass because Washington law provides the Washington Subclass with certain benefits and protections not accorded under federal law, including the ability to recover withheld overtime wages despite not filing a consent to join the FLSA action, the lack of a Motor Carrier Act exemption unless employees are paid overtime pay that is reasonably equivalent to that required by Washington law, and an unqualified three-year statute of limitations.

288.     At all relevant times, Cintas has been, and continues to be, an "employer" within the meaning of Wash. Rev. Code §§49.46.005, *et seq*.; Wash. Rev. Code §§49.48.010, *et seq*.; Wash.

1   Admin. Code §§296-126-001, *et seq.* At all relevant times, Cintas has employed, and continues to

2   employ, employees, including the Washington Class Representative and all members of the

3   Washington Subclass, within the meaning of Wash. Rev. Code §§49.46.005, *et seq.*; Wash. Rev.

4   Code §§49.48.010, *et seq.*; Wash. Admin. Code §§296-126-001, *et seq.*

5

6        289.    The Washington Minimum Wage Act requires an employer, such as Defendant

7   Cintas, to pay overtime compensation to all non-exempt employees. Neither the Washington Class

8   Representative nor the members of the Washington Subclass are exempt from overtime pay

9   requirements under Washington law and, thus, are entitled to be paid overtime compensation for all

10  overtime hours worked.

11       290.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay

12  overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours

13

14  per week, whether through the failure to provide any overtime pay, the denial of premium pay for all

15  overtime hours actually worked, and/or the failure to calculate and pay overtime premiums

16  according to law.

17       291.    Under the Washington Minimum Wage Act, Wash. Rev. Code §49.48.010, Cintas is

18  obligated to pay to employees who quit, resign or are discharged all wages owed no later than the

19  next regular payday. Section 49.52.070 provides that if an employer willful fails to pay an employee

20  all wages, the employer must pay a penalty equal to twice the unpaid wages, and the employee is

21  entitled to attorneys' fees and costs.

22

23       292.    Under Wash. Admin. Code §296-126-092(4), employers are required to provide rest

24  breaks to employees.

25       293.    By failing to pay all overtime compensation due, whether through the failure to

26  provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or

27  the failure to calculate and pay overtime premiums according to law, by failing to pay all wages

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                        - 87 -

1   when due, and by failing to provide paid rest periods to the Washington Class Representative and all

2   members of the Washington Subclass, Defendants willfully, knowingly and/or recklessly violated

3   Washington wage and hour laws, which require overtime compensation be provided to non-exempt

4   employees such as Service Sales Representatives.

5

6       294.    As a result of Cintas's failure to pay wages earned and due, and its decision to

7   withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will

8   be employed by Cintas in the State of Washington and/or who were or will be separated from their

9   respective employment with Cintas, including Plaintiff Clayton and members of the prospective

10  Washington Subclass, for work performed at the regular hourly wage rate or at a rate not less than

11  one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a

12  work week, Cintas has violated, and continues to violate, Wash. Rev. Code §49.46.130(1).

13

14      295.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

15  exempt Service Sales Representatives employed by Cintas in the State of Washington, including the

16  Washington Class Representative and all members of the Washington Subclass, their respective

17  wage and hour records showing all wages earned and due for all work performed, Cintas has failed

18  to make, keep, preserve, and furnish such records in violation of Wash. Rev. Code §49.46.070 and

19  Wash. Admin. Code §296-126-050(1).

20

21      296.    The Washington Class Representative, on behalf of himself and all members of the

22  prospective Washington Subclass, seeks damages in the amount of the respective unpaid wages

23  earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the

24  regular rate of pay for work performed in excess of forty (40) hours in a work week, as provided by

25  Wash. Rev. Code §49.46.090(1), and an equal additional amount as exemplary damages as provided

26  by Wash. Rev. Code §49.52.070, and such other legal and equitable relief from Cintas's unlawful

27  and willful conduct as the Court deems just and proper.

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                            - 88 -

1      297.    The Washington Class Representative, on behalf of himself and all members of the

2   prospective Washington Subclass, seeks recovery of attorneys' fees and costs of action to be paid by

3   Cintas, as provided by Wash. Rev. Code §§49.46.090(1), 49.48.030, 49.52.070.

4                          **TWENTY-SECOND CLAIM FOR RELIEF**

5                          **[Against Defendants Cintas and Does 11-25]**

6                 **(West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code**
7       **§§21-5C-1, *et seq.*; West Virginia Wage Payment and Collection Law, W. Va.**
        **Code §§21-5-1, *et seq.*, Brought by Plaintiff Daniel Alvis on Behalf of Himself**
8                       **and All Members of the West Virginia Subclass)**

9      298.    Plaintiff Daniel Alvis ("West Virginia Class Representative"), on behalf of himself

10   and all members of the West Virginia Subclass, realleges and incorporates by reference ¶¶1-297 as if

11   they were set forth again herein.

12      299.    Plaintiff Daniel Alvis brings this action on behalf of the West Virginia Subclass

13   because West Virginia law provides the West Virginia Subclass with certain benefits and protections

14   not accorded under federal law, including the ability to recover withheld overtime wages despite not

15   

16   filing a consent to join the FLSA action.

17      300.    At all relevant times, Cintas has been, and continues to be, an "employer" within the

18   meaning of W. Va. Code §§21-5-1, *et seq.* and §§21-5C-1, *et seq.*  At all relevant times, Cintas has

19   employed, and continues to employ, employees, including the West Virginia Class Representatives

20   and all members of the West Virginia Subclass, within the meaning of W. Va. Code §§21-5-1, *et*

21   

22   *seq.* and §§21-5C-1, *et seq.*

23      301.    The West Virginia Minimum Wage and Maximum Hours Act requires an employer,

24   such as Defendant Cintas, to pay overtime compensation to all non-exempt employees.  Neither the

25   West Virginia Class Representative nor the members of the West Virginia Subclass are exempt from

26   overtime pay requirements under West Virginia law and, thus, are entitled to be paid overtime

27   compensation for all overtime hours worked.

28

302.    At all relevant times, Cintas had a policy and practice of failing and refusing to pay overtime pay to its Service Sales Representatives for their hours worked in excess of forty (40) hours per week, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums according to law.

303.    Under the West Virginia Wage Payment and Collection Law, W. Va. Code §21-5-4(b), Cintas is obligated to pay to employees who are discharged all wages within seventy-two (72) hours. Under W. Va. Code §21-5-4(c), Cintas is obligated to pay to employees who quit or resign all wages owed no later than the next regular payday, except if the employee gives at least one pay period's notice, in which case the employer must pay all wages at the time of quitting. Section 21-5-4(e) provides that if the employer fails to pay all wages within this time period, the employer must pay a penalty not to exceed 30 days of wages.

304.    By failing to pay all overtime compensation due, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums according to law, by failing to pay all wages when due, and by failing to provide paid rest periods to the West Virginia Class Representative and all members of the West Virginia Subclass, Defendants willfully, knowingly and/or recklessly violated West Virginia wage and hour laws, which require overtime compensation be provided to non-exempt employees such as Service Sales Representatives.

305.    As a result of Cintas's failure to pay wages earned and due, and its decision to withhold wages earned and due, its non-exempt Service Sales Representatives who were, are or will be employed by Cintas in the State of West Virginia and/or who were or will be separated from their respective employment with Cintas, including Plaintiff Daniel Alvis and members of the prospective West Virginia Subclass, for work performed at the regular hourly wage rate or at a rate not less than

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                                          - 90 -

1  one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a

2  work week, Cintas has violated, and continues to violate, W. Va. Code §21-5C-3(a).

3        306.    As a result of Cintas's failure to record, report, credit, and furnish to each of its non-

4  exempt Service Sales Representatives employed by Cintas in the State of West Virginia, including

5  the West Virginia Class Representative and all members of the West Virginia Subclass, their

6  respective wage and hour records showing all wages earned and due for all work performed, Cintas

7  has failed to make, keep, preserve, and furnish such records in violation of W. Va. Code §21-5-9(6)

8  and §21-5C-5.

9

10       307.    The West Virginia Class Representative, on behalf of himself and all members of the

11  prospective West Virginia Subclass, seeks damages in the amount of the respective unpaid wages

12  earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the

13  regular rate of pay for work performed in excess of forty (40) hours in a work week, as provided by

14  W. Va. Code §21-5C-8(a) and §21-5-12(a), and such other legal and equitable relief from Cintas's

15  unlawful and willful conduct as the Court deems just and proper.

16

17       308.    The West Virginia Class Representative, on behalf of himself and all members of the

18  prospective West Virginia Subclass, seeks recovery of attorneys' fees and costs of action to be paid

19  by Cintas, as provided by W. Va. Code §21-5C-8(c) and §21-5-12(b).

20

21                              **PRAYER FOR RELIEF**

22       WHEREFORE, Plaintiffs on behalf of themselves and all members of the proposed Class and

23  Subclasses pray for relief as follows:

24       A.    Certification of this action as a class action on behalf of the proposed Class and the

25  California, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, New Jersey,

26  New Mexico, New York, Ohio, Pennsylvania, Washington and West Virginia Subclasses,

27  respectively;

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                          - 91 -

1       B.     Designation of this action as a collective action on behalf of the proposed Nationwide

2 FLSA Collective Plaintiffs (asserting FLSA claims) and prompt issuance of notice pursuant to 29

3 U.S.C. §216(b) to all similarly situated members of the FLSA Opt-In Class, apprising them of the

4 pendency of this action, and permitting them to assert timely FLSA claims in this action by filing

5 individual Consent to Sue forms pursuant to 29 U.S.C. §216(b), and a tolling of the statute of

6 limitations on the claims of all members of the FLSA Opt-In Class from the date the original

7 complaint was filed until the class members are provided with reasonable notice of the pendency of

8 this action and a fair opportunity to exercise their right to opt in as plaintiffs.

9       C.     Designation of Litigating Plaintiffs as representatives of the Nationwide FLSA

10 Collective Plaintiffs; designation of Plaintiffs as representatives of the ERISA Class; designation of

11 Plaintiff Chris McArdle as representatives of the California Subclass; designation of Plaintiff John

12 Liss as representative of the Illinois Subclass; designation of Plaintiff Bruce Brandt as representative

13 of the Indiana Subclass; designation of Plaintiff Joe Ashcraft as representative of the Kentucky

14 Subclass; designation of Plaintiff Rebecca Brown as representative of the Maryland Subclass;

15 designation of Plaintiff Craig Kane as representative of the Massachusetts Subclass; designation of

16 Plaintiffs Dennis Fedor and Daniel Peterson as representatives of the Minnesota Subclass;

17 designation of Plaintiff Drew Fuehring as representative of the Missouri Subclass; designation of

18 Plaintiffs Wayne Edwards, Wilfredo Huertas Jr. and Derek Samuels as representatives of the New

19 Jersey Subclass; designation of Plaintiff Joel Rogers as representative of the New Mexico Subclass;

20 designation of Plaintiff Mark Sperota as representative of the New York Subclass; designation of

21 Plaintiff James Wulff as representative of the Ohio Subclass; designation of Plaintiff Keith Boehm

22 as representative of the Pennsylvania Subclass; designation of Plaintiff Michael Clayton as

23 representative of the Washington Subclass; and designation of Plaintiff Daniel Alvis as

24 representative of the West Virginia Subclass.

25       D.    For the ERISA claims:

26          (1)    Declaration that Defendant Cintas has violated Section 209(a) of ERISA, 29

27 U.S.C. § 1129(a);

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                         - 92 -

1    (2)  Appropriate equitable and injunctive relief to remedy Cintas's violations of

2 Section 209(a) of ERISA;

3    (3)  A declaration that Defendants have breached their fiduciary duties by failing

4 to credit the Plaintiffs and all Class members with hours of service for all work performed, as

5 required by ERISA and under the terms of the Cintas Partners' Plan;

6    (4)  An order requiring defendants to remedy their breaches of fiduciary duty by

7 crediting all Class members with hours of service for all of their past, present, and future

8 uncompensated work through proper allocations and/or further contributions to the Cintas Partners'

9 Plan;

10    (5)  Such other relief as the Court may deem just and proper; and

11    (6)  Attorneys' fees and costs of suit;

12  E.  For the claims other than those brought under ERISA:

13    (1)  A declaratory judgment that the practices complained of herein are unlawful

14 under the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.*; California Labor Code §§1194, *et seq.*

15 and Wage Orders Nos. 4 and/or 7; California Business & Professions Code §17200, *et seq.*; the

16 Colorado Wage Claim Act, Colo. Rev. Stat. §§8-4-100, *et seq.*, Illinois Minimum Wage Law, 820

17 Ill. Comp. Stat. §§105/1, *et seq.*; the Indiana Minimum Wage Law of 1965, Ind. Stat. §§22-2-2-1, *et*

18 *seq.*; Kentucky Minimum Wage Law, Ky. Rev. Stat. §§337.010, *et seq.*; 803 Ky. Admin. Regs.

19 1:005, *et seq.*; Maryland Wage and Hour Law, Md. Lab. & Emp. Code §§3-401, *et seq.*;

20 Massachusetts Minimum Fair Wages Law, Mass. Gen. Laws, ch. 151, §§1, *et seq.*; Minnesota Fair

21 Labor Standards Act, Minn. Stat. §§177.21, *et seq.*; Missouri Wage and Hour Law, Mo. Rev. Stat.

22 §§290.500, *et seq.*; New Jersey Wage and Hour Law, N.J. Stat. §§34:11-56(a) *et seq.*; New Mexico

23 Minimum Wage Act, N.M. Stat. §§50-4-19, *et seq.*; New York Minimum Wage Act, N.Y. Lab. Law

24 Stat. §§160, *et seq.*; Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §§4111.01, *et seq.*;

25 Pennsylvania Minimum Wage Act, 43 Pa. Stats. §§333.101, *et seq.* and 34 Pa. Admin. Code

26 §§231.1, *et seq.*; Washington Minimum Wage Act, Wash. Rev. Code §§49.46.005, *et seq.*; Wash.

27 Rev. Code §§49.48.010, *et seq.*;  Wash. Rev. Code §§49.52.010, *et seq.*; Wash. Admin. Code § 296-

28

1  126-001, *et seq.*; and West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §§21-

2  5C-1, *et seq.*

3              (2)      An injunction against Cintas and its officers, agents, successors, employees,

4  representatives, and any and all persons acting in concert with it, as provided by law, from engaging

5  in each of the unlawful practices, policies, and patterns set forth herein;

6        F.      An award of damages, including liquidated and exemplary damages and waiting time

7  penalties and other statutory penalties to be paid by Cintas;

8        G.      Costs of action incurred herein, including reasonable attorneys' fees and expert fees;

9        H.      Pre-Judgment and post-Judgment interest, as provided by law; and

10        I.      Such other and further legal and equitable relief as this Court deems necessary, just,

11  and proper.

12                        **DEMAND FOR JURY TRIAL**

13        Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which

14  they have a right to jury trial.

15  DATED: February 28, 2006                    LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
16                                              THEODORE J. PINTAR
                                                STEVEN W. PEPICH
17                                              JAMES A. CAPUTO
                                                LAWRENCE A. ABEL
18                                              HELEN I. ZELDES

19

20                                                    s/ STEVEN W. PEPICH
                                                     STEVEN W. PEPICH
21
                                                655 West Broadway, Suite 1900
22                                              San Diego, CA  92101
                                                Telephone:  619/231-1058
23                                              619/231-7423 (fax)

24                                              LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
25                                              ALBERT H. MEYERHOFF
                                                9601 Wilshire Blvd., Suite 510
26                                              Los Angeles, CA  90210
                                                Telephone:  310/859-3100
27                                              310/278-2148 (fax)

28                                              LERACH COUGHLIN STOIA GELLER
   SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
   C-03-1180-SBA                                                          - 94 -

| | |
|---|---|
| 1 | RUDMAN & ROBBINS LLP |
| | NANCY M. JUDA |
| 2 | 1100 Connecticut Avenue, N.W., Suite 730 |
| | Washington, DC 20036 |
| 3 | Telephone: 202/822-6762 |
| | 202/828-8528 (fax) |
| 4 | |
| | ALTSHULER, BERZON, NUSSBAUM, |
| 5 | RUBIN & DEMAIN |
| | MICHAEL RUBIN |
| 6 | SCOTT A. KRONLAND |
| | 177 Post Street, Suite 300 |
| 7 | San Francisco, CA 94108 |
| | Telephone: 415/421-7151 |
| 8 | 415/362-8064 (fax) |
| 9 | TRABER & VOORHEES |
| | THERESA M. TRABER |
| 10 | VANESSA H. EISEMANN |
| | JOCELYN S. SPERLING |
| 11 | 128 No. Fair Oaks Avenue, Suite 204 |
| | Pasadena, CA 91103 |
| 12 | Telephone: 626/585-9611 |
| | 626/577-7079 (fax) |
| 13 | |
| | Attorneys for Plaintiffs |
| 14 | |

S:\Cases\SD\Cintas\SECOND AMENDED COMPLAINT.doc

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
C-03-1180-SBA                                                                 - 95 -

| | |
|---|---|
| 1 | CERTIFICATE OF SERVICE |
| 2 | I hereby certify that on February 28, 2006, I electronically filed the foregoing with the Clerk |
| 3 | of the Court using the CM/ECF system which will send notification of such filing to the e-mail |
| 4 | addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have |
| 5 | mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF |
| 6 | participants indicated on the attached Manual Notice List. |
| 7 | I further certify that I caused this document to be forwarded to the following designated |
| 8 | Internet site at: http://securities.lerachlaw.com/. |

s/ STEVEN W. PEPICH
STEVEN W. PEPICH

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail: Spepich@lerachlaw.com

- 1 -

EXHIBIT  9

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

PAUL VELIZ, et al, On behalf of
Themselves and All Others Similarly
Situated.

          Plaintiffs,

    vs.

CINTAS CORPORATION, an Ohio
corporation; PLAN ADMINISTRATOR for
the Cintas Partners' Plan; and DOES 1-25,
inclusive,

          Defendants.

_____/

No. C 03-1180 SBA

NOTICE OF COLLECTIVE ACTION

To:    All persons who have worked for Cintas Corporation as Service Sales Representatives, Commission Route Salespersons, Commission Route Sales Representatives, Route Drivers and Other Persons Performing a Service and/or Delivery Function on a Non-Hourly Basis ("Route Drivers")

Re:    Fair Labor Standards Act Lawsuit Filed Against Cintas Corporation

1.  INTRODUCTION

This Notice is to inform you about a lawsuit in which the plaintiffs allege that you are "similarly situated" to the named plaintiffs, to advise you of how your rights may be affected by this lawsuit, and to instruct you on the procedure for participating in this lawsuit, if you decide that it is appropriate and if you choose to do so.

2.  DESCRIPTION OF THE LAWSUIT

On March 19, 2003, fifteen (15) individual plaintiffs filed a complaint in the U.S. District Court for the Northern District of California against Cintas Corporation ("Cintas"). On May 19, 2003, those and other individuals filed an amended complaint on behalf of themselves and all other past and present employees of Cintas who have worked as Route Drivers. The amended complaint alleges that past and present Cintas Route Drivers are entitled to overtime pay under the federal Fair Labor Standards Act ("FLSA").

The lawsuit alleges that Cintas violated the FLSA by failing to pay Route Drivers overtime for work performed in excess of forty (40) hours per week. Plaintiffs allege that they are entitled to recover unpaid overtime for such work performed after March 19, 2000. Plaintiffs also seek an additional equal amount as liquidated damages, as well as attorneys' fees and costs. This litigation is currently in the early pretrial stage.

Cintas denies plaintiffs' allegations and maintains that plaintiffs are exempt from the overtime provisions of the FLSA.

3.  PERSONS ELIGIBLE TO RECEIVE THIS NOTICE

The U.S. District Court has ordered this FLSA Notice to be distributed to:

All persons who work or have worked for Cintas as

(A) Service Sales Representatives, Commission Route Salespersons, Commission Route Sales Representatives, Route Drivers or other persons performing a service and/or delivery function on a non-hourly basis anywhere in the United States at any time from March 2000 to the present;

(B) Such persons shall not include: (1) persons who, as part of their duties, cross state lines to make deliveries; or (2) persons who as part of their duties operate a vehicle with an average gross weight in excess of 10,000 pounds in interstate commerce;

(C) Nor shall such persons include persons who work or have worked for Cintas as Service Training Coordinators unless before such person worked for Cintas as a Service Training Coordinator, such person otherwise qualified as a collective action member under (A) and (B) above.

4.  CINTAS ROUTE DRIVERS IN CALIFORNIA

If you worked for Cintas in California between May 14, 1997 and June 1, 2002, your ability to pursue an FLSA overtime claim in this lawsuit depends on whether you opted out of a class-wide settlement agreement between Cintas and Route Drivers regarding overtime payments. That settlement was approved by the Los Angeles Superior Court on February 5, 2003. If you did not opt out of that settlement, you do not have a claim for FLSA overtime payments for the time period covered by it. That settlement does *not* affect any California Route Driver's rights to challenge Cintas' overtime practices after June 1, 2002.

5.  YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you worked as a Cintas Route Driver during the relevant time period discussed above and believe that Cintas has failed to pay you all overtime compensation to which you are entitled, you have the right to make an FLSA claim against Cintas in this lawsuit. To do so, you must complete, sign and mail the enclosed Consent to Sue form to plaintiffs' counsel so that it is received on or before October 21, 2004. It is entirely your own decision whether to join this lawsuit. You are not required to take any action unless you so desire.

6.  ARBITRATION OR COURT

On April 5, 2004, the U.S. District Court ruled that the majority of Cintas Route Drivers who join this lawsuit must arbitrate their overtime claims before the American Arbitration Association ("AAA") while others may continue to litigate their overtime claims in court. If you join this lawsuit by filing a timely Consent to Sue as described above, the Court will decide whether your claims will proceed in arbitration or before the court. Your rights under the FLSA will be the same whether you arbitrate before the AAA or litigate before the federal court.

You will be required to arbitrate your overtime claim against Cintas before one or more AAA arbitrators *unless*: (1) you did not sign an arbitration agreement with Cintas; (2) your employment is governed by a collective bargaining agreement and not an individual employment agreement; (3) you worked for Cintas in Arkansas or any other state where the Court later finds Cintas' arbitration agreements to be legally unenforceable; or (4) you later demonstrate to the Court that the circumstances of your signing the arbitration agreement were unconscionable.

The U.S. District Court also made several rulings regarding the enforceability of certain terms in some of Cintas' employment arbitration clauses. The "loser-pays" provision in the 1996 version was found unconscionable and unenforceable. Provisions in the 1996, 1999, 2001, and 2002 arbitration clauses that (1) limit claims and recovery to one year, or (2) fail to guarantee prevailing claimants' statutory right to recover attorneys' fees and costs, were found unconscionable and unenforceable under the laws of California, Colorado, Connecticut, Maryland, Michigan, New Jersey, New York and North Carolina and under the laws of the Second, Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh Circuit Courts of Appeal. The enforceability of these same clauses with respect to claimants who worked for Cintas in Illinois, Indiana, and Missouri will be decided by the arbitrator[s]. The Court has not yet considered this issue for other states.

Whether plaintiffs' overtime claims proceed on a class-action and/or collective basis rather than an individual basis will be decided: (1) by the U.S. District Court for those Route Drivers who are permitted to litigate their overtime claims in court; and (2) by the arbitrator[s], with a right of review to the U.S. District Court, for those Route Drivers who arbitrate their overtime claims before the AAA.

7.  EFFECT OF JOINING THIS SUIT

If you choose to join this lawsuit, you will be bound by the judgment on any claim you may have under the FLSA, whether favorable or unfavorable. While this lawsuit is proceeding, you may be required to respond under oath to written questions and/or to testify.

8.  NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose *not* to join this lawsuit, you will not be affected by the judgment, favorable or unfavorable, on any of the claims brought under the FLSA that are alleged in this action. If you do not file a Consent to Sue form, you will not receive any back overtime wages or other relief from the case if the plaintiffs prevail on their FLSA claims. Recovery under the FLSA would be obtainable by you *only* if you file your own lawsuit within the time provided by law and you prevail on your claims. Claims for overtime under the FLSA must be filed, if at all, within two years after a wage violation (or within three years if the violation was willful as defined by law). Any claims for overtime pay under federal law not filed within these time limits are likely to be denied as untimely.

Choosing *not* to sign and submit a Consent to Sue form will not affect your eligibility, if any, to recover overtime compensation under state law.

9.  NO RETALIATION PERMITTED

Federal law prohibits Cintas from taking adverse action against persons who have exercised their rights under the FLSA to participate in this lawsuit.

10. YOUR LEGAL REPRESENTATION IF YOU JOIN

If you choose to join this suit, your interests will be represented by the named plaintiffs through their attorneys, as counsel for the proposed class.  Counsel for the proposed class are:

| | | |
|---|---|---|
| Theodore J. Pintar | Michael Rubin | Theresa M. Traber |
| Steven W. Pepich | Scott A. Kronland | Vanessa Eisemann |
| LERACH, COUGHLIN, STOIA | Eileen B. Goldsmith | TRABER & VOORHEES |
| & ROBBINS, LLP | ALTSHULER, BERZON, NUSSBAUM, | 128 No. Fair Oaks Avenue, Suite 204 |
| 401 B Street, Suite 1700 |   RUBIN & DEMAIN | Pasadena, CA 91103 |
| San Diego, CA 92101 | 177 Post Street, Suite 300 | Telephone: 626-585-9611 |
| Telephone: 619-231-1058 | San Francisco, CA 94108 | Fax 626-577-7079 |
| Fax 619-231-7423 | Telephone: 415-421-7151 | |
| | Fax 415-362-8064 | |

11. FURTHER INFORMATION

For further information about this suit, you may contact a representative of plaintiffs' counsel at the following toll-free number: 800-851-7783.

12. CONCLUSION

THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, THE HONORABLE SAUNDRA BROWN ARMSTRONG, UNITED STATES DISTRICT JUDGE.

THE COURT HAS MADE NO DECISION IN THIS CASE ABOUT THE MERITS OF PLAINTIFFS' CLAIMS OR OF DEFENDANTS' DEFENSES.

United States District Judge

This page intentionally left blank.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL VELIZ, et al.,

        Plaintiffs,

    v.

Cintas Corporation, et al.,

        Defendants.

_____ /

No. C 03-1180 SBA

NOTICE OF COLLECTIVE ACTION

To:     All persons who, as part of their duties for Cintas Corporation, cross state lines to make deliveries or operate a vehicle in excess of 10,000 pounds in interstate commerce, and who previously worked as a Service Sales Representative, Commission Route Salesperson, Commission Route Sales Representative, Route Driver or other person performing a service and/or delivery function on a nonhourly basis anywhere in the United States at any time from March 2000 to the present, and during part of that time did not cross state lines to make deliveries or operate a vehicle in excess of 10,000 pounds in interstate commerce:

Re:     Fair Labor Standards Act Lawsuit Filed Against Cintas Corporation

1.    INTRODUCTION

This Notice is to inform you about a lawsuit in which the plaintiffs allege that you are "similarly situated" to the named plaintiffs, to advise you of how your rights may be affected by this lawsuit, and to instruct you on the procedure for participating in this lawsuit, if you decide that it is appropriate and if you choose to do so.

2.    DESCRIPTION OF THE LAWSUIT

On March 19, 2003, fifteen (15) individual plaintiffs filed a complaint in the U.S. District Court for the Northern District of California against Cintas Corporation ("Cintas"). On May 19, 2003, those and other individuals filed an amended complaint on behalf of themselves and all other past and present employees of Cintas who have worked as Route Drivers. The amended complaint alleges that past and present Cintas Route Drivers are entitled to overtime pay under the federal Fair Labor Standards Act ("FLSA").

The lawsuit alleges that Cintas violated the FLSA by failing to pay Route Drivers overtime for work performed in excess of forty (40) hours per week. Plaintiffs allege that they are entitled to recover unpaid overtime for such work performed after March 19, 2000. Plaintiffs also seek an additional equal amount as liquidated damages, as well as attorneys' fees and costs. This litigation is currently in the early pretrial stage.

Cintas denies plaintiffs' allegations and maintains that plaintiffs are exempt from the overtime provisions of the FLSA.

3.    PERSONS ELIGIBLE TO RECEIVE THIS NOTICE

The U.S. District Court has ordered this FLSA Notice to be distributed to:

All persons who, as part of their duties for Cintas Corporation, cross state lines to make deliveries or operate a vehicle in excess of 10,000 pounds in interstate commerce, and who previously worked as a Service Sales Representative, Commission Route Salesperson, Commission Route Sales Representative, Route Driver or other person performing a service and/or delivery function on a non-hourly basis anywhere in the United States at any time from March 2000 to the present and during part of that time did not cross state lines to make deliveries or operate a vehicle in excess of 10,000 pounds in interstate commerce.

4.    CINTAS ROUTE DRIVERS IN CALIFORNIA

If you worked for Cintas in California between May 14, 1997 and June 1, 2002, your ability to pursue a FLSA overtime claim in this lawsuit depends on whether you opted out of a class-wide settlement agreement between Cintas and Route Drivers regarding overtime payments. That settlement was approved by the Los Angeles Superior Court on February 5, 2003. If you did not opt out of the settlement, you do not have a claim for FLSA overtime payments for the time period covered by it. That settlement does *not* affect any California Route Driver's rights to challenge Cintas' overtime practices after June 1, 2002.

1

5.  YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit in the description in paragraph number three (3) above, and if you believe that Cintas has failed to pay you all overtime compensation to which you are entitled, you may have the right to make a FLSA claim against Cintas in this lawsuit. To do so, you must complete, sign, and mail the enclosed Consent to Sue Form to plaintiffs' counsel so that it is received on or before January 14, 2005. It is entirely your own decision whether to join this lawsuit. You are not required to take any action unless you so desire.

6.  ARBITRATION OR COURT

On April 5, 2004, the U.S. District Court ruled that the majority of Cintas Drivers who join this lawsuit must arbitrate their overtime claims before the American Arbitration Association ("AAA") while others may continue to litigate their overtime claims in court. If you join this lawsuit, by filing a timely Consent to Sue as described above, the Court will decide whether your claims will proceed in arbitration or before the court. Your rights under the FLSA will be the same whether you arbitrate before the AAA or litigate before the federal court.

You will likely be required to arbitrate your overtime claim against Cintas before one or more AAA arbitrators *unless*: (1) you did not sign an arbitration agreement with Cintas; (2) your employment is governed by a collective bargaining agreement and not an individual employment agreement; (3) you worked for Cintas in Arkansas or any other state where the Court later finds Cintas' arbitration agreements to be legally unenforceable; or (4) you later demonstrate to the Court that the circumstances of your signing the arbitration agreement were unconscionable.

The U.S. District Court also made several rulings regarding the enforceability of certain terms in some of Cintas' employment arbitration clauses. The "loser-pays" provision in the 1996 version was found unconscionable and unenforceable. Provisions in the 1996, 1999, 2001, and 2002 arbitration clauses that (1) limit claims and recovery to one year, or (2) fail to guarantee prevailing claimants' statutory right to recover attorneys' fees and costs, were found unconscionable and unenforceable under the laws of California, Colorado, Connecticut, Maryland, Michigan, New Jersey, New York, and North Carolina and under the laws of the Second, Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh Circuit Courts of Appeal. The enforceability of these same clauses with respect to claimants who worked for Cintas in Illinois, Indiana, and Missouri will be decided by the arbitrator[s]. The Court has not yet considered this issue for other states.

Whether plaintiffs' overtime claims proceed on a class-action and/or collective basis rather than an individual basis will be decided: (1) by the U.S. District Court for those Route Drivers who are permitted to litigate their overtime claims in court; and (2) by the arbitrator[s], with a right of review to the U.S. District Court, for these Route Drivers who arbitrate their overtime claims before the AAA.

7.  EFFECT OF JOINING THIS SUIT

If you choose to join this lawsuit, you will be bound by the judgment on any claim you may have under the FLSA, whether favorable or unfavorable. While this lawsuit is proceeding, you may be required to respond under oath to written questions and/or to testify.

8.  NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose *not* to join this lawsuit, you will not be affected by the judgment, favorable or unfavorable, on any of the claims brought under the FLSA that are alleged in this action. If you do not file a Consent to Sue form, you will not receive any back overtime wages or other relief from the case if the plaintiffs prevail on their FLSA claims. Recovery under the FLSA would be obtainable by you *only* if you file your own lawsuit within the time provided by law and you prevail on your claims. Claims for overtime under the FLSA must be filed, if at all, within two years after a wage violation (or within three years if the violation was willful as defined by law). Any claims for overtime pay under federal law not filed within these time limits are likely to be denied as untimely.

Choosing *not* to sign and submit a Consent to Sue form will not affect your eligibility, if any, to recover overtime compensation under state law.

9.  NO RETALIATION PERMITTED

Federal law prohibits Cintas from taking adverse actions against persons who have exercised their rights under the FLSA to participate in this lawsuit.

10.  YOUR LEGAL REPRESENTATION IF YOU JOIN

If you choose to join the suit, your interests will be represented by the named plaintiffs through their attorneys, as counsel for the proposed class. Counsel for the proposed class are:

| | | |
|---|---|---|
| Theodore J. Pintar | Michael Rubin | Theresa M. Traber |
| Steven W. Pepich | Scott A. Kronland | Vanessa Eisemann |
| LERACH COUGHLIN STOIA | Eileen B. Goldsmith | TRABER & VOORHEES |
| & ROBBINS LLP | ALTSHULER, BERZON, NUSSBAUM | 128 No. Fair Oaks Avenue, Suite |
| 401 B Street, Suite 1700 | RUBIN & DEMAIN | 204 |
| San Diego, CA 92101 | 177 Post Street, Suite 300 | Pasadena, CA 91103 |
| Telephone: 619-231-1058 | San Francisco, CA 94108 | Telephone: 626-585-9611 |
| Fax: 619-231-7423 | Telephone: 415-421-7151 | Fax: 626-577-7079 |
| | Fax: 415-362-8064 | |

11.  FURTHER INFORMATION

For further information about this suit, you may contact a representative of plaintiffs' counsel at the following toll-free number: 1-800-851-7783.

12.  DEADLINE

**Your notice of consent (enclosed) must be post-marked by January 14, 2005 or you may not be allowed to join the lawsuit.** You must file a notice of consent in order to be eligible to receive unpaid overtime wages if plaintiffs prevail in this lawsuit. If you have already filed a consent to sue form, you do not need to file another one at this time.

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, THE HONORABLE SAUNDRA BROWN ARMSTRONG, UNITED STATES DISTRICT JUDGE.**

**THE COURT HAS MADE NO DECISION IN THIS CASE ABOUT THE MERITS OF PLAINTIFFS' CLAIMS OR OF DEFENDANTS' DEFENSES.**

Dated: November 12, 2004

/s/ Saundra Brown Armstrong
SAUNDRA BROWN ARMSTRONG
United States District Judge

THIS PAGE IS INTENTIONALLY LEFT BLANK

# EXHIBIT 10

E-FILED

1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  PAUL VELIZ, et al.,                                    No. C 03-1180 SBA

10            Plaintiffs,                                 **ORDER**

11      v.                                                [Docket No. 45]

12  Cintas Corporation, et al.,

13            Defendants.
                                            /
14

15      This matter comes before the court on the motion of Cintas Corporation ("Cintas") to compel

16  arbitration. Having read and considered the arguments presented by the parties in the papers submitted to the

17  Court, and the arguments presented by counsel at the December 16, 2003 hearing, the Court hereby GRANTS

18  in part and DENIES in part Cintas' Motion to Compel Arbitration [Docket No. 45]

19                              **INTRODUCTION**

20      Whether or not the Court must compel Plaintiffs to arbitrate their employment grievances against Cintas

21  requires a three-step analysis. The first step is to determine whether Plaintiffs are exempt from arbitration under

22  the FAA § 1, which provides that the employment contracts of "seamen, railroad employees, and other

23  workers in interstate and foreign commerce" are not arbitrable under the FAA. As discussed in Section II,

24  Plaintiffs do not fall within this exception.

25      The second step is to determine whether Plaintiffs' employment agreements are unconscionable. This

26  requires a review of each agreement under the contract laws of the state in which each Plaintiff signed his

27  agreement. As discussed in Section III, the employment agreement is unconscionable under Arkansas law.

28  While it is a close call whether it is unconscionable under California law, the Court finds that it is enforceable.

United States District Court
For the Northern District of California

1    The Court further finds that in the remaining states, it is also enforceable. There are some exceptions because

2    of the circumstances in which certain Plaintiffs were oppressed into signing the Agreements.

3        The third step is to determine whether the Plaintiffs who signed collective bargaining agreements

4    ("CBAs") as part of their employment should be compelled to arbitrate. Generally, the Supreme Court favors

5    arbitration, as do federal and state statutes. However, in the context of CBAs, because it is a union and not

6    the individual employee bargaining away certain rights, the CBA must state in clear and unmistakable terms that

7    the right to litigate the statutory claim is being waived in favor of arbitration. Under this third step, the CBA

8    appears unclear because of conflicting terms. The Court will not compel employees who signed the CBA to

9    arbitrate when on its face the agreement is unclear as to whether it applies to them.

10                        **I. BACKGROUND**

11        This case involves over 60 plaintiffs who work or have worked for Cintas Corporation ("Cintas") in

12    the position of Sales Service Representatives ("SSRs"). SSRs drive from Cintas customer to Cintas

13    customer, delivering items such as uniforms, picking-up dirty uniforms for cleaning, restocking other

14    supplies, and (to varying and controverted degrees) selling additional products. Cintas classifies these

15    SSRs as exempt employees. Exempt employees are not entitled to overtime pay. Plaintiffs allege that

16    Cintas' classification violates the Fair Labor Standards Act ("FLSA") and other statutes; that they are not

17    exempt employees; and that they are entitled to overtime pay. How Plaintiffs are classified affects not only

18    overtime pay, but their ERISA benefits as well. Plaintiffs bring this action challenging Cintas' practice.

19        As part of their employment agreements, Plaintiffs signed an arbitration clause that provides the

20    choice of law as the Federal Arbitration Act (the "FAA") and the law of the state in which the employee

21    worked for Cintas.

22        In November the Court reviewed several motions filed by the parties in this case. Two of the more

23    substantive motions were Plaintiffs' Motion for Preliminary Certification of the Class for Facilitated Notice

24    and Defendant's Motion to Compel Arbitration. In its opposition to Plaintiff's Motion for Facilitated

25    Notice, Cintas argued that at least some of the SSRs were not entitled to overtime payment under the

26    FLSA because they transported goods in commerce, which meant that they fell under the Motor Carriers

27    Act ("MCA"). At the same time, Cintas was attempting to compel the Plaintiff SSRs to arbitrate the

28

United States District Court
For the Northern District of California

2

United States District Court

For the Northern District of California

1   underlying dispute. Plaintiffs pointed out, however, that if the SSRs did indeed transport goods in interstate

2   commerce, then they arguably fell outside the FAA and could not be compelled to arbitrate. This is

3   because the FAA exempts from arbitration contracts that govern "transportation workers" engaged in

4   interstate commerce.

5       The Court ordered supplemental briefing regarding this issue.

6   ## II. THE FEDERAL ARBITRATION ACT § 1 EXEMPTION

7       FAA § 1 exempts from coverage all "contracts of employment of seamen, railroad employees, or

8   any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court

9   last reviewed the exemption in Circuit City Stores Inc. v. Adams, 532 U.S. 105, 110 (2001). In Circuit

10  City, the Court reviewed the phrase "any other class of workers engaged in foreign or interstate commerce"

11  to determine the scope of that exemption. The Court determined that the phrase does not refer to all

12  workers in foreign or interstate commerce, but rather only "transportation workers." Circuit City, 532 U.S.

13  at 112. It defined "transportation workers," as "those workers actually engaged in the movement of goods

14  in interstate commerce." Id. at 112 (internal quotations and citations omitted). Because the term

15  "transportation workers" was not at issue, the Supreme Court did not illuminate what characteristics it

16  considered necessary for an employee to be a transportation worker – e.g. to what degree must the

17  employee's duties involve transportation? To what degree must the employer's industry be related to

18  transportation? To what degree must the term "transportation worker" be limited to one who delivers the

19  products of third-parties on behalf of his employer (such as a courier) and to what degree may it include

20  one who delivers the products of his employer as well?

21      In the case at hand, this Court must answer two questions. First, under the FAA, what

22  characteristics make a worker a "transportation worker"? Second, do the SSRs have these

23  characteristics?

24      Cintas argues for an extremely narrow definition of "transportation worker." Under Cintas' theory,

25  a "transportation worker" is an employee for an enterprise which is itself in the business of transporting

26  goods, owned by third parties or the general public (i.e., not owned by the employer), for delivery to other

27  third-parties. Thus, under Cintas' theory, the defining characteristic for a "transportation worker" is that the

28

3

1    worker is employed by a courier or other delivery service. For example, a postal worker would be a

2    transportation worker because "[i]f any workers are 'actually engaged in interstate commerce,' the [ ]

3    postal workers are. They are responsible for dozens, if not hundreds, of items of mail moving in 'interstate

4    commerce' on a daily basis. Indeed, without them 'interstate' commerce as we know it today would

5    scarcely be possible." American Postal Workers Union, AFL-CIO v. United States Postal Service, 823

6    F.2d 466, 473 (11th Cir. 1987).

7         Unsurprisingly, Plaintiffs argue for a much broader definition. Plaintiffs rely on the enumerated

8    categories of employees in the FAA exemption to argue that a transportation worker is one who has the

9    same characteristics as a seaman or railroad employee. Under the FAA, seamen are the class of

10   employees who work on board a vehicle or vessel in the flow of commerce and perform job duties that

11   contribute to the employer's mission in operating that vehicle or vessel. Railroad employees perform any of

12   a number of different job functions for companies transporting goods or people in commerce. Under

13   Plaintiffs' theory, transportation workers are any workers who contribute to the employer's mission by

14   operating a vehicle in interstate commerce or performing any of a number of different job functions for

15   companies that transport goods or people in commerce. Conceivably, though Plaintiffs have not admitted

16   as much, this broad definition could include every employee from a trucker for a grocery store to a pizza

17   deliveryman.

18   **A.    The FAA Exemption Must Be Narrowly Construed**

19         Circuit City mandates that the § 1 exemption be narrowly construed. Circuit City, 532 U.S. at

20   119. This is because policy strongly favors arbitration. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S.

21   20, 25 (1991) (noting that the FAA manifests a liberal federal policy favoring arbitration agreements); Volt

22   Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989).

23   Courts examining the FAA § 1 exemption both before and after Circuit City consistently have held the

24   same. "Consistent with Congressional intent that the FAA be broad in scope, the exemption was intended

25   to be a narrow one...." Gadsen Budweiser, 807 S.2d 528, 531 (Ala. 2001) (applying Circuit City). "The

26   history of the treatment of the Arbitration Act in the Supreme Court of the United States reflects a clear

27   disposition to liberalize and expand its application." Asplundh Tree Expert Co. v. Bates, 71 F.3d 592, 601

-28

4

United States District Court

For the Northern District of California

1  (6th Cir. 1995).

2      One of the reasons the exemption must be narrowly construed is that at the time that the Arbitration

3  Act was first enacted, the concept of Congressional power over activities which affected interstate

4  commerce had not developed to the extent to which it has since. Tenney Engineering Inc. v United

5  Electrical Radio & Machine Workers of America Local 437, 207 F.2d. 450, 453 (3d Cir. 1953). Thus,

6  the phrase "workers engaged in foreign or interstate commerce" must be understood within the meaning

7  which Congress in 1925 intended to give the phrase. Aspludnh Tree Expert, 71 F.3d at 599.

8  **B.**    **Seamen and Railroad Employees**

9      In 1925, Congress had the power over the activities of seamen and railroad employees. Thus,

10  seamen and railroad employees provide a helpful analogy for determining the necessary characteristics of a

11  transportation worker. As the Court in Circuit City stated, the phrase "engaged in foreign or interstate

12  commerce" must be read to "give effect to the terms 'seamen' and 'railroad employees,' and should itself

13  be controlled and defined by reference to the enumerated categories of workers which are recited just

14  before it." Circuit City v. Adams, 532 U.S. at 115. Moreover, as one court explained in reviewing the

15  legislative history, the reference to seamen, railroad employees or any other class of workers engaged in

16  foreign or interstate commerce suggests that, "Congress intended to refer to workers engaged in commerce

17  *in the same way* that seaman and railroad workers are." DiCrisci v. Lyndon Guar. Bank, 807 F.Supp.

18  947, 953 (W.D.N.Y. 1992) (emphasis added).

19      **1.**    **Seamen**

20      "Seamen" is a term of art. McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 342 (1991).

21  Although the FAA does not define "seamen," courts have relied on judicial interpretation of the Jones Act,[1]

22  such that a seaman under the Jones Act is also a seaman for the purposes of exemption under § 1 of the

23  FAA. See, e.g., Brown v. Nabors Offshore Corp., 339 F.3d 391, 393 (5th Cir. 2003) (applying Circuit

24  City); Buckley v. Nabors Drilling USA Inc., 190 F. Supp. 2d 958, 965 fn. 2 (S.D.Tex. 2002) (applying

25

26      [1]The purpose of the Jones Act was to provide that seamen have the same rights to recover for

27  negligence as other tort victims. McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 342 (1991). The Jones Act was enacted in 1920, five years before the FAA. The Jones Act did not define "seaman" and thus the

28  Supreme Court in McDermott Int'l, Inc. v. Wilander, defined a "seamen" under the Jones Act by reviewing the definition under maritime law when the Jones Act was passed. 498 U.S. 337, 342 (1991).

1    Circuit City). Notably, this definition does not limit seamen to the business of transportation. Rather, a

2    "seamen" is a "person [ ] employed on board a vessel in furtherance of [the vessel's] purpose."

3    McDermott Int'l., Inc. v. Wilander, 498 U.S. 337, 346 (1991); see also, Brown v. Nabors, 339 F.3d at

4    393. This definition comports with other pre-1925 federal statutes, in particular, the Shipping

5    Commissioners Act of 1872 ("SCA"). The SCA established commissioners to supervise the hiring, wages

6    and working conditions of seamen, "every person (except apprentices) who shall be employed or engaged

7    to serve *in any capacity* on board" a ship covered by the SCA. SCA § 65 (emphasis added).

8    Accordingly, seamen, whether they are in the business of transporting goods or not, have been found to be

9    exempted from arbitration under the FAA § 1. See, e.g., Brown v. Nabors, 339 F.3d at 393; Buckley,

10   190 F. Supp. 2d at 958.

11        While the definition of "seamen" is broad, seamen is a term of art for a class of workers with a

12   number of unique characteristics. First, they are wards of the admiralty court. Vaughan v. Atkinson, 369

13   U.S. 527, 531 (1962); Buckley, 190 F. Supp. 2d at 958 (applying Circuit City). They are governed by

14   maritime law.[2] These two characteristics make "seamen" easily identifiable.

15        Moreover, a seaman is a member of a ship's company. Yamaha Motor Corp., USA v. Calhoun,

16   516 U.S. 199, 213 (1996). "The key to seaman status is [an] employment-related connection to a vessel in

17   navigation." Wilander, 498 U.S. at 353. What defines a seaman, then, is his connection to the vessel itself.

18   The vessel, in turn, represents the heart of the commercial activity – whether it is fishing, whaling, or

19   transporting goods – a vessel is essential to the commercial activity (one cannot really fish or navigate

20   waterways without a vessel).

21        Finally, Congress has taken a particular interest in regulating seamen. For example, the SCA "was

22   designed for the protection of seamen in the merchant service [because] they had previously been the

23   subject of constant imposition and deception." Martin J. Norris, The Law of Seamen § 71 (3rd. ed. 1970).

24

25

26   _____

27        [2]"Admiralty and maritime law includes a host of special rights, duties, rules, and procedures." Lewis
     v. Lewis & Clark Marine, Inc., 531 U.S. 438, 447 (2001). See also, 46 U.S.C.App. § 721 et seq. (wrecks
     and salvage); § 741 et seq. (suits in admiralty by or against vessels or cargoes of the United States); 46 U.S.C.
28   § 10101 et seq. (merchant seamen protection and relief).

*United States District Court*
For the Northern District of California

1    **2.    Railroad Employees**

2    Congress took a similar interest in railroad employees. "Because Congress considers it to be of the

3    highest public importance to prevent the interruption of interstate commerce by labor dispute strikes, it

4    enacted the Transportation Act of 1920 to encourage settlement within its shores." Texas & New Orleans

5    R.R. Co. v. Bhd. of Rv. Steamship Clerks, 281 U.S. 548, 561 (1940). Again, while Congress did not

6    provide a definition of railroad employees, the definition appears to be broad. This is because of the

7    language of FAA § 1 and because of subsequent judicial interpretation of the term "railroad employee" in

8    other federal statutes, such as the Transportation Act of 1920 and the Railway Labor Act of 1926. Like

9    vessels, the heart of the railroad enterprise involves navigation of a vessel, i.e., transportation.

10    **3.    Congressional Concern Specific to Seamen and Railroad Employees**

11    While the type of activity an employee who is a seaman or a railroad employee may vary, the

12    enterprise itself involves transportation. Congress has taken particular interest in the transportation industry.

13    "[I]t is a permissible inference that the employment contracts of the classes of workers in § 1 were

14    excluded from the FAA precisely because of Congress' undoubted authority to govern the employment

15    relationship at issue by the enactment of statutes specific to them." Circuit City, 532 U.S. at 121. Thus,

16    one of the reasons why Congress enumerated seamen and railroad employees as exempt from the FAA

17    may be that these employee contracts were already governed or would soon be governed by other federal

18    statutes:

19    By the time the FAA was passed, Congress had already enacted federal legislation
       providing for the arbitration of disputes between seamen and their employers. When the
20    FAA was adopted, moreover, grievance procedures existed for railroad employees under
       federal law and the passage of a more comprehensive statute providing for the mediation
21    and arbitration of railroad labor disputes was imminent. It is reasonable to assume that
       Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason
22    that it did not wish to unsettle established or developing statutory dispute resolution
       schemes covering specific workers.
23
24    Circuit city 532 U.S. at 121 (internal citations omitted). Excluding the employment contracts of seamen

25    and railroad employees under the FAA did not render those contract inarbitrable.

26    **C.    Transportation Workers**

27    Transportation workers must be like "seamen" and "railroad employees." This brings the Court to

28    the question of whether this means that transportation workers must work directly in the transportation

7

1  industry, i.e., an industry whose mission it is to move goods.

2      The Court has already reviewed a number of cases and made the following observation in its

3  previous order:

> The Third Circuit held that the FAA applies to "only those other classes of workers who
> are actually engaged in the movement of interstate or foreign commerce or in work so
> closely related thereto as to be in practical effect part of it." Tenney Eng'g, Inc. v. United
> Elec., Radio & Mach. Workers of Am., Local 437, 207 F.2d 450, 452 (3d Cir.1953); see
> also, Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 227 (3d Cir.1997) (stating
> that Tenney Eng'g is still good law and that the "only class of workers included within the
> exception to the FAA's mandatory arbitration provision are those employed directly in the
> channels of commerce itself."). Similarly, the Seventh Circuit had previously held that the
> exclusion " is limited to 'transportation workers,' or in other words, workers actually
> engaged in the movement of goods in interstate commerce...." Matthews v. Rollins Hudig
> Hall Co., 72 F.3d 50, 53 n. 3 (7th Cir.1995).
>
> The most obvious case where a plaintiff falls under the FAA exemption is where the
> plaintiff directly transports goods in interstate, such as interstate truck driver whose primary
> function is to deliver mailing packages from one state into another. See Harden, 249 F.3d
> at 1140 (holding that a truck driver who provided courier service to deliver packages was
> exempt from the FAA). The harder case is where the plaintiff is one-step removed from
> the actual transportation [the process of moving the goods]. The Ninth Circuit has not
> addressed this issue.
>
> In the Sixth and Eleventh circuits, the term "transportation worker" contemplates
> more than drivers, it contemplates a supervisor or other worker who oversees the delivery
> of goods in interstate commerce. See Bacashihua v. United States Postal Serv., 859 F.2d
> 402, 405 (6th Cir.1988) (exempting from the FAA a parcel post mail distributor at a Bulk
> Mail Center who did not directly deliver mail or packages); American Postal Workers
> Union, AFL-CIO v. United States Postal Serv., 823 F.2d 466, 473 (11th Cir.1987)
> (determining that postal workers, who are "responsible for dozens, if not hundreds, of items
> of mail moving in 'interstate commerce' on a daily basis, fall within the purview of the FAA's
> exemption). The Sixth and Eleventh circuits' rulings were decided before Circuit City,
> however, and it is unclear to what degree these cases remain good law.
>
> At the very least, later cases may limit these two cases to situations in which the
> plaintiff was employed in the transportation industry in the [process of the] movement of
> goods. For example, where the facts demonstrate that a plaintiff works in the
> transportation industry and oversees 30-35 delivery drivers directly responsible for moving
> goods, at least one court in an unpublished case has analogized the plaintiff to a delivery
> driver and found that she fell under the "transportation worker" exemption. Palko v.
> Airborne Express, Inc., 2003 WL 21077048, *4 (E.D.Pa., April 23, 2003).
>
> In contrast, where the transportation of goods is not the bread and butter of the
> [employer's] industry, a plaintiff who does not directly move the goods herself is not
> exempt from the FAA. For example, a pre-departure security agent at an international
> airport who merely inspected and guarded goods in interstate commerce prior to their
> transport, but did not actually transport them, did not fall under FAA's "transportation
> worker" exemption. Perez v. Globe Airport Security Serv., Inc. 253 F.3d 1280, 1283-84
> (11th Cir.2001), vacated per stipulation, 294 F.3d 1275 (2002). Other courts have
> similarly held that a security guard at a train station did not fall under the FAA's exemption.
> Cole v. Burns Int'l Security Serv., 105 F.3d 1465, 1471 (D.C.Cir. 1997). Nor does a
> warehouse worker who packages, unloads and loads products onto a distribution truck.

United States District Court
For the Northern District of California

1  Kropfelder v. Snap-On Tools Corp., 859 F.Supp. 952, 958- 59 (D.Md. 1994). Nor
2  does a worker who is merely assigned to a single-transportation related job. Adkins v.
   Labor Ready, Inc., 303 F.3d 496 (4th Cir. 2002).[3] Not even a worker who acts as a
3  sales associate, wholesaler, office manager, and vice-president in the packaged products
   sales department of a company [is] a "transportation worker." Seus v. John Nuveen &
4  Co., Inc., 1997 WL 325792 (E.D.Pa., Jun. 2, 1997). His activities do not include him
   physically transporting a good through commerce.

5         Thus, reviewing the case law, this Court can see a general trend amongst the
6  circuits. Plaintiffs who are personally responsible for transporting goods, no matter what
   industry they are in, are "transportation workers" under the FAA exemption. Plaintiffs who
7  oversee the transportation of goods in the transportation industry itself are also
   "transportation workers" under the FAA exemption. Plaintiffs who both (1) are not directly
8  transporting goods; and (2) are not in the transportation industry itself, are not exempt.

9         While Cintas argues that after Circuit City, transportation workers must both (1) be directly

10  responsible for transporting goods; and (2) in the transportation industry itself, it has not provided case law

11  that suggests the same and the Court is reluctant to impose a requirement that an employee in the

12  transportation industry also be required to transport the goods himself to be exempt. Such a requirement

13  would exclude overseers of workers in the transportation industry. It would also exclude workers directly

14  engaged in the process of transporting goods for non-transportation enterprises (e.g. truck drivers for

15  grocery companies). Yet previous courts have found that both these types of workers can fall under the

16  FAA § 1 exemption for workers engaged in transportation.

17         Thus, it would appear from both pre and post Circuit City case law, that the more related to the

18  transportation industry an enterprise is, the less necessary it becomes for the employee to be directly

19  transporting goods. This comports with the Court's earlier discussion of the breadth of seamen and

20  railroad employees. Because those employees are involved directly in the transportation industry, they are

21  'actually engaged in the movement of goods in interstate commerce' as defined by Circuit City. They are

22  the targeted employees and they do not need to be delivering goods in order to fall under the FAA § 1

23

24         [3]Adkins does not stand for the proposition, however, that the transportation work must be part of the
25  daily assignment. In Adkins the Fourth Circuit was addressing plaintiffs' overly broad claim that they were all
    "transportation workers" in one way or another. The court observed that defendant's employees worked in
26  the areas of construction, landscaping, warehousing, catering, moving, hotel, stevedoring, and light industrial
    markets. Id. at 505. While "[s]ome categories in this laundry list can be construed as including work related
27  to the interstate transportation of goods" the court refused to apply the FAA exemption because plaintiffs failed
    to show that their "daily assignments were in transportation-related industries. In fact, under the apparent
28  principle of [Plaintiffs' ] complaint, if an [ ] employee had been assigned to even a single transportation-related
    job...he should be exempted." Id.

9

1  exemption.

2  **D.    Characteristics of a Transportation Worker**

3      Based on the foregoing, the Court concludes that the following characteristics are relevant in

4  determining whether SSRs are transportation workers under the FAA:

5      •    Whether, like seamen or railroad employees, the plaintiff-employee class of workers (the

6           "employee") is within a class of employees "as to which special arbitration legislation

7           already existed" at the time the FAA was enacted;

8      •    Whether, like seamen (where the ship is the heart of the enterprise) or railroad employees

9           (where the train is the heart of the enterprise), the vehicle itself is essential to the commercial

10          enterprise of the defendant-employer;

11     •    The nexus between the employee's job duties and the vehicle the employee uses in carrying

12          out his duties (i.e. a truck driver whose sole job duty is to deliver goods cannot do so

13          without a truck);

14     •    Whether the employee is employed in the transportation industry;

15     •    Whether the employee is directly responsible for the transporting of goods in interstate

16          commerce;

17     •    Whether a strike by the employee would  interrupt interstate commerce.  Texas & New

18          Orleans R.R. Co., 281 U.S. at 561.

19  This list is not exhaustive.  The Court considers these characteristics to guide its determination of the status

20  of SSRs.

21      To illustrate that these characteristics are relevant in the inquiry, the Court applies them to analyze

22  Palko v. Airborne Express, Inc., 2003 WL 21077048 (E.D.Pa., April 23, 2003), a post Circuit City

23  decision.  In Palko, the plaintiff was a supervisor for a courier service.  She supervised 30-35 delivery

24  drivers, but did not perform deliveries herself.  Plaintiff was not within a class for whom special arbitration

25  provisions had already been legislated.  Nor was she directly responsible for the transporting of goods.

26  Nor was she herself a delivery driver.  She did work, however, for an enterprise in the transportation

27  industry in which drivers were essential to the commercial enterprise.  She supervised those who were

28  directly responsible for transporting goods.  And if her class of workers went on strike, it could interrupt

United States District Court
For the Northern District of California

10

1  interstate commerce.  There would be no one to supervise the drivers and oversee the smooth delivery of

2  third-party goods.

3         Similarly, in another post Circuit City case, Gagnon v. Service Trucking Inc., 266 F. Supp. 2d

4  1361, 1363 (M.D.Fla. 2003), the plaintiffs were owner-operators of tractor trailers who had contracted

5  with a motor carrier company for the express purpose of transporting goods across state lines.  While

6  Congress has not enacted alternative arbitration or employment legislation for this class of workers, they

7  performed delivery themselves, and their delivery was essential to the commercial carrier company's

8  enterprise.  If the Gagnon plaintiffs were to strike, there would be an interruption in interstate commerce as

9  third-party goods meant to be delivered would not be.

10  **E.        Application of the Characteristics to SSRs**

11         Turning to the facts in the case at hand, Plaintiffs carry the burden of demonstrating that they fall

12  within the FAA § 1 exemption.  The Court is chagrined that despite its specific instructions to Plaintiffs to

13  provide evidence that they are transportation workers (Order Re Supplemental Brief at 6:20-21.), in their

14  opening supplemental brief, Plaintiffs failed to do so.  Instead, only after Cintas pointed out Plaintiff's failure

15  to comply with the Court's instructions, did Plaintiffs offer any evidence.  This evidence came as a handful

16  of footnotes in Plaintiffs' supplemental reply brief, where Plaintiffs directed the Court's attention to

17  declarations they had submitted in relation to another motion, Plaintiffs Motion for Facilitated Notice.

18  Raising these declarations only in the reply did not give Cintas an opportunity to raise its own evidence to

19  rebut them.  The Court does not approve of such tactics, especially because they tax judicial resources.  All

20  motions should be self-contained and no reference should be made to papers not included in the actual

21  motion.

22         Nevertheless, the Court took it upon itself to scour the record to find declarations and other

23  evidence that would help resolve the status of SSRs.  The Court relies on the declarations Plaintiffs

24  footnoted in their supplemental reply brief.  The declarations were made by Eric Anderson, Bryan Cruse,

25  Tom Jaramillo, Amber Kelly, James White, Earl G. Woods, Jr., Aaron Zadnik (the "SSR Declarations"),

26  all of whom worked as SSRs.  The Court also relies on the Declaration of Plaintiffs' attorney Theresa M.

27  Traber (the "Traber Declaration"), which attached copies of SSR job postings that described the SSR

28  position.  Finally, the Court relies on the declarations of SSRs Matthew Grubba, David Easter, Allen

11

United States District Court

For the Northern District of California

1   Lamela, Mark Watts, Gilbert Owens, Jeffrey Fagerlie, Rodney Willis and Anthony Wrenn. These

2   declarations were submitted by Cintas in its Opposition to Motion for Facilitated Notice and shall be

3   referred to as the "Cintas Declarations."

4        The SSR Declarants describe their job duties as driving a delivery truck for delivery and pick-up of

5   supplies from Cintas' customers and servicing Cintas' customers' accounts. See, e.g., Anderson Decl. ¶ 3;

6   Cruse Decl. ¶ 3; Zadnick Decl. ¶ 3. The SSR Declarants also state that sales activity was only a small part

7   of their duties. See, e.g., Zadnik Decl. ¶ 9. Notably, none of the SSR Declarants state that they drove

8   their trucks in interstate commerce. For example, Mr. Anderson and Mr. Zadnick declare that they

9   "[d]rove a route in the state of Illinois." (Anderson Decl. ¶ 2; Zadnik Decl. ¶ 2.) Similarly, Mr. Jaramillo

10  declares that he "[d]rove a route in the state of Colorado." (Jaramillo Decl. ¶ 2.)

11       Cintas Declarant Allen Lamela describes his job duties as one of service rather than delivery. He

12  states, "[o]n the average customer call, I drive to my customer stop, find my contact and say 'good

13  morning.' I go to the first aid kit and see what they need. Then, for example, if a particular item such as

14  band-aids has run out, I will re-stock the band-aids. Then I tally the stocked items on my sheet and get a

15  signature from my contact." (Lamela Decl. ¶ 6.) Mr. Lamela believes that he spends "[b]etween 400 and

16  800 miles per week driving." (Lamela Decl. ¶ 7.)

17       Cintas Declarant Gilbert Owens admits that his SSR route covers five states across the

18  southeastern portion of the United States. (Owens Decl. ¶ 9.) Mr. Owens does not describe his job duties

19  as delivery, however. Rather, he describes his duties as trying to sell supplies to his customers along the

20  route. (Owens Decl. ¶ 8.)

21       The Traber Declaration provides numerous examples of SSR job postings that require "a clean

22  driving record. (Traber Decl. Exh. 7 at 93, 94, 95, 100, 101, 103, 105, 107, 109, and 112). These job

23  postings describe the SSR duties as involving the delivery of product such as clean uniforms and mats on a

24  daily basis and the sale of additional products and services. (Id.) Cintas "provides the route, the truck and

25  insurance." (Id.) Other postings for SSRs describe the job as a "route delivery position [that] also requires

26  the upselling of current customers in your territiry [sic]." (Traber Decl. Exh. 7 at 96.) Some SSR postings

27  require that applicants be able to lift 40-50 pounds. (Traber Decl. Exh. 7 at 97.) A page from Cintas'

28  website emphasizes the customer service aspect of the SSR. SSRs "deliver the products, services and

1   enthusiasm for which we are recognized." (Traber Decl. Exh. 7 at 126.) "SSRs are the #1 link between

2   our customer and our company operations. To our customers, the Service Sales Representative is Cintas."

3   (Id.) Cintas provides a fundamental training program that is "followed by advanced training in customer

4   service and selling skills." (Id.) A successful candidate for the SSR position must have excellent customer

5   skills, a stable work history, a good driving record, a high school diploma or GED, a professional

6   appearance, attention to detail, and an interest in sales. (Id. at 127.)

7          Taken together, the declarations describe a job that entails driving, restocking supplies, and

8   receiving orders or facilitating sales for more supplies. Plaintiffs argue that these job responsibilities qualify

9   SSRs as transportation workers. They rely on dicta from Kropfelder v. Snap-on Tools Corp., 895 F.

10  Supp. at 958, to support this contention. The Court has carefully reviewed Kropfelder, which is a district

11  court case that is not binding on this Court.

12         In Kropfelder, the defendant employer Snap-on Tools described the foundation of its business

13  model as direct sales of tools to professional technicians in automotive service through mobile dealer vans.

14  Id. at 952. The Kropfelder plaintiff was employed as a warehouseman. His primary duties were "to

15  receive products which were trucked to the warehouse from various manufacturers, including Snap-on's

16  manufacturing facility in Kenosha, Wisconsin, and other manufacturers in various other states." Id. at 958.

17  In finding that the Kropfelder plaintiff did not fall under the FAA § 1 exemption, the court observed that the

18  plaintiff was not "directly involved in the transportation business, although he has strong, close and rather

19  immediate contact with those who are so involved." Id. These strong and close ties were to the delivery

20  drivers who trucked goods from third-party manufacturers and the employer itself to the warehouse where

21  the goods would then go out to be sold to third-party customers. From the record, it is unclear whether

22  these truckers were third-party couriers, or were employed by the Krofelder defendant. In either case, the

23  primary responsibility of these truckers was interstate delivery of goods.

24         In the case at hand, it is not clear that the primary responsibility of SSRs is interstate delivery of

25  goods. While SSRs deliver goods, they also perform customer service functions. They note supply levels

26  at different customer sites and re-stock those supplies. They pick-up used or dirty products such as

27  uniforms and mats and replace them with new ones. These job duties certainly entail driving. They do not,

28  however, entail delivery of product in the same manner that a truck driver does. The primary duty of SSRs

13

United States District Court

For the Northern District of California

1  is more akin to customer service than it is to a warehouse trucker, railroad employee or seamen.

2  Accordingly, based on the evidence at hand, SSRs are not transportation workers within the meaning of the

3  FAA exemption.

4  Applying the factor test the Court previously set out underscores this conclusion. Congress has not

5  provided separate federal legislation regarding employees who deliver products as part of their customer

6  service duties. Cintas is not in the transportation industry. While the SSRs are directly delivering their

7  employers' goods to customers, it is not clear that the SSRs' vehicles are essential to the transporting of

8  Cintas' goods. Cintas could, for example, employ a different business model involving a third party courier

9  service and no customer service. In other words, the nexus between the SSR's job duties – customer

10  service – is not so close to the SSR's use of the vehicle as to be inextricably intertwined. Nor would a

11  strike by SSRs disrupt interstate commerce. While such a strike would certainly disrupt <u>service</u> to Cintas'

12  customers, it would not otherwise interrupt the free flow of <u>goods</u> to third parties in the same way that a

13  seamen's strike or railroad employee' strike would.

14  **F.    Conclusion**

15  Policy dictates that arbitration is to be favored. The FAA § 1 exemption is to be construed

16  narrowly. The party arguing against arbitration carries the burden of demonstrating that a dispute is

17  inarbitrable. In light of these factors, the Court concludes that SSRs are not transportation workers.

18  Although the record is not complete, at this juncture SSRs appear to be more akin to customer service

19  agents. Accordingly, they are not exempt under the FAA § 1.

20  **III. ENFORCEABILITY OF THE ARBITRATION CLAUSE OF THE EMPLOYMENT**
21  **AGREEMENTS**

22  The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable" unless

23  grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "To evaluate the

24  validity of an arbitration agreement, federal courts, 'should apply ordinary state-law principles that govern

25  the formation of contracts.'" <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1170 (9th Cir. 2002)

26  (quoting <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938 (1995)).

27  Plaintiffs argue that even if SSRs are not exempt under the FAA, the arbitration clauses are not

28  enforceable under relevant state laws. This requires the Court to apply the law of 12 different states to four

14

1   different forms of arbitration agreements.

2   **A.      The Arbitration Agreements**

3           Plaintiffs' employment relationship with Cintas is governed by individual employment agreements

4   that, across the board, are relatively similar (the "Agreement"). There are four different versions of the

5   Agreements. The version applicable to each Plaintiff SSR depends upon the year the SSR became an

6   employee of Cintas.

7           Each version states in some form that the SSR is entering into the agreement in exchange for

8   increases in compensation, promotion, job offers, fringe benefits and other consideration. Each version also

9   contains an express choice of law provision to the effect that the agreements will be interpreted, governed

10  and enforced according to the FAA and the law of the state in which the employee currently is employed

11  by Cintas or was most recently employed by Cintas. (Clendening Decl. Exs. B-III.)

12          In each Agreement, the SSR covenants to maintain confidential information, not to solicit fellow

13  employees, and not to compete with Cintas. See, e.g., Clendening Decl. Exh. U ¶ 3. The SSR agrees that

14  breach of these provisions will cause Cintas irreparable harm. See, e.g., Clendening Decl. Exh. U ¶ 3(e).

15  It grants Cintas the right to obtain a temporary restraining order ("TRO") or preliminary injunction without

16  having to prove damages. See, e.g., Clendening Decl. Exh. U ¶ 3(e).

17          All but five of the Plaintiffs entered into individual employment agreements providing that arbitration

18  under the American Arbitration Association National Rules for the Resolution of Employment disputes

19  ("AAA") would be the exclusive method for resolving employment disputes with Cintas (the "Arbitration

20  Clause"). (Clendening Decl. ¶ 4.)

21  **B.      Overview**

22          Plaintiffs argue that under the laws of contract interpretation for each of the relevant states, the

23  arbitration clauses are unenforceable because they (1) are unsupported by legal consideration; (2) lack

24  mutual obligations to arbitrate; or (3) are unconscionable contracts of adhesion. The Court addresses these

25  issues on a global level to resolve those issues that can be resolved universally. It then examines the

26  remaining issues on a state-by-state basis.

27  **C.      Legal Consideration**

28          Plaintiff's first contention – that the agreements are unsupported by legal consideration – is    –

15

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   unavailing. Where a party is offered employment or chooses to remain employed, there is legal

2   consideration. See, e.g., McClendon v. Sherwin-Williams, Inc., 70 F. Supp. 2d 940, 943 (E.D. Ark.

3   1999) ("by choosing to remain an employee with Sherwin-Williams after having received the employee

4   handbook and by continuing to stay on the job, plaintiff supplied the consideration for the offer."). See

5   also, Hadnot v. Bay, Ltd., 344 F.3d 474. 477 (5th Cir. 2003) (fact that plaintiff signed arbitration

6   agreement after he had been offered employment did not mean that there was no consideration for the

7   arbitration agreement; fact that offer of employment was contingent upon signing arbitration agreement

8   meant that there was bargained for consideration); Tinder v. Pinkerton Security, 305 F.3d 728 (7th Cir.

9   2002) (even where employee claims there was no arbitration agreement when she was hired, and that she

10  never saw the employee handbook that later introduced the arbitration agreement, employee's continued

11  employment and employer's promise to bind itself to arbitration policy, were sufficient consideration for

12  employee's promise to arbitrate).

13      There is no question that Cintas and the SSRs exchanged consideration. The 1996 Agreement

14  recites:

15      As consideration for this Agreement, [Cintas] agrees to hire Employee or to continue to

16      employ Employee to perform duties assigned by Employer, and if Employee has been

17      employed by Employer prior to the date of execution of this Agreement, Employer also is

18      increasing Employee's rate of compensation, level of responsibility or employment benefits

19      as consideration for this Agreement.

20  See, e.g., Clendening Decl. Exh. GGG at 1. Similarly, the 1999, 2001 and 2002 Agreements contain a

21  specific "check-off" box to indicate what consideration the employee received: hiring, promotion, raise, or

22  additional fringe benefits.

23      Moreover, where both parties agree to be bound by the arbitration process on at least one issue

24  (e.g. an employee's grievances against the employer), there is consideration. See, e.g., Michaelski v.

25  Circuit City Stores, Inc., 177 F.3d 634, 636-37 (7th Cir. 1999); Johnson v. Circuit City Stores, Inc., 148

26  F.3d 373 (4th Cir. 1998); Howard v. Oakwood Homes Corp., 516 S.E.2d 879, 882 (N.C. Ct. App.

27  1999). In each version of the Agreement, Cintas and the individual SSR agreed to be bound by the

28  arbitration process for issues arising out of the SSR's employment grievances. Thus, the parties exchanged

16

1  consideration.

2  **D.    Mutuality**

3         In the context of arbitration agreements, states are split on what the term "mutuality" means. Most

4  states (e.g. Colorado, Illinois, New York) consider an arbitration clause to be mutual if the agreement as a

5  whole evidences an exchange of promises, whatever the promises are. Other states, particularly Arkansas,

6  consider an arbitration clause to be mutual only when each party agrees that all of its claims against the

7  other shall be arbitrable. That is to say, the arbitration must be bilateral. If one party preserves the right

8  not to arbitrate certain claims, then it is not bilateral and there is no mutuality.

9         The Arbitration Clause requires a SSR to submit his grievances to arbitration. It does not require

10  the same of Cintas. Instead, the Agreements provide that:

11        Employee agrees that a breach of any covenant...will cause [Cintas] irreparable injury and
          damage for which [Cintas] has no adequate remedy...[Cintas] will be entitled to seek an
12        immediate restraining order and injunction to prevent, pending or following arbitration under
          Paragraph 5 below, such violation or continued violation, without [Cintas] having to prove
13        damages.

14  See, e.g., Clendening Decl. Exh. ¶¶ 3(e) (hereinafter the "Irreparable Harm Clause"). Cintas does not

15  specify whether it may seek a TRO through the courts or through arbitration.[4] Reviewing the language in

16  the agreement, however, it is readily apparent that Cintas means the "courts." In the Arbitration Clause it

17  specifically uses the term "arbitration" to define such things as "costs." In the Irreparable Harm Clause,

18  however, it uses the term "litigation" to describe the costs incurred in a TRO or preliminary injunction.

19  Moreover, Cintas adopts the language of the courts in describing its relief as a TRO or preliminary

20  injunction. Under the AAA, such relief is described as "emergency interim relief." AAA Rule O-4. Cintas

21  does not explain why it has reserved just for itself the right to seek such relief in a court when the same

22  remedy is available to it from the AAA. This means that if an SSR is terminated for allegedly divulging

23  trade secrets, the SSR would be required to arbitrate his termination. In the meantime, however, Cintas

24  could seek an injunction from a court.

25  _____

26  [4] Just as courts have the power to grant such relief, so does the AAA. AAA Rule O-4 provides:
    If after consideration the emergency arbitrator is satisfied that the party seeking the emergency
27  relief has shown that immediate and irreparable loss or damage will result in the absence of
    emergency relief, and that such party is entitled to such relief, the emergency arbitrator may
28  enter an interim award granting the relief and stating the reasons therefor.

United States District Court

For the Northern District of California

1    Other terms in the Irreparable Harm Clause reinforce that the Arbitration Clause is not bilateral.  In

2 the context of the TRO or preliminary injunction, Cintas reserves to itself the right to recover by mandate of

3 the court all remedies available to it under law or equity.  SSRs do not enjoy the same breadth.  The terms

4 of the Agreement also provide that Cintas may resort to the court even after an SSR has left his

5 employment and, arguably, has no employment claims that are arbitrable.  For example, Paragraph 3(d) of

6 the Agreement provides that an SSR must return all of Cintas' confidential materials.  Assuming that the

7 SSR voluntarily left his job, that he had no grievances against Cintas, but he allegedly took confidential

8 material with him, Cintas would be able to resort to the courts to obtain the confidential materials.  It could

9 also, under Paragraph 3(e) obtain other relief, including (though not expressly stated) monetary damages.

10    Accordingly, the Arbitration Clause is not bilateral.

11 **E.    Terms Rendering the Agreements Unconscionable**

12    Plaintiffs put forward that the following terms either individually or collectively render the Agreement

13 unconscionable: the unfair bargaining position, the cost of arbitration,  the confidential nature of arbitration

14 proceedings before the ABA, the one-year time period limitation in which a SSR may bring his claim, the

15 limitation of an award of attorneys' fees and costs, and the breadth of remedies available to Cintas.

16    Cintas argues that if any of these terms are unconscionable, the Agreement provides that they may

17 be severed.

18    **1.    The Unfair Bargaining Position of the Parties**

19    It would be ludicrous to suggest that the SSRs are on an equal footing with Cintas.  The SSRs are

20 individuals seeking employment or further benefits from their current employer.  Cintas, by its own

21 admission, is a nationwide business enterprise and a leader in its industry.  (Clendening Decl. Exh. AAA ¶

22 1.) Cintas is also the drafter of the employment agreement.

23    Just because Cintas enjoys the upper-hand, however, does not mean that the Agreement is void.

24 See, e.g., Martindale v. Sandvik, Inc., 800 A.2d 872, 880 (N.J. 2002) (an employee must show

25 "circumstances more egregious than the ordinary economic pressure faced by every employee who needs

26 the job."); Armendariz v. Foundation Health Pyschcare Services, Inc., 24 Cal. 4th 83, 118 (2000)

27 (recognizing that "parties are free to contract for asymmetrical remedies and arbitration clauses of varying

28 scope."); Chisolm v. Kidder, Peabody Asset Management, Inc., 966 F.Supp. 218, 226 fn.2 (S.D.N.Y.

18

United States District Court

For the Northern District of California

1    1997) (the unequal bargaining power between an employee and an employer does not render the

2    agreement unconscionable). "[C]ontract law would lose much of its meaning if unfavorable contract

3    provisions could be challenged merely on the basis of relative size of the contracting parties." Mayflower

4    Transit v. Ann Arbor Warehouse Co., 892 F. Supp. 1134, 1140 (S.D. Ind. 1995).

5         Thus, although the Court is acutely aware of the unequal bargaining power between Cintas and the

6    SSRs, the inequality alone cannot render the Agreements void.

7         **2.    The Cost of Arbitration**

8         The 1996 Agreement requires that "the party losing the arbitration shall bear the fees and expenses

9    of the American Arbitration Association and the impartial arbitrator." (Pepich Decl. Exh. ¶ 6.) These fees

10   can be expensive. The filing fee is at least $500. (Pepich Decl. Exh. A. at 14.) Hearing fees can be as

11   much as $150 per day. (Pepich Decl. Exh. A at 14) and do not include the arbitrator's daily fees, which

12   range from $600 to $1,000 per day. (Pepich Decl. Exh. 1 at 5.) Courts consistently have held that

13   requiring an employee to bear such fees is substantively unconscionable if it would prevent the employee

14   from being able to effectively vindicate his rights. Greentree Financial Corp.-Alabama v. Randolph, 531

15   U.S. 79, 90 (2000); see also, Alexander v. Anthony Intern.L.P., 341 F.3d 256, 270 (3rd Cir. 2003);

16   Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 676-677 (6th Cir. 2003) (finding that where

17   agreement required fee splitting, even if employer later offered to pay all the fees, because "the provision, as

18   drafted, would deter potential litigants, then it is unenforceable, regardless of whether, in a particular case,

19   the employer agrees to pay a particular litigant's share of the fees and costs to avoid such a holding."); Ingle

20   v. Circuit City Stores, Inc., 328 F.3d 1165 (9th Cir. 2003).

21        This is because while there may be some facial "fairness" to each party bearing the costs of

22   arbitration or for the loser to pay costs in many commercial settings, where parties with equal bargaining

23   power are bargaining at arm's length, the reality in the circumstances of employment contracts is quite

24   different. In employment contracts, "'no man in his senses' would agree to bear costs of a process that he

25   quite clearly could ill afford as compared to his or her employer." Faber v. Menard, Inc., 267 F. Supp. 2d

26   961, 978 (N.D.Iowa 2003); see also, Ingle v. Circuit City, 328 F.3d at 1175-76. This is all the more true

27   when the dispute involves the employee's livelihood and, hence, the employee's ability to meet daily

28   expenses, let alone the expenses of arbitrating the dispute.

19

United States District Court

For the Northern District of California

1      In fact, this is why federal anti-discrimination statutes, for example, provide for fee-shifting to

2   prevailing plaintiffs, and much more narrow fee-shifting for prevailing defendants. See, e.g., Sinyard v.

3   Commissioner of the Internal Revenue, 268 F.3d 756, 763 (9th Cir.2001) ("[T]he purpose of fee-shifting

4   provisions, like the one in the ADEA, is not only to permit plaintiffs without resources to pursue claims but

5   to encourage meritorious civil rights litigation by defraying its cost."), cert. denied sub nom. Sinyard v.

6   Rossotti, 536 U.S. 904 (2002).

7      Accordingly, at a global stage the Court is inclined to find that this provision of the 1996 Agreement

8   is unconscionable.  It reviews the 1996 Agreements on a state-by-state basis, however, to apply the

9   relevant state's laws to this issue.  The Court limits it review to only those Plaintiffs who signed the 1996

10  Agreements.  In other words, if no plaintiff in California signed the 1996 Agreement, the Court will not

11  review this issue in California.

12     The Court also reviews the whole of the Agreement and the circumstances under which it was

13  signed to determine whether under applicable state law this unconscionable provision, either standing alone

14  or in combination with other unconscionable provisions, so permeates the 1996 Agreement that the

15  Agreement cannot be enforced, or whether as provided by the 1996 Agreement itself, the Court may sever

16  this provision and enforce the arbitration agreement.

17     The subsequent versions of the Agreement do not impose upon SSRs the burden of these fees.

18     **3.      Confidentiality Rules of the AAA**

19     Plaintiffs argue that the AAA rules, which provide that arbitrations shall be confidential, favor Cintas

20  because they make it more difficult for potential plaintiffs to establish intentional misconduct or establish a

21  pattern or practice of misconduct against Cintas.  This argument is unavailing.  The AAA is a reputable

22  arbitration body and the reasons for confidentiality are designed to protect all parties in a dispute.  Cf.

23  Code of Ethics for Arbitrators in Commercial Disputes, Canon VI ("An arbitrator is in a relationship of trust

24  to the parties and should not, at any time, use confidential information acquired during the arbitration

25  proceeding to gain personal advantage or advantage for others, or to affect adversely the interest of

26  another.").  Accordingly, the Court does not include the confidentiality requirement in its state-by-state

27  review of unconscionability.

28     **4.      Remedial Restrictions**

20

United States District Court
For the Northern District of California

1      Plaintiffs argue that the 1999 and 2001 versions deprive them of awards to which they are

2   statutorily entitled. These versions preclude employees from bringing any request for arbitration more than

3   one year after the dispute arose or the employee was terminated. The FLSA and applicable state labor

4   law, however provide a statute of limitations of between two or three years. This limitation also limits the

5   amount of back pay award of any plaintiff to one year, rather than the two or three years of back pay that

6   would be allowed under the FLSA's limitations period.

7      Whether or not such a remedial restriction is unconscionable depends on how courts have

8   interpreted the dicta set forth by the Supreme Court in <u>Mitsubishi Motors Corp. v. Soler</u>

9   <u>Chrysler--Plymouth, Inc.</u>, 473 U.S. 614, 628 (1985). In <u>Mitsubishi Motors</u>, the Supreme Court stated

10  that federal statutory claims may be the subject of arbitration agreements that are enforceable pursuant to

11  the FAA because the agreement only determines the choice of forum. "By agreeing to arbitrate a statutory

12  claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution

13  in an arbitral, rather than a judicial, forum."

14     The question is whether <u>Mitsubishi</u> should be read literally. Does it stand for the proposition that

15  the only difference between litigation and arbitration is the choice of forum such that the full extent of the

16  remedies that would be available to a plaintiff in court by federal statute should also be available to her in

17  arbitration? Or does it mean only that the substance of the right protected and the type of relief provided

18  by federal statute (e.g. protection against racial discrimination, punitive damages) and not the amount or

19  level of remedies themselves should be identical? Under the first interpretation, parties could not bargain to

20  restrict the statute of limitations. Under the second, parties could. The Circuits are split on which

21  interpretation is the correct one, but at least the First, Third, Seventh, and Eighth Circuits state that this is an

22  issue for the arbitrator to decide. <u>Anders v. Hometown Mortgage Services, Inc.</u>, 346 F.3d 1024, 1030-

23  1031 (11th Cir. 2003).

24     **5.    Award of Attorneys Fees and Costs**

25     Plaintiffs argue that the 1999 and 2001 Agreements further limit their ability to recover, in

26  contravention of the FLSA. The FLSA <u>requires</u> that a prevailing plaintiff be awarded attorneys' fees and

27  costs. There is strong public policy behind this – it affords those who could not otherwise pay arbitration

–28  costs access to a forum to arbitrate their rights. The 1999 and 2001 Agreements, however, merely give the

21

United States District Court
For the Northern District of California

1   arbitrator the <u>discretion</u> to award attorneys' fees and costs.

2        Plaintiffs inflate the significance of this limitation to mean that Cintas has violated the FLSA because

3   giving the arbitrator such discretion makes it conceivable that prevailing plaintiffs will not receive any

4   attorneys' fees or costs.  Notably, the clause does not foreclose such an award.  Nor does it guarantee it

5   and it is this lack of guarantee where the FLSA would otherwise provide it that concerns the Court.  The

6   Supreme Court has mandated that provisions in arbitration clauses cannot deprive plaintiffs of their ability to

7   vindicate their rights.  <u>Greentree</u>, 531 U.S. at 90.  They need access to a forum.  Because this provision

8   does not guarantee that prevailing plaintiffs will be awarded attorneys fees and costs, the Court finds that

9   the provision does limit a plaintiff's ability to recover.

10       In its state-by-state analysis, the Court must consider whether under the applicable circuit's

11  interpretation of <u>Mitsubishi Motors</u>, the absence of guaranteed attorneys' fees and costs is something it

12  must address, or is an issue to be addressed by the arbitrator.  As the Court has already observed, at least

13  the First, Third, Seventh and Eight Circuits would consider this issue to be one for the arbitrator to decide.

14  For the remaining circuits, this Court must consider whether it should sever this provision or whether in

15  combination with other unconscionable provisions it renders the Agreement unenforceable.

16       **6.    The Scope of Cintas' Ability to Recover**

17       Finally, Plaintiffs argue that the Agreement is unconscionable because it so heavily favors Cintas.

18  At the same time that the Agreement constricts Plaintiffs' remedies, it enhances Cintas.  Besides the lack of

19  bilateral arbitration, Plaintiffs point out that the Irreparable Harm Clause heavily favors Cintas to Plaintiffs'

20  detriment.  Under the Irreparable Harm Clause, Cintas can seek a TRO or preliminary injunction against an

21  employee for breach of the non-disclosure/trade secrets/non-competition covenant of the employment

22  agreement.  Not only does the Irreparable Harm Clause provide Cintas access to the courts for such a

23  remedy, it reduces Cintas' burden to the courts.  Specifically, it allows Cintas to obtain a TRO or

24  preliminary injunction without demonstrating damages.

25       Whether the Irreparable Harm Clause so favors Cintas as to be unconscionable, however, requires

26  an analysis into each state's laws regarding the non-disclosure/trade secrets/non-competition covenant.  If,

27  the Court finds that under the relevant state law the Irreparable Harm Clause is unconscionable, the Court

28  must determine whether that provision may be severed or whether the unconscionability of this provision,

22

United States District Court

For the Northern District of California

1  along with others, so permeate the Agreement as to render it unenforceable.

2  **F.    Guidelines for Reviewing the Agreements on a State-by-State Basis**

3         With the federal mandate that arbitration agreements are strongly favored, the Court now examines

4  the agreements under the relevant states' laws.  As the Court reviews these agreements, it remains acutely

5  aware of the parties' unequal bargaining positions.  It is also aware that it has the power to sever provisions

6  it finds unconscionable.  "The general rule is that where you cannot sever the illegal from the legal part of a

7  covenant, the contract is altogether void; but, where you can sever them, whether the illegality be created

8  by statute or by the common law, you may reject the bad part and retain the good."  McCullough v.

9  Virginia, 172 U.S. 102, 113 (1898); see also, American Ry. Express Co. v. Lindenburg, 260 U.S. 584

10  (1923).

11        The Court asks the following questions for each applicable version of the Agreement in each state

12  for each named Plaintiff:

13        1.    Does the state require the arbitration be bilateral?

14        2.    If it does not, must the Court consider the absence of bilateral arbitration in determining

15              unconscionability?

16        3.    Does the state hold that "Loser Pays" provisions of arbitration agreements are

17              unconscionable?

18        4.    Does the state permit parties to constrict statutory remedies?

19        5.    Does the Irreparable Harm Clause unconscionably expand Cintas' rights?

20        6     Are the circumstances under which the SSRs signed the Agreement otherwise

21              unconscionable?

22        7     Do the factors taken as a whole demonstrate unconscionability?  That is, under the

23              applicable state law, would severing the unconscionable provisions render the agreement

24              enforceable, or is the agreement so permeated with unconscionability that the Court should

25              not enforce it?

26        Because the same seven questions are asked for each relevant state, the analysis can at times

27  appear redundant, especially when certain states are aligned by circuit law.  The Court believes, however,

28  that the state-by-state analysis is essential.  Such analysis reviews the Agreement through the eyes of the

23

United States District Court
For the Northern District of California

1    state to determine whether or not the state would enforce it.

2    **G.     Arkansas**

3         The only plaintiff whose agreement is governed by Arkansas law is Heibling.  Heibling signed the

4    1999 version of the Agreement.

5         **1.     Arkansas Requires that an Arbitration Clause Be Bilateral**

6         Under Arkansas law, "[m]utuality within the arbitration agreement itself is required." <u>The Money</u>

7    <u>Place, LLC v. Barnes</u>, 78 S.W.3d. 717 (Ark. 2002).  In <u>Showmethemoney</u>, the Arkansas Supreme Court

8    reviewed an arbitration clause in the context of cash-checking services.  There, the cash-checking provider,

9    Showme, drafted a one-sided agreement in which it expressly reserved to itself the right to institute legal

10   action "to collect amounts due it."  The arbitration clause also contained a limitation of remedies statement

11   that forbade suit against Showme under any circumstances.  In finding that the arbitration clause was

12   unenforceable because it was not bilateral, the Arkansas Supreme Court ruled that arbitration clauses

13   "should not be used as a shield against litigation by one party while simultaneously reserving solely to itself

14   the sword of a court action." <u>Showmethemoney</u>, 27 S.W.3d 361, 366 (Ark. 2000).  Subsequent decisions

15   relying on <u>Showmethemoney</u> have also observed that the agreement at issue was explicit as to the drafter's

16   right to civil litigation while reducing the signatory's rights only to arbitration. <u>See, e.g.</u>, <u>The Money Place</u>

17   78 S.W.3d.at 717[5]; <u>Cash in a Flash Check Advance of Arkansas, LLC v. Spencer</u>, 74 S.W.3d 600 605

18   (Ark. 2000)[6]; <u>E-Z Cash Advance, Inc. v. Harris</u>, 60 S.W.3d 436, 442 (Ark. 2001)[7].

19        The Cintas-Heibling Agreement is less onerous than the one in <u>Showmethemoney</u>.  Where Showme

20   was the only party entitled to attorneys' fees and costs, the Agreement here provides that should Cintas not

---

22   [5]The agreement provided, "If the check is returned to us from your financial institution due to insufficient
     funds, closed account, or a stop payment order, we have the right to all civil remedies allowed by law to collect
23   the Check and shall be entitled to a returned check fee of $20.00, court costs and reasonable attorney fees
     pursuant to Act 1216 of 1999 § 6(g)."

24   [6]The agreement provided, "if payment is not made after written demand, we may go to court and get
25   a judgment against you for the then unpaid amount of your obligation to us. In the event judgment is entered
     in our favor, we may seek to collect this judgment through all judicial means necessary, including attaching your
26   non-exempt property, or garnishing your wages..."

27   [7]The agreement provided, "If the Check is returned to us from your financial institution due to
     insufficient funds, closed account, or a stop payment order, we have the right to all civil remedies allowed by
28   law to collect the Check and shall be entitled to a returned check fee of $20.00, court costs and reasonable
     attorney fees pursuant to Act 1216 of 1999, § 6(g)."

United States District Court

For the Northern District of California

1   prevail in its claims, it will pay Heibling's litigation costs and attorneys' fees. (Id.)

2       Like the agreement in <u>Showmethemoney</u>, however, the Irreparable Harm Clause of the Heibling-

3   Cintas Agreement provides that only Cintas has access to the courts. Moreover, it provides that Heibling

4   would be liable to Cintas for "any other remedies" Cintas would "be entitled to at law or equity." Thus,

5   while the Agreement shields Cintas from litigation brought by Heibling, it provides Cintas the sword of

6   litigation to use against Heibling. This renders arbitration unilateral, not bilateral. Accordingly, in Arkansas

7   the Agreement is unenforceable.[8]

8       **2.    Conclusion**

9       Heibling is not compelled to arbitrate.

10  **H.    California**

11      Plaintiffs Lovett, O'Malley, and Herrera signed the 1999 version of the Agreement in California.

12  Plaintiffs Veliz, White and Rydman signed the 2001 version in California. Plaintiff Montanex signed the

13  2002 version California.

14      **1.    Does the state require that the arbitration clause be bilateral?  If it does not, then**

15          **is the absence of bilateral arbitration a factor to be considered in determining**

16          **unconscionability?**

17      In California, if the agreement is a contract of adhesion, the employer cannot implicitly reserve to

18  itself the right to litigate but require the employee to arbitrate. <u>Armendariz v. Found. Health Pyschcare</u>

19  <u>Serv., Inc.</u>, 24 Cal. 4th 83 (2000). If the agreement is not a contract of adhesion, the fact that an

20  arbitration clause is not bilateral can be a factor in determining unconscionability.

21      The California Supreme Court has articulated a two-pronged standard for determining whether a

22  contract is void for unconscionability. <u>Armendariz</u>, 24 Cal.4th at 114. The first prong addresses the

23  "procedural" aspects of the contract's formation, focusing on "oppression or surprise due to unequal

24  bargaining power." <u>Little v. Auto Stiegler, Inc.</u>, 29 Cal.4th 1064, 1071 (2003). The second prong

25  concerns the "substantive" aspects of an arbitration agreement and looks to "overly harsh or one-sided

26  results." <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1168, 1171 (2003). The two prongs operate as a

27  _____

28      [8]The Court cautions that this determination is specific to the law of Arkansas only.

                                            25

1 "sliding scale." Id. "The more substantively oppressive the contract term, the less evidence of procedural

2 unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

3         **a.    Contract of Adhesion**

4     Where an arbitration clause must be signed as a condition of employment, the contract is

5 procedurally unconscionable. Ingle, at 1171 ("Circuit City, which possesses considerably more bargaining

6 power than nearly all of its employees or applicants, drafted the contract and uses it as its standard

7 arbitration agreement for all of its new employees. The agreement is a prerequisite to employment, and job

8 applicants are not permitted to modify the agreement's terms--they must take the contract or leave it.").

9     Plaintiffs ask the Court to assume, without citing to any evidence, that the California Agreements

10 are procedurally unconscionable merely because Cintas' bargaining power far outweighed the Plaintiffs'.

11 Where there is no evidence in the record, the Court will not make such an assumption. While it is true that

12 as an employer offering a job, Cintas did have more bargaining power, this does not mean that Cintas'

13 power was so great as to render the Agreement procedurally unconscionable. While Plaintiffs proffered a

14 number of declarations, they did not proffer any for the California Plaintiffs. Without being informed of the

15 circumstances under which the California Plaintiffs signed these Agreements, the Court cannot assume that

16 the Agreements were procedurally unconscionable. The scant evidence in the record suggests that, in fact,

17 they are not unconscionable. At least 12 per cent of Cintas' SSRs have not signed arbitration agreements,

18 yet are employed by Cintas. (Clendening Decl. ¶ 23.)

19         **b.    A Modicum of Bilaterality**

20     "An arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it

21 requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or

22 occurrence or series of transactions or occurrences." Armendariz, 24 Cal.4th at 120. Thus, arbitration

23 agreements must have a "modicum of bilaterality." Id. at 118. The "lack of mutuality can be manifested as

24 much by what the agreement does not provide as by what it does provide." Id. at 120. Accordingly, for

25 there to be a modicum of bilaterality, the employer must assent to arbitrate its claims against the employee.

26 The employer's silence on such claims is enough to indicate that a modicum of bilaterality does not exist.

27 Id. It renders the arbitration clause unenforceable. Id.

28     The 2001 and 2002 versions contain the identical wording in the Irreparable Harm Clause as found

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  in the 1999 version discussed in the Heibling-Agreement. The agreements require Plaintiffs to arbitrate their

2  employment claims without obligating Cintas to submit its own claims to arbitration.[9] The Court has already

3  observed that there is scant evidence in the record to suggest that under the first prong, the California

4  Agreements are contracts of adhesion. While recognizing that an employer naturally has far greater

5  bargaining power than an employee, the Court also observes that the evidence does not demonstrate that

6  Cintas as an employer presented the arbitration agreement on a take-it-or-leave-it basis. Cintas has

7  already pointed out that a number of its SSRs are not bound by an arbitration agreement.

8      Recalling that the two prongs operate as a sliding scale, it is not enough for the Court to find that

9  Cintas' agreement lacked a modicum of bilaterality for it to find that the Agreement is unenforceable. The

10  Court does consider, however, the absence of bilateral arbitration in determining whether the Agreement is

11  unconscionable.

12      **2.   Does the state hold that "Loser Pay"provisions of arbitration agreements are**

13            **unconscionable?**

14      The "Loser Pay" provision only appears in the 1996 version of the Agreement and thus, is not

15  applicable to these California Plaintiffs.

16      **3.   Does the state permit parties to constrict statutory remedies?**

17      Where a remedies provision proscribes available statutory remedies, an arbitration clause is

18  unenforceable. Ingles, 328 F.3d at 1179. In Ingles, the agreement at issue granted the arbitrator the

19  discretion to award (1) injunctive relief, including reinstatement; (2) one year of full or partial back pay,

20  subject to reductions by interim earnings or public or private benefits received; (3) two years of front pay;

21  (4) compensatory damages in accordance with applicable law; and (5) punitive damages up to $5000 or

22  the equivalent of a claimant's monetary award (back pay plus front pay), whichever is greater. Id. The

23  Ninth Circuit, in finding this limitation unconscionable, noted that the agreement improperly placed limits on

24  an employee's total damages, while federal law limited only the sum of punitive and certain compensatory

25

26      [9]Under California law, the agreements' silence as to Cintas' obligations to arbitrate its disputes requires

27  a different outcome from analysis of the same agreement under Arkansas law. This is because Arkansas law
    allows the Court to construe the silence in favor of Plaintiffs and arbitration. Under Armendariz, California

28  jurisprudence expressly forbids it. Armendariz holds that a court reviewing an agreement that is silent as to the
    employer's arbitration obligations for its claims must be understood to lack bilaterality.

United States District Court

For the Northern District of California

1  damages, and contravened federal law by limiting an employee's front-pay award to two years' salary as

2  well as improperly limited the punitive damages award. Id.

3      In Armendariz, the California Supreme Court found that because the arbitration clause excluded

4  punitive damages and attorneys' fees, the agreement violated public policy. Armendariz at 103.

5      Here the issue is much narrower. There are only two limitations being placed on Plaintiffs. The first

6  is a time limitation. It reduces the time period permissible for an SSR to bring a claim to just one year. The

7  question is whether such a time limitation prevents the SSRs from effectively vindicating their statutory cause

8  of action in the arbitral forum. The Court finds that it does.

9      The statute of limitations is of particular importance in the FLSA. This is because while the FLSA

10  generally imposes a two-year statute of limitations, it expands that limitation to three years for an

11  employer's willful violation. 29 U.S.C.A. § 201 et seq. This two-tiered statute of limitations "makes it

12  obvious that Congress intended to draw a significant distinction between ordinary violations and willful

13  violations [of the FLSA]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132 (1988).

14      The second limitation gives the arbitrator the discretion to award costs and attorneys' fees to the

15  prevailing employee plaintiff. Under the FLSA, a prevailing employee is entitled to such an award. The

16  Court observes that the provision in the 1999 and 2001 Agreements does not exclude attorneys' fees and

17  costs, it merely provides that they are left to the discretion of the arbitrator. Thus, the provision at issue as

18  not as egregious as the one found in Armendariz, where they were expressly excluded. While the

19  Agreements in the case at hand do deprive a prevailing plaintiff of the guarantee that he will be awarded

20  attorneys' fees and costs, the Court finds that this provision does not raise to the same level of

21  unconscionability as the one in Armendariz.

22      Given the unequal bargaining power between the parties, however, the Court has strong concerns

23  that such limitations could so tip the balance in favor of Cintas as to render the entire Agreement

24  unconscionable. What keeps the Court from finding so is that the limitations in the Agreements are far less

25  egregious than those found in Armendariz. They do not entirely eviscerate a SSR's ability to recover.

26  Rather, they affect the ability to recover for wilful violations and they fail to guarantee attorneys' fees and

27  costs to a prevailing employee.

28      Under California law, courts have discretion to sever an unconscionable provision or refuse to

28

United States District Court
For the Northern District of California

1    enforce the contract in its entirety. Circuit City, 279 F.3d at 895 (citing Cal. Civ.Code § 1670.5(a)). "If

2    the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from

3    the contract by means of severance or restriction, then such severance and restriction are appropriate." Id.

4    (citing Armendariz, 24 Cal.4th at 124). If "the offending provisions can be excised from the contract ...

5    then the remainder of the contract can be enforced." Mercuro v. Superior Court, 96 Cal.App.4th 167,

6    184 (2002).

7            Accordingly, the Court exercises its discretion to sever the limit on the statute of limitations and the

8    lack of a guarantee of attorneys' costs and fees from the Agreements.

9        **4.    Does the state permit parties to agree to expand one party's right to remedies?**

10           Armendariz teaches that while an agreement may favor one party, when it favors the party with

11   greater bargaining power, it should be viewed with suspicion and reviewed carefully. It requires that the

12   Court review the agreement and, if it finds multiple defects, then the fact that it favors one party can make

13   the agreement unconscionable. This is because multiple defects "indicate a systematic effort to impose

14   arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to

15   the employer's advantage." Armendariz, 24 Cal.4th at 124. Here, the key provision at issue is the

16   Irreparable Harm Clause, which allows Cintas to seek a TRO without having to prove irreparable harm.

17           In California, "a trade secrets plaintiff who shows likely success on the merits of its claim is not

18   entitled to a presumption of irreparable harm warranting preliminary injunctive relief." Pacific Aerospace &

19   Electronics, Inc. v. Taylor, 295 F.Supp.2d 1188, 1198 (E.D.Wash. 2003) (citing Campbell Soup Co. v.

20   ConAgra, Inc., 977 F.2d 86, 92-93 (3rd Cir.1992)); Gable-Leigh, Inc. v. North American Miss, 2001

21   WL 521695, *19 (C.D.Cal. 2001) ((citing Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92-93

22   (3rd Cir.1992)); Symantec Corp. v. McAfee Assoc., Inc., 1998 WL 740798, * 2, n. 6 (N.D. Cal. 1998).

23           Thus, in California the Irreparable Harm Clause eases Cintas' burden in obtaining a TRO or

24   preliminary injunction. It does not, however, so reduce Cintas' burden as to render filing for such relief a

25   mere formality. To obtain the TRO, Cintas must still persuade a court that it is likely to succeed on the

26   merits of its trade secret, non-competition covenant claim. Dumas v. Gommerman, 865 F.2d 1093, 1095

27   (9th Cir.1989); Apple Computer Inc. v. Formula Int'l, Inc., 725 F.2d 521, 525 (9th Cir.1984). Thus, for

28   example, Cintas must still demonstrate that it owns trade secrets and that those trade secrets are at risk for

29

United States District Court
For the Northern District of California

1 disclosure. In other words, while the Irreparable Harm Clause may excuse Cintas from having to make a

2 showing of harm, it does not render an employee helpless to defend himself against Cintas' claim.

3       **5.**    **Are the circumstances under which the SSRs signed the agreement otherwise**

4                **unconscionable?**

5 Plaintiffs did not provide any evidence that the circumstances where unconscionable.

6       **6.**    **Do the factors taken as a whole demonstrate unconscionability? That is, under the**

7                **applicable state law, would severing the unconscionable provisions render the**

8                **agreement enforceable, or is the agreement so permeated with unconscionability**

9                **that the Court should not enforce it?**

10       While this is indeed a close call, the Court finds that the Agreements here do not rise to the level of

11 unconscionability found in Armendariz. There is no evidence that they are contracts of adhesion and the

12 Court has severed the provisions limiting the California SSRs' remedies. Because the Court has been able

13 to cure this defect, it finds that the Agreements are not marred by multiple defects that indicate a systematic

14 effort to impose arbitration as an inferior forum that works to Cintas' advantage. Cf. Armendariz, 24

15 Cal.4th at 124. Finally, in determining that the Agreements are enforceable in California, the Court is

16 persuaded in part by the state court's enforcement of the identical agreement. Vaca v. Cintas Corp., Case

17 No. BC260459, Superior Court of the State of California, County of Los Angeles, Order Granting In Part

18 Defendant's Motion to Compel Arbitration and Stay Judicial Proceedings of October 19, 2001. (Cintas

19 Request for Judicial Notice[10], Exh. C.) The Court observes, however, that had it been reviewing the 1996

20 Agreement, in which losing plaintiffs are required to pay arbitration costs, it would have more likely than not

21 found that the Agreement was indeed unconscionable and unenforceable as a whole. In combination with

22 the other deficiencies discussed herein, the "loser pays" provision would so heavily favor Cintas and would

23 so impair a plaintiff's ability to seek recovery that the Agreement most likely would have been manifestly

24 unfair.

25 **I.**    **Colorado**

26       The parties agree that Plaintiff Jamarillo's signed the 1996 Agreement in Colorado. "Colorado

27 

28       [10]The Court previously granted Cintas' Request for Judicial Notice.

United States District Court
For the Northern District of California

1  public policy strongly favors the resolution of disputes through arbitration." Byerly v. Kirkpatrick Pettis

2  Smith Polian, Inc., 996 P.2d 771, 773 (Colo. Ct. App. 2000). Thus, any doubts about the scope of an

3  arbitration provision are to be resolved in favor of arbitration.

4      **1.**     **Does the state require that the arbitration clause be bilateral?**

5      The issue does not apply. Plaintiffs have not alleged that Colorado requires bilateral arbitration. The

6  Court's research reveals that Colorado does not require it. The fact that other provisions in the policy afford

7  remedies to defendant, but not to plaintiff, outside the arbitration process does not make the arbitration

8  provision unenforceable. "Under Colorado law, every contractual obligation need not be mutual as long as

9  each party has provided some consideration for the contract." Rains v. Foundation Health Systems Life &

10  Health, 23 P.3d 1249, 1255 (Colo. 2001); see also McCoy v. Pastorius, 246 P.2d 611 (Colo. 1952);

11  Sedalia Land Co. v. Robinson Brick & Tile Co., 475 P.2d 351 (Colo.App. 1970). Accordingly, an

12  arbitration clause need not be bilateral or mutual as long as the parties have exchanged some form of

13  consideration. Rains, 23 P.3d at 1255.

14      **2.**     **If it does not, then is the absence of bilateral arbitration a factor to be considered in**

15                    **determining unconscionability?**

16      Nor does Colorado find the lack of bilateral arbitration a factor to be considered in

17  unconscionability. As long as the parties have mutually agreed to do something, bilaterality is unnecessary.

18  Id.

19      **3.**     **Does the state hold that "loser pay"provisions of arbitration agreements are**

20                    **unconscionable?**

21      In Shankle v. B-G Maint. Mgmt. of Co., Inc., 163 F.3d 1230 (10th Cir.1999), the Tenth Circuit

22  found an arbitration agreement unenforceable where a plaintiff was required to pay one-half the costs of

23  arbitration because such a requirement effectively limited access to a forum for resolution of claims.

24  Similarly, in Gourley v. Yellow Transp., LLC, 178 F. Supp. 2d 1196, 1203 (D.Colo. 2001), the court

25  found that an arbitration provision that requires the parties to share the cost of arbitration without providing a

26  severability provision was unconscionable.

27      Under Colorado law, the "loser pay" provision is unconscionable. In contrast to Gourley, however,

28  here the 1996 Agreement provides that any provisions deemed unconscionable or illegal may be severed.

United States District Court
For the Northern District of California

1    Accordingly, the Court has the power to sever it.

2        **4.    Does the state permit parties to constrict statutory remedies?**

3        Under Shankle an arbitration agreement is enforceable if it provides for all of the types of relief that

4    would otherwise be available in court. 163 F.3d at 1234. Shankle also cited Graham Oil Co. v. ARCO

5    Prod. Co., 43 F.3d 1244, 1247-48 (9th Cir.1994) for the proposition that arbitration clauses may be

6    rendered unenforceable if they do not provide for all the remedies available under a statute. Shankle, 163

7    F.3d at 1234; Graham, 43 F.3d at 1247-48 (finding arbitration clause unenforceable because it prohibited

8    recovery of exemplary damages, which were specifically available under the statute at issue). This suggests

9    that in the Tenth Circuit, "an arbitration agreement cannot be used to eviscerate the law by removing all but

10   the most meager forms of relief that would be available in the judicial forum." Clary v. Stanley Works, WL

11   21728865, at *5 (D.Kan. Jul. 24, 2003) (reviewing circuit law). The arbitration agreement must give the

12   prospective litigant the ability to effectively vindicate his statutory cause of action in order for the "the statute

13   [to] continue to serve both its remedial and deterrent function." Shankle, 163 F.3d at 1234.

14       The Court has already found that the statute of limitations is of particular importance in the FLSA.

15   This is because while the FLSA generally imposes a two-year statute of limitations, it expands that limitation

16   to three years for an employer's willful violation. 29 U.S.C.A. § 201 et seq; see also, McLaughlin v.

17   Richland Shoe Co., 486 U.S. 128, 132 (1988). The time limitation imposed by Cintas effectively

18   eviscerates Plaintiff Jamarillo's ability to recover for wilful violations of the FLSA. The Court has also

19   observed that if the Agreement does not guarantee an award of attorneys' fees and costs, then the employee

20   is impeded from vindicating his rights. Thus, these two provisions under Colorado law are unconscionable.

21       **5.    Does the state permit parties to agree to expand one party's right to remedies?**

22       "The doctrine of unconscionability is directed against one-sided oppressive and unfairly surprising

23   contracts, and not against the consequences per se of uneven bargaining power or even a simple

24   old-fashioned bad bargain." University Hills Beauty Academy v. Mountain States Tel. & Tel. Co., 554

25   P.2d. 723, 725 (Colo.App. 1976). Parties "should be permitted to enter into contracts that actually may be

26   unreasonable or which may lead to hardship on one side." Id. at 726.

27       Under this standard, Colorado does not require that an agreement be fair. It can be one-sided.

28   Accordingly, a party like Cintas may draft a contract that favors its interest. Thus, while the Irreparable

1 Harm Clause may favor Cintas, it is not unconscionable under Colorado law.

2    **6.    Are the circumstances under which the SSRs signed the agreement otherwise**

3        **unconscionable?**

4        Jamarillo states in his declaration that he was told the he had to sign the Agreement as a condition of

5 being hired; that he felt he had to sign it because he needed the job; and he had only a few minutes to read it.

6 (Appendix of Plaintiffs' Declarations In Opposition to Cintas Corporation's Motion to Compel Arbitration,

7 Exh. 11.) Thus, it appears that Jamarillo may have felt pressured to accept the terms of the Agreement

8 because he needed employment. This alone, however, does not rise to the level of, fraud, mistake, duress.

9 See, Rishel v. Pacific Mut. Life. Ins. Co. of Cal., 78 F.2d 881, 884 fn.1 (10th Cir. 1935).

10    **7.    Do the factors taken as a whole demonstrate unconscionability?  Under the**

11        **applicable state law, would severing the unconscionable provisions render the**

12        **agreement enforceable, or is the agreement so permeated with unconscionability**

13        **that the Court should not enforce it?**

14        "It is only where it turns out that one side or the other is to be penalized by the enforcement of the

15 terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result

16 without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in

17 the enforcement of such unconscionability." University Hills Beauty Academy, 554 P. 2d at 726. The Court

18 has determined that under Colorado law, there are two unconscionable provisions: the "loser pay" provision

19 and the statute of limitations provision. The Court has the option of either severing these provisions to make

20 the 1996 Agreement enforceable, or finding that they render the Agreement so one-sided that they provoke

21 a profound sense of injustice. Because Colorado heavily favors arbitration, the Court exercises its discretion

22 to sever these two provisions. Accordingly, the Jamarillo Arbitration Clause is enforceable. The "loser pay"

23 provision and the statute of limitations provision, however, are severed.

24 **J.    Connecticut**

25        Plaintiff Fragola signed the 1999 version of the Agreement in Connecticut.

26        Connecticut has wholeheartedly endorsed arbitration as an effective alternative method of settling

27 disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. Fink v.

28 Golenbock, 680 A.2d 1243, 1260 (Conn. 1996); O & G/O'Connell Joint Venture v. Chase Family Ltd.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  Partnership No. 3, 523 A.2d 1271 (Conn. 1987).

2      **1.**    **Does the state require that the arbitration clause be bilateral?**

3      This issue does not apply to the analysis.  Plaintiffs have not alleged that bilateral arbitration is

4  necessary.

5      **2.**    **If it does not, then is the absence of bilateral arbitration a factor to be considered in**

6              **determining unconscionability?**

7      Connecticut has rejected the notion that the absence of bilateral arbitration is an element of

8  unconscionability.  Doctor's Assoc., Inc. v. Distajo, 66 F.3d 438, 451 (2nd Cir. 1995).

9      **3.**    **Does the state hold that "loser pay all"provisions of arbitration agreements are**

10              **unconscionable?  If it does, may the Court sever the provision?**

11      Fragola signed the 1999 version so this issue does not apply.

12      **4.**    **Does the state permit parties to constrict statutory remedies?**

13      Connecticut reads Mitsubishi Motors, 473 U.S. 614 to require that a party be able to effectively

14  vindicate her rights in arbitration.  Brooks v. Travelers Ins. Co., 297 F.3d 169 (2nd Cir. 2002).  This Court

15  has already observed that the time limits imposed by the Agreement prevent a SSR from vindicating a cause

16  of action for wilful infringement of the FLSA.  This Court has also observed that the 1999 Agreement does

17  not guarantee a prevailing employee will be awarded attorneys' fees and costs.  The FLSA provides such an

18  award because it encourages plaintiffs who can ill-afford such costs an opportunity to vindicate their rights.

19  Accordingly, the Court finds that under Connecticut law, these two provisions are unconscionable.

20      **5.**    **Does the state permit parties to agree to expand one party's right to remedies?**

21      "[T]he basic test is whether, in light of the general commercial background and the commercial

22  needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under

23  the circumstances existing at the time of the making of the contract" Family Financial Services, Inc. v.

24  Spencer, 677 A.2d 479 (Conn.App. 1996).

25      Under the Irreparable Harm Clause, to obtain a TRO or preliminary injunction, Cintas does not have

26  to show irreparable harm.  This Clause, however does not expand Cintas' rights in Connecticut.  It merely

27  mirrors them.  Connecticut's trade secret law provides that an aggrieved party may obtain an injunction

28  without showing irreparable harm.  "The rationale underlying [the] rule that the complainant is relieved of his

United States District Court
For the Northern District of California

1  burden of proving irreparable harm and no adequate remedy at law is that the enactment of the statute by

2  implication assumes that no adequate alternate remedy exists and that the injury was irreparable, that is, the

3  legislation was needed or else it would not have been enacted." <u>Conservation Commission v. Price</u>, 479

4  A.2d 187, 196 (Conn. 1984).

5       Moreover, the Clause does not eviscerate an employee's defenses. It does not go so far, as to

6  allow Cintas to obtain a TRO without, for example, proving that the employee had engaged in some wrong

7  doing.

8       Accordingly, the Irreparable Harm Clause is not unconscionable.

9       **6.**      **Are the circumstances under which the SSRs signed the agreement otherwise**

10              **unconscionable?**

11      Plaintiff Fragola states that he was told that to remain employed he had to sign the Agreement, that

12 he was given only a few minutes to do this, and that he was not told he had the option of not signing the

13 agreement. (Fragola Decl. ¶¶ 3-4). He was also never told that the agreement contained an arbitration

14 clause. (Id. ¶ 6.) He never received a copy of the agreement after he signed it. (Id. ¶ 7.) Although Fragola

15 was in the weaker position, he nonetheless was under an obligation to read the Agreement before signing it.

16 <u>Benevenuti Oil Co. v. Foss Consultants, Inc.</u>, 1999 WL 228938, *2 (Conn.Sup. April 6, 1999). Absent

17 fraud or duress, the failure to read a contract before signing it in no way diminishes its binding force. <u>E & F</u>

18 <u>Construction Co. v. Rissil Construction</u>, 435 A.2d 343

19 , 346 (1980); <u>Batter Building Materials Co. v. Kirschner</u>, 142 Conn. 1, 7 (1954); <u>see also</u> 17A Am.Jur.2d

20 Contracts § 225. The Court does not impute fraud or duress to these circumstances as described by

21 Fragola. While he may not have been told about the arbitration clause, at the very least he should have read

22 the Agreement.

23      **7.**      **Do the factors taken as a whole demonstrate unconscionability? Under the**

24              **applicable state law, would severing the unconscionable provisions render the**

25              **agreement enforceable, or is the agreement so permeated with unconscionability**

26              **that the Court should not enforce it?**

27      Reviewing the Agreement under Connecticut law, then, the Court observes that two of the

28 provisions in the Agreement are unconscionable – the statute of limitations provision and the attorneys' fees

United States District Court
For the Northern District of California

1 and costs provision. They restrict a plaintiff's access to a forum to fully vindicate his rights. Thus, the Court

2 must determine whether the unconscionability of these two provisions so permeates the Agreement as to

3 render the Agreement unenforceable, or whether the Court may simply sever them.

4       Under Connecticut law, "the decision between substituting a new term for the failed provision and

5 refusing to enforce the agreement altogether turns on the intent of the parties at the time the agreement was

6 executed, as determined from the language of the contract and the surrounding circumstances." Zechman v.

7 Merrill Lynch, Pierce, Fenner & Smith, Inc., 742 F.Supp. at 1364. "To determine this intent, courts look to

8 the 'essence' of the arbitration agreement; to the extent the court can infer that the essential term of the

9 provision is the agreement to arbitrate, that agreement will be enforced...." Id. Here, there is no doubt that

10 the essential term of the agreement is to arbitrate an employees' claims against Cintas.

11       The doctrine of unconscionability has been employed by Connecticut courts to deny enforcement to

12 harsh and unreasonable contract terms. Leasing Serv. Corp. v. Justice, 673 F.2d 70, 71 (2d Cir.1982); see

13 also, Restatement Second Contracts § 208 (if a contract or term thereof is unconscionable at the time the

14 contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract

15 without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any

16 unconscionable result). Doubts regarding whether or not an issue is arbitrable should be resolved in favor of

17 arbitration. John A. Errichetti Associates v. Boutin, 439 A.2d 416 (1981).

18       Here, there is no doubt that the essential term of the Agreement is to arbitrate an employees' claims

19 against Cintas. Connecticut favors arbitration. The Agreement provides a severability provision. If the

20 Court severs the two provisions it finds unconscionable, the Agreement becomes enforceable, a result that

21 Connecticut's policy favors. Accordingly, the Court severs the statute of limitations provision and the award

22 of attorneys' fees and costs provision so that the FLSA rules on these two issues fully apply. Having done

23 so, the Agreement as a whole is not unconscionable. The Court enforces it.

24 **K.**    **Illinois**

25       Wasmer, Zadnick, Jay, Chainuck, Anderson and Carson signed their employment agreements in

26 Illinois. None signed the 1996 version.

27       "[The] plaintiff bears the burden of establishing that the arbitration clause is unenforceable." Stewart

28 v. Molded Plastic's Research of Ill., Inc., No. 01 C 4232, 2001 WL 1607464, *1 (N.D.Ill. Dec. 17,

1  2001), (citing Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226-27 (1987). "In assessing

2  whether a contractual provision should be disregarded as unconscionable, Illinois courts look to the

3  circumstances existing at the time of the contract's formation, including the relative bargaining positions of the

4  parties and whether the provisions' operation would result in unfair surprise." Cognitest Corp. v. Riverside

5  Pub. Co., 107 F.3d 493, 499 (7th Cir.1997) (citing J.D. Pavlak, Ltd. v. William Davies Co., 351 N.E.2d

6  243, 246 (Ill.App.Ct.1976)). "A contract is unconscionable when, viewed as a whole, 'it is improvident,

7  oppressive, or totally one-sided.'" We Care Hair, 180 F.3d 838, 843 (7th Cir. 1999) (quoting Streams

8  Sports Club, Ltd. v. Richmond, 457 N.E.2d 1226, 1232 (Ill.1983)).

9      **1.    Does the state require that the arbitration clause be bilateral?**

10      Illinois courts often invalidate arbitration agreements when they possess "earmarks of an adhesive

11  contract," or, in other words, they "lack mutuality of remedy and [are] the result of unequal bargaining

12  positions in which the [signatory] has little opportunity for arm's length negotiation." Parker v. Am. Family

13  Ins. Co., 734 N.E.2d 83, 85 (Ill.App.Ct. 2000). This does not, however, impose a requirement that the

14  arbitration clause be mutual. The parties' obligations need not be identical. Hofmeyer v. Willow Shores

15  Condo. Ass'n, 722 N.E.2d 311, 315 (Ill.App.Ct. 1999).

16      **2.    If it does not, then is the absence of bilateral arbitration a factor to be considered in**

17          **determining unconscionability?**

18      The absence of bilateral arbitration may reflect unequal bargaining power, but that alone does not

19  render the Agreement unenforceable.

20      **3.    Does the state hold that "loser pay all"provisions of arbitration agreements are**

21          **unconscionable?**

22      This issue is not applicable to these agreements.

23      **4.    Does the state permit parties to constrict statutory remedies?**

24      "Because the adequacy of arbitration remedies has nothing to do with whether the parties agreed to

25  arbitrate or if the claims are within the scope of that agreement" challenges regarding limitation on statutory

26  remedies must be decided by the arbitrator. Hawkins v. Aid Association for Ltuehrans, 338 F.3d 801, 807

27  (7th Cir. 2002). Thus, the arbitrator, not this Court interpreting Illinois contract law, shall determine whether

28  the Arbitration Clause's time limitation is permissible. It `is not within the Court's prerogative to find the

United States District Court

For the Northern District of California

1  statute of limitations or award of attorneys' costs and fees provisions unconscionable.

2     **5.    Does the state permit parties to agree to expand one party's right to remedies?**

3     "The presence of a commercially unreasonable term, in the sense of a term that no one in his

4  right mind would have agreed to, can be relevant to drawing an inference of unconscionability but cannot be

5  equated to it." Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd., 970

6  F.2d 273, 281 (7th Cir.1992); Amoco Oil Co. v. Ashcraft, 791 F.2d 519, 522 (7th Cir.1986)).

7     "A restrictive covenant may be held enforceable only if the time limit and geographic scope are

8  reasonable, trade secrets or confidential information are involved, and the restriction is reasonably necessary

9  for the protection of a legitimate business interest." Lee/O'Keefe Ins. Agency v. Ferega, 516 N.E.2d 1313,

10  1319 (Ill.App.Ct. 1987).  Under the Irreparable Harm Clause, Cintas may obtain a TRO or Preliminary

11  Injunction from a court without making a showing of irreparable harm.  Cintas must still meet the state's

12  other requirements for obtaining such relief, however, including demonstrating that it owns trade secrets and

13  that those trade secrets are involved in the dispute.  Thus, the Irreparable Harm Clause is not commercially

14  unreasonable.  It does not, for example, allow Cintas to obtain a TRO without proof of its trade secrets, nor

15  does it prohibit an employee from asserting that the covenant is overbroad and unreasonable, in violation of

16  Illinois law.

17     Thus, while the Irreparable Harm Clause favors Cintas, the Court does not find that in the

18  context of the entire Agreement, the Clause is so unreasonable that no one in his right mind would have

19  agreed to it.

20     **6.    Are the circumstances under which the SSRs signed the agreement otherwise**

21     **unconscionable?**

22     The Illinois Plaintiffs allege that they signed the Agreement without knowing about the Arbitration

23  Clause.  (Plaintiffs' Exh. 1, Anderson Decl. ¶ 4; Exh. 5-6, Chainuck Decl. ¶ 5; Exh. 12, Jay Decl. ¶ 2;

24  Exh. 18, Wasmer Decl. ¶ 2; Exh. 21, Zadnick Decl. ¶ 3-5.)  However, "[a] party cannot close his eyes

25  to the contents of a document and then claim that the other party committed fraud merely because it

26  followed this contract." Northern Trust Co. v. VIII Michigan Associates, 657 N.E.2d 1095, 1104

27  (Ill.App. 1995).  The Court cannot construe the circumstances as unconscionable where all that Plaintiffs

28  allege is that they failed to read what they should have made an effort to read.

7.    Do the factors taken as a whole demonstrate unconscionability?  Under the applicable state law, would severing the unconscionable provisions render the agreement enforceable, or is the agreement so permeated with unconscionability that the Court should not enforce it?

Reviewing the Agreements under Illinois Law, the Court observes that the Agreement certainly favors Cintas, but that is not enough to render it unconscionable.  Both parties are bound to arbitrate the employee's statutory claims.  Both parties are bound to the arbitrator's decision.  The arbitrator will decide the appropriateness of the remedies provisions, including the limitations on them.  Viewed as whole, then, the Court finds that the Agreement is not improvident, oppressive or one-sided.

## L.    Indiana

Plaintiffs Cruz and Coomer signed the Agreements in Indiana.

1.    Does the state require that the arbitration clause be bilateral?

Plaintiffs rely on Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1131 (7th Cir. 1997) and Geiger v. Ryan's Family Steak House, Inc., 134 F. Supp. 2d 985, 1000 (S.D.Ind. 2001) for the proposition that Indiana requires an arbitration clause to be bilateral.  A careful review of those two cases, however, demonstrates that Indiana does not impose a per se rule.  Rather, what Indiana requires is that there be consideration and an exchange of promises.  In Gibson, the Seventh Circuit observed that the plaintiff-employee had agreed to arbitrate her claims while the employer made no such agreement and had not offered any other kind of consideration either.  Accordingly, those two factors voided the agreement.

In Geiger the court found an arbitration agreement unenforceable because it was biased, imposed arbitration fees on the employee-plaintiffs, the employee-plaintiffs did not understand the terms of the agreement, the employer-defendant retained the right to change the agreement at will, and the exchange of consideration was illusory.  Thus, Gibson and Geiger do not require that an arbitration clause be bilateral.  It is merely one of a number of factors a court considers in determining whether or not an agreement is unconscionable or otherwise unenforceable.

2.    If it does not, then is the absence of bilateral arbitration a factor to be considered in determining unconscionability?

United States District Court
For the Northern District of California

Just as <u>Geiger</u> and <u>Gibson</u> considered the absence of bilateral arbitration a factor, so too may this Court.

3.    **Does the state hold that "loser pay all"provisions of arbitration agreements are unconscionable?  If it does, may the Court sever the provision?**

This issue is not applicable to the Indiana Plaintiffs' Agreements.

4.    **Does the state permit parties to constrict statutory remedies?  If it does not, may the Court sever the provision?**

The Seventh Circuit mandates that the arbitrator, not this Court shall determine whether the Arbitration Clause's time limitation is permissible. <u>Hawkins v. Aid Association for Lutherans</u>, 338 F.3d 801, 807 (7th Cir. 2002).

5.    **Does the state permit parties to agree to expand one party's right to remedies?**

"When a party can show that the contract...was in fact an unconscionable one, due to a prodigious amount of bargaining power on behalf of the stronger party, which is used to the stronger party's advantage and is unknown to the lesser party, causing a great hardship and risk on the lesser party, the contract ...should not be enforceable...." <u>Weaver v. Am. Oil Co.</u>,276 N.E.2d 144, 146 (Ind. 1971).

The one provision that appears to favor Cintas is the Irreparable Harm Clause.  It relieves Cintas from demonstrating irreparable harm.

In Indiana, noncompetition agreements or covenants not to compete are in restraint of trade and are not favored by the law. <u>92 Burk v. Heritage Food Service Equipment</u>, 737 N.E.2d 803 (Ind.Ct.App.2000).  They are strictly construed against the employer and are enforced only if reasonable.  <u>Id.</u>  Covenants must be reasonable with respect to the legitimate interests of the employer, restrictions on the employee, and the public interest.  <u>Id.</u>  "In determining the reasonableness of the covenant, we examine at the outset whether the employer has asserted a legitimate interest that may be protected by a covenant.  If the employer has asserted a legitimate, protectible interest, then we determine whether the scope of the agreement is reasonable in terms of time, geography, and types of activity prohibited." <u>Titus v. Rheitone, Inc</u>, 758 N.E.2d 85, 92 (Ind.Ct.App. 2001).  "The employer bears the burden of showing that the covenant is reasonable and necessary in light of the circumstances."

40

1   Id. The employer must demonstrate, in other words, that "the former employee has gained a unique

2   competitive advantage or ability to harm the employer before such employer is entitled to the protection

3   of a noncompetition covenant." Burk, 737 N.E.2d at 811 (quoting Slisz v. Munzenreider, 411 N.E.2d

4   700, 705 (Ind.Ct.App. 1980) (citations omitted)).

5       The Irreparable Harm Clause is not so thoroughly one-sided as to be unduly burdensome.

6   Although Cintas is excused from demonstrating irreparable harm, to obtain a TRO or preliminary

7   injunction, Cintas still bears the burden of demonstrating its rights and that the covenant is necessary in

8   light of the circumstances.

9       **6.     Are the circumstances under which the SSRs signed the agreement otherwise**

10          **unconscionable?**

11      The Indiana Plaintiffs have not submitted any evidence on this issue.

12      **7.     Do the factors taken as a whole demonstrate unconscionability? Under the**

13          **applicable state law, would severing the unconscionable provisions render the**

14          **agreement enforceable, or is the agreement so permeated with unconscionability**

15          **that the Court should not enforce it?**

16      Reviewing the Agreement under Indiana law, the Court observes that the Agreement is not

17  bilateral and that it favors Cintas. While the Irreparable Harm Clause favors Cintas, it does not do so in

18  a manner that is unconscionable or oppressive. Plaintiffs have not been deprived of a forum to vindicate

19  their rights – they have one. The arbitrator and not this Court must decide the scope of an employee's

20  remedies. Both Plaintiffs and Cintas are bound by the decision of the arbitrator. The Agreements are,

21  therefore, enforceable.

22  **M.    Maryland**

23      Plaintiffs Acker, Bailey, Brennan, Bridges, Broadnax, M. Brown, R. Brown, Brumfield,

24  Coleman, Frederique, Greene, Gumbs, Handy, Locke, Mackall, Madden, Mimms, Murphy, Roberts,

25  Sullivan, Watson, Weekes, West, and Wood signed the Agreement in Maryland. Of these plaintiffs, all

26  but Plaintiff Coleman signed either the 1999 or 2001 Agreements, in which the award of attorneys' fees

27  and costs was left to the discretion of the arbitrator.

28      **1.     Does the state require that the arbitration clause be bilateral?**

41

Maryland has rejected the requirement that an arbitration clause be bilateral. Rather, it requires that for an arbitration clause to be mutual, the parties must agree to be bound by the results of the arbitration. Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 378-79 (4th Cir.). "An agreement to 'be bound by the arbitration process' does not necessarily mean an agreement to submit the employer's claims to arbitration; rather, it more likely means that the employer agreed, with respect to any claims the employer has agreed should be submitted to arbitration, to be bound by the rules of the arbitration procedure and to be bound by its results." Id.

2. **If it does not, then is the absence of bilateral arbitration a factor to be considered in determining unconscionability?**

Although cases before Johnson have considered the absence of bilateral arbitration as a factor, Holmes v. Coverall N. Am., 649 A.3d 365 (Md. 1994); Shotto v. Laub, 632 F.Supp. 516 (D.Md. 1986), later cases have not determined to what degree if any Johnson overruled bilateral arbitration as a factor. Because the status is unclear, the Court includes it in its analysis.

3. **Does the state hold that "loser pay"provisions of arbitration agreements are unconscionable?**

This issue does not apply to the Maryland Plaintiffs.

4. **Does the state permit parties to constrict statutory remedies?**

Maryland reads Mitsubishi Motors, 473 U.S. 614 to require that a party be able to effectively vindicate her rights in arbitration. Etokie v. Carmax Auto Superstores, Inc., 133 F. Supp. 2d 390, 393-394 (D.Md. 2000); Hooters of America Inc. v. Phillips, 39 F. Supp. 2d 582, 613 (D.S.C. 1998). This Court has already observed that the time limitation imposed by the Agreement prevents an employee from vindicating a cause of action for wilful infringement of the FLSA. Accordingly, under Maryland law it is unconscionable .

Similarly, FLSA policy provides an award of attorneys' fees and costs to prevailing plaintiffs in order to encourage plaintiffs to vindicate their rights. Because the 1999 and 2001 versions of the Agreement leave this award to the arbitrator's discretion, the Court finds that this provision unconscionable. It does not comply with the FLSA.

5. **Does the state permit parties to agree to expand one party's right to remedies?**

42

United States District Court
For the Northern District of California

1    **If it does not, may the Court sever the provision?**

2    The "mere fact that one party to a contract is larger than the other cannot be the basis of a

3    finding of unconscionability of an arbitration clause in a contract." Stedor Enter., Ltd. v. Armtex, Inc.,

4    947 F.2d 727 (4th Cir.1991). When there are multiple one-sided provisions, then a court may strike the

5    agreement as being unconscionable. Hooters of America, Inc. v. Phillips, 39 F. Supp. 2d 582, 614

6    (D.S.C. 1998) (interpreting a South Carolina contract).

7    Here, the Irreparable Harm Clause allows Cintas to seek a TRO or preliminary injunction

8    without showing irreparable harm. In the Fourth Circuit, irreparable harm is presumed when a trade

9    secret or customer list are at issue. PHP Healthcare Corp. v. EMSA Ltd. Partnership, 14 F.3d 941,

10   946 (4th Cir. 1993). Thus, the Irreparable Harm Clause merely mirrors the presumption that the Fourth

11   Circuit already provides. Accordingly, the Irreparable Harm clause is not so one-sided as to be

12   oppressive.

13   6.    **Are the circumstances under which the SSRs signed the agreement otherwise**

14   **unconscionable?**

15   Here the Court considers: (1) the nature of the injuries suffered by the party sought to be held to

16   the contract; (2) whether that party is a substantial business concern; (3) disparity in the parties'

17   bargaining power; (4) the parties' relative sophistication; (5) whether there is an element of surprise in the

18   contract's terms; and (6) the conspicuousness of the terms. Carlson v. General Motors Corp., 883 F.2d

19   287 (4th Cir.1989).

20   There is no question that the parties have disparate bargaining power, or that the SSRs are far

21   less sophisticated in legal matters than Cintas, a corporation. At the same time, however, arbitration

22   does not prevent the SSRs from obtaining relief for their injuries and the terms of the Arbitration Clause

23   are as conspicuous as the rest of the terms.

24   Of the Maryland Plaintiffs who submitted declarations, Plaintiff Broadnax admits that he was told

25   about the arbitration clause. (Plaintiffs' Exh. 2, Broadnax Decl. ¶ 2.) Plaintiff West complains that he

26   was not informed about the arbitration clause and felt that he was being rushed to sign it. (Plaintiffs' Exh.

27   19, West Decl. ¶ 3-4.) These allegations alone do not demonstrate that the circumstances of the signing

28   were unconscionable. The terms of the arbitration clause were as conspicuous as all of the other terms

43

United States District Court

For the Northern District of California

1  and "being rushed" is not the equivalent to being tricked.

2    In contrast, the circumstances surrounding Plaintiff's Brown signing of the Agreement render the

3  signing unconscionable. Brown requested that he be able to take the Agreement home for his or an

4  attorney's review. (Plaintiffs' Exh. 3, Brown Decl. ¶ 4.) After Brown refused to sign the Agreement, he

5  was called into his supervisor's office and was told that he was required to the sign it. (Brown Decl. ¶

6  5.) Brown again refused. (Id.) His supervisor responded that it "would have to get done." (Id.)

7  Brown felt threatened. (Id.) Although Brown took an evening to think about it, he eventually capitulated

8  and signed the Agreement. (Brown Decl. ¶ 6.) Considering the enormous bargaining power Cintas

9  wields as the employer, and considering that Cintas thwarted Brown in his attempt to have the

10  Agreement reviewed by an attorney, the Court finds that the circumstances during the formation of the

11  Brown-Cintas Agreement were unconscionable.

12    7.    **Do the factors taken as a whole demonstrate unconscionability? Under the**

13    **applicable state law, would severing the unconscionable provisions render the**

14    **agreement enforceable, or is the agreement so permeated with unconscionability**

15    **that the Court should not enforce it?**

16  Maryland strongly disfavors nullifying agreements:

17  Fearing the disruptive effect that invocation of the highly elusive public policy principle

18  would likely exert on the stability of commercial and contractual relations, Maryland

19  courts have been hesitant to strike down voluntary bargains on public policy grounds,

20  doing so only in those cases where the challenged agreement is patently offensive to the

21  public good, that is, where the common sense of the entire community would ...

22  pronounce it invalid. This reluctance on the part of the judiciary to nullify contractual

23  arrangements on public policy grounds also serves to protect the public interest in having

24  individuals exercise broad powers to structure their own affairs by making legally

25  enforceable promises, a concept which lies at the heart of the freedom of contract

26  principle.

27  Maryland-National Capital Park and Planning Comm'n v. Washington National Arena, 386 A.2d 1216

28  (1978) (quotations and citations omitted).

44

United States District Court
For the Northern District of California

1    Maryland law strongly favors enforcing contracts. The Maryland Agreements provide a

2    severability clause. Thus, the Court severs the two provisions in the Maryland Agreements it finds

3    unconscionable – the statute of limitations clause and the failure to guarantee attorneys' fees and costs

4    clause. With these two unconscionable provisions severed, the Maryland Agreements are enforceable.

5        The Court finds that the circumstances of the Brown-Cintas Agreement are unconscionable, not

6    because of the terms of the Agreement, but because of the manner in which Brown was pressured to

7    sign it. Accordingly, the Court does not compel Plaintiff Brown to arbitrate his grievances. It does,

8    however, compel the remaining Maryland plaintiffs to arbitrate.

9    **N.    Michigan**

10       Plaintiffs Hodge, Woods, Ratcliff, Lightfoot, Krol, Abney, Seath, DeGraaf, Van Koevering, and

11   Wise signed the Agreements in Michigan.

12       **1.    Does the state require that the arbitration clause be bilateral?**

13       While Michigan requires an agreement to be mutual, it does not require an arbitration clause to

14   be bilateral. Rather, courts reviewing arbitration clauses have found a lack of mutuality where the

15   "arbitration provision []may be unilaterally changed by the employer at any time in the employer's sole

16   discretion...." Smith v. Chrysler Financial Corp., 101 F. Supp. 2d 534, 538 (E.D.Mich. 2000). No

17   courts have found a lack of mutuality where the arbitration clause was also not bilateral. Nor have these

18   courts considered it as a substantive factor.

19       **2.    If it does not, then is the absence of bilateral arbitration a factor to be**

20           **considered in determining unconscionability?**

21       Plaintiffs have not cited to a single case that mandates that this factor be considered in an overall

22   analysis.

23       **3.    Does the state hold that "loser pay" provisions of arbitration agreements are**

24           **unconscionable? If it does, may the Court sever the provision?**

25       This issue does not apply to the Michigan Plaintiffs.

26       **4.    Does the state permit parties to constrict statutory remedies? If it does not,**

27           **may the Court sever the provision?**

28       The Sixth Circuit holds that "provisions in arbitration agreements that limit the remedies available

45

United States District Court

For the Northern District of California

1    in the arbitral forum, compared to those remedies available in the judicial forum, are also

2    unenforceable." Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 653 (6th Cir. 2003). The time

3    limitation, which shortens the statute of limitations provided by the FLSA, effectively eviscerates a

4    plaintiff's ability to recover for wilful violations of the FLSA. Accordingly, the Court finds it

5    unconscionable.

6        Additionally, the lack of a guarantee of attorneys' fees and costs to a prevailing employee

7    impairs an aggrieved employee's ability to pursue his case. Accordingly, the Court finds it

8    unconscionable.

9        **5.    Does the state permit parties to agree to expand one party's right to remedies?**

10       **If it does not, may the Court sever the provision?**

11       The Irreparable Harm Clause favors Cintas. Under Michigan law to determine whether it is

12   unconscionable "the basic test [is] in the light of the general commercial background and commercial

13   needs of the particular trade, [are] the clauses involved [] so one-sided as to be unconscionable under

14   the circumstances existing at the time of the making of the contract." Gianni Sport Ltd. v. Gantos, Inc.,

15   391 N.W. 2d 760, 762 (Mich.App. 1986). "The principle is one of prevention of oppression and unfair

16   surprise and not of disturbance of allocation of risks because of superior bargaining power." Id. In

17   other words, "if a [ ] clause appears reasonable to this Court, disparity in bargaining power between the

18   parties will not make the clause unenforceable." Michigan Ass'n of Psychotherapy Clinics v. Blue Cross

19   & Blue Shield of Michigan, 301 N.W.2d 33, 40-41 (Mich.App. 1980), modified on other grounds 306

20   N.W.2d 101 (1981).

21       Cintas uses the clause to protect what it deems vital – its trade secrets. The Sixth Circuit has

22   observed that irreparable harm clauses are not uncommon in employment agreements, and are not

23   prohibited by the Sixth Circuit. Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1134 (6th

24   Cir. 1990) ("Employment [ ] contracts, where a departing employee agrees not to compete or to reveal

25   trade or other company secrets learned in the course of employment for separate consideration, are not

26   uncommon....").

27       Accordingly, this Court finds that the Irreparable Harm Clause is reasonable and the uneven

28   bargaining power of the parties does not render it unenforceable.

United States District Court

For the Northern District of California

6.     Are the circumstances under which the SSRs signed the agreement otherwise unconscionable?

Plaintiffs have not submitted evidence on this issue.

7.     Do the factors taken as a whole demonstrate unconscionability?  Under the applicable state law, would severing the unconscionable provisions render the agreement enforceable, or is the agreement so permeated with unconscionability that the Court should not enforce it?

Taken as a whole, the Court observes the following about the Michigan Agreements.  The parties' respective bargaining power is uneven, but the Agreements themselves are mutual.  They require each party to be bound by the arbitrator's decision.  The Irreparable Harm Clause favors Cintas but is not unreasonable.  Two provisions of the Agreements are unconscionable because they limit an employee's ability to recover and to bring a claim – the statute of limitations and the lack of a guarantee of attorneys' fees and costs.  The Agreements provide a severability clause.  The Court, therefore, severs these two provisions.  Once severed, the Agreements as a whole are enforceable.

O.     Missouri

Plaintiff Cruse signed the Agreement in Missouri.  "An agreement choosing arbitration over litigation, even between parties of unequal bargaining power, is not unconscionably unfair."  Swain v. Auto Services, Inc., 2003 WL 22890022, at *3 (Mo.App.Ed. Dec. 9, 2003).

1.     Does the state require that the arbitration clause be bilateral?

Plaintiffs do not suggest that Missouri law does.

2.     If it does not, then is the absence of bilateral arbitration a factor to be considered in determining unconscionability?

Plaintiffs do not suggest that Missouri law does.

3.     Does the state hold that "loser pay all"provisions of arbitration agreements are unconscionable?  If it does, may the Court sever the provision?

The Missouri Plaintiff did not sign the 1996 Agreement.  This issue does not apply.

4.     Does the state permit parties to constrict statutory remedies?  If it does not, may the Court sever the provision?

47

United States District Court
For the Northern District of California

1         Questions regarding limitations on remedies in arbitration are to be addressed by the arbitrator,

2 not this Court. Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., 334 F.3d 721, 726 (8th Cir.

3 2003) ("[T]he party seeking to void the provisions [in an arbitration agreement] waiving punitive

4 damages and other relief ha[s] to address those arguments to the arbitrator."); Larry's United Super,

5 Inc. v. Werries, 253 F.3d 1083, 1086 (8th Cir. 2001) ("Whether federal public policy prohibits an

6 individual from waiving certain statutory remedies is an issue that may be raised when challenging an

7 arbitrator's award.").

8       **5.**     **Does the state permit parties to agree to expand one party's right to remedies?**

9                **If it does not, may the Court sever the provision?**

10         The one clause that favors Cintas is the Irreparable Harm Clause. "An employer may only seek

11 to protect certain narrowly defined and well-recognized interests, namely its trade secrets and its stock

12 in customers." Easy Returns Midwest, Inc. v. Schultz, 964 S.W.2d 450, 453 (Mo.App. E.D.1998).

13 Courts in Missouri will not always find irreparable harm when an employee has allegedly violated a non-

14 compete or trade secret clause. Carboline Co. v. Lebeck, 990 F.Supp. 762, (E.D.Mo. 1997) (for

15 purposes of preliminary injunction, finding no irreparable harm to employer; former employee would be

16 harmed by being denied opportunity to practice profession with no counterbalancing harm to former

17 employer). This is because "covenants not to compete are considered restraints on trade, they are

18 presumptively void and are enforceable only to the extent that they are demonstratively reasonable."

19 Armstrong v. Cape Girardeau Physician Associates, 49 S.W.3d 821, 826 (Mo.App. E.D. 2001);

20 Orchard Container Corp. v. Orchard, 601 S.W.2d 299, 303 (Mo.App. E.D. 1980). Thus, the

21 employer carries the burden of demonstrating that the clause is reasonable. Armstrong, 49 S.W.3d at

22 826.

23         Reviewing the Irreparable Harm Clause under Missouri law, it allows Cintas to obtain a TRO or

24 preliminary injunction without having to show harm. In some cases, this will mean that even where there

25 would be no harm to Cintas and great harm to an employee, the employee will still be subjected to the

26 TRO or preliminary injunction.

27         Given that the Irreparable Harm Clause so heavily favors Cintas and Missouri law disfavors such

28 clauses, the Court must ask whether the Irreparable Harm Clause reflects "an inequality so strong,

United States District Court

For the Northern District of California

1    gross, and manifest that it must be impossible to state it to one with common sense without producing an

2    exclamation at the inequality of it" or constitute an unduly harsh term of the contract. <u>State, Missouri</u>

3    <u>Department of Social Services, Division of Aging v. Brookside Nursing Center, Inc.</u>, 50 S.W.3d 273,

4    277 (Mo. banc 2001) (citing the Restatement (Second) of Contracts and the Uniform Commercial Code

5    definitions of "unconscionability").

6        The Court finds that it does not. Admittedly, it reduces Cintas' burden in obtaining a TRO or

7    preliminary injunction. A review of recent rulings from the Missouri courts, however, does not

8    demonstrate that a Missouri court will always render such a clause unenforceable. Rather, the courts

9    look to the circumstances and apply general principles to fact specific scenarios. <u>Compare</u> <u>Washington</u>

10   <u>County Memorial Hosp. v. Sidebottom</u>, 7 S.W.3d 542, 543- 44 (Mo.App. E.D. 1999) (covenant not

11   to compete reasonable and necessary to protect hospital's interest in "its patient base, as income from

12   patient billings constitutes its primary source of revenue."); <u>Superior Gearbox Co. v. Edwards</u>, 869

13   S.W.2d 239 (Mo.App. 1993) (five year non-compete clause enforceable); <u>Long v. Huffman</u>, 557

14   S.W.2d 911, 915 (Mo.App. W.D. 1977) (a covenant not to compete for five years within a radius of

15   60 miles of the City of Butler was reasonable, given that it did not impose a restriction greater than that

16   necessary to protect employer's private practice); <u>Willman v. Beheler</u>, 499 S.W.2d 770, 775 (Mo.

17   1973) (Missouri has no per se rule against enforcing covenants not to compete between medical

18   practitioners); <u>with</u> <u>Show-Time Video Rentals, Inc. v. Douglas</u>, 727 S.W.2d 426 (Mo.App. 1987)

19   (holding that noncompete covenants contained in contracts which are terminable at will should not be

20   enforced unless termination is in good faith).

21        In addition, to obtain the TRO Cintas must demonstrate to a court that the covenant is

22   reasonable and that the subject matter at issue involves trade secrets. Nor does the Clause effectively

23   prevent an employee from mounting a defense against the TRO or preliminary injunction. Thus, the

24   Clause is not unconscionable.

25    **6.**     **Are the circumstances under which the SSRs signed the agreement otherwise**

26          **unconscionable?**

27        Plaintiff Cruse's declaration does not demonstrate that he was badgered or misled into signing

28   the Agreement. While he may not have been told about the terms of the Agreement, he does not

49

United States District Court
For the Northern District of California

1   demonstrate that this is because Cintas was attempting to mislead him.  He does not state, for example,

2   that his questions were ignored.  "The parties voluntarily entered into the contract in question, and each

3   is held to know its terms and to have agreed to be bound thereby."  Furniture Mfg. Corp. v. Joseph,

4   900 S.W.2d 642, 647 (Mo.App.W.D. 1995).

5          **7.     Do the factors taken as a whole demonstrate unconscionability?  Under the**

6                 **applicable state law, would severing the unconscionable provisions render the**

7                 **agreement enforceable, or is the agreement so permeated with unconscionability**

8                 **that the Court should not enforce it?**

9          Based on the foregoing, the Court observes that the parties bargaining power is unequal, that the

10  limitation on a plaintiff's remedies are something to be decided by the arbitrator,  that the Agreement

11  favors Cintas, but that it is not unconscionable.  Accordingly, Plaintiff Cruse is compelled to arbitrate.

12  **P.     New Jersey**

13         Plaintiffs Edwards, Kelly, Huertas, Samuels, Williams, Charles and Qureshi signed the

14  Agreements in New Jersey.  Plaintiffs Huertas, Samuels, Williams and Qureshi signed the 1996 version.

15  New Jersey has a "well-recognized policy" and an "established State interest...favoring arbitration."

16  Martindale v. Sandvik Inc., 800 A.2d 872, 877 (N.J. 2002).  The New Jersey Supreme Court has held

17  that the creation of an employment relation is sufficient consideration to create a binding contract.  Id. at

18  879.

19         **1.     Does the state require that the arbitration clause be bilateral?**

20         Plaintiffs admit that New Jersey does not require arbitration to be bilateral.

21         **2.     If it does not, then is the absence of bilateral arbitration a factor to be**

22                 **considered in determining unconscionability?**

23         Plaintiffs do not suggest that New Jersey takes the absence of bilateral arbitration into

24  consideration.

25         **3.     Does the state hold that "loser pay all"provisions of arbitration agreements are**

26                 **unconscionable?  If it does, may the Court sever the provision?**

27         Plaintiffs Huertas, Samuels, Williams and Qureshi signed the 1996 version.  The Court has

28  already observed that the fees for arbitration can be expensive.  Neither New Jersey nor the Third

United States District Court
For the Northern District of California

1   Circuit has spoken on the issue. Dabney v. Option One Mortg. Corp., 2001 WL 410543, *3

2   (E.D.Pa. 2001). The Supreme Court has acknowledged, however, that large arbitration costs could

3   preclude a litigant from effectively vindicating federal statutory rights. Green Tree Financial Corp.

4   Alabama v. Randolph, 531 U.S. 79 (2000). Thus, the party seeking to avoid arbitration bears the

5   burden of establishing that likelihood of incurring such prohibitive costs. Id. at 522. The Third Circuit

6   has invalidated an arbitration agreement where it found three fundamental defects, one of which was the

7   "loser-pay" provision. Alexander v. Anthony Intern., L.P., 341 F.3d 256, 263 (3rd.Cir. 2003).

8       Because the loser-pay provision can be prohibitively expensive, the Court finds that this

9   provision is unconscionable.

10      **4.    Does the state permit parties to constrict statutory remedies?  If it does not,**

11             **may the Court sever the provision?**

12      In the Third Circuit, the limitation on remedies is an issue to be decided by the arbitrator. Great

13  Western Mortgage Corp. v. Peacock, 110 F.3d222, 232 (3d Cir. 1997) ("The availability of punitive

14  damages is not relevant to the nature of the forum in which the complaint will be heard. Thus availability

15  of punitive damages cannot enter into a decision to compel arbitration."). Thus, the arbitrator, not this

16  Court, shall decided the appropriateness of the time-limitation and the lack of guarantee of attorneys'

17  costs and fees.

18      **5.    Does the state permit parties to agree to expand one party's right to remedies?**

19             **If it does not, may the Court sever the provision?**

20      The one provision that strongly favors Cintas is the Irreparable Harm Clause.  It allows Cintas to

21  obtain a TRO or preliminary injunction from a court without first proving irreparable harm.  New Jersey

22  courts have struck down or modified non-competition agreements when they have been over broad.

23  Ingersoll-Rand Search Term End Co. v. Ciavatta, 542 A.2d 879 (N.J. 1988) (court found employee

24  invention holdover agreement was unreasonable and unenforceable where invention was not product of

25  work done by former employee while employed at company nor incorporated company's trade secrets);

26  Coskey's Television & Radio Sales & Serv., Inc. v. Foti, 602 A.2d 789 (N.J. App.Div.1992) (court

27  modified overbroad agreement to preclude former employee from interfering with employer's successful

28  contract bids that former employee had negotiated).  New Jersey courts will find a covenant reasonable,

1    however, if it "simply protects the legitimate interests of the employer, imposes no undue hardship on the

2    employee and is not injurious to the public." Whitmyer Bros., Inc. v. Doyle, 274 A.2d 577, 581 (N.J.

3    1971). Whether a non-competition agreement will be enforced is a fact-sensitive inquiry. Graziano v.

4    Grant, 326 741 A.2d 156 (N.J.Super.A.D. 1999).

5         Thus, under New Jersey law, while the Irreparable Harm Clause excuses Cintas from

6    demonstrating irreparable harm, it does not excuse Cintas from having to prove ownership of its trade

7    secrets. Nor does it excuse Cintas from having to demonstrate that the clause is reasonable. Under

8    these circumstances, it is not an entirely unreasonable or one-sided provision.

9        6.    **Are the circumstances under which the SSRs signed the agreement otherwise**

10           **unconscionable?**

11        Absent a showing of fraud or oppression, an agreement will not be deemed unconscionable.

12   Martindale v. Sandvik, 800 A.2d at 880.

13          Plaintiffs Edwards, Huertas, and Samuels each asked to take the Agreements home with

14   them and were told that they could not, that they had to sign the Agreements immediately. Given the

15   imbalance in bargaining power, these tactics are unacceptable. These three plaintiffs are not compelled

16   to arbitrate.

17       7.    **Do the factors taken as a whole demonstrate unconscionability? Under the**

18           **applicable state law, would severing the unconscionable provisions render the**

19           **agreement enforceable, or is the agreement so permeated with unconscionability**

20           **that the Court should not enforce it?**

21        With respect to the remaining New Jersey Plaintiffs, reviewing the Agreements, the Court

22   observes the following. New Jersey has a strong policy favoring arbitration. Although the Irreparable

23   Harm clause favors Cintas at the preliminary stage of a litigation, it does not so favor Cintas as to be

24   unconscionable. The employee can, for example, argue that the trade secrets at issue in the dispute are

25   not truly trade secrets. The "loser-pay" provision, however, is unconscionable because they impair an

26   employee's ability to vindicate his rights. The Agreements provide a severability clause. The Court

27   hereby severs that provision. Thus, the remaining New Jersey Plaintiffs are compelled to arbitrate.

28   **Q.    New York**

United States District Court
For the Northern District of California

1   Plaintiffs Nazareth and Perez signed the Agreements in New York.

2   **1.    Does the state require that the arbitration clause be bilateral?**

3   Plaintiffs do not suggest that New York law does.

4   **2.    If it does not, then is the absence of bilateral arbitration a factor to be**

5   **considered in determining unconscionability?**

6   Plaintiffs do not suggest that New York law does. In fact, New York appears to have rejected

7   this factor. Ball v. SFX Broad, 236 A.D.2d 158, 161 (N.Y. App. Div. 1997).

8   **3.    Does the state hold that "loser pay all" provisions of arbitration agreements are**

9   **unconscionable? If it does, may the Court sever the provision?**

10  The New York Plaintiffs did not sign the 1996 Agreement. This issue does not apply.

11  **4.    Does the state permit parties to constrict statutory remedies? If it does not,**

12  **may the Court sever the provision?**

13  The Second Circuit reads Mitsubishi Motors, 473 U.S. 614 to require that a party be able to

14  effectively vindicate her rights in arbitration. Brooks v. Travelers Ins. Co., 297 F.3d 169 (2nd Cir.

15  2002). The time limits imposed by the Agreement prevent a SSR from vindicating a cause of action for

16  wilful infringement of the FLSA. The Agreement also fails to guarantee a prevailing employee attorneys'

17  costs and fees. Accordingly, under New York law these two provisions are unconscionable.

18  **5.    Does the state permit parties to agree to expand one party's right to remedies?**

19  **If it does not, may the Court sever the provision?**

20  The one clause that favors Cintas is the Irreparable Harm Clause. In the Second Circuit,

21  restrictive covenants such as non-disclosure agreements and non-compete clauses will be enforced if

22  reasonably limited temporally and geographically, and then only to the extent necessary to protect the

23  employer from unfair competition which stems from the employee's use or disclosure of trade secrets or

24  confidential customer lists. Columbia Ribbon & Carbon Mfg. v. A-1-A Corp., 369 N.E.2d 4 (N.Y.

25  1977). The Irreparable Harm Clause provides that for Cintas to obtain a TRO or preliminary injunction,

26  it need not show irreparable harm. This does not mean Cintas is also excused from meeting the other

27  prerequisites for obtaining such relief. It does not mean, for example, that Cintas is excused from

28  demonstrating that the rights it claims are in fact trade secrets or that the non-compete clause is

53

1   reasonably limited. Accordingly, though the Irreparable Harm Clause may favor Cintas, it does not do

2   so unreasonably.

3        **6.     Are the circumstances under which the SSRs signed the agreement otherwise**

4             **unconscionable?**

5   Plaintiffs have not presented evidence to suggest that the circumstances under which they signed

6   the Agreements were unconscionable.

7        **7.     Do the factors taken as a whole demonstrate unconscionability? Under the**

8             **applicable state law, would severing the unconscionable provisions render the**

9             **agreement enforceable, or is the agreement so permeated with unconscionability**

10            **that the Court should not enforce it?**

11   Based on the foregoing, the New York Plaintiffs are compelled to arbitrate.

12   **R.    North Carolina**

13   Plaintiff Carroll signed the Agreement in North Carolina.

14        **1.     Does the state require that the arbitration clause be bilateral?**

15   North Carolina does not require bilateral arbitration. For an agreement to be mutual, there must

16   be an exchange of promises. An employer's and an employee's agreement to arbitrate only certain

17   grievances is still a mutual agreement because both parties have agreed to be bound by that arbitration.

18   Howard v Oakwood Homes Corp., 516 S.E.2d 879, 881 (N.C.Ct.App. 1999).

19        **2.     If it does not, then is the absence of bilateral arbitration a factor to be**

20             **considered in determining unconscionability?**

21   In Howard, the North Carolina Court of Appeals rejected the bilateral requirement. Id.

22        **3.     Does the state hold that "loser pay all" provisions of arbitration agreements are**

23             **unconscionable? If it does, may the Court sever the provision?**

24   This issue does not pertain to the North Carolina Plaintiffs.

25        **4.     Does the state permit parties to constrict statutory remedies? If it does not,**

26             **may the Court sever the provision?**

27   The Fourth Circuit reads Mitsubishi Motors to require that a party be able to effectively

28   vindicate her rights in arbitration. Hooters of America Inc. v. Phillips, 39 F. Supp. 2d 582, 613 (D.S.C.

1998). The time limits imposed by the Agreement prevent a SSR from vindicating a cause of action for wilful infringement of the FLSA. The lack of a guarantee of attorneys' fees and costs may discourage potential plaintiffs. Accordingly, the Court finds that under North Carolina law, these two provisions are unconscionable.

> **6.** **Does the state permit parties to agree to expand one party's right to remedies? If it does not, may the Court sever the provision?**

An agreement that favors one party is unconscionable when there is "fraud, coercion, undue influence, misrepresentation, inadequate disclosure, duress, and overreaching...and is harsh, oppressive, and one-sided." King v. King, 442 S.E.2d 154, 157 (N.C.App. 1994). In the Fourth Circuit, irreparable harm is presumed when a trade secret or customer list are at issue. PHP Healthcare Corp. v. EMSA Ltd. Partnership, 14 F.3d 941, 946 (4th Cir. 1993). Thus, the Irreparable Harm Clause merely mirrors the presumption that the Fourth Circuit already provides. Accordingly, Plaintiffs must demonstrate fraud, coercion, undue influence or the like for this Court to find that the Irreparable Harm Clause renders the Agreements unenforceable. The Parties have not identified evidence of such fraud.

> **6.** **Are the circumstances under which the SSRs signed the agreement otherwise unconscionable?**

Plaintiffs have not offered evidence of the circumstances.

> **7.** **Do the factors taken as a whole demonstrate unconscionability? Under the applicable state law, would severing the unconscionable provisions render the agreement enforceable, or is the agreement so permeated with unconscionability that the Court should not enforce it?**

Viewing the Agreement as a whole, the Court observes the following. North Carolina law favors arbitration. The parties have unequal bargaining power. The Fourth Circuit provides a presumption that trade secrets involve an irreparable harm. Two provisions in the Agreement impair an employee's ability to vindicate his rights – the time limitation provision and the lack of a guarantee of attorneys' fees and costs. The Agreement allows the Court to severe such provisions and the Court chooses to do so. Having severed those two provisions, the Agreement is not unconscionable. Thus, the North Carolina Plaintiff is compelled to arbitrate.

55

United States District Court

For the Northern District of California

**S.    Conclusion**

Based on the foregoing discussion, the following parties are not compelled to arbitrate: Plaintiff Heibling of Arkansas, Plaintiff Brown of Maryland, and Plaintiffs Edwards, Huertas, and Samuels of New Jersey.

In addition, the "loser pays" provision of the 1996 Agreement is severed.

Finally, the time limitation imposed by the Agreement and the lack of a guarantee of attorneys' costs and fees are severed in the California, Connecticut, Colorado, Maryland, Michigan, New Jersey, New York, and North Carolina Agreements. Instead, these two provisions of those Agreements shall be read to comport with the FLSA.

## IV. COLLECTIVE BARGAINING AGREEMENTS

Finally, Cintas contends that Plaintiffs Lloyd, Smith, Lightfoot and Seath, are or were employed subject to terms of Collective Bargaining Agreements ("CBAs") between Cintas and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. (Clendening Decl. Exhs. KKK, LLL.) The arbitration provision in Article VI of the CBAs, in combination with Article IV of the CBAs expressly referencing the FLSA, require these parties to arbitrate. Plaintiffs argue that they cannot be compelled to arbitrate, despite their CBA agreements because a union may never waive an individual's right to arbitrate statutory claims.

The Supreme Court, in Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 77 (1998), left open the issue of whether a union may waive individual employees' statutory forum rights. "[W]e find it unnecessary to resolve the question of the validity of a union-negotiated waiver [of the right to bring an ADA claim in court], since it is apparent to us...that no such waiver has occurred." Wright, 525 U.S. at 77. The Court did state, however, that even if a CBA could waive an employee's right to a judicial forum, it must do so in a "clear and unmistakable" manner. Id.

After Wright was decided, the Ninth Circuit reviewed a CBA that waived an individual's right to bring a FLSA claim in federal court. Collins v. Lobdell, 188 F.3d 1124, 1127 (9th Cir. 1999), cert denied, 529 U.S. 1107 (2000). Without any reference to Wright, the Ninth Circuit relied on earlier Supreme Court precedent and held that a union could never waive an individual's right to a federal claim. Subsequent, unpublished Ninth Circuit decisions have mentioned Wright in passing for the

United States District Court
For the Northern District of California

1    proposition that at the very least, a CBA cannot waive a federal claim unless that waiver is clear and

2    unambiguous. Twentieth Century-Fox Film Corp. v. Beckum, 36 Fed.Appx. 271, * 1 (9th Cir. 2002)

3    (unpublished).

4         The Court of Appeals for the State of California has held that unless the CBA waiver is clear

5    and unambiguous, pre-Wright precedent precluding arbitration of an individuals' statutory rights prevails.

6    "Under Wright, the basic rule of Alexander, Barrentine, and McDonald remains intact, and a labor

7    arbitration can have preclusive effect on a subsequent statutory claim, only if the CBA contained a clear

8    and unmistakable waiver of the employee's right to file a lawsuit on the statutory claim." Taylor v.

9    Lockheed, 6 Cal.Rptr.3d 358, 386 (Cal.App.2003).

10        In contrast, other circuits have more clearly articulated their interpretation of Wright. The Sixth

11   Circuit, relying on Wright has held that a CBA may in fact waive the right to a judicial forum for a

12   statutory claim. Bratten v. SSI Servs., Inc., 185 F.3d 625, 631 (6th Cir. 1999). The Second Circuit,

13   reviewing Wright has held that Wright may have opened the door to compelling such arbitration, but

14   nevertheless declined to do so. "In this Circuit, we have reached the question left open by Wright and

15   held that an arbitration clause in a union collective bargaining agreement is not enforceable against an

16   individual employee's ADA and Family and Medical Leave Act claims." Fayer v. Town of Middlebury,

17   258 F.3d 117, 123 n. 2 (2nd Cir. 2001) (citing Rogers v. New York University, 220 F.3d 73, 75 (2d

18   Cir.2000)).

19        Reviewing these cases, the Court observes that at the very least, Wright's impact on arbitration

20   provisions in a CBA is ambiguous at best. With no clear guidance from the Ninth Circuit, this Court

21   refrains from either adopting or rejecting the reasoning of the Sixth Circuit. Instead, it finds the analysis

22   used by the Second Circuit in Fayer helpful. That is, this Court asks, assuming that a CBA could waive

23   a right to litigate, is the waiver in the Cintas CBA clear and unmistakable? The Court finds that it is not.

24        Reviewing the Cintas CBA, Article IV states that the SSRs "are 'outside salesmen' within the

25   meaning of the Fair Labor Standards Act, and that the commissions earned by and payable to such

26   persons shall not be deemed to be a part of the basic wage of such persons for the purpose of

27   computing overtime pay." Article VI states that "any claim of violation fo this Agreement, charge of

28   discrimination, grievance or dispute" arising out the Agreement shall be arbitrated. This language leads

United States District Court
For the Northern District of California

1    to an ambiguity.

2          Article IV refers to SSRs as "outside salesman" and yet also discusses "overtime payment."

3    Under the FLSA, employees who work 40 hours in any work week must be paid overtime for hours

4    worked beyond that 40. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from overtime an

5    employee who is an "outside salesman." Given this ambiguity, the Court does not construe Article VI's

6    reference to any disputes under the CBA as being clear and unmistakable. At the very least, the CBA

7    does not make clear who would qualify under Article IV – SSRs who are outside salesman who are also

8    paid overtime? Or SSRs who are outside salesman who might be paid overtime even if Cintas has never

9    done so? This is especially confusing since the heart of Plaintiffs litigation is that they were illegally

10   categorized as "exempt" employees and deprived of overtime.

11         At the December 16, 2003 hearing, the Court raised this issue. Cintas was unable to provide an

12   adequate answer. Plaintiffs argued that this ambiguity underscored that the waiver was not clear and

13   unmistakable. The Court agrees. If neither the Court nor the sophisticated attorneys representing the

14   parties are able to reconcile the ambiguous language in the CBA, then how can Plaintiffs, who are not

15   trained in the law, be expected to understand to whom the waiver applies? The CBA on this issue is

16   ambigiuous, not clear and unmistakable.

17         Accordingly, Plaintiffs who are parties to this CBA are not compelled to arbitrate.

18                                        **CONCLUSION**

19         Based on the foregoing, the Court GRANTS in part and DENIES in part Cintas' Motion to

20   Compel Arbitration. The Court finds that:

21         •    The SSRs are not "transportation workers" as defined by the FAA § 1 exemption.

22         •    The FAA governs these Agreements.

23         •    The Following Plaintiffs are not compelled to arbitrate:

24              •    Plaintiff Heibling of Arkansas

25              •    Plaintiff Brown of Maryland

26              •    Plaintiffs Edwards of New Jersey

27              •    Plaintiff Huertas of New Jersey

28              •    Plaintiff Samuels of New Jersey

                                              58

United States District Court
For the Northern District of California

- The confidentiality rules of the AAA are not unconscionable.
- The "loser pays" provision of the 1996 Agreements in Colorado and New Jersey are unconscionable and are, therefore, severed.
- Under the laws of California, Colorado, Connecticut, Illinois, Indiana, Maryland, Michigan, Missouri, New Jersey, New York, and North Carolina, the Irreparable Harm Clause is not unconscionable.
- Under the laws of California, Colorado, Connecticut, Maryland, Michigan, New Jersey, New York, and North Carolina, the provision in the Agreements limiting the time in which an employee may bring an FLSA claim and the provision not guaranteeing attorneys' fees and costs to a prevailing plaintiff are unconscionable. The Court severs these two provisions in these Agreements in these states. Instead, these two provisions shall be read to comport with the FLSA.
- Under the laws of Illinois, Indiana and Missouri, the validity of the limitation on the FLSA remedies is an issue to be determined by the arbitrator.

• Plaintiffs who are parties to the CBA are not compelled to arbitrate.

IT IS FURTHER ORDERED THAT the parties shall appear **telephonically** for a Case Management Conference on **Thursday, April 15, 2004 at 3:45 p.m.** Among the issues the parties should be prepared to discuss is whether or not the Court's Order Granting Facilitated Notice of the FLSA Claims should be modified in accordance with the Court's findings regarding arbitration in this Order. Plaintiffs shall set up the **telephonic** conference call with all the parties on the line and call chambers at (510) 637-3559 at the time designated above. **NO PARTY SHALL CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.**

IT IS SO ORDERED.

Dated: April __5_, 2004

/s/Saundra Brown Armstrong_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

59

# EXHIBIT 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(Oakland Division)

|  |  |
|---|---|
| PAUL VELIZ, et al., on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>CINTAS CORPORATION, an Ohio corporation; PLAN ADMINISTRATOR for the Cintas Partners' Plan; and DOES 1-25, inclusive,<br><br>          Defendants. | Case No.  03-01180 (SBA)<br><br>CLASS ACTION<br><br>E-FILING<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO RECONSIDER ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

Plaintiffs' Motion to Reconsider Order Granting in Part Defendant's Motion to Compel Arbitration [Docket No. 377] and Cintas' opposition thereto came before this Court, and was submitted on the papers without oral argument. Having considered the papers presented, and the argument of counsel set forth therein, the Court GRANTS IN PART and DENIES IN PART plaintiffs' Motion.

## I.    RELIEF REQUESTED BY PLAINTIFFS' MOTION

In its Order dated April 5, 2004 [Docket No.140], the Court granted in part Cintas' Motion to Compel Arbitration and Stay Proceedings, finding that 56 of the original 65 plaintiffs were subject to enforceable agreements to arbitrate their claims against Cintas before the American Arbitration

1

Association ("AAA"). Applying the respective governing law at issue as to those 56 persons, the Court

determined that some of the terms of the arbitration agreements were unconscionable, such as a

"loser-pays" provision in the parties' 1996 agreements, which the Court severed, all as is more fully

stated in the April 5, 2004 Order.

Plaintiffs thereafter submitted to the AAA a Demand for Classwide Arbitration, seeking

arbitration on a class and/or collective basis. Dosker Decl. Exh. A. [Docket No. 389].

In seeking reconsideration of the April 5, 2004 Order, plaintiffs claim that there are new facts

that warrant the Court revisiting its April 5, 2004 Order to find that the arbitration agreements are

unconscionable and, therefore, unenforceable. First, plaintiffs argue that the AAA intends to hold them

responsible under its Supplementary Rules for Class Arbitration for one half of the costs of arbitration on

a class or collective basis, including arbitrator compensation. Plaintiffs contend that the arbitration

agreements (which incorporate the AAA's National Employment Rules), unconscionably interfere with

their ability to vindicate their statutory rights through arbitration on a class or collective basis.

Second, plaintiffs argue that the Court should find the parties' arbitration agreements

unconscionable because Cintas has taken the position *in the arbitration* that the specific arbitration (on

a nationwide class or collective basis) demanded by plaintiffs is in breach of the various choice-of-law

and place-of-arbitration provisions in the various individual arbitration agreements. Each of the

individuals' arbitration agreements with Cintas provides that the AAA's National Employment Rules

apply; they make no mention of the AAA Supplementary Rules for Class Arbitration. See e.g.,

Clendening Decl. Ex. B at paragraph 5 and at corresponding term in Exs C through III [Docket Nos.

50, 51]. The AAA applies its Supplementary Rules for Class Arbitration to all demands for arbitration in

2

which classwide relief is demanded.  Dosker Decl. Exh. I at Rule 1(a) (page 1) [Docket No. 389].

Third, plaintiffs contend that a declaration submitted by Cintas employee Jenice Clendening in a different case provides new evidence of procedural unconscionability with regard to the California plaintiffs such that the Court should not enforce the California plaintiffs' arbitration agreements.

Finally, plaintiffs argue that the place-of-arbitration provision in the parties' arbitration agreements is unenforceable because: (1) the Court is not empowered to compel arbitration outside of this district pursuant to 9 U.S.C. § 4; and (2) enforcing the place-of-arbitration provision would result in fundamental unfairness.

## II.    DISCUSSION

The FAA establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The "primary purpose" of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989).  Any "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24.  Thus, where one of the parties is resisting arbitration, the United States Supreme Court requires that party to "bear[] the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).  In seeking reconsideration of the Court's April 5, 2004 Order, plaintiffs fail to satisfy this burden.

//

3

a.    THE COSTS OF ARBITRATION AT ISSUE ARE NOT
UNCONSCIONABLE BECAUSE PLAINTIFFS CAN VINDICATE
THEIR STATUTORY RIGHTS IN INDIVIDUAL ARBITRATIONS,
AND THE COSTS IN QUESTION ONLY APPLY TO ARBITRATION
ON A CLASS OR COLLECTIVE BASIS

Plaintiffs argue that the Court should not enforce their agreements to arbitrate because they

believe that the AAA will hold them responsible for one half the costs of arbitration on a class or

collective basis, which the plaintiffs estimate could exceed $25,000.  Rubin Decl. 33 [Docket No. 383].

Although plaintiffs acknowledge that they could pursue their claims through individual arbitrations at

Cintas' expense,[1]  they contend that requiring them to bear any expense for arbitration on a *class or

collective basis* "impose[s] a substantial barrier to the vindication of their rights."  Plaintiffs'

Memorandum of Points and Authorities ("Memo") at 11.  [Docket No. 384].  The Court finds that

plaintiffs' arguments fail.

Precedent establishes that even an inability to proceed on a class or collective basis in arbitration

has no impact on a plaintiff's ability to vindicate his or her substantive statutory rights.

The United States Supreme Court held in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.

20, 32 (1991) that a party's inability to pursue class or collective relief in arbitration does not interfere

with that party's ability to vindicate his statutory rights.  The *Gilmer* plaintiff argued that he should not be

compelled to arbitrate his claims under the Age Discrimination in Employment Act ("ADEA") because he

would be unable to pursue class or collective treatment in arbitration.  *Id.*[2]  Rejecting this argument, the

_____

[1] Plaintiffs' Memorandum of Points and Authorities at 2:12-14 [Docket No. 384]; Rubin Decl.
¶16 [Docket No. 383]; Dosker Decl.  Ex. D at p.2[Docket No. 389]; Docket No. 365; Docket No.
370 at 2:5-7; and items cited in note 6 below.

[2] The provision for class actions (collective actions) in the ADEA is the FLSA provision for
class actions (collective actions), which the ADEA expressly adopts. 29 U.S.C. § 626(b); *Carter v.*

4

Court held that a party *can* vindicate statutory rights through individual arbitration and "does not forgo

the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a

judicial, forum." *Id*. at 26. In language directly relevant to the present motion, the Court in *Gilmer*

stated that:

> [E]ven if the arbitration could *not go forward as a class action or class relief could not be*
> *granted by the arbitrator*, the fact that the [ADEA] provides for the possibility of bringing a
> collective action does not mean that individual attempts at conciliation were intended to be
> barred.

500 U.S. at 32 (emphasis added) (citation omitted).

In *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004), the Court

of Appeals expressly rejected plaintiffs' argument that their "inability to proceed collectively [under the

FLSA] deprives them of substantive rights under the FLSA." *Id.* So long as a plaintiff can pursue the

substantive statutory rights through individual arbitration, a plaintiff's inability to proceed collectively or

on behalf of a class is legally irrelevant. The Court of Appeals held that:

> we reject the Carter Appellants' claim that their inability to proceed collectively deprives them of
> substantive rights available under the FLSA. The Supreme Court rejected similar arguments
> concerning the ADEA in *Gilmer*, despite the fact that the ADEA, like the FLSA, explicitly
> provides for class action suits. 500 U.S. at 32. What is more, the provision for class actions in
> the ADEA is the FLSA class action provision, which the ADEA expressly adopts. 29 U.S.C. §
> 626(b). *Accordingly, Gilmer's conclusion in this respect applies with equal force to FLSA*
> *claims.*"

*Id.* (emphasis added). Similarly, in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002),

the Court of Appeals held that there was "no suggestion in the text, legislative history, or purpose of the

---

*Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *see* 29 U.S.C. § 216(b).

5

FLSA that Congress intended to confer a nonwaivable right to a class action under that statute." The

court held that the plaintiffs' "inability to bring a class action . . . cannot by itself suffice to defeat the

strong congressional preference for an arbitral forum." *Id.*

In *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 320 (9th Cir. 1996), the Ninth Circuit held that

when an employee agrees to arbitrate, she forfeits any procedural rights arising from the FLSA, while

retaining her substantive rights (e.g., the right to obtain substantive relief) in arbitration.

Because plaintiffs are able to pursue their statutory claims through individual arbitration at no

substantial cost, the costs for pursuing arbitration on a class or collective basis are not a "condition of

access to the arbitration forum" and are, therefore, not unconscionable. *Cf. Circuit City v. Adams,*

279 F.3d 889, 896 (9th Cir. 2001).[3]

Based on these authorities, it is apparent that enforcement of an arbitration agreement does not

impact a plaintiff's ability to vindicate his or her statutory rights if such enforcement interferes with a

plaintiff's ability to pursue arbitration on a class or collective basis, or indeed leads to a complete inability

to pursue arbitration on a class or collective basis. Because plaintiffs have access to the arbitral forum in

individual arbitrations for no substantial costs whatsoever, any costs imposed by the AAA based on

plaintiffs' tactical choice to proceed by means of their demand for arbitration on a class or collective

---

[3]The Ninth Circuit says that courts have "interpreted *Gilmer* to require basic procedural and remedial protections so that claimants can effectively pursue their statutory rights", and cites the discussion of *Gilmer* in the case of *Cole v. Burns*, 105 F.3d 1465, 1482 (D.C.Cir. 1997) as listing the five basic requirements that an arbitral forum must meet. *Circuit City v. Adams*, 279 F.3d at 895; *Ting*, 319 F.3d 1126, 1151 (9th Cir. 2003). The ability to proceed as a class or collective is <u>not</u> one of them. *Cole*, 105 F.3d at 1482. Unlike in those cases, the availability here of the virtually no-cost individual arbitration forum means that the plaintiffs here "do not have to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Cf. Circuit City v. Adams* 279 F.3d at 895; *cf. Ting v. AT&T*, 319 F.3d 1126, 1151.

basis cannot render the agreements to arbitrate unconscionable.

### b. PLAINTIFFS HAVE FAILED TO PRESENT EVIDENCE SUFFICIENT TO SHOW THAT COSTS WILL BE UNREASONABLY BURDENSOME

Even if the Court assumed that plaintiffs had a right to proceed collectively or as a class, their reconsideration motion is still deficient. In *Randolph*, the United States Supreme Court held that a party challenging an arbitration agreement as unconscionable on the ground that arbitration would be "prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." 531 U.S. at 91-92. Given the "liberal federal policy favoring arbitration agreements," the party challenging arbitration must present an evidentiary record showing prohibitive costs will essentially "preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 90-91.

Courts interpreting state law unconscionability standards in light of *Randolph* have held that a party seeking to invalidate an arbitration agreement must not only bear the burden of showing that it will incur high arbitration costs, it must also show that such costs will preclude them from seeking relief through arbitration. In *Bradford v. Rockwell Semiconductor Sys. Inc.*, 238 F.3d 549, 556 (4th Cir. 2001), for example, the Court of Appeals held that the determination of whether fee-splitting renders an agreement unenforceable must be examined in light of each individual plaintiff's ability to pay, on a case-by-case basis:

> [T]he appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so

substantial as to deter the bringing of claims.[4]

The evidence submitted by plaintiffs is inadequate under *Randolph* to enable the Court to undertake a case-by-case analysis to determine whether costs that might be assessed by the AAA would preclude plaintiffs from pursuing their statutory claims.[5]   Although 56 plaintiffs seek reconsideration, only five of them claim that the costs of arbitration will be prohibitive.  On this evidence, the Court cannot find that the AAA's alleged cost-splitting policy for class arbitrations somehow renders the individual arbitration agreements between Cintas and each plaintiff unconscionable, even if there were some right to pursue arbitration on a class or collective basis.

Further, in determining whether an express cost splitting provision (which there is none here) would preclude a litigant from effectively vindicating statutory rights, the Court considers whether "the

---

[4] *See also, e.g., Blair v. Scott Specialty Gases,* 283 F.3d 595 (3rd Cir. 2002) (adopting *Bradford* case-by-case approach); *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 664 (6th Cir. 2003) (holding that the courts must evaluate on a case-by-case basis "whether the 'overall cost of arbitration,' from the perspective of the potential litigant, is greater than 'the cost of litigation in court.'"); *Livingston v. Assoc. Fin., Inc.,* 339 F.3d 553, 557 (7th Cir. 2003) (holding that "individualized evidence" of inability to pay costs required); *Faber v. Menard, Inc.,* 367 F.3d 1048, 1054 (8th Cir., 2004) (refusing to invalidate arbitration clause where plaintiff failed to show costs were prohibitive); *Rains v. Found. Health Sys. Life & Health,* 23 P.3d 1249 (Colo. Ct. App. 2001) (plaintiffs must provide evidence of an inability to pay).

[5]  The Court further observes that the motion is premature since the AAA has not issued any invoices and has not demanded payment of any specific amounts.  Based on the evidence presented, it is unclear whether and to what extent plaintiffs will be subject to costs in the arbitration.  Because the dispute regarding payment of costs arises from what the plaintiffs contend is an incorrect interpretation of the AAA's rules (see Memo. at 14 n.11)[Docket No. 384], plaintiffs should have first addressed this issue to the appointed arbitrator. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002) ("procedural questions which grow out of [a] dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.").

overall cost of arbitration, *from the perspective of the potential litigant*, is greater than the cost of litigation in court." *Morrison*, 317 F.3d at 664 (emphasis added). In so doing, the Court may consider whether prospective costs will not be borne by the plaintiffs' contingent-fee firms. *Id.* Plaintiffs, however, have offered no evidence that plaintiffs will be asked to bear any costs whatsoever. The Court will not speculate that the costs to plaintiffs would be greater in class arbitration than in litigation absent compelling proof to the contrary; but in any event, individual arbitration is available at no material cost.

Moreover, plaintiffs have cited no cases in which the arbitrator's compensation could be borne equally by the thousands of voluntary opt-in plaintiffs who eventually elect to take part in a collective arbitration. Based on the Consents-to-Sue filed by plaintiffs to date, there are now over 2,000 opt-in plaintiffs. Dosker Decl. 13 [Docket No. 389]. Until it is determined which of these plaintiffs will be required to arbitrate, it is impossible to even estimate how much of the arbitrator's compensation each plaintiff might have to bear in a classwide arbitration — but it would be virtually nothing (i.e., $125 or less) in individual arbitrations.[6]

> c. **THE QUESTION OF WHETHER THE ARBITRATION AGREEMENTS PERMIT ARBITRATION ON A CLASS OR COLLECTIVE BASIS IS FOR THE ARBITRATOR, NOT THE COURT, TO DECIDE IN THE FIRST INSTANCE**

The Court further rejects plaintiffs' argument that the Court can find an individual agreement to

---

[6]Absent the Supplementary Rules for Class Arbitrations, which would not apply in individual arbitrations, the National Employment Rules limit an employee's costs in an individual arbitration to an initial filing fee of $125; the employer must pay all arbitrator compensation and hearing room fees. National Employment Rules Fee Schedule (Dosker Decl. Ex. K)[Docket 389]. Moreover, most of the applicable arbitration agreements further protect the employee by capping individual arbitration costs yet lower. *See e.g.,* Clendening Decl. Ex. B at paragraph 5 and at corresponding term in Exs C through III (Docket Nos. 50, 51]. And National Employment Rule 38 offers yet less cost, in an appropriate situation, if even $100 or $125 is too much to bear. Dosker Decl. Ex. K [Docket 389].

arbitrate unconscionable simply because one of the parties contends in the arbitration that class or

collective arbitration is precluded by the parties' arbitration agreement.[7]    As the Supreme Court plainly

stated in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003), whether an otherwise

valid agreement to arbitrate allows class or collective arbitration concerns "the kind of arbitration

proceeding the parties agreed to" not "the validity of the arbitration clause." Thus, the determination of

whether the arbitration agreements at issue allow for class arbitration or not is for the arbitrator, not the

Court, to decide. *Id.* at 454.

> **d.    PLAINTIFFS HAVE PRESENTED NO NEW GROUNDS FOR FINDING
> PROCEDURAL UNCONSCIONABILITY WITH RESPECT TO THE
> CALIFORNIA PLAINTIFFS**

Based on a declaration submitted by Cintas employee Jenice Clendening in a different case,

plaintiffs ask the Court to revisit its April 5, 2004 ruling that the arbitration agreements between Cintas

and the California plaintiffs were not procedurally unconscionable. As the Court previously stated:

> While Plaintiffs proffered a number of declarations, they did not proffer any for the California
> plaintiffs. Without being informed of the circumstances under which the California Plaintiffs
> signed these Agreements, the Court cannot assume that the Agreements were procedurally
> unconscionable. The scant evidence in the record suggests that, in fact, they are not
> unconscionable. At least 12 per cent of Cintas' SSRs have not signed arbitration agreements,
> yet are employed by Cintas.

April 5, 2004 Order at 26. Plaintiffs offer no evidence to contradict the Court's previous finding.

Instead, plaintiffs rely solely on a declaration submitted by Cintas employee Jenice Clendening in another

---

[7] Plaintiffs contend that Cintas has asserted that the parties "arbitration agreements preclude
class arbitration." Memo. at 19 [Docket No. 384]. Cintas, however, says that it "does not claim that
any language in the arbitration agreements necessarily precludes all class arbitration." Opposition
Memorandum at 17 [Docket No. 388]. Even if Cintas *had* argued that class or collective arbitration
were precluded, *Bazzle* dictates that this Court defer to the decision of the arbitrator. *Bazzle,* 539 U.S.
at 452-53.

case in which she states that Cintas SSRs are "required to sign an Employment Agreement that contains an agreement to arbitrate." Rubin Decl. Ex. 20 [Docket No. 383].

The Court, however, does not find this to be evidence that Cintas requires arbitration agreements as a "condition of employment" as now argued by plaintiffs. See Clendening Reply Declaration 23 [Docket No. 103]. Indeed, in any event, Cintas' interrogatory responses verified under oath by Ms. Clendening, confirm that there have been no employment consequences to anyone for declining to sign an arbitration agreement.

> There have been no employment consequences for prospective Cintas drivers who chose not to sign an employment agreement containing an arbitration agreement. Likewise, there have been no employment consequences for former Cintas drivers who chose not to sign. Current employees who have not signed an employment agreement containing an arbitration agreement and who decline to sign one at the time of being offered additional consideration are subject to having withdrawn from them the offer of the additional consideration being offered in exchange for executing the agreement.

Dosker Decl. Ex. L at 5:3-18 [Docket No. 389]. Further, plaintiffs have not provided a single declaration from a single California plaintiff to support their claim that they were required to sign the agreements as a "condition of their employment." The Court finds that the Clendening declaration submitted in a different case does not merit reconsideration of the Court's April 5, 2004 Order.

### e.  THE PLACE OF ARBITRATION PROVISIONS

Plaintiffs also assert that the place-of-arbitration provision in the parties' arbitration agreements is unenforceable because: (1) the Court is not empowered to compel arbitration outside of this district pursuant to 9 U.S.C. § 4; and (2) enforcing the place-of-arbitration provision would result in fundamental unfairness. (Memo at 21).

Plaintiffs first assert that the Court cannot, as a matter of law, order arbitration to proceed

outside of this judicial district. (Motion, 21-22.)[8]    9 U.S.C. § 4 provides that "[t]he court shall hear the

parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply

therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in

accordance with the terms of the agreement. The hearing and proceedings, under such agreement, *shall

be within the district in which the petition for an order directing such arbitration is filed.*" 9

U.S.C. § 4 (emphasis added). The Ninth Circuit has interpreted this provision of 9 U.S.C. § 4 to

require a district court compelling arbitration to order the arbitration to proceed within the district in

which the petition to compel arbitration has been filed. *Continental Grain Co. v. Dant & Russell*, 118

F.2d 967, 968-69 (9th Cir. 1941); *Homestead Lead Co. of Missouri v. Doe Run Resources Corp.*,

282 F.Supp.2d 1131, 1143-1144 (N.D. Cal. 2003) ("The Ninth Circuit's 1941 decision in *Continental

Grain Co. v. Dant & Russell* remains the controlling authority" for determining where a court can

properly compel arbitration).

     In the instant case, Defendant moved this Court to compel arbitration for 65 of the plaintiffs. In

the April 5 Order, the Court ordered 56 of them to arbitration. The Court's April 5, 2004 Order did not

designate where the arbitration was to take place. However, the law is clear that the Court was, and is,

only permitted to compel arbitration in this district.

     Defendant's argument that it did not bring its motion to compel arbitration under 9 U.S.C. § 4,

but instead brought it under 9 U.S.C. § 3, is unavailing.  9 U.S.C. § 4 is the provision allowing a party to

---

[8]Plaintiffs did not assert that the place-of-arbitration provisions of the arbitration
agreement were unenforceable in briefing on Defendant's Motion to Compel Arbitration, nor did
Plaintiffs raise it as a grounds for relief in its Motion for Reconsideration pursuant to Civ. L.R. 7-9.
Accordingly, to the extent plaintiffs argue that these provisions are unfair, they have waived those
arguments.

move to compel arbitration, while 9 U.S.C. § 3 is the provision allowing a party to seek a stay of litigation where arbitration is appropriate. *See Sink v. Aden Enters.*, 352 F.3d 1197, 1201 (9th Cir., 2003). Nothing in the text of § 3 suggests that the Court can compel arbitration under that section.

Thus, to the extent that the arbitration agreements of the 56 plaintiffs compelled to arbitrate by the April 5, 2004 Order require arbitration to proceed outside of this judicial district, the Court cannot enforce those provisions. Accordingly, the Court modifies its April 5, 2004 Order to clarify that the plaintiffs compelled to arbitrate must do so in this judicial district.[9]

## III.    CONCLUSION

For the foregoing reasons, plaintiffs' Motion [Docket No. 377] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.


Dated: May 4, 2005                                  /s/ Saundra Brown Armstrong
                                                    SAUNDRA BROWN ARMSTRONG
                                                    United States District Judge

---

[9]Thus far, the Court has only compelled 56 plaintiffs to arbitration, and it is these 56 plaintiffs to arbitration, and it is these 56 plaintiffs who are compelled to arbitrate in this judicial district.

13

# EXHIBIT  12

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN

ATTORNEYS AT LAW

177 POST STREET, SUITE 300

SAN FRANCISCO, CALIFORNIA 94108

(415) 421-7151

FAX (415) 362-8064

www.altshulerberzon.com

FRED H. ALTSHULER
STEPHEN P. BERZON
BARBARA J. CHISHOLM
JEFFREY B. DEMAIN
REBEKAH B. EVENSON
EILEEN B. GOLDSMITH
LAURA P. JURAN
SCOTT A. KRONLAND
DOROTHEA K. LANGSAM
DANIELLE E. LEONARD
STACEY M. LEYTON
LINDA LYE
PETER D. NUSSBAUM
DANIEL T. PURTELL
MICHAEL RUBIN
JONATHAN WEISSGLASS

ADAM B. WOLF
FELLOW

May 4, 2004

American Arbitration Association
San Francisco Regional Office
225 Bush Street, Floor 18
San Francisco, CA 94114-4207

Re:    Demand for Classwide Arbitration Under AAA Employment Arbitration Rules
and Supplementary Rules for Class Arbitration
*Paul Veliz et al. v. Cintas Corporation, et al.*

To AAA and Counsel for All Parties:

Paul Veliz and other similarly-situated plaintiffs in *Veliz et al. v. Cintas Corporation et al.,* No. C-03-1180-SBA (N.D. Cal.) ("*Veliz*"), hereby demand arbitration on a class and/or collective basis of all state and federal claims for overtime compensation and backpay alleged in plaintiffs' First Amended Complaint for Injunctive Relief and Damages in *Veliz*, with the exception of the claims of the following 10 individuals which remain in federal court pursuant to U.S. District Court Judge Saundra Brown Armstrong's April 5, 2004 Order granting in part and denying in part Cintas Corporation's motion to compel arbitration, a copy of which is attached hereto as Exhibit D: Mark Hebling (Arkansas); Michael Brown (Maryland); Ricardo Brown (Maryland); Wayne Edwards (New Jersey); Wilfredo Huertas (New Jersey); Derrick Samuels (New Jersey); Noel Lloyd (Michigan), Kelly Smith (Michigan), James Lightfoot (Michigan), and Scott Seath (Michigan). *See* April 5 Order at 56-59.

This demand for arbitration is also made on behalf of all individuals who filed, or who hereafter file, Consents to Sue in *Veliz, except those* whom Judge Armstrong has ruled may litigate their FLSA claims in federal court because: 1) they worked for Cintas in Arkansas (*see* Order at 24-25) or from any other state as to which Judge Armstrong hereafter rules that no individual may be required to arbitrate his or her claims; or 2) they were employed pursuant to a collective bargaining agreement *(see* Order at 56-57); or 3) they did not sign an arbitration agreement with Cintas governing the claims in this case; or 4) they later submit declarations in



Demand for Arbitration
May 4, 2004
Page 2

federal court establishing to Judge Armstrong's satisfaction that the circumstances of their signing of the arbitration agreement were unconscionable. *See, e.g.*, April 5 Order at 44.

All Claimants bring their claims individually and as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and as a class action under Fed. R. Civ. P. 23(b)(3) and applicable state labor laws, on behalf of current and former Cintas employees (with the exceptions noted above) who worked as Service Sales Representatives, Commission Route Salespersons, Commission Route Sales Representatives, Route Drivers and other persons performing a service and/or delivery function on a non-hourly basis (hereinafter "Service Sales Representatives" or "SSRs"). *See* Ex. F (identifying the opt-in plaintiffs and the states they represent for class action purposes). Claimants may supplement this demand to arbitrate on behalf of similarly situated current or former Cintas drivers who have filed or who hereafter file Consents to Sue in this matter, including individuals from additional states.

This demand for arbitration is brought pursuant to the AAA National Rules for the Resolution of Employment Disputes and the AAA Supplementary Rules for Class Arbitrations. Claimants request that the arbitration be conducted in San Francisco, California.

Attached hereto as Exhibit A is the completed American Arbitration Association Employment Arbitration Rules Demand for Arbitration form for this arbitration.

Attached hereto as Exhibit B is a true and correct copy of the First Amended Complaint in *Veliz v. Cintas Corporation*.

Attached hereto as Exhibit C are true and correct copies of the four filings of Consents to Sue in *Veliz v. Cintas Corporation* filed before August 5, 2003.

Attached hereto as Exhibit D is Judge Saundra Armstrong's April 5, 2004 Order granting in part and denying in part Cintas Corporation's motion to compel arbitration in *Veliz v. Cintas Corporation*.

Attached hereto as Exhibit E are true and correct copies of Cintas' 1996 arbitration clause (E-1), Cintas' 1999 arbitration clause (E-2), Cintas' 2001 arbitration clause (E-3), and Cintas' 2002 arbitration clause (E-4). Please note that Judge Armstrong's April 5, 2004 Order addressed the clauses in these agreements that: 1) shortened the statute of limitations on statutory overtime claims to one year; and 2) made payment of prevailing plaintiffs' attorneys' fees and costs discretionary rather than mandatory. *See* Order at 20-22. In some states (California, Colorado, Connecticut, Maryland, Michigan, New Jersey, New York, North Carolina), Judge Armstrong severed those clauses in their entirety as contrary to the statutory rights of plaintiffs; while in others (Illinois, Indiana, Missouri), Judge Armstrong deferred the enforceability of these clauses to arbitration. *Id.* at 27-29, 33, 35-36, 39, 41, 45, 47, 50-53, 55, 58-59.

Demand for Arbitration
May 4, 2004
Page 3


Attached hereto as Exhibit F is a list of all claimants who have filed Consents to Sue through May 4, 2003 and who are pursuing their statutory rights through this arbitration, along with the addresses and telephone numbers listed on the Consent to Sue forms. Claimants will supplement this list with additional claimants who have filed or hereafter file Consents to Sue and whose claims will be submitted to arbitration.

Pursuant to Judge Armstrong's April 5 Order at 19-20, and the AAA National Employment Rules, respondent Cintas Corporation is responsible for paying the filing fee required for this arbitration under the AAA Rules.

Sincerely,

ALTSHULER, BERZON, NUSSBAUM, RUBIN
& DEMAIN

LERACH, COUGHLIN, STOIA & ROBBINS LLP

TRABER & VOORHEES

Attorneys for Claimants

By: _____
Michael Rubin



MR/hlm

Attachments

cc:    Mark Dosker, Esq.

AAA Northeast Case Management Center
950 Warren Avenue
East Providence, RI 02914

F:\09000\Cintas\Overtime Litigation\Arbitration\AAA SF.05.3.04.wpd

# EXHIBIT  13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(Oakland Division)

| | |
|---|---|
| PAUL VELIZ, et al, On behalf of Themselves and All Others Similarly Situated. | Case No. 03-01180 (SBA) |
| Plaintiffs, | CLASS ACTION |
| vs. | ORDER |
| CINTAS CORPORATION, an Ohio corporation; PLAN ADMINISTRATOR for the Cintas Partners' Plan; and DOES 1-25, inclusive, | [Docket Nos. 433, 445, 451 & 460] |
| Defendants. | |

## I.    INTRODUCTION

The following motions are before this Court: (1) Defendant Cintas Corporation's ("Cintas") Motion to Stay Proceedings, Pursuant to 9 U.S.C. § 3, as to Certain Opt-in Plaintiffs Who are not Subject to the Court's April 5, 2004 Order [Docket No. 445], (2) Defendants' Motion to Dismiss as to Certain Opt-In Plaintiffs for Improper Venue or, in the Alternative, to Transfer for Improper Venue or, in the Alternative, to Transfer in the Interests of Justice and Convenience [Docket No. 433], (3) Plaintiffs' "Motion in Compliance with Court Orders Regarding Which Plaintiffs Must Arbitrate and Which Plaintiffs May Litigate Their Non-ERISA Overtime Wage Claims " [Docket No. 451], and (4) Plaintiffs' Motion for Leave to File Second Amended Complaint [Docket No. 460]. Having read and considered the arguments presented by the parties in support of and in opposition to those motions in the papers submitted to the Court, and having heard and considered the arguments presented by counsel at the October 18, 2005 and October 27, 2005 hearings on those motions, the Court hereby enters the following Order, for the reasons stated herein and for the reasons as were more fully stated by the Court on the record at the hearings on October 18, 2005 and October 27, 2005.

II.    CINTAS' MOTION TO STAY PROCEEDINGS, PURSUANT TO 9 U.S.C. § 3, AS
       TO CERTAIN OPT-IN PLAINTIFFS WHO ARE NOT SUBJECT TO THE
       COURT'S APRIL 5, 2004 ORDER

Since Cintas filed its Motion to Compel Arbitration (Docket No. 45) as to certain

plaintiffs in August 2003, approximately 2,400 persons have "opted in" to this case by filing

consent-to-sue forms.  Many of them signed individual employment agreements with arbitration

terms.   The parties have agreed that the plaintiffs to whom Cintas' Motion to Stay was directed

consist of the persons listed on Exhibits E, F, G, H, I and J to the Joint Statement of the Parties in

Response to the Court's September 27, 2005 Order [Docket No. 501].  A copy of those lists is

attached as an Appendix hereto.  The 1,884 persons on the lists attached as an Appendix hereto

are referred to in this Order as the "Stay Motion Plaintiffs".[1]

This Court has held that none of the Stay Motion Plaintiffs is subject to Cintas' original

Motion to Compel (and thus have not been compelled by this Court to arbitrate their claims).

May 4, 2005 Order at 13 [Docket No. 426].

Cintas has now moved pursuant to Section 3 of the Federal Arbitration Act ("FAA") to

stay further litigation of the claims asserted in this action by each of the Stay Motion Plaintiffs

until "arbitration has been had in accordance with the terms of the agreement" into which each of

the Stay Motion Plaintiffs entered.  Under the FAA, if the Court determines that a party's claims

are arbitrable, it must stay the litigation of those claims upon a party's request. 9 U.S.C. § 3.

Plaintiffs have asserted that the Court is also required to compel arbitration of the claims

of the Stay Motion Plaintiffs on the theory advanced by plaintiffs -- that Cintas waived its

statutory right under the FAA to move in this Court only to stay or should be estopped from

arguing that the Stay Motion Plaintiffs should not be compelled by this Court based on prior

statements to this Court.  The Court has reviewed the parties' submissions and finds no authority,

and plaintiffs have cited no case, where a court has compelled arbitration of plaintiffs' claims in

---

[1] The parties agreed at the hearing that, by virtue of this Court's Order of April 5, 2004 and the
Stipulation and Order of June 9, 2004, all opt-in plaintiffs with arbitrable overtime claims, who
had filed consents to sue prior to June 9, 2004 would be compelled to arbitrate their claims.
Therefore, the Stay Motion Plaintiffs are those plaintiffs who filed consent-to-sue forms and
opted into the litigation after June 9, 2004.

1  the absence of a motion or petition to compel arbitration under 9 U.S.C. § 4. Nor have plaintiffs

2  cited any authority where a court has found that a defendant has waived its rights to seek a stay of

3  proceedings pursuant to 9 U.S.C. § 3, or where a court found judicial estoppel preventing a

4  defendant from electing to seek a stay pursuant to 9 U.S.C. § 3, while at the same time electing

5  not to make a motion or petition to compel under 9 U.S.C. § 4. Nor have plaintiffs put forward

6  any facts that support their assertions. Based upon the parties' submissions and for the reasons

7  more fully stated on the record, Cintas' Motion is GRANTED and the Court hereby STAYS the

8  claims of each of the Stay Motion Plaintiffs[2] until arbitration of such Stay Motion Plaintiff's

9  FLSA and state law claims (if any) "has been had in accordance with the terms of the agreement"

10  into which such person entered. 9 U.S.C. § 3.

11

12  **III.    CINTAS' MOTION TO DISMISS AS TO CERTAIN OPT-IN PLAINTIFFS FOR
        IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER FOR
13      IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER IN THE
        INTERESTS OF JUSTICE AND CONVENIENCE**

14
        Cintas moved to dismiss or transfer venue with respect to 36 opt-in plaintiffs who
15
    executed employment agreements with Cintas or a predecessor company that contain forum
16
    selection clauses ("Venue Motion Plaintiffs"). Cintas moved to dismiss the claims of the Venue
17
    Motion Plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(3) or, alternatively, dismiss
18
    or transfer venue either pursuant to 28 U.S.C. §1406(a) or §1404(a).
19
        For the reasons more fully stated on the record, the Court finds that Cintas has waived any
20
    right to move to dismiss these plaintiffs' claims by failing to timely raise any objection to venue.
21
    28 U.S.C. § 1406(b). In its Answer to Plaintiffs' First Amended Complaint, filed July 9, 2004, at
22
    a time when several venue plaintiffs had already opted into the litigation, Cintas admitted that
23
    venue in this Court was proper. Moreover, Cintas failed to timely assert improper venue prior to
24
    the instant motion without any credible justification for its failure and indicated by its course of
25

26  [2] This portion of the Court's Order does not apply to Plaintiffs Thomas Bradley of Missouri,
    Louise Bruck of Ohio, and Andrew M. Olson of California. These three plaintiffs are addressed
27  separately in Section IV below. Furthermore, it does not apply to those opt-in plaintiffs that had
    filed consents to sue by June 9, 2004, pursuant to the Stipulation and Order of June 9, 2004.
28

1    conduct over the two and a half years this matter has been in litigation that it had no objection to

2    venue. Therefore, the Court DENIES Cintas' requests under Federal Rule of Civil Procedure

3    12(b)(3) and under 28 U.S.C. § 1406(a). Further, after hearing, discussing and considering the

4    parties' arguments addressing the numerous factors that the Court is to consider in evaluating a 28

5    U.S.C. § 1404(a) motion, and for the reasons stated more fully on the record, the Court finds that

6    Cintas has not met its burden of demonstrating that a transfer of the action as to these plaintiffs

7    will enhance the convenience of the parties and witnesses, and serve the interests of justice. IT IS

8    HEREBY ORDERED that Cintas' Motion to Dismiss for Improper Venue Pursuant to Federal

9    Rule of Civil Procedure 12(b)(3), or to transfer the claims pursuant to 28 U.S.C. § 1406(a) or 28

10   U.S.C. § 1404(a) is DENIED.

11

12   **IV.     PLAINTIFFS' "MOTION IN COMPLIANCE WITH COURT ORDERS
             REGARDING WHICH PLAINTIFFS MUST ARBITRATE AND WHICH
13           PLAINTIFFS MAY LITIGATE THEIR NON-ERISA OVERTIME WAGE
             CLAIMS"**

14           Plaintiffs' Motion in Compliance with Court Orders Regarding Which Plaintiffs Must

15   Arbitrate and Which Plaintiffs May Litigate Their Non-ERISA Overtime Wage Claims seeks the

16   following relief: (1) an Order that the arbitration agreements between Cintas and opt-in plaintiffs

17   from Arizona, Louisiana and Pennsylvania are unenforceable under state law; (2) that the

18   arbitration agreements between Cintas and six opt-in plaintiffs -- Thomas Bradley, Louise Bruck,

19   Allan J. Gumbs, Douglas A. Johnson, Andrew M. Olson, and Clarence E. Stewart III -- are

20   unenforceable on the ground that they are procedurally unconscionable; and (3) that the Court

21   should deny Cintas' Motion to Stay Proceedings, Pursuant to 9 U.S.C. §3 as to Certain Opt-In

22   Plaintiffs Who Are Not Subject to the Court's April 5, 2004 Order [Docket No. 445]. Because

23   the Court has granted Cintas' Motion to Stay, the Court does not further consider here plaintiffs'

24   request in that regard.[3]

25

26   [3] Plaintiffs' counsel also challenged the enforceability of agreements signed by two individuals, David Gentry and Christopher Lackey. The Court finds that Cintas' evidence, showing that Messrs. Gentry and Lackey last worked for Cintas in Georgia, is persuasive. While plaintiffs'

27   counsel contends that those two employees worked in Tennessee, the only admissible evidence offered on the point is the Christerson Declaration [Docket No. 431 at Exhibit A] showing that

28   the last place worked for these individuals was in Georgia. The Court finds that David Gentry

1.    The Laws of Arizona, Louisiana and Pennsylvania Do Not Render the
       Arbitration Agreements Unconscionable

The parties dispute whether Cintas' arbitration agreements are enforceable under the laws

of Arizona, Louisiana, and Pennsylvania. For the reasons stated more fully on the record, Cintas'

arbitration agreements are enforceable under the laws of those three states because those laws do

not require bilaterality of promises to arbitrate. Even if Pennsylvania law requires such

bilaterality, absent a showing of "business realities" that would justify non-mutuality of promises,

Cintas has demonstrated sufficient business need for access to the courts to litigate claims against

employees who breach their confidentiality and non-compete covenants. *Lytle v. CitiFinancial

Servs., Inc.*, 810 A.2d 643 (Pa .Super. 2002). Therefore, opt-in plaintiffs who executed arbitration

agreements and who last worked for Cintas in Arizona, Louisiana, and Pennsylvania must

arbitrate their overtime claims.

a.    Arizona

Under *Gates v. Ariz. Brewing Co.*, 95 P.2d 49, 52 (1939), mutuality exists where the

parties have exchanged mutual promises. Arizona courts do not require a special promise to be

directed to a particular obligation. *See Carroll v. Lee*, 712 P.2d 923, 926 (Ariz. Sup. Ct. 1986).

The Court further notes that plaintiffs have not directed the Court to any authorities suggesting

that bilaterality is a factor that must be considered under Arizona law. The Court finds that the

arbitration agreements between Cintas and the plaintiffs from Arizona are enforceable under state

law and under 9 U.S.C. § 2.

b.    Louisiana

Louisiana courts will not uphold an arbitration agreement where a promise is illusory or

where there is no mutuality of obligation between the parties. Plaintiffs do not contend the

arbitration agreement here is illusory. While Cintas reserved the right to pursue in court certain

claims, that reservation does not negate their obligation to arbitrate claims brought by plaintiffs.

It is relevant to note that in *Gill v. Jim Walter Homes of La., Inc.*, 187 F.Supp.2d 618 (W.D. La.

and Christopher Lackey are subject to individual employment agreements with Georgia as the
governing state law.

1    2002), where, as here, only one party reserved the right to pursue certain claims in court, the court

2    found there was mutuality of obligation.  Given the presumption of arbitrability that the Louisiana

3    Supreme Court has imposed, and the adoption of a liberal policy favoring arbitration, *see*

4    *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1 (2005), the Court finds the arbitration agreement

5    enforceable under Louisiana law.

6

7                        c.    Pennsylvania

8            Plaintiffs argue that the Court should hold agreements between Cintas and plaintiffs from

9    Pennsylvania to be unenforceable as lacking mutuality, relying primarily on *Lytle v. CitiFinancial*

10   *Servs., Inc.*, 810 A.2d 643 (Pa. Super. Ct. 2002).  According to *Lytle*, the party that retained the

11   right to litigate in court must have a justification of business realities which compel the inclusion

12   of the right to litigate in the agreement; otherwise the agreement is void as unconscionable.  *Id.* at

13   665.  Plaintiffs do not dispute that there are business realities that would justify the inclusion of

14   the right to litigate in the Cintas agreements with respect to conduct identified under the

15   irreparable harm provision.  Thus, with respect to Cintas reserving for itself the right to go into

16   court to seek an injunction, for the purpose of that conduct that falls within the irreparable harm

17   clause, under *Lytle*, this Court finds that even assuming that *Lytle* were the only applicable state

18   law authority, the standard has been met.  The Court also finds that the weight of federal

19   authorities supports this conclusion.  *See, e.g.. Aames Funding Corp. v. Sharpe*, No. 04-4337,

20   2004 WL 2418284, * 5 (E.D. Pa. Oct. 28, 2004) (citing *Harris v. Green Tree Fin. Corp.*, 183

21   F.3d 173, 183 (3d Cir. 1999), *vacated on other grounds*, 2004 WL 2980407 (E.D. Pa. Dec. 22,

22   2004); *In re Brown*, 311 B.R. 702, 709-10 (Bankr. E.D. Pa. 2004) (finding *Lytle* to be suspect

23   based on *Harris and Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)); *Choice v.*

24   *Option One Mortg. Corp.*, No. 02-6626, 2003 U.S. Dist. LEXIS 9714 (E.D. Pa. May 13, 2003

25   (same)); *Montgomery v. Decision One Fin. Network Inc.*, No. 04-4551, 2005 U.S. Dist. LEXIS

26   3031, *6-9 (E.D. Pa. Mar. 1, 2005).

27           The Court finds that the arbitration agreements between Cintas and plaintiffs from

28   Pennsylvania are enforceable under state law and 9 U.S.C. § 2.

1

2         2.     Six Plaintiffs' Declarations Regarding Procedural Unconscionability.

3

4       Plaintiffs contend that this Court should not enforce arbitration agreements between six

5 individual plaintiffs and Cintas because they were executed under procedurally unconscionable

6 circumstances. As more fully stated on the record, the Court has analyzed each of these

7 plaintiffs' declarations to determine whether they were executed under conditions of procedural

8 unconscionability as set forth in the laws of the states where they worked for Cintas. As to the six

9 plaintiffs, the Court finds as follows:

10            a.    *Thomas Bradley*

11       Under Missouri law, procedural unconscionability focuses on whether there is "high

12 pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining

13 position." *Funding Systems Leasing Corp., v. King Louie Int'l, Inc.*, 597 S.W.2d 624, 634 (Mo.

14 Ct. App. 1979). Mr. Bradley, a Missouri plaintiff, declares that when he was shown his

15 employment agreement, he asked to take it home for review, but was not permitted to do so. He

16 also declares he had no opportunity to read the agreement and was pressured into signing it. For

17 the reasons stated at the hearing, and based on his declaration, the Court finds procedural

18 unconscionability rendering Mr. Bradley's arbitration agreement unenforceable.

19            b.    *Louise Bruck*

20       Under Ohio law, no formation of an agreement occurs when no voluntary agreement

21 existed. The Ohio courts consider the bargaining positions of the parties, whether the terms of the

22 agreement were explained to the weaker party, and whether the party claiming the provision is

23 unconscionable was represented by counsel. *Porpora v. Gatliff Bldg. Co.*, 828 N.E.2d 1081, 1084

24 (Oh. Ct. App. 2005). Ms. Bruck declares that she was not permitted to take the agreement home

25 or to have an attorney review it prior to her signing it. She declares that she was instructed to sign

26 the agreement immediately. For the reasons stated at the hearing, and based on her declaration,

27 the Court finds procedural unconscionability rendering Ms. Bruck's arbitration agreement

28 unenforceable.

c.    *Allan Jason Gumbs*

Under Maryland law, the courts' analyses of procedural unconscionability focuses on "whether the imposed-upon party had meaningful choice about whether and how to enter the transaction." *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005).   Mr. Gumbs declares that he requested to take home "some materials", but his request was denied. Mr. Gumbs neglects to identify what "materials" he requested to take home or, more importantly, whether they included the employment agreement. He does not indicate that he was rushed in his review of the agreement or that he raised any issues or concerns with anyone, such that he was denied a meaningful choice about whether to execute the agreement. For the reasons stated at the hearing, and based on his declaration, the Court finds no procedural unconscionability under Maryland law.

d.    *Douglas A. Johnson*

Under Kansas law, the state Supreme Court has identified the following factors to aid in the determination of unconscionability: (1) the use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate; and (10) inequality of bargaining or economic power. *Willie v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 758-59 (1976).   Mr. Johnson declares that he requested to take the agreement home with him, but he does not specify that the request was denied. Moreover, he states that he read the agreement, but not thoroughly. It appears that Mr. Johnson was afforded an opportunity to

1   review the contract and may or may not have been denied the opportunity to review it at home.

2   While he asserts a lack of knowledge of the arbitration agreement provision, that failure can be

3   laid at his feet as he admits he failed to read the agreement thoroughly.   For the reasons stated at

4   the hearing, and based on his declaration, the Court finds no procedural unconscionability under

5   Kansas law.

6            e.    *Andrew M. Olson*

7            Under California law, the courts have determined procedural unconscionability

8   encompasses the contract formation focusing on the "oppression or surprise due to unequal

9   bargaining power." *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1071 (2003).   Mr. Olson

10  declares that when he requested to review the employment agreement at home, he was told he had

11  to sign it immediately.  Further, he was specifically advised that there was nothing important in

12  the document.  For the reasons stated at the hearing, and based on his declaration, the Court finds

13  procedural unconscionability rendering Mr. Olson's arbitration agreement unenforceable.

14           f.    *Clarence E. Stewart III*

15           The same California state law standard expressed above with respect to Mr. Olson applies

16  to Mr. Stewart as well.  Given the information contained in his declaration, the Court is unable to

17  assess the fairness of his execution of the agreement in context.  Although Mr. Stewart declares

18  that he was given the agreement to sign before leaving on the day the agreement was presented,

19  he does not indicate how much time he had to review his employment agreement.  Moreover, Mr.

20  Stewart had previously signed, without challenge, two other employment agreements containing

21  identical arbitration provisions.  No oppression or surprise has been shown.  For the reasons

22  stated at the hearing, and based upon his declaration, the Court finds no procedural

23  unconscionability under California law.

24  CONCLUSION

25           IT IS HEREBY ORDERED that plaintiffs' Motion [Docket No. 451] is DENIED in part

26  such that (1) the arbitration agreements between Cintas and opt-in plaintiffs from Arizona,

27  Louisiana and Pennsylvania are enforceable under the respective state laws and 9 U.S.C. § 2, and

28  (2) the arbitration agreements between Cintas and opt-in plaintiffs Allan J. Gumbs, Douglas A.

1    Johnson, and Clarence E. Stewart III are valid and enforceable under applicable state law and 9

2    U.S.C. § 2.  Plaintiffs' Motion [Docket No. 451] is GRANTED in part such that the arbitration

3    agreements between Cintas and opt-in plaintiffs Thomas Bradley, Louise Bruck, and Andrew M.

4    Olson are held to be unenforceable on the ground that they are procedurally unconscionable under

5    applicable state law.

6

7    V.    PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR PROPOSED SECOND
           AMENDED COMPLAINT

8
           Plaintiffs have moved for leave to file a proposed Second Amended Complaint adding

9    state-law overtime claims on behalf of plaintiffs from an additional

10         15 states:  Arkansas, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota,

11   New Mexico, Ohio, Oregon, Pennsylvania, Rhode Island, Washington, West Virginia and

12   Wisconsin.  [Docket No. 460 at 3:1-19].  The Motion "also propose[d] to add class

13   representatives for each state subclass on the additional overtime claims, see ¶¶ 9-10, 20-29, 34-

14   35, 42, 44-54 [of the proposed Second Amended Complaint] and to name these same individuals

15   as additional representatives of the national FLSA class. See¶149" [of the proposed Second

16   Amended Complaint].  [Docket No. 460 at 3:20-23.]

17

18         Cintas confirmed in the hearings that it does not oppose the Motion for leave to file the

19   proposed Second Amended Complaint to the extent that the Motion would add the claims

20   proposed therein of those proposed putative class representative plaintiffs who are permitted to

21   litigate their claims in this Court.  However, Cintas has opposed the Motion on grounds that leave

22   to amend is improper because the claims as to many of the proposed named plaintiffs have

23   previously been stayed or have now been stayed by virtue of the Court having granted Cintas'

24   Motion to Stay.  Cintas also opposes the Motion on the ground that leave to amend is improper as

25   to those proposed state-law subclass claims as to which the proposed representative plaintiffs are

26   persons who are stayed from litigating.  Finally, Cintas opposes the Motion for leave to amend to

27   state an Arkansas law subclass claim on the ground that it would be futile to do so.

28

1       For the reasons stated more fully on the record, the motion is GRANTED IN PART and

2 DENIED IN PART.  The Court GRANTS the Motion for leave to file the proposed Second

3 Amended Complaint with respect to those putative class or subclass representative plaintiffs who

4 the parties agree may litigate their claims before this Court, and DENIES the Motion for leave to

5 amend with respect to those plaintiffs who have been previously compelled to arbitration or who

6 are subject to defendant's Motion to Stay which has been granted elsewhere in this Order.

7       Regarding plaintiffs' proposed Arkansas subclass claim, the Court DENIES the request to

8 amend the complaint to include such a claim without prejudice to later revisiting the issue, if

9 appropriate, should the legal posture of this case change and/or the applicability of the Arkansas

10 statute.

11       IT IS HEREBY ORDERED that plaintiffs' Motion [Docket No. 460] is DENIED in part.

12 Plaintiffs are DENIED leave to file an amended complaint as to the claims of any plaintiffs who

13 are compelled to arbitrate or who are stayed from litigating.  Plaintiffs are DENIED without

14 prejudice leave to file an amended complaint adding an Arkansas state minimum wage law claim

15 as a Fourth Claim for Relief or otherwise.  Plaintiffs' Motion [Docket No. 460] is GRANTED in

16 part in that they are granted leave to file a Second Amended Complaint with respect to those

17 putative class or subclass representative plaintiffs who the parties agree may litigate their claims

18 before this Court.  Plaintiffs shall have ten (10) days' leave to file their Second Amended

19 Complaint, to the extent that leave to do so has been granted by this Order.  Defendants shall

20 have ten (10) days after service of the Second Amended Complaint to respond to it.

21

22 **IT IS SO ORDERED.**

23

24 Dated: 2/13/06_____      _Saundra B. Armstrong_

                                    SAUNDRA BROWN ARMSTRONG

25                                   United States District Judge

26

27

28

## Exhibit E

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1 | Abrahamsen | David J. | 03FL |
| 2 | Ackerman | Nicholas | 03A |
| 3 | Adams | Randall | 01A |
| 4 | Adkins | Donald | 96C |
| 5 | Adolph | Joseph W. | 03MD |
| 6 | Agler | Bradley | 99A |
| 7 | Agostini | Jason | 01A |
| 8 | Agozzino | Vince | 03IL |
| 9 | Ainsworth | Daniel E. | 03CA |
| 10 | Albright | Ryan | 99A |
| 11 | Aldrete | Joel | 01B |
| 12 | Alegria | Roberto Carlos | 99B |
| 13 | Alert | Thomas Eugene | 99A |
| 14 | Alfred | Chad | 01A |
| 15 | Alioto | Brandon | 99A |
| 16 | Allen | Alice | 03FL |
| 17 | Allen | Joseph | 02A |
| 18 | Allen | Judd | 01B |
| 19 | Allen | Sean | 02B |
| 20 | Allred | Jonathan | 99A |
| 21 | Allshouse | Michael Lee | 99A |
| 22 | Allspach | Gary | 02A |
| 23 | Alves | Louis | 03NY |
| 24 | Ames | Christopher J | 03NC |
| 25 | Ammon | Ryan | 99A |
| 26 | Amott | Troy | 99A |
| 27 | Anaya | Issac | 99B |
| 28 | Anaya | John | 99B |
| 29 | Anderson | Darren MItchell | 02A |
| 30 | Anderson | David | 03CA |
| 31 | Anderson | Jeffrey | 01A |
| 32 | Anderson | Matthew | 02A |
| 33 | Anderson | Michael (Chad) | 96A |
| 34 | Anderson | Randy | 99B |
| 35 | Anderson | Robert D. | 01A |
| 36 | Anderson | Zebulan (Zeb) | 96A |
| 37 | Andree | Nathan J | 02A |
| 38 | Andrews | Joe | 02A |
| 39 | Andrews | Robert | 96B |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 40 | Ansink, Jr. | John O. | 03VA |
| 41 | Aranegui | Gus | 96A |
| 42 | Arango | Rick | 99A |
| 43 | Arms | Rick | 99A |
| 44 | Armstrong | Bryan | 99B |
| 45 | Arroyo | Heriberto | 03CA |
| 46 | Arroyo | Sijifredo | 03B |
| 47 | Artley | Stephen Paul | 03VA |
| 48 | Arvin | Harold W. | 99A |
| 49 | Arvizu | Ronald | 99B |
| 50 | Ash | Brian | 01A |
| 51 | Atkins | James | 96A |
| 52 | Augustin | Matthew | 03LA |
| 53 | Ault | Travis M. | 02A |
| 54 | Avalos | Agustin | 99B |
| 55 | Avalos | Guillermo | 03CA |
| 56 | Avila | Hector | 02B |
| 57 | Aybar | Jeffrey | 96A |
| 58 | Bachman | Sean | 99B |
| 59 | Bachmann | Kenneth J. | 96A |
| 60 | Badgerow | Gary | 03CA |
| 61 | Bailey | Wayne C | 96A |
| 62 | Baker | Brian | 01A |
| 63 | Baker | Joshua | 99A |
| 64 | Baldwin | Daniel S. | 96A |
| 65 | Baldwin | David | 03MI |
| 66 | Banks | Joe L | 03GA |
| 67 | Barbarotta | Sam | 02A |
| 68 | Barfield | Donald Ray | 03TX |
| 69 | Barlow | Stephen | 01B |
| 70 | Barnes | Gregg | 99A |
| 71 | Barnes | Relton | 03MO |
| 72 | Barr | Jeff | 99A |
| 73 | Barrett | Jason | 96C |
| 74 | Bartz | Michael | 03A |
| 75 | Bass | Donnie | 02A |
| 76 | Bassett | Dennis | 99A |
| 77 | Batteate | Domenico | 99B |
| 78 | Baudier, Jr. | Ramon J.. | 96A |
| 79 | Bauer, Jr. | Harold D. | 99A |
| 80 | Baughman | Casey | 01B |
| 81 | Baumer | Christopher | 99A |

2

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 82 | Baxter | Aaron | 96A |
| 83 | Beal | Kevin | 99A |
| 84 | Bean | Robert W. | 02A |
| 85 | Beard | Everette G. | 03VA |
| 86 | Beard | Mitchell Aaron | 02A |
| 87 | Beck | Joseph | 96B |
| 88 | Beckham | Mark (Marshall) | 03GA |
| 89 | Bedard | Patricia | 03A |
| 90 | Bell | Wade | 03A |
| 91 | Bell | William | 96A |
| 92 | Bender | Daniel Lee | 02A |
| 93 | Benedict | Tyrone Charles | 96A |
| 94 | Benson | Josh | 02A |
| 95 | Bentley | Hank | 99B |
| 96 | Bereza | John | 99B |
| 97 | Berlage | Joseph E. | 02A |
| 98 | Berna | Brent | 03OK |
| 99 | Berry | Paul | 99B |
| 100 | Bersch | Warren | 99A |
| 101 | Bertram | Phillip | 02B |
| 102 | Bertrand | William | 01A |
| 103 | Biase | Joseph D. | 96A |
| 104 | Bickham | John D. | 99A |
| 105 | Bickmeyer | Warren | 99A |
| 106 | Bierach | Conrad | 99B |
| 107 | Bigbee | Gregory Cole | 03MS |
| 108 | Bigelow | Jason Scott | 03AL |
| 109 | Bippus | David W. | 02A |
| 110 | Bishop | Janice M. | 03MS |
| 111 | Bissin | Brooke A. | 99B |
| 112 | Bitz | William J. | 03FL |
| 113 | Bivins | Michael | 03FL |
| 114 | Blackman | Matthew L. | 99A |
| 115 | Blackmon | James Kurt | 01A |
| 116 | Blaha | Christopher | 96A |
| 117 | Blaisdell | Philip Daniel | 01A |
| 118 | Blake | Thomas FLynn | 99A |
| 119 | Blanchard | Bernard L | 03TX |
| 120 | Blanco | Noe | 02B |
| 121 | Blenden | Chad M. | 02A |
| 122 | Bobeck | Craig | 03MI |
| 123 | Bobo | Brian | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 124 | Bobola | Kenneth | 03FL |
| 125 | Bodenmiller | George | 99A |
| 126 | Bohn | David | 99A |
| 127 | Bolen, Jr. | Silas Ray "Bo" | 03NC |
| 128 | Boman | Jason | 99A |
| 129 | Bonacorsi | Daniel J. | 02A |
| 130 | Bonds, Jr. | Jackie Ray | 01B |
| 131 | Booker | Kathleen | 03A |
| 132 | Booth | Daniel | 01A |
| 133 | Borawski | Scott | 99A |
| 134 | Borrmann | Kevin | 99A |
| 135 | Boslaugh | Kevin | 02A |
| 136 | Bossett | Eric D. | 03CA |
| 137 | Bostick | Tony L. | FAS-B |
| 138 | Bostwick | Noah | 01B |
| 139 | Botelho | Troy | 99B |
| 140 | Bova | John S. Jr. | 01A |
| 141 | Bow | Jonathan James | 01A |
| 142 | Bowden | Robert | 99A |
| 143 | Bower | Kevin | 96A |
| 144 | Bowles | Randall | 99A |
| 145 | Bowles, Jr. | Robert F. | 03NY |
| 146 | Bowman | Daryl | 99B |
| 147 | Boyd | Ricko Lonnell | 99A |
| 148 | Boyle | Andrea | 02B |
| 149 | Boyle | Michael P. | 02A |
| 150 | Boynton | Kevin | 96A |
| 151 | Braaten | Bob | 03WA |
| 152 | Bracamontes | Ralph | 99B |
| 153 | Bradley | Tory | 96B |
| 154 | Branscome | Thomas Scott | 03NC |
| 155 | Brantley | Michael | 01A |
| 156 | Bray | Michael C | 99A |
| 157 | Bridges | Larry Daniel | 03GA |
| 158 | Bridges | Thomas Allan | 99A |
| 159 | Brien | Joseph | 02A |
| 160 | Brinlee | Robert | 99A |
| 161 | Brinning | Brandon | 99B |
| 162 | Briseno | Leonel | 96B |
| 163 | Bristow | Mark | 99A |
| 164 | Brite | Bobby | 02C |
| 165 | Brock | Stephen | 96A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 166 | Brooks | Antoine Alonzo | 01A |
| 167 | Brooks | Chris | 03CA |
| 168 | Brooks | Dezmon | 99B |
| 169 | Brooks | Stephen | 02B |
| 170 | Brown | Chris | 99A |
| 171 | Brown | Christopher | 03A |
| 172 | Brown | Danny L. | 03KY |
| 173 | Brown | Jonathan | 99B |
| 174 | Brown | Michelle | 99A |
| 175 | Brown | Wayne | 99A |
| 176 | Brown Jr. | James | 96A |
| 177 | Brown-Donald | Cory | 03MO |
| 178 | Browning | Jennifer (Jenny) | 99B |
| 179 | Browning | Stuart | 99A |
| 180 | Brown-Phillips | Mary E. | 99A |
| 181 | Bruno | Stuart | 03NJ |
| 182 | Brunson | Gregory | 96A |
| 183 | Bryant | Gregory S. | 96A |
| 184 | Buddie | Brian | 99A |
| 185 | Buen | Brian | 96A |
| 186 | Bullard | Brandon Eugene | 02A |
| 187 | Bunderson | Jason | 02A |
| 188 | Burch | Jeffrey | 02B |
| 189 | Burcke | Robert | 99A |
| 190 | Burgess | Scott | 01A |
| 191 | Burghart | Vince McClain | 99A |
| 192 | Burke | Christopher | 01B |
| 193 | Burke | Donald | 96C |
| 194 | Burke | Michael | 02A |
| 195 | Burress | James Allen | 03IL |
| 196 | Burt | Steven Jonathan | 99A |
| 197 | Burton | Crezone | 96A |
| 198 | Bush | David J. | 03OH |
| 199 | Butler | Dustin Lee | 96A |
| 200 | Butler | Jeffrey A. | 99A |
| 201 | Buuck | Greg M. | 99A |
| 202 | Byram | Jason Albert | 03A |
| 203 | Cabrera | Jorge | 03B |
| 204 | Cabrera | Luis | 01B |
| 205 | Cady | Chad Jason | 03A |
| 206 | Cagle | Lucas Hunter | 99A |
| 207 | Cala | Peter James | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 208 | Caldwell | Scott Patrick | 99A |
| 209 | Callahan | John | FAS-B |
| 210 | Calvin | Dean | 99A |
| 211 | Camden | Christopher | 03CA |
| 212 | Cameron | Bruce | 01A |
| 213 | Cameron | Chris | 99A |
| 214 | Campion | Michael H. | 03TX |
| 215 | Campos | Gustovo G. | 03CA |
| 216 | Cantu III | Leonel | 99B |
| 217 | Capuchino | Neal | 03DE |
| 218 | Carelock | Bryan | 01B |
| 219 | Carney Sr. | Eric | 99A |
| 220 | Carr | Boyd | 99A |
| 221 | Carr | Ray Anthony | 99A |
| 222 | Carrera | Gerardo | 96A |
| 223 | Carrillo | Javier | 03CA |
| 224 | Carter | Charlie | 03MO |
| 225 | Carter | Kevin | 96A |
| 226 | Carter | Matthew S. | 03CA |
| 227 | Carter | Stephen W. | 03GA |
| 228 | Carter | Terry | 96A |
| 229 | Carter Jr. | Nelson | 02A |
| 230 | Carthon | Rickey | 96B |
| 231 | Caruso | Kenneth | 03A |
| 232 | Cash | Jason | 96A |
| 233 | Casselman | Dana | 03SC |
| 234 | Cassens | Everett W. | 01A |
| 235 | Castens | Richard | 99A |
| 236 | Castleberry | Don | 02C |
| 237 | Caton | Clinton | 96B |
| 238 | Caudill | Michael | 03A |
| 239 | Cavanaugh | Craig Robert | 99B |
| 240 | Cavazos | Jesse | 03TX |
| 241 | Cervantes | Marcos | 02B |
| 242 | Chalmers | Scott | 99A |
| 243 | Chambers | Veronica | 03AL-Conf. |
| 244 | Chambers Sr | Broderick | 02C |
| 245 | Chapman | Brent | 99A |
| 246 | Chapman | David | 96B |
| 247 | Chappell | Chad | 01A |
| 248 | Charatin | Daniel | 99A |
| 249 | Chavez | William | 03CA |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 250 | Chesser | Larry D. | 03MI |
| 251 | Chirino | Humberto | 96A |
| 252 | Choate | Doug | 01A |
| 253 | Christensen | Eugene | 03CT |
| 254 | Churches | Dennis L. | 99A |
| 255 | Cingel | Timothy | 02A |
| 256 | Citrano | Chris | 03A |
| 257 | Clark | Arnie | 99A |
| 258 | Clark | Brian | 99A |
| 259 | Clark | Michael D. | 99A |
| 260 | Clark | Shon D. | 03A |
| 261 | Clark Jr. | Gerald | 02A |
| 262 | Clayton | William W. | 03NY |
| 263 | Cleaves, Sr | Jason | 02A |
| 264 | Cobble | James | 03KY |
| 265 | Cockreham | Colin | 99A |
| 266 | Coe | Steven M. | 02A |
| 267 | Colavito | Marc | 02B |
| 268 | Colby | Jeffrey | 02A |
| 269 | Colca | Keith | 02A |
| 270 | Cole | Dennis | 99A |
| 271 | Collazo | Edwin Upeano | 03VA |
| 272 | Collins | Aaron | 99A |
| 273 | Collins | Bobby | 03TX |
| 274 | Collins | French | 03IN |
| 275 | Colunga | Edward | 99B |
| 276 | Colunga | Orlando | 03NV |
| 277 | Comaty | Kevin | 99A |
| 278 | Combs | Gary | 99A |
| 279 | Comiso | Mike | 96A |
| 280 | Conigland | James W. | 96A |
| 281 | Conley | Marty D. | 03KY |
| 282 | Connelly | James | 03B |
| 283 | Conner | Michael | 02B |
| 284 | Conti | Matthew | 99A |
| 285 | Contreras | Carlos Javier | 03CA |
| 286 | Contreras | Javier | 03CA |
| 287 | Contreras | Ricardo | 02G |
| 288 | Conway | Merle | 03FL |
| 289 | Cook | David | 99A |
| 290 | Coombs | Jason M | 03FL |
| 291 | Cooper | Daniel B. III | 02A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 292 | Cooper | Erinn | 02B |
| 293 | Cooper | Leon Allen | 03MO |
| 294 | Cooper | Shirlene | 03A |
| 295 | Cope Jr. | James Andrew | 96A |
| 296 | Coppock II | Lonnie | 96B |
| 297 | Corelli | Charles | 96A |
| 298 | Cornelius | Randall M. | 03AL |
| 299 | Cornett | Michael | 01B |
| 300 | Cortes | Gustavo | 99B |
| 301 | Cortes Jr. | Juventino | 99B |
| 302 | Cortez | Sonny | 99B |
| 303 | Cothran | Matthew | 96A |
| 304 | Cothran | Robert A. | 03FL |
| 305 | Cotter | Bruce | 03MN |
| 306 | Cottini | Jeffrey Louis | 02B |
| 307 | Cottrell | Michael | 01A |
| 308 | Cottun | Jon-mikal | 02A |
| 309 | Coulon | Kevin | 99A |
| 310 | Coulson | Jeffrey M. | 99A |
| 311 | Cousins | Willie | 03MS |
| 312 | Cowles | Barbara | 02A |
| 313 | Cox | Michael | 99C |
| 314 | Coy | Aaron | 01A |
| 315 | Craig | John | 99B |
| 316 | Craig | John Maurice | 02B |
| 317 | Crandle | Tom | 96A |
| 318 | Crawford | James Ryan | 99A |
| 319 | Crawford | Nathaniel T. | 96A |
| 320 | Crawford | Wesley | 99A |
| 321 | Crews | Chad | 03NC |
| 322 | Crismond | Jeff | 01A |
| 323 | Crivello | Tony | 99B |
| 324 | Croft | Virgil Lee, III | 99B |
| 325 | Crook | Robert | 03A |
| 326 | Crosby | Germain | 96A |
| 327 | Crumley | Timothy | 96A |
| 328 | Cruz | Carlos R | 03B |
| 329 | Cruz | Rene | 03A |
| 330 | Culley | Donna J. | 99A |
| 331 | Cumley | Michael | 99A |
| 332 | Czamara | Jamie | 99A |
| 333 | D'Amato | Pasquale | 02A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 334 | Dahbu | Dahbu | 96A |
| 335 | Dahl | Shawn L. | 02A |
| 336 | Dahmke | Robert | 03I |
| 337 | Dailey | Thomas L | 99A |
| 338 | Dakos | Michael D. | 03CA |
| 339 | Dalsass | Mark | 96B |
| 340 | Damron | Dan II | 96A |
| 341 | Danelle | Dana | 03A |
| 342 | Dangerfield | Raymond L. | 96B |
| 343 | Daniel | Roger | 99A |
| 344 | Daniels | Jason | 03WA |
| 345 | Dardon | Jose | 02A |
| 346 | Davidson | Aaron Lindsay | 01B |
| 347 | Davis | Jason | 99A |
| 348 | Davis | Jeffrey C | 02B |
| 349 | Davis | Robert Samuel | 99B |
| 350 | Davis | Wayne | 02B |
| 351 | Davison | Dustin | 02A |
| 352 | Dawson | Dan | 96C |
| 353 | Dawson | Keith C. | 99B |
| 354 | Dawson | Timothy | 02B |
| 355 | Day | Jackie Nelson | 96A |
| 356 | Day | Patrick | 03CA |
| 357 | DeBano | Craig | 99B |
| 358 | DeBilzan | David | 96B |
| 359 | Deely | Daniel | 01A |
| 360 | Dees | Chris C. | 99B |
| 361 | DeFelix | Matthew J. | 02A |
| 362 | DeGroot | Robert J. | 99A |
| 363 | DeLaneo | David | 01B |
| 364 | DeLauro | Michael | 03CT |
| 365 | Delgado | Oscar R. | 03IL |
| 366 | Delort | John | 99A |
| 367 | DelSorbo | Frank | 99A |
| 368 | Dempsey | James | 96A |
| 369 | DeMulling | Douglas | 96A |
| 370 | Deneka | Michael | 99A |
| 371 | Denise | Matthew | 01A |
| 372 | Dennis | Marc | 01A |
| 373 | DeRosia | Troy L. | 02A |
| 374 | Dervin | John H | 01B |
| 375 | DeSantis | Michael E. | 03FL |

9

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 376 | Devlin | Thomas | 03NJ |
| 377 | Diaz | Albert | 03FL |
| 378 | Diaz | Jorge | 03CA |
| 379 | Diazgranados | Humbert | 99A |
| 380 | Dickerson | Jimmy | 03TX |
| 381 | Diebler | Bryan | 99A |
| 382 | Dillard | Marcus | 99B |
| 383 | Dillon | Michael James | 99A |
| 384 | Dimac | Jasmin | 01A |
| 385 | DiPaolo | Derrick | 02A |
| 386 | DiSalvo | Carl | 99A |
| 387 | Dixon | Jean Lande | FAS-C |
| 388 | Dixon | Timothy A. | 99A |
| 389 | Dixon III | Roy | 96A |
| 390 | Dixon JR. | Billy Ray | 03AL |
| 391 | Dodson | Tommy | 99B |
| 392 | Doherty | John F., Jr. | 99A |
| 393 | Dolan | John | 96A |
| 394 | Doll | Russell | 01B |
| 395 | Dollhopf | Thomas Nile | 99A |
| 396 | Dompke | Alvin | 03WI |
| 397 | Donahue | Christopher | 03CA |
| 398 | Donegan | Michael | 96A |
| 399 | Dool | Mark E | 03CA |
| 400 | Dorris | Jermaine | 02C |
| 401 | Doss | Robert | 01B |
| 402 | Dossin | Ernest | 96A |
| 403 | Downey | George | 02A |
| 404 | Downey | James | 99A |
| 405 | Drahos | James | 99A |
| 406 | Dravland | David | 99A |
| 407 | Drenckhahn | Larry A. | 96D |
| 408 | Drendel | Lynn M. | 01A |
| 409 | Driggers | Ashley | 02B |
| 410 | Drought | Debra | 03IL |
| 411 | Drummond | Michael | 02A |
| 412 | Ducey | Kevin Edward | 02A |
| 413 | Duell | Clarence | 99A |
| 414 | Dulan | Nyjeri | 03CA |
| 415 | Dunham | Matthew H. | 96B |
| 416 | Dunlap | Travis | 99A |
| 417 | Duran | Jesse | 01B |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 418 | Durbin | Joseph Len | 99B |
| 419 | Durbin | Phillip | 96B |
| 420 | Durkin | R. Patrick | 99A |
| 421 | Dwarte | Mark Daniel | 02A |
| 422 | Dyer | John | 99A |
| 423 | Eagle | Ryan Daniel | 01A |
| 424 | Earl | Luis R. | 99A |
| 425 | Eastman III | John James | 96A |
| 426 | Eaton | Sean | 03A |
| 427 | Ecija | Allan | 03A |
| 428 | Edenfield | Samuel | 99B |
| 429 | Edney | Jeff | 03MI |
| 430 | Edwards | Anthony | 02A |
| 431 | Edwards | Douglas | 03NJ |
| 432 | Edwards | Joseph E. | 03RI |
| 433 | Edwards | Mark | 03CA |
| 434 | Eggebeen | John | 96A |
| 435 | Ehrman | Steve | 96C |
| 436 | Eldridge | Kendall | 02A |
| 437 | Elliott | William | 02A |
| 438 | Ellis | Sean | 99B |
| 439 | Ellsworth | Jeffrey | 99A |
| 440 | Emberland | Douglas Brian | 03CA |
| 441 | Emmerling | Robert | 99D |
| 442 | Enriquez | Jesus, Jr. | 99B |
| 443 | Erazo | Aliexer | 99C |
| 444 | Ernsperger | Jerry | 96B |
| 445 | Ernst | Gregory | 96A |
| 446 | Escovar | Jason | 99B |
| 447 | Esparaza | Pablo | 96B |
| 448 | Esparza | Edgar | 01A |
| 449 | Esparza | Paul | 03CA |
| 450 | Esparza, Jr | Sam | 03CA |
| 451 | Estrada | Richard | 03CA |
| 452 | Estrada | Robert | 03CA |
| 453 | Etzler | Michael | 01A |
| 454 | Evans | Edward | 99A |
| 455 | Evans | Randall | 96A |
| 456 | Evans | Terry C. | 03MS |
| 457 | Fabrizio | Samuel | 99A |
| 458 | Fadeff (Scruggs) | Jodi | 02B |
| 459 | Fairley | Reginald D. | 03PA |

Case 4:03-cv-01880-SBA   Document 55-16   Filed 02/24/2005   Page 12 of 41

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 460 | Fancher | Thomas | 99A |
| 461 | Farris | Greg | 01A |
| 462 | Farthing | Kenneth | 99A |
| 463 | Fast | Randolph | 03WI |
| 464 | Faul | Karl | 96A |
| 465 | Faul | Shane | 99A |
| 466 | Favret | J. Milchael | 99A |
| 467 | Feagin | Mark Anthony | 03KS |
| 468 | Feehan | Scott | 96A |
| 469 | Feeney | Patrick | 03MI |
| 470 | Fenstemacher | Rick | 03CA |
| 471 | Ferguson | Ken | 99B |
| 472 | Ferreira | Carlton Manuel | 02A |
| 473 | Ferrell | Rick | 99A |
| 474 | Ferrer | Hector | 99B |
| 475 | Fielding | Scott | 02A |
| 476 | Fields | Rickey | 03MI |
| 477 | Fillingame | Alan | 99B |
| 478 | Finch | James | 99A |
| 479 | Fincham | Jon Curtis | 99A |
| 480 | Finnie | William D. (Bill) | 96B |
| 481 | Firer | Ruslan | 99A |
| 482 | Fisher | Alfred | 03NJ |
| 483 | Fisher | Nicholas | 01A |
| 484 | Flagg | James | 96B |
| 485 | Flanagan | Robert | 99A |
| 486 | Fleek | James | 01A |
| 487 | Flintom | Frank | 99A |
| 488 | Flores | Eduardo | 02B |
| 489 | Flores | Roger | 99B |
| 490 | Floyd | Ricky | 99A |
| 491 | Fogg Jr. | Norman | 02A |
| 492 | Follen | James | 03MI |
| 493 | Folz | Jason | 99C |
| 494 | Fonseca | Ricardo | 03CA |
| 495 | Forbes | Wanda | 02A |
| 496 | Ford | John E. | 02A |
| 497 | Ford | Robert C | 96B |
| 498 | Foreman | Michael E. | 03A |
| 499 | Fortune | Scott | 99A |
| 500 | Foster | H. Berk | 01A |
| 501 | Fourman | Julia | 03SC |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 502 | Fournier | Steven | 99A |
| 503 | Fragassi | Shawn | 03IL |
| 504 | Fraginals | Mauricio | 96A |
| 505 | France-Kelly | Timothy | 96B |
| 506 | Franklin | Henry | 99B |
| 507 | Franks | Glenn Mark | 99A |
| 508 | Franks | Jerome | 96A |
| 509 | Frashier | Dylan M. | 02A |
| 510 | Frazer | Joshua | 02A |
| 511 | Frazier | Joseph | 99A |
| 512 | Freeman | Nathan | 03B |
| 513 | Freier | Bruce | 99A |
| 514 | French | Derek | 96A |
| 515 | French | James David | 01B |
| 516 | French | Ronald | 99A |
| 517 | Fridley | Michael | 99B |
| 518 | Frierson | David M. | 03FL |
| 519 | Frierson | Jeremaine | 03TX |
| 520 | Fries | Rick | 01A |
| 521 | Frink | David | 99A |
| 522 | Fuentes | Michael Anthony | 03CA |
| 523 | Fuerst | Craig | 03A |
| 524 | Fulce Jr. | Raymond | 01B |
| 525 | Fuqua | William (Rob) | 02A |
| 526 | Gable | Jaymes | 96A |
| 527 | Gaeta Jr. | Steve | 02B |
| 528 | Gage | Mark | 99A |
| 529 | Gagne | William | 02A |
| 530 | Gaines | Ronnie | 99A |
| 531 | Galicia | Tomas | 99B |
| 532 | Galik | Grant | 01A |
| 533 | Gallo | Russ | 03CT |
| 534 | Gallop | Chris | 03CA |
| 535 | Galloway | Phillip R., Jr. | 96A |
| 536 | Gambill | Kevin W. | 99A |
| 537 | Gamez | Ruben | 99B |
| 538 | Garcia | Anthony | 99B |
| 539 | Garcia | Edmundo | 99B |
| 540 | Garcia | Edward P | FAS-B |
| 541 | Garcia | Jerry | 03CA |
| 542 | Garcia | Lossan | 03TX - Plant |
| 543 | Garcia | Tracy Ramos | 02B |

Case 4:03-cv-01803-SBA     Document 59-16     Filed 02/12/2005     Page 254 of 541

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 544 | Garcia Jr. | Adan | 03TX |
| 545 | Gardner | Brian | 99A |
| 546 | Gardner | Paul J. II | 03GA |
| 547 | Gardner Jr. | Ronald | 01A |
| 548 | Garity | Thomas David | 01A |
| 549 | Garland | Kelby | 03A |
| 550 | Garrett | Ricky | 03A |
| 551 | Garrett | Shawn | 02A |
| 552 | Garrett-Webb | Melinda | 99A |
| 553 | Garrison | Lamont | 96B |
| 554 | Gartin | Chad | 03A |
| 555 | Gaskins | Stephen | 01A |
| 556 | Gastelum | Jesse | 03CA |
| 557 | Gates | Sammy | 99B |
| 558 | Gaul | Michael | 03MS |
| 559 | Gay | Michael Keith | 03AL |
| 560 | Gedinsky | Kevin | 96A |
| 561 | Geer | Robert L. | 99A |
| 562 | Geile | John | 99A |
| 563 | Gemmati | Michael | 03FL |
| 564 | Gemmati | Phillip J. | 03FL |
| 565 | Genther | Brandon | 99A |
| 566 | Gentry | David Lewis | 96A |
| 567 | Gentry | Joshua | 01B |
| 568 | Gentry | Lee Edward | 03CA |
| 569 | Gentry | Wyman | 99B |
| 570 | Giammusso | Carrie | 99B |
| 571 | Gibson | Tyler John | 02A |
| 572 | Gienapp | Dalero | 03CA |
| 573 | Gill | John | 01A |
| 574 | Gilliland | Brent | 96A |
| 575 | Gilmore | James | 99A |
| 576 | Gilmore | Josh | 01A |
| 577 | Gitmed | Kurt | 99B |
| 578 | Godoy | Karlo | 03CA |
| 579 | Goemaat | Anthony | 03B |
| 580 | Goines | Pamela | 03A |
| 581 | Golden | Daniel | 99B |
| 582 | Gomez | Jeffrey | 02B |
| 583 | Gomez | Vincent | 99A |
| 584 | Gonce | Raul Jose | 99A |
| 585 | Gonzales | Albert | 99B |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 586 | Gonzales | Charles R. | 01B |
| 587 | Gonzales | Jesus P. | 99B |
| 588 | Gonzalez | Yovani | 02B |
| 589 | Gordon | Todd | 99A |
| 590 | Goslau | Richard | 02A |
| 591 | Goveia | Eric S. | 99A |
| 592 | Graham | Luke D. | 02A |
| 593 | Grant | Bryan | 99A |
| 594 | Gray | Charles Leroy | 02A |
| 595 | Gray | Glenn E. | 03NC |
| 596 | Green | Wayne | 03AL |
| 597 | Greene | Jeff | 02A |
| 598 | Greene III | Tilmon C. | 96B |
| 599 | Greer | James R. | 99A |
| 600 | Greer | Russell | 03B |
| 601 | Gregor | Scott Patrick | 03TX |
| 602 | Gregory | Jonathan A. | 99B |
| 603 | Griffin | Donald Allen | 99A |
| 604 | Griffin | Michael | 03IN |
| 605 | Grigsby, Jr. | Vernon | 03CO |
| 606 | Grim | Matt | 99B |
| 607 | Griner | Joseph Lee | 02A |
| 608 | Gritsipis | Antonios | 99A |
| 609 | Groves | Jeffrey | 01A |
| 610 | Grucza | Troy D. | 99A |
| 611 | Guardado | Johnny | 03B |
| 612 | Gubala | Thomas | 02A |
| 613 | Gugino | David George | 99A |
| 614 | Gullett | Rickey L. | 03TX |
| 615 | Gunckle | Richard E. | 96A |
| 616 | Gurnee | Kimberly | 03WA |
| 617 | Guys Jr. | Ralph | 99A |
| 618 | Hagan | Bradley | 99B |
| 619 | Hager II | Thomas | 99A |
| 620 | Hale | Russell | 99A |
| 621 | Hall | Eric | 02A |
| 622 | Hall | Robert | 02F |
| 623 | Haloski | David M. | 96A |
| 624 | Hamby | Anthony Dean | 01A |
| 625 | Hamilton | David | 99A |
| 626 | Hamilton | Jason C. | 01B |
| 627 | Hammer | Bruce | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 628 | Hammerberg | Tammy | 99A |
| 629 | Hammons | Cody A. | 03AL |
| 630 | Hanson | Dan | 02A |
| 631 | Hanson | Sarah | 03A |
| 632 | Hanson | Sheree | 03A |
| 633 | Hanthorn | Brian Scott | 99A |
| 634 | Hardin | Mark Lee | 99B |
| 635 | Harper | Kevin | 99A |
| 636 | Harper | Steven | 01A |
| 637 | Harris | Cheryl | 99A |
| 638 | Harris | Dwight | 96C |
| 639 | Harris | John Michael | 03MS |
| 640 | Harris | Kim | 03B |
| 641 | Harris Jr. | Raymond Mac | 99A |
| 642 | Harrison | DeCarlo | 03A |
| 643 | Hart | Laurence | 96A |
| 644 | Hart | Mike | 96A |
| 645 | Hart | Scott | 03FL |
| 646 | Hartmire | Gordon | 03B |
| 647 | Hartwell | Joshua | 03MO |
| 648 | Hassan | Ghassan | 02A |
| 649 | Hauk | Walter | 03FL |
| 650 | Hawkins | Randal Kevin | 96A |
| 651 | Hawkins | Ryan | 03A |
| 652 | Hawthorne | DeLondon | 03IL |
| 653 | Hayes | Clyde | 03KY |
| 654 | Hayes | Jeremiah | 99B |
| 655 | Haynes | John A. | 96A |
| 656 | Hays | Alan | 99A |
| 657 | Heaney | Joseph | 03A |
| 658 | Heath | Caderis | 03NC |
| 659 | Hedgpeth | Kelly Chad | 99A |
| 660 | Hehr II | William W. | 03KY |
| 661 | Hein | Brandon K. | 02A |
| 662 | Heinrich | Eric | 03AL |
| 663 | Helbert | Matthew C. | 99A |
| 664 | Hellen | Richard | 99B |
| 665 | Helton | Daniel | 96B |
| 666 | Henderson | Stephen | 96A |
| 667 | Henderson | Stephen L. | 99B |
| 668 | Henderson | Toni | 99A |
| 669 | Hendry | Kami | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 670 | Hennigan | Jordan | 03TX |
| 671 | Hennon | Charles | 01A |
| 672 | Hermes | Darren M | 03PA |
| 673 | Hermiller | Chad | 03OH |
| 674 | Hernandez | Jorge | 99B |
| 675 | Hernandez | Victor Hugo | 03CA |
| 676 | Herndon, Jr. | James Grady | 96A |
| 677 | Herr | David | 01A |
| 678 | Herrera | Efrain | 99B |
| 679 | Herrington | Harvey | 96A |
| 680 | Herron | James | 99A |
| 681 | Herzog | Greg | 96B |
| 682 | Hess | Brian Keith | 03IN |
| 683 | Hewett | Robert | 01B |
| 684 | Hewitt | Joshua | 96A |
| 685 | Hickey | Charles Terry | 99A |
| 686 | Hildreth | Barrett | 99A |
| 687 | Hill | Brad Duane | 96A |
| 688 | Hill | Daniel | 03MN |
| 689 | Hill | Dustin L. | 01B |
| 690 | Hill Jr. | Steven | 01B |
| 691 | Hilliard | Michael | 01C |
| 692 | Hilyer | Donald Keith | 03FL |
| 693 | Hines | Bruce | 02A |
| 694 | Hipp | Randall S. | 96A |
| 695 | Hoaglund | Edward | 99A |
| 696 | Hoefle | H. David | 99A |
| 697 | Hoekman | Peiter | 03CO |
| 698 | Hoffman | Dana | 03B |
| 699 | Hoffman | Terry G | 99A |
| 700 | Hoffmann | Glenn | 99A |
| 701 | Hohenstein | Rodney | 01A |
| 702 | Holbrook | Ryan Scott | 02A |
| 703 | Holcombe | Lavatus | 99A |
| 704 | Holland | Daryl | 02A |
| 705 | Holland | Jason | 02A |
| 706 | Holloman | Carvell | 03TX |
| 707 | Holloway | Dayton | 99A |
| 708 | Holmes | Willie | 99A |
| 709 | Hood | Daniel | 02A |
| 710 | Horn | Ben | 99A |
| 711 | Horn | John | 01A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 712 | Horne | Timothy | 01A |
| 713 | Horton | Thomas | 99A |
| 714 | Hosack | Richard | 03NV |
| 715 | Hoskins III | Joseph Wiley | 96B |
| 716 | Hotchkiss | Benjamin | 96A |
| 717 | Houha | Leonard | 99A |
| 718 | Householder | Chad | 02A |
| 719 | Howe | Ronald | 99A |
| 720 | Howe | Scott | 99A |
| 721 | Howe | Steven | 99A |
| 722 | Howell | Sidney | 03NC |
| 723 | Howell | Tracy | 96A |
| 724 | Hubbard | Tim | 96B |
| 725 | Huber | Peter James | 96A |
| 726 | Hughes | John M. | 03A |
| 727 | Hughes | Stephen | 01A |
| 728 | Hughes | Stephen Richard | 96B |
| 729 | Hulet | James | 00A |
| 730 | Hulse | Gregory D. | 99A |
| 731 | Humbles | Derrick | 02A |
| 732 | Humphrey | Alex | 99A |
| 733 | Hurst | Craig | 02A |
| 734 | Hurtado | Alex | 99B |
| 735 | Hurtado | Alvaro | 03CA |
| 736 | Hurtado | Daniel | 99A |
| 737 | Hussmann | Reuben John | 99C |
| 738 | Hutson | Nick | 96A |
| 739 | Indorf | Neal | 99B |
| 740 | Infante | Angel | 02B |
| 741 | Ingram | Brandon | 01B |
| 742 | Ingram | Rodney | 99A |
| 743 | Isaacs | William Keith | 99A |
| 744 | Jackson | Colby L. | 03OR |
| 745 | Jackson | James | 01A |
| 746 | Jackson | Marvin | 99A |
| 747 | Jackson | Michael David | 02A |
| 748 | Jackson | Rex O. | 96F |
| 749 | Jackson | Sergeo | 03NJ |
| 750 | Jacquez | Abel | 96B |
| 751 | James | Beau | 02B |
| 752 | James | Jack | 96A |
| 753 | James | Patricia | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 754 | Jamieson | Ronald | 03CA |
| 755 | Jamison | Matthew Leonard | 02A |
| 756 | Jansen | John | 01A |
| 757 | Jaseckas | Kenneth | 03MO |
| 758 | Jaslove | Jeremy | 03CA |
| 759 | Jedrysek | Erik Stephen | 96A |
| 760 | Jefferson | David K. | 02A |
| 761 | Jenks | Todd | 01A |
| 762 | Jennings | Timothy W. | 02A |
| 763 | Jewell | Marcus Angel | 99A |
| 764 | Jimenez | Ricardo | 02C |
| 765 | Jinings | Nick | 99A |
| 766 | Johanson | Sean M. | 96A |
| 767 | JohnLouis | Albert | 02B |
| 768 | Johnson | Courtney | 03A |
| 769 | Johnson | Darrin | 99A |
| 770 | Johnson | Deon | 96B |
| 771 | Johnson | Eric | 99A |
| 772 | Johnson | Jadarthia | 03TX |
| 773 | Johnson | James | 99A |
| 774 | Johnson | Jeff C. | 03NC |
| 775 | Johnson | John D. | 99A |
| 776 | Johnson | Kwan | 99A |
| 777 | Johnson | Lamont | 03AL |
| 778 | Johnson | Mark H | 03NC |
| 779 | Johnson | Martin F. | 03GA |
| 780 | Johnson | Orlando | 96A |
| 781 | Johnson | Stephanie | FAS-B |
| 782 | Johnson | Thomas S. | 02A |
| 783 | Johnson | Todd | 99A |
| 784 | Joiner | Robert | 99A |
| 785 | Jones | Brian | 99A |
| 786 | Jones | Clifford | 96C |
| 787 | Jones | Craig | 96A |
| 788 | Jones | David Darryl | 96A |
| 789 | Jones | Gerald N. | 03A |
| 790 | Jones | Greg | 02A |
| 791 | Jones | John Corey | 99A |
| 792 | Jones | Joshua | 99A |
| 793 | Jones | LaShawn | 99A |
| 794 | Jones | Paul | 99A |
| 795 | Jones | Paul R. | 03FL |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 796 | Jones | Shane M. | 01A |
| 797 | Jones | Thomas Roy | 01A |
| 798 | Jones I | Michael | 99A |
| 799 | Jordan | Albert | 99A |
| 800 | Judd | Randy | 96A |
| 801 | Kadilak | Ken | 99A |
| 802 | Kaeg | Silverio Ted | 03CA |
| 803 | Kandal | Donald | 96A |
| 804 | Karr | Brian | 96C |
| 805 | Kassen | Dale Allen | 01A |
| 806 | Kauscha | John | 03CA |
| 807 | Kelleher | Eugene | 99A |
| 808 | Kelley | Timothy James | 99A |
| 809 | Kelly | William | 02A |
| 810 | Kennedy | Glen | 99A |
| 811 | Kerlavage, Jr. | Joseph R. | 03KY |
| 812 | Kern | Jason | 99A |
| 813 | Kilby | Kevin | 01A |
| 814 | Kimball | Walter | 03B |
| 815 | Kincaid | Don | 01A |
| 816 | Kincaid | Eric R. | 99A |
| 817 | King | Thelenious James | 03TX |
| 818 | King | Willie A. | 01A |
| 819 | King III | Richie | 03CA |
| 820 | Kingsley | Hugh J | 01A |
| 821 | Kinkead | Michael | 96A |
| 822 | Kinser | Jason | 99B |
| 823 | Kintler | Joseph | 99A |
| 824 | Kinto | Thomas | 02B |
| 825 | Kirby | Jason | 01B |
| 826 | Kirksey | Joel L. | 99A |
| 827 | Kirwan | Thomas | 96A |
| 828 | Klement | Robert | 99A |
| 829 | Klimm | Robert W. | 03NY |
| 830 | Kloes | William | 03WA |
| 831 | Knapp | Jason | 99A |
| 832 | Kohl | David | 96B |
| 833 | Kolby | Randall | 99B |
| 834 | Koltys | Jason | 02A |
| 835 | Konieczny | Edward | 99A |
| 836 | Kormelink | Bret Michael | 99A |
| 837 | Koste | Brian | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 838 | Koste | Jason Lyle | 01A |
| 839 | Kostiuk | Adrian | 99A |
| 840 | Kougl | Alan F. | 03TX |
| 841 | Kozelisky | Zachary I. | 01A |
| 842 | Kraft | David | 03FL |
| 843 | Krause | Christopher | 02A |
| 844 | Kremer | Fred | 03KY |
| 845 | Kreutz | Patrick | 99A |
| 846 | Kropp | James J. | 02C |
| 847 | Krueger | Joshua | 99A |
| 848 | Kulessa | Gordon Scott | 99A |
| 849 | Kull | Christopher | 99A |
| 850 | Kunda | Matthew | 99B |
| 851 | Kunz | John | 99A |
| 852 | Kyser, Jr. | Hiram | 99A |
| 853 | Labastille | Sergio | 01A |
| 854 | Labrecque | Ronald | 03RI |
| 855 | Lackey | Christopher Alan | 99A |
| 856 | Ladd | Carl Louis, Jr. | 99A |
| 857 | Lafond | David | 99A |
| 858 | LaGreca | David | 02A |
| 859 | Lahey | Kevin M. | 96A |
| 860 | Laissle | Sean M. | 03TX |
| 861 | Lambert | Jeffrey | 96C |
| 862 | Lancaster | Kurt | 99A |
| 863 | Lanci | Edward | 99A |
| 864 | Landry | Anton (Tony) | 99B |
| 865 | Landry Jr. | Steve | 02F |
| 866 | Langdon | James Craig | 99B |
| 867 | Lange | John C. | 99A |
| 868 | Lanigan | Brian David | 99A |
| 869 | Lanning | Brian | 03CA |
| 870 | Lantrip | Shannan | 99A |
| 871 | Lapp | Mario T. | 02B |
| 872 | LaPrell | Bill | 03MI |
| 873 | Larque | Renee | 02A |
| 874 | Lassiter | Greg | 03GA |
| 875 | Laster | Michael | 99B |
| 876 | Laurain | Eric | 03MI |
| 877 | Lawrence | Sean Warren | 96A |
| 878 | Lawson | Brady | 99A |
| 879 | Leal | Elba Guadalupe | 96E |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|-----------|-------------------|
| 880 | Leben | Erik | 99A |
| 881 | Ledbetter Sr. | Thomas Jap | 02A |
| 882 | Ledsworth | Donald | 99A |
| 883 | Lee | Gregory M. | 02B |
| 884 | Lee | Kevin | 99B |
| 885 | Leeder | Christopher | 03MI |
| 886 | Leinberger | Robert Lee | 99A |
| 887 | Leite | Dennis M | 03CA |
| 888 | Lemanski | Frank | 96A |
| 889 | Lewis | James K | 02B |
| 890 | Lewis | Kelvin T | 01B |
| 891 | Lewis | Roger | 96F |
| 892 | Lewis | Ronald Dee | 99A |
| 893 | Lewis | Russell | 03TX |
| 894 | Lewman | Lori | 03MD |
| 895 | Lickliter | Charles (Andy) | 03GA |
| 896 | Liktor | William | 99A |
| 897 | Liles | Ron | 99B |
| 898 | Link | Timothy | 99B |
| 899 | Linn | Michael | 03MN |
| 900 | Lippold | Geoffry | 96A |
| 901 | Lishman | John | 01A |
| 902 | Lisiakowski | Jody | 99A |
| 903 | Litteral | Darrell R., Jr. | 01A |
| 904 | Litvack | Adam | 03A |
| 905 | Livernois | Michelle | 02A |
| 906 | Lizarraga | Enrique | 99B |
| 907 | Lodewyck | David | 99A |
| 908 | Lombardo | Jason | 03OH |
| 909 | Long | Ernest | 99A |
| 910 | Long | Philip | 96A |
| 911 | Long Jr. | Thomas | 96A |
| 912 | Longoria | Robert James | 99A |
| 913 | Longstaff | Gregory | 03MO |
| 914 | Looney Jr. | Ron | 03FL |
| 915 | Lopez | Adan | 99B |
| 916 | Lopez | David | 99B |
| 917 | Lopez | Gilbert | 03CA |
| 918 | Lopez | Juan Sanchez | 03CA |
| 919 | Lopez | Roberto | 99A |
| 920 | Lounsbury | Rodger | 01A |
| 921 | Lovatt | Bob | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 922 | Love | Sean P. | 02A |
| 923 | Lovett | Shannon | 02B |
| 924 | Lovins | Todd Alan | 99A |
| 925 | Lowell | Joseph | 02A |
| 926 | Lubrano | Anthony | 01A |
| 927 | Ludwig | Jeffrey | 96A |
| 928 | Lujan | David | 96B |
| 929 | Luna | Gilbert | 03CA |
| 930 | Lupo | Thomas | 01A |
| 931 | Lutz | James Patrick | 01A |
| 932 | Mackelburg | Kevin | 03B |
| 933 | MacLagan | Jeffrey Todd | 99A |
| 934 | MacMillan | Joseph | 02A |
| 935 | MacPetrie | Bonnie | 03A |
| 936 | Maddox | Jeffrey Heath | 01B |
| 937 | Madison (Newberry) | Brandi | 02C |
| 938 | Madrid | Isaac Casper | 99B |
| 939 | Magee | Charles Eric | 99A |
| 940 | Magee | Robert Glenn | 03AL |
| 941 | Maglosky | Ken | 03OH |
| 942 | Mahnken | Leon | 99B |
| 943 | Maldari | Joseph | 99A |
| 944 | Maldonado, Jr. | Donald J. | 02A |
| 945 | Manfre | Peter | 01A |
| 946 | Mangus | Ryan Edward | 99A |
| 947 | Manion | John | 99A |
| 948 | Manzano | Larry | 99B |
| 949 | Marcoux | Joseph | 96A |
| 950 | Marino | Joseph | 99A |
| 951 | Marks | Marcus | 99B |
| 952 | Marrufo | Gilbert | 02C |
| 953 | Martel | Chad J | 03TX |
| 954 | Martensen | Martin | 02A |
| 955 | Martin | Frederick LAmont | 03IN |
| 956 | Martin | Jeffrey S. | 03KY |
| 957 | Martin | Joe K. | 03NC |
| 958 | Martin Jr. | Richard Earl | 99A |
| 959 | Martinez | Jose | 99A |
| 960 | Martinez | Miguel | 99A |
| 961 | Mason | Christopher R. | 03CA |
| 962 | Mason | Joseph | 02A |
| 963 | Masoner | Jeffrey | 99B |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|-----------|-------------------|
| 964 | Mastin | Scott R. | 96C |
| 965 | Mathis | Antonio D. | 99A |
| 966 | Matthews | Duane | 99A |
| 967 | Matthews | Traco | 02A |
| 968 | Mauro | Michael | 99A |
| 969 | Maye | Charles | 99B |
| 970 | Mayweather | Victor | 03IL |
| 971 | McAfee | Noritaka Kevin | 01B |
| 972 | McAlister | Michael | 99B |
| 973 | McArdle | Thomas J. | 99B |
| 974 | McAshan | Craig E., Sr. | 99B |
| 975 | McBeth | Mike | 03UT |
| 976 | McCabe | Steven | 03NC |
| 977 | McCarney | Randy | 03ID |
| 978 | McCarthy | Carl | 96A |
| 979 | McClellan | Rogers | 03MS |
| 980 | McClendon | Stephen | 03TX |
| 981 | McCoin | Aaron R. | 99A |
| 982 | McComiskie | Sean | 01A |
| 983 | McCraw | Michael Anthony | 99A |
| 984 | McCune | Dave | 99A |
| 985 | McDaniel | David L | 96A |
| 986 | McDermott | Eric | 99A |
| 987 | McDermott | Kenneth | 96A |
| 988 | McEldowney | Wendell | 02A |
| 989 | McFadden | Eric | 96A |
| 990 | McFall | Jeffrey Wayne, Jr. | 99A |
| 991 | McGee Jr. | Richard | 01B |
| 992 | McGhee | Todd | 02H |
| 993 | McGinley | Eileen M. | FAS-A |
| 994 | McGuire | Tim | 02C |
| 995 | McKee | Bradley J. | 99B |
| 996 | McKee | Brian | 99A |
| 997 | McKinney | Duane | 99B |
| 998 | McKinney | Maurice | 99A |
| 999 | McKinney | Raymond Dale | 99A |
| 1000 | McLaughlin | Robert | 99B |
| 1001 | McMahon | Christopher | 03CA |
| 1002 | McNamara Sr. | Michael Lee | 99B |
| 1003 | McNeela | Tim | 96A |
| 1004 | McNemar | Sean P | 03CA |
| 1005 | McNiven | Steven | 01A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1006 | McQuigg | Anson | 99A |
| 1007 | McRoy | David Linton | 02A |
| 1008 | Medeiros | Michael | 03RI |
| 1009 | Medeiros IV | Joseph Camara | 03A |
| 1010 | Medina | Cesar | 99B |
| 1011 | Meeker | William A | 02B |
| 1012 | Mejia | Robert | 01A |
| 1013 | Mekionis | Leonardas | 03A |
| 1014 | Melendez | Edwin | 99A |
| 1015 | Melendez | Rudy | 03CA |
| 1016 | Memmott | Derek Johnson | 99A |
| 1017 | Mendoza | Adrian | 99B |
| 1018 | Mendoza | Carlos T. | 03H |
| 1019 | Mercado | Jonathan | 03NJ |
| 1020 | Mercado | Maria J. | 03CA |
| 1021 | Merchant | David | 96A |
| 1022 | Messick | Scott Jay | 02B |
| 1023 | Metheny II | Edward | 99A |
| 1024 | Meyer | David G | 03CA |
| 1025 | Meyer | John | 02A |
| 1026 | Meyers | Richard | 01A |
| 1027 | Migdol | Fred | 03NJ |
| 1028 | Miguel | Alexander | 99B |
| 1029 | Miller | Jeffery | 99A |
| 1030 | Miller | Lance A | 02A |
| 1031 | Miller | Randy | 99A |
| 1032 | Miller | Sherry(Harvey) | 03GA |
| 1033 | Miller | Troy A. | 01A |
| 1034 | Miller Jr. | Edward | 99A |
| 1035 | Milloy | Cameron Elias | 01B |
| 1036 | Mills | Vilera | 02A |
| 1037 | Miner | Stephen E | 03NY |
| 1038 | Minor | Jack Mclean | 99A |
| 1039 | Miranda Jr. | Alberto | 02G |
| 1040 | Misback | Mark | 03KY |
| 1041 | Mitchell | David Andrew | 99A |
| 1042 | Mitchell | Lawrence F | 03VA |
| 1043 | Mitchell | Walter | 03A |
| 1044 | Moch | Jeffrey | 99A |
| 1045 | Molero | Jorge | 99B |
| 1046 | Monroe | Kirk Lee | 02A |
| 1047 | Montanez | Christino S., Jr. | 01A |

| No. | Last Name | First Name | Agreement Version |
|------|-----------|------------|-------------------|
| 1048 | Monteith | Kevin Neil | 99A |
| 1049 | Montez | Eddie | 99B |
| 1050 | Montez | Tony | 99B |
| 1051 | Montgomery | Brian Edward | 99A |
| 1052 | Monzon | Jose R. | 03GA |
| 1053 | Moon | Jerry | 99A |
| 1054 | Moore | Brian | 02A |
| 1055 | Moore | Gary Brandon | 99C |
| 1056 | Moore | Mark | 99B |
| 1057 | Moore | Robert | 96A |
| 1058 | Moore II | Ronald Calvin | 03CA |
| 1059 | Moots | William Brian | 02A |
| 1060 | Moran | Kaile | 99A |
| 1061 | Moravitz | Ryan | 99A |
| 1062 | Morazan | Rodolfo | 02A |
| 1063 | Morell, Jr. | Carl T. | 03NC |
| 1064 | Moreno | Michael | 02G |
| 1065 | Moreno | Ramon | 99A |
| 1066 | Moreno | Rogelio (Roger) | 99B |
| 1067 | Morford | Edward (Al) | 99B |
| 1068 | Morgan | Dwayne | 02B |
| 1069 | Morgan | James | 03CA |
| 1070 | Moriarty | Patrick | 03MI |
| 1071 | Morris | Allen Louis | 99B |
| 1072 | Morris | Craig E | 03MI |
| 1073 | Morris | Dale | 96A |
| 1074 | Morrison | Lori Ann | 03A |
| 1075 | Moser | Michael Shane | 96A |
| 1076 | Moss | Darrell | 02A |
| 1077 | Moss | Lawrence | 96A |
| 1078 | Moss | Randall | 99C |
| 1079 | Moultrie | Pierre | 03CA-Conf. |
| 1080 | Mowry | Greg | 03B |
| 1081 | Moye Jr. | Ben | 03SC |
| 1082 | Mueller | Bryan MIchael | 01A |
| 1083 | Muellner | Lee | 03MN |
| 1084 | Mullins | Michael | 99A |
| 1085 | Mullins | Tony F. | 03VA |
| 1086 | Munday | Stacie L. | 02A |
| 1087 | Muniz | Eloy Pedro | 03FL |
| 1088 | Munoz III | Juan | 03TX |
| 1089 | Murphy | Joe | 01A |

Case 4:03-cv-01180-SBA    Document 59-16    Filed 02/24/2005    Page 327 of 641

| No. | Last Name | First Name | Agreement Version |
|---|---|---|---|
| 1090 | Murphy | Michael | 96A |
| 1091 | Murphy II | Joseph | 96A |
| 1092 | Musselwhite | James | 03IL |
| 1093 | Myers | David | 03TX |
| 1094 | Napoli | Ross | 02A |
| 1095 | Narbone | James | 99A |
| 1096 | Narvaez | Eric | 99B |
| 1097 | Navarijo | Clint | 03TX |
| 1098 | Navarro | Stephen | 03CA |
| 1099 | Neboyskey | Christopher | 99A |
| 1100 | Negrete | Enrico | 99B |
| 1101 | Nelson | Mark N. | 03NJ |
| 1102 | Newcomb | Christopher | 99B |
| 1103 | Newton | Armon J. | 99B |
| 1104 | Nichols | Rusty N. | 03CA |
| 1105 | Nichols | Tracy | 03KY |
| 1106 | Nichols | Victor | 03KY |
| 1107 | Nichols (Burns) | Jennifer | 99B |
| 1108 | Nicholson III | Joseph | 99A |
| 1109 | Nicolai | Lowell R. | 96A |
| 1110 | Nieves Jr. | Julio | 99A |
| 1111 | Nordstrom | Kevin | 01A |
| 1112 | Norris | Leonard N | 02A |
| 1113 | Novak | Michael J. | 02A |
| 1114 | Nowlin | George | 99A |
| 1115 | Nucci | Lisa | 99A |
| 1116 | Nunez | Danny | 03CA |
| 1117 | Nunez | Javier | 96B |
| 1118 | Nuon | Sophanarith | 99B |
| 1119 | Nutall | Leman | 96A |
| 1120 | O'Nan | Kelly Leo | 99A |
| 1121 | O'Neill | Brian | 99A |
| 1122 | Oblinger | Chris | 03NC |
| 1123 | Oertel | Joseph Michael | 99A |
| 1124 | Offenberger | Greg S. | 99A |
| 1125 | Ogden | Andrew | 01A |
| 1126 | Ohler | Chris | 99A |
| 1127 | O'Keefe | Michael B. | 02A |
| 1128 | Okolovitch | Richard | 03NJ |
| 1129 | Oliver | Richard | 03VA |
| 1130 | Olson | Christopher Todd | 01A |
| 1131 | Olson | Jamie | 99A |

| No. | Last Name | First Name | Agreement Version |
|------|------------|-------------|--------------------|
| 1132 | Orgeck | Daniel | 99A |
| 1133 | Orosco | Salvador | 03CA |
| 1134 | Ortega | Chris | 02C |
| 1135 | Ortega | Richard D. | 03CA |
| 1136 | Oscypala | Andrew | 01A |
| 1137 | Osman | Jack | 99A |
| 1138 | Ospina | Fabian | 01A |
| 1139 | Otis | Daniel | 99A |
| 1140 | Overton | Neil | 99A |
| 1141 | Owen | Steven | 99B |
| 1142 | Owens | Edward | 99A |
| 1143 | Pacyna | Glen | 99A |
| 1144 | Padgett | Jason | 99A |
| 1145 | Padron | Raymond | 99A |
| 1146 | Pagan | Michael Angel | 99A |
| 1147 | Pagani | John | 99A |
| 1148 | Palma | Harry | 02A |
| 1149 | Panebianco | Richard | 99A |
| 1150 | Paradis | Barry | 99B |
| 1151 | Parker | Scott | 99A |
| 1152 | Parker Jr. | Eddie Lee | 99B |
| 1153 | Parkins | Felipe | 03CA |
| 1154 | Parks | Daniel Lee II | 02B |
| 1155 | Parra | Raymond | 96B |
| 1156 | Parrish | Harry | 03NY |
| 1157 | Parson III | Barney | 03AL |
| 1158 | Parsons | Jeffrey D. | 03FL |
| 1159 | Partain | Phillip | 99A |
| 1160 | Parus | Blasé | 99A |
| 1161 | Pascual | Todd | 99A |
| 1162 | Paske | Brad L. | 99A |
| 1163 | Pate | Xzavier | 99B |
| 1164 | Patterson | Casey | 96B |
| 1165 | Patterson | Larry | 02B |
| 1166 | Patton | Darrin | 99A |
| 1167 | Pavia | Brian M. | 99A |
| 1168 | Payne | Vennie | 99C |
| 1169 | Pearson | Melvin | 96A |
| 1170 | Pedigo | Brent | 96B |
| 1171 | Peek | Michael W. | 99A |
| 1172 | Pellerito | Michael J. | 03MO |
| 1173 | Pelley | Jonathan | 99A |

| No. | Last Name | First Name | Agreement Version |
|------|-----------|------------|-------------------|
| 1174 | Pena Jr. | Daniel | 02B |
| 1175 | Penn | Charles | 02A |
| 1176 | Perdomo | Jose Anibal | 03CA |
| 1177 | Perez | Carlos E. | 03CA |
| 1178 | Perez | Fernando | 03CA |
| 1179 | Perez | Rick | 03CA |
| 1180 | Perreira | Hector Joseph | 02B |
| 1181 | Perry | Alfred | 99B |
| 1182 | Perry | Timothy | 03A |
| 1183 | Perry | Xavier | 96B |
| 1184 | Perzak | Theodore | 99A |
| 1185 | Petty | Keith | 02B |
| 1186 | Petty | Robert | 02C |
| 1187 | Phillips | Jeffrey | 01A |
| 1188 | Pianelli | Anthony | 03FL |
| 1189 | Pick Jr. | Theodore | 99A |
| 1190 | Pickett | John C. | 99A |
| 1191 | Pieper | Terry | 99A |
| 1192 | Pilling | David | 03B |
| 1193 | Pinkston | Brad | 99A |
| 1194 | Pirkey | Donald M. | 96A |
| 1195 | Plotino | Vincent | 99A |
| 1196 | Plummer | Gary | 02B |
| 1197 | Plush II | Donald Ray | 99A |
| 1198 | Podsiadlo | Andrew | 96C |
| 1199 | Poke | Jeffrey T. | 99B |
| 1200 | Polk | Gerald | 99B |
| 1201 | Polo Jr. | Omar | 03CA |
| 1202 | Pomales | Juan | 99A |
| 1203 | Popp | Richard | 99A |
| 1204 | Poquette | Gery D. | 03NV |
| 1205 | Porta | Jonathen | 99A |
| 1206 | Porta | Terry | 99A |
| 1207 | Porter | Christopher | 99A |
| 1208 | Porter | Robert Darrell | 99A |
| 1209 | Portugal | Jorge | 02B |
| 1210 | Postell | Dominique | 99A |
| 1211 | Potteiger | Robert | 03MN |
| 1212 | Powers | Juan | 99A |
| 1213 | Prewett | Jeff | 96A |
| 1214 | Price | James Alan | 96A |
| 1215 | Price II | Bobby Joel | 02F |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1216 | Prieur | Michael | 99A |
| 1217 | Prince | Bobby L. | 96A |
| 1218 | Prohoroff | Kance | 99B |
| 1219 | Prosser | Michael | 99A |
| 1220 | Provance | Thomas | 02A |
| 1221 | Puckett | Rodney | 99A |
| 1222 | Purcell | Cecil | 01A |
| 1223 | Purdy | Russell Edward | 99A |
| 1224 | Puzzo | Natalie | 03A |
| 1225 | Quarrie | Thomas A. | 99A |
| 1226 | Quigley | James | Feb-01 |
| 1227 | Quinn | Steven | 02A |
| 1228 | Quiroz | J. Adam | 96A |
| 1229 | Rabine | David | 96A |
| 1230 | Rambo | Steven | 99B |
| 1231 | Ramirez | Andres | 99A |
| 1232 | Ramirez | Jeronimo | 02B |
| 1233 | Ramos | Richard | 02A |
| 1234 | Rapplean | Kurt | 99A |
| 1235 | Rasmussen | Glen | 03WA |
| 1236 | Rasmussen | Jon | 03UT |
| 1237 | Rasmussen | Russell | 99A |
| 1238 | Raulerson | Roy S. | 96A |
| 1239 | Reddick | Gerald I. | 03CA |
| 1240 | Redmon | Rolondo D. | 99A |
| 1241 | Reed | David W. | 03DE |
| 1242 | Reeder | James A. | 02A |
| 1243 | Reese Jr. | Charles | 96A |
| 1244 | Reid | James Kevin | 01B |
| 1245 | Reid | Randall A. | 99A |
| 1246 | Reid | Tracy | 99B |
| 1247 | Reinwald | Ken | 96A |
| 1248 | Reither | Matthew | 96C |
| 1249 | Remsburg | Aaron | 99A |
| 1250 | Reno | Roy T. | 96A |
| 1251 | Resta | Andrew Lee | 02C |
| 1252 | Rettke | Kevin | 01A |
| 1253 | Reveles | Atanacio | 01B |
| 1254 | Reyes | Joe MIchael | 99B |
| 1255 | Richards | Anthony | 96A |
| 1256 | Richards | Gerald A | 96A |
| 1257 | Richards | Hopeton | 96A |

| No. | Last Name | First Name | Agreement Version |
|------|-----------|------------|-------------------|
| 1258 | Richards | James | 03A |
| 1259 | Richardson | Ron | 02A |
| 1260 | Richardson | Ronald | 03GA |
| 1261 | Richie | David | 99A |
| 1262 | Ricketts | Michael | 99A |
| 1263 | Rieck | Anthony | FAS-C |
| 1264 | Rivas | Jeffrey E. | 01B |
| 1265 | Rivera | Carlos | 02A |
| 1266 | Rivera | Gabriel | 01B |
| 1267 | Rivera | Mark | 99A |
| 1268 | Rivera | Ramon | 99A |
| 1269 | Rivera | Richard A. | 99A |
| 1270 | Rivera Jr. | Ernesto | 03CA |
| 1271 | Rivero | Alberto L. | 99A |
| 1272 | Rizzo | Jason | 99A |
| 1273 | Rizzo Jr. | John | 03A |
| 1274 | Roberts | Mark D. | 03AL |
| 1275 | Roberts | Richard | 03IL |
| 1276 | Robertson | Andrew | 99A |
| 1277 | Robinette | Scott | 01A |
| 1278 | Robins | Sam | 03UT |
| 1279 | Robinson | Antonio | 03NC |
| 1280 | Robinson | Charles | 02A |
| 1281 | Robinson | Larry Keith | 96A |
| 1282 | Robinson | Patrick Dontae | 99A |
| 1283 | Robinson | Paul | 96A |
| 1284 | Robinson | Ryan M. | 03A |
| 1285 | Robinson | Von D. | 99B |
| 1286 | Rocha | Dominic | 03TX |
| 1287 | Rodarte | Richard | 03CA |
| 1288 | Rodela | Mario M. | 99B |
| 1289 | Rodriguez | Daniel | 03NV |
| 1290 | Rodriguez | Jose Luis | 99B |
| 1291 | Rodriguez | Richard | 96B |
| 1292 | Rodriguez III | Eluterio | 99D |
| 1293 | Rodriguez Jr. | Ricky Raymond | 03CA |
| 1294 | Roell | Daniel | 01A |
| 1295 | Rojas IV | Raymond A. | 03B |
| 1296 | Rolfe | William | 99A |
| 1297 | Rolko | Edward J. | 02A |
| 1298 | Roman | Pedro J. | 99B |
| 1299 | Romero | Jesus | 02A |

| No. | Last Name | First Name | Agreement Version |
|------|------------------|------------------|---------|
| 1300 | Romero | Joe | 01B |
| 1301 | Romie | Anthony | 03MN |
| 1302 | Rorick | Michael | 01A |
| 1303 | Rosby Sr. | Damion | 02B |
| 1304 | Rose | David B. | 03KY |
| 1305 | Rose | Steve | 02A |
| 1306 | Rosenberger | Sherry L. | FAS-B |
| 1307 | Ross | Michael A. | 99A |
| 1308 | Ross | Ray | 01A |
| 1309 | Ross | Timothy | 99B |
| 1310 | Roston (McClellan) | Lisa | 99B |
| 1311 | Rouco | Lazaro A., Jr. | 99A |
| 1312 | Rousseau | William Henry | 03TX |
| 1313 | Rowan | Rodger L. | 99B |
| 1314 | Rowell (Schliep) | Ronda | 02A |
| 1315 | Roy | Larry | 03CA |
| 1316 | Rubens | René | 03FL |
| 1317 | Rucinski Jr. | Gary | 03A |
| 1318 | Rudd | James Daniel | 01A |
| 1319 | Rumpf | Michael | 02A |
| 1320 | Russell | Gregory | 03B |
| 1321 | Russell | Michael E. | 96A |
| 1322 | Russell Jr. | Carl Ralph | 02B |
| 1323 | Russo | Marc | 03NY |
| 1324 | Ruta | Charles | 02A |
| 1325 | Ryan | Christopher Scott | 02A |
| 1326 | Saaverdra | Roy | 01B |
| 1327 | Salazar | Horacio | 99B |
| 1328 | Salazar | Richard | 03CA |
| 1329 | Salerno | Ronald | 02A |
| 1330 | Salo | Timothy D. | 03MN |
| 1331 | Samuels | Michael Jerome | 99B |
| 1332 | San Juan | Larry | 96A |
| 1333 | Sanabria | Anthony | 96A |
| 1334 | Sanchez | Jesus R. | 03CA |
| 1335 | Sanderson | Michale | 99A |
| 1336 | Sandoval | Max | 96B |
| 1337 | Sandoval | Steven | 99B |
| 1338 | Santagati | Daniel | 99B |
| 1339 | Santiago | Genaro, Jr. | 99A |
| 1340 | Santos | Allen | 03CA |
| 1341 | Santos | Carl | 02A |

| No. | Last Name | First Name | Agreement Version |
|------|-----------|------------|-------------------|
| 1342 | Santos | Daniel | 03CA |
| 1343 | Santos | David | 03MA |
| 1344 | Saucedo | Amanda | 02C |
| 1345 | Saulog | Mario B. | 96A |
| 1346 | Savage | Chris | 99A |
| 1347 | Savage | Roderick | 03C |
| 1348 | Savas | James | 03A |
| 1349 | Savino | Robert | 99A |
| 1350 | Sayles | Kevin M. | 03MO |
| 1351 | Schaal | Christopher | 02A |
| 1352 | Schaffer | Timothy | 03MI |
| 1353 | Schepers | Edwin | 99A |
| 1354 | Schlabach | Richard A. | 03VA |
| 1355 | Schlamp | Renee LAura | 02B |
| 1356 | Schneider | Anthony | 99B |
| 1357 | Schneiter | John A. | 99A |
| 1358 | Scholl | Michael | 99A |
| 1359 | Schomburg | James F. | 99A |
| 1360 | Schroeder | Doug | 02A |
| 1361 | Schubert | Robert D | 96A |
| 1362 | Schultz | Kent L. | 03OH |
| 1363 | Schumacher | Zachary P. | 99E |
| 1364 | Schwartz | Garry | 96A |
| 1365 | Schweiss | John | 01A |
| 1366 | Scott | Joshua | 99B |
| 1367 | Scott Jr. | Bobby Joe | 99A |
| 1368 | Seamons | Arthur Franklin | 99A |
| 1369 | Sebastiano | John | 01A |
| 1370 | Seech | Jason | 99A |
| 1371 | Seitz | John W. | 03CA |
| 1372 | Sepulveda | Vito | 02A |
| 1373 | Serrano | Ruben, Jr. | 99A |
| 1374 | Sessoms | John | 99A |
| 1375 | Sexton | Jerry | 03CA |
| 1376 | Seymour | Adam | 01A |
| 1377 | Shaw | Aaron | 01A |
| 1378 | Shaw | Brenda | 02A |
| 1379 | Shaw | Randy | 02A |
| 1380 | Sheahan | Daniel V. | 03RI |
| 1381 | Sheck | Troy P. | 02A |
| 1382 | Sheehy | Andrew | 96A |
| 1383 | Sheets | Scott | 02A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1384 | Sheets | Steven | 03NC |
| 1385 | Sheipline | Richard | 96A |
| 1386 | Shelton | Brian James | 02A |
| 1387 | Shepard | Perry | 01A |
| 1388 | Shepherd | Dan | 03TX |
| 1389 | Shepherd | Michael | 99A |
| 1390 | Sheppard | Elton | 96A |
| 1391 | Sherfield | Robert Eric | 02A |
| 1392 | Sheridan | Timothy | 99A |
| 1393 | Shirey | Richard (Cres) | 01A |
| 1394 | Shonk | Jay Daniel | 99B |
| 1395 | Shook | Jared W. | 99A |
| 1396 | Shores | Wayne Matthew | 02A |
| 1397 | Shufford | Robert Lee, Jr. | 03A |
| 1398 | Siena | Michael A. | 03A |
| 1399 | Silva | Donald R. | 99B |
| 1400 | Silvas | David | 99B |
| 1401 | Simmons | Mario | 03FL |
| 1402 | Simmons | Robe | 03AL |
| 1403 | Simmons, Jr. | Elliott F. | 02A |
| 1404 | Simms | Garnet | 02A |
| 1405 | Simon | Jermaine | 02A |
| 1406 | Simpson | Harold | 99B |
| 1407 | Simpson | Heather L. | 01B |
| 1408 | Sipres | Joe C. | 02B |
| 1409 | Sizemore | Glenn Arthur | 99A |
| 1410 | Skuratovich | David | 99A |
| 1411 | Slade | William | 99B |
| 1412 | Slay | David | 99A |
| 1413 | Sledz | Steven | 99A |
| 1414 | Sloane | Richard | 03NY |
| 1415 | Slone Jr. | Ralph | 96A |
| 1416 | Smeltzer | Terry | 03A |
| 1417 | Smiley | Almond | 99B |
| 1418 | Smith | Barbara | FAS-B |
| 1419 | Smith | Benjamin N. | 02A |
| 1420 | Smith | Bruce P. | 96A |
| 1421 | Smith | Carll | 03NJ |
| 1422 | Smith | Carlton LAmar | 99A |
| 1423 | Smith | Clayton Robert | 96A |
| 1424 | Smith | Darrin | 96A |
| 1425 | Smith | Glenn | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1426 | Smith | James Earl | 02A |
| 1427 | Smith | Jonathan | 96C |
| 1428 | Smith | Michael | 99A |
| 1429 | Smith | Michael R. | 96A |
| 1430 | Smith | Michael W. | 03TX |
| 1431 | Smith | Patrick | 03MS |
| 1432 | Smith | Paul Douglas | 99A |
| 1433 | Smith | Phillip A. | 99A |
| 1434 | Smith | Scott Allen | 01B |
| 1435 | Smith | Vincent | 99B |
| 1436 | Smith | Walter | 99A |
| 1437 | Smith III | Sam | 03C |
| 1438 | Smith, Sr. | Terrence Y. | 96A |
| 1439 | Snyder | Greg | 99A |
| 1440 | Solano | Jaime | 99A |
| 1441 | Solorio | Juan | 99B |
| 1442 | Solorzano | Alvaro | 03FL |
| 1443 | Soroka | Allen | 99A |
| 1444 | Sothern | T. Gregory | 99A |
| 1445 | Southerland | Todd Daniel | 99A |
| 1446 | Spinale | James | 99A |
| 1447 | Spivey | Randy | 99B |
| 1448 | Springston | Jeff | 99A |
| 1449 | St. John | Barry | 99B |
| 1450 | Staggs | Kevin | 02A |
| 1451 | Stamper | Fred | 02C |
| 1452 | Stancil | Michael | 99A |
| 1453 | Staples | Shade | 02B |
| 1454 | Stark | Michael | 99A |
| 1455 | Starkey | Aaron | 99A |
| 1456 | Starnes | David | 99B |
| 1457 | Starr | Garett | 02A |
| 1458 | Stearns | Tommy | 03FL |
| 1459 | Steele | Donald Wayne | 96A |
| 1460 | Steele | Jesse L. | 99A |
| 1461 | Steiner | William | 03B |
| 1462 | Stellato | Eric | 01A |
| 1463 | Stephens | Jeff | 03KY |
| 1464 | Stephens | Randall | 03A |
| 1465 | Still | Dexter | 03B |
| 1466 | Stokes | LaVonzelle | 03A |
| 1467 | Stoklosa | Keith | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1468 | Stoklosa | Michael | 99A |
| 1469 | Stone | John | 03CA |
| 1470 | Stoppel | Tracy | 99A |
| 1471 | Storie | Kenneth S. | 03OK |
| 1472 | Story | John | 99B |
| 1473 | Strader | Christopher | 03NC |
| 1474 | Straka | Chris | 03IL |
| 1475 | Streng | Derek | 96A |
| 1476 | Stroup | Carl D. | 99A |
| 1477 | Stuckey | Jarred D. | 03A |
| 1478 | Sturgis | Tom | 96B |
| 1479 | Sturkie | Rodney | 99A |
| 1480 | Stutz | Shiloh | 02A |
| 1481 | Sudol | Wes | 01B |
| 1482 | Sullivan | Robert | 96A |
| 1483 | Summers | Tony | 99B |
| 1484 | Sumpter III | Max | 96A |
| 1485 | Sumption | Trevor | 99A |
| 1486 | Sweet | Daniel T | 99B |
| 1487 | Swenson | Todd | 02A |
| 1488 | Swett, Jr. | Steven T. | 96A |
| 1489 | Sword | Richard | 03MI |
| 1490 | Sylvester I | George | 03AL |
| 1491 | Sylvia | Chris | 02A |
| 1492 | Tackett | David | 99A |
| 1493 | Talbert | Ralph E., Jr. | 99A |
| 1494 | Talo | Scott | 96A |
| 1495 | Tantillo | Stephen | 99A |
| 1496 | Tapia | Joseph | 99A |
| 1497 | Tarantola | Thomas | 96A |
| 1498 | Tatum | Christopher | 96A |
| 1499 | Taunton | John Logan | 03MO |
| 1500 | Taveras | Luis | 99A |
| 1501 | Taylor | Donald E. | 02B |
| 1502 | Taylor | Kurt H. | 03IL |
| 1503 | Teague | Eric D. | 02A |
| 1504 | Temple | Todd T. | 02B |
| 1505 | Tenney | Sandy | 01A |
| 1506 | Tepe | Jeffrey K. | 96B |
| 1507 | Terrell | Antwan | 96A |
| 1508 | Theis | Thomas | 03MN |
| 1509 | Theisman | John | 96A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1510 | Theriault | James | 96A |
| 1511 | Therrien | Bernard | 02A |
| 1512 | Thoma | Michael | 02A |
| 1513 | Thomas | Christopher W. | 99A |
| 1514 | Thomas | Ernest L. | 02A |
| 1515 | Thomas | Gerry | 99B |
| 1516 | Thomas | Theodore | 02B |
| 1517 | Thomas Jr. | James | 02A |
| 1518 | Thompson | A. Shapelle | 99A |
| 1519 | Thompson | Joe | 03A |
| 1520 | Thompson | Mark | 99A |
| 1521 | Thompson | Tommy | 03TX |
| 1522 | Thompson | Wayne | 99A |
| 1523 | Thornhill II | Larry | 96A |
| 1524 | Tiegen | Jason | 02A |
| 1525 | Tillison | Tony Demario | 99A |
| 1526 | Tilseth | Steven | 99A |
| 1527 | Tisdel | Edward E. | 99B |
| 1528 | Toledo | Alejandro | 99A |
| 1529 | Tomaszewski | Scott | 02A |
| 1530 | Tomkinson | John P. | 01A |
| 1531 | Tompkins | Brian | 99B |
| 1532 | Tooley | Jimmy Ray | 99A |
| 1533 | Toone | Marc A. | 99C |
| 1534 | Torres | Jose | 99A |
| 1535 | Torrez | Julian | 99B |
| 1536 | Tow | Christopher | 01B |
| 1537 | Travis | Jason | 02A |
| 1538 | Treft | Harold | 99A |
| 1539 | Trimble | Vassandral | 03C |
| 1540 | Truax | Keith | 02A |
| 1541 | Truman | Scott | 01B |
| 1542 | Trygg | Ken | 99B |
| 1543 | Tucker | Cary | 02A |
| 1544 | Turner | Daniel Scott | 02B |
| 1545 | Tusing | Troy | 03MO |
| 1546 | Tussey | John Rile | 96A |
| 1547 | Twitly | Derrel | 99C |
| 1548 | Tyrka | Peter | 99A |
| 1549 | Tzelepis | Anastasios | 99B |
| 1550 | Uballez | Aaron R. | 03B |
| 1551 | Uber | Gregory Steven | 02B |

Case 4:03-cv-01180-SBA    Document 59-16    Filed 09/12/2005    Page 436 of 641

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|-----------|-------------------|
| 1552 | Ulloa | Hector | 03CA |
| 1553 | Underwood | Matthew | 96A |
| 1554 | Upshaw | Jobette T. | 03VA |
| 1555 | Urbanczyk | Kenneth | 99A |
| 1556 | Uschold | John E. | 03NY |
| 1557 | Vaitu'u Jr. | Ulualo | 99A |
| 1558 | Van Coppenolle | Greg | 96A |
| 1559 | Van Overloop | Trent | 03MI |
| 1560 | VanAuken | Ralph | 03NY |
| 1561 | Vance | Adam | 99A |
| 1562 | Vanderkuyl | Christopher John | 02A |
| 1563 | Vanderpool | William Ed | 99B |
| 1564 | Vandervort | Steve | 99B |
| 1565 | Vasquez | Juan | 99B |
| 1566 | Vasquez | Ruddy | 96A |
| 1567 | Vassau | Jeff | 99A |
| 1568 | Vazquez | Fabian | 02A |
| 1569 | Vega | Jaime | 99B |
| 1570 | Venable | Gary | 99B |
| 1571 | Venable | Kevin | 02B |
| 1572 | Vera | Hiram | 99A |
| 1573 | Vergara | Gerardo | 96A |
| 1574 | Vernille | Stephen | 99A |
| 1575 | Verucchi | Keith | 03MS |
| 1576 | Vetsch | Todd | 02A |
| 1577 | Vick | Johnnie Lee | 99A |
| 1578 | Villapudua | Bernard | 99B |
| 1579 | Villegas | Ignacio | 99B |
| 1580 | Villias | Ann-Marie | 03CA |
| 1581 | Vo | Tuan Phi | 96A |
| 1582 | Voss | Todd | 99A |
| 1583 | Vulaj | Victor | 02A |
| 1584 | Wakefield | Keith | 99A |
| 1585 | Waldorf | Michael | 99A |
| 1586 | Waldschmidt | Jeffrey R. | 02A |
| 1587 | Walker | Anthony S. | 99A |
| 1588 | Walker | Frank Thomas | 96B |
| 1589 | Walker | Willie | 02A |
| 1590 | Wallace | Andrew | 02A |
| 1591 | Wallace | Jacob | 96A |
| 1592 | Wallace | Jason | 01A |
| 1593 | Walston | Jeff | 01A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1594 | Walters | Lynn Dee | FAS-B |
| 1595 | Ward | Edwin | 96B |
| 1596 | Warner | Andre L. | 03SC |
| 1597 | Washington | Monte | 02A |
| 1598 | Washington | Sharmane | 99A |
| 1599 | Washington | Valtorian Evander | 96B |
| 1600 | Wasylik | Thomas | 03MN |
| 1601 | Watkins | Bradley Steven | 02A |
| 1602 | Watson | Demond | 02B |
| 1603 | Webb | Thomas | 03A |
| 1604 | Weeks | Matthew Jason | 01A |
| 1605 | Weinert | Fred K. | 03FL |
| 1606 | Weisbecker | Stephen | 02A |
| 1607 | Weiss | Matthew | 03MO |
| 1608 | Wells | John | 02C |
| 1609 | Wenner | Cade T | 02B |
| 1610 | West | Clint | 03OH |
| 1611 | West | Michael | 02B |
| 1612 | Westover | Steve | 01A |
| 1613 | Wetoszke | Douglas | 99A |
| 1614 | Whalen | Jeremy Edward | 03TX |
| 1615 | Wheaton | David | 02A |
| 1616 | Wheeler | James Richard | 99B |
| 1617 | Whitcomb | Frederick D | 03KS |
| 1618 | White | 0 | 03CA |
| 1619 | White | Anthony | 99A |
| 1620 | White | Franklin Delano | 99B |
| 1621 | White | Lonnie | 96A |
| 1622 | White | Matthew | 01B |
| 1623 | White | Philip Joel | 01B |
| 1624 | White Jr. | Richard Allen | 02A |
| 1625 | Whiteoak | Jay R. | 03MN |
| 1626 | Whitfield | Charles Lee | 96B |
| 1627 | Wick | Matthew | 01A |
| 1628 | Wickman | Steve | 03MO |
| 1629 | Wiehl | Steven | 03RI |
| 1630 | Wierzbicki | Dariusz | 99A |
| 1631 | Wight | Jerry | 99A |
| 1632 | Wildeman | James | 96A |
| 1633 | Williams | Andre | 01A |
| 1634 | Williams | Barry C. | 99B |
| 1635 | Williams | Candice | 01A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1636 | Williams | Charles Anthony | 96B |
| 1637 | Williams | Christopher | 99A |
| 1638 | Williams | Damon | 99A |
| 1639 | Williams | Edward | 03B |
| 1640 | Williams | James | 03CA |
| 1641 | Williams | Jeffrey Lee | 99A |
| 1642 | Williams | Joel | 99B |
| 1643 | Williams | Kelan L | 03TX |
| 1644 | Williams | Larry James | 99A |
| 1645 | Williams | Michael | 99A |
| 1646 | Williams | Paul | 99A |
| 1647 | Williams | Robert C./Heather | 96A |
| 1648 | Williams | Shannon Lee | 01A |
| 1649 | Williams Jr. | Clarence | 96B |
| 1650 | Willis | Rufus L. | 03FL |
| 1651 | Wilmoth | Brandon | 03CA |
| 1652 | Wilson | David | 03CO |
| 1653 | Wilson | Jason L. | 02C |
| 1654 | Wilson | Robert N. | 99B |
| 1655 | Wilson | Robert Reed | 01A |
| 1656 | Wilson | Ronald Joseph | 02A |
| 1657 | Wilson | William A. | 02A |
| 1658 | Wilson Jr. | Ronald | 03CA |
| 1659 | Wilton | Jeffrey Dean | 99A |
| 1660 | Winans Sr. | Ronald | 99B |
| 1661 | Winberry | John | 02B |
| 1662 | Windom | Randy L. | 99B |
| 1663 | Wingo | Ryan Glenn | 01B |
| 1664 | Witkoske | Richard | 99A |
| 1665 | Wobbrock | Jeffrey Craig | 02A |
| 1666 | Wolf | Erik | 99B |
| 1667 | Wolf | Joann M. | 02A |
| 1668 | Wolfe | Jay Christopher | 99B |
| 1669 | Wolner | Timothy | 01A |
| 1670 | Wood | Lendon | 02F |
| 1671 | Wood | Michael Lane | 99A |
| 1672 | Wood | Robert | 99B |
| 1673 | Wood | Robert Lane | 03AL |
| 1674 | Woodfin | Kenneth E. | 03TX |
| 1675 | Woodson | Mark William | 02B |
| 1676 | Woody | Ronald | 01B |
| 1677 | Wookey | Gene | 99B |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1678 | Woolwine | Eric | 99A |
| 1679 | Wragg | Mark Richard | 01A |
| 1680 | Wright | Terry | 99A |
| 1681 | Xaros | Arthur | 99A |
| 1682 | Yates | Charles B. | 99A |
| 1683 | Ybarra | Louis | 99B |
| 1684 | Yim | Simon | 03CA |
| 1685 | Ymaya | Cesar | 02A |
| 1686 | Yontz | Robert | 96C |
| 1687 | Young | Richard | 99B |
| 1688 | Youngbrandt | Stefan | 99E |
| 1689 | Yowell | William | 03NC |
| 1690 | Zacharias | Michael | 03MN |
| 1691 | Zall | Bradley | 03CO |
| 1692 | Zapata | Fernando | 99A |
| 1693 | Zarbaugh | Ruth Ann | 03A |
| 1694 | Zavala | Edwin | 99B |
| 1695 | Zayas Jr. | Hector | 99A |
| 1696 | Zeda | Moises | 03I |
| 1697 | Zermeno | Oscar | 99A |
| 1698 | Zigler | Ryan L. | 99A |
| 1699 | Zygarlicke | Sarah R. | 03WI |
| 1700 | Zytkowicz | Michael | 99A |

## Exhibit F
## Louisiana

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1 | Addison | Jack | 03LA |
| 2 | Avery | Ivan Edward | 99E |
| 3 | Blessing | Jay | 03LA |
| 4 | Bolden | Alfonso | 03LA |
| 5 | Britt | Tony | 99A |
| 6 | Brown, Jr. | Gregory | 03LA |
| 7 | DeBose | Erroll A. | 96A |
| 8 | Fontenot Jr. | Gustave | 03LA - Conf. |
| 9 | Foto | Jacob J. | 99A |
| 10 | Galloway | Robert C. | 03LA |
| 11 | Giamalva, Jr. | Frank | 99A |
| 12 | Green | Steven | 02D |
| 13 | Gremillion | John Alex | 01A |
| 14 | Guthrie | Terrance P. | 03LA |
| 15 | Hutto | Herman | 99A |
| 16 | Jeansonne | Joel | 03LA |
| 17 | Johnson | Eugene | 96A |
| 18 | Lanclos | Joseph | 03LA |
| 19 | Lavergne IV | Theodore J. | 01A |
| 20 | Lewis | Donald | 99A |
| 21 | Livingston | Daniel | 03LA - Conf. |
| 22 | Maloch | Andrew | 03D |
| 23 | Manale III | Ted | 03LA |
| 24 | Massey | Jason K. | 03D |
| 25 | McCain | Kenny P. | 03LA |
| 26 | McCain | Barry Preston | 03LA |
| 27 | McDaniel | Chester | 02D |
| 28 | Nelson | Tyrick D. | 03LA |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 29 | Parker | Benny | 96A |
| 30 | Pierce | Glen H. | 02D |
| 31 | Prejean | Barney | 96A |
| 32 | Prescia | Salvador | 03LA |
| 33 | Price | Jason | 03LA |
| 34 | Ramirez | Brett | 99A |
| 35 | Rauch | Darren | 03LA |
| 36 | Richard | Dennis M | 03LA |
| 37 | Salazar | Gregory M. | 03LA |
| 38 | Santalucito | Vincent | 03LA |
| 39 | Siekkinen | John Davin | 96A |
| 40 | Slocum | Ray | 99A |
| 41 | Smith | Richard | 99A |
| 42 | Smith | Daniel | 03LA |
| 43 | Sutter | John Michael | 99A |
| 44 | Thomas | Jack Darren | 03LA |
| 45 | Tully, Jr. | John | 99A |
| 46 | White Jr. | Joseph | 99A |
| 47 | Witty | Aaron Paul | 03LA |
| 48 | Wood | Mark Dolton | 03LA |
| 49 | Yarbrough | Gary | 01A |

# Exhibit G
## Arizona

| | Last Name | First Name | Agreement Version |
|---|---|---|---|
| 1 | Abel | Robert J. | 02A |
| 2 | Barnard | Justin | 01A |
| 3 | Bustamante | Esequiel | 99A |
| 4 | Cavagnaro | Tina A. | 02A |
| 5 | Clouse | Daniel | 99A |
| 6 | Colihan | Robert | 02A |
| 7 | Covert | Roderick | 03AZ |
| 8 | Cox | Shane A | 03AZ |
| 9 | Dominguez | Frank Christopher | 99A |
| 10 | Doone | Benjamin | 99A |
| 11 | Glover | Robert | 02A |
| 12 | Goodman | Stuart S. | 01A |
| 13 | Green | Jason Warren | 02A |
| 14 | Held | David | 99A |
| 15 | Ivins | Justin | 03A |
| 16 | Jones | David E. | 02A |
| 17 | Line | Larry L. | 03AZ |
| 18 | Linkey | James Joseph | 02A |
| 19 | Maldonado | Daniel | 02A |
| 20 | Maser | Richard | 03AZ |
| 21 | Mason, Jr. | Charles E. | 02A |
| 22 | Maves | Cynthia | 99A |
| 23 | McCoy | Michael Eric | 99A |
| 24 | Otero | Joseph Scott | 99A |
| 25 | Pain | Eugene R. | 03AZ |
| 26 | Peace | Jarrod | 02A |
| 27 | Pettit | Douglas | 02A |
| 28 | Pilgrim | Todd | 99A |

1

| Last Name | Last Name | First Name | Agreement Version |
|-----------|-----------|------------|-------------------|
| 29 | Randall | Kyle Richard | 99A |
| 30 | Sandoval | Manuel | 99A |
| 31 | Schaper | Matt | 03AZ |
| 32 | Shepherd | Rebecca | 02A |
| 33 | Sigl | Jonathan | 01A |
| 34 | Snell | Richard | 02A |
| 35 | Stokes | Bryan | 02A |
| 36 | Thomas III | George | 02A |
| 37 | Thompson | Robert | 02A |
| 38 | Vesey | Brena | 02A |
| 39 | Whitener | Jessy | 02A |
| 40 | Young Jr. | John W. | 01A |

## Exhibit H –
## Pennsylvania

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 1 | Baptist | Kenneth W. | 99A |
| 2 | Benecke | Stephen C | 01A |
| 3 | Blackburn | Jessica Lynn | 99A |
| 4 | Brandt | Dean | 96A |
| 5 | Brewster | James | 01A |
| 6 | Buttner | Christopher C. | 03PA |
| 7 | Checchia | Davide | 96A |
| 8 | Chew | William | 03A |
| 9 | Cintron | Michael S. | 02A |
| 10 | Cruz | Samuel | 03PA |
| 11 | Dauria | Philip | 99A |
| 12 | DeRenzo | Christopher | 01A |
| 13 | Dickson | Kevin | 99A |
| 14 | Dodson | Shirley | 03A |
| 15 | East | Joel | 99A |
| 16 | Eperthener | Andrew W. | 99A |
| 17 | Erickson | Daniel | 01A |
| 18 | Ericson | Robert | 01A |
| 19 | Faux | Jaime A. | 99A |
| 20 | Fellin | Paul Lewis | FAS-C |
| 21 | Folsom | James | 99A |
| 22 | Freeman | Scott | 01A |
| 23 | Geissinger | Michael B. | 02A |
| 24 | Gilbert | Brian | 01A |
| 25 | Gilchrist | Joe | 99A |
| 26 | Goida | Jeffrey | 99A |
| 27 | Gonzalez | Ivan | 99A |
| 28 | Gordineer | Donald | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 29 | Greene | Les | 03PA |
| 30 | Gula | Jon | 99A |
| 31 | Hall | Renee | 99A |
| 32 | Henning | William D., II | 03PA |
| 33 | James | Joseph | 99A |
| 34 | Klutch | Thomas | 03PA |
| 35 | Kuba | Daniel | 99A |
| 36 | Laskowski Jr. | Thomas M. | 02A |
| 37 | Lauer | Mark | 99A |
| 38 | Leazier | Linda | 03A |
| 39 | Lipscomb III | Leonard | 99A |
| 40 | Loranger | Matt | 99A |
| 41 | Marsicano | Angelo | 99A |
| 42 | Martell Jr. | Charles | 96A |
| 43 | Martin | Douglas | 02A |
| 44 | Maule | John | 99A |
| 45 | McCue, Jr. | Edward | 01A |
| 46 | Mecum | Andrew O. | 03PA |
| 47 | Mertens | James | 96A |
| 48 | Michelfelder | John | 99A |
| 49 | Mikulski | Zenard W. | 02A |
| 50 | Miller | Josh | 02A |
| 51 | Mullin | John | 01A |
| 52 | Munn | Brian | 96A |
| 53 | Murphy | Matthew | 02A |
| 54 | Nicotero III | Ross | 99A |
| 55 | Novatnak | Robert | 99A |
| 56 | Nye | Timothy | 02A |
| 57 | O'Connell | Stephen | 02A |
| 58 | Olli | Mark, Jr. | 99A |
| 59 | Orsini | Chris | 99A |

| No. | Last Name | First Name | Agreement Version |
|-----|-----------|------------|-------------------|
| 60 | Ortiz | Andres | 02A |
| 61 | Osman | Michael | 03PA |
| 62 | Overman | Alonzo K. | 99A |
| 63 | Phillips | Jason | 02A |
| 64 | Potechko | Carl | 01A |
| 65 | Pottichen Jr. | William F. | 96A |
| 66 | Primerano | David | 96A |
| 67 | Quinn | Michael | 01A |
| 68 | Raymond | Thomas | 99A |
| 69 | Reedy Jr. | Robert | 99A |
| 70 | Riley | Brian | 99A |
| 71 | Santana | Victor | 99A |
| 72 | Schwartz | Glenn | 03A |
| 73 | Scialanca | David | 02A |
| 74 | Sciscio | Jesse Paul | 02A |
| 75 | Secora | Jason | 01A |
| 76 | Shortencarrier | Daniel | 02A |
| 77 | Smith | Michael S. | 03PA |
| 78 | Sossong | Thomas | 02A |
| 79 | Staggs | James Ervin | 96A |
| 80 | Stefani | John | 01A |
| 81 | Stefanick | Jared | 99A |
| 82 | Stillfield | Miguel | 96A |
| 83 | Tokish | Nicholas | 02A |
| 84 | Torris III | Leonard R | 99A |
| 85 | Vallette | Charles | 96A |
| 86 | Vickless | Dave | 99A |
| 87 | Wiggins | Raiford F. | 99A |

## Exhibit I

| No. | Last Name | First Name | Disputed States | Agreement Version |
|-----|-----------|------------|-----------------|-------------------|
| 1 | Gentry | David Lewis | GA, TN | 96A |
| 2 | Lackey | Christopher Alan | GA, TN | 99A |

## Exhibit J

| Last Name | First Name | State | Agreement Version |
|-----------|-----------|-------|-------------------|
| Bradley | Thomas | MO | 96A |
| Bruck | Louise | OH | 99A |
| Gumbs | Allan | MD | 99A |
| Johnson | Douglas | KS | 99A |
| Olson | Andrew | CA | 02B |
| Stewart | Clarence | CA | 03CA |

Note: Plaintiff Gumbs was compelled to arbitrate as part of the Court's April 5, 2004 Order. Plaintiffs nonetheless assert a challenge on his behalf.

# EXHIBIT 14

1    Michael Rubin (S.B. No. 80618)
     Scott A. Kronland (S.B. No. 171693)
2    Eileen B. Goldsmith (S.B. No. 218029)
     ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
3    177 Post Street, Suite 300
     San Francisco, California 94108
4    (415) 421-7151 - Office
     (415) 362-8064 - Fax
5
     Theresa M. Traber (S.B. No. 116305)
6    Vanessa Eisemann (S.B. No. 210478)
     Jocelyn Sperling (S.B. No. 211714)
7    TRABER & VOORHEES
     128 N. Fair Oaks Avenue, Suite 204
8    Pasadena, California  91103
     (626) 585-9611 - Office
9    (626) 577-7079 - Fax

10   Theodor J. Pintar (S.B. No. 131372)
     Steven W. Pepich (S.B. No. 116086)
11   James A. Caputo (S.B. No. 120485)
     Lawrence A. Abel (S.B. No. 129596)
12   Helen I. Zeldes (S.B. No. 220051)
     LERACH COUGHLIN STOIA GELLER
13    RUDMAN & ROBBINS LLP
     401 B Street, Suite 1700
14   San Diego, California 92101-4297
     (619) 231-1058 - Office
15   (619) 231-7423 - Fax

16   (Additional counsel on following page)

17   Attorneys for Claimants PAUL VELIZ, *et al.*

18                **ARBITRATION PROCEEDING BEFORE**
19             **AMERICAN ARBITRATION ASSOCIATION**

20

21   PAUL VELIZ et al.,                    Case No. 11 160 01323 04

22         Claimants,                      **CLAIMANTS' CLAUSE**
                                           **CONSTRUCTION OPENING BRIEF**
     vs.
23
                                           Arbitrator: Hon. Bruce Meyerson (Ret.)
24   CINTAS CORPORATION et al.,            Case Manager: Kelly L.S. Taylor, Esq.

25         Respondents.

26                                         Date and time: TBD

27

28

1  Albert H. Meyerhoff, Esq.  (S.B. No. 54134)
   LERACH COUGHLIN STOIA GELLER
2   RUDMAN & ROBBINS LLP
   355 South Grand Avenue, Suite 4170
3  Los Angeles, California  90071
   (213) 617-9007 - Office
4  (213) 617-9185 - Fax

5  Nancy Juda, Esq.
   LERACH COUGHLIN STOIA GELLER
6   RUDMAN & ROBBINS LLP
   1100 Connecticut Ave., N.W., Suite 730
7  Washington, D.C. 20036
   (202) 822-2024- Office
8  (202) 828-8528- Fax

9  Attorneys for Claimants PAUL VELIZ, *et al.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cintas' Arbitration Clauses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      Cintas' Arbitration Clause Does Not Forbid Claimants from Proceeding
      with a Class or Collective Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Mt. Clemens Pottery Co.,*
  149 F.2d 461 (6th Cir. 1945), *rev'd on other grounds,*
  328 U.S. 680, 680 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Green Tree Financial Corp. v. Bazzle,*
  539 U.S. 444 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*Hamilton v. State Farm Fire & Casualty Co.,*
  270 F.3d 778 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hoffman-LaRoche, Inc. v. Sperling,*
  493 U.S. 165 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*
  282 F. Supp. 2d 1131 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ingle v. Circuit City Stores, Inc.,*
  328 F.3d 1165 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 21

*Lozada v. Dale Baker Oldsmobile,*
  91 F. Supp. 2d 1087 (W.D. Mich. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Luna v. Household Finance Corp.,*
  236 F. Supp. 2d 1166 (W.D. Wash. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
  514 U.S. 52 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Reich v. Southern New England Telecomm. Corp.,*
  121 F.3d 58 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Richard C. Young & Co. v. Leventhal,*
  298 F. Supp. 2d 160 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Walker v. Ryan's Family Steak Houses Inc.,*
  289 F. Supp. 2d 916 (M.D. Tenn. 2003), *aff'd,* 400 F.3d 370 (6th Cir. 2005) . . . . . . . . . 16

## FEDERAL RULES AND STATUTES

9 U.S.C. §4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

29 U.S.C. §216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

ii

Fed. R. Civ. P. 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

## STATE CASES

*Allstate Insurance Co. v. Avis Rent-a-Car System, Inc.,*
        947 P.2d 341 (Colo. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*BMW of N. America v. Krathen,*
        471 So. 2d 585 (Fla. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Badie v. Bank of America,*
        67 Cal. App. 4th 779 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*BellSouth Communications System, LLC v. West,*
        902 So. 2d 653 (Ala. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*BellSouth Mobility LLC v. Christopher,*
        819 So. 2d 171 (Fla. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bell v. Farmers Insurance Exch.,*
        115 Cal. App. 4th 715 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Benjamin Moore Paint Co. v. Aetna Casualty & Surety Co.,*
        843 A.2d 1094 (N.J. 2004 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Brauer v. Trustees of First M.E. Church,*
        1 A.2d 409 (N.J. Err. & App. 1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cantonbury Heights Condominium Association, Inc. v. Local Land Development, LLC,*
        873 A.2d 898 (Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of Homestead v. Johnson,*
        760 So. 2d 80 (Fla. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Computer Associates v. U.S. Balloon Manufacturing Co.,*
        782 N.Y.S.2d 117 (App. Div. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cress v. Recreation Services,*
        795 N.E.2d 817 (Ill. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Discover Bank v. Superior Court,*
        36 Cal. 4th 148 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dowd & Dowd, Ltd. v. Gleason,*
        693 N.E.2d 358 (Ill. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Eagle v. Fred Martin Motor Co.,*
        809 N.E.2d 1161 (Ohio App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Keating v. Superior Court,*
        31 Cal. 3d 584 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kinkel v. Cingular Wireless, LLC,*
        828 N.E.2d 812 (Ill. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

iii

*Klapp v. United Insurance Group Agency, Inc.,*
    663 N.W.2d 447 (Mich. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Klussman v. Cross Country Bank,*
    134 Cal. App. 4th 1283 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Leonard v. Terminix International Co.,*
    854 So. 2d 529 (Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*MPACT Construction Group, LLC v. Superior Concrete Constructors, Inc.,*
    802 N.E.2d 901 (Ind. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Porter v. Columbus Board of Industrial Rel'ns,*
    675 N.E.2d 1329 (Ohio App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ratcliff Architects v. Vanir Construction Management,*
    88 Cal. App. 4th 595 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ringle v. Bruton,*
    86 P.3d 1032 (Nev. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sav-On Drug Stores, Inc. v. Superior Court,*
    34 Cal. 4th 319 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Southern Bell Telephone & Telegraph Co. v. Chappelle,*
    415 S.W.2d 826 (Ky. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Southern Cal. Gas Co. v. Ventura Co.,*
    150 Cal. App. 2d 253 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State v. Philip Morris USA Inc.,*
    618 S.E.2d 219 (N.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Tillman v. Commercial Credit Loans,*
    2005 WL 2295111 (N.C. Super. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Trimble v. Pracna,*
    176 S.W.3d 706 (Mo. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Truck Insurance Exch. v. Marks Rentals, Inc.,*
    418 A.2d 1187 (Md. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Westfield Insurance Co. v. Galatis,*
    797 N.E.2d 1256 (Ohio 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Whitney v. Alltel Communications, Inc.,*
    173 S.W.3d 300 (Mo. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATE STATUTES AND COURT RULES

Ky. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

N.M. R. Civ. P. 1-023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wash. Sup. Ct. Civ. R. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Code Civ. Proc. §382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Colo. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conn. Practice Book §9-7 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ill. Comp. Stat. 5/2-801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kan. Stats. §60-223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mass. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Md. R. Civ. P. 2-231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mo. Rules of Ct. 52.08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

N.J. Ct. Rules 4:32-1 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

N.Y. CPLR §901 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ohio R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pa. R. Civ. P. 1701 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wis. Stat. §803.08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**OTHER**

Restatement (Second) of Contracts, §206, cmt. a . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Restatement (Second) of Contracts, §211, cmt. f . . . . . . . . . . . . . . . . . . . . . . . . . . 17

v

# INTRODUCTION

Claimants Paul Veliz *et al.* seek a "clause construction" determination under Rule 3 of the AAA Supplementary Rules for Class Arbitrations ("Class Arbitration Rules").[1] Because the arbitration clauses drafted by respondent Cintas do not include *any* language explicitly forbidding (or even referring to) class or collective arbitration, and because those clauses authorize the Arbitrator to "apply . . . relevant federal and state laws" and "to award . . . any relief . . . available under relevant laws," the Arbitrator should issue a partial final award under Rule 3 holding that Cintas' arbitration clauses permit claimants to proceed on a class and collective basis. *See* Declaration of Eileen Goldsmith, Exh. 13, *Sidhu and GMRI, Inc.*, AAA Case No. 11 160 02273 04 (Meyerson 2005) ("*Sidhu*") (clause construction award based on similar facts). In the parallel federal court action, Cintas has conceded that "it does not claim that any language in the arbitration agreements necessarily precludes all class arbitration." *See* Goldsmith Decl., Exh. 24, Cintas' Opp. to Pls. Mot. for Reconsideration (Dec. 14, 2005), *Veliz et. al. v. Cintas Corp.*, No. 03-1180 SBA ("Reconsideration Opp.") at 17. This concession is surely correct given the language and history of the applicable arbitration clauses, as discussed below.

Claimants in this arbitration are delivery drivers, often known as Service Sales Representatives ("SSRs"), employed by respondent Cintas Corporation, a national uniform and laundry service company. Claimants allege that they routinely worked long hours, sometimes more than 60 or 70 hours per week, yet Cintas failed to pay them overtime compensation as required by the federal Fair Labor Standards Act ("FLSA") and various state overtime laws.

---

[1] Class Arbitration Rule 3 states that the question to be decided at the Clause Construction phase is "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." A more appropriately-worded question, as framed by the United States Supreme Court in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ("*Bazzle*"), is whether Cintas' arbitration clauses "forbid class arbitration" – which more clearly expresses that the burden of proof lies with the employer which challenges claimants' statutory right to proceed on a representative basis. *See id.* at 448-52. That difference in phrasing should not matter, however, unless Cintas disputes that it has the burden of proving that claimants knowingly agreed to waive their right to proceed on a representative basis by executing the Cintas arbitration agreements.

1

1    Claimants, who bring this arbitration on their own behalf and on behalf of all similarly-situated

2    Cintas drivers, seek certification of this arbitration as both a collective action under Section 16(b)

3    of the FLSA, 29 U.S.C. §216(b), and as a series of related state law class actions under the

4    overtime laws of California, Colorado, Connecticut, Illinois, Indiana, Kansas, Kentucky,

5    Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New Mexico, Ohio,

6    Oregon, Pennsylvania, Rhode Island, Washington, and Wisconsin. *See* Demand for Arbitration

7    (May 4, 2004); Amendment to Demand (July 8, 2004); Second Amendment to Arb. Demand

8    (Sept. 30, 2005).[2]

9         The parties disagree about how many of the 1,800 individual claimants identified in

10   claimants' Arbitration Demand and amendments thereto, are proper parties to the present

11   arbitration. Claimants contend that all of those individuals are entitled to proceed, while Cintas

12   contends that only those claimants whom Judge Saundra Brown Armstrong explicitly compelled

13   to arbitrate in the Northern District of California pursuant to Section 4 of the Federal Arbitration

14   Act ("FAA"), 9 U.S.C. §4, may proceed. However, given Cintas' concession that *at least* those

15   55 claimants are properly before the Arbitrator, that dispute is immaterial to the clause

16

17

18

19

20         [2] Although this arbitration also includes claimants from Alabama, Delaware, Florida,
21   Idaho, Iowa, Mississippi, Nebraska, Nevada, North Carolina, Oklahoma, South Carolina, Utah,
     and Virginia, those states do not have applicable overtime laws, and the claimants from those
22   states therefore seek relief under the FLSA only. After Judge Armstrong in the federal action
     enters her written order based on the October 18 and October 27, 2005 hearings, *see infra* n.3,
23   claimants will amend the arbitration demand to submit the overtime claims of plaintiffs who
     worked for Cintas in Arizona, Louisiana, and Pennsylvania, assuming the Court upholds the
24   enforceability of those plaintiffs' arbitration agreements.
25
          Claimants are asserting Michigan state law claims in their arbitration even though Judge
26   Armstrong ruled on the federal action that no such claims can be asserted under Michigan law.
27   Claimants appealed that reading of the Michigan Minimum Wage Law, and the Ninth Circuit
     recently certified that unsettled state law issue to the Michigan Supreme Court, where it remains
28   pending. Goldsmith Decl., Exh. 25.

2

1  construction issue, since the present motion may properly be brought by *at least* those claimants

2  who were compelled to arbitrate pursuant to FAA §4.[3]

3      Before addressing the precise language of Cintas' various arbitration clauses, we briefly

4  recount the procedural history of this arbitration and the underlying litigation.  We then set forth

5  the text of Cintas' arbitration clauses, which we analyze in light of governing contract principles,

6  as guided by previous AAA clause construction awards issued by this Arbitrator and others.

7  Based on this analysis, the Arbitrator should find that the Cintas arbitration clauses permit this

8  Arbitration to proceed on both a class and collective action basis.[4]

9  ─────────────────────

10      [3]  Judge Armstrong ruled in her May 4, 2005 Order that the 55 Original Claimants were
    required to arbitrate in the Northern District of California pursuant to FAA §4 (which requires a
11  court compelling arbitration under its provisions to set venue for that arbitration in the judicial
    district where the court sits).  The parties still await Judge Armstrong's written order from the
12  October 18 and October 27, 2005 hearings, in which she will presumably state whether the same
13  requirement applies to: 1) the 11 claimants whom Cintas stipulated on June 4, 2004 should also
    be compelled to arbitrate under FAA §4 (*see* Goldsmith Decl., Exh.18, Stip. & Order, June 9,
14  2004); and 2) the 48 additional claimants whom Cintas agreed at the October 18, 2005 oral
    argument should also be compelled to arbitrate under FAA §4. *Id.*, Exh. 23, Tr. of Proceedings,
15  Oct. 18, 2005 at 70:1-71:19, 79:24-80:16, 98:10-19, 99:6-17, 100:15-101:7.  Since the 55
16  claimants who are clearly part of this arbitration are entitled to bring this motion, the scope of
    claimants actually before this Arbitrator should be briefed at a later time, after the district court
17  has issued its ruling.

18      [4]  If claimants prevail at the present Clause Construction phase, we will next seek class
    certification of the 19 state law classes (which rest on state laws that in most respects are similar
19  to the FLSA, although some have more limited exemptions).  Claimants will also seek
    conditional certification of this matter as an FLSA collective action, just as Judge Armstrong in
20  the parallel federal lawsuit conditionally certified this case as an FLSA collective action in her
21  November 4, 2003 Order at 1-12, 16. (Goldsmith Decl., Exh. 14).

22      Although nothing in the Class Arbitration Rules explicitly refers to "collective" rather
23  than "class" action arbitrations, it appears that most arbitrators treat the two as essentially
    interchangeable for purposes of the arbitrator's analysis at the Clause Construction phase. *See,*
24  *e.g.,* Goldsmith Decl., Exh. 9, *Goldstein and Ibase Consulting*, AAA Case No. 11 160 02760 03
    (Garrison 2004) ("Goldstein"); *id.,* Exh. 7, *Cole and Long John Silver's Restaurants, Inc.*, AAA
25  Case No. 11 160 00194 04 (Hodge 2004) ("Cole").  While claimants agree that it is appropriate
26  for the Arbitrator to decide whether Cintas' arbitration clause permits collective arbitration at the
    same time it decides whether that clause permits class arbitration, there is no reason why the
27  district court should be asked to review an interim *collective* action decision under Rule 3.  The
28  reason the AAA requires judicial review of *class action* Clause Construction and Class

                                                    (continued...)

3

1

## BACKGROUND

2    The underlying lawsuit was filed on March 19, 2003 by 65 plaintiffs, including the 55

3  Original Claimants.  On November 4, 2003, Judge Armstrong conditionally certified that lawsuit

4  as a collective action under the FLSA, and ordered notice sent to approximately 10,000 similarly-

5  situated current and former Cintas drivers throughout the country.  That notice, which the Court

6  ordered disseminated after its April 5, 2004 ruling on arbitrability, informed prospective

7  plaintiffs of their right to file a Consent to Sue under Section 16(b) of the FLSA and stated that

8  the Court would later determine which plaintiffs could proceed in court and which plaintiffs must

9  proceed in arbitration on their statutory overtime claims.  *See* Goldsmith Decl., Exh. 16, April

10  23, 2004 Order at 1-7; *id.*, Exh. 17, May 25, 2004 Order.[5]

11    Judge Armstrong initially set October 21, 2004 as the deadline for filing Consents to Sue.

12  On November 15, 2004, however, the Court extended the opt-in deadline three months to

13  January 15, 2005, and ordered Cintas to post and mail a supplemental notice because Cintas'

14  CEO had improperly sent a letter to all current SSRs attempting to discourage them from opting

15

16

17  ───────────────

18    [4]  (...continued)
Certification awards is to protect the due process rights of absent class members.  No such

19  protection is required in a collective action, because individual plaintiffs are only bound by the
arbitrator's partial and final awards if they affirmatively opt in, as the 1,800 claimants did in this

20  arbitration pursuant to the Court-facilitated notice.  *See* 29 U.S.C. §216(b).

21    [5]  The collective action notice provided that SSRs could opt into the district court
litigation, and that the Court would subsequently decide which plaintiffs would proceed in court

22  and which must arbitrate:

23
    On April 5, 2004, the U.S. District Court ruled that the majority of

24    Cintas Route Drivers who join this lawsuit must arbitrate their overtime
    claims before the American Arbitration Association ("AAA") while

25    others may continue to litigate their overtime claims in court. If you join
    this lawsuit by filing a timely Consent to Sue as described above, the

26    Court will decide whether your claims will proceed in arbitration or
    before the court.

27

28  Goldsmith Decl., Exh. 17, May 25, 2004 Order, Notice of Collective Action, ¶6.

4

1    into the lawsuit. *Id.*, Exh. 19, Nov. 15, 2004 Order at 4-5. By the January 15, 2005 deadline,

2    approximately 2,400 individuals had filed Consents to Sue.

3        In August, 2003 (five months after plaintiffs filed the original complaint), Cintas moved

4    to compel all plaintiffs to arbitration. More than 2-1/2 years have since passed, but Judge

5    Armstrong has still not finally resolved the parties' disputes over arbitrability (although claimants

6    anticipate that the remaining issues will be resolved in the upcoming order, which will

7    commemorate the Court's oral rulings on October 18 and October 27, 2005).

8        Judge Armstrong issued her first arbitration ruling on April 5, 2004, in which she found

9    unconscionable and severed from Cintas' various arbitration agreements provisions that: 1)

10   shortened the statutes of limitations for statutory claims; 2) made attorneys' fee awards to

11   prevailing plaintiffs discretionary rather than mandatory, as required by 29 U.S.C. §216(b); and

12   3) required plaintiffs to pay Cintas' attorneys' fees and costs and arbitration fees if Cintas

13   prevailed. Goldsmith Decl., Exh. 15, April 5, 2004 Order at 18-22, 58-59.[6]  Judge Armstrong

14   then granted Cintas' motion to compel arbitration of the overtime claims of 55 of the 65 Original

15   Plaintiffs, while retaining jurisdiction over the remaining plaintiffs (who either did not sign an

16   individual employment agreement with an arbitration clause, or were employed in a state, like

17   Arkansas, under which the entire agreement was unconscionable because it lacked "mutuality,"

18   or who were forced to sign their individual arbitration agreements without having any

19   opportunity to review those agreements). *Id.* at 58-59.[7]

20   _____

21      [6]  Although the Court's April 5, 2004 Order only severed those unconscionable
22   provisions under *some* states' laws (while reserving for the Arbitrator the task of determining
     unconscionability under the remaining states' laws under FAA §2), Cintas informed the Court
23   during the October 2005 hearings that it would not seek to enforce those provisions against any
     claimants, and the Court accepted Cintas' representation by noting that "Defendants have also
24   indicated they're willing to consent to also severing those provisions." Goldsmith Decl., Exh.
     23, Tr. of Proceedings, Oct. 18, 2005 at 14:24-15:10; *id.*, Exh. 21, Mot. to Stay Proceedings
25   (June 3, 2005) at 7-8. Claimants proceed with the understanding that the arbitration clauses have
26   been modified to eliminate those unconscionable provisions.

27      [7]  Plaintiffs in the federal lawsuit also sought relief under ERISA. Judge Armstrong
     retained jurisdiction over all plaintiffs' ERISA claims, which are outside the scope of the Cintas
28                                                                               (continued...)

On May 4, 2005, ruling on plaintiffs' motion for reconsideration, Judge Armstrong clarified that those claimants whom she compelled to arbitrate under FAA §4 were entitled to arbitrate their claims in the Northern District of California, the judicial district in which the court sits. Goldsmith Decl., Exh. 20, May 4, 2005 Order at 11-13 (citing *Continental Grain Co. v. Dant & Russell*, 118 F.2d 967, 968-69 (9th Cir. 1941); *Homestake Lead Co. v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131, 1143-44 (N.D. Cal. 2003)). The Court further held that it was for the Arbitrator, not the Court, to determine whether Cintas' arbitration clauses prohibit class arbitration. *Id.* at 10 (citing *Bazzle*, 539 U.S. at 452-53).

Once plaintiffs successfully made the point that any arbitration compelled under FAA §4 must be venued in the Northern District of California, Cintas changed its tactics. In an apparent attempt to preserve the arbitration venue issue for later adjudication, Cintas in June 2005 (after the opt-in period closed) asked Judge Armstrong only to "stay" the litigation of the remaining plaintiffs' claims under FAA §3 (which has no venue provision) rather than to "compel arbitration" of those plaintiffs' non-ERISA claims under FAA §4. Judge Armstrong orally granted Cintas' motion on October 27, 2005, but has still not issued her written ruling which, upon issuance, will likely clarify whether any plaintiffs in addition to the 55 Original Plaintiffs have been compelled to arbitrate under FAA §4. *See supra* n.3.

## CINTAS' ARBITRATION CLAUSES

Cintas has modified its core arbitration agreement, known as "Corporate Policy #C-105," on five occasions over the past decade: in 1996, 1999, 2001, 2002, and 2003. (We set forth exemplars of these agreements as Exhibits 1-5 to the Goldsmith Declaration.) The essence of Cintas' agreements has remained unchanged for purposes of clause construction analysis, however.[8]

---

[7] (...continued)
arbitration clauses. *See* Goldsmith Decl., Exh. 16, April 23, 2004 Order at 2.

[8] Each of the 55 Original Claimants signed either the 1996, 1999, 2001, or 2002 versions. Although Cintas is correct that 71 different versions of the arbitration clause are
(continued...)

6

The 1996 Cintas arbitration clause includes the same basic language that has been repeated almost verbatim in every subsequent version of Cintas' mandatory pre-dispute arbitration agreements. We have italicized the language from that arbitration clause that bears most directly on the parties' Clause Construction dispute – although the *absence* of any language explicitly prohibiting class or collective arbitration itself establishes that claimants did not knowingly or intelligently waive their right to pursue state and federal statutory claims on a representative basis.

Cintas' 1996 arbitration clause provides:

EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES. Should any dispute or difference arise between Employee and Employer concerning whether Employer or any agent of Employer ever at any time violated any duty to Employee, right of Employee, law, regulation or public policy or breached this Agreement, Employee and Employer shall confer and attempt in good faith to resolve promptly such dispute or difference. Recognizing the importance of having a fair, timely, inexpensive and binding method of resolving any such dispute or difference remaining unresolved after Employee and Employer confer in good faith, Employee and Employer agree that if the dispute or difference remains unresolved after Employee and Employer have conferred in good faith, and if Employee desires to pursue Employee's claims or contentions, *Employee shall submit a timely written request to have such claim, dispute or difference resolved through impartial arbitration conducted in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes and held in the county and state where Employee currently works for Employer or most recently worked for Employer.*

*In any such arbitration proceeding, the impartial arbitrator shall apply the terms of this Agreement as written, the Federal Arbitration Act and other relevant federal and state laws,* including time limits on claims, and the party losing the arbitration shall bear the fees and expenses of the American Arbitration Association and the impartial arbitrator. *The impartial arbitrator shall have the*

_____

[8] (...continued)
applicable to the 1,800 claimants, *see* Goldsmith Decl., Exh.22, Decl. of Catherine Randall in Support of Cintas' Mot. to Stay Proceedings (June 3, 2005), Exhs. 2-72, Cintas concedes that "almost all" of the arbitration clauses in these additional agreements are "identical to those of the 1996, 1999, 2001 or 2002 agreements." *Id.,* Exh. 21, Mot. to Stay Proceedings (June 3, 2005), at 5-6. To the extent that Cintas' newest 2003 agreements contain a revised arbitration clause, Cintas also concedes that the "operative terms [of that agreement] are substantially similar to the 2002 agreement." *Id.*

7

*authority to award to the prevailing party any relief, including damages, costs and attorney's fees, available under relevant laws.*

Impartial arbitration, as provided above in this Paragraph 6, shall be the exclusive, final and binding method of resolving any dispute or difference between Employee and Employer arising from, concerning or relating in any way to Employee's employment with Employer or Employee's *separation from employment with Employer.  A legal action to maintain the status quo until the arbitration award is rendered or to enforce the agreement to arbitrate or the arbitration award may be filed and pursued in any court having jurisdiction, but otherwise Employee shall not file any lawsuit contending that Employer or any agent of Employer violated any duty, law, regulation or public policy or breached this Agreement.*

Goldsmith Decl., Exh. 1, ¶6 (emphasis added).

Cintas' 1999 arbitration clause is almost identical, except that it imposes a one-year statute of limitations for requesting arbitration, limits the employee's "initial share" of the arbitration filing fee to "one day's pay or $100, whichever is less," and eliminates the "loser pays" language, substituting a provision that Cintas will pay all arbitration fees and expenses. Goldsmith Decl., Exh. 2, ¶5. The 1999 clause also modifies the second paragraph to provide that although the arbitrator generally retains "authority to award appropriate relief . . . as available under relevant laws," the arbitrator's authority to award costs or fees against an employee is limited to awarding the equivalent of two days' pay.[9] The 1999 agreement also states that workers' compensation and unemployment benefits claims are not subject to the arbitration clause; and that the arbitrator may reconsider an arbitration award. *Id.*

The 2001 version of the arbitration clause is identical to the 1999 version in all respects. *Id.*, Exh. 3, ¶5. The 2002 version makes only one significant change, stating that the one-year limitations period for submitting a request for arbitration does not apply when the employee alleges a violation of a specific statute with its own statute of limitations. *Id.*, Exh. 4, ¶5. The

---

[9] *Id.*, Exh. 2, ¶5 ("The arbitrator also shall have the authority to award appropriate relief, including damages, costs and attorneys' fees, as available under relevant laws, provided that the Arbitrator cannot direct Employee to pay more than a total of two days' pay as costs, expenses and attorney's fees to Employer, the arbitrator or the American Arbitration Association.").

8

1    2003 version specifically enumerates the types of statutory claims an employee might assert that

2    are subject to arbitration, and provides that the agreement is to be construed under the FAA and

3    Ohio law, but otherwise effects no significant changes. *Id.*, Exh. 5, ¶8.

4        Each version of Cintas' individual employment agreements states that it constitutes the

5    "entire agreement between employer and employee" (except for any compensation or benefits

6    agreements) and can only be modified by a subsequently-executed written agreement of the

7    parties. Each version of the arbitration clause in those employment agreements includes the

8    arbitration-initiation language upon which Cintas primarily relies in opposing class and collective

9    arbitration ("Employee shall submit a timely written request to have such claim . . . resolved

10   through impartial arbitration . . . held in the county and state where Employee currently works

11   . . . or most recently worked . . . ."). No version includes an explicit prohibition of class or

12   collective actions or any reference to class or collective actions. Nor does any version carve out

13   the claimants' statutory right to proceed on a class or collective basis from the arbitrator's broad

14   authority to "apply . . . relevant federal and state laws," "to award . . . any relief . . . available

15   under relevant laws," and to grant any remedy or relief deemed "just and equitable, including any

16   remedy or relief that would have been available to the parties had the matter been heard in court"

17   (under AAA Employment Rule 34(d)). *See Id.*, Exh. 1, ¶6; *id.*, Exh. 2, ¶5; *id.*, Exh. 3, ¶5; *id.*,

18   Exh. 4, ¶5; *id.*, Exh. 5, ¶8. In marked contrast to the arbitration clauses in Cintas' employment

19   agreements, the arbitration clause in the form rental agreement that Cintas uses with its

20   customers includes an express prohibition on collective or class arbitration of claims against the

21   company: "Any such dispute shall be determined on an individual basis, shall be considered

22   unique as to its facts, and shall not be consolidated in arbitration or any other proceeding with

23   any claim or controversy of any other party." *Id.*, Exh. 29, Standard Uniform Rental and Service

24   Agreement at 2.

25        Cintas drafted each of the arbitration clauses at issue in these proceedings, which are

26   contained in standardized corporate policies. *See id.*, Exhs. 1-5; *id.*, Exh. 22, Randall Decl.,

27

28

Exhs. 2-72. As Judge Armstrong concluded in her initial Order, Cintas was able to compel

claimants to sign these agreements because of its vastly superior bargaining strength:

> It would be ludicrous to suggest that the SSRs are on an equal footing with Cintas. The SSRs are individuals seeking employment or further benefits from their current employer. Cintas, by its own admission, is a nationwide business enterprise and a leader in its industry.

*Id.,* Exh. 15, April 5, 2004 Order at 18.

## ARGUMENT

### Cintas' Arbitration Clause Does Not Forbid Claimants From Proceeding With A Class or Collective Arbitration.

Because Cintas' arbitration clause is so similar to the clause construed by this Arbitrator

in *Sidhu,* we begin with a brief summary of the Clause Construction analysis in that case.

*Sidhu* was a class action overtime case under California law on behalf of a putative class

of restaurant managers. As here, the employer's arbitration clause was silent as to class

arbitration and authorized the arbitrator to grant all relief that would be available in court, both

expressly (by authorizing the arbitrator to grant the same "legal and equitable relief . . . as could a

court of competent jurisdiction") and by incorporating the AAA Employment Rules (which

provide in Rule 34(d) that the arbitrator may grant any remedy or relief deemed "just and

equitable, including any remedy or relief that would have been available to the parties had the

matter been heard in court"). *Sidhu* Clause Construction Award at 2. The *Sidhu* arbitration

clause also contained a venue provision stating that any arbitration must be conducted in the "city

in which the Employee is or was last employed by the Company," and used singular noun forms

(*i.e.,* referring to the "Employee" rather than to "Employees"). *Id.*

The Arbitrator concluded that the arbitration clause in *Sidhu* was ambiguous, because

some of its provisions could be read as permitting class arbitration while other provisions could

be read as inconsistent with class arbitration. After identifying the arguments on both sides, none

of which were independently determinative, the Arbitrator concluded that the ambiguities in the

clause must be resolved against the employer that drafted it. *Id.* The Arbitrator therefore issued a partial final award finding that the *Sidhu* arbitration provision *permitted* class arbitration (without reaching claimants' alternative argument that a prohibition against class arbitration in a statutory overtime case would be unconscionable under applicable state law). *Id.* at 2-3.

The Cintas claimants' Clause Construction arguments are even stronger than the *Sidhu* claimants' arguments, for the seven reasons set forth below.

First, although Cintas' clause, like the clause in *Sidhu*, is silent as to any prohibition against class or collective action, that silence is more significant here, given Cintas' repeated modifications of its agreement in the past decade. Cintas is a legally sophisticated, multi-billion dollar company. Cintas and its attorneys could easily have amended the arbitration clause to prohibit class and collective arbitrations explicitly if that were Cintas' intent (and if Cintas believed that such a prohibition would not result in the agreement being invalidated as unconscionable), just as Cintas changed many other provisions in response to developments in the law of mandatory arbitration to maximize the company's legal rights. *See supra* at 7-9. Cintas was surely aware of the class certification prohibition issue, given the well-publicized controversy over class arbitrations that preceded by several years the Supreme Court's 2003 decision in *Bazzle.* And Cintas had ample opportunity to include express waiver language in the more recent versions of its form arbitration clause. Indeed, Cintas *does* include express language in its form rental agreements with customers prohibiting those customers from arbitrating their disputes against Cintas collectively, indicating that Cintas is well aware how to draft a clear waiver of the right to arbitrate on a class or collective basis (whether or not such a waiver is enforceable). *See* Goldsmith Decl., Exh. 29, Standard Uniform Rental Service Agreement at 2 ("*Any such dispute shall be determined on an individual basis,* shall be considered unique as to its facts, *and shall not be consolidated in arbitration or any other proceeding with any claim or controversy of any other party.*") (emphasis added). Under the circumstances, the absence of explicit prohibitory language in Cintas' employment agreements necessarily indicates that those agreements were *not* intended to deprive employees of their statutory right to engage in class or

11

1    collective arbitrations. *See id.,* Exh. 12, *Olson and Rent-a-Center, Inc.,* AAA Case No. 11 10

2    01831 04 at 2 (Brandt 2005) ("Olson") ("reasonable to conclude" that four-page arbitration

3    clause that addressed conduct of arbitration in considerable detail but said nothing about class

4    arbitration was not intended to prohibit such arbitration); *id.,* Exh. 11, *Medina and GMRI, Inc.,*

5    AAA Case No. 11 160 02409 04 at 5 (Christianson 2005) ("Medina") (silence as to class

6    arbitration should be construed against the party that would most benefit from prohibition on

7    such an arbitration).[10]

8        Second, it is even clearer here than in *Sidhu* that class and collective arbitration is

9    permitted, because Cintas has taken the position in its federal court filings that its arbitration

10   clause does *not* prohibit class arbitrations. In the fall of 2004, the *Veliz* plaintiffs challenged

11   Cintas' arbitration clauses as unconscionable *to the extent* they were construed as prohibiting

12   class or collective arbitration. To avoid a ruling invalidating the clauses in their entirety, Cintas

13   expressly *denied* that its arbitration clauses prohibit class arbitration. Cintas thus wrote in its

14   opposing brief that "Plaintiffs falsely characterize Cintas' position as being that the arbitration

15   agreements 'preclude class actions,'" and stated that it "does not claim that any language in the

16   arbitration agreements necessarily precludes all class arbitration." Reconsideration Opp. at 17.

17       Having made these assertions in an effort to avoid a ruling that its arbitration clauses were

18   unenforceable because they prohibited class actions, Cintas may not now take the opposite

19   position that those clauses do in fact prohibit class arbitrations. Whether as a matter of judicial

20   estoppel, equitable estoppel, or waiver, or as further evidence of Cintas' intent not to prohibit

21   class arbitrations, these concessions constitute an additional reason why Cintas' arbitration

22   clauses must be construed as permitting (or not forbidding) class and collective arbitration. *See*

23   _____

24       [10]  Moreover, ordinary principles of contract interpretation preclude the Arbitrator from
     adding to the plain language of these integrated agreements any new term, much less a term as
25   important as an express waiver of representative arbitration. *See, e.g., Southern Cal. Gas Co. v.
     Ventura Co.,* 150 Cal.App.2d 253, 257 (1957); *Ratcliff Architects v. Vanir Constr. Mgmt.,* 88
26   Cal.App.4th 595, 602 (2001); *BMW of N. Am. v. Krathen,* 471 So.2d 585 (Fla. App. 1985); *Cress
     v. Recreation Servs.,* 795 N.E.2d 817 (Ill. App. 2003); *Brauer v. Trustees of First M.E. Church,* 1
27   A.2d 409, 410 (N.J. Err. & App. 1938); *Porter v. Columbus Bd. of Indus. Rel'ns,* 675 N.E.2d
28   1329, 1332 (Ohio App. 1996).

                                            12

1  *also* Goldsmith Decl., Exh. 20, May 4, 2005 Order at 9-10 & n.7 (noting Cintas' position that it

2  did not contend that all class arbitration was precluded); *Olson, supra*, at 7 (binding party to in-

3  court representations that its arbitration agreements did not preclude class arbitration, and stating:

4  "any reasonable person hearing a declaration that 'we are not saying they cannot pursue any class

5  claims' would understand [that the party] . . . was saying that class claims are allowed by the

6  agreement"); Goldsmith Decl., Exh. 8, *Cook and Rent-a-Center, Inc.*, AAA Case No. 11 160

7  01815 04 at 4 (Todd 2005) ("Cook") (same).  To allow Cintas at this point to take the opposite

8  position from that it took before Judge Armstrong would impermissibly condone a "litigant

9  playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778,

10  782 (9th Cir. 2001) (applying principles of judicial estoppel).[11]

11       Third, the arbitration-initiation language in Cintas' agreements cannot reasonably be

12  construed as an implicit prohibition against any claimant proceeding on a class or collective

13  basis.  Unlike the clause in *Sidhu*, Cintas' arbitration clauses do not dictate arbitration venue –

14  *i.e.*, where an arbitration under its provisions must be conducted.  Rather, Cintas' language is at

15  most a limitation on how an employee may initiate arbitration on his or her own behalf, not a

16  limitation on how claims may be adjudicated once another employee has initiated arbitration on a

17  class basis or a limitation on *joining* another employee's already-initiated arbitration.  Just as

18  Cintas' arbitration-initiation language did not trump FAA §4's judicial-district venue

19  requirement, neither can it trump any claimant's statutory rights under §216(b) of the FLSA, or

20  under state and federal class action provisions applicable to the state overtime claims at issue, or

21

22

---

23      [11]  Cintas' concession completely undercuts any argument that its clause prohibits class

24  arbitration because it includes language referring to the "employee" in the singular, rather than to "employees" in the plural form.  In any event, although this Arbitrator found in *Sidhu* that the use

25  of singular noun forms created some ambiguity in the parties' intended meaning, other arbitrators have concluded that such usage cannot effect a waiver of the important right to pursue claims on

26  a class or collective basis. *See, e.g., Medina, supra*, at 6; *Cole, supra*, at 7 ("The use of personal pronouns cannot by inference achieve the deprivation of significant rights. . . . Had the drafters

27  intended a specific exclusion of class-action participation, they had the obligation clearly to articulate the exclusion."); Goldsmith Decl., Exh. 6, *Budner and Oats*, AAA Case No. 11 181

28  00828 04 at 8 (Zimmerman 2004) ("Budner").

1    under the joinder provisions of Fed. R. Civ. P. 19 and 20 – each of which provide an independent

2    legal basis for similarly-situated Cintas drivers to "join" this arbitration as additional party

3    plaintiffs. Because Cintas does not dispute that *this* arbitration has been properly initiated and

4    that *this* arbitration may proceed in the Northern District of California on behalf of at least *some*

5    claimants, Cintas' arbitration-initiation clause should have no ongoing relevance in the Clause

6    Construction phase of this proceeding.[12]

7         Even if Cintas had included an actual arbitration-venue clause in its agreements, that

8    clause could not trump the claimants' right to join other Cintas employees' properly-commenced

9    arbitration, much as this Arbitrator determined in *Sidhu*. Under well-established class action

10   principles, absent class members are entitled to participate in another plaintiff's lawsuit, without

11   affirmatively opting in (as long as that class member does not opt out after receiving the class

12   action notice). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808-14 (1985). Under

13   equally well-established FLSA principles, any employee who is similarly situated to an FLSA

14

15   ───────────────────

16        [12]  While the *Sidhu* clause was an actual arbitration venue clause that set forth "the
     location of arbitration," *Sidhu* at 2, the Cintas clause only contains arbitration-initiation language,
17   stating that an employee may initiate arbitration by submitting a "timely written request" that
     asks to have an arbitration "conducted in accordance with" the AAA Employment rules and
18   "held in the county and state where Employee currently works for Employer or most recently
     worked for Employer." That language in Cintas' agreements does not dictate where the
19   arbitration must actually be conducted; only how the request for arbitration must be worded.

20        That Cintas' arbitration clause governs only arbitration initiation, not venue, is
21   underscored by the analysis in *Richard C. Young & Co. v. Leventhal*, 298 F. Supp. 2d 160, 168-
     70 (D. Mass. 2003). In that case, the arbitration clause required the parties' "disagreement [to]
22   be submitted for arbitration to the American Arbitration Association in Boston, Massachusetts" –
     a far more ambiguous clause that could read either as an arbitration-initiation clause or as an
23   arbitration venue clause. The court recognized that this language could be construed either as
24   requiring the request for arbitration to be submitted to AAA's Boston office or as requiring that
     the arbitration itself take place in Boston. Applying the basic rule that any ambiguity must be
25   construed against its drafter, the court found that the clause limited only the submission of a
     request for arbitration, and did not operate as a forum-selection clause that required the
26   arbitration to be conducted in Boston. (Although the First Circuit later reversed on the ground
27   that construction of the arbitration clause was the responsibility of the arbitrator rather than the
     court, it did not comment on the district court's actual construction of that language. *See* 389
28   F.3d 1, 3-5 (1st Cir. 2004)).

1    plaintiff may opt in to that plaintiff's existing collective action for unpaid wages or overtime

2    simply by filing a Consent to Sue form in the existing lawsuit, without having to file a separate

3    lawsuit in a court that would have venue over his or her individual claims. *See* 29 U.S.C.

4    §216(b). Nothing in Cintas' arbitration-initiation clause language precludes claimants from

5    joining this existing action as additional class or collective action members or from joining this

6    arbitration as additional parties plaintiff under Fed. R. Civ. P. 19 or 20, any more than the city-

7    by-city venue clause in *Sidhu* precluded a single, consolidated California class arbitration that

8    included absent class members as well as the named class representative. Once Cintas

9    guaranteed its employees access to all legally-available relief, it accepted the possibility that

10    arbitrators appointed under its arbitration clauses could order classwide or collective relief.

11        The fourth reason why Cintas' arbitration clause cannot fairly be read as forbidding class

12    or collective arbitration is because, as in *Sidhu*, that clause expressly and repeatedly authorizes

13    the Arbitrator to grant all relief and all remedies that a court could make available under state or

14    federal law – a broad grant of authority that is inconsistent with an implied prohibition on class

15    or collective proceedings. Cintas' arbitration clauses specifically provide that the "arbitrator

16    shall have authority to award the prevailing party *any relief* . . . available under relevant laws."

17    Goldsmith Decl., Exh. 1, ¶6 (emphasis added); *see also id.*, Exh. 2, ¶5 ("arbitrator . . . shall have

18    the authority to award *appropriate relief*, . . . as available under relevant laws") (emphasis

19    added); *id.*, Exh. 3, ¶5 (same); *id.*, Exh. 4, ¶5 (same); *id.*, Exh. 5, ¶8 ("arbitrator will have the

20    authority to award either party *appropriate relief*, including damages, costs and attorneys' fees,

21    as available under relevant laws") (emphasis added). Each clause also fully incorporates AAA

22    Employment Rule 34(d), which authorizes the arbitrator to grant any relief deemed "just and

23    equitable, including any remedy or relief that would have been available to the parties had the

24    matter been heard in court."

25        As the Supreme Court explained in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514

26    U.S. 52, 61 n.7 (1995) (in deciding whether the parties' broad arbitration language authorized an

27    arbitrator to award punitive damages), "it would seem sensible to interpret the 'all disputes' and

28

15

1  'any remedy or relief' phrases to indicate, at a minimum, an intention to resolve through

2  arbitration any dispute that would otherwise be settled in a court, and to allow the chosen dispute

3  resolvers to award the same varieties and forms of damages or relief as a court would be

4  empowered to award." (Quotation omitted.) *Accord Cole, supra*, at 11 (construing contract

5  language empowering the arbitrator to "award you anything you might seek through a court of

6  law" as authorizing collective and classwide remedies "as if sought in a court of law"); *Sidhu* at 2

7  ("any relief" language supports claimants' position that the arbitrator was empowered to award

8  classwide relief under statutes that authorize courts to provide such relief).

9       Here, because Cintas' arbitration clauses gave the Arbitrator broad authority to exercise

10  the same power to grant relief as a court could exercise, Cintas must have intended to permit the

11  Arbitrator to award relief on a classwide or collective basis.  Under the applicable statutes, courts

12  may award classwide or collective relief for claimants' statutory overtime claims against Cintas.

13  The FLSA authorizes collective actions, 29 U.S.C. §216(b), and the state laws at issue permit

14  class actions.[13]

15       Representative adjudication furthers the vital public policies of state and federal wage

16  laws by ensuring that those laws will be effectively and efficiently enforced.  The class and

17  collective action devices afford claimants "the advantage of lower individual costs to vindicate

18  rights by the pooling of resources" and permit "efficient resolution in one proceeding of common

19  issues of law and fact arising from the same alleged . . . activity." *Hoffman-LaRoche, Inc. v.*

20  *Sperling*, 493 U.S. 165, 170 (1989).  Thus, they are particularly favored in the context of

21  statutory wage claims.  *See, e.g., Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319,

22  340 (2004); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 n.13 (9th Cir. 2003).  "In the

23  [FLSA] area particularly, often each individual claim results in a small monetary remedy,

24

25  _____

26      [13]   *See* Cal. Code Civ. Proc. §382; Colo. R. Civ. P. 23; Conn. Practice Book §9-7 *et seq.*;
    Ill. Comp. Stat. 5/2-801; Ind. R. Civ. P. 23; Ky. R. Civ. P. 23; Md. R. Civ. P. 2-231; Mo. Rules
27  of Ct. 52.08; N.J. Ct. Rules 4:32-1 *et seq.*; N.Y. CPLR §901 *et seq.*; Ohio R. Civ. P. 23; Kan.
    Stats. §60-223; Mass. R. Civ. P. 23; Minn. R. Civ. P. 23; N.M. R. Civ. P. 1-023; Pa. R. Civ. P.
28  1701 *et seq.*; R.I. Sup. Ct. R. Civ. P. 23; Wash. Sup. Ct. Civ. R. 23; Wis. Stat. §803.08.

16

1   whereas class actions often result in practice and programmatic change that benefit all

2   employees." *Walker v. Ryan's Family Steak Houses Inc.*, 289 F. Supp. 2d 916, 926 (M.D. Tenn.

3   2003), *aff'd*, 400 F.3d 370 (6th Cir. 2005); *see also Goldstein*, *supra*, at 3 ("The class or

4   collective action device is particularly well-suited to wage claims, as most employees are

5   unlikely to bring such claims as a single plaintiff for fear of retaliation or loss of job, and most

6   terminated employees are unlikely to seek or obtain counsel to challenge either the termination or

7   terms and conditions which applied during employment."). In short, courts and arbitrators have

8   repeatedly endorsed class and collective relief as a vital tool to vindicate employees' statutory

9   employment rights. Because Cintas authorized the Arbitrator to grant all relief available under

10  the applicable statutes, it necessarily conferred the power to allow this arbitration to proceed on a

11  class or collective action basis.

12      Fifth, Cintas' arbitration clause, as a standardized form agreement drafted by the

13  employer, must be construed in a manner that furthers rather than impairs the employees'

14  reasonable expectations. *See, e.g.*, Restatement (Second) of Contracts, §211 cmt. f ("Although

15  customers typically adhere to standardized agreements and are bound by them without even

16  appearing to know the standard terms in detail, they are not bound to unknown terms which are

17  beyond the range of reasonable expectation."); *Klussman v. Cross Country Bank*, 134 Cal. App.

18  4th 1283 (2005) (consumers not bound by class arbitration waiver in arbitration provider's rules

19  incorporated by reference in arbitration clause). The federal court in *Veliz* has already found that

20  it would be "ludicrous" to think that claimants had equal bargaining power to Cintas, their

21  employer and a nationwide leader in its industry. Goldsmith Decl., Exh. 15, April 5, 2004 Order

22  at 18. Not only are claimants far less sophisticated than the drafters of Cintas' arbitration

23  clauses, but it is not reasonable to believe that Cintas' employees recognized, when they signed

24  the arbitration agreements, that they were waiving rights to adjudicate statutory claims on a

25  representative basis when the agreements were completely silent about the matter.

26      Much as the *Klussman* court recognized that few customers were likely to research the

27  arbitration rules and understand that they effected a class arbitration waiver, 134 Cal. App. 4th at

28

17

1 1299-1300, here the Arbitrator should recognize that only the most diligent and sophisticated

2 SSRs might even have considered whether anything in Cintas' arbitration clauses might be

3 construed to waive their right to participate in class or collective arbitration. Any such statutory

4 waiver should be set forth clearly, not based on inferences from oblique language drafted by a

5 sophisticated employer and its lawyers. *See Cole, supra*, at 7 (waiver of the important right to

6 arbitrate statutory wage claims collectively, as opposed to individually, should be set forth in

7 clear language, rather than derived from ambiguous language that does not refer specifically to

8 collective arbitration at all).

9    Sixth, to the extent Cintas' arbitration language is ambiguous concerning class or

10 collective procedures, that ambiguity must be resolved against Cintas as its drafter. Arbitration

11 clauses, like other contracts, are subject to the "common-law rule of contract interpretation that a

12 court should construe ambiguous language against the interest of the party that drafted it."

13 *Mastrobuono*, 514 U.S. at 62. "The reason for this rule is to protect the party who did not choose

14 the language from an unintended or unfair result." *Id.* This rule stems from the recognition that

15 "[w]here one party chooses the terms of a contract, he is likely to provide more carefully for the

16 protection of his own interests than for those of the other party," and to "have reason to know of

17 uncertainties of meaning." Restatement (Second) of Contracts, §206, cmt. a.[14]

18    In *Mastrobuono*, the question was whether plaintiffs waived their right to seek punitive

19 damages by agreeing to arbitrate any disputes that arose. Similarly, in this case the question is

20 whether claimants waived their equally important right to resolve statutory wage claims on a

21 representative (and thus far more efficient, less costly, and less burdensome) basis. Here, a

22 finding that claimants waived their right to arbitrate statutory wage claims collectively would set

23 up a process of adjudication that is wholly inconsistent with Judge Armstrong's prior rulings and

24

25    [14]   Indeed, corporate drafters might deliberately leave an arbitration clause silent on the

26 question of class arbitration precisely to "keep their options open" before arbitrators and courts.
To protect the unknowing employee from waiving important rights where such waiver is not

27 perfectly clear from the face of the corporation's arbitration clause, the arbitrator should construe
such silence against "the party who would most benefit from silence being found to preclude

28 class action arbitration." *Medina, supra*, at 5.

18

1   the public policies underlying claimants' statutory claims. As the Supreme Court recognized in

2   *Hoffman-LaRoche*, resolving statutory wage claims on a collective basis allows claimants to pool

3   their resources and litigate common questions of law and fact most efficiently. 493 U.S. at 170.

4   And here, Judge Armstrong already found that claimants are similarly situated with respect to

5   their claims against Cintas when she conditionally certified the federal case as an FLSA

6   collective action:

7           In sum, at this juncture there is enough of a nexus between plaintiffs and the
            individual SSRs for the Court to conditionally certify the class. The plaintiffs and
8           individual SSRs are proceeding on the same legal theory and have been subject to
            the same blanket policy by the same employer. None of the alleged differences
9           that Cintas raises at this juncture undermine that factual nexus. In fact, they
            strengthen it.

10

11  Goldsmith Decl., Exh. 14, Nov. 4, 2003 Order at 8; *see also id.*, Exh.17, May 25, 2004 Order at

12  1. Requiring some 1,800 claimants who have *already* been found to be similarly situated as a

13  matter of the law and facts to initiate hundreds of separate arbitrations would not only

14  exponentially increase claimants' expenses and eliminate the economies of scale inherent in

15  proceeding collectively, but it would also give rise to an extraordinarily high risk of inconsistent

16  adjudications on what are recognized to be common questions.

17          Fragmenting this arbitration into thousands of separate individual claims would be

18  inconsistent with the public policies favoring collective and class adjudication of common

19  statutory wage claims and, as a practical matter, would have the improper effect of insulating

20  Cintas from any consequences for its conduct. *See Ingle*, 328 F.3d at 1176 n.13 ("Denial of a

21  class action in cases where it is appropriate may have the effect of allowing an unscrupulous

22  wrongdoer to retain the benefits of its wrongful conduct. . . . [A]n arbitration agreement that

23  automatically eliminates the right to a class-wide proceeding would have the 'substantial' effect

24  of contravening the principles behind class action policies and 'chilling the effective protection

25  of interests common to a group.'") (citing *Keating v. Superior Court*, 31 Cal. 3d 584, 609

26

27

28

19

1 (1982)).[15] To allow Cintas to take advantage of ambiguity in its clauses that it has surely known

2 was there all along by construing the clauses to forbid class or collective arbitration would not

3 only "effect a deprivation of significant rights," *Cole, supra,* at 8, but would also undermine

4 enforcement of the laws and public policies at issue. Applying common principles of contract

5 interpretation, the Arbitrator should therefore conclude in this case, as in *Sidhu* and as is required

6 under the laws of every state at issue, that any ambiguity in Cintas' language must be construed

7 against the drafter, thus leading to the conclusion that Cintas' arbitration clauses do *not* forbid,

8 but instead permit, class and collective arbitration.[16]

9       Seventh, and finally, Cintas' arbitration clauses should be construed as permitting class

10 and collective arbitration because to construe them as prohibiting such arbitration would compel

11

---

12       [15]  Forcing claimants who have already been found similarly situated to arbitrate

13 individually would also be inconsistent with the common principle in FLSA collective actions
that each claimant need not prove liability or damages through individual testimony. The courts

14 have long permitted representative testimony in collective actions regarding an employer's
practices common to the group. *See, e.g., Anderson v. Mt. Clemens Pottery Co.,* 149 F.2d 461,

15 461 (6th Cir. 1945), *rev'd on other grounds,* 328 U.S. 680, 680 (1946) (eight of 200 employees

16 testified); *Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 66 (2d Cir. 1997)
(representative testimony of 2.5% of workers); *Bell v. Farmers Ins. Exch.,* 115 Cal. App. 4th 715,

17 722-23, 743-51 (2004) (representative testimony of 11% of workers).

18       [16]  *See, e.g., Badie v. Bank of America,* 67 Cal. App. 4th 779, 798, 801 (1998); *accord
BellSouth Comm. Sys., LLC v. West,* 902 So.2d 653, 657 (Ala. 2004); *Allstate Ins. Co. v. Avis*

19 *Rent-a-Car Sys.. Inc.,* 947 P.2d 341, 346 (Colo. 1997); *Cantonbury Heights Condominium Ass'n,*

20 *Inc. v. Local Land Development, LLC,* 873 A.2d 898, 904-05 (Conn. 2005); *City of Homestead v.
Johnson,* 760 So.2d 80, 84 (Fla. 2000); *Dowd & Dowd, Ltd. v. Gleason,* 693 N.E.2d 358, 368

21 (Ill. 1998); *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.,* 802 N.E.2d
901, 910 (Ind. 2004); *Southern Bell Tel. & Tel. Co. v. Chappelle,* 415 S.W.2d 826, 827 (Ky.

22 1967); *Truck Ins. Exch. v. Marks Rentals, Inc.,* 418 A.2d 1187, 1191 (Md. 1980); *Klapp v.

23 United Ins. Group Agency, Inc.,* 663 N.W.2d 447, 455 (Mich. 2003); *Trimble v. Pracna,* 176
S.W.3d 706, 714 (Mo. 2005); *Ringle v. Bruton,* 86 P.3d 1032, 1039 (Nev. 2004); *Benjamin*

24 *Moore Paint Co. v. Aetna Cas. & Sur. Co.,* 843 A.2d 1094. 1099 (N.J. 2004); *Computer Assocs.
v. U.S. Balloon Mfg. Co.,* 782 N.Y.S.2d 117, 119 (App. Div. 2004); *State v. Philip Morris USA*

25 *Inc.,* 618 S.E.2d 219, 225 n.14 (N.C. 2005); *Westfield Ins. Co. v. Galatis,* 797 N.E.2d 1256, 1262

26 (Ohio 2003). Many arbitrators have applied the construe-ambiguities-against-the-drafter rule in
determining clause construction. *See Sidhu, supra,* at 2; Goldsmith Decl., Exh. 10, *Jones and*

27 *Genus Credit Mgmt. Corp.,* AAA Case No. 11 181 0295 05 (Green 2005) ("*Jones*"); *id.,* Exh. 12,
*Olson, supra,* at 1, 4; *id.,* Exh.6, *Budner, supra,* at 8; *id.,* Exh. 7, *Cole, supra,* at 4; *id.,* Exh. 9,

28 *Goldstein, supra,* at 1.

20

1    the finding that they are unconscionable under the laws of many states. When the *Veliz* plaintiffs

2    called to the Court's attention that Cintas might assert that its clauses prohibited class or

3    collective arbitration, thus inviting a finding that the clauses were unconscionable, Cintas told the

4    Court that it did *not* contend that its clauses precluded all class arbitration. Reconsideration Opp.

5    at 17. By taking this position in court, Cintas both neatly sidestepped any finding that would

6    have invalidated its arbitration clauses and persuaded Judge Armstrong not to reach the question

7    of whether Cintas' arbitration clauses actually did forbid class or collective arbitration.

8         Now, however, Cintas can no longer defer a decision on the question of how its

9    arbitration clauses should be construed. An employer should no more be permitted to prohibit

10   class arbitrations implicitly than, under many states' laws, it can prohibit class arbitrations

11   explicitly.[17] "If an employer cannot write a provision precluding class arbitration and have it

12   enforced . . . , it is inconsistent to find that an Employer's silence on this subject could achieve a

13   different result." *Medina*, *supra*, at 6.

14        Nothing in Cintas' arbitration clauses prohibits class or collective arbitration, as Cintas

15   has conceded. Therefore, to avoid the otherwise inevitable conclusion that the arbitration clauses

16   are unconscionable under the laws of many of the relevant states, the Arbitrator should construe

17   Cintas' arbitration clauses, as it construed the clause in *Sidhu*, to permit this arbitration to

18   proceed on a class and collective basis.

19

20

21

22

23

---

24   [17] *See, e.g.*, *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005); *Ingle*, 328 F.3d at
     1176 (California law); *Leonard v. Terminix Int'l Co.*, 854 So. 2d 529 (Ala. 2002); *BellSouth*

25   *Mobility LLC v. Christopher*, 819 So. 2d 171 (Fla. App. 2002); *Kinkel v. Cingular Wireless,
     LLC*, 828 N.E.2d 812 (Ill. App. 2005), *appeal allowed*, 839 N.E.2d 1025 (Ill. 2005); *Lozada v.*

26   *Dale Baker Oldsmobile*, 91 F. Supp. 2d 1087, 1105 (W.D. Mich. 2000); *Whitney v. Alltel*

27   *Communications, Inc.*, 173 S.W.3d 300 (Mo. App. 2005); *Tillman v. Commercial Credit Loans*,
     2005 WL 2295111 (N.C. Super. 2005); *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161 (Ohio

28   App. 2004); *Luna v. Household Fin. Corp.*, 236 F. Supp. 2d 1166 (W.D. Wash. 2002).

                                              21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the Arbitrator should find that the 1996, 1999, 2001, 2002 and 2003 Cintas arbitration agreements permit this arbitration to proceed on a class or collective basis.

Dated: February 8, 2006

Respectfully submitted,

Michael Rubin
Scott A. Kronland
Eileen B. Goldsmith
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN

   /s/ Michael Rubin
Michael Rubin

177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151
Fax: 415/362-8064

*additional counsel on following page*

Attorneys for Claimants Paul Veliz *et al.*

Albert H. Meyerhoff, Esq.
LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
355 South Grand Avenue, Suite 4170
Los Angeles, California 90071
(213) 617-9007 - Office
(213) 617-9185 - Fax

Theresa M. Traber
Vanessa Eisemann
Jocelyn Sperling
TRABER & VOORHEES
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
(626) 585-9611 - Office
(626) 577-7079 - Fax

Nancy Juda, Esq.
LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
1100 Connecticut Ave., N.W., Suite 730
Washington, D.C. 20036
(202) 822-2024- Office
(202) 828-8528- Fax

Theodor J. Pintar
Steven W. Pepich
James A. Caputo
Lawrence A. Abel
Helen I. Zeldes
LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
401 B Street, Suite 1700
San Diego, California 92101-4297
(619) 231-1058 - Office
(619) 231-7423 - Fax

22

1

**CERTIFICATE OF SERVICE**

2

CASE:    Veliz et al. v. Cintas Corporation et al.

3

CASE NO.:   American Arbitration Association Case No. 11 160 01323 04

4

　　　I am employed in the City and County of San Francisco, California.  I am over the age of
eighteen years and not a party to the within action.  My business address is 177 Post Street, San
Francisco, California 94108.

5

6

　　　On February 9, 2006, I served the following document(s):

7

**CLAIMANTS' CLAUSE CONSTRUCTION OPENING BRIEF**

8

**DECLARATION OF EILEEN GOLDSMITH IN SUPPORT OF CLAIMANTS' CLAUSE
CONSTRUCTION OPENING BRIEF**

9

on the parties, through their attorneys of record, by sending true copies as shown below for
service as designated below:

10

11

<u>By Federal Express</u>:  I am readily familiar with the practice of Altshuler, Berzon for the
collection of overnight courier mail and I caused each such envelope to be delivered to Federal
Express Corporation at San Francisco, California, with whom we have a direct billing account, to
be delivered to the office of the addressee on the next business day.  I deposited this package at
the <u>Kearny Street</u> location.

12

13

14

**ADDRESSEE(S)**                      **PARTY REPRESENTED**

15

Mark C. Dosker                         Counsel for Defendant,
Michael W. Kelly                       Cintas Corporation, *et al.*
SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Third Floor
San Francisco, CA 94111-3492
Facsimile:  415.393.9887
Mdosker@SSD.com
Mkelly@ssd.com

16

17

18

19

20

　　　I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

21

22

　　　Executed on this February 9, 2006 at San Francisco, California.

23

24

_____/s/_____
Holly Miller

25

26

27

28

23

DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.    That on March 30, 2006, declarant served the DECLARATION OF MICHAEL RUBIN IN SUPPORT OF THE *VELIZ* PLAINTIFFS' MOTION TO TRANSFER AND CONSOLIDATE ACTIONS PURSUANT TO 28 U.S.C. §1407 by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    Pursuant to Rule 5.12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, copies will be filed in each district court in which an action is pending that will be affected by this motion.

4.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of March, 2006, at San Diego, California.

_____
CINDI J. LAMBERT

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 1 of 5

Counsel for Defendants

Theodore J. Pintar
Steven W. Pepich
James A. Caputo
Lawrence A. Abel
Helen I. Zeldes
**Lerach Coughlin Stoia Geller Rudman &**
**Robbins LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel: 619/231-1058
Fax: 619/231-7423

Nancy M. Juda
**Lerach Coughlin Stoia Geller Rudman &**
**Robbins LLP**
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC  20036
Tel:  202/822-6762
Fax: 202/828-8528

Theresa M. Traber
Vanessa H. Eisemann
Jocelyn S. Sperling
**Traber & Voorhees**
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Tel:  626/585-9611
Fax: 626/577-7079

Albert H. Meyerhoff
**Lerach Coughlin Stoia Geller Rudman &**
**Robbins LLP**
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Tel:  310/859-3100
Fax: 310/278-2148

Michael Rubin
Scott A. Kronland
Eileen Goldsmith
**Altshuler, Berzon, Nussbaum,**
**Rubin & Demain**
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
415/362-8064 (fax)

Counsel for Plaintiff Cintas Corporation

T. Joshua Archer
**Balch & Bingham LLP**
3535 Piedmont Road
14 Piedmont Center, Suite 1100
Atlanta, GA  30305
Tel: 404/261-6020

Brentley Tyler Cobb
Douglas Brian Kauffman
M. Jefferson Starling, III
**Balch & Bingham**
1710 6th Avenue North
PO Box 306
Birmingham, AL 35201-0306
205-251-8100
Fax: 266-8798

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 2 of 5

James H. Elliott
**Barnwell Whaley Patterson and Helms**
885 Island Park Drive
Charleston, SC 29492-0197
Tel: 843/577-7700
Fax: 843/577-7708


Dmitry Shifrin
Steven Russell Smith
William J. Wortel
**Bryan Cave LLP**
161 North Clark Street
Suite 4300
Chicago, IL 60601
312-602-5060

Charles B. Jellinek
**Bryan Cave LLP**
211 N. Broadway
Suite 3600
St. Louis, MO 63102-2750
314-259-2000
Fax: 314-259-2020


Todd D. Kilpatrick
**Coughlin, Gerhart Law Firm**
P.O. Box 2039
20 Hawley Street
Binghamton, NY 13902-2039
607-723-9511
Fax: 607-723-1530

Rodney R. Patula
**Graham & James**
One Maritime Plaza, 3rd Floor
San Francisco, CA  94111
Tel: 415/954-0200

Daniel W Glavin
Randall J Nye
rnye@bkslegal.com
**Beckman Kelly & Smith**
5920 Hohman Avenue
Hammond, IN 46320-2423
Tel: 219/933-6200
Fax: 219/933-6201

Elaine D. Koch
James D. Lawrence
**Bryan Cave LLP**
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2100
816-374-3200 x3235
Fax: 816-374-3300

Kevin Richard Tully
Howard Carter Marshall
Terry Christovich Gay
**Christovich & Kearney, LLP**
Pan American Life Center
601 Poydras St.
Suite 2300
New Orleans, LA 70130-6078
(504) 561-5700

Thomas D. Goldberg
**Day, Berry & Howard**
One Canterbury Green
Stamford, CT  06901-2047
Tel: 203/977-7383
Fax: 203/977-7301


C. Timothy Hopkins
Steven K. Brown
**Hopkins Roden Crockett Hansen & Hoopes**
P.O. Box 51219
Idaho Falls, ID  83405-1219
Tel: 208/523-4445
Fax: 203/523-4474

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 3 of 5

Beth L Steffan
Timothy D Kelly
**Kelly & Berens, PA**
80 S 8th St Ste 3720
Minneapolis, MN 55402
612-349-6171
Fax: 612-349-6416

Matthew M. Enenbach
Robert M. Slovek
**Kutak, Rock Law Firm**
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-6000
Fax: (402) 346-1148

Wayne John Positan
**Lum, Danzis, Drasco & Positan, LLC**
103 EISENHOWER PARKWAY
ROSELAND, NJ 07068-1049
(973) 403-9000

Jason A. Cincilla
**Morris, Nichols, Arsht & Tunnell**
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
Tel: 302/658-9200

Norman H. Kirshman
Robert L Rosenthal
**Parsons Behle & Latimer**
411 E. Bonneville
Suite 300
Las Vegas, NV 89101
702-384-3877
Fax: 702-599-6023

Douglas M. Todd
Thomas G. Wolfe
**Phillips McFall McCaffrey McVay & Murrah, PC**
One Leadership Square
211 N. Robinson
Twelfth Floor
Oklahoma City, OK 73102
(405) 235-4100

Stephen E Kravit
Sarah J Friday
John F Hovel
**Kravit Hovel Krawczyk & Leverson SC**
825 N Jefferson St - 5th Fl
Milwaukee, WI 53202
414-271-7100
Fax: 414-271-8135

Thomas Finarelli
Wayne A. Graver
**Lavin, O'Neil, Ricci, Cedrone & DiSipio**
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
Tel: 215/627-0303
Fax: 215/627-2551

Hugh Peterson, III
**McNatt, Greene & Peterson**
P.O. Drawer 1168
Vidalia, GA  30475-1168
Tel: 912/537-9343
Fax: 912/537-2658

Jay Eaton
**Nyemaster Goode Voigts West Hansell & O'Brien, PC**
700 Walnut
Suite 1600
Des Moines, IA 50309
515 283 3100
Fax: 283 8045

Damon J. Georgelas
Erik A. Christiansen
**Parsons Behle & Latimer**
201 S MAIN ST STE 1800
PO BOX 45898
SALT LAKE CITY, UT 84145-0898
(801)532-1234

Robert M Howie
Skylar A Sherwood
**Riddell Williams PS**
1001 Fourth Avenue
Suite 4500
Seattle, WA 98154
206-624-3600
Fax: 12063891708

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 4 of 5

Paul W. Chaiken
Phillip D. Buckley
**Rudman & Winchell**
84 Harlow Street
P.O. Box 1401
Bangor, ME 04401
(207) 947-4501

James K. Dorsett, III
Michael R. Gordon
**Smith Anderson Blount Dorsett Mitchell & Jernigan**
P.O. Box 2611
Raleigh, NC 27602-2611
919-821-1220
Fax: 821-6800

James Dean Thomas
Philip Oliss
Stacy D. Ballin
**Squire Sanders & Dempsey LLP**
4900 Key Tower
127 Public Sq.
Cleveland, OH 44114
(216) 479-8500

Carlotta Justine Roos
**Squire, Sanders & Dempsey LLP**
Wachovia Financial Center
200 S. Biscayne Blvd., Suite 4000
Miami, FL 33131-2398
Tel: 305/577-7000

Joseph A. Meckes
Mark C. Dosker
Michael W. Kelly
Sara Kathryn Regan
**Squire Sanders & Dempsey**
1 Martime Plaza, Suite 300
San Francisco, CA 94111-3492
Tel: 415/954-0200
Fax: 415/393-9887

Amanda T. Gamblin
David W. Axelrod
**Schwabe, Williamson & Wyatt PC**
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Or 97204
(503) 796-2903
Fax: (503) 796-2900

Pierre H. Bergeron
**Squire, Sanders & Dempsey**
312 Walnut Street
Suite 3500
Cincinnati, OH 45202-4036
513-361-1289

Steven Bradley Harris
Mark S Armstrong
**Squire Sanders & Dempsey**
600 Travis
6250 Chase Tower
Houston, TX 77002
713/546-5850
Fax: 17135465830

Jeffrey E. Storch
**Squire Sanders & Dempsey LLP**
350 Park Avenue
New York, NY 10022-6022
212-872-9800
Fax: 212-872-9815

John Anson Burlingame
**Squire Sanders and Dempsey LLP**
1201 Pennsylvania Ave NW Ste 500
PO Box 407
Washington, DC 20004-0407
Tel: 202/626-6600
Fax: 202/626-6780

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 5 of 5

Thomas W. Lyons, III
**Strauss, Factor, Laing & Lyons**
222 Richmond Street
Suite 208
Providence, RI 02903-2914
456-0700
Fax: 421-4730

Dudley Collier Graham, Jr.
Jeremy L. Birdsall
**Wise, Carter, Child & Caraway**
P. O. Box 651
Jackson, MS 39205-0651
(601) 968-5500

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In re CINTAS CORPORATION                )    MDL No. _____
ARBITRATION LITIGATION                  )
                                        )
_____

**REASONS WHY ORAL ARGUMENT SHOULD NOT BE HEARD**

Petitioners Paul Veliz, *et al.*, comprising 2,400 individual plaintiffs who filed or subsequently

joined a class and collective action in the U.S. District Court for the Northern District of California,

seek transfer and consolidation of 70 new district court actions filed this month against them by

Cintas Corporation ("Cintas"). Petitioners respectfully request that the Panel decide their Motion to

Transfer and Consolidate Actions Pursuant to 28 U.S.C. §1407, filed concurrently herewith, on an

expedited basis without oral argument. Oral argument is unnecessary in this matter, because the

issues are straight-forward and can be fully presented in the briefs. More importantly, oral argument

may cause undue delay, and a prompt resolution of the Petition is necessary to further the interests of

justice. Petitioners will be prejudiced by delay, because having to respond to 70 separate lawsuits

will require Petitioners to retain 70 sets of local counsel and file 70 sets of virtually identical motions

to dismiss, stay, or both. Further, the risk of inconsistent adjudication will be substantial if the

identical issues and arguments cannot promptly be resolved in a single proceeding.

DATED: March 30, 2006                    Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
THEODORE J. PINTAR
STEVEN W. PEPICH
JAMES A. CAPUTO
LAWRENCE A. ABEL
HELEN I. ZELDES

_____
            STEVEN W. PEPICH

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
ALBERT H. MEYERHOFF
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone:  310/859-3100
310/278-2148 (fax)

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
NANCY M. JUDA
1100 Connecticut Avenue, N.W., Suite 730
Washington, DC  20036
Telephone:  202/822-6762
202/828-8528 (fax)

ALTSHULER, BERZON, NUSSBAUM,
    RUBIN & DEMAIN
MICHAEL RUBIN
SCOTT A. KRONLAND
EILEEN B. GOLDSMITH
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
415/362-8064 (fax)

TRABER & VOORHEES
THERESA M. TRABER
VANESSA H. EISEMANN
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
626/577-7079 (fax)

Attorneys for Petitioner

S:\CasesSD\Cintas\BRF00029495.doc

<u>DECLARATION OF SERVICE BY MAIL</u>

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.    That on March 30, 2006, declarant served the    REASONS WHY ORAL ARGUMENT SHOULD NOT BE HEARD by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    Pursuant to Rule 5.12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, copies will be filed in each district court in which an action is pending that will be affected by this motion.

4.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 30th day of March, 2006, at San Diego, California.

_____
CINDI J. LAMBERT

Cintas MDL (MDL No. _____)
Service List -- 3/30/2006
Page 1 of 5

Counsel for Defendants

Theodore J. Pintar
Steven W. Pepich
James A. Caputo
Lawrence A. Abel
Helen I. Zeldes
**Lerach Coughlin Stoia Geller Rudman &**
**Robbins LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel: 619/231-1058
Fax: 619/231-7423

Nancy M. Juda
**Lerach Coughlin Stoia Geller Rudman &**
**Robbins LLP**
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC  20036
Tel: 202/822-6762
Fax: 202/828-8528

Theresa M. Traber
Vanessa H. Eisemann
Jocelyn S. Sperling
**Traber & Voorhees**
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Tel: 626/585-9611
Fax: 626/577-7079

Albert H. Meyerhoff
**Lerach Coughlin Stoia Geller Rudman &**
**Robbins LLP**
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Tel:  310/859-3100
Fax: 310/278-2148

Michael Rubin
Scott A. Kronland
Eileen Goldsmith
**Altshuler, Berzon, Nussbaum,**
**Rubin & Demain**
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
415/362-8064 (fax)

Counsel for Plaintiff Cintas Corporation

T. Joshua Archer
**Balch & Bingham LLP**
3535 Piedmont Road
14 Piedmont Center, Suite 1100
Atlanta, GA  30305
Tel: 404/261-6020

Brentley Tyler Cobb
Douglas Brian Kauffman
M. Jefferson Starling, III
**Balch & Bingham**
1710 6th Avenue North
PO Box 306
Birmingham, AL 35201-0306
205-251-8100
Fax: 266-8798

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 2 of 5

James H. Elliott
**Barnwell Whaley Patterson and Helms**
885 Island Park Drive
Charleston, SC 29492-0197
Tel: 843/577-7700
Fax: 843/577-7708

Dmitry Shifrin
Steven Russell Smith
William J. Wortel
**Bryan Cave LLP**
161 North Clark Street
Suite 4300
Chicago, IL 60601
312-602-5060

Charles B. Jellinek
**Bryan Cave LLP**
211 N. Broadway
Suite 3600
St. Louis, MO 63102-2750
314-259-2000
Fax: 314-259-2020

Todd D. Kilpatrick
**Coughlin, Gerhart Law Firm**
P.O. Box 2039
20 Hawley Street
Binghamton, NY 13902-2039
607-723-9511
Fax: 607-723-1530

Rodney R. Patula
**Graham & James**
One Maritime Plaza, 3rd Floor
San Francisco, CA 94111
Tel: 415/954-0200

Daniel W Glavin
Randall J Nye
rnye@bkslegal.com
**Beckman Kelly & Smith**
5920 Hohman Avenue
Hammond, IN 46320-2423
Tel: 219/933-6200
Fax: 219/933-6201

Elaine D. Koch
James D. Lawrence
**Bryan Cave LLP**
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2100
816-374-3200 x3235
Fax: 816-374-3300

Kevin Richard Tully
Howard Carter Marshall
Terry Christovich Gay
**Christovich & Kearney, LLP**
Pan American Life Center
601 Poydras St.
Suite 2300
New Orleans, LA 70130-6078
(504) 561-5700

Thomas D. Goldberg
**Day, Berry & Howard**
One Canterbury Green
Stamford, CT 06901-2047
Tel: 203/977-7383
Fax: 203/977-7301

C. Timothy Hopkins
Steven K. Brown
**Hopkins Roden Crockett Hansen & Hoopes**
P.O. Box 51219
Idaho Falls, ID 83405-1219
Tel: 208/523-4445
Fax: 203/523-4474

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 3 of 5

Beth L Steffan
Timothy D Kelly
**Kelly & Berens, PA**
80 S 8th St Ste 3720
Minneapolis, MN 55402
612-349-6171
Fax: 612-349-6416

Matthew M. Enenbach
Robert M. Slovek
**Kutak, Rock Law Firm**
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-6000
Fax: (402) 346-1148

Wayne John Positan
**Lum, Danzis, Drasco & Positan, LLC**
103 EISENHOWER PARKWAY
ROSELAND, NJ 07068-1049
(973) 403-9000

Jason A. Cincilla
**Morris, Nichols, Arsht & Tunnell**
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
Tel: 302/658-9200

Norman H. Kirshman
Robert L Rosenthal
**Parsons Behle & Latimer**
411 E. Bonneville
Suite 300
Las Vegas, NV 89101
702-384-3877
Fax: 702-599-6023

Douglas M. Todd
Thomas G. Wolfe
**Phillips McFall McCaffrey McVay & Murrah, PC**
One Leadership Square
211 N. Robinson
Twelfth Floor
Oklahoma City, OK 73102
(405) 235-4100

Stephen E Kravit
Sarah J Friday
John F Hovel
**Kravit Hovel Krawczyk & Leverson SC**
825 N Jefferson St - 5th Fl
Milwaukee, WI 53202
414-271-7100
Fax: 414-271-8135

Thomas Finarelli
Wayne A. Graver
**Lavin, O'Neil, Ricci, Cedrone & DiSipio**
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
Tel: 215/627-0303
Fax: 215/627-2551

Hugh Peterson, III
**McNatt, Greene & Peterson**
P.O. Drawer 1168
Vidalia, GA  30475-1168
Tel: 912/537-9343
Fax: 912/537-2658

Jay Eaton
**Nyemaster Goode Voigts West Hansell & O'Brien, PC**
700 Walnut
Suite 1600
Des Moines, IA 50309
515 283 3100
Fax: 283 8045

Damon J. Georgelas
Erik A. Christiansen
**Parsons Behle & Latimer**
201 S MAIN ST STE 1800
PO BOX 45898
SALT LAKE CITY, UT 84145-0898
(801)532-1234

Robert M Howie
Skylar A Sherwood
**Riddell Williams PS**
1001 Fourth Avenue
Suite 4500
Seattle, WA 98154
206-624-3600
Fax: 12063891708

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 4 of 5

Paul W. Chaiken
Phillip D. Buckley
**Rudman & Winchell**
84 Harlow Street
P.O. Box 1401
Bangor, ME 04401
(207) 947-4501

James K. Dorsett, III
Michael R. Gordon
**Smith Anderson Blount Dorsett Mitchell &
Jernigan**
P.O. Box 2611
Raleigh, NC 27602-2611
919-821-1220
Fax: 821-6800

James Dean Thomas
Philip Oliss
Stacy D. Ballin
**Squire Sanders & Dempsey LLP**
4900 Key Tower
127 Public Sq.
Cleveland, OH 44114
(216) 479-8500

Carlotta Justine Roos
**Squire, Sanders & Dempsey LLP**
Wachovia Financial Center
200 S. Biscayne Blvd., Suite 4000
Miami, FL 33131-2398
Tel: 305/577-7000

Joseph A. Meckes
Mark C. Dosker      –
Michael W. Kelly
Sara Kathryn Regan
**Squire Sanders & Dempsey**
1 Martime Plaza, Suite 300
San Francisco, CA 94111-3492
Tel: 415/954-0200
Fax: 415/393-9887

Amanda T. Gamblin
David W. Axelrod
**Schwabe, Williamson & Wyatt PC**
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Or 97204
(503) 796-2903
Fax: (503) 796-2900

Pierre H. Bergeron
**Squire, Sanders & Dempsey**
312 Walnut Street
Suite 3500
Cincinnati, OH 45202-4036
513-361-1289

Steven Bradley Harris
Mark S Armstrong
**Squire Sanders & Dempsey**
600 Travis
6250 Chase Tower
Houston, TX 77002
713/546-5850
Fax: 17135465830

Jeffrey E. Storch
**Squire Sanders & Dempsey LLP**
350 Park Avenue
New York, NY 10022-6022
212-872-9800
Fax: 212-872-9815

John Anson Burlingame
**Squire Sanders and Dempsey LLP**
1201 Pennsylvania Ave NW Ste 500
PO Box 407
Washington, DC 20004-0407
Tel: 202/626-6600
Fax: 202/626-6780

Cintas MDL (MDL No. _____)
Service List – 3/30/2006
Page 5 of 5

Thomas W. Lyons, III
**Strauss, Factor, Laing & Lyons**
222 Richmond Street
Suite 208
Providence, RI 02903-2914
456-0700
Fax: 421-4730

Dudley Collier Graham, Jr.
Jeremy L. Birdsall
**Wise, Carter, Child & Caraway**
P. O. Box 651
Jackson, MS 39205-0651
(601) 968-5500

C:\DOCUME~1\JENNIF~1\LOCALS~1\Temp\3.30.06 MDL Service List_1.doc

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re CINTAS CORPORATION ARBITRATION LITIGATION | ) ) ) | MDL No. _____ |

**_VELIZ_ PLAINTIFFS' EMERGENCY REQUEST TO EXPEDITE RESOLUTION OF TRANSFER MOTION UNDER 28 U.S.C. §1407**

I.    Introduction

On March 31, 2006, Petitioners Paul Veliz, *et al.* filed a motion with the Judicial Panel on Multidistrict Litigation seeking to have 70 recently-filed federal district court cases transferred to and consolidated with the class and collective action entitled *Paul Veliz, et al. v. Cintas Corporation*, No. 03-1180 SBA (the "*Veliz* Action") that has been pending in the Northern District of California since the spring of 2003.   Petitioners now request for expediting resolution of their transfer and consolidation motion to promote the interests of justice and to preserve the underlying issues for decision in the proper forum.[1]

1.    As Petitioners set forth in the motion filed on March 31, 2006, the case for transfer and consolidation is clear.  As explained below, the need for expedited action is urgent.  All 70 cases that Petitioners are asking the Panel to transfer and consolidate with the *Veliz* Action involve identical issues concerning Petitioners' legal and contractual right to participate in an ***existing*** arbitration pending in the Northern District of California.[2]  Significantly, Cintas filed these 70 new

---

[1]    Petitioners file this application to shorten time consistent with similar provisions under Rule of Procedure 6.2 of the Judicial Panel on Multidistrict Litigation, which allows the Panel to adjust the briefing schedule on a motion to transfer and consolidate under 29 U.S.C. §1407.  Rule 7.2(h) also permits the Panel to set an accelerated briefing schedule in appropriate circumstances.  Pursuant to Rule 16.1(b), Petitioners previously filed with their original motion a separate statement of Reasons Why Oral Argument Should Not Be Heard.  Should it be determined that oral argument will be heard in this matter, Petitioners respectfully request that any such oral argument be heard at the earliest date convenient to the Panel.

[2]    On May 4, 2004, the original 55 *Veliz* plaintiffs who were compelled to arbitrate under the *Veliz* Court's April 5, 2004 Order Compelling Arbitration initiated a class/collective arbitration of their overtime claims before the American Arbitration Association ("AAA"), under its Supplementary Rules for Class Arbitration.  *See* Arbitration Demand, AAA Case No. 11 160 01323 04.  Declaration of Michael Rubin in Support of the *Veliz* Plaintiffs' Motion to Transfer and Consolidate Actions Pursuant to 28 U.S.C. §1407 ("Rubin Decl."), Ex. 12.  In their arbitration demand, plaintiffs stated that they were proceeding on their own behalf and on behalf of all similarly-situated Cintas employees who were, or would be, required to arbitrate those claims pursuant to Judge Armstrong's analysis of the Cintas arbitration agreements.  In the summer of 2004, plaintiffs and Cintas jointly selected the Hon. Bruce Meyerson, a retired judge of the Arizona Court of Appeals, as the arbitrator.  Petitioners include over 1,880 individual plaintiffs who joined the *Veliz*

cases, seeking to compel Petitioners to arbitrate in 70 different judicial districts *after* Judge Saundra Brown Armstrong in the *Veliz* Action had already issued her rulings concerning the enforceability of the parties' arbitration agreements, *after* an arbitration had already been initiated before the American Arbitration Association ("AAA") following Judge Armstrong's ruling compelling the initial 55 plaintiffs to arbitrate their overtime claims in the *Veliz* Action, *after* an arbitrator had already been selected jointly with Cintas, and *after* Petitioners had already filed a "clause construction" motion with the arbitrator (seeking a ruling that the parties' arbitration agreements permit *all* arbitrating plaintiffs to pursue their class and collective overtime claims against Cintas in a single arbitration proceeding governed by the AAA's Supplementary Rules on Class Arbitration). Rubin Decl., Exs. 10-14. While Petitioners' clause construction motion was pending before the arbitrator in the Northern District, Cintas, on or about March 10, 2006, filed the 70 cases, naming as defendants the very same plaintiffs whose claims are proceeding in the *Veliz* Action[3] and who have joined in the existing arbitration, thereby seeking to have district courts in 70 newly-filed cases separately address the very issue already presently pending before the arbitrator – all in a blatant effort to disrupt and interfere with the arbitrator's ability to reach and decided the pending issues and to harass and intimidate plaintiffs. Cintas has begun serving the newly filed actions on Petitioners and the time for responding to these cases has started to run.

---

Action in order to challenge Cintas Corporation's failure to pay them overtime in violation of the Fair Labor Standards Act ("FLSA") and state laws, and its violations of ERISA. On the basis of Judge Armstrong's earlier ruling compelling the original 55 plaintiffs to arbitration and the parties' subsequent stipulation, an additional 47 plaintiffs were compelled to arbitrate under FAA §4 in the Northern District of California, 102 of the Petitioners are in arbitration pursuant to orders compelling them to arbitrate. The remaining Petitioners include 483 Cintas workers whose claims are all proceeding in court, and over 1,880 Cintas workers whose non-ERISA claims have been stayed pending arbitration under FAA §3.

[3]    All Petitioners' ERISA claims are continuing to be litigated in the *Veliz* Action, because those claims are not subject to arbitration under Cintas' employment agreements.

Not only does Cintas assert identical allegations in each of the 70 actions to compel arbitration, but the *Veliz* plaintiffs will assert identical arguments on motions to dismiss, strike, stay or abate those actions. The *Veliz* plaintiffs will also have to secure local counsel in dozens of courts to litigate these matters. There is a high risk of defaults and other procedural problems if these cases are not immediately consolidated. And without doubt, as this litigation expands exponentially, the risk of inconsistent rulings will be magnified and the efficient management of the *Veliz* Action will be destroyed. In order to halt Cintas' wasteful, duplicative and harassing litigation tactics, Petitioners move the Panel to expedite the schedule for resolving their motion to transfer so as to avoid a potential miscarriage of justice and so as to preserve the arbitrator's ability to decide the underlying issues.

## II.    Expedited Review Is Necessary to Prevent 70 New Cases From Pre-Empting Issues Properly Before an Already Existing Arbitration Proceeding

As noted above, the very same issues set for hearing before the agreed upon Arbitrator are also being presented in the 70 cases that Cintas has filed and which are the subject of Petitioners' motion for transfer and consolidation. Under the AAA's Supplementary Rules for Class Arbitration – which apply to the AAA proceedings in the pending arbitration before Arbitrator Meyerson – the first stage of the arbitration is the "clause construction" stage, at which time the arbitrator determines, "as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Supplementary Rules for Class Arbitration, Rule 3.[4]

---

[4]    The AAA Supplementary Rules for Class Arbitration provide for the arbitration to proceed in three phases: (1) clause construction; (2) class certification; and (3) adjudication of the merits. After the first and second phases, any party may seek to confirm or vacate the arbitrator's partial final award. After arbitration is completed on the merits, any party could, of course, petition a court to confirm or vacate the final arbitration award.

On February 9, 2006, the *Veliz* Arbitration claimants initiated the clause construction phase of the arbitration, on their own behalf and on behalf of all similarly-situated current and former Cintas employees, by filing a motion and a brief setting forth the reasons why the Cintas arbitration agreements permit the arbitration to proceed on a class and collective basis.[5]  In their clause construction brief, the *Veliz* Arbitration claimants demonstrated why ***all*** opt-in plaintiffs in the *Veliz* Action who have arbitrable overtime claims are lawfully and contractually entitled to participate in the *Veliz* Arbitration. The *Veliz* Arbitration claimants sought to have this issue resolved quickly, but Cintas protested that it needed an extended briefing schedule to address this matter and asked that its opposition to this clause construction motion not be due until April 7, 2006. *See* Mark Dosker's February 17, 2006 e-mail from Mark Dosker, counsel for Cintas, to Arbitrator Bruce Meyerson (attached hereto as Ex. A).  After a telephonic conference with the Arbitrator, Cintas was given until April 7, 2006 to file any cross motion regarding clause construction; the parties' oppositions to pending motions are due April 28, 2006, and the hearing date is set for May 9, 2006. *See* March 2, 2006 e-mail schedule from Arbitrator Bruce Meyerson (attached hereto as Ex. B).

Rather than prepare its response in connection with the clause construction briefing in arbitration, Cintas prepared and filed the 70 federal cases in an effort to sabotage Petitioners' right to have Arbitrator Meyerson address this issue and to have their claims resolved in pending collective/class action arbitration. By filing these 70 cases, Cintas wants these federal courts to compel arbitration in the local districts before Arbitrator Meyerson has a chance to hear and resolve the question of whether Petitioners' claims can be arbitrated in pending arbitration in the Northern District of California. Petitioners submit that expedited resolution of their motion to transfer and

---

[5]      Claimants also pointed out that, technically, the AAA Rules do not even require this procedure for "collective" actions under the FLSA; and we further note that Judge Armstrong has already provisionally certified *Veliz* as an FLSA collective action under 29 U.S.C. §216(b).

consolidate is warranted in order to prevent Cintas from utilizing the 70 federal court cases to moot

and interfere with the issues pending decision in the already agreed upon arbitration.

## III. Expedited Resolution Is Needed to Avoid Wasteful, Duplicative Actions Conflicting With the Primary Action

By filing 70 identical cases, Cintas is initiating frivolous and wasteful duplicative litigation.[6]

Moreover, Cintas' end-run around the already-commenced arbitration proceedings before the

agreed-upon arbitrator in the Northern District of California is not only a transparent attempt to

harass and intimidate plaintiffs and astronomically drive up costs of litigation, but is also in direct

contravention of the law. It is well-settled that an action to compel arbitration under the FAA

accrues *only* when a respondent unequivocally refuses to arbitrate. *Kim v. Colorall Technologies,*

*Inc.*, No. C-00-1959-VRW, 2000 U.S. Dist. LEXIS 12321, at *2 (N.D. Cal. Aug. 18, 2000) ("The

Ninth Circuit has held that a prerequisite to accrual of a cause of action under section 4 of the

Federal Arbitration Act is a respondent's unequivocal refusal to arbitrate."); *PaineWebber Inc. v.*

*Faragalli*, 61 F.3d 1063, 1065 (3d Cir. 1995) (same); *Broadcort Capital Corp. v. Dutcher*, 859 F.

Supp. 1517, 1520 (S.D.N.Y. 1994) (where party agrees to arbitrate in one venue opposing party is

not "aggrieved" for purposes of §4 because that party will not arbitrate in a different venue); *Aaacon*

*Auto Transport, Inc. v. Barnes*, 603 F. Supp. 1347, 1349 (S.D.N.Y. 1985) (a party must be

---

[6]     Each of the Arbitration Actions involves identical allegations by Cintas against the defendants, who are plaintiffs in the *Veliz* Action and claimants in the *Veliz* Arbitration. In each of the Arbitration Actions, Cintas makes the same allegation that the employees are violating their arbitration agreements with Cintas by arbitrating collectively before Arbitrator Meyerson in San Francisco, and Cintas seeks in each action to require those employees to arbitrate their FLSA and state-law overtime claims – *i.e.*, the claims those same individuals assert against Cintas in the *Veliz* Action and *Veliz* Arbitration – in the judicial district in which each Arbitration Action has been filed. Thus, each of the 70 Arbitration Actions will require a district court to construe the identical contract language in the Cintas arbitration clauses to determine whether the defendants before that court are refusing to arbitrate within the meaning of FAA §4. Coordination or consolidation of these actions is thus necessary to prevent inconsistent interpretations of these standardized contracts. *See, e.g., In re PrimeVision Health, Inc. Contract Litig.*, 206 F. Supp. 2d 1369, 1370 (JPML 2002); *In re Shell Oil Prods. Co. Dealer Franchise Litig.*, 206 F. Supp. 2d 1373, 1374 (JPML 2002).

"aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" before §4 is invoked); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*, 812 F. Supp 1217 (M.D. Fla. 1993) (suit challenging arbitration forum, not arbitration itself, did not constitute refusal under §4); *Scan-Graphics, Inc. v. Photomatrix Corp.*, No. 91-4402, 1991 U.S. Dist. LEXIS 18868, *5-*7 (E.D. Pa. Dec. 31, 1991) (where party has not refused to arbitrate – in fact has agreed to proceed with arbitration in one state – but merely fails to agree with an opposing party on the choice of the arbitration venue, the opposing party is not aggrieved under §4 and cannot compel arbitration elsewhere); *Dr. Pepper Bottling Company of Texas, Inc. v. Presidential Life Ins. Co.*, No. 3-01-CV-2168-R, at *11-*12, U.S. Dist. LEXIS 4196 (N.D. Tex. Mar. 11, 2002) (where party has not failed or refused to arbitrate a party is not " aggrieved" within the meaning of §4).

Thus, Cintas' 70 federal court actions seeking to compel arbitration are all subject to the same fundamental defects, because the *Veliz* plaintiffs ***have*** agreed to arbitrate, and are actively seeking to arbitrate, in an ongoing AAA arbitration in the Northern District of California.[7]    To

---

[7]    Cintas engages in transparent forum shopping that undermines the very purpose of arbitration. *In Shearson Lehman Brothers, Inc. v. Brady*, 783 F. Supp. 1490 (D. Mass. 1991), the court found that a party's desire to have the "situs" of arbitration decided in court posed a potential forum shopping problem which was at odds "with quick and final resolution of the underlying dispute by arbitration." The policy behind referring matters to arbitration is to streamline litigation by reducing costs and delay. *Id.* at 1497. Further, Cintas' action undermines the very purpose of its arbitration clauses. "The inherent risks of cost and delay before arbitration could commence, should a trial court undertake to decide, subject to appeal to higher courts, disputes concerning where an application must be filed and where the arbitration must be held, are fundamentally inconsistent with the parties' agreement to resolve their disputes by arbitration." Cintas' filing of no less than 70 separate motions to compel arbitration all across the country completely undermines the letter and spirit of the arbitration clauses it seeks to invoke. Furthermore, the 70 courts across the country that Cintas appeals to are without jurisdiction to decide the terms of the "situs" clause of the arbitration agreements at issue because that responsibility lies within the sole discretion of the parties mutually selected arbitrator, the Hon. Bruce Meyerson. *Shearson*, 783 F. Supp. at 1497; *Richard C. Young & Co. v. Leventhal*, 389 F.3d 1, 4-5 (1st Cir. 2004) ("The dispute between the parties in this case over the location of the arbitration raises not a question of arbitrability but a procedural question and is therefore for the arbitrator, not the court. . . . We conclude that the District Court lacked the power to interpret the forum selection clause.").

litigate the Arbitration Actions, the *Veliz* plaintiffs will have to retain dozens of local counsel and incur substantial costs in filing identical papers in dozens of district courts. The federal court system similarly will incur substantial expense in adjudicating these identical proceedings. Unless these cases are transferred and consolidated, Petitioners will have to file 70 identical motions in 70 different cases just to address the global issue of whether Cintas is misusing these cases in a baseless effort to avoid a decision in the pending arbitration.

This issue should be decided in a uniform manner by having these 70 separate cases transferred and centralized in a single proceeding and an expedited hearing is needed to avoid the threat of inconsistent rulings. Unless Petitioners receive an expedited ruling from the Panel, however, the time for Petitioners to respond to these cases will have already occurred before the Panel rules on this issue. Without an expedited hearing, there will be exponentially higher costs and unjustified, duplicative burdens placed on Petitioners.

## IV.    Expedited Resolution of Transfer and Consolidation Will Prevent Grave Prejudice to Plaintiffs

In addition to the added costs and burdens on the 70 district courts, as well as the extreme expense and other burdens on Petitioners, there is little or no way to control these divergent cases absent expedited hearing on the transfer and consolidation issue. Indeed, Petitioners' counsel has been attempting to have Cintas' counsel provide them information regarding the service of the 70 new cases, so that they can calendar response dates and thereby better act to protect the interests of the Petitioners in this MDL proceeding, in the *Veliz* Action, in the existing arbitration, and potentially in the 70 district court cases. However, Cintas' counsel has been refusing to provide Petitioners' counsel with even this most basic information regarding service of summons and related matters. *See* Ex. C hereto; Rubin Decl., ¶¶6-10.

As a result, Petitioners' counsel are presently unable to fully evaluate the situation and are prevented from knowing with certainty when individual Petitioners were served the complaint and

summons in the 70 court actions, and therefore, when responsive or other pleadings are due. Indeed, it appears that many Petitioners have already been served and that the time is running for them to respond. Thus, expedited resolution of transfer and consolidation is needed in order to gain control over this situation before default judgments or other coordination problems begin to arise in the 70 duplicative cases.

DATED: March 31, 2006                    Respectfully submitted,

                                         LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                         THEODORE J. PINTAR
                                         STEVEN W. PEPICH
                                         JAMES A. CAPUTO
                                         LAWRENCE A. ABEL
                                         HELEN I. ZELDES


                                         _____
                                                 STEVEN W. PEPICH

                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)

                                         LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                         ALBERT H. MEYERHOFF
                                         9601 Wilshire Blvd., Suite 510
                                         Los Angeles, CA  90210
                                         Telephone:  310/859-3100
                                         310/278-2148 (fax)

                                         LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                         NANCY M. JUDA
                                         1100 Connecticut Avenue, N.W., Suite 730
                                         Washington, DC  20036
                                         Telephone:  202/822-6762
                                         202/828-8528 (fax)

ALTSHULER, BERZON, NUSSBAUM,
  RUBIN & DEMAIN
MICHAEL RUBIN
SCOTT A. KRONLAND
EILEEN B. GOLDSMITH
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
415/362-8064 (fax)

TRABER & VOORHEES
THERESA M. TRABER
VANESSA H. EISEMANN
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Telephone:  626/585-9611
626/577-7079 (fax)

Attorneys for Petitioners

S:\CasesSD\Cintas\APP00029504.doc

EXHIBIT A

**From:**      "Dosker, Mark C." <MDosker@SSD.com>
**To:**         <brucemeyerson@msn.com>, <TaylorK@adr.org>
**Date:**      2/17/2006 6:01:59 PM
**Subject:**  RE: Veliz v. Cintas, AAA 11 160 01323 04

To Arbitrator Bruce Meyerson:

Dear Bruce:

As I offered and promised, I am writing regarding the date for Cintas' response to Claimants' recent clause construction motion.

I have tried to reach agreement with Claimants' counsel Michael Rubin, in a total of five communications by e-mail and phone, but that has not proven possible.  Please see the chain of communications below, reading up from the bottom in chronological order.

Cintas proposes and requests that it have until April 7th within which to respond to Claimants' motion as I have more fully set forth below.  And although it would be tight, if you think it is somehow essential to move it up a week, Cintas is reluctantly willing to have the deadline be set at March 31st.

As per your prior authorization, Respondent did not start scheduling a response date until after receiving Judge Armstrong's Order a couple of days ago.  And due to long-prearranged travel commitments on the Presidents' Day legal holiday weekend and the remainder of next week, as summarized in my e-mail below to Claimants' counsel, this coming week is such that we will not really be able to start working on our opposition until the week of February 27th as I explained in my opening e-mail below.  So any amount of time to prepare our opposition should run from then, I would submit.

The April 7th date (or if you decide March 31st date) that I note above is necessary for our opposition, regardless whether or not we decide to recommend to Cintas that it make, and regardless whether or not Cintas decides to make, its own clause construction motion.  But I have voluntarily noted to Claimants' counsel (see e-mails below) that that is something under serious consideration.  As the Respondent and co-equal party in this arbitration, Cintas has a right in arbitration to make its own motion so framed in jurisdiction and scope for a clause construction award (with the accompanying right to seek Court review of that motion so framed in jurisdiction and scope) if Cintas decides it needs to do so.  I could have just waited until I reach a recommendation to my client on that subject and then my client reaches a decision on that subject and then I could have just filed Cintas' motion at the same time as Cintas' opposition to Claimants' motion.  But as a courtesy, I raised the possibility of it up front in my opening communication about scheduling (see e-mails below).

What I am not willing to do, however, is to agree to the condition that Claimants' counsel seeks to put in place per his final communication in the e-mail immediately below this one:  that Cintas abandon that right to make a motion of its own for a clause construction award. This is especially so in that Claimants' counsel seeks to extract that in order for Cintas to get a bare-bones amount of time in a context where Claimants took the same - or probably more than the same -- amount of time (6 weeks or more) to prepare their motion as the amount of time Cintas needs for opposition to it.  I also note that Claimants' counsel - even with and as part of the condition they seek to impose - want 3 weeks to reply even if Cintas only has 4 weeks to oppose.

Cintas respectfully requests and proposes that you set the following schedule:

April 7th (or March 31st if you so decide) - Cintas' opposition to Veliz's clause construction motion; and Cintas' clause construction motion (if any presently)

April 28th - Veliz's reply on clause construction motion; and Veliz's
opposition to Cintas' clause construction motion (if one is made by Cintas on
April 7th)



**EXHIBIT A**

Case 3:06-cv-00164-J-JMA     Document 10-11     Filed 04/04/2006     Page 13 of 34

May 19th - Cintas' reply on its clause construction motion (if one is made by
Cintas on April 7th)

Hearing - to be determined, based on availability of the Arbitrator, availability of the parties' counsel, and
whether there is a clause construction motion by Cintas brought on April 7th.

As I offered to Claimants' counsel, the April 28th dates and May 19th dates could be pushed later if
Claimants' counsel or you want (although I'll be overseas the week of May 23rd).

* * * * * * * *

Please set these dates so we can proceed.  Thank you.

Very truly yours,

Mark

Mark C. Dosker

---------

From: Michael Rubin [mailto:mrubin@altshulerberzon.com]
Sent: Fri 2/17/2006 3:57 PM
To: Dosker, Mark C.
Cc: Eileen Goldsmith; spepich@lerachlaw.com; tmt@tvlegal.com; Kelly, Michael W.
Subject: RE: Veliz v. Cintas, AAA 11 160 01323 04

We will agree to let Cintas have until March 31, 2006 to respond to
claimants' Clause Construction Motion, based on your representation that
you need that much time to prepare your response, on the conditions
that: 1) Cintas not file any other motion in the arbitration before
March 31 (because presumably you need the time to prepare the
opposition, not to file something new); and 2)  claimants will have
until April 21, 2006 to file our reply.  If these conditions are
acceptable, you are welcome to represent to the arbitrator that we have
agreed to a March 31/April 21 briefing schedule.

-----Original Message-----
From: Dosker, Mark C. [mailto:MDosker@SSD.com]
Sent: Friday, February 17, 2006 12:10 PM
To: Michael Rubin
Cc: Eileen Goldsmith; spepich@lerachlaw.com; tmt@tvlegal.com; Kelly,
Michael W.
Subject: RE: Veliz v. Cintas, AAA 11 160 01323 04

Dear Michael:

Just to be clear -- I explained to you in my e-mail yesterday and again
in our call this morning that we need until April 7th to submit our
opposition regardless whether or not Cintas ultimately chooses to make
its own clause construction motion.  And that date is completely

appropriate in view of the context as I noted in my e-mail yesterday to you.

It seems you are not willing to agree to us having the same amount of time to respond to your motion as you took to write it.

With these further comments in mind, will you now agree to April 7th as the date for our opposition to your motion?

If you refuse, I might be able to squeeze it out by March 31st -- but anything sooner than that is not practical.

Please let me know by as early this afternoon as possible whether you will agree to March 31st (or preferably April 7th) as the date for Cintas' opposition to your motion.

Very truly yours,

Mark

Mark C. Dosker


P.S. -- as always, any silence here as to other parts of your e-mail below is not agreement in it or acquiescence in it.


-----Original Message-----
From: Michael Rubin [mailto:mrubin@altshulerberzon.com]
Sent: Friday, February 17, 2006 11:53 AM
To: Dosker, Mark C.
Cc: Eileen Goldsmith; spepich@lerachlaw.com; tmt@tvlegal.com; Kelly, Michael W.
Subject: RE: Veliz v. Cintas, AAA 11 160 01323 04

Mark:

When we spoke earlier this morning to discuss your email, and particularly Cintas' request for an extended briefing schedule in order to prepare a second clause construction motion, you were unable to provide any information about that second motion. You would not say what issues it would raise, why it was necessary or appropriate, or why Cintas' arguments could not adequately be covered in its opposition to the pending motion. You explained that Cintas' purpose was not simply to get another round of briefing or to further delay these proceedings, but you said that you could not give claimants any information at all about the intended substance or purpose of the second motion, except that you believe that Cintas has a right to file such a motion and to have the arbitration proceedings stayed for 30 days or more while Judge Armstrong considers any motion to confirm or vacate an award resulting from that motion.

Under these circumstances, claimants do not agree that Cintas should be permitted to delay these proceedings further by filing a second clause

construction motion. Rule 3 of the AAA's Supplementary Class Action
Rules states: "Upon appointment, the arbitrator shall determine as a
threshold matter, in a reasoned, partial final award on the construction
of the arbitration clause, whether the applicable arbitration clause
permits the arbitration to proceed on behalf of or against a class (the
"Clause Construction Award")." That issue has now been formally
presented to the arbitrator for decision. Cintas has the opportunity to
make its views known to the arbitrator, by responding to claimants'
brief. While we recognize that this arbitration will likely raise many
different issues before a final award issues, the scope of a Clause
Construction Award is narrowly and precisely defined under the rules.
We are not willing to expand the issues beyond the single issue set
forth in Rule 3, which is the issue we analyzed in our opening brief.

Given that we will not agree to Cintas filing a second Clause
Construction motion, we also see no need to extend until May 2006 the
briefing on the relatively straightforward motion that we filed. Under
the usual rules governing court actions, a party opposing a motion has
between 15 and 21 days to respond to the moving party. Given the
scheduling issues you raise in your email, we propose that Cintas should
have 30 days to respond to our February 9, 2006 motion, and that
claimants should then have 15 days to reply. As always, if good cause
exists for an extension as those deadlines approach, we would be
accommodating, as we would expect you to be. But we do not see any
reason, based on your email, to agree to an initial 60-day response
period to what is, after all, a straightforward motion that the parties
have been discussing and expecting for several years.

We are available to discuss these matters with the arbitrator today
before you leave, or Monday, if you and the arbitrator are available
then.

-----Original Message-----
From: Dosker, Mark C. [mailto:MDosker@SSD.com]
Sent: Thursday, February 16, 2006 8:00 PM
To: Michael Rubin
Cc: Eileen Goldsmith; spepich@lerachlaw.com; tmt@tvlegal.com; Kelly,
Michael W.
Subject: RE: Veliz v. Cintas, AAA 11 160 01323 04

Dear Michael:

I am writing to propose some dates. Cintas is seriously considering
making its own motion for a clause construction award. And whether it
does or not, realistically, the date for our opposition to your pending
clause construction motion will need to be at least April 7th.

As approved in advance by Arbitrator Meyerson, we awaited Judge
Armstrong's Order - which came out two days ago. As it happens, I (and
all our team on this case) will be out of the office virtually all of
next week due to a combination of the Presidents' Day holiday and a long
pre-scheduled firmwide meeting on the East Coast. So we're not really
going to get a start on your motion until the following week of February
27th. Even taking from then the same amount of time you took from the
January 2nd teleconference to when you filed your motion would put us at
about April 7th. Taking the same amount of time from when you announced

your desire to make your motion (by which you had presumably started working on it) would be some weeks longer into late April or early May. And of course you have probably been thinking about your motion since at least the October hearings before Judge Armstrong. But by definition, we couldn't start evaluating your motion until after we got it.

Anyway, with that context in mind, I propose the following dates:

April 7th - Cintas' opposition to Veliz's clause construction motion; and Cintas' clause construction motion (if any presently)

April 28th - Veliz's reply on clause construction motion; and Veliz's opposition to Cintas' clause construction motion (if made by Cintas on April 7th)

May 19th - Cintas' reply on its clause construction motion (if made by Cintas on April 7th)

Hearing - to be determined, based on availability of Arbitrator Meyerson, availability of the parties' counsel, and whether there is a clause construction motion by Cintas brought on April 7th.


The April 28th dates and May 19th dates could be pushed later if you want (although I'll be overseas the week of May 23rd). But I thought these might work.

Please get back to me on Friday. Thanks.

Very truly yours,

Mark

Mark C. Dosker


-----Original Message-----
From: Bruce Meyerson [mailto:brucemeyerson@msn.com]
Sent: Tuesday, February 14, 2006 3:40 PM
To: Dosker, Mark C.; mrubin@altshulerberzon.com; TaylorK@adr.org
Cc: egoldsmith@altshulerberzon.com; spepich@lerachlaw.com;
tmt@tvlegal.com; Kelly, Michael W.
Subject: RE: Veliz v. Cintas, AAA 11 160 01323 04

Thanks, Mark. Hopefully, someone will forward a copy to me. I would encouage you to consult with Mike regarding not only the timing of your response but his reply as well. Thanks.Bruce.


CC:          "Eileen Goldsmith" <egoldsmith@altshulerberzon.com>, <spepich@lerachlaw.com>,
<tmt@tvlegal.com>, "Kelly, Michael W." <MKelly@ssd.com>, <mrubin@altshulerberzon.com>

EXHIBIT B

**From:**      "Bruce Meyerson" <brucemeyerson@msn.com>
**To:**         "Ellen Goldsmith" <egoldsmith@altshulerberzon.com>, "Joseph A. Meckes"
<jmeckes@ssd.com>, "M. Kelly" <mkelly@ssd.com>, "Mark Dosker" <mdosker@ssd.com>, "Michael
Rubin" <mrubin@altshulerberzon.com>, "S. Pepich" <spepich@lerachlaw.com>, "Theresa Traber"
<tmt@tvlegal.com>
**Date:**      3/2/2006 3:40:25 AM
**Subject:**   Veliz Arbitration

I am confirming our call of yesterday.  We agreed to the following:


1.      We will proceed with the briefing on the clause construction issue
as follows.  By April 7 Cintas will either file (1) its own motion regarding
clause construction, or (2) a response to Claimant's motion.  If Cintas
files its own motion, the parties will have up to April 28 in which to file
simultaneous response memoranda.  If Cintas files a response to Claimant's
motion, then Claimant may file a reply memorandum up to and including April
28.
2.      We will hold telephonic oral argument on the clause construction
issue on May 9 at 9:00 a.m. Pacific Time.
3.      Should Claimant desire to file an amended claim, it may seek leave
with the Arbitrator to do so through the filing of an appropriate motion.


Please let me know if I have omitted anything.  Bruce Meyerson.



Bruce Meyerson

Bruce Meyerson

722 East Osborn Road, Suite 100

Phoenix, Arizona  85014

602-277-4585

602-248-2999 (Facsimile)

brucemeyerson@msn.com



**CC:**       "Kelly Taylor" <taylork@adr.org>


# EXHIBIT B

EXHIBIT  C

| | |
|---|---|
| **From:** | "Dosker, Mark C." <MDosker@SSD.com> |
| **To:** | "Michael Rubin" <mrubin@altshulerberzon.com> |
| **Date:** | 3/30/2006 6:54:43 PM |
| **Subject:** | RE: Cintas Petition cases |

Dear Michael:

You know very well, both generally and specifically from our prior exchanges, that the point is whom you represent in what.

You represent in Veliz et al v. Cintas, Case No. 03-01180-SBA (N.D. Cal.)("the Veliz action"), those persons who are opt-in plaintiffs in that lawsuit. Other than that, please see my prior responses to your prior e-mails.

Also, I remind you that Judge Armstrong long ago ruled in the Veliz action that "In Kuehner v. Dickinson & Co., 84 F.3d 316, 320 (9th Cir. 1996), the Ninth Circuit held that when an employee agrees to arbitrate, she forfeits any procedural rights arising from the FLSA, while retaining her substantive rights (e.g., the right to obtain substantive relief) in arbitration." Docket No. 426 at page 6.

In your e-mail below you are repeating yourself.  Accordingly, I refer you back to my prior answers to the same questions you have previously asked and I have previously answered.

I also observe that late yesterday afternoon, you carried out an inappropriate tactic just as I predicted -- in my e-mail to you yesterday afternoon -- that you would. This time, however, you did it in front of Arbitrator Meyerson instead of Judge Armstrong. Like Judge Armstrong did previously, yesterday evening Arbitrator Meyerson stopped you.

Silence here as to any other parts of your e-mail below is neither agreement with them, nor acquiescence in them.

Very truly yours,

Mark

Mark C. Dosker

———

From: Michael Rubin [mailto:mrubin@altshulerberzon.com]
Sent: Thursday, March 30, 2006 4:18 PM
To: Dosker, Mark C.
Cc: spepich@lerachlaw.com; jimc@lerachlaw.com; Theresa Traber; Eileen Goldsmith
Subject: RE: Cintas Petition cases

Dear Mark:

# EXHIBIT C

In response to your question, yes, of course we represent the individuals whom Cintas has recently sued. Each of those individuals is a Veliz plaintiff. Each of those Veliz plaintiffs filed an individual consent to sue in the federal court litigation, and received a court-approved notice informing them that upon filing a Consent to Sue their claims would proceed in litigation, in arbitration, or both, with plaintiffs' counsel as their attorneys. In fact, we understand that your law firm has been informing individuals who call the local telephone number on your pleadings to ask why they have been sued, that they should contact our offices in California because we are their attorneys.

Whether or not you agree that the Veliz plaintiffs are our clients, however, we do not understand how you can possibly justify your continued refusal to extend the common professional courtesy of providing us with the basic facts and documents concerning your lawsuits against those individuals. We repeat the simple request that we have made twice before. Please tell us which of the Veliz plaintiffs you have sued, in which courts, on which dates, and whether you served them by mail or by personal service. Please also give us courtesy copies of the pleadings that you filed in those matters.

Thank you.

Michael Rubin

––––––

From: Dosker, Mark C. [mailto:MDosker@SSD.com]
Sent: Wednesday, March 29, 2006 5:06 PM
To: Michael Rubin
Cc: jimc@lerachlaw.com; Eileen Goldsmith; spepich@lerachlaw.com; Theresa Traber; Meckes, Joseph A.; Kelly, Michael W.
Subject: RE: Cintas Petition cases

Dear Michael:

I am writing in response to your e-mail late Monday afternoon. Please see again my response to you by e-mail earlier Monday afternoon. Since you have not told us that you represent any of the Respondents in the Petition cases, when we asked you that as we did on Monday afternoon, we can only assume that you do not represent any of the Respondents in those cases.

I add a few further observations here, for important context.

You have a long history of tactics in the Veliz action of attempting various kinds of motions to try and avoid the effect of the enforceable

agreements into which the relevant persons entered. Judge Armstrong was
very specific in her statements on the record at the most recent
hearings in the Veliz action, and adopted them as part of her February
14, 2006 Order. Those statements by the Court included that: the
arguments you made on such motion in the Veliz action were without any
basis in fact or law and that you had no statutory or case authorities
or even factual support for your motion, and that you had no answer - as
to why you were disregarding what each of the relevant persons had
agreed to in his or her enforceable arbitration agreement -- other than
the strategic desire of yours to have all such persons in one location.
[See, e.g., Docket No. 512 at 14:15-19, 16:15-17, 97:9-17; and Docket No
518 at 4:3-14, 7:5-10 and 25:2-28:24].

We also note that you (or at least your co-counsel at the Lerach firm)
have been continuously stating to the public -- since very shortly after
we first told you about the Petition cases -- that the Petitions "are
legally baseless and procedurally improper".  Incredibly, that
statement comes after not only Judge Armstrong's rulings as noted above,
but also after your own previous submissions to the Court stating that
Cintas could bring such petitions if the Court ruled as the Court has
subsequently in fact ruled.

Now, after we have given you -- as a courtesy -- all the information
that we have given you about the Petition cases both last week and
earlier this week, and after we given you - as a courtesy -- the text of
all the substantive papers in the Petition cases and we have told you -
as a courtesy -- that you have (and long have had) the substantive
exhibits to those papers, you are asking again for us to prepare and
give you "courtesy" separate copy sets of all the papers in each of the
separate Petition cases.

Under all the circumstances and context, only some of which are touched
on here, we can think of no reason for your renewed request other than
that you are likely trying to expedite some effort to attempt some new
inappropriate tactic and because in doing so you do not want to invest
the effort needed to pull records from the public files of the courts.

All that said, however, the offer I made in my e-mail earlier Monday
afternoon still stands.

And lastly, please note that it is not "obviously" (your word below) so
that you represent any persons in arbitration proceedings before the
Honorable Bruce Meyerson just because such persons filed a
Consent-to-Sue form in the Veliz action. To the contrary, neither the
Consent-to-Sue forms in the Veliz action nor the underlying facilitated
notice Order in the Veliz action nor the FLSA so provides, and on this

point the California Business and Professions Code is the law.


Very truly yours,


Mark


Mark C. Dosker


――――

From: Michael Rubin [mailto:mrubin@altshulerberzon.com]
Sent: Mon 3/27/2006 5:07 PM
To: Dosker, Mark C.
Cc: jimc@lerachlaw.com; Eileen Goldsmith; spepich@lerachlaw.com; Theresa
Traber; Meckes, Joseph A.; Kelly, Michael W.
Subject: RE: Cintas Petition cases


Dear Mark:

Once again, we request courtesy copies of each of the pleadings you
filed in these matters against the Veliz opt-in plaintiffs.  Whether or
not you are correct about our relationship to those individuals in
Cintas' newly-filed actions, we are obviously counsel for those
individuals in the Veliz lawsuit and arbitration proceedings.
Consequently, we cannot conceive of any reason why you refuse to let us
have copies of Cintas' filings and refuse to inform us which of our
Veliz clients you have sued, in what courts, in what case numbers, and
on what dates.

Presumably, these are public documents.  If you have a legitimate
objection to sharing the requested information with us, please let us
know immediately.  Otherwise, we assume you will extend the common
courtesy of letting us see what you have filed, regardless of your
position on the scope of our attorney-client relationship.


Sincerely,

Michael Rubin


――――

From: Dosker, Mark C. [mailto:MDosker@SSD.com]
Sent: Monday, March 27, 2006 3:55 PM
To: Michael Rubin
Cc: jimc@lerachlaw.com; Eileen Goldsmith; spepich@lerachlaw.com; Theresa
Traber; Meckes, Joseph A.; Kelly, Michael W.

Subject: Cintas Petition cases

Dear Michael:

By my e-mail to you early this morning, I have already given you courtesy copies not only of the text of the Petitions, but also the text of the supporting papers -- the text of the supporting Declarations and the text of the supporting Request for Judicial Notice.   And as I noted, you already have (and have long had) the exhibits to those items. And previously, on March 22nd, we told you the scope of the Petition cases which Cintas has filed.  Please see part 13 of the Joint Case Management Statement we sent to Jim Caputo of your team in draft on March 22nd, and which was e-filed on March 24th.

The first sentence of your e-mail below refers to your "clients".    In the "Consent to Sue" forms in the action entitled Veliz et al v. Cintas etc, Case No. C-03-01180 SBA (N.D. Cal.)(hereinafter "the Veliz action"), the persons who filed those completed forms with the Court designated your firm, the Lerach firm, and the Traber firm as their counsel only in the Veliz action.  We are not aware of any such individual engaging your firm (or the Lerach firm or the Traber firm) as his or her counsel in any other action such as the Petition cases about which you are asking.

If your firm (and/or the Lerach firm and/or the Traber firm) has been engaged by any of the Respondents in any or all of the Petition case(s) to represent them in such Petition case(s), then:

(a)      please let us know which Respondents have actually engaged your firm(s) in the Petition cases in the way required by California Business and Professions Code Sections 6147 and 6148 (i.e., not those persons who have only filed a Consent to Sue form designating your firms as counsel in the Veliz action); and

(b)      please have a partner in the relevant firm (e.g., you as to your firm or Steve Pepich as to the Lerach firm or Theresa Traber as to the Traber firm) confirm to us in writing such Respondent(s)' agreement that personal service on the receptionist at that firm will constitute personal service of the summons, Petition, supporting papers, and related papers (e.g., courts' initial scheduling orders etc.) on such Respondent(s) in such Petition case(s).

Upon receipt of the necessary confirmations and agreements under (a) and

(b) above, we will gladly serve such Respondent(s) by delivering full
copies of such Petition case papers to the firm -- instead of proceeding
as the law regarding service of process in each of those Petition cases
otherwise requires.


Very truly yours,


Mark


Mark C. Dosker


_____

From: Michael Rubin [mailto:mrubin@altshulerberzon.com]
Sent: Monday, March 27, 2006 9:52 AM
To: Dosker, Mark C.
Cc: jimc@lerachlaw.com; Eileen Goldsmith; spepich@lerachlaw.com; Theresa
Traber; Meckes, Joseph A.; Kelly, Michael W.
Subject: RE: Courtesy Copies of Petitions to Compel Arbitration


Dear Mark:

Please provide us immediately with copies of each of the documents that
you have filed and served on our clients, including each of the
Petitions to Compel Arbitration and supporting declarations. The
information you provided by email this morning does not identify how
many petitions you filed, when you filed them, which courts you filed
in, or which of the Veliz plaintiffs you sued.

Thank you for your prompt attention to this matter.

Sincerely,

Michael Rubin


_____

From: Dosker, Mark C. [mailto:MDosker@SSD.com]
Sent: Monday, March 27, 2006 8:30 AM
To: Michael Rubin
Cc: spepich@lerachlaw.com; jimc@lerachlaw.com; Eileen Goldsmith;
tmt@tvlegal.com; Meckes, Joseph A.; Kelly, Michael W.
Subject: RE: Courtesy Copies of Petitions to Compel Arbitration

Dear Michael:

The attached items show the text of our papers in the Petition cases
(not including exhibits, which copies and information you have long
had), as per the last sentence of my e-mail below.

Very truly yours,

Mark

Mark C. Dosker

————

From: Dosker, Mark C.
Sent: Friday, March 24, 2006 10:30 PM
To: Michael Rubin
Cc: Kelly, Michael W.; spepich@lerachlaw.com; jimc@lerachlaw.com; Eileen
Goldsmith; Theresa Traber
Subject: RE: Courtesy Copies of Petitions to Compel Arbitration

Dear Michael:

I have just received your e-mail below.  As you (or at least Jim Caputo
of your team) knew, I had to leave the office at 3:00 p.m. this
afternoon on other matters.  You sent your e-mail to me after that.

We told Jim Caputo of your team on Wednesday afternoon March 22nd, in
our draft Joint Case Management Statement in Veliz et al v. Cintas,
that Cintas has filed Petition cases in other District Courts under
Section 4 of the Federal Arbitration Act -- as is more fully set forth
in part 13 of that statement.  We did that before commencing service of
process on the Respondents in those Petition cases.

There are no "communications" (your word below) occurring with any
opt-in plaintiff in the case of Veliz et al v. Cintas.  All that is
occurring is service of the summons and the Petition and the
accompanying court papers, on the Respondents in each of the Petition
cases - which are separate cases in separate courts -- either by
personal service by a third party process server or (in the vast
majority of instances) by using the standard form established by law for
accomplishing service by providing the opportunity for waiver of service
by Notice and Acknowledgement of Receipt.  This is as authorized by law.
Indeed, in pertinent part it is as affirmatively required by law. There
is nothing for you to be "investigating" (your word below).

As a courtesy to you, however, when I am back in the office on Monday I

will send you a copy of the text of the Petition and of the accompanying court papers which we and our local co-counsel have filed in the Petition cases.


Very truly yours,


Mark


Mark C. Dosker


———

From: Michael Rubin [mailto:mrubin@altshulerberzon.com]
Sent: Fri 3/24/2006 3:43 PM
To: Dosker, Mark C.
Cc: Kelly, Michael W.; spepich@lerachlaw.com; jimc@lerachlaw.com; Eileen Goldsmith; Theresa Traber
Subject: Courtesy Copies of Petitions to Compel Arbitration


Dear Mark:

Earlier today we were informed that your office is serving as many as 1,900 of the individual opt-in plaintiffs with copies of Cintas'

Petitions to Compel Arbitration. We are concerned about these direct communications with the opt-in plaintiffs and are presently

investigating their propriety. At this time, we do not know the extent of your communications or contacts. As a first step in our

investigation, we request that you hand-deliver to our office a copy of all communications that you or your client have authorized to be sent to the opt-in plaintiffs. I am sure you can appreciate the urgency of this request, and consequently we further

request that these copies be transmitted immediately.

Sincerely,

Michael Rubin


———————————

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**CC:**          <spepich@lerachlaw.com>, <jimc@lerachlaw.com>, "Theresa Traber" <tmt@tvlegal.com>, "Eileen Goldsmith" <egoldsmith@altshulerberzon.com>, "Kelly, Michael W." <MKelly@ssd.com>, "Meckes, Joseph A." <JMeckes@SSD.com>

<u>DECLARATION OF SERVICE BY MAIL</u>

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.    That on March 31, 2006, declarant served the VELIZ PLAINTIFFS' EMERGENCY REQUEST TO EXPEDITE RESOLUTION OF TRANSFER MOTION UNDER 28 U.S.C. §1407 by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    Pursuant to Rule 5.12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, copies will be filed in each district court in which an action is pending that will be affected by this motion.

4.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of March, 2006, at San Diego, California.

JUNE P. ITO

Cintas MDL (MDL No. _____)
Service List – 3/31/2006
Page 1 of 5

Counsel for Petitioners

Theodore J. Pintar
Steven W. Pepich
James A. Caputo
Lawrence A. Abel
Helen I. Zeldes
**Lerach Coughlin Stoia Geller Rudman &**
**    Robbins LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel: 619/231-1058
Fax: 619/231-7423

Nancy M. Juda
**Lerach Coughlin Stoia Geller Rudman &**
**    Robbins LLP**
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC  20036
Tel:  202/822-6762
Fax: 202/828-8528

Theresa M. Traber
Vanessa H. Eisemann
**Traber & Voorhees**
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Tel:  626/585-9611
Fax: 626/577-7079

Albert H. Meyerhoff
**Lerach Coughlin Stoia Geller Rudman &**
**    Robbins LLP**
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Tel:  310/859-3100
Fax: 310/278-2148

Michael Rubin
Scott A. Kronland
Eileen B. Goldsmith
**Altshuler, Berzon, Nussbaum,**
**    Rubin & Demain**
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
Fax: 415/362-8064

Counsel for Respondent Cintas Corporation

T. Joshua Archer
**Balch & Bingham LLP**
3535 Piedmont Road
14 Piedmont Center, Suite 1100
Atlanta, GA  30305
Tel: 404/261-6020

Brentley Tyler Cobb
Douglas Brian Kauffman
M. Jefferson Starling, III
**Balch & Bingham**
1710 6th Avenue North
PO Box 306
Birmingham, AL 35201-0306
Tel: 205/251-8100
Fax: 205/266-8798

Cintas MDL (MDL No. ____)
Service List – 3/31/2006
Page 2 of 5

James H. Elliott
**Barnwell Whaley Patterson and Helms**
885 Island Park Drive
Charleston, SC 29492-0197
Tel: 843/577-7700
Fax: 843/577-7708

Dmitry Shifrin
Steven Russell Smith
William J. Wortel
**Bryan Cave LLP**
161 North Clark Street
Suite 4300
Chicago, IL 60601
Tel: 312/602-5060
Fax: 312/602-5050

Charles B. Jellinek
**Bryan Cave LLP**
211 N. Broadway
Suite 3600
St. Louis, MO 63102-2750
Tel: 314/259-2000
Fax: 314/259-2020

Todd D. Kilpatrick
**Coughlin, Gerhart Law Firm**
P.O. Box 2039
20 Hawley Street
Binghamton, NY 13902-2039
Tel: 607/723-9511
Fax: 607/723-1530

C. Timothy Hopkins
Steven K. Brown
**Hopkins Roden Crockett Hansen & Hoopes**
P.O. Box 51219
Idaho Falls, ID 83405-1219
Tel: 208/523-4445
Fax: 203/523-4474

Daniel W Glavin
Randall J Nye
rnye@bkslegal.com
**Beckman Kelly & Smith**
5920 Hohman Avenue
Hammond, IN 46320-2423
Tel: 219/933-6200
Fax: 219/933-6201

Elaine D. Koch
James D. Lawrence
**Bryan Cave LLP**
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2100
Tel: 816/374-3200 x3235
Fax: 816-374-3300

Kevin Richard Tully
Howard Carter Marshall
Terry Christovich Gay
**Christovich & Kearney, LLP**
Pan American Life Center
601 Poydras St., Suite 2300
New Orleans, LA 70130-6078
Tel: 504/561-5700
Fax: 504/561-5743

Thomas D. Goldberg
**Day, Berry & Howard**
One Canterbury Green
Stamford, CT 06901-2047
Tel: 203/977-7383
Fax: 203/977-7301

Beth L Steffan
Timothy D Kelly
**Kelly & Berens, PA**
80 S 8th St Ste 3720
Minneapolis, MN 55402
Tel: 612/349-6171
Fax: 612/349-6416

Cintas MDL (MDL No. _____)
Service List – 3/31/2006
Page 3 of 5

Stephen E Kravit
Sarah J Friday
John F Hovel
**Kravit Hovel Krawczyk & Leverson SC**
825 N Jefferson St - 5th Fl
Milwaukee, WI 53202
Tel: 414/271-7100
Fax: 414/271-8135

Thomas Finarelli
Wayne A. Graver
**Lavin, O'Neil, Ricci, Cedrone & DiSipio**
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
Tel: 215/627-0303
Fax: 215/627-2551

Hugh Peterson, III
**McNatt, Greene & Peterson**
P.O. Drawer 1168
Vidalia, GA  30475-1168
Tel: 912/537-9343
Fax: 912/537-2658

Jay Eaton
**Nyemaster Goode Voigts West Hansell &
   O'Brien, PC**
700 Walnut
Suite 1600
Des Moines, IA 50309
Tel: 515/283-3100
Fax: 515/283-3108

Damon J. Georgelas
Erik A. Christiansen
**Parsons Behle & Latimer**
201 S. Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, UT 84145-0898
Tel: 801/532-1234
Fax: 801/536-6111

Matthew M. Enenbach
Robert M. Slovek
**Kutak, Rock Law Firm**
1650 Farnam Street
Omaha, NE 68102-2186
Tel: 402/346-6000
Fax: 402/346-1148

Wayne John Positan
**Lum, Danzis, Drasco & Positan, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068-1049
Tel: 973/403-9000
Fax: 973/403-9021

Jason A. Cincilla
**Morris, Nichols, Arsht & Tunnell**
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
Tel: 302/658-9200
Fax: 302/658-3989

Norman H. Kirshman
Robert L Rosenthal
**Parsons Behle & Latimer**
411 E. Bonneville
Suite 300
Las Vegas, NV 89101
Tel: 702/384-3877
Fax: 702/599-6023

Douglas M. Todd
Thomas G. Wolfe
**Phillips McFall McCaffrey McVay & Murrah,
PC**
One Leadership Square
211 N. Robinson
Twelfth Floor
Oklahoma City, OK 73102
Tel: 405/235-4100
Fax: 405/235-4133

Cintas MDL (MDL No. _____)
Service List – 3/31/2006
Page 4 of 5

Robert M Howie
Skylar A Sherwood
**Riddell Williams PS**
1001 Fourth Avenue
Suite 4500
Seattle, WA 98154
Tel: 206/624-3600
Fax: 206/389-1708

Amanda T. Gamblin
David W. Axelrod
**Schwabe, Williamson & Wyatt PC**
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Or 97204
Tel: 503/796-2903
Fax: 503/796-2900

Pierre H. Bergeron
**Squire, Sanders & Dempsey**
312 Walnut Street
Suite 3500
Cincinnati, OH 45202-4036
Tel: 513/361-1289
Fax: 513/361-1201


Steven Bradley Harris
Mark S Armstrong
**Squire Sanders & Dempsey**
600 Travis
6250 Chase Tower
Houston, TX 77002
Tel: 713/546-5850
Fax: 713/546-5830

Jeffrey E. Storch
**Squire Sanders & Dempsey LLP**
350 Park Avenue
New York, NY 10022-6022
Tel: 212/872-9800
Fax: 212/872-9815

Paul W. Chaiken
Phillip D. Buckley
**Rudman & Winchell**
84 Harlow Street
P.O. Box 1401
Bangor, ME 04401
Tel: 207/947-4501
Fax: 207/941-9715

James K. Dorsett, III
Michael R. Gordon
**Smith Anderson Blount Dorsett Mitchell & Jernigan**
P.O. Box 2611
Raleigh, NC 27602-2611
Tel: 919/821-1220
Fax: 919/821-6800

James Dean Thomas
Philip Oliss
Stacy D. Ballin
**Squire Sanders & Dempsey LLP**
4900 Key Tower
127 Public Sq.
Cleveland, OH 44114
Tel: 216/479-8500
Fax: 216/479-8780

Carlotta Justine Roos
**Squire, Sanders & Dempsey LLP**
Wachovia Financial Center
200 S. Biscayne Blvd., Suite 4000
Miami, FL 33131-2398
Tel: 305/577-7000
Fax: 305/577-7001

Joseph A. Meckes
Mark C. Dosker
Michael W. Kelly
Sara Kathryn Regan
Rodney R. Patula
**Squire, Sanders & Dempsey**
1 Martime Plaza, Suite 300
San Francisco, CA 94111-3492
Tel: 415/954-0200
Fax: 415/393-9887

Cintas MDL (MDL No. _____)
Service List – 3/31/2006
Page 5 of 5

John Anson Burlingame
**Squire Sanders and Dempsey LLP**
1201 Pennsylvania Ave NW Ste 500
PO Box 407
Washington, DC 20004-0407
Tel: 202/626-6600
Fax: 202/626-6780

Dudley Collier Graham, Jr.
Jeremy L. Birdsall
**Wise, Carter, Child & Caraway**
P. O. Box 651
Jackson, MS 39205-0651
Tel: 601/968-5500
Fax: 601/968-5593

Thomas W. Lyons, III
**Strauss, Factor, Laing & Lyons**
222 Richmond Street
Suite 208
Providence, RI 02903-2914
Tel: 401/456-0700
Fax: 401/421-4730

S:\CasesSD\Cintas\NonPldgs\3.30.06 MDL Service List.doc