

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Jennifer Mendoza
jmendoza@lerachlaw.com

May 4, 2006

*Via United States Mail*

Clerk of the Court
United States District Court
District of Delaware
Wilmington Division
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, Delaware 19801



RECEIVED
MAY - 8 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Re:  *Cintas v. Gray*
     No. 1:06-cv-00162-JJF

Dear Clerk:

Enclosed are two copies each of the following documents. One copy to be lodged with the Court and a courtesy copy for the Judge:

1.  The *Veliz* Plaintiffs' Reply Memorandum in Support of Motion to Transfer and Consolidate Actions Under 28 U.S.C. §1407; and

2.  Declaration of Steven W. Pepich in Support of the *Veliz* Plaintiffs' Reply Memorandum in Support of Motion to Transfer and Consolidate Actions Under 28 U.S.C. §1407

These documents were filed with the JPMDL on or about May 4, 2006. Pursuant to Rule 5.12(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, a copy of all filed briefs must also be delivered to the district court. All parties have been served as indicated on the certificate of service.

Thank you for your assistance in this matter.

Very truly yours,

*Jennifer Mendoza*

Jennifer Mendoza
Paralegal

JM:tdv
Enclosures

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In re CINTAS CORP. OVERTIME PAY   )   MDL No. 1781
ARBITRATION LITIGATION           )
                                   )

**THE *VELIZ* PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO
TRANSFER AND CONSOLIDATE ACTIONS UNDER 28 U.S.C. §1407**

# TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................... 1

II.   The MDL Panel Has Jurisdiction to Transfer and Consolidate the Cintas' Petition
      Actions ................................................................................................................. 2

      A.    Cintas' Challenge to this Panel's Jurisdiction Is Unavailing ................................. 2

      B.    Nothing in the FAA Suggests That Petition's to Compel Arbitration Are
            Not Civil Actions Under the Panel's Jurisdiction ...................................... 3

      C.    Nothing In the FAA's Legislative History Suggests §4 Petition Cases Are
            Beyond the Panel's Jurisdiction ................................................................ 5

      D.    Cintas' Misreading of the Federal Rules of Civil Procedure Cannot
            Support Its Characterization of the Petition Cases as Something Other than
            "Civil Actions" ......................................................................................... 6

III.  Actions Under FAA §4 May Require Pretrial Proceedings That Are Appropriately
      Coordinated or Consolidated ................................................................................. 8

IV.   Consolidation and Transfer Allows for Uniform Resolution of Common Factual
      Issues which Are already at Issue in the California Arbitration/Litigation ..................... 9

V.    Conclusion .......................................................................................................... 13

# TABLE OF AUTHORITIES

Page

*Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105 (2001) ........................................................................................................6

*Deiulemar Compagnia di Navigazione S.P.A. M/V Allegra,*
    198 F.3d 473 (4th Cir. 1999) ....................................................................................4, 8

*Famous Realty, Inc. v. Flota Mercante Grancolombiana, S.A.,*
    81 F. Supp. 553 (E.D.N.Y. 1948) ...............................................................................4

*Gillson v. Vendome Petroleum Corp.,*
    35 F. Supp. 815 (E.D. La. 1940) .................................................................................2

*Green Tree Financial Corp. v. Bazzle,*
    539 U.S. 444 (2003) .....................................................................................................10

*In re Koratron,*
    302 F. Supp. 239 (J.P.M.L. 1969) ...............................................................................2

*In re Merriam,*
    250 B.R. 724 (D. Colo. 2000).......................................................................................7

*In re NOS Communs. Billing Practices Litig. v. Nos Communs.,*
    No. 1357, 2000 U.S. Dist. LEXIS 14840 (J.P.M.L. Oct. 6, 2000) ...........................2

*Merrill Lunch, Pierce, Fenner & Smith, Inc. v. Katherine S. King,*
    812 F. Supp. 1217 (M.D. Fla. 1993).............................................................................9

*PMS Distributing Co., Inc. v. Huber & Suhner, A.G.,*
    963 F.2d 639 (9th Cir. 1988) .......................................................................................9

*Penn Tanker Co. v. C.H.Z. Rolimpex, Warszawa,*
    199 F. Supp. 716 (S.D.N.Y. 1961) ..............................................................................8

*Richard C. Young & Co. v. Leventhal,*
    389 F. 3d 1 (1st Cir. 2004).............................................................................................10

*Shearson Lehman Brothers, Inc. v. Brady,*
    783 F. Supp. 1490 (D. Mass. 1991)..............................................................................10

*United States v. Locke,*
    471 U.S. 84 (1985) ........................................................................................................5

Page

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 2 ................................................................................................................ 2
    Rule 81(a)(3) .................................................................................................. 4, 7

28 U.S.C.
    §1407 ............................................................................................................. 10
    §1407(a) ............................................................................................... 1, 2, 3, 13
    §1441 ............................................................................................................... 2

42 U.S.C.
    §11603(b) ......................................................................................................... 8

9 U.S.C.
    §4 ............................................................................................................ *passim*

## I.    Introduction

Cintas makes two main points in opposing the transfer of its 70 nearly identical Petitions to Compel Arbitration under §4 of the Federal Arbitration Act, 9 U.S.C. §4. First, it contends that the Judicial Panel on Multidistrict Litigation has no "jurisdiction" to consider consolidation and transfer of those cases, because 28 U.S.C. §1407(a) refers only to "civil actions" and Cintas has instead filed a series of "petitions." This argument fails many times over. The term "civil action" is commonly and broadly used throughout the Federal Rules of Civil Procedure and Title 28 to encompass all manner of civil actions, whether initiated by complaint, petition, or otherwise. While there may have been a difference historically between equitable actions (commonly initiated by petitions) and legal actions (commonly initiated by complaint), that distinction no longer exists and there is no legislative history, legislative policy, or other logical or common sense rationale for attributing to Congress an intent to deprive the JPML of jurisdiction to consider civil actions initiated by "petition" rather than "complaint."

Second, Cintas makes a somewhat related argument that consolidation and transfer would be inappropriate in the context of a FAA §4 petition to compel arbitration because those proceedings do not anticipate the type of pretrial proceeding that the MDL process is designed to streamline. Cintas is wrong. While FAA §4 anticipates expedited proceedings, district courts commonly entertain motions to dismiss under FAA §4 (where, as here, there has been no "failure or refusal" to arbitrate), as well as motions to compel discovery or for entry of protective orders to block or limit discovery, and other pre-trial motions. Each of these matters is amenable to consolidate and transfer under 28 U.S.C. §1407(a), and on the facts of this case, involving 70 nearly identical district court actions raising the same issues, under the same agreements, subject to the same defenses, tremendous savings of judicial and party resources will result from consolidation and transfer to the Northern District of California.

## II.    The MDL Panel Has Jurisdiction to Transfer and Consolidate the Cintas' Petition Actions

### A.    Cintas' Challenge to this Panel's Jurisdiction Is Unavailing

The Panel's jurisdiction derives from 28 U.S.C. §1407(a), which provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.

Through a tangle of stilted readings and out-of-focus assertions, Cintas argues the 70 petition cases here are not "civil actions" within the meaning of §1407(a) and therefore are beyond the Panel's power to transfer or consolidate. Cintas' cites no case authority for that novel proposition, however, and neither the statutory language nor the legislative policies permit such a narrow reading of the commonly used term "civil actions."

Section 1407 does not preclude jurisdiction over FAA §4 actions, although Congress surely could have carved out an exception for that category of civil action as it did with certain categories of antitrust cases. *See* §1407(g). *See, e.g., In re NOS Communs. Billing Practices Litig. v. Nos Communs.,* No. 1357, 2000 U.S. Dist. LEXIS 14840 (J.P.M.L. Oct. 6, 2000); *In re Koratron*, 302 F. Supp. 239 (J.P.M.L. 1969). Cintas styles the 70 petition cases as "proceedings," which, in its view, are materially distinct from "civil actions." But Cintas offers no reason why Congress would have drawn such a distinction and overlooks the wholly synonymous use of "actions" and "proceedings" permeating our laws.[1]   Indeed, §1407 itself uses the words "civil actions" and "proceedings"

---

[1]   The term "civil action" is intended to have a generic and broad reach to embrace a spectrum of judicial proceedings. *See* Fed. R. Civ. P. 2 ("There shall be one form of action to be known as a 'civil action.'"); Revision Notes to 28 U.S.C. §1441 (words such as "case', 'cause', 'suit', and the like have been omitted and the words 'civil action' substituted in harmony with Rules 2 and 81(c) of the Federal Rules of Civil Procedure"). "Generally speaking, and unless its meaning be specifically restricted, an 'action' refers to any legal proceeding in a court of justice having for its purpose the enforcement of a right or the redress of a wrong." 1 C.J.S. Actions §1, at p. 938; *see also Gillson v. Vendome Petroleum Corp.*, 35 F. Supp. 815, 819 (E.D. La. 1940) ("'civil action' embraces from its

interchangeably. After identifying "civil actions" as the matters potentially subject to transfer,

§1407(a) continues:

> Such transfer shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for ***such proceedings*** will be for the convenience of the parties and the witnesses and will promote the just and efficient conduct of such actions.

(Emphasis added.)

### B. Nothing in the FAA Suggests That Petition's to Compel Arbitration Are Not Civil Actions Under the Panel's Jurisdiction

Cintas' attempt to characterize a petition to compel arbitration as beyond the Panel's

jurisdictional reach finds no greater support in the FAA, its legislative history and the Federal Rules

of Civil Procedure.

Cintas asserts that the "text and structure" of the FAA evidences that the 70 cases at issue

here are not "civil actions." Cintas' MDL Opp. at 9. There is no FAA "text" that bars transfer and

consolidation under §1407. Nor is there anything about the nature of FAA §4 that would make civil

actions to compel not amenable to multidistrict Panel jurisdiction.

FAA §4 provides that there must first be a hearing to determine "the making of the

agreement for arbitration or the failure to comply therewith is not in issue." If the court so finds, it is

required to direct the parties to proceed with arbitration. If, however, the making of the arbitration

agreement or a party's "failure, neglect, or refusal to perform" remains an issue, the case proceeds

"summarily" to a bench or a jury trial conducted under the Federal Rules of Civil Procedure. §4.

Cintas argues that FAA §4 petitions neither look nor feel like a typical "civil action." Cintas

essentially contends §1407 requires a strict, point-by-point match between some purported "civil

action" prototype and the cases proffered for transfer. It does not. By its terms, §1407 applies to all

---

natural import, every species of 'suit' not of a criminal kind, and comprehends every conceivable cause of action, whether legal or equitable . . . .").

civil actions. And the distinctions between the 70 cases here and Cintas' purported "hallmarks" of a "civil action" do not persuade that the petition actions cannot be before the Panel.

Cintas first points to §4's requirement that a petition, not a complaint, be filed to commence the action. However, "petition" and "complaint" are just two different terms for the same concept that have different historical roots but common contemporary usage. The term "petition" is drawn from equity jurisdiction:

> Formerly, in equity practice, the original pleading was denominated a petition or bill. Today, in almost all jurisdictions, whether in law or equity, the initial pleading is a complaint.

*Blacks Law Dictionary* 793 (6th Ed. 1991). Even so, it is now well established that "civil action" can be commenced by the filing of a petition, as is the case, for example, in bankruptcy actions. And an order under FAA §4 ultimately compelling arbitration is in the nature of equitable relief. Finally, that §4 procedures can be summary in nature does not negate their civil-action nature. *See, e.g.*, *Famous Realty, Inc. v. Flota Mercante Grancolombiana, S.A.*, 81 F. Supp. 553, 555 (E.D.N.Y. 1948) (finding a summary proceeding to recover the possession of realty from a tenant was a "civil action" within the Federal Rules of Civil Procedure: "It is idle to argue, as the plaintiff does, that because of the summary nature of the relief sought the proceeding is not an action.").

Under FAA §4, the trial court must conduct a pretrial hearing to determine fact issues bearing on the arbitration agreement's making and a party's compliance with it. To the extent discovery is needed on those issues, it is available. *See, e.g.*, *Deiulemar Compagnia di Navigazione S.P.A. M/V Allegra*, 198 F.3d 473, 482 (4th Cir. 1999). If fact questions remain after the pretrial hearing, they are resolved through a bench or jury trial. Other procedures of the Federal Rules are also available. *See* Fed. R. Civ. P. 81(a)(3). Thus, a §4 proceeding anticipates the availability of a pretrial test of the petitioner's allegations, permits discovery to advance that challenge, and affords a trial on the merits if fact issues remain.

- 4 -

Cintas selectively reads what it identifies as the "jurisdictional language" of §4 to assert that the 70 petition cases cannot be "civil actions." Read fully – and fairly – §4 simply does not do that. Under §4, an aggrieved party to an arbitration agreement may petition "any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." This passage says nothing about the *nature* of cases filed under §4. It instead directs the petitioner to the proper court in which to file his or her action. The 70 petition actions here, for example, would not have been properly filed in bankruptcy courts, as those courts do not have subject matter jurisdiction over unpaid overtime claims under the Federal Labor Standards Act. It simply does not follow, as Cintas insists, that the above-quoted language of §4 would be mere "surplusage" if a case filed under §4 were a "civil action." Cintas MDL Opp. at 11. That §4 directs the initial pleading's filing in a court that would have subject matter jurisdiction over the dispute does not negate that a petition seeking to compel arbitration initiates a *new* "civil action."

In sum, neither the language of nor the procedural structure created by §4 point to the 70 petition cases as being something other than "civil actions."

### C.   Nothing In the FAA's Legislative History Suggests §4 Petition Cases Are Beyond the Panel's Jurisdiction

As with §4 itself, there is nothing in the FAA's legislative history that requires that petitions to compel arbitration be treated as something different from "civil actions." Cintas points to snippets from the House and Senate Reports that simply highlight §4's procedures. Cintas MDL Opp. at 12. These passages offer no support for Cintas' argument and are poor substitutes for the congressional intent manifest in §4's express language. *See United States v. Locke*, 471 U.S. 84, 95-96 (1985) ("'[T]he legislative purpose is expressed by the ordinary meaning of the words used. Going behind the plain language of a statute in search of a possibly contrary congressional intent is a "step to be taken cautiously" even under the best of circumstances.'") (citation omitted).

- 5 -

The bulk of Cintas' historical citation comes from a position paper offered, not by a legislator, but a proponent of the FAA's enactment. As such, it is advocacy and not an indication of congressional intent. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001) ("Legislative history is problematic even when the attempt is to draw inferences from the intent of duly appointed committees of Congress. It becomes far more so when we consult sources still more steps removed the full Congress and speculate upon the significance of the fact that a certain interest group sponsored or proposed particular legislation. . . . We ought not attribute to Congress an official purpose based on the motives of a particular group that lobbied for or against a certain proposal – even assuming the precise intent of the group can be determined.").

What Cintas omitted from its romp through Congressional documents is the most salient reference to the jurisdictional question here. The House Report notes that although the FAA procedures are designed to eliminate expense and delay, they also safeguard the rights of the affected parties. Thus,

> [t]o secure jurisdiction for arbitration, however, service of process must be made personally, so that there is not danger that defendant, having an honest defense, will be called up to defend his case at a distance under a disadvantage. ***The proceeding will be commenced practically as any action is now commenced in the Federal courts***.

H.R. Rep. No. 68-96, at 2 (emphasis added).

As the structure of §4 highlights and as the congressional intent makes manifest, there is no practical difference between a proceeding under §4 and the commencement of "any action" in the federal courts.

### D.   Cintas' Misreading of the Federal Rules of Civil Procedure Cannot Support Its Characterization of the Petition Cases as Something Other than "Civil Actions"

The Federal Rules of Civil Procedure were enacted to unify the rules of law and equity "so as to secure one form of civil action and procedure for both." Advisory Committee Note, No. 3 to Rule 1. Accordingly, the Federal Rules govern "in all suits of a civil nature whether cognizable as cases

at law or in equity . . . with the exceptions stated in Rule 81." Rule 81(a)(3) applies the rules to "proceedings under Title 9, U.S.C. relating to arbitration . . . to the extent that matters of procedure are not provided for in those statutes."

Rule 81(a)(3), on its face, neither implicates nor contravenes this Panel's jurisdiction or ability to transfer and consolidate "proceedings relating to arbitration." Cintas asserts that Rule 81 characterizes matters arising under the FAA as "proceedings" that are different from "civil actions" over which the Panel has jurisdiction. Cintas points to no authority, legislative history or comment that supports its narrow reading. Cintas' semantic ploy is best unraveled by resorting to a dictionary.

> Proceeding "may be used synonymously with 'action' or 'suit' to describe the entire course of an action at law or suit in equity from the issuance of the writ or the filing of the complaints until the entry of a final judgment, or may be used to describe any act done by authority of a court of law and every step required to be taken in any cause by either party." Blacks Law Dictionary 1083 (5th ed.).

Rule 81(a)(3) simply has no bearing on defining litigation under §4 as not being a "civil action." The term, "Proceedings" can – and should be – understood in its common usage to embrace a course of judicial conduct that includes an entire civil action.

Cintas next urges that because a petition, rather than a "complaint," initiated the 70 cases at issue no "civil action" has been commenced, because under Rule 3, only a complaint can commence a civil action. The definitional dilemma Cintas hopes to create is not grounded on logic or the law, but on its own wishful thinking. The rigid distinction Cintas urges between a petition and a complaint is the very distinction the Federal Rules sought to abolish. Petitions and complaints are both initial pleadings that commence various actions. The action to compel arbitration here is, in essence, a suit in equity to compel specific performance of a contract. It is not surprising that with §4's enactment in 1947, the initial pleading, given its equitable roots, was denominated a petition. That petitions commence other types of civil actions further undermines Cintas' argument. *See, e.g., In re Merriam*, 250 B.R. 724, 733 (D. Colo. 2000) ("Analogous to a complaint, the debtor's petition

initiates a bankruptcy case."); 42 U.S.C. §11603(b) ("any person seeking to *initiate judicial proceedings* under the Convention for the return of a child . . . *may do so by commencing a civil action by filing a petition* for the relief sought in any court which has jurisdiction over such action. . . .").

Cintas' contrived – an unprecedented – reading of the Federal Rules of Civil Procedure does not remove §4 proceedings from this Panel's jurisdictional reach.

## III.    Actions Under FAA §4 May Require Pretrial Proceedings That Are Appropriately Coordinated or Consolidated

Cintas headlines that §4 actions "Do Not Have Pretrial Proceedings Capable Of Coordination Or Consolidation By The Panel." Cintas MDL Opp. at 15. One would think that so bold an assertion would be supported by unequivocal, compelling and established authority. But it is not. Indeed, the FAA, the Federal Rules of Civil Procedure and established case law all point to the unavoidable conclusion that §4 cases *do* often require pretrial proceedings that are amenable to transfer and consolidation under this Panel's jurisdiction.

As discussed previously, §4 mandates pretrial proceedings to determine whether a valid arbitration agreement exists or whether a party is complying with the agreement. This is a necessary threshold determination to a bench or jury trial. Pretrial discovery to advance this pretrial determination may be commonly ordered. *See Deiulemar,* 198 F.3d at 482 (Rule 81 authorizes " a district court, in enforcing an arbitration agreement, to 'order discovery pursuant to Fed. R. Civ. P. 26 on matters relevant to the existence of an arbitration agreement.'") (citation omitted); *Penn Tanker Co. v. C.H.Z. Rolimpex, Warszawa,* 199 F. Supp. 716, 718 (S.D.N.Y. 1961) (discovery procedures may apply to Title 9 proceedings "e.g., on the issue of whether there was an agreement to arbitrate which the Court must decide under §4 before directing the parties to proceed to arbitration."). Indeed, proceedings and relief permitted under the Federal Rules of Civil Procedure, and not expressly by the FAA, are unquestionably available to parties pending arbitration. For

example, "[t]he fact that a dispute is arbitrable and the court so orders under [Section 4] does not strip it of authority to grant a writ of possession pending the outcome of the arbitration so long as the criteria for such a writ are met." *PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*, 963 F.2d 639, 642 (9th Cir. 1988).

Here, the 70 identical petition actions all present, at a minimum, the same threshold question of whether the respondents have failed, neglected or refused to perform under the arbitration agreements. This squarely presents a pretrial question that must be addressed under §4 and is best addressed once. Courts have entertained such pretrial determinations through various means. *See, e.g., Merrill Lunch, Pierce, Fenner & Smith, Inc. v. Katherine S. King*, 812 F. Supp. 1217 (M.D. Fla. 1993) (FAA §4 claim to compel arbitration rejected on motion to dismiss and, alternatively, on summary judgment because there was no refusal to arbitrate.).

As discussed in the following section, the uniform, common pretrial issues presented in the 70 cases provide a compelling basis for the Panel to transfer and consolidate the petition actions.

IV.    **Consolidation and Transfer Allows for Uniform Resolution of Common Factual Issues which Are already at Issue in the California Arbitration/Litigation**

Cintas argues that its 70 cases "do not involve any common issues of fact" so as to warrant consolidation and transfer. Cintas' MDL Opp at 8. Cintas' assertion that the 70 arbitration cases do not present common factual and legal questions is absurd. Several times in its opposition to consolidation, Cintas expressly admitted that the petitions it filed in the 70 cases are "identical." *See, e.g.*, Cintas MDL Opp. at 2 ("ultimate outcome on each of the 70 Petition proceedings will . . . be the same"). Cintas asserts that each of the respondents in each of those cases is violating his or her agreement to arbitrate in precisely the same manner. Cintas does not claim that the outcome of any of the arbitration cases hinges on any facts peculiar to any individual respondent. Nothing

- 9 -

further is necessary to establish that the cases before the JPML panel present "common questions of fact" warranting consolidation. 28 U.S.C. §1407.

It is difficult to imagine a stronger case for consolidation. Cintas asserts that some 1,900 individuals have breached their contracts with Cintas in precisely the same way. Consolidation is critical to prevent 70 courts from reaching inconsistent conclusions on the meaning and import of those facts, and the interpretation of Cintas' arbitration agreements with respect to those facts. Indeed, respondents will contend in a pretrial motion to dismiss that will apply with equal force to every one of Cintas' cases, that the district courts in which Cintas filed lack jurisdiction over those cases because respondents have ***not*** refused or failed to arbitrate within the meaning of FAA §4. What Cintas is really trying to do is to block Judge Meyerson from deciding in the pending arbitration which Cintas workers are properly before him, but §4 is not available for that purpose. *See Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 451-53 (2003) (whether an arbitration agreement forbids class arbitration is a contract construction issue for the arbitrator to decide); *Shearson Lehman Brothers, Inc. v. Brady*, 783 F. Supp. 1490, 1497 (D. Mass. 1991) (finding party's desire to have "situs" of arbitration decided in court posed a potential forum shopping problem which was at odds "with quick and final resolution of the underlying dispute by arbitration"); *Richard C. Young & Co. v. Leventhal*, 389 F. 3d 1, 4-5 (1st Cir. 2004) ("The dispute between the parties in this case over the location of the arbitration raises not a question arbitrability but a procedural question and is therefore for the arbitrator, not the court. . . . We conclude that the District Court lacked the power to interpret the forum selection clause.").

Cintas argues that pretrial proceedings will not be required in these 70 actions because Judge Armstrong has already ruled that all 1,900 respondents' arbitration agreements are enforceable and require arbitration in the county where the individual respondent last worked for Cintas. *See* Cintas Opposition Br. at 3-6. In fact, Judge Armstrong ruled nothing of the kind, for reasons that

respondents have already briefed at length to the arbitrator, as has Cintas. More importantly, the jurisdictional issue under §1407(a) has nothing to do with which party will prevail on any particular pretrial motion, but instead rests on whether Congress intended to permit the JPML to assert jurisdiction over all civil actions in which such pretrial proceedings may be required.

Cintas' argument that it will prevail on respondents' anticipated motions to dismiss effectively concedes that, procedurally, respondents have the right to file such motions to dismiss. And, if the merits of the upcoming motions to dismiss ultimately depend on what Judge Armstrong previously ruled in the Veliz case, surely it makes more sense to consolidate these actions and transfer them to Judge Armstrong for all pretrial matters, rather than have 70 different district court judges in 70 different cases attempt to determine what Judge Armstrong did or did not intend in her orders in the *Veliz* action.

Moreover, this very same contract interpretation issue regarding whether the arbitration agreements allow for one collective and class-wide arbitration in California is already set for decision in the arbitration proceedings that have been pending since 2004. While Cintas' Answer to claimants arbitration demand objected to going forward as a collective or classwide arbitration, it did so based on its reading of the relevant contractual provisions of the arbitration agreements. According to Cintas' Answer in arbitration, permitting such a collective or class action would "violate the express terms of each of the separate arbitration agreements between Cintas and each of the Claimants as well as violate the express terms of each of the separate arbitration agreements between Cintas and each of the members of the putative class and putative subclasses." Ex. 1 to the Declaration of Steven W. Pepich in Support of the Veliz Plaintiffs' Reply Memorandum in Support of Their Motion to Transfer and Consolidate Actions Under 28 U.S.C. §1407 ("Pepich Decl.,") at 2. (Cintas Answer to Arbitration Demand). Thus, Cintas' Answer recognized and put at issue this arbitration clause construction issue and whether the contract language would allow a global

arbitration involving all claimants – the very issue Cintas wants 70 federal district courts to litigate again and again in its 70 redundant actions.

Cintas similarly agree to have the arbitration clause construction issue briefed and resolved in the California arbitration. On July 9, 2004, following a conference call with counsel for the parties, AAA Case Manager Karen Fontaine sent a letter to counsel for the parties, describing the four phases of arbitration followed under the AAA's Class Action Rules. According to the letter, the first phase of the arbitration is the Clause Construction Phase, when "the arbitrator will decide whether the parties' contract/arbitration clause allows for class actions." The letter explained that "[i]f the arbitrator determines that the clause does not allow class actions, this matter will be closed and Claimants will be required to file individual cases for each of the class participants." Claimants requested that the arbitration be held in San Francisco, California, and Cintas indicated that it had no objection to that locale for the Clause Construction Phase. Pepich Decl., Ex. 2.

Consistent with these pleadings, procedures and statements by Cintas in the California arbitration, plaintiffs filed their clause construction brief on February 9, 2006, seeking a determination by the arbitrator that the arbitration agreements permit class-wide and collective actions. *See* Pepich Decl., Ex. 3. After petitioners' clause construction brief had been filed in the California arbitration, and the issues were headed for decision in that forum, Cintas requested additional time to brief the clause construction issue, stating that it was too busy to file any opposition briefing before April 7, 2006. *See* Ex. 1 to *Veliz* Plaintiffs Emergency Request to Expedite Resolution of Transfer Motion Under 28 U.S.C. §1407. Cintas then used this extension of time to file the 70 cases at issue in this MDL petition. On or about March 20, 2006, Cintas filed 70 petitions in 70 district courts in 37 states seeking to preempt a decision in this arbitration on this clause construction issue. In its 70 cases Cintas seeks to compel the 1900 plaintiffs from the *Veliz* action to arbitrate in 70 local jurisdictions, but these are the very same parties who are seeking a

clause construction ruling in the California arbitration that will, if they are successful, allow them to continue to pursue their claims in that California arbitration/litigation.

Thus, Cintas' 70 cases seek to circumvent a decision by the arbitrator on the very issue that is set for decision in the existing arbitration proceeding and which will be subject to appeal to Judge Armstrong under AAA rules. There is simply no reason for this issue to be repeatedly addressed, considered and resolved by 70 different federal district court judges in 70 different jurisdictions, when the matter has been long-pending in the California arbitration/litigation. This is precisely the type of common factual situation where the MDL panel routinely centralizes duplicative actions to facilitate the just and efficient course of litigation, to prevent inconsistent rulings, the waste of resources and the inconvenience of the parties. As this panel has done many times in similar FLSA actions, the panel should exercise its jurisdiction to centralize these proceedings.

## V.    Conclusion

For all the reasons set forth above, the JPML is fully justified in exercising jurisdiction under §1407(a) to permit the transfer and consolidation of the pretrial matters on the petition actions before it, and there are compelling reasons for why the Panel should issue such a ruling.

DATED: May 3, 2006

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
THEODORE J. PINTAR
STEVEN W. PEPICH
JAMES A. CAPUTO
LAWRENCE A. ABEL
HELEN I. ZELDES

STEVEN W. PEPICH

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

- 13 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ALBERT H. MEYERHOFF
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone:  310/859-3100
310/278-2148 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
NANCY M. JUDA
1100 Connecticut Avenue, N.W., Suite 730
Washington, DC  20036
Telephone:  202/822-6762
202/828-8528 (fax)

ALTSHULER, BERZON, NUSSBAUM,
  RUBIN & DEMAIN
MICHAEL RUBIN
SCOTT A. KRONLAND
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
415/362-8064 (fax)

TRABER & VOORHEES
THERESA M. TRABER
VANESSA H. EISEMANN
JOCELYN S. SPERLING
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Telephone:  626/585-9611
626/577-7079 (fax)

Attorneys for Plaintiff

S:\CasesSD\Cintas\MDL\BRF0030620.doc

- 14 -

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.      That on May 3, 2006, declarant served the THE *VELIZ* PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE ACTIONS UNDER 28 U.S.C. §1407 by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.      Pursuant to Rule 5.12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, copies will be filed in each district court in which an action is pending that will be affected by this motion.

4.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 3rd day of May, 2006, at San Diego, California.

_____
BONNIE M. NAIDITCH

Judicial Panel on Multidistrict Litigation - Panel Attorney Service List

Docket: 1781 - In re Cintas Corp. Overtime Pay Arbitration Litigation

Status: Pending on / /

Transferee District:  Judge:

**ATTORNEY - FIRM**  **REPRESENTED PARTY(S)**

Dosker, Mark C.
Squire, Sanders & Dempsey, L.L.P.
One Maritime Plaza
Suite 300
San Francisco, CA 94111-3492

=> Cintas Corp.*; Plan Administrator for the Cintas Partners' Plan*

Pepich, Steven W.
Lerach Coughlin Stoia Geller Rudman & Robbins, LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

=> Abel, Robert J.*; Abrahamsen, David J.*; Ackerman, Nicholas*; Adams, Randall*; Addison, Jack*; Adkins, Donald*; Adolph, Joseph W.*; Agler, Bradley*; Agostini, Jason*; Agozzino, Vince*; Ainsworth, Daniel E.*; Albright, Ryan*; Alegria, Roberto Carlos*; Alert, Thomas Eugene*; Alfred, Chad*; Alioto, Brandon*; Allen, Alice*; Allen, Joseph*; Allen, Judd*; Allen, Sean*; Allred, Jonathan*; Allshouse, Michael Lee*; Allspach, Gary*; Alves, Louis*; Ames, Christopher J.*; Ammon, Ryan*; Amott, Troy*; Anaya, Issac*; Anaya, John*; Anderson, Darren Mitchell*; Anderson, Jeffrey*; Anderson, Matthew*; Anderson, Michael*; Anderson, Randy*; Anderson, Robert D.*; Anderson, Zebulan (Zeb)*; Andree, Nathan J.*; Andrews, Joe*; Andrews, Robert*; Ansink, Jr., John O.*; Aranegui, Gus*; Arango, Rick*; Arms, Rick*; Armstrong, Bryan*; Arroyo, Heriberto*; Arroyo, Sijifredo*; Artley, Stephen Paul*; Arvin, Harold W.*; Arvizu, Ronald*; Ash, Brian*; Atkins, James*; Augustin, Matthew*; Ault, Travis M.*; Avalos, Agustin*; Avalos, Guillermo*; Avery, Ivan Edward*; Avila, Hector*; Aybar, Jeffrey*; Bachman, Sean*; Bachmann, Kenneth J.*; Badgerow, Gary*; Bailey, Wayne C.*; Baker, Brian*; Baker, Joshua*; Baldwin, Daniel S.*; Baldwin, David*; Banks, Joe L.*; Baptist, Kenneth W.*; Barbarotta, Sam*; Barfield, Donald Ray*; Barlow, Stephen*; Barnard, Justin*; Barnes, Gregg*; Barnes, Relton*; Barr, Jeff*; Barrett, Jason*; Bartz, Michael*; Bass, Donnie*; Bassett, Dennis*; Bauer, Jr., Harold D.*; Baughman, Casey*; Baumer, Christopher*; Baxter, Aaron*; Beal, Kevin*; Bean, Robert W.*; Beard, Everett G.*; Beard, Mitchell Aron*; Beck, Joseph*; Beckham, Mark*; Bedard, Patricia*; Bell, Wade*; Bell, William Christopher*; Bender, Daniel Lee*; Benecke, Stephen C.*; Benedict, Tyrone Charles*; Benson, Josh*; Bentley, Hank*; Bereza, John*; Berlage, Joseph E.*; Berna, Brent*; Berry, Paul*; Bersch, Warren*; Bertrand, William*; Biase, Joseph D.*; Bickham, John D.*; Bickmeyer, Warren*; Bierach, Conrad*; Bigbee, Gregory Cole*; Bigelow, Jason Scott*; Bippus, David W.*; Bishop, Janice M.*; Bissin, Brooke A.*; Bitz, William J.*; Bivins, Michael*; Blackburn, Jessica Lynn*; Blackman, Matthew L.*; Blackmon, James Kurt*; Blaha, Christopher*; Blaisdell, Philip Daniel*; Blake, Thomas Flynn*; Blanchard, Bernard L.*; Blanco, Noe*; Blenden, Chad M.*; Blessing, Jay*; Bobeck, Craig*; Bobo, Brian*; Bobola, Kenneth*; Bodenmiller, George*; Bohn, David*; Bolden, Alfonso*; Bolen, Jr., Silas Ray*; Boman, Jason*; Bonacorsi, Daniel J.*; Bonds, Jr., Jackie Ray*; Booker, Kathleen*; Booth, Danel*; Borawski, Scott*; Borrmann, Kevin*; Boslaugh, Kevin*; Bostick, Tony L.*; Bostwick, Noah*; Bova, Jr., John S.*; Bow, Jonathon James*; Bower, Kevin*; Bowles, Jr., Robert F.*; Bowles, Randall*; Bowman, Daryl*; Boyd, Ricko Lonnell*; Boyle, Michael P.*; Boynton, Kevin*; Braaten, Bob*; Bracamontes, Ralph*; Bradley, Tory*; Brandt, Dean*; Branscome, Thomas Scott*; Brantley, Michael*; Bray, Michael C.*; Brewster, James*; Bridges, Larry Daniel*; Bridges, Thomas Allan*; Brien, Joseph*; Brinlee, Robert*; Brinning, Brandon*; Briseno, Manuel G.*; Bristow, Mark*; Brite, Bobby*; Britt, Tony*; Brock, Stephen*; Brook, Dezmon*; Brooks, Antoine Alonzo*; Brooks, Chris*; Brooks, Stephen*; Brown, Chris*; Brown, Christopher*; Brown, Danny L.*; Brown, Jonathan*; Brown, Jr., Gregory*; Brown, Jr., James*; Brown, Michelle*; Brown-Donald, Cory*; Brown-Phillips, Mary E.*; Browning, Jennifer L.H.*; Browning, Stuart*; Bruno, Stuart*; Brunson, Gregory*; Bryam, Jason Albert*; Bryant, Gregory S.*; Buddie, Brian*; Buen, Brian*; Bullard, Brandon Eugene*; Bunderson, Jason*; Burcke, Robert*; Burgess, Scott*; Burghart, Vince McClain*; Burke, Christopher*; Burke, Donald*; Burke, Michael*; Burress, James Allen*; Burt, Jonathan*; Burton, Crezone*; Bush, David J.*; Bustamante, Esequiel*; Butler, Dustin Lee*; Butler, Jeffrey A.*; Buttner, Christopher C.*; Buuck, Greg M.*; Cabrera, Jorge*; Cady, Chad Jason*; Cagle, Lucas Hunter*; Cala, Peter James*; Caldwell, Scott Patrick*; Callahan, John*; Calvin, Dean*; Camden, Christopher*; Cameron, Bruce*; Cameron, Chris*; Campion, Michael H.*; Campos, Gustovo G.*; Cantu, III, Leonel*; Carelock, Bryan*; Carney, Sr., Eric*; Carr, Boyd*; Carr, Ray Anthony*; Carrier, Gerardo*; Carrillo, Javier*; Carter, Charlie*; Carter, Jr., Nelson*; Carter, Kevin*; Carter, Matthew S.*; Carter, Stephen W.*; Carter, Terry*; Carthon, Ricky*; Caruso, Kenneth*; Cash, Jason*; Casselman, Dana*; Cassens, Everett W.*; Castens, Richard*; Castleberry, Don*; Caton, Clinton*; Caudill, Michael*; Cavagnaro, Tina A.*; Cavanaugh, Craig Robert*; Cavazos, Jesse*; Cervantes, Marcos*; Chainuck, Mark*; Chalmers, Scott*; Chambers, Sr.,

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
|  | Broderick*; Chambers, Veronica*; Chapman, Brent*; Chapman, David*; Chappell, Chad*; Charatin, Daniel*; Checchia, Davide*; Chesser, Larry D.*; Chew, William*; Chirino, Humberto*; Choate, Doug*; Christensen, Eugene*; Churches, Dennis L.*; Cingel, Timothy*; Cintron, Michael S.*; Citrano, Chris*; Clark, Brian*; Clark, Jr., Gerald*; Clark, Michael D.*; Clark, Shon D.*; Clayton, William W.*; Cleaves, Sr., Jason*; Clouse, Daniel*; Cobble, James*; Cockreham, Colin*; Coe, Steven M.*; Colavito, Marc*; Colby, Jeffrey*; Colca, Keith*; Cole, Dennis*; Colihan, Robert*; Collazo, Edwin Upeano*; Collins, Bobby*; Collins, French*; Colunga, Orlando*; Comaty, Kevin*; Combs, Gary*; Conigland, James W.*; Conley, Marty D.*; Connelly, James*; Conner, Michael*; Conti, Matthew*; Contreras, Carlos Javier*; Contreras, Javier*; Contreras, Ricardo*; Conway, Merle*; Cook, David*; Coombs, Jason M.*; Cooper, Erinn*; Cooper, III, Daniel*; Cooper, Leon Allen*; Cooper, Shirlene*; Cope, Jr., James Andrew*; Coppock, II, Lonnie*; Corelli, Charles*; Cornelius, Randall M.*; Cornett, Michael*; Cortes, Gustavo*; Cortes, Jr., Juventino*; Cortez, Sonny*; Cothran, Matthew*; Cothran, Robert A.*; Cotter, Bruce*; Cottini, Jeffrey Louis*; Cottrell, Michael*; Cottun, Jon-Mikal*; Coulon, Kevin*; Coulson, Jeffrey M.*; Cousins, Willie*; Covert, Roderick*; Cowles, Barbara*; Cox, Michael*; Cox, Shane A.*; Coy, Aaron*; Craig, John*; Craig, John Maurice*; Crawford, James Ryan*; Crawford, Nathaniel T.*; Crawford, Wesley*; Crews, Chad*; Crismond, Jeff*; Crivello, Tony*; Croft, III, Virgil Lee*; Crook, Robert*; Crosby, Germain*; Crumley, Timothy*; Cruz, Carlos R.*; Cruz, Rene*; Cruz, Samuel*; Culley, Donna J.*; Cumley, Michael*; Czamara, Jamie*; D'Amato, Pasquale*; Dahbu, Dahbu*; Dahl, Shawn L.*; Dahmke, Robert*; Dailey, Thomas, L.*; Dakos, Michael D.*; Dalsass, Mark*; Damron, II, Dan*; Danelle, Dana*; Dangerfield, Raymond*; Daniel, Roger*; Daniels, Jason*; Dardon, Jose*; Dauria, Philip*; Davis, Jason*; Davis, Jeffrey C.*; Davis, Robert Samuel*; Davison, Dustin*; Dawson, Dan*; Dawson, Keith C.*; Dawson, Timothy*; Day, Jackie Nelson*; Day, Patrick*; Debano, Craig*; DeBilzan, David*; DeBose, Erroll A.*; Deely, Daniel*; Dees, Chris C.*; DeFelix, Matthew J.*; Degroot, Robert J.*; Delaneo, David*; Delauro, Michael*; Delgado, Oscar R.*; Delort, John*; DelSorbo, Frank*; Dempsey, James*; DeMulling, Douglas*; Denise, Matthew*; Dennis, Marc*; Derenzo, Christopher*; DeRosia, Troy L.*; Dervin, John H.*; Desantis, Michael E.*; Devlin, Thomas*; Diaz, Albert*; Diazgranados, Humbert*; Dickerson, Jimmy*; Dickson, Kevin*; Diebler, Bryan*; Dilalvo, Carl*; Dillard, Marcus*; Dillon, Michael James*; Dimac, Jasmin*; Dipaolo, Derrick*; Dixon, III, Roy*; Dixon, Jean Lande*; Dixon, Timothy A.*; Dodge, Benjamin*; Dodson, Shirley*; Dodson, Tommy*; Doherty, Jr., John F.*; Dolan, John*; Doll, Russell*; Dollhopf, Thomas N.*; Dominquez, Frank Christopher*; Dompke, Alvin*; Donahue, Christopher*; Donegan, Michael*; Dool, Mark E.*; Dorris, Jermaine*; Doss, Robert*; Dossin, Ernest*; Downey, George*; Downey, James*; Drahos, James*; Dravland, David*; Drenckhahn, Larry A.*; Drendel, Lynn M.*; Driggers, Ashley*; Drought, Debra*; Drummond, Michael*; Ducey, Kevin Edward*; Duell, Clarence*; Dunham, Matthew H.*; Dunlap, Travis*; Durbin, Joseph Len*; Durbin, Phillip*; Durkin, R. Patrick*; Dwarte, Mark Daniel*; Dyer, John*; Eagle, Ryan Daniel*; Earl, Luis R.*; East, Joel*; Eastman, III, John James*; Eaton, Sean*; Ecija, Allan*; Edenfield, Samuel*; Edney, Jeff*; Edwards, Anthony*; Edwards, Douglas*; Edwards, Joseph E.*; Edwards, Mark*; Edwards, Wayne*; Eggebeen, John*; Ehrman, Steve*; Eldridge, Kendall*; Elliott, William*; Ellis, Sean*; Ellsworth, Jeffery*; Emberland, Douglas Brian*; Emmerling, Robert*; Eperthener, Andrew W.*; Erazo, Aliexer*; Erickson, Daniel*; Ericson, Robert*; Ernsperger, Jerry*; Ernst, Gregory*; Escovar, Jason*; Esparza, Jr., Sam*; Esparza, Pablo*; Esparza, Paul*; Estrada, Richard*; Etzler, Michael*; Evans, Edward*; Evans, Randall*; Evans, Terry C.*; Fabrizio, Samuel*; Fairley, Reginald D.*; Fancher, Thomas*; Farris, Greg*; Farthing, Kenneth*; Fast, Randolph*; Faul, Karl*; Faul, Shane*; Faux,, Jamie A.*; Favret, J. Michael*; Feagin, Mark Anthony*; Feehan, Scott*; Feeney, Patrick*; Fellin, Paul Lewis*; Ferreira, Carlton Michael*; Ferrell, Rick*; Ferrer, Hector*; Fielding, Scott*; Fields, Rickey*; Fillingame, Alan*; Finch, James*; Fincham, Jon Curtis*; Finnie, William D.*; Firer, Ruslan*; Fisher, Alfred*; Fisher, Nicholas*; Flagg, James*; Flanagan, Robert*; Fleck, James*; Flintom, Frank*; Flores, Eduardo*; Flores, Roger*; Floyd, Ricky*; Fogg, Jr., Norman*; Follen, James*; Folsom, James*; Folz, Jason*; Fonseca, Ricardo*; Fontenot, Jr., Gustave*; Forbes, Wanda*; Ford, John E.*; Ford, Robert C.*; Foreman, Michael E.*; Fortune, Scott*; Foster, H. Berk*; Foto, Jacob J.*; Fourman, Julia*; Fournier, Steven*; Fragassi, Shawn*; Fraginals, Mauricio*; France-Kelly, Timothy*; Franklin, Henry*; Franks, Glenn Mark*; Franks, Jerome*; Frashier, Dylan M.*; Frazer, Joshua*; Frazier, Joseph*; Freeman, Nathan*; Freeman, Scott*; French, Derek*; French, James David*; French, Ronald*; Fridley, Michael*; Frierson, David M.*; Frierson, Jeremaine*; Fries, Rick*; Frink, David*; Fuentes, Michael Anthony*; Fuerst, Craig*; Fugua, William*; Fulce, Jr., Raymond*; Gable, Jaymes*; Gage, Mark*; Gagne, William*; Gaines, Ronnie*; Galicia, Tomas*; Galik, Grant*; Gallo, Russ*; Galloway, Jr., Phillip |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | R.*; Galloway, Robert C.*; Gambill, Kevin W.*; Gamez, Ruben*; Garcia, Anthony*; Garcia, Edmundo*; Garcia, Edward P.*; Garcia, Jerry*; Garcia, Jr., Adan*; Garcia, Lossan*; Garcia, Tracy Ramos*; Gardner, Brian*; Gardner, II, Paul J.*; Gardner, Jr., Ronald*; Garity, Thomas David*; Garland, Kelby*; Garrett, Ricky*; Garrett, Shawn*; Garrett-Webb, Melinda*; Garrison, Lamont*; Gartin, Chad*; Gaskins, Stephen*; Gastelum, Jesse*; Gates, Sammy*; Gaul, Michael*; Gay, Michael Keith*; Gedinsky, Kevin*; Geer, Robert L.*; Geile, John*; Geissinger, Michael B.*; Gemmati, Michael*; Gemmati, Phillip J.*; Genther, Brandon*; Gentry, David Lewis*; Gentry, Joshua*; Gentry, Wyman*; Giamalva, Jr., Frank*; Giammusso, Carrie*; Gibson, Tyler John*; Gienapp, Dalero*; Gilbert, Brian*; Gilchrist, Joe*; Gill, John*; Gilliland, Brent*; Gilmore, James*; Gilmore, Josh*; Glover, Robert*; Godoy, Karlo*; Goemaat, Anthony*; Goida, Jeffrey*; Goines, Pamela*; Golden, Daniel*; Gomez, Jeffrey*; Gomez, Vincent*; Gonce, Raul Jose*; Gonzales, Albert*; Gonzales, Jesus P.*; Gonzalez, Ivan*; Gonzalez, Yovani*; Goodman, Stuart S.*; Gordineer, Donald*; Gordon, Todd*; Goslau, Richard*; Goviea, Eric S.*; Graham, Luke D.*; Grant, Bryan*; Gray, Glenn E.*; Green, Jason Warren*; Green, Steven*; Green, Wayne*; Greene, III, Tilmon C.*; Greene, Jeff*; Greene, Les*; Greer, Russell*; Gregor, Scott Patrick*; Gregory, Jonathan A.*; Gremillion, John Alex*; Griffin, Donald Allen*; Griffin, Michael*; Grim, Matt*; Griner, Joseph Lee*; Grisby, Jr., Vernon*; Gritsipis, Antonios*; Groves, Jeffrey*; Grucza, Troy D.*; Gubala, Thomas*; Gugino, David George*; Gula, Jon*; Gullett, Rickey L.*; Gunckle, Richard E.*; Gurnee, Kimberly*; Guthrie, Terrance P.*; Guys, Jr., Ralph*; Hager, II, Thomas*; Hale, Russell*; Hall, Eric*; Hall, Renee*; Hall, Robert*; Haloski, David M.*; Hamby, Anthony Dean*; Hamilton, David*; Hamilton, Jason C.*; Hammer, Bruce*; Hammerberg, Tammy*; Hammons, Cody A.*; Hanson, Dan*; Hanson, Sarah*; Hanson, Sheree*; Hanthorn, Brian Scott*; Hardin, Mark Lee*; Harper, Kevin*; Harper, Steven*; Harris, Cheryl*; Harris, Dwight*; Harris, John Michael*; Harris, Jr., Raymond Mac*; Harris, Kim*; Harrison, DeCarlo*; Hart, Laurence*; Hart, Mike*; Hart, Scott*; Hartwell, Joshua*; Hassan, Ghassan*; Hauk, Walter*; Hawkins, Randal Kevin*; Hawkins, Ryan*; Hawthorne, Delondon*; Hayes, Clyde*; Hayes, Jeremiah*; Haynes, John A.*; Hays, Alan*; Heaney, Joseph*; Heath, Caderis*; Hedgpeth, Kelly Chad*; Hehr, II, William W.*; Hein, Brandon K.*; Heinrich, Eric*; Helbert, Matthew C.*; Held, David*; Hellen, Richard*; Helton, Daniel*; Henderson, Stephen*; Henderson, Toni*; Hendry, Kami*; Hennigan, Jordan*; Henning, II, William D.*; Hennon, Charles*; Hermes, Darren M.*; Hermiller, Chad*; Hernandez, Jorge*; Hernandez, Victor Hugo*; Herndon, Jr., James Grady*; Herr, David*; Herrera, Efrain*; Herrington, Harvey*; Herron, James*; Herzog, Greg*; Hess, Brian Keith*; Hewett, Robert*; Hewitt, Joshua*; Hickey, Charles Terry*; Hildreth, Barrett*; Hill, Brad Duane*; Hill, Daniel*; Hill, Dustin L.*; Hill, Jr., Steven*; Hilliard, Michael*; Hilyer, Donald Keith*; Hines, Bruce*; Hipp, Randall S.*; Hoaglund, Edward*; Hodge, Bobby C.*; Hoefle, H. David*; Hoekman, Peiter*; Hoffman, Dana*; Hoffman, Terry G.*; Hoffmann, Glenn*; Hohenstein, Rodney*; Holbrok, Ryan Scott*; Holcombe, Lavatus*; Holland, Daryl*; Holland, Jason*; Holloman, Carvell*; Holloway, Dayton*; Holmes, Willie*; Horn, Ben*; Horn, John*; Horne, Timothy*; Horton, Thomas*; Hosack, Richard*; Hoskins, III, Joseph Wiley*; Hotchkiss, Benjamin*; Houha, Leonard*; Householder, Chad*; Howe, Ronald*; Howe, Scott*; Howe, Steven*; Howell, Sidney*; Howell, Tracy*; Hubbard, Tim*; Huber, Peter James*; Huertas, Jr., Wilfredo*; Hughes, John M.*; Hughes, Stephen*; Hughes, Stephen Richard*; Hulet, James*; Hulse, Gregory D.*; Humbles, Derrick*; Humphrey, Alex*; Hurst, Craig*; Hurtado, Alvaro*; Hurtado, Daniel*; Hussmann, Reuben John*; Hutson, Nick*; Hutto, Herman*; Indorf, Neal*; Infante, Angel*; Ingram, Brandon*; Isaacs, William Keith*; Ivins, Justin*; Jackson, Colby L.*; Jackson, James*; Jackson, Marvin*; Jackson, Michael David*; Jackson, Rex O.*; Jackson, Sergeo*; James, Beau*; James, Jack*; James, Joseph*; James, Patricia*; Jamieson, Ronald*; Jamison, Matthew Leonard*; Jaseckas, Kenneth*; Jaslove, Jeremy*; Jay, Jeff*; Jeansonne, Joel*; Jedrysek, Erik Stephen*; Jefferson, David K.*; Jenks, Todd*; Jennings, Timothy W.*; Jewell, Marcus Angel*; Jimenez, Ricardo*; Jinings, Nick*; Johanson, Sean M.*; Johnlouis, Albert*; Johnson, Courtney*; Johnson, Darrin*; Johnson, Deon*; Johnson, Douglas*; Johnson, Eric*; Johnson, Eugene*; Johnson, Jadarthia*; Johnson, James*; Johnson, Jeff C.*; Johnson, John D.*; Johnson, Kwan*; Johnson, Lamont*; Johnson, Mark H.*; Johnson, Martin F.*; Johnson, Stephanie*; Johnson, Thomas S.*; Johnson, Todd*; Joiner, Robert*; Jones, Brian*; Jones, Clifford*; Jones, Craig*; Jones, David Darryl*; Jones, David E.*; Jones, Greg*; Jones, I, Michael*; Jones, John Corey*; Jones, Joshua*; Jones, LaShawn*; Jones, Paul*; Jones, Paul R.*; Jones, Shane M.*; Jones, Thomas Roy*; Jordan, Albert*; Judd, Randy*; Kadilak, Ken*; Kaeg, Silverio Ted*; Kandal, Donald*; Karr, Brian*; Kassen, Dale Allen*; Kelleher, Eugene*; Kelley, Timothy James*; Kelly, Amber*; Kelly, William*; Kennedy, Glen*; Kerlavage, Jr., Joseph R.*; Kern, Jason*; Kilby, Kevin*; Kincaid, Don*; Kincaid, Eric R.*; King, III, Richie*; King, Thelenious James*; King, Willie |

*(Panel Attorney Service List for MDL 1,781 Continued)*

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|

A.\*; Kingsley, Hugh J.\*; Kinkead, Michael\*; Kintler, Joseph\*; Kinto, Thomas\*; Kirby, Jason\*; Kirksey, Joel L.\*; Kirwan, Thomas\*; Klement, Robert\*; Klimm, Robert W.\*; Kloes, William\*; Klutch, Thomas\*; Knapp, Jason\*; Kohl, David\*; Kolby, Randall\*; Koltys, Jason\*; Konieczny, Edward\*; Kormelink, Bret Michael\*; Koste, Brian\*; Koste, Jason Lyle\*; Kostiuk, Adrian\*; Kougl, Alan F.\*; Kozelisky, Zachary\*; Kraft, David\*; Krause, Christopher\*; Kremer, Fred\*; Kreutz, Patrick\*; Kropp, James J.\*; Krueger, Joshua\*; Kuba\*; Kulessa, Gordon Scott\*; Kull, Christopher\*; Kunda, Matthew\*; Kunz, John\*; Labastille, Sergio\*; Labrecque, Ronald\*; Lackey, Christopher Alan\*; Ladd, Jr., Carl Louis\*; LaFond, David\*; Lagreca, David\*; Lahey, Kevin M.\*; Laissle, Sean M.\*; Lambert, Jeffrey\*; Lancaster, Kurt\*; Lanci, Edward\*; Lancios, Joseph\*; Landry, Anton\*; Landry, Jr., Steve\*; Langdon, James Craig\*; Lange, John C.\*; Lanigan, Brian David\*; Lanning, Brian\*; Lantrip, Shannon\*; Lapp, Mario T.\*; LaPrell, Bill\*; Larque, Renee\*; Laskowski, Jr., Thomas M.\*; Lassiter, Greg\*; Laster, Michael\*; Lauer, Mark\*; Laurain, Eric\*; Lavergne, IV, Theodore J.\*; Lawrence, Sean Warren\*; Lawson,k Brady\*; Leazier, Linda\*; Leben, Erik\*; Ledbetter, Sr., Thomas Jap\*; Ledsworth, Donald\*; Lee, Kevin\*; Leeder, Christopher\*; Leinberger, Robert Lee\*; Lemanski, Frank\*; Lewis, Donald\*; Lewis, Kelvin T.\*; Lewis, Roger\*; Lewis, Ronald Dee\*; Lewis, Russell\*; Lewman, Lori\*; Lickliter, Charles\*; Liktor, William\*; Liles, Ron\*; Line, Larry L.\*; Link, Timothy\*; Linkey, James Joseph\*; Linn, Michael\*; Lippold, Geoffry\*; Lipscomb, III, Leonard\*; Lishman, John\*; Lisiakowski, Jody\*; Literal, Jr., Darrell R.\*; Litvack, Adam\*; Livernois, Michelle\*; Livingston, Daniel\*; Lizarraga, Enrique\*; Lloyd, Noel\*; Lodewyck, David\*; Lombardo, Jason\*; Long, Ernest\*; Long, Jr., Thomas\*; Long, Phillip\*; Longoria, Robert James\*; Longstaff, Gregory\*; Looney, Jr., Ron\*; Lopez, Adan\*; Lopez, David\*; Lopez, Gilbert\*; Lopez, Juan Sanchez\*; Lopez, Roberto\*; Loranger, Matt\*; Lounsbury, Rodger\*; Lovatt, Bob\*; Love, Sean P.\*; Lovett, Shannon\*; Lovins, Todd Alan\*; Lowell, Joseph\*; Lubrano, Anthony\*; Ludwig, Jeffrey\*; Luna, Gilbert\*; Lupo, Thomas\*; Lutz, James Patrick\*; Mackelburg, Kevin\*; MacLagan, Jeffrey Todd\*; MacMillan, Joseph\*; MacPetrie, Bonnie\*; Maddox, Jeffrey Heath\*; Madison, Brandi\*; Madrid, Isaac Casper\*; Magee, Charles Eric\*; Magee, Robert Glenn\*; Maglosky, Ken\*; Mahnken, Leon\*; Maldari, Joseph\*; Maldonado, Daniel\*; Maldonado, Jr., Donald J.\*; Maloch, Andrew\*; Manale, III, Ted\*; Manfre, Peter\*; Mangus, Ryan Edward\*; Manion, John\*; Marcoux, Joseph\*; Marino, Joseph\*; Mariscano, Angelo\*; Marks, Marcus\*; Marrufo, Gilbert\*; Martel, Chad J.\*; Martell, Jr., Charles\*; Martensen, Martin\*; Martin, Douglas\*; Martin, Frederick Lamont\*; Martin, Jeffrey S.\*; Martin, Joe K.\*; Martin, Jr., Richard Earl\*; Martinez, Jose\*; Martinez, Miguel\*; Maser, Richard\*; Mason, Christopher R.\*; Mason, Joseph\*; Mason, Jr., Charles E.\*; Masoner, Jeffrey\*; Massey, Jason K.\*; Mastin, Scott R.\*; Mathis, Antonio D.\*; Matthews, Duane\*; Matthews, Traco\*; Maule, John\*; Mauro, Michael\*; Maves, Cythia\*; Maye, Charles\*; Mayweather, Victor\*; McAfee, Noritaka Kevin\*; McAlister, Michael\*; McArdle, Thomas J.\*; McAshan, Sr., Craig E.\*; McBeth, Mike\*; McCabe, Steven\*; McCain, Barry Preston\*; McCain, Kenny P.\*; McCarney, Randy\*; McCarthy, Carl\*; McClellan, Rogers\*; McClendon, Stephen\*; McCoins, Aaron R.\*; McComiskie, Sean\*; McCoy, Michael Eric\*; McCraw, Michael Anthony\*; McCue, Jr., Edward\*; McCune, Dave\*; McDaniel, Chester\*; McDaniel, David L.\*; McDermott, Eric\*; McDermott, Kenneth\*; McEldowney, Wendell\*; McFadden, Eric\*; McFall, Jr., Jeffrey Wayne\*; McGee, Jr., Richard\*; McGhee, Todd\*; McGinley, Eileen M.\*; McGuire, Tim\*; McKee, Bradley J.\*; McKee, Brian\*; McKinney, Duane\*; McKinney, Raymond Dale\*; McLaughlin, Robert\*; McNamara, Sr., Michael Lee\*; McNeela, Tim\*; McNemar, Sean P.\*; McNiven, Steven\*; McQuigg, Anson\*; McRoy, David Linton\*; Mecum, Andrew O.\*; Medeiros, IV, Joseph Camara\*; Medeiros, Michael\*; Medina, Cesar\*; Meeker, William A.\*; Mejia, Robert\*; Mekionis, Leonardas\*; Melendez, Edwin\*; Memmott, Derek Johnson\*; Mendoza, Adrian\*; Mendoza, Carlos T.\*; Mercado, Jonathan\*; Merchant, David\*; Mertens, James\*; Metheney, II, Edward\*; Meyer, John\*; Meyers, Richard\*; Michelfelder, John\*; Migdol, Fred\*; Miguel, Alexander Eduardo\*; Mikulski, Zenard W.\*; Miller, Harvey\*; Miller, Jeffrey\*; Miller, Josh\*; Miller, Jr., Edward\*; Miller, Lance A.\*; Miller, Randy\*; Miller, Troy A.\*; Milloy, Cameron Elias\*; Mills, Vilera\*; Miner, Stephen E.\*; Minor, Jack McLean\*; Miranda, Jr., Alberto\*; Misback, Mark\*; Mitchell, David Andrew\*; Mitchell, Lawrence F.\*; Mitchell, Walter\*; Moch, Jeffrey\*; Molero, Jorge\*; Monroe, Kirk Lee\*; Montanez, Jr., Christino S.\*; Monteith, Kevin Neil\*; Montez, Eddie\*; Montez, Tony\*; Montgomery, Brian Edward\*; Monzon, Jose R.\*; Moon, Jerry\*; Moore, Brian\*; Moore, Gary Brandon\*; Moore, II, Ronald Calvin\*; Moore, Mark\*; Moore, Robert\*; Moots, William Brian\*; Moran, Kaile\*; Moravitz, Ryan\*; Morazan, Rodolfo\*; Morell, Jr., Carl T.\*; Moreno, Michael\*; Moreno, Ramon\*; Moreno, Rogelio\*; Morford, Edward\*; Moriarty, Patrick\*; Morris, Allen Louis\*; Morris, Craig E.\*; Morris, Dale\*; Morrison, Lori Ann\*; Moser, Michael Shane\*; Moss, Darrell\*; Moss, Lawrence\*; Moss, Randell\*; Mowry, Greg\*; Moye, Jr., Ben\*; Mueller, Bryan Michael\*; Muellner, Lee\*;

---

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | Mullin, John*; Mullins, Michael*; Mullins, Tony F.*; Munday, Stacie L.*; Muniz, Eloy Pedro*; Munn, Brian*; Munoz, III, Juan*; Murphy, II, Joseph*; Murphy, Joe*; Murphy, Matthew*; Murphy, Michael*; Musselwhite, James*; Myers, David*; Napoli, Ross*; Narbone, James*; Navarijo, Clint*; Navarro, Stephen*; Neboyskey, Christopher*; Negrete, Enrico*; Nelson, Mark N.*; Nelson, Tyrick D.*; Newcomb, Christopher*; Nichols, Jennifer*; Nichols, Rusty N.*; Nichols, Tracy*; Nichols, Victor*; Nicholson, III, Joseph*; Nicolai, Lowell R.*; Nicotero, III, Ross*; Nieves, Jr., Julio*; Nordstrom, Kevin*; Norris, Leonard N.*; Novak, Michael J.*; Novatnak, Robert*; Nucci, Lisa*; Nunez, Danny*; Nutall, Leman*; Nye, Timothy*; O'Connell, Stephen*; O'Keefe, Michael B.*; O'Nan, Kelly Leo*; O'Neill, Brian*; Oblinger, Chris*; Oertel, Joseph Michael*; Offenberger, Greg S.*; Ogden, Andrew*; Ohler, Chris*; Okolovitch, Richard*; Oliver, Richard*; Olli, Jr., Mark*; Olson, Christopher Todd*; Olson, Jamie*; Orgeek, Daniel*; Orosco, Salvador*; Orsini, Chris*; Ortega, Chris*; Ortega, Richard D.*; Ortiz, Andres*; Oscypala, Andrew*; Osman, Jack*; Osman, Michael*; Ospina, Fabian*; Otero, Joseph Scott*; Otis, Daniel*; Overloop, Trent Van*; Overman, Alonzo K.*; Overton, Neil*; Owen, Steven*; Owens, Edward*; Pacyna, Glen*; Padgett, Jason*; Padron, Raymond*; Pagan, Michael Angel*; Pagani, John*; Pain, Eugene R.*; Palma, Harry*; Panebianco, Richard*; Paradis, Barry*; Parker, Benny*; Parker, Jr., Eddie Lee*; Parker, Scott*; Parkins, Felipe*; Parks, II, Daniel Lee*; Parra, Raymond*; Parrish, Harry*; Parson, III, Barney*; Parsons, Jeffrey D.*; Partain, Phillip*; Parus, Blase*; Pascual, Todd*; Paske, Brad L.*; Patterson, Casey*; Patton, Darrin*; Pavia, Brian M.*; Peace, Jarrod*; Pearson, Melvin*; Pedigo, Brent*; Peek, Michael W.*; Pellerito, Michael J.*; Pelley, Jonathan*; Pena, Jr., Daniel*; Penn, Charles*; Perdomo, Jose Anibal*; Perreira, Hector Josephs*; Perry, Alfred*; Perry, Timothy*; Perry, Xavier*; Perzak, Theodore*; Pettit, Douglas*; Petty, Raymond*; Petty, Robert*; Phillips, Jason*; Phillips, Jeffrey*; Pianelli, Anthony*; Pick, Jr., Theodore*; Pickett, John C.*; Pieper, Terry*; Pierce, Glen H.*; Pilgrim, Todd*; Pinkston, Brad*; Pirkey, Donald M.*; Plotino, Vincent*; Plush, III Donald Ray*; Podsiadlo, Andrew*; Poke, Jeffrey T.*; Polk, Gerald*; Polo, Jr., Omar*; Pomales, Juan*; Popp, Richard*; Poquette, Gery D.*; Porta, Jonathen*; Porta, Terry*; Porter, Christopher*; Porter, Robert Darrell*; Postell, Dominique Douglas*; Potechko, Carl*; Potteiger, Robert*; Pottichen, Jr., William F.*; Powers, Juan*; Prejean, Barney*; Prescia, Salvador*; Prewett, Jeff*; Price, II, Bobby Joel*; Price, James Alan*; Price, Jason*; Prieur, Michael*; Primerano, David*; Prince, Bobby L.*; Prohoroff, Kance*; Prosser, Michael*; Provance, Thomas*; Puckett, Rodney*; Purcell, Cecil*; Purdy, Russell Edward*; Puzzo, Natalie*; Quarrie, Thomas A.*; Quigley, James*; Quinn, Michael*; Quinn, Steven*; Quiroz, J. Adam*; Rabine, David*; Rambo, Steven*; Ramirez, Brett*; Ramirez, Jeronimo*; Ramos, Richard*; Randall, Kyle Richard*; Rapplean, Kurt*; Rasmussen, Glen*; Rasmussen, Jon*; Rasmussen, Russell*; Rauch, Darren*; Raulerson, Roy S.*; Raymond, Thomas*; Redmon, Rolondo D.*; Reeder, James A.*; Reedy, Jr., Robert*; Reese, Jr., Charles*; Reid, James Kevin*; Reid, Randall A.*; Reid, Tracy*; Reinwald, Ken*; Reither, Matthew*; Remsburg, Aaron*; Reno, Roy T.*; Resta, Andrew Lee*; Rettke, Kevin*; Reveles, Atanacio*; Reyes, Joe Michael*; Richard, Dennis M.*; Richards, Anthony*; Richards, Gerald A.*; Richards, Hopeton*; Richards, James*; Richardson, Ron*; Richardson, Ronald*; Richie, David*; Ricketts, Michael*; Rieck, Anthony*; Riley, Brian*; Rivera, Carlos*; Rivera, Gabriel*; Rivera, Jr., Ernesto*; Rivera, Mark*; Rivera, Ramon*; Rivera, Richard A.*; Rivero, Alberto L.*; Rizzo, Jason*; Rizzo, Jr., John*; Roberts, Mark D.*; Roberts, Richard*; Robertson, Andrew*; Robinette, Scott*; Robins, Sam*; Robinson*; Robinson, Antonio*; Robinson, Larry Keith*; Robinson, Patrick Dontae*; Robinson, Paul*; Robinson, Ryan M.*; Robinson, Von D.*; Rocha, Dominic*; Rodarte, Richard*; Rodela, Mario M.*; Rodriguez, Daniel*; Rodriguez, III, Eluterio*; Rodriguez, Jose Luis*; Rodriguez, Richard*; Rojas, IV, Raymond A.*; Rolfe, William*; Rolko, Edward J.*; Roman, Pedro J.*; Romero, Jesus*; Romero, Joe*; Romie, Anthony*; Rorick, Michael*; Rose, David B.*; Rose, Steve*; Rosell, Daniel*; Rosenberger, Sherry L.*; Ross, Michael A.*; Ross, Ray*; Ross, Timothy*; Roston, Lisa*; Rouco, Jr., Lazaro A.*; Rousseau, William Henry*; Rowan, Rodger L.*; Roy, Larry*; Rubens, Rene*; Rucinski, Jr., Gary*; Rudd, James Daniel*; Rumpf, Michael*; Russell, Gregory*; Russell, Michael E.*; Russo, Marc*; Ruta, Charles*; Ryan, Christopher Scott*; Saavedra, Roy*; Salazar, Gregory M.*; Salazar, Horacio*; Salerno, Ronald*; Salo, Timothy D.*; Samuels, Michael Jerome*; San Juan, Larry*; Sanabria, Anthony*; Sanchez, Jesus R.*; Sanderson, Michale*; Sandoval, Manuel*; Sandoval, Max*; Sandoval, Steven*; Santalucito, Vincent*; Santana, Victor*; Santiago, Jr., Genaro*; Santos, Allen*; Santos, Carl*; Santos, Daniel*; Santos, David*; Saucedo, Amanda*; Saulog, Mario B.*; Savage, Chris*; Savage, Roderick*; Savas, James*; Savino, Robert*; Sayles, Kevin M.*; Schaal, Christopher Werner*; Schaffer, Timothy*; Schaper, Matt*; Schepers, Edwin*; Schlabach, Richard A.*; Schlamp, Renee Laura*; Schneider, Anthony*; Schneider, |

*(Panel Attorney Service List for MDL 1,781 Continued)*

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
| --- | --- |
|  | John A.\*; Scholl, Michael\*; Schomburg, James F.\*; Schroeder, Doug\*; Schubert, Robert D.\*; Schultz, Kent L.\*; Schumacher, Zachary P.\*; Schwartz, Garry\*; Schwartz, Glenn\*; Schweiss, John\*; Scialanca, David\*; Sciscio, Jesse Paul\*; Scott, Joshua\*; Scott, Jr., Bobby Joe\*; Seamons, Arthur Franklin\*; Sebastiano, John\*; Secora, Jason\*; Seech, Jason\*; Seitz, John W.\*; Sepulveda, Vito\*; Serrano, Jr., Ruben\*; Sessoms, John\*; Sexton, Jerry\*; Seymour, Adam\*; Shaw, Aaron\*; Shaw, Brenda\*; Shaw, Randy\*; Sheck, Troy P.\*; Sheehan, Daniel V.\*; Sheehy, Andrew\*; Sheets, Scott\*; Sheets, Steven\*; Sheipline, Richard\*; Shelton, Brian James\*; Shepard, Perry\*; Sheperd, Dan\*; Shepherd, Michael\*; Shepherd, Rebecca\*; Sheppard, Elton\*; Sherfield, Robert Eric\*; Sheridan, Timothy\*; Shirey, Richard (Cres)\*; Shonk, Jay Daniel\*; Shook, Jared W.\*; Shores, Wayne Matthew\*; Shortencarrier, Daniel\*; Shufford, Jr., Robert Lee\*; Sickkinen, John Davin\*; Siena, Michael A.\*; Sigl, Jonathan\*; Silva, Donald R.\*; Silvas, David\*; Simmons, Jr., Elliott F.\*; Simmons, Mario\*; Simmons, Robe\*; Simms, Gamet\*; Simon, Jermaine\*; Simpson, Harold\*; Simpson, Heather L.\*; Sipres, Joe C.\*; Sizemore, Glen Arthur\*; Skuratovich, David\*; Slade, William\*; Slay, David\*; Sledz, Steven\*; Sloane, Richard\*; Slocum, Ray\*; Slone, Jr., Ralph\*; Smeltzer, Terry\*; Smiley, Almond\*; Smith, Barbara\*; Smith, Benjamin N.\*; Smith, Bruce P.\*; Smith, Carll\*; Smith, Carolton Lamar\*; Smith, Clayton Robert\*; Smith, Daniel\*; Smith, Darrin\*; Smith, Glenn\*; Smith, III, Sam\*; Smith, James Earl\*; Smith, Jonathan\*; Smith, Kelly\*; Smith, Michael\*; Smith, Michael R.\*; Smith, Michael S.\*; Smith, Michael W.\*; Smith, Patrick\*; Smith, Paul Douglas\*; Smith, Phillip A.\*; Smith, Richard\*; Smith, Scott Allen\*; Smith, Sr., Terrence Y.\*; Smith, Vincent\*; Smith, Walter\*; Snell, Richard\*; Snyder, Greg\*; Solano, Jaime\*; Solorio, Juan\*; Solorzano, Alvaro\*; Soroka, Allen\*; Sossong, Thomas\*; Sothern, T. Gregory\*; Southerland, Todd Daniel\*; Spinale, James\*; Spivey, Randy\*; Springston, Jeff\*; St. John, Barry\*; Staggs, James Ervin\*; Staggs, Kevin\*; Stamper, Fred\*; Stancil, Michael\*; Staples, Shade\*; Stark, Michael\*; Starkey, Aaron\*; Starnes, David\*; Starr, Garett\*; Stearns, Tommy\*; Steel, Jesse L.\*; Steele, Donald Wayne\*; Stefani, John\*; Stefanick, Jared\*; Steiner, William\*; Stellato, Eric\*; Stephens, Jeff\*; Stephens, Randall\*; Stewart, Clarence\*; Still, Dexter\*; Stillfield, Miguel\*; Stokes, Bryan\*; Stokes, Lavonzelle\*; Stoklosa, Keith\*; Stoklosa, Michael\*; Stone, John\*; Stoppel, Tracy\*; Storie, Kenneth S.\*; Story, John\*; Strader, Christopher\*; Straka, Chris\*; Streng, Derek\*; Stroup, Carl D.\*; Stuckey, Jarred D.\*; Sturgis, Tom\*; Sturkie, Rodney\*; Stutz, Shiloh\*; Sudol, Wes\*; Sullivan, Robert\*; Summers, Tony\*; Sumpter, III, Max\*; Sumption, Trevor\*; Sutter, John Michael\*; Sweet, Daniel T.\*; Swenson, Todd\*; Swett, Jr., Steven T.\*; Sword, Richard\*; Sylvester, I, George\*; Sylvia, Chris\*; Tackett, David\*; Talbert, Jr., Ralph E.\*; Tantillo, Stephen\*; Tapia, Joseph\*; Tarantola, Thomas\*; Tatum, Christopher\*; Taunton, John Logan\*; Taveras, Luis\*; Taylor, Donald E.\*; Taylor, Kurt H.\*; Teague, Eric D.\*; Tenney, Sandy\*; Tepe, Jeffrey K.\*; Terrell, Antwan\*; Theis, Thomas\*; Theisman, John\*; Theriault, James\*; Therrien, Bernard\*; Thoma, Michael\*; Thomas, Christopher W.\*; Thomas, Ernest L.\*; Thomas, Gerry\*; Thomas, III, George\*; Thomas, Jack Darren\*; Thomas, Jr., James\*; Thomas, Theodore\*; Thompson, Joe\*; Thompson, Mark\*; Thompson, Robert\*; Thompson, Tommy\*; Thompson, Wayne\*; Thornhill, II, Larry\*; Tiegen, Jason\*; Tillison, Tony Demario\*; Tilseth, Steven\*; Tisdel, Edward E.\*; Tokish, Nicholas\*; Tomaszewski, Scott\*; Tomkinson, John P.\*; Tompkins, Brian\*; Tooley, Jimmy Ray\*; Toone, Marc A.\*; Torrez, Julian\*; Torris, III, Leonard R.\*; Tow, Christopher\*; Travis, Jason\*; Treft, Harold\*; Trimble, Vassandral\*; Truax, Keith\*; Truman, Scott\*; Tucker, Cary\*; Tully, Jr., John\*; Turner, Daniel Scott\*; Tusing, Troy\*; Tussey, John Rile\*; Twitty, Derrel\*; Tyrka, Peter\*; Uballez, Aaron R.\*; Uber, Gregory Steven\*; Ulloa, Hector\*; Underwood, Matthew\*; Upshaw, Jobette T.\*; Urbanczyk, Kenneth\*; Uschold, John E.\*; Vaitu'u, Jr., Ulualo\*; Vallette, Charles\*; VanAuken, Ralph\*; Vance, Adam\*; Vanderkuyl, Christopher John\*; Vanderpool, William Ed\*; Vandervort, Steve\*; Vasquez, Juan\*; Vasquez, Ruddy\*; Vassau, Jeff\*; Vazquez, Fabian\*; Vega, Jaime\*; Veliz, Paul\*; Venable, Gary\*; Venable, Kevin\*; Vergara, Gerardo\*; Vernille, Stephen\*; Verucchi, Keith\*; Vesey, Brena\*; Vetsch, Todd\*; Vick, Johnnie Lee\*; Vickless, Dave\*; Villapudua, Bernard\*; Villegas, Ignacio\*; Vo, Tuan Phi\*; Von Coppenolle, Greg\*; Voss, Todd\*; Vulaj, Victor\*; Wakefield, Keith\*; Waldorf, Michael\*; Waldschmidt, Jeffrey R.\*; Walker, Anthony S.\*, Walker, Frank Thomas\*; Walker, Willie\*; Wallace, Andrew\*; Wallace, Jacob\*; Wallace, Jason\*; Walston, Jeff\*; Walters, Lynn Dee\*; Ward, Edwin\*; Warner, Andre L.\*; Washington, Monte\*; Washington, Sharmane Quontrel\*; Washington, Valtorian Evander\*; Wasmer, Tade L.\*; Wasylik, Thomas\*; Watkins, Bradley Steven\*; Watson, Demond\*; Webb, Thomas\*; Weeks, Matthew Jason\*; Weinert, Fred K.\*; Weisbecker, Stephen\*; Weiss, Matthew\*; Wells, John\*; Wenner, Cade T.\*; West, Clint\*; West, Michael\*; Westover, Steve\*; Wetoszke, Douglas\*; Whalen, Jeremy Edward\*; Wheaton, David\*; Wheeler, James Richard\*; Whitcomb, Frederick D.\*; White, Anthony\*; White, Brian\*; White, James\*; White, Jr., Joseph\*; White, Jr., Richard Allen\*; White, Lonnie\*; White, Matthew\*; White, |

---

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|

Phillip Joel*; Whitener, Jessy*; Whiteoak, Jay R.*; Whitfield, Charles Lee*; Wick, Matthew*; Wickman, Steve*; Wiehl, Steven*; Wiggins, Raiford F.*; Wildeman, James*; Williams, Andre*; Williams, Barry C.*; Williams, Candice*; Williams, Charles Anthony*; Williams, Christopher*; Williams, Damon*; Williams, Edward*; Williams, James*; Williams, Jeffrey Lee*; Williams, Joel*; Williams, Kelan L.*; Williams, Larry James*; Williams, Paul*; Williams, Robert*; Williams, Sam*; Williams, Shannon Lee*; Willis, Rufus L.*; Wilmoth, Brandon*; Wilson, David*; Wilson, Jason L.*; Wilson, Jr., Ronald*; Wilson, Robert N.*; Wilson, Robert Reed*; Wilson, Ronald Joseph*; Wilson, William A.*; Wilton, Jeffrey Dean*; Winans, Sr., Ronald*; Winberry, john*; Windom, Randy L.*; Wingo, Ryan Glenn*; Witoske, Richard*; Witty, Aaron Paul*; Wobbrock, Jeffrey Craig*; Wolf, Erik*; Wolf, JoAnn M.*; Wolfe, Jay Christopher*; Wolner, Timothy*; Wood, Lendon*; Wood, Mark Dolton*; Wood, Michael Lane*; Wood, Robert*; Wood, Robert Lane*; Woodfin, Kenneth E.*; Woods, Jr., Earl C.*; Woodson, Mark William*; Woody, Ronald*; Wookey, Gene*; Woolwine, Eric*; Wragg, Mark Richard*; Wright, Jerry*; Wright, Terry*; Xaros, Arthur*; Yarbrough, Gary*; Yates, Charles B.*; Ybarra, Louis*; Ymaya, Cesar*; Yontz, Robert*; Young, Jr., John W.*; Young, Richard*; Youngbrandt, Stefan*; Yowell, William*; Zacharias, Michael*; Zadnick, Aaron M.*; Zall, Bradley*; Zapata, Fernando*; Zarbaugh, Ruth Ann*; Zavala, Edwin*; Zayas, Jr., Hector*; Zeda, Moises*; Zermeno, Oscar*; Zigler, Ryan*; Zygarlicke, Sarah R.*; Zytkowicz, Michael*

Rubin, Michael
Altshuler Berzon Nussbaum Rubin & Demain
177 Post Street
Suite 300
San Francisco, CA 94108

=> Capuchino, Neal*; Gray, Charles Leroy*; Reed, David W.*

Traber, Theresa M.
Traber & Voorhees
128 North Fair Oaks Avenue
Suite 204
Pasadena, CA 91103

=> Baudier, Jr., Ramon J.*; Dixon, Jr., Billy Ray*; Jones, Gerald*; Rowell, Ronda*

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re CINTAS CORP. OVERTIME PAY | ) | MDL No. 1781 |
| ARBITRATION LITIGATION | ) | |
| | ) | |

**DECLARATION OF STEVEN W. PEPICH IN SUPPORT OF
THE *VELIZ* PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO
TRANSFER AND CONSOLIDATE ACTIONS UNDER 28 U.S.C. §1407**

I, STEVEN W. PEPICH, declare as follows:

1.     I am a member of the State Bar of California and the bars of numerous United States District Courts including the District Court for the Northern District of California. I am a partner in the San Diego law firm of Lerach Coughlin Stoia Geller Rudman & Robbins, which is co-counsel for the plaintiffs in *Paul Veliz et al. v. Cintas Corporation*, Case No. 03-1180 SBA (the "*Veliz* Action"), which is pending before the Hon. Saundra Brown Armstrong. I am also counsel for petitioners in this MDL proceeding. Approximately 1,900 of the plaintiffs in the *Veliz* action are Respondents in the 70 related actions filed by Cintas in District Courts around the country.

2.     The following are true and correct copies of the matters described:

| | |
|---|---|
| Exhibit 1: | Answer to Demand for Classwide Arbitration, filed by Cintas on July 9, 2004; |
| Exhibit 2: | Letter from AAA Case Manager Karen Fontaine to counsel for the parties on July 9, 2004; and |
| Exhibit 3: | Claimants' Clause Construction Opening Brief, filed February 9, 2006. |

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct and that this declaration is executed this 3rd day of May 2006 in San Diego, California.

_____

                    STEVEN W. PEPICH

S:\CasesSD\Cintas\MDL\dec00030632.doc

EXHIBIT  1

07/98/2004 14:38 FAX 415 393 9887     SQUIRE SANDERS & DEMPSEY          Ø004

1  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Mark C. Dosker (CA Bar #114789)
2  Michael W. Kelly (CA Bar #214038)
   Joseph A. Meckes (CA Bar #190279)
3  Cheryl A. Hipp (OH Bar # 0062959)
   Angela N. O'Rourke (CA Bar #211912)
4  One Maritime Plaza, Third Floor
   San Francisco, CA 94111-3492
5  Telephone:   +1.415.954.0200
   Facsimile:   +1.415.393.9887
6
   Attorneys for Respondent
7  CINTAS CORPORATION

8

9                         BEFORE THE

10             AMERICAN ARBITRATION ASSOCIATION

11

12  PAUL VELIZ, et al., On Behalf of Themselves      No. 11 160 01323 04
    and All Other Similarly Situated,

13
                    Claimants,
14
                                                     ANSWER TO DEMAND FOR
        vs.                                          CLASSWIDE ARBITRATION
15
    CINTAS CORPORATION, an Ohio
16  corporation

17                  Respondent.

18

19        Pursuant to Rule 4 of the American Arbitration Association's ("AAA") National Rules for

20  the Resolution of Employment Disputes ("National Rules"), respondent Cintas Corporation

21  ("Cintas") hereby submits its initial Answer to the May 4, 2003 Demand for Classwide Arbitration

22  Under AAA Employment Arbitration Rules and Supplementary Rules for Class Arbitration

23  ("Demand for Arbitration") submitted to the AAA by counsel purportedly representing 115

24  current or former Cintas employees ("Claimants") presently, and potentially thousands to come in

25  the next few months.

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

ANSWER TO DEMAND FOR CLASSWIDE ARBITRATION
No. 11 160 01323 04

Exhibit 1

I.    INTRODUCTORY STATEMENT

1.    On May 4, 2003, counsel for Claimants submitted the Demand for Arbitration to the AAA demanding "arbitration on a class and/or collective basis . . . all state and federal claims for overtime compensation and backpay" that had been alleged in the complaint filed in *Veliz et al. v. Cintas Corporation et al.*, No. C-03-1180-SBA (N.D. Cal.) (the "District Court Action"). For the moment, Claimants are 115 individuals from 11 different states who had previously been plaintiffs in the District Court Action but who were ordered by the Court to arbitrate their dispute with Cintas. Each Claimant is a party to one of multiple materially different arbitration provisions that are governed by the laws of 11 different states and which expressly require that arbitration be held in at least 29 different counties across the nation. As summarized below, if Claimants' counsel have their way, there soon will be thousands of claimants -- each of whom is a party to one of multiple different arbitration provisions that are governed by the laws of numerous different states (probably 42) and which expressly require that arbitration be held in hundreds of different counties across the nation. Arbitrating this dispute on a class basis or collective basis, as Claimants have demanded, would require the application of the laws of up to 42 different states where Cintas has employees (and also the differing law of the various federal appellate circuits where those states are located) and would involve the presentation and consideration of large volumes of evidence on an individual basis for each and every member of the putative class. As set forth in more detail below, and as will be set forth in further detail if this matter goes forward, the AAA lacks the authority to administer – and any arbitrator(s) lack the authority to arbitrate -- this Demand for Arbitration on a class basis or collective basis, and to do so would directly violate the express terms of each of the separate arbitration agreements between Cintas and each of the Claimants as well as violate the express terms of each of the separate arbitration agreements between Cintas and each of the members of the putative class and putative subclasses.

2.    In the alternative, and solely to the extent that an arbitrator or panel of arbitrators somehow does conclude that arbitration on a class basis or collective basis is lawful under the terms of the relevant arbitration agreements, and if such a conclusion is not corrected by the Court,

1    Cintas notes here that it denies any and all liability to Claimants or to the members of the putative

2    class and/or classes and/or collective they purport to represent.

3

4    **II.    RESPONSE TO DEMAND FOR ARBITRATION ON A CLASS BASIS OR
         COLLECTIVE BASIS**

5

6         A.    **The AAA Lacks Authority to Administer, and Any Arbitrator Lacks
                Authority to Proceed on, this Demand for Arbitration on a Class Basis or
                Collective Basis**

7

8         3.    For the reasons summarized herein, the AAA cannot administer and does not have

9    authority to administer, nor does any arbitrator have authority nor do any arbitrators have authority

10   to conduct proceedings on, this Demand for Arbitration on a class basis or a collective basis.

11        4.    As the AAA has acknowledged in writing, each of the Claimants has entered into

12   one of multiple separate and distinct arbitration agreements with Cintas, which contain differing

13   and inconsistent terms and conditions of arbitration.

14        5.    There is No Single Governing Arbitration Provision. This Demand for Arbitration

15   cannot proceed on a class basis or collective basis because there is no single arbitration provision

16   that would govern the terms and scope of the arbitration. Among them, the Claimants in this

17   Demand for Arbitration are parties to multiple different agreements to arbitrate containing

18   materially different terms and conditions, which are governed by the laws of at least 11 states (and

19   based on Claimants' counsels' statements to date, at least 22 states so far and probably 42 states).

20   Consideration of this Demand for Arbitration on a class basis or collective basis would require the

21   AAA and the arbitrator(s) to disregard one or more material terms of the parties' various

22   agreements to arbitrate. That is prohibited by law.

23        6.    Individual Arbitration Required. This Demand for Arbitration cannot proceed on a

24   class basis or collective basis, for numerous reasons including but not limited to those summarized

25   in this Answer. The Claimants' numerous individual agreements with Cintas, and their differing

26   governing law and other differing terms, are such that the law requires that arbitration be

27   conducted on an individual basis. Cintas denies that language of any of the various arbitration

28

ANSWER TO DEMAND FOR CLASSWIDE                    3
ARBITRATION — No. 11 160 01323 04

1    agreements between the Claimants and Cintas can be construed to permit arbitration on a class

2    basis or collective basis.

3    　　　　7.    Because the Claimants' individual agreements to arbitrate require that any

4    arbitration be held in the state and county where the individual Claimant last worked for Cintas,

5    and that the arbitration be governed by the local law, and that the arbitrator[s] be chosen from a

6    regional panel of employment specialists, Cintas submits that a single arbitrator or a single arbitral

7    tribunal cannot consider a single arbitration as per the Demand for Arbitration without directly

8    violating the terms of each of the many separate agreements to arbitrate.

9    　　　　8.    Conflicting Laws of Multiple Jurisdictions. This Demand for Arbitration cannot

10    proceed on a class basis or collective basis because consistent interpretation of the various

11    arbitration agreements on a class basis or collective basis is not authorized. As the Court in the

12    District Court Action has already held, each of these agreements is governed by the law where the

13    individual claimant was employed, including the law of the federal circuit courts of appeals

14    encompassing that jurisdiction. The initial determination of whether the current group of

15    Claimants should be permitted to arbitrate this Demand for Arbitration on a class basis or

16    collective basis will depend on the interpretation and construction of four materially different

17    arbitration agreements under the laws of 11 different states including the differing and sometimes

18    inconsistent laws of California, Colorado, Connecticut, Illinois, Indiana, Maryland, Michigan,

19    Missouri, New Jersey, New York and North Carolina and the various federal appellate circuits in

20    which those states are located. Further, as stated in the pending Demand for Arbitration,

21    Claimants seek to arbitrate "on behalf of all individuals who filed, or who hereafter file Consents

22    to Sue" in the District Court Action. Plaintiffs in the District Court Action recently filed

23    "Consents to Sue" in that action on behalf of opt-in plaintiffs from another 11 states -- Alabama,

24    Arizona, Florida, Georgia, Kentucky, Louisiana, Nevada, Ohio, Texas, South Carolina and

25    Virginia. Cintas also recently provided to plaintiffs' counsel in the District Court Action (who are

26    the same lawyers who submitted the pending Demand for Arbitration) a list of 9,671 names and

27    addresses of current and former employees of Cintas from up to 42 different states, whom

28    plaintiffs contend fit within the collective action asserted by plaintiffs in the District Court Action,

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

ANSWER TO DEMAND FOR CLASSWIDE    4
ARBITRATION -- No. 11 160 01323 04

1  and who will be given a 90 day period (starting later this month) to "opt-in" to the District Court

2  Action. The Court in the District Court Action has already ruled that the vast majority of persons

3  who do so, however, will be compelled to arbitrate.[1]  To the extent that some or all of these

4  individuals seek to join this Demand for Arbitration, the initial question of whether the multiple

5  different arbitration agreements at issue allow for proceeding on a class basis or collective basis

6  would require application of the differing laws of up to 42 different states and of the differing law

7  of the various federal appellate circuits in which those states are located.

8      9.   Place of Arbitration, Location of Witnesses and Evidence. This Demand for

9  Arbitration cannot proceed on a class basis or collective basis because each of the various

10  arbitration agreements requires that any arbitration be held in the county and state where the

11  claimant currently works for Cintas or most recently worked for Cintas.  For the moment, the

12  Claimants are 115 individuals from at least 29 different counties and 11 different states across the

13  nation.  At least 109 individuals from at least 20 additional counties and 11 additional states have

14  opted to join the District Court Action since Claimants filed their pending Demand for Arbitration,

15  many of whom may ultimately seek to join this arbitration if (as the Court has ruled is most likely

16  to be the case) they are compelled to arbitrate, and if this Demand for Arbitration is permitted to

17  proceed on a collective basis or class basis.  If this Demand for Arbitration is permitted to proceed

18  on a class basis or collective basis, this Demand for Arbitration could soon involve opt-in

19  claimants from Cintas locations in hundreds of counties throughout up to 42 different states. The

20  contractual (and therefore jurisdictional) requirement in each separate arbitration agreement that

21  each arbitration be held in the state and county where the employee was last employed is a

22  material term of the parties' arbitration agreements. Determining the merits of each Claimant's

23  claim will involve highly individualized determinations as to whether or not the individual

24  Claimant met the criteria for an exempt employee under the Motor Private Carrier exemption to

25  the FLSA, the Outside Sales Exemption or the Managerial exemption. 29 U.S.C. § 213.  For

26

27  [1]  Consistent with the United States Supreme Court's decision in *Greentree v. Bazzle*, the Court in the District Court
    Action has made no determination in the first instance as to whether or not arbitration on a class basis or a collective
    basis is allowable.

28

ANSWER TO DEMAND FOR CLASSWIDE          5
ARBITRATION — No. 11 160 01323 04

1    example, as to the first of these, and as the Court stated in its Order regarding facilitated notice in

2    the District Court Action, the United States Supreme Court has held since 1947 that a claimant

3    who spent "as little as 3.65 percent of his time" distributing goods in interstate commerce is

4    properly classified as exempt from overtime, under the Motor Private Carrier exemption.  To the

5    extent this Demand for Arbitration is allowed to proceed on a class basis or a collective basis, and

6    not in the individual states and counties where each individual claimant is employed or was last

7    employed, as required by each of the numerous arbitration agreements, each of the numerous

8    arbitration agreements will be violated.  This is prohibited by law.  Moreover, Cintas will suffer

9    substantial damage and undue prejudice in that it will be much more difficult for Cintas to present

10   evidence and testimony regarding the circumstances of each individual claimant's employment.  If

11   the pending Demand for Arbitration were allowed to proceed on a collective basis or class basis,

12   Cintas would be deprived of material terms of each of its many individual arbitration agreements.

13        10.    Each of the Individual Arbitration Agreements Requires a Local Arbitrator.  This

14   Demand for Arbitration cannot proceed on a class basis or collective basis because it would put

15   before a single arbitrator or panel of arbitrators on a class basis or collective basis issues that are

16   required by each arbitration agreement to be resolved by multiple separate arbitrators selected on a

17   regional basis who have expertise in local employment law, customs and practices.  Each of the

18   numerous arbitration agreements require that they be administered pursuant to the AAA's National

19   Rules, which require that arbitrators be chosen from the regional Employment Dispute Resolution

20   Roster.  National Rule 12(b)(i).  To the extent that the pending Demand for Arbitration is

21   administered under the AAA's Supplementary Rules for Class Arbitrations ("Supplementary

22   Rules"), at least one arbitrator "shall be appointed from the AAA's national roster of class

23   arbitration arbitrators."  Supplementary Rule 2(a).  To the extent that this Demand for Arbitration

24   proceeds on a class basis or collective basis, Cintas would be deprived of its contractual right

25   (which in arbitration is jurisdictional) to the appointment of local arbitrators, whom Cintas would

26   select differently for each Claimant's claim regardless whether Claimants might select the same

27   arbitrator(s) for all claims, which local arbitrators are familiar with local law, customs and

28   practices.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
(One Maritime Plaza
Suite Finantiano, CA 94111-3492)

ANSWER TO DEMAND FOR CLASSWIDE                    6
ARBITRATION — No. 11 160 01323 04

1    11.    Due Process. This Demand for Arbitration cannot proceed on a class basis or

2    collective basis because doing so would deny Cintas and absent class members due process of law.

3

4    **B.    Claimants' Demand for Arbitration Cannot Proceed on a Collective Basis**

5    12.    AAA Has No Rules or Procedures Governing Arbitration on a Collective Basis.

6    The pending Demand for Arbitration cannot proceed on a collective basis because neither the

7    National Rules nor the Supplementary Rules provide a procedure for, or any rules governing, the

8    administration of an arbitration conducted on a collective basis.

9    13.    Claimants Not Similarly Situated. This Demand for Arbitration cannot proceed on

10   a class basis or collective basis because the Claimants are not similarly situated as required by 29

11   U.S.C. § 216(b). The question of whether any particular claimant was properly classified as an

12   exempt employee will require a highly individualized analysis of the circumstances of his or her

13   employment, the types and origins of products carried by individual claimants when employed by

14   Cintas, the weight of the vehicle he or she drove and whether and to what extent they were

15   involved in sales of products to Cintas' customers.

16   14.    "Opt-In Claimants" Have Not Consented to Arbitration on a Class Basis or A

17   Collective Basis. The pending Demand for Arbitration cannot proceed on a class basis or

18   collective basis because the submission of consent-to-sue forms in the District Court Action, and

19   the appointment of attorneys for representation in that District Court Action, does not constitute

20   consent to arbitration on a collective basis or a class basis; and in any event, because Cintas has

21   not agreed to arbitrate on a collective basis or a class basis.

22

23   **C.    Claimants Cannot Proceed on a Class Basis Under Supplementary Rule 4**

24   15.    No Common Questions of Law or Fact. Claimants may not proceed on a class

25   basis under Supplementary Rule 4 because there are no questions of law or fact common to the

26   putative class or to any of the putative regional subclasses. The merits of each individual

27   claimant's claim is wholly dependant on matters specific to that individual claimant, for example:

28   (a) what vehicle the individual claimant drove, (b) where the individual claimant drove it, (c)

1  whether at least 3.65% of what was in the vehicle was in interstate commerce when the individual

2  claimant drove the vehicle, and (d) what sales efforts the individual claimant made.  The answer to

3  any one of those matters as to any individual can render that individual exempt from overtime.

4        16.   Named Claimants' Claims Are Not Typical.  Claimants may not proceed on a class

5  basis under Supplementary Rule 4 because the claims of the putative representative claimants are

6  not typical of the claims of the putative class or any putative regional subclasses.

7        17.   Named Claimants Will Not Fairly and Adequately Represent Putative Class(es).

8  Claimants may not proceed on a class basis under Supplementary Rule 4 because the

9  representative parties, if any, will not fairly and adequately protect the interests of the putative

10  class or any putative state subclasses.

11        18.   Putative Class Counsel Will Not Fairly and Adequately Represent Putative

12  Class(es).  Claimants may not proceed on a class basis under Supplementary Rule 4 because

13  counsel for the putative class will not fairly and adequately protect the interests of the putative

14  class or any putative state subclasses.

15        19.   Arbitration Agreements of Putative Class Members Not Substantially Similar.

16  Claimants may not proceed on a class basis under Supplementary Rule 4 because, as set forth in

17  Paragraphs 3 through 7, above, each member of the putative class or putative regional subclasses

18  has not entered into an agreement containing an arbitration clause which is substantially similar to

19  that signed by the putative class representatives and each of the other members of the putative

20  class or putative regional subclasses.  The various arbitration agreements at issue in this pending

21  Demand for Arbitration contain materially different terms regarding, *inter alia*, the scope of the

22  arbitration, the place of arbitration and the law governing the arbitration.

23        20.   Further response in the alternative.  Without waiving it opposition to this matter

24  proceeding on a class basis or collective basis, Cintas further responds to the Demand for

25  Arbitration as follows.

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
ONE MARITIME PLAZA
SAN FRANCISCO, CA 94111-3492

ANSWER TO DEMAND FOR CLASSWIDE
ARBITRATION – No. 11 160 01323 04

8

III.    FURTHER RESPONSE TO ALLEGATIONS

21.    General Response. In their Demand for Arbitration, Claimants purport to "demand arbitration on a class and/or collective basis of all state and federal claims for overtime compensation and backpay alleged in plaintiffs First Amended Complaint for Injunctive Relief and Damages" (the "Complaint") in *Veliz et al. v. Cintas Corporation et al*, No. C-03-1180-SBA (N.D. Cal), except for the claims of 10 individuals whose claims remain pending in the District Court Action. Because the First and Second Claims for Relief are not "claims for overtime compensation and backpay," they are not within the scope of arbitration demanded by Claimants. In this Answer, Cintas responds to only the individual claims of the current Claimants and reserves the right to amend its answer to the extent any additional Claimants seek or are permitted to join this arbitration.

22.    Denial of Allegations. The Third through Thirteenth Claims for Relief asserted in the Complaint each allege that Cintas violated the FLSA and/or various state statutes or regulations regarding the payment of overtime compensation by classifying Claimants as exempt employees. Cintas denies each and every allegation against it and specifically denies that it improperly classified Claimants or any putative members of any putative collective action or any putative regional classes as exempt employees in violation of any state or federal law or regulation and Cintas specifically denies that Claimants are entitled to any relief.

23.    General Denial and Reservation of Rights. To the extent there are any allegations in the Complaint which Claimants contend or believe support their claims against Cintas, Cintas denies those allegations. Cintas reserves its right to amend this Answer to respond to any substantive allegations Claimants make, either through amendment or otherwise, at any time as may be appropriate. Cintas notes that Claimants' counsel purported. by a letter on July 8, 2004 -- the afternoon prior to this Answer being due – to seek further relief not previously identified in the pending Demand for Arbitration. Cintas objects to the belated attempt to do so, but if Claimants are allowed to do so, Cintas reserves its rights to respond more fully at such time (if any) as Claimants are allowed to do so. Meanwhile, Cintas denies all allegations seeking

1   additional relief in the letter dated July 8, 2004 from Claimants' counsel and Cintas denies that

2   Claimants are entitled to any relief whatsoever.

3

4   IV.    AFFIRMATIVE DEFENSES

5       24.    First Affirmative Defense. The Demand for Arbitration fails to state a claim upon

6   which relief can be granted under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*,

7   or under any applicable state law.

8       25.    Second Affirmative Defense. Claimants' claims are barred, in whole or in part, by

9   the applicable two-year statute of limitations under the FLSA, 29 U.S.C. § 255, by the applicable

10  state statutes of limitations, including but not limited to California Code of Civil Procedure

11  sections 338 and 340 and California Business and Professions Code section 17208; Colorado Rev.

12  Stat. § 8-4-126, Conn. Gen. Stat. § 52-596, 820 ILCS § 105/12, Ind. Code § 22-2-2-9, Mich.

13  Comp. Laws § 408.393, Mo. Rev. Stat. § 290.520, N.J. Stat. Ann. § 34:11-56a25.1; and N.Y. Lab.

14  Law § 663 and other applicable law.

15      26.    Third Affirmative Defense. Claimants' claims are barred, in whole or in part,

16  because Claimants are exempt from the overtime requirements of the FLSA, including but not

17  limited to meeting the requirements for the exemption for outside salespersons, 29 U.S.C.

18  § 213(a)(1), the exemption for employees for whom the Secretary of Transportation may prescribe

19  requirements for qualifications and maximum hours of service, 29 U.S.C. § 213(b)(1), and the

20  exemption for executive employees, 29 U.S.C. § 213(a)(1).

21      27.    Fourth Affirmative Defense. The claims of Claimants, and each of them, are

22  barred, in whole or in part, because Cintas is not subject to the wage and hour laws of any given

23  state and/or Claimants are either not subject to the wage and hour laws of any given state or are

24  exempt from the wage and hour laws of that state, including any exclusions or exemptions from

25  laws pertaining to minimum wage, overtime, meals, rest, recordkeeping and wage payment, and

26  including but not limited to:

27      a.    Exclusions or exemptions for outside salespersons, employees whose hours of

28         service are regulated by Title 49 of the United States Department of Transportation

1    Code of Federal Regulations or Title 13 of the California Code of Regulations,

2    subchapter 6.5, Section 1200, and executive employees, pursuant to California

3    Labor Code § 515 and the Industrial Welfare Commission Orders contained in Cal.

4    Code Regs. Title 8.

5    b.    Exclusions or exemptions for outside salespersons, drivers and driver helpers, and

6    executives/supervisors, pursuant to Colorado Wage Order No. 22, Sec. 5, 7 CCR

7    1103-1.

8    c.    Exclusions or exemptions for outside salespersons, drivers or helpers with respect

9    to whom the Secretary of Transportation has power to establish qualifications and

10    maximum hours of service, and executive employees, pursuant to Connecticut Gen.

11    Stat. §§ 31-76i and 31-58(f) and Conn. Agencies Regs. 31-60-1 *et seq*.

12    d.    Exclusions or exemptions for outside salespersons, individuals permitted to work

13    for a motor carrier for whom the Secretary of Transportation has the power to

14    establish qualifications and maximum hours of service under the provisions of Title

15    49 U.S.C. or the State of Illinois under Section 18b-105 of the Illinois Vehicle

16    Code, and executive employees and supervisors, pursuant to 820 ILCS §§ 105/3,

17    105/4a and 140/2.

18    e.    Exclusions or exemptions for employers subject to the minimum wage provisions

19    of the FLSA, for outside salespersons, employees with respect to whom the

20    Interstate Commerce Commission has power to establish qualifications and

21    maximum hours of service, and executive employees. pursuant to Ind. Code

22    §§ 22-2-2-3 and 22-2-5-1.1.

23    f.    Exclusions or exemptions for employers subject to the minimum wage provisions

24    of the FLSA or otherwise excluded or exempted pursuant to Mich. Comp. Laws

25    §§ 408.384a.and 408.394.

26    g.    Exclusions or exemptions for employees receiving a minimum wage pursuant to

27    the FLSA, employees subject to the minimum wage provisions of applicable

28    federal law, employees whose earnings are derived in whole or in part from sales

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

ANSWER TO DEMAND FOR CLASSWIDE          11
ARBITRATION — No. 11 160 01323 04

1   commissions and whose hours and places of employment are not substantially

2   controlled by the employer, and executive employees pursuant to Mo. Rev. Stat.

3   § 290.500.

4   h.   Exclusions or exemptions for outside salespersons and executive employees

5   pursuant to N.J. Stat. § 34:11-56a4.

6   i.   Exclusions or exemptions for outside salespersons, executive employees and

7   employees subject to the exemptions of the FLSA pursuant to pursuant to N.Y.

8   Lab. Law §§ 2 651 and Minimum Wage Order for Miscellaneous Industries and

9   Occupations, N.Y.C.R.R. Part 142, § 142-2.1 *et seq.*

10   28.   Fifth Affirmative Defense. With respect to the matters alleged, Cintas has at all

11   times acted in good faith, did not act willfully, has acted in conformity with and in reliance on the

12   applicable administrative regulations, orders, rulings, approvals and interpretations or on the

13   applicable administrative practices and enforcement policies and/or has acted with reasonable

14   grounds to believe its actions were in conformity with the law, thus precluding recovery by

15   Claimants, or any of them, against Cintas.

16   29.   Sixth Affirmative Defense. Claimants, and each of them, are precluded from

17   recovery to the extent they have already received compensation for all hours worked, for rest and

18   meal periods for which payment is required by law, and any other amounts owed. Claimants are

19   also precluded from recovery to the extent they have already received all compensation when such

20   compensation was due under applicable state law.

21   30.   Seventh Affirmative Defense. Claimants' Prayer for Injunctive Relief in the First

22   Amended Complaint attached to Claimants' Demand for Arbitration as Exhibit B is barred as

23   courts have uniformly held the right to bring an action for injunctive relief under the Fair Labor

24   Standards Act rests exclusively with the United States Secretary of Labor. See, e.g., United

25   Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc., 207 F.3d 1193 (10th Cir.

26   2000); Howard v. City of Springfield, 274 F.3d 1141 (7th Cir. 2001).

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

ANSWER TO DEMAND FOR CLASSWIDE         12
ARBITRATION — No. 11 160 01323 04

31.    Eighth Affirmative Defense.  The claims of Claimants, and each of them, are barred to the extent they are preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* and/or the Labor Management Relations Act, 29 U.S.C. § 401 *et seq.*

32.    Ninth Affirmative Defense.  Neither Claimants nor any other person is entitled to any relief to the extent he or she forfeited his or her right to relief under the doctrines of laches or unclean hands, waived his or her rights, or is estopped from seeking the relief requested.

33.    Tenth Affirmative Defense.  By their own conduct, acts and omissions, Claimants, and each of them, consented to and acquiesced in Cintas' conduct.

34.    Eleventh Affirmative Defense.  The Demand for Arbitration and each purported claim for relief alleged therein are barred by the conduct, actions and inactions of Claimants, and each of them, under the doctrine of ratification.

35.    Twelfth Affirmative Defense.  The Demand for Arbitration and each claim for relief alleged therein are barred because Claimants lack standing to bring such causes of action.

36.    Thirteenth Affirmative Defense.  Claimants' claims on behalf of the general public are barred, in whole or in part, because Claimants are not proper representatives for members of the general public with regard to the injuries complained of.

37.    Fourteenth Affirmative Defense.  Claimants' claims on behalf of the general public violate Cintas' due process rights insofar as the general public will not be bound by the outcome of this action.

38.    Fifteenth Affirmative Defense.  Claimants' application of the California Unfair Competition Law here violates constitutional due process because it cannot reasonably be determined what conduct is required or proscribed by the Unfair Competition Law.

39.    Sixteenth Affirmative Defense.  The California Unfair Competition Law violates constitutional Separation of Powers clause because it purports, by statute, to improperly cede to private parties the powers of the executive branch of the Government, and to improperly delegate to the judiciary the powers of the legislative branch of the Government.

40.    Seventeenth Affirmative Defense.  Cintas presently has insufficient knowledge or information upon which it can form a belief as to whether it may have additional, as yet unknown

1    and unstated, affirmative defenses. Cintas reserves the right to amend its Answer to assert such

2    additional affirmative defenses in the event that it subsequently appears that additional affirmative

3    defenses are appropriate.

4

5    V.    PLACE OF ARBITRATION

6    41.    Cintas objects to Claimants' request that the arbitration of the pending Demand for

7    Arbitration be held at San Francisco, California or indeed at any single place. Each individual

8    arbitration agreement between each individual Claimant and Cintas requires that the arbitration

9    held pursuant to that agreement be conducted in the county and state where such individual

10    Claimant last worked for Cintas or is currently working for Cintas. To proceed otherwise would

11    violate the terms of the numerous agreements to arbitrate. That is prohibited by law.

12    42.    Solely to the extent that an arbitral tribunal or arbitrator holds a clause construction

13    proceeding pursuant to Supplementary Rule 3, however, Cintas consents to the place of that

14    proceeding being San Francisco; provided, however, that Cintas' consent is not deemed a waiver

15    of Cintas right to require that any further proceedings be held in the locations required by the

16    operative agreements to arbitrate.

17

18    VI.    NUMBER OF ARBITRATORS

19    43.    Cintas objects to the appointment of a single arbitrator or single panel of

20    arbitrators, because that violates the terms of the individual arbitration agreements between the

21    individual Claimants and Cintas. To the extent, however, that the AAA permits the pending

22    Demand for Arbitration to proceed to the clause construction stage under the Supplementary

23    Rules, Cintas strongly requests the appointment of a panel of three arbitrators. Supplementary

24    Rule 2(b) authorizes the AAA, in its discretion, to do so. A three-arbitrator panel would be

25    appropriate under the circumstances here, especially in view of the legal issues presented by the

26    Demand for Arbitration in the context of this matter as summarized above, the vast number of

27    potential claimants and the enormous amount of evidence and witnesses that will be required to

28

ANSWER TO DEMAND FOR CLASSWIDE    14
ARBITRATION — No. 11 160 01323 04

1    show that each individual Claimant from across the nation was properly classified as an exempt

2    employee.

3

4    **VII.    CONCLUSION**

5          For the foregoing reasons and defenses, and based on such further submissions as Cintas

6    may make in the course of this matter, Cintas prays as follows:

7          (a)    That the AAA decline to administer this Demand for Arbitration on a collective

8    basis or class basis; and

9          (b)    That any arbitrator or panel of arbitrators issue an award on the Demand for

10    Arbitration that refuses to allow it to proceed.

11

12          In closing, Cintas notes that silence here as to any allegation or other statement by

13    Claimants is neither agreement with nor acquiescence in any such allegation or other statement.

14    Dated:    July 9, 2004          Respectfully submitted,

15          SQUIRE, SANDERS & DEMPSEY L.L.P.

16

17          By _____

18          Mark C. Dosker

19          Attorneys for Respondent
      CINTAS CORPORATION

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

ANSWER TO DEMAND FOR CLASSWIDE
ARBITRATION — No. 11 160 01323 04        15

EXHIBIT  2

American Arbitration Association
*Dispute Resolution Services Worldwide*

...heast Case Management Center
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date: July 9, 2004

To
Theodore J. Pintar and Steven W. Pepich
Albert H. Meyerhoff
Nancy M. Juda
Milberg, Weiss, Bershad, Hynes & Lerach
401 B Street, Suite 1700
San Diego, CA 92101

Michael Rubin and Scott A. Kronland
Eileen Goldsmith
Altshuler, Berzon, Nussbaum, Rubin &
Demain
177 Post Street, Suite 300
San Francisco, CA 94108

Theresa M. Traber and Stefanie Kim Gluckman
Traber & Voorhees
128 No. Fair Oaks Avenue, Suite 204
Pasedena, CA 91103

Mark C. Dosker
Michael Kelly
Angela O'Rourke
Cheryl A. Hipp
Squire, Sanders & Dempsey L.L.P.
One Maritime Plaza, suite 300
San Francisco, CA 94111

Fax Number: 619-231-7423, 213-617-9185, 202-828-8528, 415-362-8064, 626-577-7079, and
415-391-2493

From: Karen Fontaine

Number of Pages: 47 (including cover)

Re: 11 160 01323 04
Paul Veliz, et al., On Behalf of Themselves and
Others Similarly Situated
and
Cintas Corporation

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS
ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR
OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE
PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS
FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED
ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

Exhibit 2

American Arbitration Association
*Dispute Resolution Services Worldwide*

ortheast Case Management Center
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

VIA FACSIMILE W/ENCL

July 9, 2004

Eileen Goldsmith
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA 94108

Theodore J. Pintar and Steven W. Pepich
Milberg, Weiss, Bershad, Hynes & Lerach
401 B Street, Suite 1700
San Diego, CA 92101

Albert H. Meyerhoff
Milberg Weiss Bershad Hynes & Lerach LLP
355 South Grand Avenue, Suite 4170
Los Angeles, CA 90071

Nancy M. Juda
Milberg Weiss Bershad Hynes & Lerach LLP
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC 20036

Michael Rubin and Scott A. Kronland
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA 94108

Theresa M. Traber and Stefanie Kim Gluckman
Traber & Voorhees
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA 91103

Mark C. Dosker
Michael Kelly
Angela O'Rourke
Cheryl A. Hipp
Squire, Sanders & Dempsey L.L.P.
One Maritime Plaza, suite 300
San Francisco, CA 94111

Re: 11 160 01323 04
　　Paul Veliz, et al., On Behalf of Themselves and
　　Others Similarly Situated
　　and
　　Cintas Corporation

Dear Parties:

This will confirm a telephone call on July 7, 2004, with the parties or their representatives wherein the following matters were discussed:

This will acknowledge receipt of a letter dated July 8, 2004, from Michael Rubin; a copy of which we note has been exchanged with the other party.

Both the National Rules for the Resolution of Employment Disputes, as Amended and In Effect January 1, 2004, and the Supplemental Rules for Class Actions, in Effect as of October 8, 2003, are governing this matter. Please be advised that where the two Rules contradict each other, the Class Action Rules will take precedence. Please also note that the Class Action Rules consist of the following four phases:

1. The Clause Construction Phase: During this phase the arbitrator will decide whether the parties' contract/arbitration clause allows for class actions. If the arbitrator determines that the clause does not allow class actions, this matter will be closed and Claimants will be required to file individual cases for each of the class participants. However, if the arbitrator determines that the clause does allow for class actions, the case will be stayed for 30 days to allow the Award to be entered/appealed in the courts.

2. The Class Certification Phase: During this phase the arbitrator will determine whether to certify the class or not. Again, if the arbitrator determines not to certify the class, the matter will be closed and Claimants will be required to file individual cases for each of the class participants. However, if the arbitrator determines to certify the class, the case will again be stayed for 30 days to allow the Award to be entered/appealed in the courts.

3. The Class Notification Phase: During this phase the arbitrator will work with the parties to determine the appropriate means for notifying all potential class participants.

4. The Merit Phase: During this phase hearings will be scheduled and held for the purpose of determining the merits of the issues.

Claimant has requested San Francisco, California as the locale. Respondent does not object to the locale for The Clause Construction Phase.

The checklist for conflicts shall be returned by **June 9, 2004.**

In accordance with the Rules, if Respondent does not answer **on or before June 9, 2004,** we will assume that the claim is denied. If Respondent wishes to counterclaim, file the appropriate number of copies, together with the administrative fee, to the attention of the undersigned. A copy should be directly sent to Claimant.

The Association will provide the parties with a list of arbitrators with this letter; and the list shall consist of 10 commercial arbitrators, with employment experience and 10 employment arbitrators, all of which shall come from the Association's Class Action Roster.

Parties shall advise the Association **on or before July 16, 2004** as to the number of arbitrators they are requesting. If the parties are unable to agree to the number of arbitrators the Association shall make a final and binding decision based on the parties contentions. If the parties agree to proceed with three arbitrators, a supplemental list of regional arbitrators can be provided for the purpose of selecting the additional two arbitrators.

The Association will require advance deposits once the arbitrator is appointed. These deposits are calculated on the number of days the parties have suggested will be necessary, in addition to the pre and post hearing time that the arbitrator may charge pursuant to the arbitrator's resume.

In order to expedite administration, please direct all further correspondence to the address listed above. In closing, we call your attention to Section nine (9) of the Supplemental Rules for Class Actions, which states:

*All class action arbitration hearings and filings may be made public.*

The Class Action Docket may be found on our website (www.adr.org) and contains information on the parties, the parties' representatives, the hearings scheduled, and the Awards rendered in this matter.

Please do not hesitate to contact the undersigned should you have a question.

Sincerely,

Karen Fontaine
Case Manager
401 431 4798
fontainek@adr.org

Jacqueline N. Pelphrey
Supervisor
401 431 4817
Pelphreyj@adr.org

VIA FACSIMILE
Encl. arbitrator list and resumes

EXHIBIT 3



1  Michael Rubin (S.B. No. 80618)
   Scott A. Kronland (S.B. No. 171693)
2  Eileen B. Goldsmith (S.B. No. 218029)
   ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
3  177 Post Street, Suite 300
   San Francisco, California 94108
4  (415) 421-7151 - Office
   (415) 362-8064 - Fax
5
   Theresa M. Traber (S.B. No. 116305)
6  Vanessa Eisemann (S.B. No. 210478)
   Jocelyn Sperling (S.B. No. 211714)
7  TRABER & VOORHEES
   128 N. Fair Oaks Avenue, Suite 204
8  Pasadena, California  91103
   (626) 585-9611 - Office
9  (626) 577-7079 - Fax

10 Theodor J. Pintar (S.B. No. 131372)
   Steven W. Pepich (S.B. No. 116086)
11 James A. Caputo (S.B. No. 120485)
   Lawrence A. Abel (S.B. No. 129596)
12 Helen I. Zeldes (S.B. No. 220051)
   LERACH COUGHLIN STOIA GELLER
13  RUDMAN & ROBBINS LLP
   401 B Street, Suite 1700
14 San Diego, California 92101-4297
   (619) 231-1058 - Office
15 (619) 231-7423 - Fax

16 (Additional counsel on following page)

17 Attorneys for Claimants PAUL VELIZ, *et al.*

18            **ARBITRATION PROCEEDING BEFORE**
19            **AMERICAN ARBITRATION ASSOCIATION**

20
   PAUL VELIZ et al.,                    Case No. 11 160 01323 04
21
                Claimants,               **CLAIMANTS' CLAUSE**
22                                       **CONSTRUCTION OPENING BRIEF**
   vs.
23
   CINTAS CORPORATION et al.,            Arbitrator: Hon. Bruce Meyerson (Ret.)
24                                       Case Manager: Kelly L.S. Taylor, Esq.
                Respondents.
25
                                         Date and time: TBD
26

27

28

                        **Exhibit 3**

1  Albert H. Meyerhoff, Esq.  (S.B. No. 54134)
   LERACH COUGHLIN STOIA GELLER
2    RUDMAN & ROBBINS LLP
   355 South Grand Avenue, Suite 4170
3  Los Angeles, California  90071
   (213) 617-9007 - Office
4  (213) 617-9185 - Fax

5  Nancy Juda, Esq.
   LERACH COUGHLIN STOIA GELLER
6    RUDMAN & ROBBINS LLP
   1100 Connecticut Ave., N.W., Suite 730
7  Washington, D.C. 20036
   (202) 822-2024- Office
8  (202) 828-8528- Fax

9  Attorneys for Claimants PAUL VELIZ, *et al.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4    Cintas' Arbitration Clauses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6        Cintas' Arbitration Clause Does Not Forbid Claimants from Proceeding
         with a Class or Collective Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
7
     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Mt. Clemens Pottery Co.,*
  149 F.2d 461 (6th Cir. 1945), *rev'd on other grounds,*
  328 U.S. 680, 680 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Green Tree Financial Corp. v. Bazzle,*
  539 U.S. 444 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*Hamilton v. State Farm Fire & Casualty Co.,*
  270 F.3d 778 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hoffman-LaRoche, Inc. v. Sperling,*
  493 U.S. 165 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*
  282 F. Supp. 2d 1131 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ingle v. Circuit City Stores, Inc.,*
  328 F.3d 1165 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 21

*Lozada v. Dale Baker Oldsmobile,*
  91 F. Supp. 2d 1087 (W.D. Mich. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Luna v. Household Finance Corp.,*
  236 F. Supp. 2d 1166 (W.D. Wash. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
  514 U.S. 52 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Reich v. Southern New England Telecomm. Corp.,*
  121 F.3d 58 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Richard C. Young & Co. v. Leventhal,*
  298 F. Supp. 2d 160 (D. Mass. 2003)        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Walker v. Ryan's Family Steak Houses Inc.,*
  289 F. Supp. 2d 916 (M.D. Tenn. 2003), *aff'd,* 400 F.3d 370 (6th Cir. 2005) . . . . . . . . . 16

## FEDERAL RULES AND STATUTES

9 U.S.C. §4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

29 U.S.C. §216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

Fed. R. Civ. P. 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

## STATE CASES

*Allstate Insurance Co. v. Avis Rent-a-Car System, Inc.,*
    947 P.2d 341 (Colo. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*BMW of N. America v. Krathen,*
    471 So. 2d 585 (Fla. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Badie v. Bank of America,*
    67 Cal. App. 4th 779 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*BellSouth Communications System, LLC v. West,*
    902 So. 2d 653 (Ala. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*BellSouth Mobility LLC v. Christopher,*
    819 So. 2d 171 (Fla. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bell v. Farmers Insurance Exch.,*
    115 Cal. App. 4th 715 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Benjamin Moore Paint Co. v. Aetna Casualty & Surety Co.,*
    843 A.2d 1094 (N.J. 2004 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Brauer v. Trustees of First M.E. Church,*
    1 A.2d 409 (N.J. Err. & App. 1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cantonbury Heights Condominium Association, Inc. v. Local Land Development, LLC,*
    873 A.2d 898 (Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of Homestead v. Johnson,*
    760 So. 2d 80 (Fla. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Computer Associates v. U.S. Balloon Manufacturing Co.,*
    782 N.Y.S.2d 117 (App. Div. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cress v. Recreation Services,*
    795 N.E.2d 817 (Ill. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Discover Bank v. Superior Court,*
    36 Cal. 4th 148 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dowd & Dowd, Ltd. v. Gleason,*
    693 N.E.2d 358 (Ill. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Eagle v. Fred Martin Motor Co.,*
    809 N.E.2d 1161 (Ohio App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Keating v. Superior Court,*
    31 Cal. 3d 584 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kinkel v. Cingular Wireless, LLC,*
    828 N.E.2d 812 (Ill. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Klapp v. United Insurance Group Agency, Inc.,*
    663 N.W.2d 447 (Mich. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Klussman v. Cross Country Bank,*
    134 Cal. App. 4th 1283 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Leonard v. Terminix International Co.,*
    854 So. 2d 529 (Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*MPACT Construction Group, LLC v. Superior Concrete Constructors, Inc.,*
    802 N.E.2d 901 (Ind. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Porter v. Columbus Board of Industrial Rel'ns,*
    675 N.E.2d 1329 (Ohio App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ratcliff Architects v. Vanir Construction Management,*
    88 Cal. App. 4th 595 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ringle v. Bruton,*
    86 P.3d 1032 (Nev. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sav-On Drug Stores, Inc. v. Superior Court,*
    34 Cal. 4th 319 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Southern Bell Telephone & Telegraph Co. v. Chappelle,*
    415 S.W.2d 826 (Ky. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Southern Cal. Gas Co. v. Ventura Co.,*
    150 Cal. App. 2d 253 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State v. Philip Morris USA Inc.,*
    618 S.E.2d 219 (N.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Tillman v. Commercial Credit Loans,*
    2005 WL 2295111 (N.C. Super. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Trimble v. Pracna,*
    176 S.W.3d 706 (Mo. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Truck Insurance Exch. v. Marks Rentals, Inc.,*
    418 A.2d 1187 (Md. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Westfield Insurance Co. v. Galatis,*
    797 N.E.2d 1256 (Ohio 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Whitney v. Alltel Communications, Inc.,*
    173 S.W.3d 300 (Mo. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATE STATUTES AND COURT RULES

Ky. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

N.M. R. Civ. P. 1-023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wash. Sup. Ct. Civ. R. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Code Civ. Proc. §382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Colo. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conn. Practice Book §9-7 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ill. Comp. Stat. 5/2-801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kan. Stats. §60-223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mass. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Md. R. Civ. P. 2-231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mo. Rules of Ct. 52.08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

N.J. Ct. Rules 4:32-1 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

N.Y. CPLR §901 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ohio R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pa. R. Civ. P. 1701 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wis. Stat. §803.08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**OTHER**

Restatement (Second) of Contracts, §206, cmt. a . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Restatement (Second) of Contracts, §211, cmt. f . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# INTRODUCTION

Claimants Paul Veliz *et al.* seek a "clause construction" determination under Rule 3 of the AAA Supplementary Rules for Class Arbitrations ("Class Arbitration Rules").[1] Because the arbitration clauses drafted by respondent Cintas do not include *any* language explicitly forbidding (or even referring to) class or collective arbitration, and because those clauses authorize the Arbitrator to "apply . . . relevant federal and state laws" and "to award . . . any relief . . . available under relevant laws," the Arbitrator should issue a partial final award under Rule 3 holding that Cintas' arbitration clauses permit claimants to proceed on a class and collective basis. *See* Declaration of Eileen Goldsmith, Exh. 13, *Sidhu and GMRI, Inc.*, AAA Case No. 11 160 02273 04 (Meyerson 2005) ("*Sidhu*") (clause construction award based on similar facts). In the parallel federal court action, Cintas has conceded that "it does not claim that any language in the arbitration agreements necessarily precludes all class arbitration." *See* Goldsmith Decl., Exh. 24, Cintas' Opp. to Pls. Mot. for Reconsideration (Dec. 14, 2005), *Veliz et. al. v. Cintas Corp.*, No. 03-1180 SBA ("Reconsideration Opp.") at 17. This concession is surely correct given the language and history of the applicable arbitration clauses, as discussed below.

Claimants in this arbitration are delivery drivers, often known as Service Sales Representatives ("SSRs"), employed by respondent Cintas Corporation, a national uniform and laundry service company. Claimants allege that they routinely worked long hours, sometimes more than 60 or 70 hours per week, yet Cintas failed to pay them overtime compensation as required by the federal Fair Labor Standards Act ("FLSA") and various state overtime laws.

---

[1]  Class Arbitration Rule 3 states that the question to be decided at the Clause Construction phase is "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." A more appropriately-worded question, as framed by the United States Supreme Court in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ("*Bazzle*"), is whether Cintas' arbitration clauses "forbid class arbitration" – which more clearly expresses that the burden of proof lies with the employer which challenges claimants' statutory right to proceed on a representative basis. *See id.* at 448-52. That difference in phrasing should not matter, however, unless Cintas disputes that it has the burden of proving that claimants knowingly agreed to waive their right to proceed on a representative basis by executing the Cintas arbitration agreements.

1   Claimants, who bring this arbitration on their own behalf and on behalf of all similarly-situated

2   Cintas drivers, seek certification of this arbitration as both a collective action under Section 16(b)

3   of the FLSA, 29 U.S.C. §216(b), and as a series of related state law class actions under the

4   overtime laws of California, Colorado, Connecticut, Illinois, Indiana, Kansas, Kentucky,

5   Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New Mexico, Ohio,

6   Oregon, Pennsylvania, Rhode Island, Washington, and Wisconsin. *See* Demand for Arbitration

7   (May 4, 2004); Amendment to Demand (July 8, 2004); Second Amendment to Arb. Demand

8   (Sept. 30, 2005).[2]

9        The parties disagree about how many of the 1,800 individual claimants identified in

10  claimants' Arbitration Demand and amendments thereto, are proper parties to the present

11  arbitration.  Claimants contend that all of those individuals are entitled to proceed, while Cintas

12  contends that only those claimants whom Judge Saundra Brown Armstrong explicitly compelled

13  to arbitrate in the Northern District of California pursuant to Section 4 of the Federal Arbitration

14  Act ("FAA"), 9 U.S.C. §4, may proceed.  However, given Cintas' concession that *at least* those

15  55 claimants are properly before the Arbitrator, that dispute is immaterial to the clause

16

17

18

19

20       [2]  Although this arbitration also includes claimants from Alabama, Delaware, Florida,

21  Idaho, Iowa, Mississippi, Nebraska, Nevada, North Carolina, Oklahoma, South Carolina, Utah,
    and Virginia, those states do not have applicable overtime laws, and the claimants from those
22  states therefore seek relief under the FLSA only.  After Judge Armstrong in the federal action
    enters her written order based on the October 18 and October 27, 2005 hearings, *see infra* n.3,
23  claimants will amend the arbitration demand to submit the overtime claims of plaintiffs who
    worked for Cintas in Arizona, Louisiana, and Pennsylvania, assuming the Court upholds the
24  enforceability of those plaintiffs' arbitration agreements.

25

26       Claimants are asserting Michigan state law claims in their arbitration even though Judge
    Armstrong ruled on the federal action that no such claims can be asserted under Michigan law.
27  Claimants appealed that reading of the Michigan Minimum Wage Law, and the Ninth Circuit
    recently certified that unsettled state law issue to the Michigan Supreme Court, where it remains
28  pending.  Goldsmith Decl., Exh. 25.

1    construction issue, since the present motion may properly be brought by *at least* those claimants

2    who were compelled to arbitrate pursuant to FAA §4.[3]

3        Before addressing the precise language of Cintas' various arbitration clauses, we briefly

4    recount the procedural history of this arbitration and the underlying litigation. We then set forth

5    the text of Cintas' arbitration clauses, which we analyze in light of governing contract principles,

6    as guided by previous AAA clause construction awards issued by this Arbitrator and others.

7    Based on this analysis, the Arbitrator should find that the Cintas arbitration clauses permit this

8    Arbitration to proceed on both a class and collective action basis.[4]

---

10    [3]   Judge Armstrong ruled in her May 4, 2005 Order that the 55 Original Claimants were
11    required to arbitrate in the Northern District of California pursuant to FAA §4 (which requires a
      court compelling arbitration under its provisions to set venue for that arbitration in the judicial
12    district where the court sits). The parties still await Judge Armstrong's written order from the
      October 18 and October 27, 2005 hearings, in which she will presumably state whether the same
13    requirement applies to: 1) the 11 claimants whom Cintas stipulated on June 4, 2004 should also
      be compelled to arbitrate under FAA §4 (*see* Goldsmith Decl., Exh.18, Stip. & Order, June 9,
14    2004); and 2) the 48 additional claimants whom Cintas agreed at the October 18, 2005 oral
      argument should also be compelled to arbitrate under FAA §4. *Id.*, Exh. 23, Tr. of Proceedings,
15    Oct. 18, 2005 at 70:1-71:19, 79:24-80:16, 98:10-19, 99:6-17, 100:15-101:7. Since the 55
16    claimants who are clearly part of this arbitration are entitled to bring this motion, the scope of
      claimants actually before this Arbitrator should be briefed at a later time, after the district court
17    has issued its ruling.

18    [4]   If claimants prevail at the present Clause Construction phase, we will next seek class
      certification of the 19 state law classes (which rest on state laws that in most respects are similar
19    to the FLSA, although some have more limited exemptions). Claimants will also seek
20    conditional certification of this matter as an FLSA collective action, just as Judge Armstrong in
      the parallel federal lawsuit conditionally certified this case as an FLSA collective action in her
21    November 4, 2003 Order at 1-12, 16. (Goldsmith Decl., Exh. 14).

22        Although nothing in the Class Arbitration Rules explicitly refers to "collective" rather
23    than "class" action arbitrations, it appears that most arbitrators treat the two as essentially
      interchangeable for purposes of the arbitrator's analysis at the Clause Construction phase. *See,*
24    *e.g.,* Goldsmith Decl., Exh. 9, *Goldstein and Ibase Consulting*, AAA Case No. 11 160 02760 03
      (Garrison 2004) ("Goldstein"); *id.,* Exh. 7, *Cole and Long John Silver's Restaurants, Inc.*, AAA
25    Case No. 11 160 00194 04 (Hodge 2004) ("Cole"). While claimants agree that it is appropriate
26    for the Arbitrator to decide whether Cintas' arbitration clause permits collective arbitration at the
      same time it decides whether that clause permits class arbitration, there is no reason why the
27    district court should be asked to review an interim *collective* action decision under Rule 3. The
      reason the AAA requires judicial review of *class action* Clause Construction and Class
28                                                                              (continued...)

3

**BACKGROUND**

The underlying lawsuit was filed on March 19, 2003 by 65 plaintiffs, including the 55 Original Claimants. On November 4, 2003, Judge Armstrong conditionally certified that lawsuit as a collective action under the FLSA, and ordered notice sent to approximately 10,000 similarly-situated current and former Cintas drivers throughout the country. That notice, which the Court ordered disseminated after its April 5, 2004 ruling on arbitrability, informed prospective plaintiffs of their right to file a Consent to Sue under Section 16(b) of the FLSA and stated that the Court would later determine which plaintiffs could proceed in court and which plaintiffs must proceed in arbitration on their statutory overtime claims. *See* Goldsmith Decl., Exh. 16, April 23, 2004 Order at 1-7; *id.,* Exh. 17, May 25, 2004 Order.[5]

Judge Armstrong initially set October 21, 2004 as the deadline for filing Consents to Sue. On November 15, 2004, however, the Court extended the opt-in deadline three months to January 15, 2005, and ordered Cintas to post and mail a supplemental notice because Cintas' CEO had improperly sent a letter to all current SSRs attempting to discourage them from opting

---

[4]   (...continued)
Certification awards is to protect the due process rights of absent class members. No such protection is required in a collective action, because individual plaintiffs are only bound by the arbitrator's partial and final awards if they affirmatively opt in, as the 1,800 claimants did in this arbitration pursuant to the Court-facilitated notice. *See* 29 U.S.C. §216(b).

[5]   The collective action notice provided that SSRs could opt into the district court litigation, and that the Court would subsequently decide which plaintiffs would proceed in court and which must arbitrate:

> On April 5, 2004, the U.S. District Court ruled that the majority of Cintas Route Drivers who join this lawsuit must arbitrate their overtime claims before the American Arbitration Association ("AAA") while others may continue to litigate their overtime claims in court. If you join this lawsuit by filing a timely Consent to Sue as described above, the Court will decide whether your claims will proceed in arbitration or before the court.

Goldsmith Decl., Exh. 17, May 25, 2004 Order, Notice of Collective Action, ¶6.

1  into the lawsuit. *Id., Exh.* 19, Nov. 15, 2004 Order at 4-5.  By the January 15, 2005 deadline,

2  approximately 2,400 individuals had filed Consents to Sue.

3        In August, 2003 (five months after plaintiffs filed the original complaint), Cintas moved

4  to compel all plaintiffs to arbitration.  More than 2-1/2 years have since passed, but Judge

5  Armstrong has still not finally resolved the parties' disputes over arbitrability (although claimants

6  anticipate that the remaining issues will be resolved in the upcoming order, which will

7  commemorate the Court's oral rulings on October 18 and October 27, 2005).

8        Judge Armstrong issued her first arbitration ruling on April 5, 2004, in which she found

9  unconscionable and severed from Cintas' various arbitration agreements provisions that: 1)

10  shortened the statutes of limitations for statutory claims; 2) made attorneys' fee awards to

11  prevailing plaintiffs discretionary rather than mandatory, as required by 29 U.S.C. §216(b); and

12  3) required plaintiffs to pay Cintas' attorneys' fees and costs and arbitration fees if Cintas

13  prevailed. Goldsmith Decl., Exh. 15, April 5, 2004 Order at 18-22, 58-59.[6]  Judge Armstrong

14  then granted Cintas' motion to compel arbitration of the overtime claims of 55 of the 65 Original

15  Plaintiffs, while retaining jurisdiction over the remaining plaintiffs (who either did not sign an

16  individual employment agreement with an arbitration clause, or were employed in a state, like

17  Arkansas, under which the entire agreement was unconscionable because it lacked "mutuality,"

18  or who were forced to sign their individual arbitration agreements without having any

19  opportunity to review those agreements). *Id.* at 58-59.[7]

20  _____

21      [6]  Although the Court's April 5, 2004 Order only severed those unconscionable
22  provisions under *some* states' laws (while reserving for the Arbitrator the task of determining
    unconscionability under the remaining states' laws under FAA §2), Cintas informed the Court
23  during the October 2005 hearings that it would not seek to enforce those provisions against any
    claimants, and the Court accepted Cintas' representation by noting that "Defendants have also
24  indicated they're willing to consent to also severing those provisions." Goldsmith Decl., Exh.
    23, Tr. of Proceedings, Oct. 18, 2005 at 14:24-15:10; *id.,* Exh. 21, Mot. to Stay Proceedings
25  (June 3, 2005) at 7-8.  Claimants proceed with the understanding that the arbitration clauses have
26  been modified to eliminate those unconscionable provisions.

27      [7]  Plaintiffs in the federal lawsuit also sought relief under ERISA.  Judge Armstrong
    retained jurisdiction over all plaintiffs' ERISA claims, which are outside the scope of the Cintas
28                                                                              (continued...)

1   On May 4, 2005, ruling on plaintiffs' motion for reconsideration, Judge Armstrong

2   clarified that those claimants whom she compelled to arbitrate under FAA §4 were entitled to

3   arbitrate their claims in the Northern District of California, the judicial district in which the court

4   sits. Goldsmith Decl., Exh. 20,  May 4, 2005 Order at 11-13 (citing *Continental Grain Co. v.*

5   *Dant & Russell*, 118 F.2d 967, 968-69 (9th Cir. 1941); *Homestake Lead Co. v. Doe Run*

6   *Resources Corp.*, 282 F. Supp. 2d 1131, 1143-44 (N.D. Cal. 2003)).  The Court further held that

7   it was for the Arbitrator, not the Court, to determine whether Cintas' arbitration clauses prohibit

8   class arbitration. *Id.* at 10 (citing *Bazzle*, 539 U.S. at 452-53).

9   Once plaintiffs successfully made the point that any arbitration compelled under FAA §4

10   must be venued in the Northern District of California, Cintas changed its tactics.  In an apparent

11   attempt to preserve the arbitration venue issue for later adjudication, Cintas in June 2005 (after

12   the opt-in period closed) asked Judge Armstrong only to "stay" the litigation of the remaining

13   plaintiffs' claims under FAA §3 (which has no venue provision) rather than to "compel

14   arbitration" of those plaintiffs' non-ERISA claims under FAA §4.  Judge Armstrong orally

15   granted Cintas' motion on October 27, 2005, but has still not issued her written ruling which,

16   upon issuance, will likely clarify whether any plaintiffs in addition to the 55 Original Plaintiffs

17   have been compelled to arbitrate under FAA §4. *See supra* n.3.

18   **CINTAS' ARBITRATION CLAUSES**

19   Cintas has modified its core arbitration agreement, known as "Corporate Policy #C-105,"

20   on five occasions over the past decade: in 1996, 1999, 2001, 2002, and 2003. (We set forth

21   exemplars of these agreements as Exhibits 1-5 to the Goldsmith Declaration.)  The essence of

22   Cintas' agreements has remained unchanged for purposes of clause construction analysis,

23   however.[8]

24

25   _____

         [7] (...continued)

26   arbitration clauses. *See* Goldsmith Decl., Exh. 16, April 23, 2004 Order at 2.

27   [8] Each of the 55 Original Claimants signed either the 1996, 1999, 2001, or 2002
      versions. Although Cintas is correct that 71 different versions of the arbitration clause are
28   (continued...)

6

1    The 1996 Cintas arbitration clause includes the same basic language that has been

2  repeated almost verbatim in every subsequent version of Cintas' mandatory pre-dispute

3  arbitration agreements.  We have italicized the language from that arbitration clause that bears

4  most directly on the parties' Clause Construction dispute – although the *absence* of any language

5  explicitly prohibiting class or collective arbitration itself establishes that claimants did not

6  knowingly or intelligently waive their right to pursue state and federal statutory claims on a

7  representative basis.

8    Cintas' 1996 arbitration clause provides:

9    EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES.
     Should any dispute or difference arise between Employee and Employer
10   concerning whether Employer or any agent of Employer ever at any time violated
     any duty to Employee, right of Employee, law, regulation or public policy or
11   breached this Agreement, Employee and Employer shall confer and attempt in
     good faith to resolve promptly such dispute or difference.  Recognizing the
12   importance of having a fair, timely, inexpensive and binding method of resolving
     any such dispute or difference remaining unresolved after Employee and
13   Employer confer in good faith, Employee and Employer agree that if the dispute
     or difference remains unresolved after Employee and Employer have conferred in
14   good faith, and if Employee desires to pursue Employee's claims or contentions,
     *Employee shall submit a timely written request to have such claim, dispute or*
15   *difference resolved through impartial arbitration conducted in accordance with*
     *the American Arbitration Association's National Rules for the Resolution of*
16   *Employment Disputes and held in the county and state where Employee currently*
17   *works for Employer or most recently worked for Employer.*

18   *In any such arbitration proceeding, the impartial arbitrator shall apply the terms*
19   *of this Agreement as written, the Federal Arbitration Act and other relevant*
20   *federal and state laws,* including time limits on claims, and the party losing the
     arbitration shall bear the fees and expenses of the American Arbitration
21   Association and the impartial arbitrator.  *The impartial arbitrator shall have the*

22

23   _____

24   ⁸  (...continued)
     applicable to the 1,800 claimants, *see* Goldsmith Decl., Exh.22,  Decl. of Catherine Randall in
25   Support of Cintas' Mot. to Stay Proceedings (June 3, 2005), Exhs. 2-72, Cintas concedes that
     "almost all" of the arbitration clauses in these additional agreements are "identical to those of the
26   1996, 1999, 2001 or 2002 agreements."  *Id.,* Exh. 21, Mot. to Stay Proceedings (June 3, 2005), at
     5-6.  To the extent that Cintas' newest 2003 agreements contain a revised arbitration clause,
27   Cintas also concedes that the "operative terms [of that agreement] are substantially similar to the
28   2002 agreement."  *Id.*

*authority to award to the prevailing party any relief, including damages, costs and attorney's fees, available under relevant laws.*

Impartial arbitration, as provided above in this Paragraph 6, shall be the exclusive, final and binding method of resolving any dispute or difference between Employee and Employer arising from, concerning or relating in any way to Employee's employment with Employer or Employee's separation from employment with Employer. A legal action to maintain the status quo until the arbitration award is rendered or to enforce the agreement to arbitrate or the arbitration award may be filed and pursued in any court having jurisdiction, but otherwise Employee shall not file any lawsuit contending that Employer or any agent of Employer violated any duty, law, regulation or public policy or breached this Agreement.

Goldsmith Decl., Exh. 1, ¶6 (emphasis added).

Cintas' 1999 arbitration clause is almost identical, except that it imposes a one-year statute of limitations for requesting arbitration, limits the employee's "initial share" of the arbitration filing fee to "one day's pay or $100, whichever is less," and eliminates the "loser pays" language, substituting a provision that Cintas will pay all arbitration fees and expenses. Goldsmith Decl., Exh. 2, ¶5. The 1999 clause also modifies the second paragraph to provide that although the arbitrator generally retains "authority to award appropriate relief . . . as available under relevant laws," the arbitrator's authority to award costs or fees against an employee is limited to awarding the equivalent of two days' pay.[9] The 1999 agreement also states that workers' compensation and unemployment benefits claims are not subject to the arbitration clause; and that the arbitrator may reconsider an arbitration award. *Id.*

The 2001 version of the arbitration clause is identical to the 1999 version in all respects. *Id.,* Exh. 3, ¶5. The 2002 version makes only one significant change, stating that the one-year limitations period for submitting a request for arbitration does not apply when the employee alleges a violation of a specific statute with its own statute of limitations. *Id.,* Exh. 4, ¶5. The

---

[9]   *Id.,* Exh. 2, ¶5 ("The arbitrator also shall have the authority to award appropriate relief, including damages, costs and attorneys' fees, as available under relevant laws, provided that the Arbitrator cannot direct Employee to pay more than a total of two days' pay as costs, expenses and attorney's fees to Employer, the arbitrator or the American Arbitration Association.").

8

1    2003 version specifically enumerates the types of statutory claims an employee might assert that
2    are subject to arbitration, and provides that the agreement is to be construed under the FAA and
3    Ohio law, but otherwise effects no significant changes. *Id.*, Exh. 5, ¶8.

4         Each version of Cintas' individual employment agreements states that it constitutes the
5    "entire agreement between employer and employee" (except for any compensation or benefits
6    agreements) and can only be modified by a subsequently-executed written agreement of the
7    parties. Each version of the arbitration clause in those employment agreements includes the
8    arbitration-initiation language upon which Cintas primarily relies in opposing class and collective
9    arbitration ("Employee shall submit a timely written request to have such claim . . . resolved
10   through impartial arbitration . . . held in the county and state where Employee currently works
11   . . . or most recently worked . . . ."). No version includes an explicit prohibition of class or
12   collective actions or any reference to class or collective actions. Nor does any version carve out
13   the claimants' statutory right to proceed on a class or collective basis from the arbitrator's broad
14   authority to "apply . . . relevant federal and state laws," "to award . . . any relief . . . available
15   under relevant laws," and to grant any remedy or relief deemed "just and equitable, including any
16   remedy or relief that would have been available to the parties had the matter been heard in court"
17   (under AAA Employment Rule 34(d)). *See Id.*, Exh. 1, ¶6; *id.*, Exh. 2, ¶5; *id.*, Exh. 3, ¶5; *id.*,
18   Exh. 4, ¶5; *id.*, Exh. 5, ¶8. In marked contrast to the arbitration clauses in Cintas' employment
19   agreements, the arbitration clause in the form rental agreement that Cintas uses with its
20   customers includes an express prohibition on collective or class arbitration of claims against the
21   company: "Any such dispute shall be determined on an individual basis, shall be considered
22   unique as to its facts, and shall not be consolidated in arbitration or any other proceeding with
23   any claim or controversy of any other party." *Id.*, Exh. 29, Standard Uniform Rental and Service
24   Agreement at 2.

25        Cintas drafted each of the arbitration clauses at issue in these proceedings, which are
26   contained in standardized corporate policies. *See id.*, Exhs. 1-5; *id.*, Exh. 22, Randall Decl.,
27
28

9

1  Exhs. 2-72. As Judge Armstrong concluded in her initial Order, Cintas was able to compel

2  claimants to sign these agreements because of its vastly superior bargaining strength:

3

4  > It would be ludicrous to suggest that the SSRs are on an equal footing with Cintas.
   > The SSRs are individuals seeking employment or further benefits from their
   > current employer. Cintas, by its own admission, is a nationwide business
5  > enterprise and a leader in its industry.

6  *Id.,* Exh. 15, April 5, 2004 Order at 18.

7
                                    **ARGUMENT**
8
       **Cintas' Arbitration Clause Does Not Forbid Claimants From**
9       **Proceeding With A Class or Collective Arbitration.**

10
       Because Cintas' arbitration clause is so similar to the clause construed by this Arbitrator
11
   in *Sidhu,* we begin with a brief summary of the Clause Construction analysis in that case.
12
       *Sidhu* was a class action overtime case under California law on behalf of a putative class
13
   of restaurant managers. As here, the employer's arbitration clause was silent as to class
14
   arbitration and authorized the arbitrator to grant all relief that would be available in court, both
15
   expressly (by authorizing the arbitrator to grant the same "legal and equitable relief . . . as could a
16
   court of competent jurisdiction") and by incorporating the AAA Employment Rules (which
17
   provide in Rule 34(d) that the arbitrator may grant any remedy or relief deemed "just and
18
   equitable, including any remedy or relief that would have been available to the parties had the
19
   matter been heard in court"). *Sidhu* Clause Construction Award at 2. The *Sidhu* arbitration
20
   clause also contained a venue provision stating that any arbitration must be conducted in the "city
21
   in which the Employee is or was last employed by the Company," and used singular noun forms
22
   (*i.e.,* referring to the "Employee" rather than to "Employees"). *Id.*
23
       The Arbitrator concluded that the arbitration clause in *Sidhu* was ambiguous, because
24
   some of its provisions could be read as permitting class arbitration while other provisions could
25
   be read as inconsistent with class arbitration. After identifying the arguments on both sides, none
26
   of which were independently determinative, the Arbitrator concluded that the ambiguities in the
27

28
                                        10

clause must be resolved against the employer that drafted it. *Id.* The Arbitrator therefore issued a partial final award finding that the *Sidhu* arbitration provision *permitted* class arbitration (without reaching claimants' alternative argument that a prohibition against class arbitration in a statutory overtime case would be unconscionable under applicable state law). *Id.* at 2-3.

The Cintas claimants' Clause Construction arguments are even stronger than the *Sidhu* claimants' arguments, for the seven reasons set forth below.

First, although Cintas' clause, like the clause in *Sidhu*, is silent as to any prohibition against class or collective action, that silence is more significant here, given Cintas' repeated modifications of its agreement in the past decade. Cintas is a legally sophisticated, multi-billion dollar company. Cintas and its attorneys could easily have amended the arbitration clause to prohibit class and collective arbitrations explicitly if that were Cintas' intent (and if Cintas believed that such a prohibition would not result in the agreement being invalidated as unconscionable), just as Cintas changed many other provisions in response to developments in the law of mandatory arbitration to maximize the company's legal rights. *See supra* at 7-9. Cintas was surely aware of the class certification prohibition issue, given the well-publicized controversy over class arbitrations that preceded by several years the Supreme Court's 2003 decision in *Bazzle*. And Cintas had ample opportunity to include express waiver language in the more recent versions of its form arbitration clause. Indeed, Cintas *does* include express language in its form rental agreements with customers prohibiting those customers from arbitrating their disputes against Cintas collectively, indicating that Cintas is well aware how to draft a clear waiver of the right to arbitrate on a class or collective basis (whether or not such a waiver is enforceable). *See* Goldsmith Decl., Exh. 29, Standard Uniform Rental Service Agreement at 2 ("*Any such dispute shall be determined on an individual basis,* shall be considered unique as to its facts, *and shall not be consolidated in arbitration or any other proceeding with any claim or controversy of any other party.*") (emphasis added). Under the circumstances, the absence of explicit prohibitory language in Cintas' employment agreements necessarily indicates that those agreements were *not* intended to deprive employees of their statutory right to engage in class or

<div style="line-height:2">

1    collective arbitrations. *See id.,* Exh. 12, *Olson and Rent-a-Center, Inc.,* AAA Case No. 11 10

2    01831 04 at 2 (Brandt 2005) ("Olson") ("reasonable to conclude" that four-page arbitration

3    clause that addressed conduct of arbitration in considerable detail but said nothing about class

4    arbitration was not intended to prohibit such arbitration); *id.,* Exh. 11, *Medina and GMRI, Inc.,*

5    AAA Case No. 11 160 02409 04 at 5 (Christianson 2005) ("Medina") (silence as to class

6    arbitration should be construed against the party that would most benefit from prohibition on

7    such an arbitration).[10]

8         Second, it is even clearer here than in *Sidhu* that class and collective arbitration is

9    permitted, because Cintas has taken the position in its federal court filings that its arbitration

10   clause does *not* prohibit class arbitrations. In the fall of 2004, the *Veliz* plaintiffs challenged

11   Cintas' arbitration clauses as unconscionable *to the extent* they were construed as prohibiting

12   class or collective arbitration. To avoid a ruling invalidating the clauses in their entirety, Cintas

13   expressly *denied* that its arbitration clauses prohibit class arbitration. Cintas thus wrote in its

14   opposing brief that "Plaintiffs falsely characterize Cintas' position as being that the arbitration

15   agreements 'preclude class actions,'" and stated that it "does not claim that any language in the

16   arbitration agreements necessarily precludes all class arbitration." Reconsideration Opp. at 17.

17       Having made these assertions in an effort to avoid a ruling that its arbitration clauses were

18   unenforceable because they prohibited class actions, Cintas may not now take the opposite

19   position that those clauses do in fact prohibit class arbitrations. Whether as a matter of judicial

20   estoppel, equitable estoppel, or waiver, or as further evidence of Cintas' intent not to prohibit

21   class arbitrations, these concessions constitute an additional reason why Cintas' arbitration

22   clauses must be construed as permitting (or not forbidding) class and collective arbitration. *See*

23

</div>

---

24       [10] Moreover, ordinary principles of contract interpretation preclude the Arbitrator from adding to the plain language of these integrated agreements any new term, much less a term as
25   important as an express waiver of representative arbitration. *See, e.g., Southern Cal. Gas Co. v. Ventura Co.,* 150 Cal.App.2d 253, 257 (1957); *Ratcliff Architects v. Vanir Constr. Mgmt.,* 88
26   Cal.App.4th 595, 602 (2001); *BMW of N. Am. v. Krathen,* 471 So.2d 585 (Fla. App. 1985); *Cress v. Recreation Servs.,* 795 N.E.2d 817 (Ill. App. 2003); *Brauer v. Trustees of First M.E. Church,* 1
27   A.2d 409, 410 (N.J. Err. & App. 1938); *Porter v. Columbus Bd. of Indus. Rel'ns,* 675 N.E.2d
28   1329, 1332 (Ohio App. 1996).

1   *also* Goldsmith Decl., Exh. 20, May 4, 2005 Order at 9-10 & n.7 (noting Cintas' position that it

2   did not contend that all class arbitration was precluded); *Olson, supra,* at 7 (binding party to in-

3   court representations that its arbitration agreements did not preclude class arbitration, and stating:

4   "any reasonable person hearing a declaration that 'we are not saying they cannot pursue any class

5   claims' would understand [that the party] . . . was saying that class claims are allowed by the

6   agreement"); Goldsmith Decl., Exh. 8, *Cook and Rent-a-Center, Inc.,* AAA Case No. 11 160

7   01815 04 at 4 (Todd 2005) ("Cook") (same).  To allow Cintas at this point to take the opposite

8   position from that it took before Judge Armstrong would impermissibly condone a "litigant

9   playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778,

10  782 (9th Cir. 2001) (applying principles of judicial estoppel).[11]

11          Third, the arbitration-initiation language in Cintas' agreements cannot reasonably be

12  construed as an implicit prohibition against any claimant proceeding on a class or collective

13  basis.  Unlike the clause in *Sidhu,* Cintas' arbitration clauses do not dictate arbitration venue –

14  *i.e.,* where an arbitration under its provisions must be conducted.  Rather, Cintas' language is at

15  most a limitation on how an employee may initiate arbitration on his or her own behalf, not a

16  limitation on how claims may be adjudicated once another employee has initiated arbitration on a

17  class basis or a limitation on *joining* another employee's already-initiated arbitration.  Just as

18  Cintas' arbitration-initiation language did not trump FAA §4's judicial-district venue

19  requirement, neither can it trump any claimant's statutory rights under §216(b) of the FLSA, or

20  under state and federal class action provisions applicable to the state overtime claims at issue, or

21

22

---

23          [11] Cintas' concession completely undercuts any argument that its clause prohibits class
    arbitration because it includes language referring to the "employee" in the singular, rather than to
24  "employees" in the plural form.  In any event, although this Arbitrator found in *Sidhu* that the use
    of singular noun forms created some ambiguity in the parties' intended meaning, other arbitrators
25  have concluded that such usage cannot effect a waiver of the important right to pursue claims on
    a class or collective basis. *See, e.g., Medina, supra,* at 6; *Cole, supra,* at 7 ("The use of personal
26  pronouns cannot by inference achieve the deprivation of significant rights. . . . Had the drafters
    intended a specific exclusion of class-action participation, they had the obligation clearly to
27  articulate the exclusion."); Goldsmith Decl., Exh. 6, *Budner and Oats,* AAA Case No. 11 181
    00828 04 at 8 (Zimmerman 2004) ("Budner").
28

1  under the joinder provisions of Fed. R. Civ. P. 19 and 20 – each of which provide an independent

2  legal basis for similarly-situated Cintas drivers to "join" this arbitration as additional party

3  plaintiffs. Because Cintas does not dispute that *this* arbitration has been properly initiated and

4  that *this* arbitration may proceed in the Northern District of California on behalf of at least *some*

5  claimants, Cintas' arbitration-initiation clause should have no ongoing relevance in the Clause

6  Construction phase of this proceeding.[12]

7       Even if Cintas had included an actual arbitration-venue clause in its agreements, that

8  clause could not trump the claimants' right to join other Cintas employees' properly-commenced

9  arbitration, much as this Arbitrator determined in *Sidhu*. Under well-established class action

10 principles, absent class members are entitled to participate in another plaintiff's lawsuit, without

11 affirmatively opting in (as long as that class member does not opt out after receiving the class

12 action notice). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808-14 (1985). Under

13 equally well-established FLSA principles, any employee who is similarly situated to an FLSA

14

15  _____

16  [12]  While the *Sidhu* clause was an actual arbitration venue clause that set forth "the
    location of arbitration," *Sidhu* at 2, the Cintas clause only contains arbitration-initiation language,

17  stating that an employee may initiate arbitration by submitting a "timely written request" that
    asks to have an arbitration "conducted in accordance with" the AAA Employment rules and

18  "held in the county and state where Employee currently works for Employer or most recently
    worked for Employer." That language in Cintas' agreements does not dictate where the

19  arbitration must actually be conducted; only how the request for arbitration must be worded.

20       That Cintas' arbitration clause governs only arbitration initiation, not venue, is

21  underscored by the analysis in *Richard C. Young & Co. v. Leventhal*, 298 F. Supp. 2d 160, 168-
    70 (D. Mass. 2003). In that case, the arbitration clause required the parties' "disagreement [to]

22  be submitted for arbitration to the American Arbitration Association in Boston, Massachusetts" –
    a far more ambiguous clause that could read either as an arbitration-initiation clause or as an

23  arbitration venue clause. The court recognized that this language could be construed either as

24  requiring the request for arbitration to be submitted to AAA's Boston office or as requiring that
    the arbitration itself take place in Boston. Applying the basic rule that any ambiguity must be

25  construed against its drafter, the court found that the clause limited only the submission of a
    request for arbitration, and did not operate as a forum-selection clause that required the

26  arbitration to be conducted in Boston. (Although the First Circuit later reversed on the ground

27  that construction of the arbitration clause was the responsibility of the arbitrator rather than the
    court, it did not comment on the district court's actual construction of that language. *See* 389

28  F.3d 1, 3-5 (1st Cir. 2004)).

1    plaintiff may opt in to that plaintiff's existing collective action for unpaid wages or overtime

2    simply by filing a Consent to Sue form in the existing lawsuit, without having to file a separate

3    lawsuit in a court that would have venue over his or her individual claims. *See* 29 U.S.C.

4    §216(b). Nothing in Cintas' arbitration-initiation clause language precludes claimants from

5    joining this existing action as additional class or collective action members or from joining this

6    arbitration as additional parties plaintiff under Fed. R. Civ. P. 19 or 20, any more than the city-

7    by-city venue clause in *Sidhu* precluded a single, consolidated California class arbitration that

8    included absent class members as well as the named class representative. Once Cintas

9    guaranteed its employees access to all legally-available relief, it accepted the possibility that

10   arbitrators appointed under its arbitration clauses could order classwide or collective relief.

11        The fourth reason why Cintas' arbitration clause cannot fairly be read as forbidding class

12   or collective arbitration is because, as in *Sidhu*, that clause expressly and repeatedly authorizes

13   the Arbitrator to grant all relief and all remedies that a court could make available under state or

14   federal law – a broad grant of authority that is inconsistent with an implied prohibition on class

15   or collective proceedings. Cintas' arbitration clauses specifically provide that the "arbitrator

16   shall have authority to award the prevailing party *any relief* . . . available under relevant laws."

17   Goldsmith Decl., Exh. 1, ¶6 (emphasis added); *see also id.,* Exh. 2, ¶5 ("arbitrator . . . shall have

18   the authority to award *appropriate relief,* . . . as available under relevant laws") (emphasis

19   added); *id.,* Exh. 3, ¶5 (same); *id.,* Exh. 4, ¶5 (same); *id.,* Exh. 5, ¶8 ("arbitrator will have the

20   authority to award either party *appropriate relief,* including damages, costs and attorneys' fees,

21   as available under relevant laws") (emphasis added). Each clause also fully incorporates AAA

22   Employment Rule 34(d), which authorizes the arbitrator to grant any relief deemed "just and

23   equitable, including any remedy or relief that would have been available to the parties had the

24   matter been heard in court."

25        As the Supreme Court explained in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514

26   U.S. 52, 61 n.7 (1995) (in deciding whether the parties' broad arbitration language authorized an

27   arbitrator to award punitive damages), "it would seem sensible to interpret the 'all disputes' and

28

15

1  'any remedy or relief' phrases to indicate, at a minimum, an intention to resolve through

2  arbitration any dispute that would otherwise be settled in a court, and to allow the chosen dispute

3  resolvers to award the same varieties and forms of damages or relief as a court would be

4  empowered to award." (Quotation omitted.) *Accord Cole*, *supra*, at 11 (construing contract

5  language empowering the arbitrator to "award you anything you might seek through a court of

6  law" as authorizing collective and classwide remedies "as if sought in a court of law"); *Sidhu* at 2

7  ("any relief" language supports claimants' position that the arbitrator was empowered to award

8  classwide relief under statutes that authorize courts to provide such relief).

9      Here, because Cintas' arbitration clauses gave the Arbitrator broad authority to exercise

10  the same power to grant relief as a court could exercise, Cintas must have intended to permit the

11  Arbitrator to award relief on a classwide or collective basis.  Under the applicable statutes, courts

12  may award classwide or collective relief for claimants' statutory overtime claims against Cintas.

13  The FLSA authorizes collective actions, 29 U.S.C. §216(b), and the state laws at issue permit

14  class actions.[13]

15      Representative adjudication furthers the vital public policies of state and federal wage

16  laws by ensuring that those laws will be effectively and efficiently enforced.  The class and

17  collective action devices afford claimants "the advantage of lower individual costs to vindicate

18  rights by the pooling of resources" and permit "efficient resolution in one proceeding of common

19  issues of law and fact arising from the same alleged . . . activity." *Hoffman-LaRoche, Inc. v.*

20  *Sperling*, 493 U.S. 165, 170 (1989).  Thus, they are particularly favored in the context of

21  statutory wage claims.  *See, e.g., Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319,

22  340 (2004); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 n.13 (9th Cir. 2003).  "In the

23  [FLSA] area particularly, often each individual claim results in a small monetary remedy,

24

25

26    [13]   *See* Cal. Code Civ. Proc. §382; Colo. R. Civ. P. 23; Conn. Practice Book §9-7 *et seq.*;
      Ill. Comp. Stat. 5/2-801; Ind. R. Civ. P. 23; Ky. R. Civ. P. 23; Md. R. Civ. P. 2-231; Mo. Rules
27    of Ct. 52.08; N.J. Ct. Rules 4:32-1 *et seq.*; N.Y. CPLR §901 *et seq.*; Ohio R. Civ. P. 23; Kan.
      Stats. §60-223; Mass. R. Civ. P. 23; Minn. R. Civ. P. 23; N.M. R. Civ. P. 1-023; Pa. R. Civ. P.
28    1701 *et seq.*; R.I. Sup. Ct. R. Civ. P. 23; Wash. Sup. Ct. Civ. R. 23; Wis. Stat. §803.08.

1  whereas class actions often result in practice and programmatic change that benefit all

2  employees." *Walker v. Ryan's Family Steak Houses Inc.*, 289 F. Supp. 2d 916, 926 (M.D. Tenn.

3  2003), *aff'd*, 400 F.3d 370 (6th Cir. 2005); *see also Goldstein, supra*, at 3 ("The class or

4  collective action device is particularly well-suited to wage claims, as most employees are

5  unlikely to bring such claims as a single plaintiff for fear of retaliation or loss of job, and most

6  terminated employees are unlikely to seek or obtain counsel to challenge either the termination or

7  terms and conditions which applied during employment."). In short, courts and arbitrators have

8  repeatedly endorsed class and collective relief as a vital tool to vindicate employees' statutory

9  employment rights. Because Cintas authorized the Arbitrator to grant all relief available under

10 the applicable statutes, it necessarily conferred the power to allow this arbitration to proceed on a

11 class or collective action basis.

12      Fifth, Cintas' arbitration clause, as a standardized form agreement drafted by the

13 employer, must be construed in a manner that furthers rather than impairs the employees'

14 reasonable expectations. *See, e.g.*, Restatement (Second) of Contracts, §211 cmt. f ("Although

15 customers typically adhere to standardized agreements and are bound by them without even

16 appearing to know the standard terms in detail, they are not bound to unknown terms which are

17 beyond the range of reasonable expectation."); *Klussman v. Cross Country Bank*, 134 Cal. App.

18 4th 1283 (2005) (consumers not bound by class arbitration waiver in arbitration provider's rules

19 incorporated by reference in arbitration clause). The federal court in *Veliz* has already found that

20 it would be "ludicrous" to think that claimants had equal bargaining power to Cintas, their

21 employer and a nationwide leader in its industry. Goldsmith Decl., Exh. 15, April 5, 2004 Order

22 at 18. Not only are claimants far less sophisticated than the drafters of Cintas' arbitration

23 clauses, but it is not reasonable to believe that Cintas' employees recognized, when they signed

24 the arbitration agreements, that they were waiving rights to adjudicate statutory claims on a

25 representative basis when the agreements were completely silent about the matter.

26      Much as the *Klussman* court recognized that few customers were likely to research the

27 arbitration rules and understand that they effected a class arbitration waiver, 134 Cal. App. 4th at

28

17

1   1299-1300, here the Arbitrator should recognize that only the most diligent and sophisticated

2   SSRs might even have considered whether anything in Cintas' arbitration clauses might be

3   construed to waive their right to participate in class or collective arbitration.  Any such statutory

4   waiver should be set forth clearly, not based on inferences from oblique language drafted by a

5   sophisticated employer and its lawyers.  *See Cole, supra*, at 7 (waiver of the important right to

6   arbitrate statutory wage claims collectively, as opposed to individually, should be set forth in

7   clear language, rather than derived from ambiguous language that does not refer specifically to

8   collective arbitration at all).

9        Sixth, to the extent Cintas' arbitration language is ambiguous concerning class or

10   collective procedures, that ambiguity must be resolved against Cintas as its drafter.  Arbitration

11   clauses, like other contracts, are subject to the "common-law rule of contract interpretation that a

12   court should construe ambiguous language against the interest of the party that drafted it."

13   *Mastrobuono*, 514 U.S. at 62.  "The reason for this rule is to protect the party who did not choose

14   the language from an unintended or unfair result."  *Id.*  This rule stems from the recognition that

15   "[w]here one party chooses the terms of a contract, he is likely to provide more carefully for the

16   protection of his own interests than for those of the other party," and to "have reason to know of

17   uncertainties of meaning."  Restatement (Second) of Contracts, §206, cmt. a.[14]

18        In *Mastrobuono*, the question was whether plaintiffs waived their right to seek punitive

19   damages by agreeing to arbitrate any disputes that arose.  Similarly, in this case the question is

20   whether claimants waived their equally important right to resolve statutory wage claims on a

21   representative (and thus far more efficient, less costly, and less burdensome) basis.  Here, a

22   finding that claimants waived their right to arbitrate statutory wage claims collectively would set

23   up a process of adjudication that is wholly inconsistent with Judge Armstrong's prior rulings and

24

25   [14]   Indeed, corporate drafters might deliberately leave an arbitration clause silent on the

26   question of class arbitration precisely to "keep their options open" before arbitrators and courts.
     To protect the unknowing employee from waiving important rights where such waiver is not

27   perfectly clear from the face of the corporation's arbitration clause, the arbitrator should construe
     such silence against "the party who would most benefit from silence being found to preclude

28   class action arbitration." *Medina, supra,* at 5.

the public policies underlying claimants' statutory claims. As the Supreme Court recognized in *Hoffman-LaRoche*, resolving statutory wage claims on a collective basis allows claimants to pool their resources and litigate common questions of law and fact most efficiently. 493 U.S. at 170. And here, Judge Armstrong already found that claimants are similarly situated with respect to their claims against Cintas when she conditionally certified the federal case as an FLSA collective action:

> In sum, at this juncture there is enough of a nexus between plaintiffs and the individual SSRs for the Court to conditionally certify the class. The plaintiffs and individual SSRs are proceeding on the same legal theory and have been subject to the same blanket policy by the same employer. None of the alleged differences that Cintas raises at this juncture undermine that factual nexus. In fact, they strengthen it.

Goldsmith Decl., Exh. 14, Nov. 4, 2003 Order at 8; *see also id.*, Exh.17, May 25, 2004 Order at 1. Requiring some 1,800 claimants who have *already* been found to be similarly situated as a matter of the law and facts to initiate hundreds of separate arbitrations would not only exponentially increase claimants' expenses and eliminate the economies of scale inherent in proceeding collectively, but it would also give rise to an extraordinarily high risk of inconsistent adjudications on what are recognized to be common questions.

Fragmenting this arbitration into thousands of separate individual claims would be inconsistent with the public policies favoring collective and class adjudication of common statutory wage claims and, as a practical matter, would have the improper effect of insulating Cintas from any consequences for its conduct. *See Ingle*, 328 F.3d at 1176 n.13 ("Denial of a class action in cases where it is appropriate may have the effect of allowing an unscrupulous wrongdoer to retain the benefits of its wrongful conduct. . . . [A]n arbitration agreement that automatically eliminates the right to a class-wide proceeding would have the 'substantial' effect of contravening the principles behind class action policies and 'chilling the effective protection of interests common to a group.'") (citing *Keating v. Superior Court*, 31 Cal. 3d 584, 609

19

1   (1982)).[15]  To allow Cintas to take advantage of ambiguity in its clauses that it has surely known

2   was there all along by construing the clauses to forbid class or collective arbitration would not

3   only "effect a deprivation of significant rights," *Cole, supra,* at 8, but would also undermine

4   enforcement of the laws and public policies at issue.  Applying common principles of contract

5   interpretation, the Arbitrator should therefore conclude in this case, as in *Sidhu* and as is required

6   under the laws of every state at issue, that any ambiguity in Cintas' language must be construed

7   against the drafter, thus leading to the conclusion that Cintas' arbitration clauses do *not* forbid,

8   but instead permit, class and collective arbitration.[16]

9       Seventh, and finally, Cintas' arbitration clauses should be construed as permitting class

10  and collective arbitration because to construe them as prohibiting such arbitration would compel

11

12       [15]  Forcing claimants who have already been found similarly situated to arbitrate
13  individually would also be inconsistent with the common principle in FLSA collective actions
    that each claimant need not prove liability or damages through individual testimony.  The courts
14  have long permitted representative testimony in collective actions regarding an employer's
    practices common to the group.  *See, e.g., Anderson v. Mt. Clemens Pottery Co.,* 149 F.2d 461,
15  461 (6th Cir. 1945), *rev'd on other grounds,* 328 U.S. 680, 680 (1946) (eight of 200 employees
    testified); *Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 66 (2d Cir. 1997)
16  (representative testimony of 2.5% of workers); *Bell v. Farmers Ins. Exch.,* 115 Cal. App. 4th 715,
17  722-23, 743-51 (2004) (representative testimony of 11% of workers).

18       [16]  *See, e.g., Badie v. Bank of America,* 67 Cal. App. 4th 779, 798, 801 (1998); *accord*
19  *BellSouth Comm. Sys., LLC v. West,* 902 So.2d 653, 657 (Ala. 2004); *Allstate Ins. Co. v. Avis
    Rent-a-Car Sys., Inc.,* 947 P.2d 341, 346 (Colo. 1997); *Cantonbury Heights Condominium Ass'n,
20  Inc. v. Local Land Development, LLC,* 873 A.2d 898, 904-05 (Conn. 2005); *City of Homestead v.
    Johnson,* 760 So.2d 80, 84 (Fla. 2000); *Dowd & Dowd, Ltd. v. Gleason,* 693 N.E.2d 358, 368
21  (Ill. 1998); *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.,* 802 N.E.2d
    901, 910 (Ind. 2004); *Southern Bell Tel. & Tel. Co. v. Chappelle,* 415 S.W.2d 826, 827 (Ky.
22  1967); *Truck Ins. Exch. v. Marks Rentals, Inc.,* 418 A.2d 1187, 1191 (Md. 1980); *Klapp v.
    United Ins. Group Agency, Inc.,* 663 N.W.2d 447, 455 (Mich. 2003); *Trimble v. Pracna,* 176
23  S.W.3d 706, 714 (Mo. 2005); *Ringle v. Bruton,* 86 P.3d 1032, 1039 (Nev. 2004); *Benjamin
24  Moore Paint Co. v. Aetna Cas. & Sur. Co.,* 843 A.2d 1094. 1099 (N.J. 2004); *Computer Assocs.
    v. U.S. Balloon Mfg. Co.,* 782 N.Y.S.2d 117, 119 (App. Div. 2004); *State v. Philip Morris USA
25  Inc.,* 618 S.E.2d 219, 225 n.14 (N.C. 2005); *Westfield Ins. Co. v. Galatis,* 797 N.E.2d 1256, 1262
26  (Ohio 2003).  Many arbitrators have applied the construe-ambiguities-against-the-drafter rule in
    determining clause construction.  *See Sidhu, supra,* at 2; Goldsmith Decl., Exh. 10, *Jones and
27  Genus Credit Mgmt. Corp.,* AAA Case No. 11 181 0295 05 (Green 2005) ("Jones"); *id.,* Exh. 12,
    *Olson, supra,* at 1, 4; *id.,* Exh.6, *Budner, supra,* at 8; *id.,* Exh. 7, *Cole, supra,* at 4; *id.,* Exh. 9,
28  *Goldstein, supra,* at 1.

1    the finding that they are unconscionable under the laws of many states. When the *Veliz* plaintiffs

2    called to the Court's attention that Cintas might assert that its clauses prohibited class or

3    collective arbitration, thus inviting a finding that the clauses were unconscionable, Cintas told the

4    Court that it did *not* contend that its clauses precluded all class arbitration. Reconsideration Opp.

5    at 17. By taking this position in court, Cintas both neatly sidestepped any finding that would

6    have invalidated its arbitration clauses and persuaded Judge Armstrong not to reach the question

7    of whether Cintas' arbitration clauses actually did forbid class or collective arbitration.

8         Now, however, Cintas can no longer defer a decision on the question of how its

9    arbitration clauses should be construed. An employer should no more be permitted to prohibit

10   class arbitrations implicitly than, under many states' laws, it can prohibit class arbitrations

11   explicitly.[17] "If an employer cannot write a provision precluding class arbitration and have it

12   enforced . . . , it is inconsistent to find that an Employer's silence on this subject could achieve a

13   different result." *Medina, supra,* at 6.

14        Nothing in Cintas' arbitration clauses prohibits class or collective arbitration, as Cintas

15   has conceded. Therefore, to avoid the otherwise inevitable conclusion that the arbitration clauses

16   are unconscionable under the laws of many of the relevant states, the Arbitrator should construe

17   Cintas' arbitration clauses, as it construed the clause in *Sidhu,* to permit this arbitration to

18   proceed on a class and collective basis.

19

20

21

22

23

_____

24        [17] *See, e.g., Discover Bank v. Superior Court,* 36 Cal. 4th 148 (2005); *Ingle,* 328 F.3d at
      1176 (California law); *Leonard v. Terminix Int'l Co.,* 854 So. 2d 529 (Ala. 2002); *BellSouth*
25   *Mobility LLC v. Christopher,* 819 So. 2d 171 (Fla. App. 2002); *Kinkel v. Cingular Wireless,*
      *LLC,* 828 N.E.2d 812 (Ill. App. 2005), *appeal allowed,* 839 N.E.2d 1025 (Ill. 2005); *Lozada v.*
26   *Dale Baker Oldsmobile,* 91 F. Supp. 2d 1087, 1105 (W.D. Mich. 2000); *Whitney v. Alltel*
      *Communications, Inc.,* 173 S.W.3d 300 (Mo. App. 2005); *Tillman v. Commercial Credit Loans,*
27   2005 WL 2295111 (N.C. Super. 2005); *Eagle v. Fred Martin Motor Co.,* 809 N.E.2d 1161 (Ohio
28   App. 2004); *Luna v. Household Fin. Corp.,* 236 F. Supp. 2d 1166 (W.D. Wash. 2002).

## CONCLUSION

For the foregoing reasons, the Arbitrator should find that the 1996, 1999, 2001, 2002 and 2003 Cintas arbitration agreements permit this arbitration to proceed on a class or collective basis.

Dated: February 8, 2006

Respectfully submitted,

Michael Rubin
Scott A. Kronland
Eileen B. Goldsmith
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN

   /s/ Michael Rubin
Michael Rubin

177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151
Fax: 415/362-8064

*additional counsel on following page*

Attorneys for Claimants Paul Veliz *et al.*

Albert H. Meyerhoff, Esq.
LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
355 South Grand Avenue, Suite 4170
Los Angeles, California 90071
(213) 617-9007 - Office
(213) 617-9185 - Fax

Theresa M. Traber
Vanessa Eisemann
Jocelyn Sperling
TRABER & VOORHEES
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
(626) 585-9611 - Office
(626) 577-7079 - Fax

Nancy Juda, Esq.
LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
1100 Connecticut Ave., N.W., Suite 730
Washington, D.C. 20036
(202) 822-2024- Office
(202) 828-8528- Fax

Theodor J. Pintar
Steven W. Pepich
James A. Caputo
Lawrence A. Abel
Helen I. Zeldes
LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
401 B Street, Suite 1700
San Diego, California 92101-4297
(619) 231-1058 - Office
(619) 231-7423 - Fax

1

## CERTIFICATE OF SERVICE

2

**CASE:**     Veliz et al. v. Cintas Corporation et al.

3

**CASE NO.:**   American Arbitration Association Case No. 11 160 01323 04

4

      I am employed in the City and County of San Francisco, California. I am over the age of

5

eighteen years and not a party to the within action. My business address is 177 Post Street, San Francisco, California 94108.

6

      On February 9, 2006, I served the following document(s):

7

## CLAIMANTS' CLAUSE CONSTRUCTION OPENING BRIEF

8

## DECLARATION OF EILEEN GOLDSMITH IN SUPPORT OF CLAIMANTS' CLAUSE CONSTRUCTION OPENING BRIEF

9

10

on the parties, through their attorneys of record, by sending true copies as shown below for service as designated below:

11

By Federal Express: I am readily familiar with the practice of Altshuler, Berzon for the

12

collection of overnight courier mail and I caused each such envelope to be delivered to Federal Express Corporation at San Francisco, California, with whom we have a direct billing account, to be delivered to the office of the addressee on the next business day. I deposited this package at

13

the Kearny Street location.

14

15

| ADDRESSEE(S) | PARTY REPRESENTED |
|---|---|
| Mark C. Dosker | Counsel for Defendant, |
| Michael W. Kelly | Cintas Corporation, *et al.* |

16

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Third Floor

17

San Francisco, CA 94111-3492
Facsimile: 415.393.9887

18

Mdosker@SSD.com
Mkelly@ssd.com

19

20

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

21

22

      Executed on this February 9, 2006 at San Francisco, California.

23

24

                      /s/
                Holly Miller

25

26

27

28

DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.    That on May 3, 2006, declarant served the DECLARATION OF STEVEN W. PEPICH IN SUPPORT OF THE *VELIZ* PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE ACTIONS UNDER 28 U.S.C. §1407 by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    Pursuant to Rule 5.12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, copies will be filed in each district court in which an action is pending that will be affected by this motion.

4.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of May, 2006, at San Diego, California.

BONNIE M. NAIDITCH

Judicial Panel on Multidistrict Litigation - Panel Attorney Service List

Docket: 1781 - In re Cintas Corp. Overtime Pay Arbitration Litigation

Status: Pending on / /

Transferee District:    Judge:                                      Printed on 04/18/2006

**ATTORNEY - FIRM**                    **REPRESENTED PARTY(S)**

Dosker, Mark C.
Squire, Sanders & Dempsey, L.L.P.
One Maritime Plaza
Suite 300
San Francisco, CA 94111-3492

=> Cintas Corp.*; Plan Administrator for the Cintas Partners' Plan*

Pepich, Steven W.
Lerach Coughlin Stoia Geller Rudman & Robbins, LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

=> Abel, Robert J.*; Abrahamsen, David J.*; Ackerman, Nicholas*; Adams, Randall*; Addison, Jack*; Adkins, Donald*; Adolph, Joseph W.*; Agler, Bradley*; Agostini, Jason*; Agozzino, Vince*; Ainsworth, Daniel E.*; Albright, Ryan*; Alegria, Roberto Carlos*; Alert, Thomas Eugene*; Alfred, Chad*; Alioto, Brandon*; Allen, Alice*; Allen, Joseph*; Allen, Judd*; Allen, Sean*; Allred, Jonathan*; Allshouse, Michael Lee*; Allspach, Gary*; Alves, Louis*; Ames, Christopher J.*; Ammon, Ryan*; Amott, Troy*; Anaya, Issac*; Anaya, John*; Anderson, Darren Mitchell*; Anderson, Jeffrey*; Anderson, Matthew*; Anderson, Michael*; Anderson, Randy*; Anderson, Robert D.*; Anderson, Zebulan (Zeb)*; Andree, Nathan J.*; Andrews, Joe*; Andrews, Robert*; Ansink, Jr., John O.*; Aranegui, Gus*; Arango, Rick*; Arms, Rick*; Armstrong, Bryan*; Arroyo, Heriberto*; Arroyo, Sijifredo*; Artley, Stephen Paul*; Arvin, Harold W.*; Arvizu, Ronald*; Ash, Brian*; Atkins, James*; Augustin, Matthew*; Ault, Travis M.*; Avalos, Agustin*; Avalos, Guillermo*; Avery, Ivan Edward*; Avila, Hector*; Aybar, Jeffrey*; Bachman, Sean*; Bachmann, Kenneth J.*; Badgerow, Gary*; Bailey, Wayne C.*; Baker, Brian*; Baker, Joshua*; Baldwin, Daniel S.*; Baldwin, David*; Banks, Joe L.*; Baptist, Kenneth W.*; Barbarotta, Sam*; Barfield, Donald Ray*; Barlow, Stephen*; Barnard, Justin*; Barnes, Gregg*; Barnes, Relton*; Barr, Jeff*; Barrett, Jason*; Bartz, Michael*; Bass, Donnie*; Bassett, Dennis*; Bauer, Jr., Harold D.*; Baughman, Casey*; Baumer, Christopher*; Baxter, Aaron*; Beal, Kevin*; Bean, Robert W.*; Beard, Everett G.*; Beard, Mitchell Aron*; Beck, Joseph*; Beckham, Mark*; Bedard, Patricia*; Bell, Wade*; Bell, William Christopher*; Bender, Daniel Lee*; Benecke, Stephen C.*; Benedict, Tyrone Charles*; Benson, Josh*; Bentley, Hank*; Bereza, John*; Berlage, Joseph E.*; Berna, Brent*; Berry, Paul*; Bersch, Warren*; Bertrand, William*; Biase, Joseph D.*; Bickham, John D.*; Bickmeyer, Warren*; Bierach, Conrad*; Bigbee, Gregory Cole*; Bigelow, Jason Scott*; Bippus, David W.*; Bishop, Janice M.*; Bissin, Brooke A.*; Bitz, William J.*; Bivins, Michael*; Blackburn, Jessica Lynn*; Blackman, Matthew L.*; Blackmon, James Kurt*; Blaha, Christopher*; Blaisdell, Philip Daniel*; Blake, Thomas Flynn*; Blanchard, Bernard L.*; Blanco, Noe*; Blenden, Chad M.*; Blessing, Jay*; Bobeck, Craig*; Bobo, Brian*; Bobola, Kenneth*; Bodenmiller, George*; Bohn, David*; Bolden, Alfonso*; Bolen, Jr., Silas Ray*; Boman, Jason*; Bonacorsi, Daniel J.*; Bonds, Jr., Jackie Ray*; Booker, Kathleen*; Booth, Danel*; Borawski, Scott*; Borrmann, Kevin*; Boslaugh, Kevin*; Bostick, Tony L.*; Bostwick, Noah*; Bova, Jr., John S.*; Bow, Jonathon James*; Bower, Kevin*; Bowles, Jr., Robert F.*; Bowles, Randall*; Bowman, Daryl*; Boyd, Ricko Lonnell*; Boyle, Michael P.*; Boynton, Kevin*; Braaten, Bob*; Bracamontes, Ralph*; Bradley, Tory*; Brandt, Dean*; Branscome, Thomas Scott*; Brantley, Michael*; Bray, Michael C.*; Brewster, James*; Bridges, Larry Daniel*; Bridges, Thomas Allan*; Brien, Joseph*; Brinlee, Robert*; Brinning, Brandon*; Briseno, Manuel G.*; Bristow, Mark*; Brite, Bobby*; Britt, Tony*; Brock, Stephen*; Brook, Dezmon*; Brooks, Antoine Alonzo*; Brooks, Chris*; Brooks, Stephen*; Brown, Chris*; Brown, Christopher*; Brown, Danny L.*; Brown, Jonathan*; Brown, Jr., Gregory*; Brown, Jr., James*; Brown, Michelle*; Brown-Donald, Cory*; Brown-Phillips, Mary E.*; Browning, Jennifer L.H.*; Browning, Stuart*; Bruno, Stuart*; Brunson, Gregory*; Bryam, Jason Albert*; Bryant, Gregory S.*; Buddie, Brian*; Buen, Brian*; Bullard, Brandon Eugene*; Bunderson, Jason*; Burcke, Robert*; Burgess, Scott*; Burghart, Vince McClain*; Burke, Christopher*; Burke, Donald*; Burke, Michael*; Burress, James Allen*; Burt, Jonathan*; Burton, Crezone*; Bush, David J.*; Bustamante, Esequiel*; Butler, Dustin Lee*; Butler, Jeffrey A.*; Buttner, Christopher C.*; Buuck, Greg M.*; Cabrera, Jorge*; Cady, Chad Jason*; Cagle, Lucas Hunter*; Cala, Peter James*; Caldwell, Scott Patrick*; Callahan, John*; Calvin, Dean*; Camden, Christopher*; Cameron, Bruce*; Cameron, Chris*; Campion, Michael H.*; Campos, Gustavo G.*; Cantu, III, Leonel*; Carelock, Bryan*; Carney, Sr., Eric*; Carr, Boyd*; Carr, Ray Anthony*; Carrier, Gerardo*; Carrillo, Javier*; Carter, Charlie*; Carter, Jr., Nelson*; Carter, Kevin*; Carter, Matthew S.*; Carter, Stephen W.*; Carter, Terry*; Carthon, Ricky*; Caruso, Kenneth*; Cash, Jason*; Casselman, Dana*; Cassens, Everett W.*; Castens, Richard*; Castleberry, Don*; Caton, Clinton*; Caudill, Michael*; Cavagnaro, Tina A.*; Cavanaugh, Craig Robert*; Cavazos, Jesse*; Cervantes, Marcos*; Chainuck, Mark*; Chalmers, Scott*; Chambers, Sr.,

Note: Please refer to the report title page for complete report scope and key.

*(Panel Attorney Service List for MDL 1,781 Continued)*

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | Broderick*; Chambers, Veronica*; Chapman, Brent*; Chapman, David*; Chappell, Chad*; Charatin, Daniel*; Checchia, Davide*; Chesser, Larry D.*; Chew, William*; Chirino, Humberto*; Choate, Doug*; Christensen, Eugene*; Churches, Dennis L.*; Cingel, Timothy*; Cintron, Michael S.*; Citrano, Chris*; Clark, Brian*; Clark, Jr., Gerald*; Clark, Michael D.*; Clark, Shon D.*; Clayton, William W.*; Cleaves, Sr., Jason*; Clouse, Daniel*; Cobble, James*; Cockreham, Colin*; Coe, Steven M.*; Colavito, Marc*; Colby, Jeffrey*; Colca, Keith*; Cole, Dennis*; Colihan, Robert*; Collazo, Edwin Upcano*; Collins, Bobby*; Collins, French*; Colunga, Orlando*; Comaty, Kevin*; Combs, Gary*; Conigland, James W.*; Conley, Marty D.*; Connelly, James*; Conner, Michael*; Conti, Matthew*; Contreras, Carlos Javier*; Contreras, Javier*; Contreras, Ricardo*; Conway, Merle*; Cook, David*; Coombs, Jason M.*; Cooper, Erinn*; Cooper, III, Daniel*; Cooper, Leon Allen*; Cooper, Shirlene*; Cope, Jr., James Andrew*; Coppock, II, Lonnie*; Corelli, Charles*; Cornelius, Randall M.*; Cornett, Michael*; Cortes, Gustavo*; Cortes, Jr., Juventino*; Cortez, Sonny*; Cothran, Matthew*; Cothran, Robert A.*; Cotter, Bruce*; Cottini, Jeffrey Louis*; Cottrell, Michael*; Cottun, Jon-Mikal*; Couton, Kevin*; Coulson, Jeffrey M.*; Cousins, Willie*; Covert, Roderick*; Cowles, Barbara*; Cox, Michael*; Cox, Shane A.*; Coy, Aaron*; Craig, John*; Craig, John Maurice*; Crawford, James Ryan*; Crawford, Nathaniel T.*; Crawford, Wesley*; Crews, Chad*; Crismond, Jeff*; Crivello, Tony*; Croft, III, Virgil Lee*; Crook, Robert*; Crosby, Germain*; Crumley, Timothy*; Cruz, Carlos R.*; Cruz, Rene*; Cruz, Samuel*; Culley, Donna J.*; Cumley, Michael*; Czamara, Jamie*; D'Amato, Pasquale*; Dahbu, Dahbu*; Dahl, Shawn L.*; Dahmke, Robert*; Dailey, Thomas, L.*; Dakos, Michael D.*; Dalsass, Mark*; Damron, II, Dan*; Danelle, Dana*; Dangerfield, Raymond*; Daniel, Roger*; Daniels, Jason*; Dardon, Jose*; Dauria, Philip*; Davis, Jason*; Davis, Jeffrey C.*; Davis, Robert Samuel*; Davison, Dustin*; Dawson, Dan*; Dawson, Keith C.*; Dawson, Timothy*; Day, Jackie Nelson*; Day, Patrick*; Debano, Craig*; DeBilzan, David*; DeBose, Erroll A.*; Deely, Daniel*; Dees, Chris C.*; DeFelix, Matthew J.*; Degroot, Robert J.*; Delaneo, David*; Delauro, Michael*; Delgado, Oscar R.*; Delort, John*; DelSorbo, Frank*; Dempsey, James*; DeMulling, Douglas*; Denise, Matthew*; Dennis, Marc*; Derenzo, Christopher*; DeRosia, Troy L.*; Dervin, John H.*; Desantis, Michael E.*; Devlin, Thomas*; Diaz, Albert*; Diazgranados, Humbert*; Dickerson, Jimmy*; Dickson, Kevin*; Diebler, Bryan*; Dilalvo, Carl*; Dillard, Marcus*; Dillon, Michael James*; Dimac, Jasmin*; Dipaolo, Derrick*; Dixon, III, Roy*; Dixon, Jean Lande*; Dixon, Timothy A.*; Dodge, Benjamin*; Dodson, Shirley*; Dodson, Tommy*; Doherty, Jr., John F.*; Dolan, John*; Doll, Russell*; Dollhopf, Thomas N.*; Dominquez, Frank Christopher*; Dompke, Alvin*; Donahue, Christopher*; Donegan, Michael*; Dool, Mark E.*; Dorris, Jermaine*; Doss, Robert*; Dossin, Ernest*; Downey, George*; Downey, James*; Drahos, James*; Dravland, David*; Drenckhahn, Larry A.*; Drendel, Lynn M.*; Driggers, Ashley*; Drought, Debra*; Drummond, Michael*; Ducey, Kevin Edward*; Duell, Clarence*; Dunham, Matthew H.*; Dunlap, Travis*; Durbin, Joseph Len*; Durbin, Phillip*; Durkin, R. Patrick*; Dwarte, Mark Daniel*; Dyer, John*; Eagle, Ryan Daniel*; Earl, Luis R.*; East, Joel*; Eastman, III, John James*; Eaton, Sean*; Ecija, Allan*; Edenfield, Samuel*; Edney, Jeff*; Edwards, Anthony*; Edwards, Douglas*; Edwards, Joseph E.*; Edwards, Mark*; Edwards, Wayne*; Eggebeen, John*; Ehrman, Steve*; Eldridge, Kendall*; Elliott, William*; Ellis, Sean*; Ellsworth, Jeffery*; Emberland, Douglas Brian*; Emmerling, Robert*; Eperthener, Andrew W.*; Erazo, Aliexer*; Erickson, Daniel*; Ericson, Robert*; Ernsperger, Jerry*; Ernst, Gregory*; Escovar, Jason*; Esparza, Jr., Sam*; Esparza, Pablo*; Esparza, Paul*; Estrada, Richard*; Etzler, Michael*; Evans, Edward*; Evans, Randall*; Evans, Terry C.*; Fabrizio, Samuel*; Fairley, Reginald D.*; Fancher, Thomas*; Farris, Greg*; Farthing, Kenneth*; Fast, Randolph*; Faul, Karl*; Faul, Shane*; Faux,, Jamie A.*; Favret, J. Michael*; Feagin, Mark Anthony*; Feehan, Scott*; Feeney, Patrick*; Fellin, Paul Lewis*; Ferreira, Carlton Michael*; Ferrell, Rick*; Ferrer, Hector*; Fielding, Scott*; Fields, Rickey*; Fillingame, Alan*; Finch, James*; Fincham, Jon Curtis*; Finnie, William D.*; Firer, Ruslan*; Fisher, Alfred*; Fisher, Nicholas*; Flagg, James*; Flanagan, Robert*; Fleck, James*; Flintom, Frank*; Flores, Eduardo*; Flores, Roger*; Floyd, Ricky*; Fogg, Jr., Norman*; Follen, James*; Folsom, James*; Folz, Jason*; Fonseca, Ricardo*; Fontenot, Jr., Gustave*; Forbes, Wanda*; Ford, John E.*; Ford, Robert C.*; Foreman, Michael E.*; Fortune, Scott*; Foster, H. Berk*; Foto, Jacob J.*; Fourman, Julia*; Fournier, Steven*; Fragassi, Shawn*; Fraginals, Mauricio*; France-Kelly, Timothy*; Franklin, Henry*; Franks, Glenn Mark*; Franks, Jerome*; Frashier, Dylan M.*; Frazer, Joshua*; Frazier, Joseph*; Freeman, Nathan*; Freeman, Scott*; French, Derek*; French, James David*; French, Ronald*; Fridley, Michael*; Frierson, David M.*; Frierson, Jeremaine*; Fries, Rick*; Frink, David*; Fuentes, Michael Anthony*; Fuerst, Craig*; Fugua, William*; Fulce, Jr., Raymond*; Gable, Jaymes*; Gage, Mark*; Gagne, William*; Gaines, Ronnie*; Galicia, Tomas*; Galik, Grant*; Gallo, Russ*; Galloway, Jr., Phillip |

---

Note: *Please refer to the report title page for complete report scope and key.*

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | R.*; Galloway, Robert C.*; Gambill, Kevin W.*; Gamez, Ruben*; Garcia, Anthony*; Garcia, Edmundo*; Garcia, Edward P.*; Garcia, Jerry*; Garcia, Jr., Adan*; Garcia, Lossan*; Garcia, Tracy Ramos*; Gardner, Brian*; Gardner, II, Paul J.*; Gardner, Jr., Ronald*; Garity, Thomas David*; Garland, Kelby*; Garrett, Ricky*; Garrett, Shawn*; Garrett-Webb, Melinda*; Garrison, Lamont*; Gartin, Chad*; Gaskins, Stephen*; Gastelum, Jesse*; Gates, Sammy*; Gaul, Michael*; Gay, Michael Keith*; Gedinsky, Kevin*; Geer, Robert L.*; Geile, John*; Geissinger, Michael B.*; Gemmati, Michael*; Gemmati, Phillip J.*; Genther, Brandon*; Gentry, David Lewis*; Gentry, Joshua*; Gentry, Wyman*; Giamalva, Jr., Frank*; Giammusso, Carrie*; Gibson, Tyler John*; Gienapp, Dalero*; Gilbert, Brian*; Gilchrist, Joe*; Gill, John*; Gilliland, Brent*; Gilmore, James*; Gilmore, Josh*; Glover, Robert*; Godoy, Karlo*; Goemaat, Anthony*; Goida, Jeffrey*; Goines, Pamela*; Golden, Daniel*; Gomez, Jeffrey*; Gomez, Vincent*; Gonce, Raul Jose*; Gonzales, Albert*; Gonzales, Jesus P.*; Gonzalez, Ivan*; Gonzalez, Yovani*; Goodman, Stuart S.*; Gordineer, Donald*; Gordon, Todd*; Goslau, Richard*; Goviea, Eric S.*; Graham, Luke D.*; Grant, Bryan*; Gray, Glenn E.*; Green, Jason Warren*; Green, Steven*; Green, Wayne*; Greene, III, Tilmon C.*; Greene, Jeff*; Greene, Les*; Greer, Russell*; Gregor, Scott Patrick*; Gregory, Jonathan A.*; Gremillion, John Alex*; Griffin, Donald Allen*; Griffin, Michael*; Grim, Matt*; Griner, Joseph Lee*; Grisby, Jr., Vernon*; Gritsipis, Antonios*; Groves, Jeffrey*; Grucza, Troy D.*; Gubala, Thomas*; Gugino, David George*; Gula, Jon*; Gullett, Rickey L.*; Gunckle, Richard E.*; Gurnee, Kimberly*; Guthrie, Terrance P.*; Guys, Jr., Ralph*; Hager, II, Thomas*; Hale, Russell*; Hall, Eric*; Hall, Renee*; Hall, Robert*; Haloski, David M.*; Hamby, Anthony Dean*; Hamilton, David*; Hamilton, Jason C.*; Hammer, Bruce*; Hammerberg, Tammy*; Hammons, Cody A.*; Hanson, Dan*; Hanson, Sarah*; Hanson, Sheree*; Hanthorn, Brian Scott*; Hardin, Mark Lee*; Harper, Kevin*; Harper, Steven*; Harris, Cheryl*; Harris, Dwight*; Harris, John Michael*; Harris, Jr., Raymond Mac*; Harris, Kim*; Harrison, DeCarlo*; Hart, Laurence*; Hart, Mike*; Hart, Scott*; Hartwell, Joshua*; Hassan, Ghassan*; Hauk, Walter*; Hawkins, Randal Kevin*; Hawkins, Ryan*; Hawthorne, Delondon*; Hayes, Clyde*; Hayes, Jeremiah*; Haynes, John A.*; Hays, Alan*; Heaney, Joseph*; Heath, Caderis*; Hedgpeth, Kelly Chad*; Hehr, II, William W.*; Hein, Brandon K.*; Heinrich, Eric*; Helbert, Matthew C.*; Held, David*; Hellen, Richard*; Helton, Daniel*; Henderson, Stephen*; Henderson, Toni*; Hendry, Kami*; Hennigan, Jordan*; Henning, II, William D.*; Hennon, Charles*; Hermes, Darren M.*; Hermiller, Chad*; Hernandez, Jorge*; Hernandez, Victor Hugo*; Herndon, Jr., James Grady*; Herr, David*; Herrera, Efrain*; Herrington, Harvey*; Herron, James*; Herzog, Greg*; Hess, Brian Keith*; Hewett, Robert*; Hewitt, Joshua*; Hickey, Charles Terry*; Hildreth, Barrett*; Hill, Brad Duane*; Hill, Daniel*; Hill, Dustin L.*; Hill, Jr., Steven*; Hilliard, Michael*; Hilyer, Donald Keith*; Hines, Bruce*; Hipp, Randall S.*; Hoaglund, Edward*; Hodge, Bobby C.*; Hoefle, H. David*; Hoekman, Peiter*; Hoffman, Dana*; Hoffman, Terry G.*; Hoffmann, Glenn*; Hohenstein, Rodney*; Holbrok, Ryan Scott*; Holcombe, Lavatus*; Holland, Daryl*; Holland, Jason*; Holloman, Carvell*; Holloway, Dayton*; Holmes, Willie*; Horn, Ben*; Horn, John*; Horne, Timothy*; Horton, Thomas*; Hosack, Richard*; Hoskins, III, Joseph Wiley*; Hotchkiss, Benjamin*; Houha, Leonard*; Householder, Chad*; Howe, Ronald*; Howe, Scott*; Howe, Steven*; Howell, Sidney*; Howell, Tracy*; Hubbard, Tim*; Huber, Peter James*; Huertas, Jr., Wilfredo*; Hughes, John M.*; Hughes, Stephen*; Hughes, Stephen Richard*; Hulet, James*; Hulse, Gregory D.*; Humbles, Derrick*; Humphrey, Alex*; Hurst, Craig*; Hurtado, Alvaro*; Hurtado, Daniel*; Hussmann, Reuben John*; Hutson, Nick*; Hutto, Herman*; Indorf, Neal*; Infante, Angel*; Ingram, Brandon*; Isaacs, William Keith*; Ivins, Justin*; Jackson, Colby L.*; Jackson, James*; Jackson, Marvin*; Jackson, Michael David*; Jackson, Rex O.*; Jackson, Sergeo*; James, Beau*; James, Jack*; James, Joseph*; James, Patricia*; Jamieson, Ronald*; Jamison, Matthew Leonard*; Jaseckas, Kenneth*; Jaslove, Jeremy*; Jay, Jeff*; Jeansonne, Joel*; Jedrysek, Erik Stephen*; Jefferson, David K.*; Jenks, Todd*; Jennings, Timothy W.*; Jewell, Marcus Angel*; Jimenez, Ricardo*; Jinings, Nick*; Johanson, Sean M.*; Johnlouis, Albert*; Johnson, Courtney*; Johnson, Darrin*; Johnson, Deon*; Johnson, Douglas*; Johnson, Eric*; Johnson, Eugene*; Johnson, Jadarthia*; Johnson, James*; Johnson, Jeff C.*; Johnson, John D.*; Johnson, Kwan*; Johnson, Lamont*; Johnson, Mark H.*; Johnson, Martin F.*; Johnson, Stephanie*; Johnson, Thomas S.*; Johnson, Todd*; Joiner, Robert*; Jones, Brian*; Jones, Clifford*; Jones, Craig*; Jones, David Darryl*; Jones, David E.*; Jones, Greg*; Jones, I, Michael*; Jones, John Corey*; Jones, Joshua*; Jones, LaShawn*; Jones, Paul*; Jones, Paul R.*; Jones, Shane M.*; Jones, Thomas Roy*; Jordan, Albert*; Judd, Randy*; Kadilak, Ken*; Kaeg, Silverio Ted*; Kandal, Donald*; Karr, Brian*; Kassen, Dale Allen*; Kelleher, Eugene*; Kelley, Timothy James*; Kelly, Amber*; Kelly, William*; Kennedy, Glen*; Kerlavage, Jr., Joseph R.*; Kern, Jason*; Kilby, Kevin*; Kincaid, Don*; Kincaid, Eric R.*; King, III, Richie*; King, Thelenious James*; King, Willie |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | A.*; Kingsley, Hugh J.*; Kinkead, Michael*; Kintler, Joseph*; Kinto, Thomas*; Kirby, Jason*; Kirksey, Joel L.*; Kirwan, Thomas*; Klement, Robert*; Klimm, Robert W.*; Kloes, William*; Klutch, Thomas*; Knapp, Jason*; Kohl, David*; Kolby, Randall*; Koltys, Jason*; Konieczny, Edward*; Kormelink, Bret Michael*; Koste, Brian*; Koste, Jason Lyle*; Kostiuk, Adrian*; Kougl, Alan F.*; Kozelisky, Zachary*; Kraft, David*; Krause, Christopher*; Kremer, Fred*; Kreutz, Patrick*; Kropp, James J.*; Krueger, Joshua*; Kuba*; Kulessa, Gordon Scott*; Kull, Christopher*; Kunda, Matthew*; Kunz, John*; Labastille, Sergio*; Labrecque, Ronald*; Lackey, Christopher Alan*; Ladd, Jr., Carl Louis*; LaFond, David*; Lagreca, David*; Lahey, Kevin M.*; Laissle, Sean M.*; Lambert, Jeffrey*; Lancaster, Kurt*; Lanci, Edward*; Lanclos, Joseph*; Landry, Anton*; Landry, Jr., Steve*; Langdon, James Craig*; Lange, John C.*; Lanigan, Brian David*; Lanning, Brian*; Lantrip, Shannon*; Lapp, Mario T.*; LaPrell, Bill*; Larque, Renee*; Laskowski, Jr., Thomas M.*; Lassiter, Greg*; Laster, Michael*; Lauer, Mark*; Laurain, Eric*; Lavergne, IV, Theodore J.*; Lawrence, Sean Warren*; Lawson,k Brady*; Leazier, Linda*; Leben, Erik*; Ledbetter, Sr., Thomas Jap*; Ledsworth, Donald*; Lee, Kevin*; Leeder, Christopher*; Leinberger, Robert Lee*; Lemanski, Frank*; Lewis, Donald*; Lewis, Kelvin T.*; Lewis, Roger*; Lewis, Ronald Dee*; Lewis, Russell*; Lewman, Lori*; Lickliter, Charles*; Liktor, William*; Liles, Ron*; Line, Larry L.*; Link, Timothy*; Linkey, James Joseph*; Linn, Michael*; Lippold, Geoffry*; Lipscomb, III, Leonard*; Lishman, John*; Lisiakowski, Jody*; Literal, Jr., Darrell R.*; Litvack, Adam*; Livernois, Michelle*; Livingston, Daniel*; Lizarraga, Enrique*; Lloyd, Noel*; Lodewyck, David*; Lombardo, Jason*; Long, Ernest*; Long, Jr., Thomas*; Long, Phillip*; Longoria, Robert James*; Longstaff, Gregory*; Looney, Jr., Ron*; Lopez, Adan*; Lopez, David*; Lopez, Gilbert*; Lopez, Juan Sanchez*; Lopez, Roberto*; Loranger, Matt*; Lounsbury, Rodger*; Lovatt, Bob*; Love, Sean P.*; Lovett, Shannon*; Lovins, Todd Alan*; Lowell, Joseph*; Lubrano, Anthony*; Ludwig, Jeffrey*; Luna, Gilbert*; Lupo, Thomas*; Lutz, James Patrick*; Mackelburg, Kevin*; MacLagan, Jeffrey Todd*; MacMillan, Joseph*; MacPetrie, Bonnie*; Maddox, Jeffrey Heath*; Madison, Brandi*; Madrid, Isaac Casper*; Magee, Charles Eric*; Magee, Robert Glenn*; Maglosky, Ken*; Mahnken, Leon*; Maldari, Joseph*; Maldonado, Daniel*; Maldonado, Jr., Donald J.*; Maloch, Andrew*; Manale, III, Ted*; Manfre, Peter*; Mangus, Ryan Edward*; Manion, John*; Marcoux, Joseph*; Marino, Joseph*; Mariscano, Angelo*; Marks, Marcus*; Marrufo, Gilbert*; Martel, Chad J.*; Martell, Jr., Charles*; Martensen, Martin*; Martin, Douglas*; Martin, Frederick Lamont*; Martin, Jeffrey S.*; Martin, Joe K.*; Martin, Jr., Richard Earl*; Martinez, Jose*; Martinez, Miguel*; Maser, Richard*; Mason, Christopher R.*; Mason, Joseph*; Mason, Jr., Charles E.*; Masoner, Jeffrey*; Massey, Jason K.*; Mastin, Scott R.*; Mathis, Antonio D.*; Matthews, Duane*; Matthews, Traco*; Maule, John*; Mauro, Michael*; Maves, Cythia*; Maye, Charles*; Mayweather, Victor*; McAfee, Noritaka Kevin*; McAlister, Michael*; McArdle, Thomas J.*; McAshan, Sr., Craig E.*; McBeth, Mike*; McCabe, Steven*; McCain, Barry Preston*; McCain, Kenny P.*; McCarney, Randy*; McCarthy, Carl*; McClellan, Rogers*; McClendon, Stephen*; McCoins, Aaron R.*; McComiskie, Sean*; McCoy, Michael Eric*; McCraw, Michael Anthony*; McCue, Jr., Edward*; McCune, Dave*; McDaniel, Chester*; McDaniel, David L.*; McDermott, Eric*; McDermott, Kenneth*; McEldowney, Wendell*; McFadden, Eric*; McFall, Jr., Jeffrey Wayne*; McGee, Jr., Richard*; McGhee, Todd*; McGinley, Eileen M.*; McGuire, Tim*; McKee, Bradley J.*; McKee, Brian*; McKinney, Duane*; McKinney, Raymond Dale*; McLaughlin, Robert*; McNamara, Sr., Michael Lee*; McNeela, Tim*; McNemar, Sean P.*; McNiven, Steven*; McQuigg, Anson*; McRoy, David Linton*; Mecum, Andrew O.*; Medeiros, IV, Joseph Camara*; Medeiros, Michael*; Medina, Cesar*; Meeker, William A.*; Mejia, Robert*; Mekionis, Leonardas*; Melendez, Edwin*; Memmott, Derek Johnson*; Mendoza, Adrian*; Mendoza, Carlos T.*; Mercado, Jonathan*; Merchant, David*; Mertens, James*; Metheney, II, Edward*; Meyer, John*; Meyers, Richard*; Michelfelder, John*; Migdol, Fred*; Miguel, Alexander Eduardo*; Mikulski, Zenard W.*; Miller, Harvey*; Miller, Jeffrey*; Miller, Josh*; Miller, Jr., Edward*; Miller, Lance A.*; Miller, Randy*; Miller, Troy A.*; Milloy, Cameron Elias*; Mills, Vilera*; Miner, Stephen E.*; Minor, Jack McLean*; Miranda, Jr., Alberto*; Misback, Mark*; Mitchell, David Andrew*; Mitchell, Lawrence F.*; Mitchell, Walter*; Moch, Jeffrey*; Molero, Jorge*; Monroe, Kirk Lee*; Montanez, Jr., Christino S.*; Monteith, Kevin Neil*; Montez, Eddie*; Montez, Tony*; Montgomery, Brian Edward*; Monzon, Jose R.*; Moon, Jerry*; Moore, Brian*; Moore, Gary Brandon*; Moore, II, Ronald Calvin*; Moore, Mark*; Moore, Robert*; Moots, William Brian*; Moran, Kaile*; Moravitz, Ryan*; Morazan, Rodolfo*; Morell, Jr., Carl T.*; Moreno, Michael*; Moreno, Ramon*; Moreno, Rogelio*; Morford, Edward*; Moriarty, Patrick*; Morris, Allen Louis*; Morris, Craig E.*; Morris, Dale*; Morrison, Lori Ann*; Moser, Michael Shane*; Moss, Darrell*; Moss, Lawrence*; Moss, Randell*; Mowry, Greg*; Moye, Jr., Ben*; Mueller, Bryan Michael*; Muellner, Lee*; |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | Mullin, John*; Mullins, Michael*; Mullins, Tony F.*; Munday, Stacie L.*; Muniz, Eloy Pedro*; Munn, Brian*; Munoz, III, Juan*; Murphy, II, Joseph*; Murphy, Joe*; Murphy, Matthew*; Murphy, Michael*; Musselwhite, James*; Myers, David*; Napoli, Ross*; Narbane, James*; Navarijo, Clint*; Navarro, Stephen*; Neboyskey, Christopher*; Negrete, Enrico*; Nelson, Mark N.*; Nelson, Tyrick D.*; Newcomb, Christopher*; Nichols, Jennifer*; Nichols, Rusty N.*; Nichols, Tracy*; Nichols, Victor*; Nicholson, III, Joseph*; Nicolai, Lowell R.*; Nicotero, III, Ross*; Nieves, Jr., Julio*; Nordstrom, Kevin*; Norris, Leonard N.*; Novak, Michael J.*; Novatnak, Robert*; Nucci, Lisa*; Nunez, Danny*; Nutall, Leman*; Nye, Timothy*; O'Connell, Stephen*; O'Keefe, Michael B.*; O'Nan, Kelly Leo*; O'Neill, Brian*; Oblinger, Chris*; Oertel, Joseph Michael*; Offenberger, Greg S.*; Ogden, Andrew*; Ohler, Chris*; Okolovitch, Richard*; Oliver, Richard*; Olli, Jr., Mark*; Olson, Christopher Todd*; Olson, Jamie*; Orgeek, Daniel*; Orosco, Salvador*; Orsini, Chris*; Ortega, Chris*; Ortega, Richard D.*; Ortiz, Andres*; Oscypala, Andrew*; Osman, Jack*; Osman, Michael*; Ospina, Fabian*; Otero, Joseph Scott*; Otis, Daniel*; Overloop, Trent Van*; Overman, Alonzo K.*; Overton, Neil*; Owen, Steven*; Owens, Edward*; Pacyna, Glen*; Padgett, Jason*; Padron, Raymond*; Pagan, Michael Angel*; Pagani, John*; Pain, Eugene R.*; Palma, Harry*; Panebianco, Richard*; Paradis, Barry*; Parker, Benny*; Parker, Jr., Eddie Lee*; Parker, Scott*; Parkins, Felipe*; Parks, II, Daniel Lee*; Parra, Raymond*; Parrish, Harry*; Parson, III, Barney*; Parsons, Jeffrey D.*; Partain, Phillip*; Parus, Blase*; Pascual, Todd*; Paske, Brad L.*; Patterson, Casey*; Patton, Darrin*; Pavia, Brian M.*; Peace, Jarrod*; Pearson, Melvin*; Pedigo, Brent*; Peek, Michael W.*; Pellerito, Michael J.*; Pelley, Jonathan*; Pena, Jr., Daniel*; Penn, Charles*; Perdomo, Jose Anibal*; Perreira, Hector Josephs*; Perry, Alfred*; Perry, Timothy*; Perry, Xavier*; Perzak, Theodore*; Pettit, Douglas*; Petty, Raymond*; Petty, Robert*; Phillips, Jason*; Phillips, Jeffrey*; Pianelli, Anthony*; Pick, Jr., Theodore*; Pickett, John C.*; Pieper, Terry*; Pierce, Glen H.*; Pilgrim, Todd*; Pinkston, Brad*; Pirkey, Donald M.*; Plotino, Vincent*; Plush, III Donald Ray*; Podsiadlo, Andrew*; Poke, Jeffrey T.*; Polk, Gerald*; Polo, Jr., Omar*; Pomales, Juan*; Popp, Richard*; Poquette, Gery D.*; Porta, Jonathen*; Porta, Terry*; Porter, Christopher*; Porter, Robert Darrell*; Postell, Dominique Douglas*; Potechko, Carl*; Potteiger, Robert*; Pottichen, Jr., William F.*; Powers, Juan*; Prejean, Barney*; Prescia, Salvador*; Prewett, Jeff*; Price, II, Bobby Joel*; Price, James Alan*; Price, Jason*; Prieur, Michael*; Primerano, David*; Prince, Bobby L.*; Prohoroff, Kance*; Prosser, Michael*; Provance, Thomas*; Puckett, Rodney*; Purcell, Cecil*; Purdy, Russell Edward*; Puzzo, Natalie*; Quarrie, Thomas A.*; Quigley, James*; Quinn, Michael*; Quinn, Steven*; Quiroz, J. Adam*; Rabine, David*; Rambo, Steven*; Ramirez, Brett*; Ramirez, Jeronimo*; Ramos, Richard*; Randall, Kyle Richard*; Rapplean, Kurt*; Rasmussen, Glen*; Rasmussen, Jon*; Rasmussen, Russell*; Rauch, Darren*; Raulerson, Roy S.*; Raymond, Thomas*; Redmon, Rolondo D.*; Reeder, James A.*; Reedy, Jr., Robert*; Reese, Jr., Charles*; Reid, James Kevin*; Reid, Randall A.*; Reid, Tracy*; Reinwald, Ken*; Reither, Matthew*; Remsburg, Aaron*; Reno, Roy T.*; Resta, Andrew Lee*; Rettke, Kevin*; Reveles, Atanacio*; Reyes, Joe Michael*; Richard, Dennis M.*; Richards, Anthony*; Richards, Gerald A.*; Richards, Hopeton*; Richards, James*; Richardson, Ron*; Richardson, Ronald*; Richie, David*; Ricketts, Michael*; Rieck, Anthony*; Riley, Brian*; Rivera, Carlos*; Rivera, Gabriel*; Rivera, Jr., Ernesto*; Rivera, Mark*; Rivera, Ramon*; Rivera, Richard A.*; Rivero, Alberto L.*; Rizzo, Jason*; Rizzo, Jr., John*; Roberts, Mark D.*; Roberts, Richard*; Robertson, Andrew*; Robinette, Scott*; Robins, Sam*; Robinson*; Robinson, Antonio*; Robinson, Larry Keith*; Robinson, Patrick Dontae*; Robinson, Paul*; Robinson, Ryan M.*; Robinson, Von D.*; Rocha, Dominic*; Rodarte, Richard*; Rodela, Mario M.*; Rodriguez, Daniel*; Rodriguez, III, Eluterio*; Rodriguez, Jose Luis*; Rodriguez, Richard*; Rojas, IV, Raymond A.*; Rolfe, William*; Rolko, Edward J.*; Roman, Pedro J.*; Romero, Jesus*; Romero, Joe*; Romie, Anthony*; Rorick, Michael*; Rose, David B.*; Rose, Steve*; Rosell, Daniel*; Rosenberger, Sherry L.*; Ross, Michael A.*; Ross, Ray*; Ross, Timothy*; Roston, Lisa*; Rouco, Jr., Lazaro A.*; Rousseau, William Henry*; Rowan, Rodger L.*; Roy, Larry*; Rubens, Rene*; Rucinski, Jr., Gary*; Rudd, James Daniel*; Rumpf, Michael*; Russell, Gregory*; Russell, Michael E.*; Russo, Marc*; Ruta, Charles*; Ryan, Christopher Scott*; Saavedra, Roy*; Salazar, Gregory M.*; Salazar, Horacio*; Salerno, Ronald*; Salo, Timothy D.*; Samuels, Michael Jerome*; San Juan, Larry*; Sanabria, Anthony*; Sanchez, Jesus R.*; Sanderson, Michale*; Sandoval, Manuel*; Sandoval, Max*; Sandoval, Steven*; Santalucito, Vincent*; Santana, Victor*; Santiago, Jr., Genaro*; Santos, Allen*; Santos, Carl*; Santos, Daniel*; Santos, David*; Saucedo, Amanda*; Saulog, Mario B.*; Savage, Chris*; Savage, Roderick*; Savas, James*; Savino, Robert*; Sayles, Kevin M.*; Schaal, Christopher Werner*; Schaffer, Timothy*; Schaper, Matt*; Schepers, Edwin*; Schlabach, Richard A.*; Schlamp, Renee Laura*; Schneider, Anthony*; Schneiter, |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | John A.*; Scholl, Michael*; Schomburg, James F.*; Schroeder, Doug*; Schubert, Robert D.*; Schultz, Kent L.*; Schumacher, Zachary P.*; Schwartz, Garry*; Schwartz, Glenn*; Schweiss, John*; Scialanca, David*; Sciscio, Jesse Paul*; Scott, Joshua*; Scott, Jr., Bobby Joe*; Seamons, Arthur Franklin*; Sebastiano, John*; Secora, Jason*; Seech, Jason*; Seitz, John W.*; Sepulveda, Vito*; Serrano, Jr., Ruben*; Sessoms, John*; Sexton, Jerry*; Seymour, Adam*; Shaw, Aaron*; Shaw, Brenda*; Shaw, Randy*; Sheck, Troy P.*; Sheehan, Daniel V.*; Sheehy, Andrew*; Sheets, Scott*; Sheets, Steven*; Sheipline, Richard*; Shelton, Brian James*; Shepard, Perry*; Sheperd, Dan*; Shepherd, Michael*; Shepherd, Rebecca*; Sheppard, Elton*; Sherfield, Robert Eric*; Sheridan, Timothy*; Shirey, Richard (Cres)*; Shonk, Jay Daniel*; Shook, Jared W.*; Shores, Wayne Matthew*; Shortencarrier, Daniel*; Shufford, Jr., Robert Lee*; Siekkinen, John Davin*; Siena, Michael A.*; Sigl, Jonathan*; Silva, Donald R.*; Silvas, David*; Simmons, Jr., Elliott F.*; Simmons, Mario*; Simmons, Robe*; Simms, Garnet*; Simon, Jermaine*; Simpson, Harold*; Simpson, Heather L.*; Sipres, Joe C.*; Sizemore, Glen Arthur*; Skuratovich, David*; Slade, William*; Slay, David*; Sledz, Steven*; Sloane, Richard*; Slocum, Ray*; Slone, Jr., Ralph*; Smeltzer, Terry*; Smiley, Almond*; Smith, Barbara*; Smith, Benjamin N.*; Smith, Bruce P.*; Smith, Carll*; Smith, Carolton Lamar*; Smith, Clayton Robert*; Smith, Daniel*; Smith, Darrin*; Smith, Glenn*; Smith, III, Sam*; Smith, James Earl*; Smith, Jonathan*; Smith, Kelly*; Smith, Michael*; Smith, Michael R.*; Smith, Michael S.*; Smith, Michael W.*; Smith, Patrick*; Smith, Paul Douglas*; Smith, Phillip A.*; Smith, Richard*; Smith, Scott Allen*; Smith, Sr., Terrence Y.*; Smith, Vincent*; Smith, Walter*; Snell, Richard*; Snyder, Greg*; Solano, Jaime*; Solorio, Juan*; Solorzano, Alvaro*; Soroka, Allen*; Sossong, Thomas*; Sothern, T. Gregory*; Southerland, Todd Daniel*; Spinale, James*; Spivey, Randy*; Springston, Jeff*; St. John, Barry*; Staggs, James Ervin*; Staggs, Kevin*; Stamper, Fred*; Stancil, Michael*; Staples, Shade*; Stark, Michael*; Starkey, Aaron*; Starnes, David*; Starr, Garett*; Stearns, Tommy*; Steel, Jesse L.*; Steele, Donald Wayne*; Stefani, John*; Stefanick, Jared*; Steiner, William*; Stellato, Eric*; Stephens, Jeff*; Stephens, Randall*; Stewart, Clarence*; Still, Dexter*; Stillfield, Miguel*; Stokes, Bryan*; Stokes, Lavonzelle*; Stoklosa, Keith*; Stoklosa, Michael*; Stone, John*; Stoppel, Tracy*; Storie, Kenneth S.*; Story, John*; Strader, Christopher*; Straka, Chris*; Streng, Derek*; Stroup, Carl D.*; Stuckey, Jarred D.*; Sturgis, Tom*; Sturkie, Rodney*; Stutz, Shiloh*; Sudol, Wes*; Sullivan, Robert*; Summers, Tony*; Sumpter, III, Max*; Sumption, Trevor*; Sutter, John Michael*; Sweet, Daniel T.*; Swenson, Todd*; Swett, Jr., Steven T.*; Sword, Richard*; Sylvester, I, George*; Sylvia, Chris*; Tackett, David*; Talbert, Jr., Ralph E.*; Tantillo, Stephen*; Tapia, Joseph*; Tarantola, Thomas*; Tatum, Christopher*; Taunton, John Logan*; Taveras, Luis*; Taylor, Donald E.*; Taylor, Kurt H.*; Teague, Eric D.*; Tenney, Sandy*; Tepe, Jeffrey K.*; Terrell, Antwan*; Theis, Thomas*; Theisman, John*; Theriault, James*; Therrien, Bernard*; Thoma, Michael*; Thomas, Christopher W.*; Thomas, Ernest L.*; Thomas, Gerry*; Thomas, III, George*; Thomas, Jack Darren*; Thomas, Jr., James*; Thomas, Theodore*; Thompson, Joe*; Thompson, Mark*; Thompson, Robert*; Thompson, Tommy*; Thompson, Wayne*; Thornhill, II, Larry*; Tiegen, Jason*; Tillison, Tony Demario*; Tilseth, Steven*; Tisdel, Edward E.*; Tokish, Nicholas*; Tomaszewski, Scott*; Tomkinson, John P.*; Tompkins, Brian*; Tooley, Jimmy Ray*; Toone, Marc A.*; Torrez, Julian*; Torris, III, Leonard R.*; Tow, Christopher*; Travis, Jason*; Treft, Harold*; Trimble, Vassandral*; Truax, Keith*; Truman, Scott*; Tucker, Cary*; Tully, Jr., John*; Turner, Daniel Scott*; Tusing, Troy*; Tussey, John Rite*; Twitty, Derrel*; Tyrka, Peter*; Uballez, Aaron R.*; Uber, Gregory Steven*; Ulloa, Hector*; Underwood, Matthew*; Upshaw, Jobette T.*; Urbanczyk, Kenneth*; Uschold, John E.*; Vaitu'u, Jr., Ulualo*; Vallette, Charles*; VanAuken, Ralph*; Vance, Adam*; Vanderkuyl, Christopher John*; Vanderpool, William Ed*; Vandervort, Steve*; Vasquez, Juan*; Vasquez, Ruddy*; Vassau, Jeff*; Vazquez, Fabian*; Vega, Jaime*; Veliz, Paul*; Venable, Gary*; Venable, Kevin*; Vergara, Gerardo*; Vernille, Stephen*; Verucchi, Keith*; Vesey, Brena*; Vetsch, Todd*; Vick, Johnnie Lee*; Vickless, Dave*; Villapudua, Bernard*; Villegas, Ignacio*; Vo, Tuan Phi*; Von Coppenolle, Greg*; Voss, Todd*; Vulaj, Victor*; Wakefield, Keith*; Waldorf, Michael*; Waldschmidt, Jeffrey R.*; Walker, Anthony S.*; Walker, Frank Thomas*; Walker, Willie*; Wallace, Andrew*; Wallace, Jacob*; Wallace, Jason*; Walston, Jeff*; Walters, Lynn Dee*; Ward, Edwin*; Warner, Andre L.*; Washington, Monte*; Washington, Sharmane Quontrel*; Washington, Valtorian Evander*; Wasmer, Tade L.*; Wasylik, Thomas*; Watkins, Bradley Steven*; Watson, Demond*; Webb, Thomas*; Weeks, Matthew Jason*; Weinert, Fred K.*; Weisbecker, Stephen*; Weiss, Matthew*; Wells, John*; Wenner, Cade T.*; West, Clint*; West, Michael*; Westover, Steve*; Wetoszke, Douglas*; Whalen, Jeremy Edward*; Wheaton, David*; Wheeler, James Richard*; Whitcomb, Frederick D.*; White, Anthony*; White, Brian*; White, James*; White, Jr., Joseph*; White, Jr., Richard Allen*; White, Lonnie*; White, Matthew*; White, |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | Phillip Joel*; Whitener, Jessy*; Whiteoak, Jay R.*; Whitfield, Charles Lee*; Wick, Matthew*; Wickman, Steve*; Wiehl, Steven*; Wiggins, Raiford F.*; Wildeman, James*; Williams, Andre*; Williams, Barry C.*; Williams, Candice*; Williams, Charles Anthony*; Williams, Christopher*; Williams, Damon*; Williams, Edward*; Williams, James*; Williams, Jeffrey Lee*; Williams, Joel*; Williams, Kelan L.*; Williams, Larry James*; Williams, Paul*; Williams, Robert*; Williams, Sam*; Williams, Shannon Lee*; Willis, Rufus L.*; Wilmoth, Brandon*; Wilson, David*; Wilson, Jason L.*; Wilson, Jr., Ronald*; Wilson, Robert N.*; Wilson, Robert Reed*; Wilson, Ronald Joseph*; Wilson, William A.*; Wilton, Jeffrey Dean*; Winans, Sr., Ronald*; Winberry, john*; Windom, Randy L.*; Wingo, Ryan Glenn*; Witoske, Richard*; Witty, Aaron Paul*; Wobbrock, Jeffrey Craig*; Wolf, Erik*; Wolf, JoAnn M.*; Wolfe, Jay Christopher*; Wolner, Timothy*; Wood, Lendon*; Wood, Mark Dolton*; Wood, Michael Lane*; Wood, Robert*; Wood, Robert Lane*; Woodfin, Kenneth E.*; Woods, Jr., Earl C.*; Woodson, Mark William*; Woody, Ronald*; Wookey, Gene*; Woolwine, Eric*; Wragg, Mark Richard*; Wright, Jerry*; Wright, Terry*; Xaros, Arthur*; Yarbrough, Gary*; Yates, Charles B.*; Ybarra, Louis*; Ymaya, Cesar*; Yontz, Robert*; Young, Jr., John W.*; Young, Richard*; Youngbrandt, Stefan*; Yowell, William*; Zacharias, Michael*; Zadnick, Aaron M.*; Zall, Bradley*; Zapata, Fernando*; Zarbaugh, Ruth Ann*; Zavala, Edwin*; Zayas, Jr., Hector*; Zeda, Moises*; Zermeno, Oscar*; Zigler, Ryan*; Zygarlicke, Sarah R.*; Zytkowicz, Michael* |
| Rubin, Michael<br>Altshuler Berzon Nussbaum Rubin & Demain<br>177 Post Street<br>Suite 300<br>San Francisco, CA 94108 | => Capuchino, Neal*; Gray, Charles Leroy*; Reed, David W.* |
| Traber, Theresa M.<br>Traber & Voorhees<br>128 North Fair Oaks Avenue<br>Suite 204<br>Pasadena, CA 91103 | => Baudier, Jr., Ramon J.*; Dixon, Jr., Billy Ray*; Jones, Gerald*; Rowell, Ronda* |